VORYS, SATER, SEYMOUR AND PEASE LLP
Thomas N. McCormick (SBN 325537)
tnmccormick@vorys.com
2211 Michelson Drive, Suite 500
Irvine, CA 92612
Telephone: (949) 526-7903
Facsimile: (949) 526-7903

Douglas R. Matthews (*pro hac vice* admission forthcoming)
drmatthews@vorys.com
Kara M. Mundy (*pro hac vice* admission forthcoming)
kmmundy@vorys.com
Timothy B. McGranor (*pro hac vice* admission forthcoming)
tbmcgranor@vorys.com
Eleanor A. F. Vorys (*pro hac vice* admission forthcoming)
eavorys@vorys.com
52 East Gay Street, P.O. Box 1008
Columbus, OH 43216-1008
Telephone: (614) 464-8205
Facsimile: (614) 464-6400

MASON LLP
Gary E. Mason (*pro hac vice* admission forthcoming)
gmason@masonllp.com
Danielle L. Perry (SBN 292120)
dperry@masonllp.com
Theodore B. Bell (*pro hac vice* admission forthcoming)
tbell@masonllp.com
Jacob D. Eisenberg (*pro hac vice* admission forthcoming)
jeisenberg@masonllp.com
5335 Wisconsin Avenue, NW, Suite 640
Washington, DC  20015
Telephone: (202) 292-4490

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SAJI ABRAHAM<br>1585 South Old 3C Road<br>Galena, OH 43021-9314,<br><br>RITA ABRAMIAN<br>311 North Howard Street, Apt 2<br>Glendale, CA 91206-3732,<br><br>ROBERT ABRAMS<br>917 Alpha Road<br>Wilmington, DE 19810-1005, | Case No.  8:25-cv-02389<br><br>Judge<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

- 1 -
COMPLAINT

JAMIE ACHILLI
1701 East Hebron Parkway, 2107
Carrollton, TX 75010,

ARASELI ACOSTA
5802 15th St
Lubbock, TX 79416-5108,

CORY ADAMS
625 Hall Street
Madisonville, KY 42431-2624,

JAMES ADAMS
8556 Julia Marie Circle
Jacksonville, FL 32210-0412,

SHERRI ADAMS
12 Wedgewood Drive North
Newport News, VA 23601-1149,

MATHILDA ADESINA-OLUDOYI
2444 S Cannon Dr, Apt 302
Mount Prospect, IL 60056,

CHRISTOPHER AHN
3 Monticello Dr, Apt 1
Brewster, NY 10509-5439,

LINDA AIELLO
11 Xylo Road
Rocky Point, NY 11778-8633,

DION ALEXANDER
4672 Ridge Drive, Apt 10
Pine Lake, GA 30072-2800,

MINDY ALEXANDER
1330 East Maine Road
Johnson City, NY 13790,

PETER ALISEO
765 Creekwater Terrace, Apt 111
Lake Mary, FL 32746,

CHRISTINE ALLAH
1236 Natchez Trce Southwest, Apt B
Marietta, GA 30008-7108,

JODITH ALLEN
312 13th Street
Coleman, TX 76834-7238,

KASHARA ALLEN
2027 South 5th Avenue
Maywood, IL 60153-3206,

- 2 -
COMPLAINT

BARBARA ALVAREZ
319 Saltillo Street
San Marcos, TX 78666-7827,

KIMBERLY ALVAREZ
118 Prospect Ave, Apt 1
Long Beach, CA 90803,

MARCOS ALVAREZ
5714 Kenilwood Dr
Houston, TX 77033-2106,

BIAGIO AMBROSINO
271 NE 38th St, Apt C205
Oakland Park, FL 33334-1215,

DANIELLE ANDERSON
2605 South Sullivan Road
Spokane Valley, WA 99037-8025,

ERIC ANDERSON
611 Prospect Street
Jamestown, NY 14701-8025,

JENNIFER ANDERSON
6187 Wooded Way, Apt D
Milton, FL 32570-6502,

JERID ANDERSON
3231 Orcutt Road, Unit 7
Orcutt, CA 93455,

JOSEPH ANDERSON
7709 SW Pfaffle St
Portland, OR 97223,

NATHANIEL ANDERSON
2314 N Church St, Apt 316
Greensboro, NC 27405,

SHMANTHA ANDERSON
1033 Lexington Circle
Ford Heights, IL 60411-3088,

DIANA ANDREWS
1112 Leslie Circle, Apt B
Killeen, TX 76549-3273,

SHERRIE ANGUEIRA
190 Saint Charles Ave
Biloxi, MS 39530-3329,

THERON ANSELMO
56 Saint Joseph Street, #210
Fall River, MA 02723,

- 3 -
COMPLAINT

JANET ANTHONY
15815 Georgia 315
Ellerslie, GA 31807-5108,

KIERAN ARCAND
18 Beaver Dam Reach
Rehoboth Beach, DE 19971-6105,

RONIKA ARCENEAUX
1525 Adam Street
New Iberia, LA 70560-6505,

ROCKY ARD
106 County Road 3200
Colmesneil, TX 75938-5233,

SANDY ARENAS
67 Old Post Road
Montgomery, IL 60538-2723,

JOHN ARICO
625 Fox Hollow Way
Manchester, NH 03104-6476,

LYNETTE ARMSTRONG
1740 Wesminster Circle
Griffin, GA 30223-7127,

MICHELLE ARMSTRONG
3320 6th Ave, Apt 11
Tacoma, WA 98406-5924,

TAMELA ARNOLD
823 Backus Street
Jackson, MI 49202-3201,

KIMBERLY ARPIN
132 Linwood Road
Fayetteville, NC 28306-9248,

SHANNAN ARRINGTON
310 Chandler Rd
Greer, SC 29651-1219,

SHERRY ASH
134 Nicole Lane
Somerset, PA 15501-9384,

JEFF ASHCRAFT
812 Roberts Street
Newport, KY 41071-1943,

SUSAN ASHER
2109 Flint Road
Madison, IN 47250-1935,

- 4 -
COMPLAINT

JESSICA ATKINS
7453 Candler Drive
Fort Worth, TX 76131-5105,

TONYA ATKINS
227 North Mineral Springs Drive
Jonesville, NC 28642-2104,

KIMBERELY AUSTIN
8735 Mull Road
Vale, NC 28168-7499,

CESAR AVILA MIRANDA
6555 Old Lake Wilson Road, lot 148
Davenport, FL 33896,

SARA AYALA
605 South Park Boulevard
Streamwood, IL 60107-2056,

MELODY AYON
1603 W Lavender Sky St
Tucson, AZ 85746-3995,

ALAINA BAGGS
1311 South Laurie Lane
Cedar City, UT 84720-6271,

JOSHUA BAIN
804 Osage Avenue
West Columbia, SC 29169-6617,

ANDREW BAIR
4781 Selma Way
Erda, UT 84074-8610,

TYLER BAKER
90 North Underhill Station Road
Underhill, VT 05489-9609,

MARYJANE BALL
1316 West Fedora Avenue
Fresno, CA 93705-3316,

ROBERT BANKS
1901 Lafayette Street, 515
Gretna, LA 70053,

CAROLYN BARNES
8343 Torrington Avenue
Tampa, FL 33647-1715,

LAYTORIE BARNETT
2236 Tozer Street, Apt 110
Madera, CA 93638-5854,

COMPLAINT

YVONNE BARNEY
9436 East Loma Linda Place
Tucson, AZ 85749-9374,

DOROTA BARRETO
2442 Durand Drive
Downers Grove, IL 60516-1052,

KIMBERLY BARRETT
5609 Sundrop Lane Unit B
Temple, TX 76502,

MICHAEL BARRETTA
3110 Knights Road, D-8
Bensalem, PA 19020-2852,

MELISSA BARROW
22100 Knights Cove Drive
Kingwood, TX 77339-6206,

TIMOTHY BARTLETT
1612 173rd Street Court East
Spanaway, WA 98387-5546,

DAWN BARTOSEK
16095 County Line Road
Masaryktown, FL 34604-6637,

PAUL BASHER
14927 Tucan Street
Fort Pierce, FL 34951-4444,

RENIKA BASS
21431 Park Mount Drive
Katy, TX 77450-4716,

KYLE BATES
5200 West Nob Hill Boulevard, Apt 234
Yakima, WA 98908-3778,

YVONNE BATES
701 Creekview Village Pl
Florence, AL 35633,

ELLEN BATTLES
4661 Plumosa Drive, Apt 66
Yorba Linda, CA 92886-2467,

DAVID BATZER
2325 E Torino Ave, Unit 447
Las Vegas, NV 89123-4914,

DEVON BAXTER
8560 Last Point Avenue
Las Vegas, NV 89129-8324,

- 6 -
COMPLAINT

ALEXANDRA BEACH
9226 Palos Verde Drive
Orlando, FL 32825-8048,

MARY BECERRA
2511 N Bartlett Ave
Milwaukee, WI 53211-3952,

ALICIA BECKNELL
933 Hooker Road
Manchester, KY 40962-8131,

SHERRYN BECKNER
410 Jefferson Ave, Apt D
Vinton, VA 24179-2610,

TAYLOR BELCHER
211 Mountain Rest Court
Mabelton, GA 30126-3609,

JUDITH BELCOURT
47 Centennial Avenue
Meriden, CT 06451-3703,

DOM BELFIGLIO
101 Abbe Road
Little Falls, NJ 07424,

YVETTE BELL
3974 Sitka Drive
Douglasville, GA 30135-9109,

ANTHONY BELSANTI
9402 Waynesboro Pike, Apt 4
Emmitsburg, MD 21727-9306,

DIOSSI BENJAMIN
9311 Sunset Drive
Tampa, FL 33610,

KEVIN BENNETT
303 Northampton Street
Buffalo, NY 14208-2315,

KRISANNE BENTLEY
255 Grand Cypress Dr, Apt 1230
St Johns, FL 32259,

ASHLEY BERGERSON
921 Penny St
Anna, TX 75409-8261,

CAROL BERLIN
8409 Orchard Street Southwest
Lakewood, WA 98498-2325,

- 7 -
COMPLAINT

ANA BERNAL
2520 Rudder Pl
El Paso, TX 79936-3026,

BRITTANY BERRY
601 W 54th St, #48
Savannah, GA 31405-3138,

CASSANDRA BERRY
3395 Spangler Drive, 59
Lexington, KY 40517-2191,

JESSICA BESS
25678 Roy Rogers Court
Splendora, TX 77372,

CANDACE BETHEA
4017 Tryon Road
Raleigh, NC 27606-4209,

DANUTA BIELANSKI
978 Chelsea Lane
Schaumburg, IL 60193-3725,

JENNIFER BJORKLUND
2008 W Adelita St
Weslaco, TX 78599-4441,

JOHN BLACK
1118 Hunters Wood Drive
East Stroudsburg, PA 18301,

CHRISTOPHER BLANCHET
357 Hillandale Rd, Apt 272
Greenville, SC 29609-2311,

JANET BLANTON
3481 Perry Road
Gloster, MS 39638,

AKIRA BLAY
1107 E St
Centralia, WA 98565,

LILA BLOECKER
5217 Northwest 28th Avenue
Fort Lauderdale, FL 33309-2548,

REBECCA BLOUNT
4588 North Topaz Trail
Casa Grande, AZ 85194-6960,

TERESA BLYZE
1009 North Plains Park Drive
Roswell, NM 88203-2515,

- 8 -
COMPLAINT

SCOTT BOERGERT
611 West Sunset Street, 220
Springfield, MO 65807-3787,

WILLIAM BOERNER
1194 Franklin Hill Road
Rocky Face, GA 30740-8729,

SHEAKIA BOGAN
113 Wayne Avenue Northwest
Fort Walton Beach, FL 32548-3440,

MARY BOLDEN
1800 Fuller Wiser Rd, Apt 1015
Euless, TX 76039,

TERRY BOLICK
6021 Paul Payne Store Road
Township of Taylorsville, NC 28681-3810,

JAMIE BOLLER
1732 North 4th Street
Berthoud, CO 80513-9371,

LATOYA BONAPART
4690 Eldorado Parkway, 1110
McKinney, TX 75070,

JAMES BONNER
20 Pine Valley Circle
Fort Mitchell, AL 36856-5520,

REY BORGE
140 West Pioneer Avenue, Spc 68
Redlands, CA 92374-1622,

MICHAEL BOWER
2773 Prairie Lane
Snellville, GA 30039-4972,

GWENDOLYN BOYCE
601 Jasmine Drive
Rocky Mount, NC 27804-8914,

NANCY BOYCE
2100 Dove Loop Road, Lot 8
Grapevine, TX 76051-4949,

TAMMIE BOYKINS
649 New Jersey St, Apt 64
Mobile, AL 36603,

MICHELLE BRACKEN
3015 Canary Ave
Davenport, FL 33837,

- 9 -

COMPLAINT

CHRISTOPHER BRADBURRY
15039 Nettleton Mill
San Antonio, TX 78254-4757,

SHARIKA BRADDY
4035 Whistler Drive
Douglasville, GA 30135-3092,

SENICA BRADFORD
3719 French Wood Drive
Arlington, TX 76016-2918,

SCOTT BRAY
17738 Southeast 95th Circle
Summerfield, FL 34491-8464,

JAKEITA BREEDEN
2602 Lauretta Ave
Baltimore, MD 21223-1025,

KASEY BREUIER
11659 Southwest Teal Boulevard, Apt B
Beaverton, OR 97007,

JAMES BRIDGEWATER
425 West Main Street
Stanford, IL 61774-7546,

ETHELYN BRISCOE
2125 Richbrook Drive
Garland, TX 75044-7121,

PAMELA BRITT-JONES
241 Ellis Street
Branchville, SC 29432-2267,

ANGELA BROWN
25 Arbor Ln, Apt 22
North Swanzey, NH 03431,

CHERYL BROWN
4803 Sheriff Rd NE
Washington, DC 20019-3709,

DANYEL BROWN
3777 Boy Scout Road
Byron, GA 31008-8913,

DAVID BROWN
65 b Oldham Lane
Cottageville, WV 25239,

JULIE BROWN
951 17th Ave Lot 102
Longmont, CO 80501,

- 10 -
COMPLAINT

LAUREL BROWN
5815 Brown Ln
Ozark, AR 72949-8276,

SHANE BROWN
425 Purple Heart Drive
Buda, TX 78610,

TERRI BROWN
3842 Upton Ave N
Minneapolis, MN 55412,

VICKI BROWN
11808 East 37th Street
Tulsa, OK 74146-2823,

MOLLIE BRYAN
3317 Crossfield Lane
Duluth, GA 30096,

ANQUNETA BUCKHOLTS
7101 Wilson Boulevard, Apt 8304
Jacksonville, FL 32210-3685,

LINDSEY BUETTNER
3913 Whitfield Drive
Swansea, IL 62226-1022,

DAPHNE BUNCH
1821 32nd Street
Rock Island, IL 61201-4841,

GAYLE BURGE
2821 North Columbus Boulevard, #24
Tucson, AZ 85712-1624,

BARBARA BURKE
8511 S Stanley Place
Tempe, AZ 85284-2433,

ANDREA BURNETT
2050 Newnan Crossing Blvd E, Apt 5208
Newnan, GA 30265,

DEVINA BURNETT
538 North Wigwam Court
Independence, MO 64056-2209,

ANTIONETTE BURTS
117 Louis Road
Joliet, IL 60433-3113,

ALISON BUSHEY
3005 Ringneck Dr
Fort Collins, CO 80526,

- 11 -
COMPLAINT

DONALEA BUTCHER
3185 Whisper Lake Lane, Apt A
Winter Park, FL 32792,

KAREN BUTLER-SMITH
7312 Leona Street
District Heights, MD 20747-4611,

AARON CADY
319 West Center Street
Pine Island, MN 55963-7507,

AULENA CAIN
320 East 11th Street
Portales, NM 88130-6510,

JUAN CALDERON
5021 North 20th Street, #10732
Phoenix, AZ 85016-4166,

VICTORIA CALDERON
1131 Mayflower Ave, #1
Deltona, FL 32725-6335,

LISA CALHOUN
9129 Alpine Grove Avenue, #102
Las Vegas, NV 89149-2931,

STACY CALLIGAN
11673 Rue Villantray
Baton Rouge, LA 70810-4574,

MELODY CAMMON
1406 Camilla Road
Killeen, TX 76549,

WILLIAM CAMP
5941 Colony Place Drive
Lakeland, FL 33813-2872,

SANDRA CAMPBELL
4701 Ramey Avenue
Fort Worth, TX 76105-3626,

GRACE CANDREVA
561 Fairways Circle, Apt A
Ocala, FL 34472-2264,

BOBBIE CAREY
1350 Quasar Court South
Lakeland, MN 55043-9480,

ERNEST CARITHERS
3349 Buena Hills Drive
Oceanside, CA 92056-4129,

- 12 -
COMPLAINT

FLORIN CARLIN
2315 N Loma Pt
Hernando, FL 34442,

ARLENE CAROSELLI
7 McLeod's Lane
Hermon, ME 04401,

DESTINEE CARSON
7680 W Highway 98, Apt 78
Pensacola, FL 32506-4169,

TAMI CARSWELL
11405 SW Winterlake Dr
Tigard, OR 97223,

RICHARD CARTER
3500 Green Haven Court
Concord, NC 28025-8954,

JOANNA CASTER
109 Knowles Street
Headland, AL 36345-2306,

HOLLY CASTILLO
19364 Dr John Lambert Dr, #818
Hammond, La 70403-0950,

NATALIE CASTRO
6289 Beavertail Pond Avenue
Las Vegas, NV 89122-7628,

STEPHANIE CASTRO
7816 Elvera St, Apt A
Houston, TX 77012-3230,

LISA CATO
1262 Piney Woods Road
Monticello, FL 32344-6024,

TIMOTHY CAVALLIER
215 W Anderson St, Apt A
Savannah, GA 31401-6741,

BELINDA CHAIREZ
601 N Park Blvd 1406, #1406
Grapevine, TX 76051,

LORRAINE CHAMBERS
2241 South Uravan Street
Aurora, CO 80013-4249,

JENNIFER CHANDLER
171 Seeber Road
Hastings, NY 13076-3170,

COMPLAINT

CHANELLE CHARLTON
3727 North Walrond Avenue
Kansas City, MO 64117-2211,

ELLA CHATTERJEE
1895 West Devonshire Avenue, #118
Hemet, CA 92545,

CHRISTIAN CHAVEZ
5617 Crafstman Ave
Las Vegas, NV 89122,

KRISTIN CHENAULT
123 W. Clinton Ave, Apt 123
Monmouth, IL 61462-1736,

TONI CHERIM
8450 Gate Parkway West, Unit 1235
Jacksonville, FL 32216-1049,

ALDRICH CHERRY
10705 Glenluce Ave, Unit A
Charlotte, NC 28213-4239,

MELINDA CHRISTENSEN
507 Chateau Drive, Apt 8
Bellevue, NE 68005-2140,

HELEN CHRISTIAN
300 South Stagecoach Trail, Apt 3219
San Marcos, TX 78666-5122,

CECILIA CINTORA
418 Hendee Street
Elgin, IL 60123-7722,

GLORIA CLARK
524 Dusty Trail
Belmont, NC 28012-9596,

LINDA CLEARWATER
2316 Watrous Avenue
Des Moines, IA 50321-2145,

CELESTE CLOUTIER
355514 P.O. Box 1409
Jefferson City, MO 65102,

MISHELL CLUGSTON
900 Thomas Avenue
Leesburg, FL 34748,

GERMAINE COAKLEY-MAYS
1985 Millstream Hollow
Conyers, GA 30012,

- 14 -
COMPLAINT

LORETTA COGAR
2522 Lost Creek Road
Lost Creek, WV 26385-7369,

KAZEY COHAN
2201 Charleston Ave
Mattoon, IL 61938-2763,

DESTINEE COHEN
4808 Cutstone Ct
Raleigh, NC 27610-6622,

PENNY COKER
1604 Creek Ridge Road
Siler City, NC 27344-2832,

SHUNTAE COLBERT
447 30th Pl, Apt B
Tuscaloosa, AL 35401-7123,

SHANNON COLE
1455 N Arthur Burch Dr, Lol S9
Bourbonnais, IL 60914,

ROSEMARY COLEMAN
4380 Sandy River Drive, Unit 38
Las Vegas, NV 89103-6197,

EVELYN COLLINS
1921 Ford Street Northwest
Atlanta, GA 30318-2702,

GLADYS COLLINS
35 Sonia Drive
Marlborough, MA 01752,

JENNIFER COLLINS
1401 14th Ave
Greely, CO 80631,

MIESHA COLLINS
4303 Friesian Lane
Riverside, CA 92509-3266,

JULIO COLON
235 Miriam Way
Mound House, NV 89706-8248,

CATHERINE COLTON
5055 Southwood Rd, Apt 802
Fairburn, GA 30213-2027,

ALYSON COMINIO
1340 Meridene Drive
Baltimore, MD 21239-2025,

- 15 -
COMPLAINT

JENNIFER CONLEY
1122 Kelly Street
St. Cloud, FL 34771-4831,

CHEVOHN CONNERS
622 William Street
East Orange, NJ 07017-1313,

DARLENE CONNOLLY
1614 Gainer Avenue
Panama City, FL 32405-7409,

MARY CONSTON
25112 Quebrada Court
Moreno Valley, CA 92557-6529,

NANCY COOK
122 Sherwood Square
Essex Junction, VT 05452-4309,

WILLIAM COOK
1347 Remington Oaks Terrace
Fenton, MO 63026-7032,

HAZEL COOKBEY
814 Rowell Avenue
Joliet, IL 60433-2525,

KAREN COOKSEY
1092 Cernan Court
Elk Grove Village, IL 60007-3013,

ANGEL COOPER
295 Cottonwood Drive
Dry Ridge, KY 41035-8479,

DANIEL COOPER
339 Faulconer Dr
Nicholasville, KY 40356-1433,

ERICA COOPER
3203 South 6th Street, Apt 6
Southern View, IL 62703-4755,

JOHN COOPER
11501 Lynn Circle
Tavares, FL 32778-4726,

TIFFANIEE COPE
1426 East 5th Street
Sioux Falls, SD 57103-0918,

PAMELA COPELAND
6480 Carolot Lane
Bartlett, TN 38135-1161,

- 16 -
COMPLAINT

SEAMUS CORBETT
8 Ross Road
Lexington, MA 2421,

SUZANNE CORBIN
114 S 3rd Street
Easton, PA 18042-4514,

DORIS CORCORAN
11921 Tazwell Drive, #8
Louisville, KY 40245,

NICHOLAS CORDERO
4100 Williams Street, Apt A
Eureka, CA 95503-6496,

DOLORES CORMIER
21182 K Street
Rehoboth Beach, DE 19971,

ANDREW CORNWELL
5814 Caldicote St
Humble, TX 77346-2642,

FREDERICK CORSINO
26020 Northern Cross Road
Punta Gorda, FL 33983-6132,

BARBARA COSTE-HOLTON
7216 East Tamaron Boulevard
New Orleans, LA 70128,

SHERRI COTE
647 Broadway St, #3
Lowell, MA 01854-3217,

SAMANTHA COTTEN
2811 East 3rd Street
Superior, WI 54880-3901,

LINDA COULSON
2411 North 77th Court
Elmwood Park, IL 60707-2502,

KRISTINE COULTER
2029 Renchler Lane
Modesto, CA 95350-2667,

DIONNE COUNTS
10319 Cherish River Street
Las Vegas, NV 89178-6519,

UNICQUE COUTEE
1351 E 41st St, #122
Los Angeles, CA 90011,

- 17 -
COMPLAINT

ANDREA COVEY
709 Bluff Avenue
Sheboygan, WI 53081-2763,

ALLISON COX
1673 Macintosh Way
Hummelstown, PA 17036,

JEREMIAH COX
337 Darlington Ave, Unit 104
Wilmington, NC 28403,

ROGER COX
6092 Coral Way
Bradenton, FL 34207-4700,

TYLA COX
222 West 5th Street
Rushville, IN 46173-1502,

JESSICA CRADDOCK
1031 S Charles St
Sherman, TX 75090,

EVONN CRAIG
146 Porter Place
Odenville, AL 35120,

BRANDON CRAWLEY
356 Crossbridge Road
Chelsea, AL 35043-2022,

DEEDRA CRESPO
6066 Blue Stone Lane
Greenacres, FL 33463-6719,

KACY CRIDER
26 Greystone Park
Lynn, MA 01902-2018,

MICHELE CROCKETT
1705 South Avenue B
Portales, NM 88130-7326,

SCOTT CROSS
312 Shenandoah Drive
New Berlin, IL 62670-6697,

DANIEL CROWDER
2118 County Drive, Trl F12
Petersburg, VA 23803,

PATRICIA CUNNIFF
18461 Stoney Island Avenue
Lansing, IL 60438-1542,

- 18 -
COMPLAINT

LORELEI CURRIER
79 Bridge Street, Apt 4A
BALDWINVILLE, MA 01436,

CHRISTIE-ANN CYR
6170 Hopeful Light Avenue
Las Vegas, NV 89139-6873,

KATHY DAHN
4400 South Marquis Point, Apt 26
Homosassa, FL 34446-1148,

PAUL DAIGNEAULT
202 Summer Street, 3
Woonsocket, RI 02895-1174,

NICHOLAS DAMBROSIO
921 Pleasant Valley Avenue, #425
Mount Laurel Township, NJ 08054-1210,

SUSAN DAMICO
2819 Margaret Drive
Montgomery, IL 60538-5125,

ROBERT DANCE
309 West Osceola Lane
Cocoa Beach, FL 32931-3815,

LAUREN DANIELS
4101 Davis Drive
Morrisville, PA 19067-6115,

TIFFANY DANIELS
1408 Eagles Nest Cir
Carrollton, GA 30116,

LISA DAVAILUS
1287 White Deer Pike
White Deer, PA 17887,

ROBERT DAVID
645 Eagle Ave, Apt 1
Bronx, NY 10455-1401,

ROBERT DAVILA
7230 Westport Way
San Antonio, TX 78227-2845,

JAMES DAVIS
515 Hudson St
Forest City, PA 18421-1415,

JOHNATHAN DAVIS
503 Gay St
Dalton, GA 30721-6432,

COMPLAINT

KATRINA DAVIS
730 Stella Street
Vallejo, CA 94589-2044,

SHAWASKI DAVIS
205 Rivercrest Lane
Covington, GA 30016-5947,

TONI DAVIS
115 Wilcox St, Apt 1426
Castle Rock, CO 80104,

VICKY DAVIS
7630 Wood Hollow Drive, #321
Austin, TX 78731,

MARY DE VORE
6931 Willow Creek Circle, Apt 302
North Port, FL 34287,

KAITLIN DEAN
124 Twin Lake Trail
Bloomingburg, NY 12721,

DARLA DEANDA
19425 Sweetwood Lane
Lake Elsinore, CA 92530-6364,

SABRINA DEANGELIS
8212 Talley Road, Apt 12301
San Antonio, TX 78253,

DINA DECARLO
24130 Pear Tree Court
Plainfield, IL 60585-6188,

WENDY DEGRAAFF
615 Pecos Lane
Kempner, TX 76539-5521,

ALAN DEKKER
W1373 CR-HH, Lot 33
New Holstein, WI 53061-9700,

MATTEO DELUCA
2525 Arapahoe Ave, Ste E4 Box 317
Boulder, CO 80302-6720,

IAN DELVALLE
75 1st Avenue
Gloversville, NY 12078-3302,

ELIZABETH DEMEO
147 King St Building 2, Apartment 210
Littleton, MA 01460-1534,

- 20 -
COMPLAINT

KATHRYN DEMOREST
1700 Southeast 57th Court
Ocala, FL 34480-5819,

JACK DENSFORD
5960 Ashdale Ln
Greenwood, IN 46143-0025,

BRANDI DEVENPORT
211 Crimson Bramble Road
Rochester, NY 14623-4203,

LENNOX DEVLUGT
11 Columbia Ave
Trenton, NJ 08618,

MARGIE DIAZ
11457 North Pablo Street
El Mirage, AZ 85335-5061,

ANTHONY DICARLO
2861 Mercer West Middlesex Rd, Apt 513
West Middlesex, PA 16159-3034,

JACK DIECKHONER
3749 Cripple Creek Drive
Dallas, TX 75224-3748,

TINA DILLARD
4372 Bren Loop NE
Salem, OR 97305-2789,

TERRI DILWORTH
614 Price Avenue East
Saint Paul, MN 55117-2519,

RICHARD DISANTO
5269 Guy Young Road
Brewerton, NY 13029-9767,

MERCEDES DISHAW
542 Robert E Lee Drive
Conroe, TX 77302-3750,

RUDOLPH DITTO
240 E Silverado Ranch Blvd, Unit 1075
Las Vegas, NV 89183-3425,

CLIMISTINA DIXON
1249 Kearney Court
Deltona, FL 32725-3781,

SCOTT DOHERTY
125 Galleria Dr, Unit 21
Buffalo, NY 14225,

- 21 -
COMPLAINT

MIRIAM DOMINGUEZ
11513 Arrow Rock Dr
El Paso, TX 79936,

JASON DORRITY
7057 Westpark Court
Las Vegas, NV 89147-4515,

DEBORAH DOWDLE
1233 Trailwood Lane
Longview, TX 75605-1417,

CHRISTINA DOYLE
105 Lakeview Circle, Apt 12
Grand Island, NE 68803-6038,

STEPHEN DROTAR
9990 North Scottsdale Road, Apt 1020
Paradise Valley, AZ 85253,

MATTHEW DUDLEY
200 Avenue K SE, Apt 61
Winter Haven, FL 33880-4000,

HAROLD DUFFY
1800 Idlewild Drive, apt 41
Reno, NV 89509-1094,

ERIC DUMAS
18 Sunset Avenue
Easthampton, MA 01027-1955,

JESSICA DUNCAN
4310 Oaks Road
Paducah, KY 42003-9564,

RYAN DUNCAN
36402 South Forsythe Avenue
Rosalia, WA 99170-9750,

WILL DUNCAN
1620 11th Place South, Apt 109
Birmingham, AL 35205-5913,

CHEREISE DUNN
5195 Sabine Hall
New Albany, OH 43054-8710,

JAY DUNNAHOO
1739 Pelican Oval W
Azle, TX 76020-4746,

PATRICIA DUNNE
2317 South Chestnut Avenue, #130
Fresno, CA 93725,

- 22 -
COMPLAINT

CHRISTINA DUPREE
6389 Old Fairground Road
Benson, NC 27504-6122,

BARRY DUVAL
12 Airport Road
Fitchburg, MA 01420-8113,

BRENDA EARL
2109 South Winthrop Avenue
Lindenwold, NJ 08021-2520,

KAREN EASTMAN
297 Main Street
Bradley, ME 04411,

MICHAEL EDDY
601 E Ogden Ave, Unit 903
Milwaukee, WI 53202,

CHRISTOPHER EDEN
3170 Harrison Street, B106
Kingman, AZ 86401,

AMANDA EDENS
305 Ruby Street
Springdale, AR 72764-4564,

BRENDA EDWARDS
14451 Community Drive, Apt 3A
Carmel, IN 46033,

JULIE EHRENFELT
788 Sulphur Creek Road
Big Sandy, TN 38221-4342,

CHRIS EHRNMAN
569 North 8th Avenue
Upland, CA 91786-4806,

THOMAS EICHINGER
2760 West Kent Drive
Chandler, AZ 85224-3902,

JUSTIN ELLENWOOD
113 Kensington Ct
Battle Creek, MI 49015,

JANICE ELLIOTT
1409 Rusk Drive
Mesquite, TX 75149-6529,

FELICIA ELLIS
129 West Steele Street
Salisbury, NC 28144-3627,

- 23 -
COMPLAINT

JASMINE ELLIS
176 Cherokee Oaks Xing
Hinesville, GA 31313,

JESSICA ELLISON
323 North Date Street
Jenks, OK 74037-2921,

JIMAL ELLISON
1007 Cotton Mill Village Ln
Rock Hill, SC 29730-4080,

JAMES ELVGREN
404 Lopez Street
Waco, TX 76705-3152,

KRISTINA EMERSON
1057 Washington Street
Stoughton, MA 02072-3353,

LINDSAY EMERSON
274 Stone Hill Drive
Huntsville, AL 35811-9743,

ANTHONY ENGLE
13925 52nd Avenue North, #1102
Minneapolis, MN 55446-1645,

RAQUEL ENGLE
51 Wildlife Ln
Defiance, MO 63341-1512,

KARI ESPADA
546 Eleanor Ct, Apt J
Newport News, VA 23602-4336,

MATTHEW ESSER
3709 Southeast 15th Avenue
Cape Coral, FL 33904-7125,

JACKIE EVANS
6523 Kit Fox Ct
Colorado Springs, CO 80925,

CAROL FAHERTY
835 Mount Hope Street
North Attleborough, MA 02760,

DENISE FAREED
7573 Briar Crest Court
Riverdale, GA 30296-7100,

AYANNA FARMER
1328 Hollenbeck Lane
Riverdale, GA 30296-7108,

COMPLAINT

PAUL FARRAR
1846 Penn Store Road
Spencer, VA 24165-3280,

BRIAN FARRIMOND
2880 Woodruff Drive
Orlando, FL 32837-9195,

MARK FEATHER
671 Forest Drive
South Lyon, MI 48178,

JOSEPH FEIST
4638 North 71st Lane
Phoenix, AZ 85033-1413,

STANLEY FENTON
24605 Oakview Place
Punta Gorda, FL 33980-5254,

VICTORIA FENTY
309 North 3rd Street
La Crescent, MN 55947-1122,

ALNESHA FERGUSON
7426 Glen Manor Drive
Houston, TX 77028-1720,

MARIO FERRERO
1507 West Elm Street
Lodi, CA 95242-2912,

NATALIE FIELDS
3906 Willow Run
Flower Mound, TX 75028-1264,

ROKIYA FIELDS
1529 Turtlebrook Lane
Lawrenceville, GA 30043,

TANYA FIELDS
205 North 3rd St
Dupo, IL 62239-1236,

DAVID FIERRO
8017 San Jose Road
El Paso, TX 79915-3344,

OSCAR FIGUEROA
1115 W Fremont Avenue
Salt Lake City, UT 84104,

TAMMI FINAN
5546 Bandera Springs Circle
Riverview, FL 33578,

COMPLAINT

AMANDA FITZWATER
859 Virginia Avenue
Harrisonburg, VA 22802-2530,

LINDA FLANAGAN VAHL
10333 Georgia Lane
Oak Lawn, IL 60453-4632,

DOUGLAS FLATAU
13649 Landmark Drive
Baton Rouge, LA 70810-0423,

MARK FLATEN
1301 Southwest 360th Street
Federal Way, WA 98023-7261,

JIMMY FLINCHUM
2120 Orchard Lane
Carpentersville, IL 60110-3338,

TERRY FOREMAN
1609 Leann Dr
Jonesboro, AR 72405,

EVE FOWLER
17744 Puma Drive
Weed, CA 96094-9300,

BRADLEY FRAIL
3319 Curlew Avenue
Leesburg, FL 34748-8477,

VANESSA FRANKLIN
3144 Northeast 4th Court
Ocala, FL 34479,

MARION FRATUS
8 Andalusia Lane
Port St. Lucie, FL 34952,

ALICE FRAZIER
926 Ketcham Street
Indianapolis, IN 46222-3608,

DESIREE FRYER
2644 McKinley Place Southeast
Port Orchard, WA 98366-2353,

MARJORIE FULMER
325 Buyck Road
Titus, AL 36080-4907,

KAREN FUSILLI
221 North Franklin Street, Apt 312
Lake City, MN 55041-1045,

COMPLAINT

SARAH FUTRELL
6531 Northeast 44th Street
Kansas City, MO 64117-1655,

DANA GAGNE
4719 Kanoy Drive
Lakeland, FL 33805-7561,

LISA GALANTER
520 Wilton Circle
Sanford, FL 32773,

SERENA GANOUNG
740 East Independence Dr, #3
Palatine, IL 60074-1961,

JOSEF GAONA
1814 East Oak Avenue
Midland, TX 79705-6921,

JORGE GARCIA
608 S Stevens St, #303
Spokane, WA 99204-2622,

RAMON GARCIA
1421 SW 27th Ave, Apt 406
Ocala, FL 34471-2076,

CRUZ GARCIA III
1507 Mission Road, Apt 5404
San Antonio, TX 78210,

JORGE GARSIA
2727 Pacific Street, Space 134
Highland, CA 92346,

YVONNE GARY
10431 Southwest 144th Avenue
Miami, FL 33186-3041,

JOE GATES
4904 Needles Court
Las Vegas, NV 89130-2200,

LACHANTA GATLING
543 Elkins Avenue
Philadelphia, PA 19120-2204,

KRISTOFER GEFFEN
1433 Northeast 19th Avenue, Apt 3
Portland, OR 97232-1469,

THERESA GENETT
4411 Camp Trail
Acworth, GA 30102-6240,

COMPLAINT

HARRIET GESSHEL
2452 Alhambra Street
Clearwater, FL 33761-2602,

DANA GIBBS
6414 Limekiln Pike
Philadelphia, PA 19138-3024,

BARBARA GIBSON
104 Elm Street
Hogansville, GA 30230-1013,

BONITA GILBERT
209 Taylor Ridge Trail
Villa Rica, GA 30180-5853,

CUCIUKYWANA GILES
11 Lazy Swing Court
Manvel, TX 77578-1570,

TARA GILFORD
4425 Davenport Street
Houston, TX 77051-2615,

KEVIN GILLEN
7217 Harrison Ave
Hammond, IN 46324-1927,

BOBBY GILLENTINE
13611 Keepers Green St
Dallas, TX 75240,

CHRYSTEE GILLETT
138 SW Marcia Way
Port Orchard, WA 98366,

JERRY GILLIATT
1012 91st Street, Apt D
Indianapolis, IN 46240-1843,

SARAH GIPSON
8016 Mid Haven Road
Dundalk, MD 21222-3456,

CAROLYN GIVENS
216 Starlight Drive
Forney, TX 75126-4709,

VLADIMIR GJEORGJIEV
6148 Knoll Wood Road
Willowbrook, IL 60527,

CHASITY GLADNEY
3711 Clendon Court
Charlotte, NC 28216-3133,

COMPLAINT

FRANCOISE GLASS
195 Casora Drive
Crawfordville, FL 32327-4163,

MARISA GLASS
2109 Oak Park Avenue
Berwyn, IL 60402-2294,

DAVID GOEHST
2504 Douglas Avenue
Kokomo, IN 46902-3370,

SONYA GOETZ
9817 Cactus View Avenue
Las Vegas, NV 89117-0176,

CRYSTAL GOINGS
1422 Tulip Dr, Lot 7
Darlington, SC 29532-73335,

STEVEN GOLDBERG
1238 Sandy Acres Trail
Tallahassee, FL 32317-8094,

JONATHAN GOLDEN
5114 Balcones Woods Drive, Ste. 307-192
Austin, TX 78759,

EDIE GOLIKOV
18322 Collins Street, unit c
Tarzana, CA 91356-2436,

JOSE GONZALEZ
8315 44th Street
Lyons, IL 60534-1740,

JOSHUA GONZALEZ
27157 Arla Street
Moreno Valley, CA 92555-4950,

JULIANA GONZALEZ
73 Henry Street
Framingham, MA 01702-8203,

LISSETTE GONZALEZ
372 7th Street #A
Imperial Beach, CA 91932-1402,

DAVID GOODE
5210 West Shannon Street
Chandler, AZ 85226-6104,

LATEIA GOODMAN
5440 Pierce Street
Hollywood, FL 33021-5736,

COMPLAINT

SHELTON GORE
733 Highland Meadows Street
Davenport, FL 33837-7927,

DAVID GOULD
8304 Rockaway Street
Ballston Spa, NY 12020,

FRED GOULDEN
6726 Carters Blf
San Antonio, TX 78239,

PATSY GRAHAM
450 County Road 1069
Vinemont, AL 35179,

AMELIA GRAHAM-ULASTIRICI
105 Myrtle Street, Box 114
Clio, SC 29525,

SHAKIRA GRANGER
112 Shiloh Dr, Apt A
Greenville, NC 27834-8575,

ALFREDA GRANT
4850 Tanglewood Road
Blackstock, SC 29014-8752,

KATHI GRANT
914 Pawnee Drive
Elizabethtown, KY 42701-2038,

KIANNA GRANT
2719 Bergen Bay Lane
Fresno, TX 77545,

HEATHER GRAY
4230 N 21st St, #7
Phoenix, AZ 85016,

LUCINDA GRAY
11078 Harrowfield Road
Charlotte, NC 28226-4457,

STEPHANIE GRAY
44 Airshire Place
Hazelwood, MO 63042-2704,

EDMOND GREEN
1001 26th St
Phenix City, AL 36867-4025,

FATONIA GREEN
1761 Jefferson Lane
Douglasville, GA 30134-3246,

- 30 -
COMPLAINT

JENNIFER GREEN
913 Ashland Ave
Statesville, NC 28677-4037,

NERISSA GREEN
814 Sherman Ave
Ackley, IA 50601-1650,

NIKITA GREEN
800 Sangaree Pkwy, Apt 207C
Summerville, SC 29486-2095,

KHADIJAH GREGG JOHNSON
305 22nd Street, Apt 22
Winnfield, LA 71483-7013,

ROBIN GREGORY
3000 Corsair Drive
Pensacola, FL 32507-8100,

MICHAEL GREZESZAK
2557 Nashua Lane
Boise, ID 83706-4573,

JASON GRIBBLE
1024 East Northfield Boulevard
Murfreesboro, TN 37130-1247,

KYRA GRIBBLE
144 Gladys Court
Belvidere, IL 61008-3521,

LASHEKIA GRIMES
3911 Baylor Street
Greensboro, NC 27405-3105,

AMANDA GRISWOLD
490 Charles Avenue
Orange City, FL 32763-6746,

STACI GROGAN
2010 Horizon Ct, Apt 103
Woodbridge, VA 22191,

GABRIEL GUERRERO
1500 N Rainbow Blvd, Unit 255
Las Vegas, NV 89108,

JESUS GUERRERO
1277 Chestnut Avenue
Beaumont, CA 92223-1720,

ANNETTE GULLEY
75 S Trekell Rd, Apt 4107
Casa Grande, AZ 85122,

- 31 -
COMPLAINT

CATHY GUM
17512 Collier Circle
Poolesville, MD 20837-2121,

RENEE GUNN
121 Dave Drive
Clarksville, TN 37042-4068,

JOHNNIE GUNSBY
3002 Fountainhead Circle, #108
Melbourne, FL 32934,

ANGELINE GUNTER
10 Walden Court
North East, MD 21901-2803,

MARTY GUNTER
8104 Hydra Lane
Las Vegas, NV 89128-1652,

HEATHER GURNEY
19 Park Avenue
Dixfield, ME 04224-9506,

JOANNE GUSHUE
11559 84th Street Circle East, Unit 102
Parrish, FL 34219-2813,

LAURA GUYER
455 Seastone Street
Raleigh, NC 27603-3192,

MICHAEL HAAS
4 Palmer Avenue
Whitesboro, NY 13492-1112,

PAMELA HACKETT
1890 South Lincoln Avenue, Apt 47
Vineland, NJ 08361-7277,

LUKE HADLEY
462 School House Rd
Nazareth, PA 18064,

RANDALL HAINAN
6658 Garland St
Ft Myers, Fl 33966,

NAKEYA HAIRSTON
4700 Chaucer Drive
Greensboro, NC 27407-4076,

RACHEL HALPER
306 Southeast 13th Avenue
Milton-Freewater, OR 97862-1161,

COMPLAINT

HUDA HAMED
528 West 151st Street
East Chicago, IN 46312-3811,

MARLON HAMPTON
5824 East Washington St, Apt 2
Indianapolis, IN 46219,

TAKEIA HAMPTON
23601 Eight Mile Road, 201
Detroit, MI 48219-6204,

SAMANTHA HANNEY
6600 McKinney Ranch Parkway, Apt 12205
McKinney, TX 75070-6510,

CYNTHIA HANSON
10621 South Fork Loop
Panama City, FL 32404-4890,

QUANITA HARDNETT
2782 Vining Ridge Terrace
Decatur, GA 30034-4192,

DANETTA HARRIS
18840 Northwest 11th Court
Miami, FL 33169-3724,

ELISHA HARRIS
6633 East David Drive
Tucson, AZ 85730-1635,

NICOLE HARRIS
5425 Sherwood Street
Baton Rouge, LA 70805-4547,

ASHRAF HASAN
11555 Bissonnet Street, Apt 415
Houston, TX 77099,

NICOLE HASSAN
707 Logan Street
Lena, IL 61048,

HEIDI HATFIELD
200 Scarlett Circle
Franklinton, NC 27525-9013,

RISHAUNDA HAWES
2630 Coventry Road
Augusta, GA 30909,

TALISHA HAWTHORNE
2101 Kingsley Dr, Apt 12106
Pearland, TX 77584-4116,

- 33 -
COMPLAINT

AMANDA HAY
24185 N Field Rd,
Florence, AZ 85132,

KEON HAYES
801 Hoods Mill Road, E8
Woodbine, MD 21797,

RALLEDA HAYES
1 Bertoldo Road
Park Forest, IL 60466-1846,

ARLEACIEA HAYMES
120 Garden Grove Street, Apt 4B
Danville, VA 24541-6167,

THOMAS HAYNES
50 Oak Street
Braintree, MA 02184-4643,

NICOLE HAYS
9504 Joliffbridge Rd
Centralia, IL 62801-5622,

TANDRA HEFLEY
307 5th Avenue East
Buckeye, AZ 85326-1313,

AARON HENDERSON
1900 S Kanner Hwy, Apt 10-204
Stuart, FL 34994-7206,

ELLA HENDRIX
168 Magna Carta Lane
Sparks, NV 89431-5420,

HUNTER HENLEY
2087 Princeton Ave
Saint Paul, MN 55105,

CHRISTINA HENSON
4289 River Gate Lane
Little River, SC 29566-6826,

DEREK HERMRECK
8715 West 99th Terrace
Overland Park, KS 66212-4149,

ALFREDO HERNANDEZ
5520 West 82nd Street
Burbank, IL 60459,

MICHELLE HICKS
2217 South 107th East Avenue
Tulsa, OK 74129-4831,

- 34 -
COMPLAINT

STEPHANIE HICKSON
94 Meadow St
Chicopee, MA 01013,

KEITH HIGHLEY
10717 Waycross Avenue
Louisville, KY 40229-5310,

CHRISTINE HILL
914 West 19th Avenue
Apache Junction, AZ 85120-6387,

NICOLE HILL
850 Weiblen Pl
New Orleans, LA 70124-1765,

FONTREIA HILLIARD-MAGEE
1499 U.S. 49
Magee, MS 39111,

MELISSA HINDERLITER
4373 Tennessee 49
Tennessee Ridge, TN 37178-6031,

TONJA HODGES
10630 Red Run Blvd, Apt 110
Owings Mills, MD 21117,

BRIAN HOFFMANN
1775 SE Glacier Trail, Apt 104
Waukee, IA 50263-1243,

AMY HOGBERG
425 Bridge St, Room 219
Groton, CT 06340-3432,

MIRIAM HOLLEY
305 Spencer Avenue
Ferguson, KY 42533-9401,

LONNIE HOLMAN
203 3rd Ave
Joliet, IL 60433-1822,

TONYA HOLMES-KIRK
1206 Marydale Drive
Arlington, TX 76013-3631,

STANLEY HORTON
3675 Fairlane Drive Northwest
Atlanta, GA 30331-1533,

ELIZABETH HOSKINS
208 Marlene Drive
Jacksonville, NC 28546-7537,

COMPLAINT

LAWANDA HOUGH
220 Old Clinton Rd, 703
Gray, GA 31032-5442,

KHRISTI HOWARD
1543 E Lardner Dr
Casa Grande, AZ 85122,

MONICA HOWARD
801 Georgina Ct, Apt A
North Chesterfield, VA 23236,

XINGBE HUANG
1799 Brookside Lay Circle, 1799
Norcross, GA 30093-1120,

KIMBERLY HUBBARD
330 West 3rd Street
Bonnie, IL 62816-1003,

DEONTAE HUDSON
7130 South Washtenaw Avenue
Chicago, IL 60629-2018,

HELEN HUFFMAN
2077 Highway 81
Oxford, GA 30054-4363,

MARGARET HUGHES
1998 North Iowa Street
Chandler, AZ 85225-7080,

SALLY HUGHES
102 Water Tank Road
Gray Court, SC 29645-4324,

AMBERLY HUGULEY
4910 Paramount Drive
Louisville, KY 40258,

JASMEN HUITRON
105 S 97th St, #G210
Mesa, AZ 85208,

ASHLEY HUMPHREY
1238 Diamond Avenue
South Bend, IN 46628-2720,

MARCIA HUMPHREY
1238 Diamond Avenue
South Bend, IN 46628-2720,

TELEKA HUMPHRIES
3418 Capitola Street
Jacksonville, FL 32209-3320,

COMPLAINT

ADAM HUNT
20 North Madeira Street
Baltimore, MD 21231-1650,

CLAYTON HUNT
5514 Griggs Road, Apt 2633
Houston, TX 77021,

DEBORAH HUNT
8700 E Marginal Way S, Hangar B2
Tukwila, WA 98108-4000,

CASSANDRA HURD
45177 West Zion Road
Maricopa, AZ 85139-9107,

CAROLINE HURLEY
115 Clover Street
Mount Holly, NJ 08060-1836,

PATRICIA HURSEY
7652 Plantz Road, Unit C
Marysville, CA 95901-9471,

DANIELLE HUTCHINS
584 Perry Highway
Harmony, PA 16037-7418,

MICHAEL HUTSON
2415 Mansker Drive
Nashville, TN 37115-2215,

MASON IBARRA
32158 Rosemary Street
Winchester, CA 92596-8964,

KHADIAH IMANI
10531 West Mohave Street
Tolleson, AZ 85353-1143,

BRANDI INDELL
14380 Tugwell Avenue
Port Charlotte, FL 33953-1423,

ANGEL INGRAM
1522 Poplar Avenue
Royal Oak, MI 48073,

PHYLLIS IVERSON
34151 Radley Way
Wesley Chapel, FL 33545,

JESSICA JACKSON
1564 North Carey Street
Baltimore, MD 21217-2806,

COMPLAINT

KARYNNA JACKSON
9100 Lakewood Drive Southwest, E101
Tacoma, WA 98499-3902,

KATHLEEN JACKSON
1033 Gershwin Avenue North
Oakdale, MN 55128-6147,

KIM JACKSON
1113 Butterfield Rd
Downers Grove, IL 60515,

KRYSTAL JACKSON
718 Dejay Street
Fairfield, TX 75840-2014,

VERONICA JACKSON
8315 Harris Pond Drive, Apt H
Charlotte, NC 28269-9307,

SHUNTAYE JACOBS
3905 Harrison St
Monroe, LA 71203-4463,

ANGEL JAMES
1910 NW 50th St
Miami, FL 33142,

CLARENCE JAMES
44 Massey Drive
Phenix City, AL 36869-2930,

KAREN JAMISON
1685 Oakland Ave
Jackson, MS 39213,

MEREDITH JAMRY
15 Parkside Court, Apt 8
Vernon Hills, IL 60061-1179,

WAEL JARADAT
4461 Barrington Court
Rocklin, CA 95677-3245,

ANGELA JARMAN
125 South Alma School Road, Apt 1178
Chandler, AZ 85224,

SHANNON JARMAN
8635 Pratt Drive
New Port Richey, FL 34654-5133,

ROSE JARVIS
323 Big Sandy Creek Drive
Hutto, TX 78634,

- 38 -
COMPLAINT

CIARA JEFFERIES
9610 White Bluff Road, Apt 1601
Savannah, GA 31406-4657,

DONALD JEFFERS
8317 Westport Road
Charlestown, IN 47111-9335,

DELORIS JEFFERSON
5527 Frontier Ct
Ellenwood, GA 30294,

LISA JEFFERSON
700 Benedetti Drive, Apt 101
Naperville, IL 60563,

MIKAL JEFFERSON
7333 Dumosa Avenue, Apt 1
Yucca Valley, CA 92284-3765,

TERESA JEFFREY
20 Clyde Pl, PH
Staten Island, NY 10301-2211,

PEGGY JELLIE
29 Ponderosa Park
Charlestown, NH 03603-4547,

SARAH JENNINGS
118 Perry Ave, Trlr 1
Leland, NC 28451,

NINA JEWETT
1633 Southwest Morelia Lane
Port St. Lucie, FL 34953-1234,

KAVETRIUS JILES
7040 Ivy Pointe Row
Austell, GA 30168-5837,

MELISSA JOHNS
517 Gueltig Avenue
Edwardsville, IL 62025-2122,

SONYA JOHNS
3036 RG Buchanan Drive
La Vergne, TN 37086,

ANGELA JOHNSON
7530 Chesterfield Road
Pensacola, FL 32506-5506,

CAROLYN JOHNSON
1156 Mayfair Court
Vineland, NJ 08360-2480,

COMPLAINT

CHRISTIAN JOHNSON
707 2nd Street
Tylertown, MS 39667-2700,

DAPHNE JOHNSON
6605 Captain Johns Court
Bryans Road, MD 20616-3005,

DEBRA JOHNSON
943 Longhorn Lane
Pacific, MO 63069,

ELAINE JOHNSON
907 Jena Court
West Hempstead, NY 11552-4014,

GLENDA JOHNSON
57 Pattie Cove
Jackson, TN 38301,

JAIME JOHNSON
33 Grant St, Apt 1
Fort Thomas, KY 41075-2611,

KANIKA JOHNSON
508 Catina Way #96
Newport News, VA 23608,

KEITH JOHNSON
100 Glen Gate Loop
Cathlamet, WA 98612,

LAHOMA JOHNSON
3650 Steelton Street
Beaumont, TX 77703-3350,

MICHAEL JOHNSON
5035 Minuteman Drive
Cheyenne, WY 82001,

NATALIE JOHNSON
130 East Cook Avenue, Apt 601
Libertyville, IL 60048-2036,

PATRICE JOHNSON
196 Wells Street
Courtland, MS 38620-9581,

SHANELL JOHNSON
705 East 78th Street, 2W
Chicago, IL 60619-2903,

STEPHANIE JOHNSON
6643 Dogwood Avenue
Manvel, TX 77578-3612,

- 40 -
COMPLAINT

VIRGIE JOHNSON
1316 Syracuse Street
Darlington, SC 29532-4514,

AMARIS JONES
55 Luce Del Sole, Unit 3
Henderson, NV 89011-3220,

BETTY JONES
7009 Chardonnay Dr
Frisco, Texas 75035,

CARLOS JONES
Old Springhill Road
Demopolis, AL 36732,

CHARLOTTE JONES
7505 High Seas Drive
Millington, TN 38053-3605,

CHONDALE JONES
103 Loryn Drive
Hutto, TX 78634-5082,

DARREN JONES
2045 Defoors Ferry Road Northwest
Atlanta, GA 30318-2327,

DONNA JONES
2909 1/2 Dawn Drive, Apt 3
Grand Junction, CO 81504-4959,

FRANK JONES
1311 North Whatley Road, Lot 15
White Oak, TX 75693-3100,

NICOLE JONES
2651 Favor Rd SW, Apt 1i4
Marietta, GA 30060-6146,

THOMAS JONES
20304 Baldpate rd
Altoona, FL 32702,

TIARA JONES
5442 Fernglen St
Memphis, TN 38141-0588,

DUSTIN JORAH
21624 Mahon Drive
Southfield, MI 48075-3827,

EVELYN JOSLYN
1921 East Fairway Drive, Apt 3
Orange, CA 92866-3344,

- 41 -
COMPLAINT

KAIS JRIBI
5222 Wood Cir W
Lakeland, FL 33805-9510,

CITARA JUAREZ
819 Northwest Valley Woods Drive, A
Grain Valley, MO 64029-9770,

MICHAEL JUAREZ
302 W Marine Way #7
Kodiak, Alaska 99615

DAVID JUNG
10570 Northfax St
Fairfax, VA 22030-2236,

JESSE JUST
10621 100th Street Court Southwest
Lakewood, WA 98498-1715,

MICHELLE KARL
17599 Kingsbrooke Cir, Apt 101
Clinton Township, MI 48038-3709,

AYAHNE KATES
2232 Burlington Avenue North
St. Petersburg, FL 33713-8839,

VICTOR KATZ
9 Celia Court
Suffern, NY 10901-3302,

SHERICA KEARSE
20 Riverside Drive
Taylors, SC 29687-2344,

VANESSA KELLEY
2410 North Co Road 1600
Niota, IL 62358,

BRENNA KELLY
5148 North Logan Avenue
Minneapolis, MN 55430-3451,

ELIZABETH KELLY
826 Merideth Drive
Bowling Green, KY 42101-2958,

JESSICA KELLY
1528 Wynfield Dr
Little Elm, TX 75068-6445,

FRAN KEMMERLIN
1631 Reunion Park Drive
Apex, NC 27539-6863,

- 42 -
COMPLAINT

AMANDA KENNEDY
35 Marjorie Lane
Manchester, CT 06042-2075,

AMELIA KENNEDY
1512 34th Ave N
Birmingham, AL 35207-4116,

RANDY KENNEDY
669 Asheville Highway
Strawberry Plains, TN 37871-5719,

RENAE KENNEY
9400 Indian Boundary
Gary, IN 46403-1605,

MICHELLE KEOWN
25 Grappone Drive
Concord, NH 03301-7416,

ROBERT KEPLER
25377 West Park Avenue
Buckeye, AZ 85326-2572,

JESSE KILMON
903 Union St #1011
Seattle, WA 98101,

ROBERT KIMBERLIN
727 Hwy 51SE
Bogue Chitto, Ms 39629,

JOSHUA KING
521 Bulldog St SE
Lacey, WA 98503-1421,

MATHEW KING
718 Whitney Avenue
Lexington, KY 40508-1149,

STEVEN KINGSLEY
560 County Route 7
Hannibal, NY 13074,

KIMBERLY KITTS CARPENTER
56 Park Avenue
Elsmere, KY 41018-1932,

JEFFREY KLEE
2904 E Belgravia Ave
Fresno, CA 93721,

KATHERINE KLEIN
3228 North Opal Avenue
Chicago, IL 60634-3041,

- 43 -
COMPLAINT

JENNIFER KLINCIK
1355 Meyer Road
Hoffman Estates, IL 60169-1219,

WILFRED KNAPP
212 Bunkerhill Avenue
White Hall, AR 71602-2505,

LLOYDTEYA KNOWLES
102 Northwest 71st Street
Miami, FL 33150,

MICHAEL KOLKOVICH
580 Lawrence Avenue, Apt 216
Roselle, IL 60172,

JULIE KOLP
562 Pershing Avenue
Glen Ellyn, IL 60137-6257,

PHILLIP KOMADA
9182 South Road, Unit D
Palos Hills, IL 60465,

KATIE KORKOLIOS
2012 State Route 35, Apt 69
Spring Lake, NJ 07762,

BRAD KRAMER
4813 Harvest Glen Ct
Fredericksburg, VA 22408,

PAMELA KRAUSE
509 Quincy Avenue
Fort Pierce, FL 34950-8164,

DEBRA KRYSTYN
6834 West Altgeld Street
Chicago, IL 60707-2202,

SHARISSE KUBALA
11364 East Ramblewood Avenue
Mesa, AZ 85212-4067,

JOSEPH LACHANCE
50 Ashland Street
Manchester, NH 03104-5113,

SHERONDA LACY
351 Hickory Creek Dr, Apt 1822
Red Oak, TX 75154-4324,

ODETTE LAMON
50 Lea Drive
Fairview Heights, IL 62208-1205,

- 44 -
COMPLAINT

LOREN LAMOUREUX
13104 Fernway Road
Orlando, FL 32832-6425,

MATTHEW LAMPRECHT
506 Coventry Road
Hoyt Lakes, MN 55750-1331,

LAURA LANCASTER
111 College Hill St
Cheney, WA 99004-2052,

TERRALYN LANDRY
6122 James Road
Austell, GA 30168-5211,

CYNTHIA LARSON
111 Shorewood Lane
Shorewood, IL 60404-9284,

MELEANE LAUMATIA
9050 W Warm Springs Rd
Las Vegas, NV 89148-3826,

GREGORY LAVOOK
8103 Crescent Court
Glassboro, Nj 08028,

TIKIA LAWS
8315 South Marshfield Avenue
Chicago, IL 60620-4609,

ASHLEY LAZENBY
500 Cleveland Avenue Southeast, Apt #106
Atlanta, GA 30354-2273,

KATHLEEN LEACH
655 Sara Lane
Verona, PA 15147-2634,

SANDRA LEACH
3949 West Alexander Road, Unit 1222
North Las Vegas, NV 89032,

ZOELYNN LEACH
3708 Flatrock Mountain Drive
Killeen, TX 76549-6530,

BYUNG JIN LEE
2313 Candle Wood Court
Plainfield, IL 60586-7246,

COURTNEY LEE
1704 Sunset Street
Pascagoula, MS 39567-6602,

COMPLAINT

KATHERINE LEE
1530 Northeast 152nd Place
Portland, OR 97230-4632,

WILLIE LEE
510 Rose Hill Terrace
Baltimore, MD 21218-1238,

JAMES LEFFEL
6592 Crabapple Drive
Troy, MI 48098-1977,

RHONDA LEGGETT-MELTON
313 Linda Drive
Washington, NC 27889-7305,

ERIN LEMING
3280 Queensgate Way
Mount Pleasant, SC 29466-6989,

RACHEL LENT
17602 N Cave Creek Rd, #169
Phoenix, AZ 85032-1838,

APRIL LEONARD-NORRINGTON
1618 2nd Street
Madison, IL 62060-1441,

SHARON LETTERMAN
709 N Jefferson
Hooker, Ok 73945,

MATTHEW LEVINSON
1456 Creslow Court, 102
Las Vegas, NV 89102-1688,

CARMEN LEWIS
1529 Kristen Drive
Jackson, MS 39211-2103,

FRANK LEWIS
1078 Huntingdon Pike
Huntingdon Vy, PA 19006-8339,

CHRISTOPHER LIGHT
3489 Caravelle St
Sarasota, FL 34240,

SARA LIGHTBODY
4500 Cedar Lake Rd S #1
St. Louis Park, MN 55416,

TONIA LIGHTNER
455 Herbst Road
Red Lion, PA 17356-8321,

- 46 -
COMPLAINT

ALLEN LIGHTSEY
25 Thomas Creek Rd
Petal, MS 39465,

ANTHONY LIMA
2908 Hawthorne Street
Franklin Park, IL 60131-2517,

KARL LINDEMANN
3200 Pagosa Ct
El Paso, TX 79904-3144,

CHARLES LINEBERRY
2818 Independence Street, Apt 2
Cape Girardeau, MO 63703,

BRITTANY LOCKERT
7740 Southside Blvd, Apt 1904
Jacksonville, FL 32256-0800,

KAREN LOEVENGUTH
2922 East Acacia Club Lane
Tucson, AZ 85706-1758,

NATHANIEL LOGAN
234 Foxford Dr
Cary, IL 60013,

ASHLEY LONG
6332 Shirley Pond Road
Harrison, TN 37341-7673,

APRIL LOPEZ
2531 Broadwalk Blvd, Apt F
Hoffman Estates, IL 60169,

SAMANTHA LOPEZ MENDEZ
2319 Calcite St
Loveland, CO 80537-2004,

KEILAN LOVE
4451 Gateway Park Boulevard, 564
Sacramento, CA 95834,

KENDRA LOWE
P.O. Box 588
San Marcos, TX 78667-0588,

LA SHANDA LOWE
63 North Jamaica Street
Pensacola, FL 32507-2057,

RON LUPIEN II
7605 Almark Street
Tampa, FL 33625-2401,

- 47 -
COMPLAINT

TONI LYNCH
9525 Rainsford Drive
Huntley, IL 60142-2473,

NICHOLAS LYON
1071 Sterling Place, Apt 12
Port Huron, MI 48060-7835,

JEANINE MAAK
2000 Cumberland Dr
Turlock, CA 95382-2145,

LACEY MACKEY
4110 NE 127th Ave
Vancouver, WA 98682-6848,

SCOTT MADLINGER
7 Prince Charles Drive
Toms River, NJ 08757-6571,

MICHELENE MADONNA
26006 Seagull Lane
Millsboro, DE 19966,

NOAH MAGERKORTH
14445 Cool Oak Lane
Centreville, VA 20121-2280,

EMILY MAJOR
751 Mallet Hill Rd, Apt 2207
Columbia, SC 29223-4472,

MICHAEL MALBRAN
981 Redfield Rd, Apt I
Bel Air, MD 21014,

MARK MALEK
1839 Arkose Drive Southeast
Atlanta, GA 30316-4113,

LOUIA MALLEY
15344 Treetop Drive
Orland Park, IL 60462-4698,

STEPHEN MALONE
1012 Newman Dr
Leesburg, FL 34748-4321,

RICHARD MANGES
371 Rock Cut Road
Central City, PA 15926-8404,

NANCY MANGOLD
800 Southeast 159th Court
Silver Springs, FL 34488-8127,

- 48 -
COMPLAINT

DAMIAN MANN
111 Loganberry St, Apt 413
Lake Jackson, TX 77566-5063,

FRANK MANN
692 North Adele Street, spc 52
Orange, CA 92867,

DOUG MANUMALEUGA
3860 West Alameda Road
Glendale, AZ 85310-3302,

JUSTIN MARCUM SR
25827 Rustical Road
Katy, TX 77493,

ALAINA MARSHALL
840 5th Court, Apt 205
Vero Beach, FL 32960-6824,

ANTHONY MARTIN
525 W Legion St
Columbia, IL 62236-1941,

AYME MARTIN
1154 Carlton Dr
Melbourne, FL 32935,

CARLA MARTIN
2637 North Garland Street
Wichita, KS 67204-5032,

CHRISTINA MARTIN
2861 Regal Circle, Apt K
Hoover, AL 35216,

NICOLE MARTINEAU
27 G Street
Montague, MA 01376-1006,

AIDE MARTINEZ
6 Cobbler Ct
Savannah, GA 31419,

TERESA MARTINEZ
18 North Pa-Ha Lane Apt A4
Bishop, CA 93514,

CASSANDRA MARTINSON
19313 114th Place Southeast
Kent, WA 98031-0033,

KERRY MARZO
2414 North Saint Louis Avenue
Chicago, IL 60647-2406,

DEVIEON MATHIS
14415 South Clark Street
Riverdale, IL 60827-2720,

TATIJANA MATTHIS
4339 Galbrath Drive, Apt 514
Sacramento, CA 95842,

NIKKI MAXWELL
1345 SE 5th St
Gresham, OR 97080-8127,

MICHAEL MAY
512 Northgate Road
Lindenhurst, IL 60046-8540,

SEAN MAY
1713 Ryan Street
McHenry, IL 60050-3957,

WANDA MAYER
9408 Moser Avenue
Ocean Springs, MS 39565-7906,

PAULETTE MAYFIELD
24322 Strong Pine Drive
Huffman, TX 77336-4433,

LINDA MAYS
6332 Border Lane
Shreveport, LA 71119-7204,

BRIAHNA MAYSON
7003 Charleston Court, Apt B
Jonesboro, GA 30236,

BRIAN MAZUR
6017 Yates Court
Nolensville, TN 37135-3017,

COURTNEY MAZZA
11171 Detroit Way
Northglenn, CO 80233-4635,

DANIEL MCCABE
2245 NW 182 St
Edmond, OK 73012,

BRADLEY MCCARTY
18418 Delaware Avenue
Redford Charter Township, MI 48240-1932,

TAMIKA MCCLARY
14015 South Stewart Ave, Apt 2W
Riverdale, IL 60827,

- 50 -
COMPLAINT

TIFFANY MCCLELLAN
1108 East Front Street
Monroe, MI 48161-1940,

PHIL MCCLURE
54 Russo Drive
Palm Coast, FL 32164-8906,

COLLEEN MCCOLLOM JAMISON
N2015 7th Avenue
Endeavor, WI 53930-9635,

VINNIE MCCOY
88 North 4th St
Paterson, NJ 07522-1328,

WILLIAM MCCULLOUGH
15974 Highway 174
Pell City, AL 35125-4432,

LASHONDA MCDANIEL
3037 Lucas Circle
Augusta, GA 30906-1854,

TERESA MCDANIEL
2675 Battleground Road
Cowpens, SC 29330-9411,

CANDACE MCDONALD
2414 Wentworth Drive
Montgomery, AL 36106-3239,

KRISTIN MCDONALD
1606 Walton Street
Houston, TX 77009-2526,

PAMELA MCDONALD
1711 West Shell Point Road
Ruskin, FL 33570-3104,

YAMINAH MCDONALD
828 Bebee Road, Apt 1134
Kyle, TX 78640,

DAVID MCDONOUGH
206 Parkview Gardens, Apt K
Farmville, VA 23901,

DEMIAN MCELHINNY
10041 Imperial Street
El Paso, TX 79924-3718,

HARVONICA MCFARLAND
2002 Bellwood Road, Apt 1304
Tyler, TX 75701-1262,

- 51 -
COMPLAINT

MARIA MCKENNA
338 North West Street
Galesburg, IL 61401-3622,

SHANNON MCKENZIE
315 West Riverside Avenue, Unit 302
Spokane, WA 99201-5016,

SHANNON MCKLVEEN
1202 Springfield Pike, Apt 5
Connellsville, PA 15425-4326,

MARGARET MCLAUCHLIN
765 Nicely Road
Hayesville, NC 28904-7135,

LAUREN MCLAUGHLIN
1305 Pepperidge Lane
Fort Worth, TX 76131,

SHERRY MCLAUGHLIN
488 Glen Haven Drive
Deltona, FL 32738-8927,

DANIEL MCLEAN
5665 Omaha Avenue North
Stillwater, MN 55082-6452,

GENESIS MCLENDON
1010 Harris Road
Ozark, AL 36360,

CONNIE MCMILLER-JOHNSON
2949 Franklin Avenue
St. Louis, MO 63106,

CAROL MCNELLY
2058 Rush Mendon Road
Rush, NY 14543-9400,

KIMBERLY MCRAY
116 Sunrise Shores
Harrodsburg, KY 40330-8812,

LAURINDA MCTUCKER
1641 Pomeroy Road
Arroyo Grande, CA 93420-5629,

TERRY MCVEEN
706 June Terrace
Lake Zurich, IL 60047-6252,

ANGELA MEADOWS
1304 Terry Ave
Fayetteville, WV 25840,

COMPLAINT

TAKELLA MEASE
823 Springfield Rd, Apt J1
Danville, VA 24540-1828,

PRISCILLA MEJIA
255 Berkeley Avenue
Newark, NJ 07107-1948,

SUSAN MELLO
415 Tuxedo Boulevard
Webster Groves, MO 63119-1840,

JAMIE MENELEY
1364 Woods Lane, Apt 20A
Jacksonville, IL 62650-9263,

VICTOR MERCADO
3827 September Way
Snellville, GA 30039-8042,

KELLI MESEROLE
1823 Judy Lane
DeKalb, IL 60115-1803,

KATHLEEN MESSINO
798 Magnolia Road
Southampton Township, NJ 08088-3559,

STEPHEN METARELIS
143 West Russet Grove Circle
Conroe, TX 77384-3827,

MELISSA MEYER
824 S Austin Blvd, Apt. 1R
Oak Park, IL 60304-2327,

ELIZABETH MICHELS
8321 Garrett Drive
Tyler, TX 75703-5565,

AMBER MIDDLEBROOKS
2479 Peachtree Rd, Apt 1704
Atlanta, GA 30305-4100,

CYNDI MIDDLETON
4794 scr 77
Mize, Ms 39116,

STACY MIGUT
1870 Howe Lane
Hanover Park, IL 60133-5916,

DEMARRIA MILES
734 Cambridge Way
Lake Wales, FL 33853-2806,

COMPLAINT

CHRISTIAN MILLER
152 Sunflower Drive
Windsor, CO 80550-5507,

CRAIG MILLER
311 North Cherry Alley
Elizabethtown, PA 17022-1969,

FHERYL MILLER
605 Hospital Drive #41
Oakdale, LA 71463,

JAMES MILLER
10943 West Santa Fe Drive
Sun City, AZ 85351-2519,

KATELYN MILLER
4019 U.S. Highway 136 West
Crawfordsville, IN 47933-8541,

SHERMAINE MILLER
6726 Tara Blvd, 35A
Jonesboro, GA 30236-1469,

KIMBERLY MILLIGAN
440 Dovetail Circle
Summerville, SC 29483-7102,

CARRIE MILLS
3550 Lindenwood Way
Sacramento, CA 95826-4446,

DORLENE MILLS
16054 Spielman Road
Williamsport, MD 21795-4102,

JANICE MILOT
4724 Kennedy Drive
New Prt Rchy, FL 34652-4959,

CYNTHIA MILSTEAD
125 Conestoga Road
Middle River, MD 21220-2112,

ASTARIA MINCEY
535 Barbara Street
Metter, GA 30439-5001,

JORGE MIRANDA
8251 La Palma Avenue, 318
Buena Park, CA 90620-3205,

APRIL MITCHELL
6236 SW 143rd St, Unit B
Ocala, FL 34473,

COMPLAINT

JESSYCA MITCHELL
2905 Forest Hollow Lane, Apt 3409
Arlington, TX 76006-3023,

KIMBERLY MITCHELL
823 Ridge Brook Trl
Duluth, GA 30096,

JERMEY MITCHEM
1353 Castlegar Lane
Justin, TX 76247-5758,

MARY ALICE MIXON
6326 Erskine Drive
Corpus Christi, TX 78412-4758,

PATRICK MOCCIA
602 Annadale Road
Staten Island, NY 10312-3115,

SIERRA MODER
3039 Potomac Avenue
Los Angeles, CA 90016-4130,

KELSEY MOILANEN
8412 Gracious Pine Avenue
Las Vegas, NV 89143-4608,

TRAVIS MONTOUR
2331 Bammelwood Drive, Apt 909
Houston, TX 77014-1507,

CHRISTINA MOODY
151 Stonebridge Drive, Apt D
Morganton, NC 28655,

JENNIFER MOON
168 County Road 6401
Woodland, AL 36280-6916,

JAMES MOORE
1918 Rolling Hills Road
Columbia, SC 29210-5914,

KIMBERLY MOORE
20221 West Arsenal Road
Wilmington, IL 60481-8962,

LISA MOORE
817 Ravens Circle, #208
Altamonte Springs, FL 32714,

ROBERT MOORE
6937 Black Wing Drive
Fort Worth, TX 76137-2364,

COMPLAINT

TINA MOORE
10998 Flat Shoals Road
Covington, GA 30016-4704,

LILLIAN MORALES
1101 Park Street, #110
Turlock, CA 95380,

DOLORES MORENO
9908 Academy Street Northwest
Albuquerque, NM 87114-4246,

DASIR MORGAN
297 Crystal St
Jacksonville, FL 32254-4302,

CHAD MORRELL
3215 Tackett Road
Douglasville, GA 30135-9105,

GORDON MORTENSEN
3962 South 6820 West
West Valley City, UT 84128-3860,

HUGO MOSCOSO
5849 Riverside Drive
Woodbridge, VA 22193-3752,

JESSICA MOSLEY
901 Vine Street
Salina, NY 13088-4501,

MARIAN MOTLEY
7900 Glendale Estates Drive
Richmond, VA 23231-6663,

AMY MOUTRAY
10543 St. Johns Road
Clacton-on-Sea
ESSEX
CO16 8DS,

GREGORY MOVRICH
12570 Jonquil Court
Mequon, WI 53092-2317,

TRACY MOYE
70 Divine Lane
Quincy, FL 32351,

JOYCE MUELLER
8311 Archer Avenue
St. Louis, MO 63132-2729,

MATT MULLOWNEY

COMPLAINT

505 Cheshire Dr
Downingtown, PA 19335,

SHANNON MURPHY
113 Melodic Drive
Newark, DE 19713-1983,

CHRIS MURUA
6411 Kiowa Road
Westminster, CA 92683-2025,

JAMES MUSSER
1674 Pennsylvania 956
Volant, PA 16156-6730,

ANDREA MYERS
4334 Barrington Pl
Macon, GA 31210-4934,

TONYA MYERS
43 Hampton Lane
Lancaster, PA 17601-3713,

PATRICIA NALL
800 Mirabella Circle, Unit 102
Venice, FL 34292,

CRYSTAL NASON
40 Coachlight Court
Daytona Beach, FL 32119,

MATRICIAL NATHAN
2 Elmira Street
North Providence, RI 02904-4317,

GINA NATUCCI
1301 Violet Meadow Street South
Parkland, WA 98444-4063,

QUINN NAUGLE
1208 Mossman Avenue
Springfield, IL 62702-4714,

MICHAEL NELSON
84 Village Lane
Hauppauge, NY 11788,

JEROME NELSON JR
1014 Robinson Street
Danville, IL 61832-3857,

CEDRIC NELSON SR
40 Alamitos Ave Apt #111
Long Beach, CA 90802,

STEFNIE NESBITT

COMPLAINT

28 Windsor Drive
Maumelle, AR 72113-6890,

JOHN NESET
906 4th Avenue Northwest
Dilworth, MN 56529-1833,

KERRI NEWMAN
3323 E Dale St.
Leesburg, FL 34788-8217,

AMBER NEWTOWN
1217 South Duncan Street
Marion, IL 62959-2124,

PATRICK NICOLUCCI
6404 Snowman Court
Columbia, MD 21045-4430,

ROSEMARIE NIEVES
605 Pasadena Ave, Apt 1
Crest Hill, IL 60403,

MICHAEL NIGRO
127 Forest Court
Troy, IL 62294-2176,

LIZ NISLEY
Keizer Road Northeast
Keizer, OR 0,

MARY NOBLES
1220 NW 12th Street, Apt #34
Gainesville, FL 32601-3026,

JASON NOEL
3746 Cold Springs Road
Raphine, VA 24472-2836,

SADRAC NOEL
3902 Hilltop Avenue
Reading, PA 19605-1141,

KATHY NOLAND
5268 Southwest 32nd Avenue
Fort Lauderdale, FL 33312-7908,

TONYA NORRIS
245 Holly Hill Drive
Somerset, KY 42503-5792,

KEVIN O'DELL
3008 Brair Knoll Court
Las Vegas, NV 89108-4244,

AMANDA OHLER

COMPLAINT

110 Bluefield Drive
Slidell, LA 70458-1228,

CATHERINE OLIVER
88 Searle Street
Pittston, PA 18640-2052,

KAREN OLIVER
595 Georgia 224
Montezuma, GA 31063-2144,

SHARONDA OLIVER
418 Douglas Street
Springhill, LA 71075-3102,

LEONIA OMOJOLA
46 Sager Place
Hillside, NJ 07205-1024,

LORENA OROZCO
41 Toledo Court
Davie, FL 33324-5451,

KIMBERLY ORTIZ
503 Poplar Street
Mayfield, PA 18433,

MARIBEL ORTIZ
101 Saint Kolbe Drive
Holyoke, MA 01040,

CHRISTIAN OSBORNE
186 Windsurfer Court
Vallejo, CA 94591-7738,

SANDRA OTHON
3708 N Post St
Spokane, WA 99205-2886,

RENEE PAGE
11781 International Dr, #236
Orlando, FL 32821,

SIDNYE PAIZ
8332 West Clarry Circle
Magna, UT 84044-1807,

PATRICIA PAMPINELLA
709 N Collins Freeway, Lot #125
Howe, TX 75459-3607,

SHELLEY PANTER
211 East Garden Drive
Iowa Park, TX 76367-2707,

SYDNEY PARKER

8240 Stockton Way
Tampa, FL 33647-1714,

SEAN PARKS
2655 Westside Dr NW, #130
Cleveland, TN, 37312,

SERGEI PARSEGOV
1819 Briarcreek Boulevard, Unit D
Houston, TX 77073-1553,

STEFFANIE PASZKO
18642 Keeler Avenue
Country Club Hills, IL 60478-5535,

AJA PATRICK
15124 Irving Avenue
Dolton, IL 60419-2637,

JEREMY PATRICK
1248 Goose Creek
Eastern, KY 41622,

GREGORY PATSY
248 Chearney Road
Acme, PA 15610-1004,

CHARMAINE PEARCE
9466 Vervain St, .
San Diego, CA 92129-3527,

LARRY PEARMAN
15310 Grant Street
Dolton, IL 60419-2633,

KENNY PE-CURTO
9 Chestnut Willow, Apt B10
EAST WINDSOR, NJ 08512,

PAUL PEKLAY
4703 Treelodge Parkway
Sandy Springs, GA 30350,

LAURIE PELOSI
6 Cheever Street
Chelsea, MA 02150,

JULIE PELTOLA
3994 Estate Drive
Longview, WA 98632-4858,

BRONWYN PEREZ
1611 NW 24th St
Boynton Beach, FL 33436-2834,

RENE PEREZ

COMPLAINT

4436 West 129th Street
Alsip, IL 60803-2748,

DANIELLE PERKINS
1002 North 14th Street
Springfield, IL 62702,

LUCY PERKINS
2532 La Golondrina St
Carlsbad, CA 92009-4321,

DANIEL PETCHONKA
471 Thomas Street
Phillipsburg, NJ 08865-3315,

VICTORIA PETERS
6100 Henry Ave, Apt 21
Philadelphia, PA 19128-3060,

WILLIAM PETERS
712 East Washington Street
Doniphan, MO 63935,

MICHELLE PETERSON
601 East Boca Raton Road
Phoenix, AZ 85022-4717,

ANNE PETTY
439 Sugar Hill Addition
Bedford, IN 47421-8141,

AMARA PHILEBAUM
115 South Keystone Circle
Muncie, IN 47303,

JOAN PHILLIPS
358 Douglas Lane
Oneida, TN 37841-6479,

SYDNEY PHILPOTT
5025 Paradise Harbor North
Las Vegas, NV 89031,

MELANIE PICKETT
16585 Green Tree Blvd, #2
Victorville, CA 92395-5663,

CAROLYN PIERCE
21632 119th Court Southeast
Kent, WA 98031-3957,

MARIA PIROLI
17405 Corkill Road, SPC 44
Desert Hot Springs, CA 92241,

TINIKA PLACIDO

COMPLAINT

1430 Seminary Avenue, Apt 9
Oakland, CA 94621-4258,

LOIS PLARINOS
210 Shipman Rd, Apt Q2
Havelock, NC 28532-3102,

ZORAN PODUNAVAC
256 Madison St
Batavia, IL 60510,

MATTHEW POE
184 Iron City Cutoff Road
Anniston, AL 36207-1100,

DAWN POLLARD
1109 School Street
Henry, IL 61537-1156,

ALLEN POOLE
100 E Stone Ave, Apt 215
Greenville, SC 29609,

BILLIE PORTER
3702 Sweet Valley Ln, B2
Lafayette, IN 47909-8316,

LYDIA PORTER
111 South John Street, Apt 3
Dwight, IL 60420,

AALIYAH POWELL
955 Duesenberg Drive, Apt 3304
Ontario, CA 91764,

JEANNIE POWELL
6590 North Carolina 700
Ruffin, NC 27326-9351,

JESSECA POWELL
5811 Bear Lane
Myrtle Beach, SC 29588-8104,

TONJA PRACKETT
951 Main Street
Edmondson, AR 72332,

KELLEY PRICE
258 Ehrett Street
Creve Coeur, IL 61610-3814,

MARILYN PRICE
9814 Farm to Market 1960 Bypass Rd W, #311
Humble, TX 77338,

- 62 -
COMPLAINT

MICHELLE PRICE
700 East Ridge Road
Shawboro, NC 27973-9606,

RONALD PRICE
8403 South 77th East Avenue
Tulsa, OK 74133,

LAURA PRIEST
8609 Harding Street
Center Line, MI 48015-1597,

REAGAN PRIEST
1015 N 2nd Ave, Unit 446B
Phoenix, AZ 85003-1431,

LILLIAN PROCTOR
5044 Blue Rose Street
North Las Vegas, NV 89081-2677,

MICHAEL PRYTULAK
11518 Blackfin Street
Venice, FL 34292-1752,

JAKUB PRZYBYLOWICZ
73 Boxwood Drive
Kings Park, NY 11754-2907,

BRYAN PUERTA
1807 Montopolis Dr, Unit 1339
Austin, TX 78741-5169,

MARLO PULLUM
2354 Turquoise Way
Santa Rosa, CA 95404-5380,

RONELL PURIFICATO
18 Wards Lane
Bellport, NY 11713-2115,

WEIWEI QIN
5 Mallard Court
Frisco, TX 75034-5070,

KESHA QUAGRAINE
2 McCarthy Rd
Park Forest, IL 60466,

CLIFFORD QUERETTE
5385 Cedar Lake Rd, Apt 1523
Boynton Beach, FL 33437,

WENDY QUITO
1316 Dellwood Court
East Stroudsburg, PA 18301-6629,

COMPLAINT

PETER RADIOLI
117 Foster Avenue
Brooklyn, NY 11230-2194,

APRIL RAINEY
5479 State Highway 215S
Jenkinsville, SC 29065-9629,

MELISSA RAJZYNGER
13541 Southwest 10th Place
Davie, FL 33325-1606,

SAMARIA RAMADHAN
1643 Clemmon Sanders Circle
Rock Hill, SC 29732-7643,

DIANA RAMANAUSKAS
3341 S Lituanica Ave, Apt 1R
Chicago, IL 60608-6923,

TRAE RAMBO
2060 N Center St, Lot 319
Mesa, AZ 85201-1559,

DANTE RAMIREZ
488 Cabernet Place
St. Augustine, FL 32084-2580,

DAVONNA RAMIREZ
86 Summit Ridge Circle
Columbia, SC 29229-7149,

RANDY RAMSEY
8751 Ukiah Drive
Dallas, TX 75227-8225,

ANTHONY RANDAZZO
343 Park Avenue
Auburn, ME 04210-4120,

TRACYA RANDLE
6355 South Campbell Avenue
Chicago, IL 60629-1217,

MONIQUE RANDOLPH
3405 Milbrad Street
Houston, TX 77026-4721,

KAMAYA RANGE
1960 Grande Circle, Apt 40
Fairfield, CA 94533-4251,

OHOLIBAMA RANGEL
16120 Stuebner Airline Road, Apt 204
Spring, TX 77379,

- 64 -
COMPLAINT

KIMBERLEIGH RASMUSSEN
11806 Upper 30th Street North
Lake Elmo, MN 55042-4471,

ROBERT RAVELLI
263 Westbrook Drive
Clifton Heights, PA 19018-1118,

BILL READY
1800 Lakewood Court, Spc 79
Eugene, OR 97402-1695,

GLORIA REARDON
4792 S Ridgewood Ave, Apt 201
Port Orange, FL 32127-4548,

MICHELLE REED
2532 Whisper Court Northeast
Dacula, GA 30019-2147,

GIL REED LUGO
1814 Washington St, #4
Hollywood, FL 33020-6244,

CHASITY REESE
402 Center Street
Exeter, MO 65647-9113,

VINCENT REESE
3999 Spring Creek Road
Leslie, MO 63056-1818,

TRISHA REID
1475 Discovery Avenue
Alamogordo, NM 88310-8000,

CATHERINE REILLY
104 McKinley Drive
Coatesville, PA 19320-1759,

CURTIS REMALEY
26710 Cash Ct
Leesburg, FL 34748-8061,

JOSUE REYES
2500 Village Park Drive, Apt 303
Waukegan, IL 60087,

PAUL REYNOLDS
119 Stone Post Lane
Wentzville, MO 63385,

CHASITY RHODEN
4518 Piedmont Street
Orlando, FL 32811-4527,

COMPLAINT

JVANNE RHODES
7934 Greenspan Avenue
Dallas, TX 75232-4835,

HOLLY RICCI
224 Maristone Drive
Statesville, NC 28625-1642,

REGAN RICE
8310 Woodridge Drive
Woodridge, IL 60517-4509,

KIM RICHARDS
8235 West Voltaire Avenue
Peoria, AZ 85381-4098,

CHERINDA RICHARDSON
115 Quail Run
Longview, TX 75603-7628,

DENNIS RIDDLESPERGER
9292 FM 2138 N, 9292 FM 2138 N.
Jacksonville, TX 75766,

KATRINA RILEY-OMARI
362 East 89th Place
Chicago, IL 60619-6750,

ROBERTO RIOS
1112 Mulberry Street
Hammond, IN 46324-1626,

WHITNEY ROBERTSON
91 Harvest Dance Dr
Byhalia, MS 38611-1129,

BETTY ROBINSON
1016 North Live Oak Street
McComb, MS 39648-2622,

DELEEZA ROBINSON
5834 Preston View Boulevard
Dallas, TX 75240,

LEE ROBINSON
11742 North Evelyn Circle
Houston, TX 77071-3402,

CHRISTINE ROCHA
1702 Skyview Drive
Paso Robles, CA 93446-7162,

LUTHER RODGERS
7600 North Bosworth Avenue, 614
Chicago, IL 60626-1273,

- 66 -
COMPLAINT

MEGAN RODGERS
29 North East Street
Spring Grove, PA 17362-1209,

WILLIE RODGERS
9345 Shumard Dr
Tallahassee, FL 32305,

ANTONIO RODRIGUEZ
28320 Desert Varnish Way
Murrieta, CA 92563-8413,

MIRIELLE RODRIGUEZ
19131 Northwest 61st Avenue
Hialeah, FL 33015-5031,

SHEILA ROEDER
3104 Yeltes
Grand Prairie, TX 75054-6787,

CHASSITY ROLLE
105 Castlewood Circle
Lufkin, TX 75904-3139,

GUILLERMINA ROMAN
840 Locust Street, #B
San Jose, CA 95110-3016,

JENNIFER ROMASCAVAGE
1823 West Cedar Street, 2-Jan
Allentown, PA 18104-4127,

DOMINICUS ROOIJACKERS
405 Maggie Circle
Winter Haven, FL 33880-1348,

ALEXANDRA ROOS
1308 12th Avenue South, Apt 27
Seattle, WA 98144-7416,

LINDA RORIE
40 Ken Cv
Ecru, MS 38841,

CHERYL ROSEN
161 West Mountain Street, Apt A515
Worcester, MA 01606,

SAM ROSENBERG
536 South 3rd Street
West Dundee, IL 60118-2810,

WYNESHA ROSS
1086 North Martinez Lane
Colton, CA 92324-6618,

- 67 -
COMPLAINT

RONALD ROTH
605 Bellemeade Boulevard
Gretna, LA 70056-7629,

BARBARA ROUNDTREE
19148 West Denton Street
Litchfield Park, AZ 85340-5745,

CASEY ROZELL
3707 Almondwood Drive
Spring, TX 77389-4727,

EMILY RUBEL
203 Lake Drive
Lufkin, TX 75901-9601,

ROSS RUFFINO
163 Spruce Point
St. Augustine Beach, FL 32086,

MATTHEW RUTLEDGE
11860 Wapato Road
Apple Valley, CA 92308-7649,

ROCKWELL RYDEBERG
113 Jasmine Ave
Davis Junction, IL 61020,

SHELBEA SADUSKY
39 Risher Avenue
Inglis, FL 34449-9712,

TRINA SAICE
403 Litchfield Avenue Southeast, #1
Willmar, MN 56201-3634,

JENNIFER SAKSUN
4 Elm Drive
Bridgeville, PA 15017-3004,

KEVIN SALAY
2723 Marilyn Ave
Shasta Lake, CA 96019-2312,

LINDA SALAZAR
308 Cumbres Patio
Las Vegas, NM 87701-6276,

NICHOLAS SAMOSIR
2611 Muscory Drive
Humble, TX 77396-3996,

STEVE SAMPSON
113 James Circle Southeast
Poplar Grove, IL 61065-9179,

COMPLAINT

LOUISE SAMSON
2929 Southeast Ocean Boulevard, I9
Stuart, FL 34996,

SAMANTHA SANCHEZ
1466 East 112th Street, Unit 1002
Los Angeles, CA 90059,

SANDRA SANCHEZ
9004 Valley Oak Dr
Stockton, CA 95209-2047,

BONNIE SANDER
20 Oakwood Place, Apt B
Keansburg, Nj 07734-1161,

QUENTIN SANDERS
2426 Bream Avenue
Augusta, GA 30906-2311,

CHARLES SANGSTER
5036 Granite Creek Court
Las Vegas, NV 89131-5213,

DENISE SANSONESE
225 Canfield Terrace
Frederick, MD 21702-8713,

ROBERT SANTA ANA
4311 Payne Ave, #211
San Jose, CA 95117-3347,

DANIEL SANTANA
967 Kendall Drive
San Bernardino, CA 92407-4155,

MICHAEL SANTANA
1275 North Chrisden, #F206
Orange County, CA 92807,

ANTIONETTE SATTERWHITE
3460 Balfour Road
Detroit, MI 48224-3434,

JODIE SAVA
880 Waters Street
Waynesboro, GA 30830-1266,

LAURA SCHEDKO
1503 Clara Ave
Louisville, KY 40215-1918,

CRYSTAL SCHLEICHER
1444 Center Avenue
Mitchell, NE 69357-1448,

- 69 -
COMPLAINT

PATCHARI SCHLIEKELMAN
11541 West Olive Drive
Avondale, AZ 85392-4117,

JOSEPH SCHMIDT
1644 Delta Drive
Neenah, WI 54956-1392,

STEVE SCHULTZ
223 Lee Street
Park Forest, IL 60466-1028,

KENNETH SCOTT
184 Howertons Bottom Road, Lot 8
Danville, VA 24540-6156,

HOUSTON SEAGROVES
309 Tullyton Drive
Fountain Inn, SC 29644-7766,

SCOTT SELASKY
16639 Autrey Drive
Harlingen, TX 78552-2594,

CRAY SELLARS
2215 Melrose Drive
Burlington, NC 27217-1031,

CYNTHIA SELLE
2229 Tailburton Ct
Little Elm, TX 75068-5841,

RANDALL SELLERS
3840 Kings Bridge Drive
Douglasville, GA 30135-7289,

EVELYN SELTZ
3720 196th St SW, #642
Lynnwood, WA 98036-5753,

JOSHUA SENESE
2216 South 10th Avenue
Riverside, IL 60546-1117,

JENNIFER SENFT
52 Sedgwick Drive
East Berlin, PA 17316-9351,

JESSICA SENGER
408 Alex Jordan Drive
Duenweg, MO 64841-1091,

RUTH SERVIUS
5565 Curtis Boulevard
Cocoa, FL 32927-2240,

COMPLAINT

SANDY SEWELL
51 Hollis Road
Yatesville, GA 31097-3449,

LAURA SHAPIRO
5017 Hopkins Court
Holland, PA 18966-5125,

BRITNEY SHARPE
5905 43rd St W
Bradenton, FL 34210-3906,

IRIS SHERMAN
2771 Ray Place
Guthrie, OK 73044-6449,

BETTINA SHILLING
3517 Hill Street Southeast, Apt 215
Albany, OR 97322-2803,

LAUREN SHIPMAN
2201 E Macarthur Rd, Lot E24
Wichita, KS 67216-5617,

JAMIE SHULL
317 Tatelyn Drive
Phenix City, AL 36869-3466,

EVA SHUM
9 Chestnut Willow, Apt B10
East Windsor, NJ 08512,

STEPHANIE SIBLEY
Hornaday Circle North, Apt. 1003
Fort Worth, TX 76120,

SHELLY SIEVERS
143 Bush Street
Central Point, OR 97502-2709,

PHILLIP SILVA
1650 S Campus Avenue, #5
Ontario, CA 91761,

STEVEN SILVER
4216 Othello Lane, Apt 104
Fort Myers, FL 33916,

ASHLEY SIMPSON
117 Arapaho Drive
Belleville, IL 62260-2916,

LINDA SIMPSON
1065 South Indian Creek Drive
Stone Mountain, GA 30083-4717,

- 71 -
COMPLAINT

LASHAYLA SIMS
225 E Walnut St
Gloster, MS 39638,

LORRETTA SISCO
6179 Dorlon Drive
Rock Hall, MD 21661-2154,

DANIEL SKORUPA
1872 22nd Ave, Apt 710
Kenosha, WI 53140,

ROBERT SMART
1877 Hill Rise Drive, Apartment 103
Lexington, KY 40504,

ALISA SMITH
49 Old River Road Southwest
Rome, GA 30165-6744,

AMANDA SMITH
606 Highland Avenue
Jeannette, PA 15644-2339,

APRIL SMITH
7312 Briarwood Drive
Little Rock, AR 72205-4915,

DANIELLE SMITH
900 Bottomley Ln
Fruitland Pk, Fl 34731,

JENNIFER SMITH
145 North 74th Street, Unit 113
Mesa, AZ 85207-8327,

JOI SMITH
613 Nelson Lane, #613
Des Plaines, IL 60016-1039,

JYMARA SMITH
5631 One Lake Way
Atlanta, GA 30349-4163,

KNISHA SMITH
10817 Burlington Way N
Mobile, AL 36608-1284,

NANCY SMITH
1269 Baier Avenue
Louisville, OH 44641,

WILBUR SMITH
7105 Harbor View Drive
Leesburg, FL 34788,

COMPLAINT

DONALD SMITHER
10000 Fannin Street, Apt 170
Houston, TX 77045,

CHARLOTTE SNEDDON
1833 South Tallowood Drive
Lake Charles, LA 70605-6459,

KIM SOLA
19434 90th Avenue Court East
Graham, WA 98338,

TOSHIA SORENSEN
8322 W Arbor Park Dr, #103
Magna, UT 84044-3411,

KRISTINA SOSNOWSKI
24337 N 166th Lane
Surprise, AZ 85387-2424,

ANN SOULIER
11935 Southwest King George Drive
King City, OR 97224-2630,

PAUL SPALDING JR
5A Maple Avenue
North Brunswick Township, NJ 08902-2874,

MARY SPALO
1136 Hertford Court
Wheaton, IL 60189-7708,

JOSEPH SPEER
2820 Peachtree Road NW, Apt 1015
Atlanta, GA 30305,

MARCUS SPENCER
1910 9th Street
Winthrop Harbor, IL 60096-1654,

ANTONIOS SPILIOPOULOS
17508 Castle St
Roseville, MI 48066,

BLYTHE SPINDLER
809 Paulsen Street, B
Savannah, GA 31401,

TINISHA ST. BRICE
1309 Ragan Ave
High Point, NC 27260-6825,

LISA STAAKE
303 South Water Street
Monona, IA 52159-7635,

COMPLAINT

CHRISTOPHER STACY
2650 Merchants Walk, A104
Murfreesboro, TN 37128-2863,

CHERYL STANLEY
17298 South Overlook Road
Oregon City, OR 97045-9459,

TONY STANLEY
257 Louisiana 134
Rayville, LA 71269-6258,

ADISON STAPLETON
312 9th Ave SE
Waseca, MN 56093-3119,

PAMELA STARK
9925 Ulmerton Rd, Lot 242
Largo, FL 33771-4247,

TIFFANY STARKS
44728 Old Warm Springs Boulevard, 314
Fremont, CA 94538,

SHANNON STAUL
1101 East Washington Street
New Castle, PA 16101-4411,

SHARON STEBICK
128 Meadowbrook Road
Ridgway, PA 15853-7336,

TERRY STEENSTRY
6817 NE 49th Terrace
Kansas City, MO 64119-3917,

WILLIAM STEFFY
700 Waverly Rd, Apt 1201
Porter, IN 46304-3725,

JOHN STEINBERG
766 Cherokee Drive
Bourbonnais, IL 60914-1340,

WENDY STEINER
1085 Confer Ave, Apt 1
Johnstown, PA 15905,

DOUGLAS STENDA
511 Center Avenue
Glen Dale, WV 26038-1602,

SANDRA STEVENS
116 Lake Point Bluff
Clarkridge, AR 72623-9517,

- 74 -
COMPLAINT

JAMES STINE
4607 Callahan Street
Indianapolis, IN 46239-1707,

ROBERT STOLL
239 Hadleigh Road
Bolingbrook, IL 60440-2353,

JOANNE STONE
2544 East 24th Street
Granite City, IL 62040-5637,

SHARON STOREY
59610 Barr Avenue
St. Helens, OR 97051-1205,

THOMAS STOW
2407 Southwest 10th Street
Bentonville, AR 72712-6376,

MYEASHA STRAIN
3400 Cabana Drive, Apt 1044
Las Vegas, NV 89122,

DEBBIE STRATTON
311 Market Street
Berger, MO 63014,

SHERILEE STRITOF
22516 Pacific Way
Ocean Park, WA 98640-3427,

BARBARA SULLIVAN
35 Park Ave, Apt 5F
Suffern, NY 10902,

ERIN SULLIVAN
2114 West Tyson Street
Chandler, AZ 85224-4212,

SCOTT SULLIVAN
12807 Pinnacle Drive, 301301
Germantown, MD 20874,

LAURA SUMMERALLS
16225 Florida 29, PO Box 696
Felda, FL 339305,

KYLE SUNDGREN
2592 Camel Back Road
Brentwood, CA 94513-4619,

DENISE SUTTON
4835 Wells Branch Heights, Unit 107
Colorado Springs, CO 80923-1145,

COMPLAINT

ALICIA SWANSON
730 Bittern Ln, Unit B
Kissimmee, FL 34759,

DANIEL SWARTZ
592 West Lake Drive
Smyrna, DE 19977-1619,

DAVID SWENTNER
15811 High Bell Place
Bradenton, FL 34212-3915,

TIMOTHY SWOPE
2800 Jeanetta Street, 2411
Houston, TX 77063,

SHARI SYLVIA
9508 Dongate Lane
Knoxville, TN 37931-1405,

WALTER SZKWAREK
5731 Northwest 66th Avenue
Parkland, FL 33067-1330,

JORDAN TAGUE
2315 Moser Avenue, Unit 120
Dallas, TX 75206-7000,

TYRIQ TALIFERRO
1910 Bainbridge St
Richmond, VA 23224-2014,

LAKEMA TATE
1772 Orchid Ave, #17
Los Angeles, CA 90028-4380,

LINDA TATUM
3978 Highway 34 W
Newnan, GA 30263,

ANTONIO TAYLOR
1130 The by Way
McDonough, GA 30252-4202,

DANIELLE TEETER
35 Cave Street
Lockport, NY 14094-3806,

SHERRY TEETERS
4425 Dearing Road
Willcox, AZ 85643-3277,

ZACKARY TERHUNE
4206 Forest Avenue
Kansas City, MO 64110-1242,

COMPLAINT

JUAN THAMES
13300 North 88th Avenue, Apartment 1047
Peoria, AZ 85381,

LATANYA THOMAS
4921 190th Street
Country Club Hills, IL 60478-5910,

GRACE THOMPSON
2200 South Fort Apache Road, Unit number 1091
Las Vegas, NV 89117,

MICHELLE THOMPSON
98 Ridge St
Manchester, CT 06040,

RONISHA THOMPSON
10675 Farview Avenue
Saint Ann, MO 63074-3719,

SHAWN THOMPSON
22937 Newberry Street
St. Clair Shores, MI 48080-1963,

GERICKA THORNTON
988 Valley Farm Drive
Lexington, KY 40511-1313,

EMERY THORNWELL
137 State Street, Apt 3
Charlotte, NC 28208-4270,

CHERRITTA THRASHER
10326 Gelding Dr, Unit D
Cockeysville, MD 21030-4134,

JULIE THURBER
38841 Scravel Hill Road Northeast
Albany, OR 97322-9554,

NOEL THURMAN
1658 Paloma Lane
Dunedin, FL 34698-3709,

SHERYL TIDWELL
5280 Silo Road
Sumter, SC 29150-8334,

KAMI TOBEY
401 Windermere Way
Lake in the Hills, IL 60156-5803,

ELISA D TORRES
3433 E Bermuda St, Apt 9
Tucson, AZ 85716,

COMPLAINT

JANETTE TORRES
13121 Pinyon Drive
Clermont, FL 34711-6465,

JUSTIN TRICHTER
7985 East Acorn Court
Anaheim, CA 92808-1565,

TRENISE TROTTER
698 Basilica Bay Drive
Spring, TX 77386,

TAMEKA TUNSTALL
1105 Jakes Lane
Mobile, AL 36610-2533,

RONALD TURNBAUGH
4211 Kateland Street
Rapid City, SD 57701-3203,

GWENEVERE TURNER
2035 South 15th Avenue, Apt 1N
Broadview, IL 60155-3026,

TIFFANY TURNER
2615 West Marshall Avenue
Phoenix, AZ 85017-2736,

LEAH URBANK
13920 Grevillea Avenue
Hawthorne, CA 90250-6920,

KRISTIN VALENZUELA
828 Calle De Madero
Chaparral, NM 88081-7509,

JOY VASSER
3724 Parakeet Road
Memphis, TN 38109-3524,

CHRISTIE VEDAA
2345 Elm Park Drive
Manitou Beach-Devils Lake, MI 49253-9004,

JASMIN VEGA
508 Mansfield Drive
Altamonte Springs, FL 32714-3141,

ANTHONY VELASQUEZ
8340 Northeast 83rd Street, Apt. 911
Kansas City, MO 64158,

SAMUEL VENHUIZEN
P.O. Box 57243

COMPLAINT

Tucson, AZ 85733,

JOSH VERGARA
1001 Coushatta Street
Ruston, LA 71270-3305,

JESSICA VESCO
321 West Happfield Drive, Apt 301
Arlington Heights, IL 60004-7135,

KATHY VIATOR
6216 East Penrose Street
Inverness, FL 34452-7946,

KRISTEN VICKERS
1714 Laurel Rd
Gainesville, TX 76240,

ELDA VILLARREAL
25 2nd Avenue
South Wilmington, IL 60474-3129,

GUY VISCONTI
3849 N Pioneer Ave
Chicago, IL 60634-2049,

DENNIS VOLLMER
370 Scorpio Circle
Reno, NV 89521-9314,

RENATA WACLAWSKA
208 Southridge Lane, C4
Hot Springs, AR 71913,

REGINA WADE
143 Yorktown Drive
Franklin, TN 37064-3235,

KATHLEEN WAELTERMANN
920 Prynnwood Lane, Apt 2
O'Fallon, MO 63366,

ANGELA WAGNER
2354 Harpoon Court
Henrico, VA 23294,

MATHENY WAGNER
2207 High St
Mobile, AL 36606,

ROBERT WAGNER
2334 Prince Jeffrey Ln
Katy, TX 77493,

DEENA WALKDEN

COMPLAINT

121 Forest Acres Drive
Brazil, IN 47834,

ANICA WALKER
5008 Bass Place Southeast
Washington, DC 20019-7613,

MONIQUA WALKER
557 Burr Street
Gary, IN 46406-1442,

ANTHONY WALTERS
21516 Horseshoe Loop
Lago Vista, TX 78645-4743,

TAYLOR WALTHERS
1832 Burry Circle Drive
Crest Hill, IL 60403-2002,

ALEXIS WALTON
2800 Allenton Trails Lane
Charlotte, NC 28212-6452,

DANNETTE WARD
1000 4 Mile Road Northwest
Walker, MI 49544,

MICHAEL WARREN
721 Walker Springs Rd, Apt J8
Knoxville, TN 37923-2524,

RYAN WATSON
24 Williams Rd
London, WV 25126,

NATHAN WEAVER
1505 Junior Court
Lehigh Acres, FL 33971-2045,

HEATHER WEBB
1564 Herrington Road, Apt 9214
Lawrenceville, GA 30043-5615,

DAVID WEBER SR.
306 East San Jacinto Street
Highlands, TX 77562-3788,

MATTHEW WEBSTER
416 Wilder Road
Tallahassee, FL 32304-6601,

KELSEY WELLS
1515 Rio Grande Dr, 107
Plano, TX 75075,

ASHLEY WEST

COMPLAINT

608 Rhodes Street
Hominy, OK 74035-1083,

JOHNATHAN WEST
1397 Duplechin Road
Church Point, LA 70525-6834,

LYDIA WEST
1475 Rohnerville Road, Apt A
Fortuna, CA 95540-4310,

ELIZABETH WHEELER
884 Newbridge Road
Sylvania, GA 30467-2805,

EVELYN WHEELER
1518 Stonewall Boulevard
Murfreesboro, TN 37130-1642,

STACI WHIDDON
6804 Marlyn Drive
Lakeland, FL 33809-2379,

COURTNEY WHISEL
355 Church Road
Goldsboro, PA 17319-9466,

KEITH WHISMAN
6427 South 19th Place
Phoenix, AZ 85042-4575,

MICHAEL WHITE
203 Old Stage Trail
Bristol, TN 37620-8676,

SHARON WHITE
2035 Grand Park Dr
Missouri City, TX 77489,

JAMES WIEDEMAN
773 Jerald Ct, Apt A
Cincinnati, OH 45245-2508,

SHECARIE WILKERSON
1800 Links Blvd, Apt 1401
Tuscaloosa, AL 35405,

JANICE WILKES
211 Holmes Street
South Fulton, TN 38257-2137,

ALEXANDRIA WILLIAMS
1511 Clover Hill Road, Apt 3103
Arlington, TX 76012,

ANSON WILLIAMS

COMPLAINT

14304 Long Feather Court
Chester, VA 23831-7065,

AUSTIN WILLIAMS
2323 West Bay Area Boulevard
Webster, TX 77598,

CARLOS WILLIAMS
1173 Kerri Lynn Road
St. Augustine, FL 32084-0592,

CHARLES WILLIAMS
5102 Caldera Court
Houston, TX 77066-1046,

DANIELLE WILLIAMS
1226 West 97th Place
Chicago, IL 60643-1420,

LAKEISHA WILLIAMS
158 Cactus Road
Latta, SC 29565-5246,

SAMIRA WILLIAMS
486 Old Gress Island Rd
Midway, GA 31320,

TINA WILLIAMS
424 Evergreen Way
Stockbridge, GA 30281,

VERONICA WILLIAMS
17917 116th Avenue Southeast
Renton, WA 98055-6567,

WADELL WILLIAMS
3151 Northeast 16th Street, Apt 236
Renton, WA 98056,

KATHLEEN WILLIAMSON
406 South Church Street, Apt 312
St. Peters, MO 63376,

DONALD WILLIFORD
1071 Cornwell Road
Chester, SC 29706-8394,

DEAN WILLSON JR
15947 Yates Street
Omaha, NE 68116-2435,

ALETHA WILSON
1271 Silas Road
Wrens, GA 30833-3790,

BRIAN WILSON

- 82 -
COMPLAINT

119 Meadow Lane
Oakwood Hills, IL 60013-1150,

DANA WILSON
322 Pixlee Place
Bridgeport, CT 06610-2925,

JOAN WILSON
4631 Claire Avenue, #4
Lincoln, NE 68516,

KIMBERLY WILSON
241 Creekview Drive
Battle Creek, MI 49037-1432,

LATAUYA WILSON
3671 Highway 10 E
Camden, AL 36726-3634,

DEAN WILLSON JR
15947 Yates St
Omaha, NE 68116-2435,

MELISSA WISE
105 Brighton Court
Sicklerville, NJ 08081-2406,

DAVID WISHART
206 Grand Reserve Drive
Bunnell, FL 32110-3409,

BRUCE WOLDORF
1001 S 10th ST, Unit J2
Cottage Grove, OR 97424,

JOLANTA WOLF
64 Christine Drive
Reading, PA 19606-3388,

DENISE WOOD
212 Atkinson Loop Road
Hampstead, NC 28443-8994,

DONNA WOODALL
15 Lee County Road 962
Smiths Station, AL 36877,

ELIZABETH WOODS
2280 County Rd. 6
Florence, AL 35633,

LENORA WOODS
5301 Alpha Road, Apt 322
Dallas, TX 75240-4363,

JENNIFER WOODWORTH

COMPLAINT

127 Broadway
Taunton, MA 02780-2507,

BOGDAN WORWA
174 Oakwood Drive
Wood Dale, IL 60191-1952,

DOUG WOZNIAK
763 Sojourn Road
New Lenox, IL 60451-8559,

JONATHAN WOZNY
221 Collingwood Court
Cranberry Township, PA 16066,

BRITTNEY WRIGHT
40 Westbrook Way
Covington, GA 30016-8557,

JOHNK WRIGHT V
1612 Wagonwheel Drive
Plano, TX 75023-5040,

JOSHUA WRZESINSKI
1333 Tomoka Town Center Dr, Apt 102
Daytona Beach, FL 32117-5181,

MATT WUSCHER
70 East Cromarty Court
Shelton, WA 98584-9616,

JODIE WYCHE
2476 Corner Shoals Drive
Decatur, GA 30034-1223,

MAXINE WYCKOFF
3701 Raven Trail, Apt 1358
Aledo, TX 76008,

WATCHARIN YAHATTA
4833 North Wolcott Avenue, Apt 3B
Chicago, IL 60640,

CARON YARBROUGH
404 East Burrell Street
Denison, TX 75021-6521,

ELIZABETH YORK
1286 SW 150th Terr
Ocala, FL 34481-1241,

STEWART YOUNGER
251 Eisenhower Drive, Apt 380
Biloxi, MS 39531,

URSULA ZAMORA

155 Wishing View Drive, Apt D
Webster, NY 14580,

MICHAEL ZARAGOZA
11014 Austin Court
New Port Richey, FL 34654-6033,

DAN ZHOVTIS
11258 Girven Court
Fredericksburg, VA 22407-7693,

ENZA ZITO
10601 Saint Stephen Lane
Saint Ann, MO 63074-1612,

and

GAIL ZUETLAU
140 Sunshine Valley Terrace
Pearcy, AR 71964-9791,

     *Plaintiffs*,

     *vs.*

KIA AMERICA, INC., f/k/a KIA MOTORS AMERICA, INC.
c/o 1505 Corporation C T Corporation System
330 N. Brand Boulevard, Glendale, CA 91203

and

HYUNDAI MOTOR AMERICA
c/o 1505 Corporation CORPORATION SERVICE COMPANY WHICH WILL DO BUSINESS IN CALIFORNIA AS CSC – LAWYERS INCORPORATING SERVICE
2710 Gateway Oaks Drive, Sacramento, CA 95833

     *Defendants.*

COMPLAINT

## TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................108

II.   PARTIES....................................................................................................110

      A.    Plaintiffs .........................................................................................110

            1.    Alabama Plaintiffs ................................................................ 111

            2.    Arizona Plaintiffs.................................................................115

            3.    Arkansas Plaintiffs...............................................................123

            4.    California Plaintiffs..............................................................125

            5.    Colorado Plaintiffs...............................................................140

            6.    Connecticut Plaintiffs ..........................................................143

            7.    Delaware Plaintiffs...............................................................144

            8.    Florida Plaintiffs ..................................................................144

            9.    Georgia Plaintiffs.................................................................168

            10.   Hawaii Plaintiffs ..................................................................182

            11.   Idaho Plaintiffs.....................................................................183

            12.   Illinois Plaintiffs...................................................................183

            13.   Indiana Plaintiffs..................................................................205

            14.   Iowa Plaintiffs......................................................................209

            15.   Kansas Plaintiffs ..................................................................210

            16.   Kentucky Plaintiffs ..............................................................212

            17.   Louisiana Plaintiffs...............................................................215

            18.   Maine Plaintiffs....................................................................219

            19.   Maryland Plaintiffs ...............................................................219

            20.   Massachusetts Plaintiffs.......................................................223

            21.   Michigan Plaintiffs................................................................227

            22.   Minnesota Plaintiffs..............................................................230

            23.   Mississippi Plaintiffs............................................................233

            24.   Missouri Plaintiffs................................................................235

COMPLAINT

25. Montana Plaintiffs...............................................................241

26. Nebraska Plaintiffs............................................................241

27. Nevada Plaintiffs...............................................................242

28. New Hampshire Plaintiffs.................................................247

29. New Jersey Plaintiffs .......................................................248

30. New Mexico Plaintiffs ......................................................253

31. New York Plaintiffs...........................................................254

32. North Carolina Plaintiffs..................................................259

33. Ohio Plaintiffs..................................................................267

34. Oklahoma Plaintiffs..........................................................268

35. Oregon Plaintiffs...............................................................270

36. Pennsylvania Plaintiffs .....................................................273

37. South Carolina Plaintiffs...................................................282

38. South Dakota Plaintiffs.....................................................287

39. Tennessee Plaintiffs ..........................................................288

40. Texas Plaintiffs..................................................................293

41. Utah Plaintiffs...................................................................314

42. Vermont Plaintiffs.............................................................316

43. Virginia Plaintiffs..............................................................317

44. Washington Plaintiffs........................................................322

45. West Virginia Plaintiffs .....................................................327

46. Wisconsin Plaintiffs ..........................................................328

47. Together, "Plaintiffs" .......................................................330

B. Defendants..........................................................................331

III. JURISDICTION AND VENUE.................................................333

IV. FACTS ....................................................................................334

A. Kia and Hyundai's Failure to Install Anti-Theft Technology in Their Vehicles Allowed the "Kia Boys" to Start a Dangerous Viral

Social Media Challenge that Killed Teenagers and Community Members, Exposing the Extreme Nature of Kia and Hyundai's Misconduct. ...................................................................334

B.    Defendants Knowingly and Intentionally Designed, Manufactured, and/or Sold the Vehicles Without Standard and Mandatory Anti-Theft Technology...................................................................339

C.    By Promoting the Safety, Reliability, and Quality of Their Vehicles, Hyundai and Kia Have Become Top-Selling Automakers in the United States. ...................................................................344

D.    Despite Holding Out Their Vehicles as Safe, Reliable, and of High Quality, Defendants Have Known that Their "Theft-Prone Design" Is Unsafe, Unreliable, and Uncompliant.........................................347

E.    Kia and Hyundai Purposefully Failed to Equip Their Vehicles With Anti-Theft Protection. ...................................................................353

F.    Defendants Have Failed to Remedy the Vehicles' Theft-Prone Design...................................................................354

G.    Defendants' Failure to Include the Required Anti-Theft Measures in the Vehicles Caused Plaintiffs to Pay Increased and Inflated Insurance Premiums, Accelerated the Depreciation of the Vehicles, and Caused the Market Price to Drop. ...........................................357

H.    Upon Information and Belief, Defendants Fraudulently Omitted and/or Concealed From Consumers the "Theft-Prone Design."........374

I.    In Summary, Plaintiffs Are Entitled to Relief for the Costs They Bore, Including Inflated Insurance Premiums and Accelerated Depreciation. ...................................................................376

V.    CLAIMS FOR RELIEF...................................................................376

A.    Federal Claims for Relief...................................................................377

1.    Breach of Express and Implied Warranties Under the

COMPLAINT

Magnuson-Moss Warranty Act of 15 U.S.C. § 2301, et seq...377

B.   Alabama State Law Claims for Relief ...............................................380

1.   Breach of Implied Warranty of Merchantability (Ala. Code §§ 7-2-314 and 7-2a-212). ..................................................380

2.   Breach of Express Warranty Under Ala. Code § 7-2-313. .....383

3.   Violation of Alabama Deceptive Trade Practices Act Under Ala. Code § 8-19-1, et seq. ....................................................386

4.   Fraud by Misrepresentation, Omission, and Concealment (in the Alternative). ......................................................390

5.   Negligent Misrepresentation (in the Alternative). ..................393

6.   Negligence (in the Alternative)..............................................395

7.   Unjust Enrichment. ................................................................396

C.   Arizona State Law Claims for Relief...............................................398

1.   Breach of Implied Warranty of Merchantability Under Ariz. Rev. Stat. Ann. §§ 47-2314 and 47-2A212............................398

2.   Breach of Express Warranty Under Ariz. Rev. Stat. Ann. §§ 47-2313, 47-2A210..........................................................401

3.   Violation of Arizona Consumer Sales Practices Act Under Ariz. Rev. Stat. Ann. § 44-1521, et seq..................................404

4.   Fraud by Misrepresentation, Omission, and Concealment.....407

5.   Negligent Misrepresentation..................................................410

6.   Negligence. ...........................................................................412

7.   Unjust Enrichment. ................................................................413

D.   Arkansas State Law Claims for Relief..............................................415

1.   Breach of Implied Warranty of Merchantability Under Ark. Code Ann. §§ 4-2-314 and 4-2A-212. ...................................415

2.   Breach of Express Warranty Under Ark. Code Ann. §§ 4-2-313 and 4-2A-210. ..............................................................418

3.    Violation of Arkansas Deceptive Trade Practices Act Under Ark. Code Ann. § 4-88-101, et seq. ........................................421

4.    Fraud by Misrepresentation, Omission, and Concealment.....426

5.    Negligent Misrepresentation.................................................429

6.    Negligence. ...........................................................................431

7.    Unjust Enrichment. ...............................................................432

E.    California State Law Claims for Relief......................................433

1.    Breach of Implied Warranty of Merchantability (California Commercial Code §§ 2314 and 10212). ................................434

2.    Breach of Express Warranty Under California Commercial Code (Cal. Com. Code §§ 2313 and 10210)............................437

3.    Breach of Implied Warranty of Merchantability (Song-Beverly Consumer Warranty Act) (Cal. Civ. Code §§ 1791.1(a) and 1792)..........................................................440

4.    Breach of Express Warranty (Song-Beverly Warranty Act)...442

5.    Violation of Consumer Legal Remedies Act (Cal. Civ. Code. § 1750, et seq.). ...................................................................445

6.    Fraud by Omission and Concealment.....................................450

7.    Negligent Misrepresentation.................................................452

8.    Negligence. ...........................................................................454

9.    Unjust Enrichment. ...............................................................455

F.    Colorado State Law Claims for Relief.......................................457

1.    Breach of Implied Warranty of Merchantability Under Colo. Rev. Stat. § 4-2-314. ............................................................457

2.    Breach of Express Warranty Under Colo. Rev. Stat. § 4-2-313 and 4-2.5-210. ................................................................460

3.    Violation of Colorado Consumer Protection Act Under Colo. Rev. Stat. § 6-1-101, et seq. .................................................463

- 90 -
COMPLAINT

4. Fraud by Misrepresentation, Omission, and Concealment.....466

5. Negligent Misrepresentation...................................................469

6. Negligence. ............................................................................471

7. Unjust Enrichment. ................................................................472

G. Connecticut State Law Claims for Relief .........................................474

1. Breach of Implied Warranty of Merchantability Under Conn. Gen. Stat. Ann. §§ 42a-2-314 and 42a-2a-504. .......................474

2. Breach of Express Warranty Under Conn. Gen. Stat. Ann. § 42a-2-313. ..........................................................................477

3. Violation of Connecticut Unlawful Trade Practices Act Under Conn. Gen. Stat. § 42-100a, et seq. ............................480

4. Fraud by Omission and Concealment.....................................484

5. Negligent Misrepresentation...................................................487

6. Negligence. ............................................................................489

7. Unjust Enrichment. ................................................................490

H. Delaware State Law Claims for Relief .............................................491

1. Breach of Implied Warranty of Merchantability Under Del. Code Ann. tit. 6, §§ 2-314, 2-315, 2A-212 and 2A-213.........492

2. Breach of Express Warranty Under Del. Code Ann. tit. 6, §§ 2-313 and 2A-210. .........................................................495

3. Violation of Delaware Consumer Fraud Act Under Del. Code Ann. tit. 6, § 2511, et seq...............................................498

4. Violation of Delaware Deceptive Trade Practices Act Under Del. Code Ann. tit. 6, § 2531, et seq.....................................501

5. Fraud by Omission and Concealment.....................................506

6. Negligent Misrepresentation...................................................509

7. Negligence. ............................................................................511

8. Unjust Enrichment. ................................................................512

COMPLAINT

I.    Florida State Law Claims for Relief ................................................513

    1.    Breach of Implied Warranty of Merchantability Under Fla. Stat. §§ 672.314 and 680.212. ................................................513

    2.    Breach of Express Warranty Under Fla. Stat. §§ 672.313 and 680.21 ................................................517

    3.    Violation of Unfair and Deceptive Trade Practices Act Under Fla. Stat. § 501 et seq. ................................................520

    4.    Fraud by Omission, Concealment, and Misrepresentation.....523

    5.    Negligent Misrepresentation.................................................526

    6.    Negligence. .........................................................................528

    7.    Unjust Enrichment. ..............................................................529

J.    Georgia State Law Claims for Relief ................................................531

    1.    Breach of Implied Warranty of Merchantability Under Ga. Code Ann. §§ 11-2-314 and 11-2A-212. ................................531

    2.    Breach of Express Warranty Under Ga. Code Ann. § 11-2-313, et seq. ................................................534

    3.    Violation of Georgia Uniform Deceptive Trade Practices Act Under Ga. Code Ann. § 10-1-390, et seq. ................................537

    4.    Violation of Georgia Fair Business Practices Act Under Ga. Code Ann. § 10-1-390, et seq. ................................................541

    5.    Fraud by Omission and Concealment.....................................544

    6.    Negligent Misrepresentation.................................................548

    7.    Negligence. .........................................................................550

    8.    Unjust Enrichment. ..............................................................551

K.    Hawaii State Law Claims for Relief ................................................552

    1.    Breach of Implied Warranty of Merchantability Under Haw. Rev. Stat. §§ 490:2-314 and 490:2A-212. .............................552

    2.    Breach of Express Warranty Under Haw. Rev. Stat.

COMPLAINT

§§ 409:2-313 and 409:2A-210...............................................556

3.    Violation of Hawaii Unfair and Deceptive Acts and Practices Act Under Haw. Rev. Stat. § 480, et seq................................559

4.    Fraud by Omission and Concealment..................................562

5.    Negligent Misrepresentation..............................................565

6.    Negligence. ......................................................................567

7.    Unjust Enrichment. ...........................................................568

L.    Idaho State Law Claims for Relief.........................................570

1.    Breach of Implied Warranty Under Idaho Code §§ 28-2-314 and 28-12-212.................................................................570

2.    Breach of Express Warranty Under Idaho Code §§ 28-2-313 and 28-12-210. ................................................................573

3.    Violation of Idaho Consumer Protection Act Under Idaho Code § 48-601, et seq. ....................................................576

4.    Fraud by Omission and Concealment..................................580

5.    Negligent Misrepresentation..............................................583

6.    Negligence. ......................................................................585

7.    Unjust Enrichment. ...........................................................586

M.    Illinois State Law Claims for Relief .......................................587

1.    Breach of Implied Warranty Under 810 Ill. Comp. Stat. 5/2-314 and 5/2A-212. ..........................................................587

2.    Breach of Express Warranty Under 810 Ill. Comp. Stat. 5/2-313 and 5/2A-210. ..........................................................591

3.    Violation of Illinois Consumer Fraud and Deceptive Business Practices Act Under 815 Ill. Comp. Stat. 505/1, et seq. .................................................................................594

4.    Fraud by Omission and Concealment..................................598

5.    Negligent Misrepresentation..............................................601

- 93 -
COMPLAINT

6. Negligence. ..................................................................603

7. Unjust Enrichment. ........................................................604

N. Indiana State Law Claims for Relief.................................606

1. Breach of Implied Warranty Under Ind. Code §§ 26-1-2-314 and 26-1-2.1-212...................................................606

2. Breach of Express Warranty Under Ind. Code §§ 26-1-2-313 and 26-1-2.1-210...................................................609

3. Violation of Indiana Deceptive Consumer Sales Act Under Ind. Code § 24-5-0.5-1, et seq. ...............................612

4. Fraud by Omission and Concealment.................................616

5. Negligent Misrepresentation...........................................620

6. Negligence. ..................................................................622

7. Unjust Enrichment. ........................................................623

O. Iowa State Law Claims for Relief....................................624

1. Breach of Implied Warranty Under Iowa Code §§ 554.2314 and 554.13212........................................................624

2. Breach of Express Warranty Under Iowa Code §§ 554.2313 and 554.13210........................................................628

3. Violation of Iowa Private Right of Action for Consumer Frauds Act Under Iowa Code § 714h.1, et seq. ......................631

4. Fraud by Omission and Concealment.................................634

5. Negligent Misrepresentation...........................................638

6. Negligence. ..................................................................639

7. Unjust Enrichment. ........................................................641

P. Kansas State Law Claims for Relief.................................642

1. Breach of Implied Warranty Under Kan. Stat. Ann. §§ 84-2-314 and 84-2A-212. ................................................642

2. Breach of Express Warranty Under Kan. Stat. Ann. §§ 84-2-

2-313 and 84-2a-210.................................................................645

3.  Violation of Kansas Consumer Protection Act Under Kan. Stat. Ann. § 50-623, et seq..................................648

4.  Fraud by Omission and Concealment.....................................652

5.  Negligent Misrepresentation..................................................655

6.  Negligence. ............................................................................657

7.  Unjust Enrichment. ................................................................658

Q.  Kentucky State Law Claims for Relief...............................................659

1.  Breach of Implied Warranty Under Ky. Rev. Stat. Ann. §§ 335.2-314 and 355.2A-212...............................659

2.  Breach of Express Warranty Under Ky. Rev. Stat. Ann. §§ 355.2-313 and 355.2A-210...............................663

3.  Violation of Kentucky Consumer Protection Act Under Ky. Rev. Stat. Ann. § 367.110, et seq. .........................666

4.  Fraud by Omission and Concealment.....................................669

5.  Negligent Misrepresentation..................................................672

6.  Negligence. ............................................................................674

7.  Unjust Enrichment. ................................................................675

R.  Louisiana State Law Claims for Relief...............................................676

1.  Breach of Implied Warranty of Merchantability/Warranty Against Redhibitory Theft-Prone Defect (La. Civ. Code Art. 2520, 2524). .........................................677

2.  Breach of Express Warranty Under La. C.C. § 2529..............680

3.  Violation of Louisiana Unfair Trade Practices Act Under La. Rev. Stat. § 51:1401, et seq.................................683

4.  Fraud by Omission, Suppression, or Concealment Under La. Civ. C. § 1953 et seq. .........................................686

5.  Negligent Misrepresentation..................................................689

- 95 -
COMPLAINT

6. Negligence. ...................................................................691

7. Unjust Enrichment. ........................................................692

S. Maine State Law Claims for Relief......................................694

1. Breach of Implied Warranty Under Me. Rev. Stat. Tit. 11 §§ 2-314 and 2-1212. ................................................694

2. Breach of Express Warranty Under Me. Rev. Stat. Tit. 11 §§ 2-313 and 2-1210. ................................................697

3. Violation of Maine Unfair Trade Practices Act Under Me. Rev. Stat. Ann. Tit. 5 § 205-a, et seq. ....................700

4. Fraud by Omission and Concealment..................................703

5. Negligent Misrepresentation...............................................706

6. Negligence. ...................................................................708

7. Unjust Enrichment. ........................................................709

T. Maryland State Law Claims for Relief ...............................711

1. Breach of Implied Warranty Under Md. Code Ann. §§ 2-314 and 2A-212.................................................711

2. Breach of Express Warranty Under Md. Code Ann. §§ 2-313 and 2A 210. .................................................714

3. Violation of Maryland Consumer Protection Act Under Md. Code Ann. § 13-101, et seq.....................................717

4. Fraud by Omission, Suppression, or Concealment. ..............721

5. Negligent Misrepresentation...............................................724

6. Negligence. ...................................................................726

7. Unjust Enrichment. ........................................................727

U. Massachusetts State Law Claims for Relief.........................728

1. Breach of Implied Warranty Under Mass. Gen. Laws Ch. 106, §§ 2-314 and 2A-212.......................................728

2. Breach of Express Warranty Under Mass. Gen. Laws Ch.

COMPLAINT

106, § 2-313. ..............................................................................732

3. Violation of Massachusetts Deceptive Acts or Practices Prohibited by Mass. Gen. Laws Ch. 93a § 1, et seq. ..............735

4. Fraud by Omission and Concealment. ...................................739

5. Negligent Misrepresentation. ................................................742

6. Negligence. ...........................................................................744

7. Unjust Enrichment. ...............................................................745

V. Michigan State Law Claims for Relief ...........................................747

1. Breach of Implied Warranty Under Mich. Comp. Laws §§ 440.214 and 440.2862. ...................................................747

2. Breach of Express Warranty Under Mich. Comp. Laws § 440.2313. ............................................................................750

3. Violation of Michigan Consumer Protection Act Under Mich. Comp. Laws § 445.901, et seq. ...................................753

4. Fraud by Omission and Concealment. ...................................757

5. Negligent Misrepresentation. ................................................760

6. Negligence. ...........................................................................762

7. Unjust Enrichment. ...............................................................763

W. Minnesota State Law Claims for Relief ...........................................764

1. Breach of Implied Warranty Under Minn. Stat. §§ 336.2-314 and 336.2A-212. ...................................................................764

2. Breach of Express Warranty Under Minn. Stat. § 336.2-313. 768

3. Violation of Minnesota Prevention of Consumer Fraud Act pursuant to Minn. Stat. § 325F.68, et seq. and Minn. Stat. § 8.31, subd. 3a. ...................................................................771

4. Violation of Minnesota Deceptive Trade Practices Act Under Minn. Stat. § 325D.44. .............................................................774

5. Fraud by Omission and Concealment. ...................................779

COMPLAINT

6.    Negligent Misrepresentation.....................................................782

7.    Negligence. .............................................................................784

8.    Unjust Enrichment. ..................................................................785

X.    Mississippi State Law Claims for Relief.............................................786

1.    Breach of Implied Warranty Under Miss. Code §§ 75-2-314 and 75-2A-212. ...................................................................786

2.    Breach of Express Warranty Under Miss. Code § 75-2-313...790

3.    Violation of Mississippi Consumer Protection Act Under Miss. Code. Ann. § 75-24-1, et seq........................................793

4.    Fraud by Omission and Concealment......................................796

5.    Negligent Misrepresentation....................................................799

6.    Negligence. .............................................................................801

7.    Unjust Enrichment. ..................................................................802

Y.    Missouri State Law Claims for Relief..................................................804

1.    Breach of Implied Warranty Under Mo. Rev. Stat. §§ 400.2-314 and 400.2A-212. ........................................................804

2.    Breach of Express Warranty Under Mo. Rev. Stat. §§ 400.2-313.......................................................................................807

3.    Violation of Missouri Merchandising Practices Act Under Mo. Rev. Stat. § 4070.010, et seq. .........................................810

4.    Fraud by Omission and Concealment......................................814

5.    Negligent Misrepresentation....................................................817

6.    Negligence. .............................................................................819

7.    Unjust Enrichment. ..................................................................820

Z.    Montana State Law Claims for Relief..................................................821

1.    Breach of Implied Warranty Under Mont. Code Ann. §§ 2-314 and 30-2A-212. ...........................................................822

2.    Breach of Express Warranty Under Mont. Code § 30-2-313. 825

COMPLAINT

3.    Violation of Montana Unfair Trade Practices and Consumer Protection Act Under Mont. Code Ann. § 30-14-101, et seq. 828

4.    Fraud by Omission and Concealment.....................831

5.    Negligent Misrepresentation.................................835

6.    Negligence. .........................................................836

7.    Unjust Enrichment. ..............................................837

AA.    Nebraska State Law Claims for Relief................................839

1.    Breach of Implied Warranty of Merchantability Under Neb. Rev. Stat. U.C.C. §§ 2-314 and 2A-212. ...............................839

2.    Breach of Express Warranty Under Neb. Rev. Stat. U.C.C. § 2-313. ...............................................842

3.    Violation of the Nebraska Consumer Protection Act (Neb. Rev. Stat. § 59-1601, et seq.). ....................845

4.    Fraud by Omission and Concealment.....................848

5.    Negligent Misrepresentation.................................852

6.    Negligence. .........................................................854

7.    Unjust Enrichment. ..............................................855

BB.    Nevada State Law Claims for Relief..................................856

1.    Breach of Implied Warranty of Merchantability Under Nev. Rev. Stat. §§ 104.2314 and 104A.2212. ...............................856

2.    Breach of Express Warranty Under Nev. Rev. Stat. § 104.2313..............................................859

3.    Violation of the Deceptive Trade Practices Act Under Nev. Rev. Stat. § 598.0903, et seq.................861

4.    Fraud by Omission and Concealment.....................866

5.    Negligent Misrepresentation.................................869

6.    Negligence. .........................................................871

7.    Unjust Enrichment. ..............................................872

CC. New Hampshire State Law Claims for Relief.................................873

   1. Breach of Implied Warranty of Merchantability Under N.H. Rev. Stat. §§ 382-A:2-314 and 2A-212. ...............................873

   2. Breach of Express Warranty Under N.H. Rev. Stat. § 382-A:2-313. ..................................................................877

   3. Violation of the New Hampshire Consumer Protection Act Under N.H. Rev. Stat. Ann. § 358-a:1, et seq..........................879

   4. Fraud by Omission and Concealment.....................................883

   5. Negligent Misrepresentation................................................886

   6. Negligence. ....................................................................888

   7. Unjust Enrichment. ..........................................................889

DD. New Jersey State Law Claims for Relief ...................................890

   1. Breach of Implied Warranty of Merchantability Under N.J. Stat. Ann. §§ 12A:2-314 and 12A:2A-212)...........................890

   2. Breach of Express Warranty Under N.J. Stat. Ann. § 12A:2-313...........................................................................893

   3. Violation of New Jersey Consumer Fraud Act Under N.J. Stat. Ann. § 56:8-1, et seq......................................................896

   4. Fraud by Omission and Concealment.....................................899

   5. Negligent Misrepresentation................................................903

   6. Negligence. ....................................................................905

   7. Unjust Enrichment. ..........................................................906

EE. New Mexico State Law Claims for Relief ...................................907

   1. Breach of Implied Warranty (N.M. Stat. §§ 55-2-314 and 55-2A-212)..........................................................................907

   2. Breach of Express Warranty (N.M.S.A. § 55-2-313). ............910

   3. Violation of the New Mexico Unfair Practices Act (N.M. Stat. Ann. § 57-12-1, et seq.). ...............................................913

COMPLAINT

4.      Fraud by Omission, Suppression, and Concealment. .............917

5.      Negligence by Words. ...............................................................921

6.      Negligence. ................................................................................923

7.      Unjust Enrichment. ....................................................................925

FF.    New York State Law Claims for Relief.............................................925

1.      Breach of Implied Warranty (N.Y. U.C.C. Law §§ 2-314 and 2-315). ..................................................................................926

2.      Breach of Express Warranty (N.Y. U.C.C. Law § 2-313). .....929

3.      Violation of New York General Business Law § 349 (N.Y. Gen. Bus. Law § 349). ...........................................................931

4.      Violation of New York General Business Law § 350 (N.Y. Gen. Bus. Law § 350). ...........................................................935

5.      Fraud by Omission and Concealment....................................938

6.      Negligent Misrepresentation...................................................942

7.      Negligence. ................................................................................944

8.      Unjust Enrichment. ....................................................................945

GG.    North Carolina State Law Claims for Relief....................................946

1.      Breach of Implied Warranty (N.C. Gen. Stat. §§ 2-314 and 2-315). ..................................................................................946

2.      Breach of Express Warranty N.C. Gen. Stat. § 25-2-313. .......949

3.      Violation of the North Carolina Unfair and Deceptive Trade Practices Act (N.C. Gen. Stat. § 75-1.1, et seq.).....................952

4.      Fraud by Omission and Concealment....................................956

5.      Negligent Misrepresentation...................................................960

6.      Negligence. ................................................................................962

7.      Unjust Enrichment. ....................................................................963

HH.    Ohio State Law Claims for Relief.....................................................964

1.      Breach of Implied Warranty of Merchantability Under R.C.

COMPLAINT

1302.27 and 1310.19...................................................................964

2. Breach of Express Warranty Under R.C. 1302.26....................968

3. Violation of Ohio Consumer Sales Practices Act Under R.C. § 1345.01, et seq. ..............................................................970

4. Violation of Ohio Deceptive Trade Practices Act Under R.C. § 4165.01, et seq. ..............................................................974

5. Fraud by Misrepresentation, Omission, and Concealment.....978

6. Negligent Misrepresentation........................................982

7. Negligence. ..............................................................984

8. Unjust Enrichment. ....................................................985

II. Oklahoma State Law Claims for Relief.....................................986

1. Breach of Implied Warranty of Merchantability Under Okla. Stat. Ann. Tit. §§ 2-314 and 2A-212.......................................986

2. Breach of Express Warranty Under Okla. Stat. Ann. tit. 12A, § 2-313. ..................................................................989

3. Violation of Oklahoma Consumer Protection Act Under Okla. Stat. Ann. tit. 15, § 751, et seq. ...................................992

4. Fraud by Omission and Concealment.................................996

5. Negligent Misrepresentation........................................1000

6. Negligence. ..............................................................1002

7. Unjust Enrichment. ....................................................1003

JJ. Oregon State Law Claims for Relief.........................................1004

1. Breach of Implied Warranty of Merchantability (ORS § 72.3140). ..............................................................1004

2. Breach of Express Warranty (ORS § 72.3130)....................1007

3. Violation of Oregon's Unlawful Trade Practices Act (ORS § 646.607). ..............................................................1009

4. Fraud by Omission and Concealment.................................1013

COMPLAINT

5. Negligent Misrepresentation.................................................1017

6. Negligence. .........................................................................1019

7. Unjust Enrichment. .............................................................1020

KK. Pennsylvania State Law Claims for Relief .....................................1021

1. Breach of Implied Warranty of Merchantability (13 Pa. Cons. Stat. §§ 2314 and 2A212)..........................................1021

2. Breach of Express Warranty (13 Pa. Cons. Stat. §§ 2313, 2A210, et seq.). ...................................................................1024

3. Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (73 Pa. Cons. Stat. § 201-1, et seq.)......................................................................................1027

4. Fraud by Omission and Concealment...................................1031

5. Negligent Misrepresentation.................................................1035

6. Negligence. .........................................................................1036

7. Unjust Enrichment. .............................................................1038

LL. South Carolina State Law Claims for Relief...................................1039

1. Breach of Implied Warranty of Merchantability Under S.C. Code Ann. §§ 36-2-314 and 36-2A-212. ...............................1039

2. Breach of Express Warranty Under S.C. Code Ann. § 36-2-313...........................................................................1042

3. Violation of the South Carolina Unfair Trade Practices Act (S.C. Code Ann. § 39-5-10, et seq.).....................................1045

4. Violation of the South Carolina Regulation of Manufacturers, Distributors, and Dealers Act (S.C. Code Ann. § 56-15-10, et seq.). .....................................................1048

5. Fraud by Omission and Concealment...................................1050

6. Negligent Misrepresentation.................................................1054

7. Negligence. .........................................................................1056

COMPLAINT

8.    Unjust Enrichment. .................................................................1057

MM.    South Dakota State Law Claims for Relief.....................................1058

1.    Breach of Implied Warranty of Merchantability Under S.D. Codified Laws §§ 57A-2-314 and 57A-2A-212....................1058

2.    Breach of Express Warranty Under S.D. Codified Laws § 57A-2-313. ..............................................................1061

3.    Violation of the South Dakota Deceptive Trade Practices and Consumer Protection Law (S.D. Codified Laws § 37-24-1, et seq.)...............................................................1064

4.    Fraud by Omission and Concealment.................................1067

5.    Negligent Misrepresentation.............................................1071

6.    Negligence. .......................................................................1073

7.    Unjust Enrichment. ...........................................................1074

NN.    Tennessee State Law Claims for Relief ..........................................1075

1.    Breach of Implied Warranty of Merchantability Under Tenn. Code Ann. §§ 47-2-314 and 47-2A-212. ..............................1075

2.    Breach of Express Warranty Under Tenn. Code Ann. § 47-2-313.................................................................................1079

3.    Violation of the Tennessee Consumer Protection Act of 1977 (Tenn. Code Ann. § 47-18-101, et seq.)...............................1081

4.    Fraud by Omission and Concealment.................................1085

5.    Negligent Misrepresentation.............................................1089

6.    Negligence. .......................................................................1091

7.    Unjust Enrichment. ...........................................................1092

OO.    Texas State Law Claims for Relief ................................................1093

1.    Breach of Implied Warranty of Merchantability Under Tex. Bus. & Com. Code Ann. §§ 2.314 and 2A.212. ..................1093

2.    Breach of Express Warranty Under Tex. Bus. & Com. Code

COMPLAINT

Ann. § 2.313.................................................................1096

3.  Violation of the Deceptive Trade Practices-Consumer Protection Act (Tex. Bus. & Com. Code Ann. § 17.41, et seq.)..................................................................1099

4.  Fraud by Omission and Concealment...................................1104

5.  Negligent Misrepresentation..................................................1108

6.  Negligence. .........................................................................1110

7.  Unjust Enrichment. ............................................................1111

PP.  Utah State Law Claims for Relief.........................................1112

1.  Breach of Implied Warranty of Merchantability Under Utah Code Ann. §§ 70A-2-314 and 70A-2A-212. ........................1112

2.  Breach of Express Warranty Under Utah Code Ann. § 70A-2-313. ..................................................................................1115

3.  Violation of the Utah Consumer Sales Practices Act (Utah Code Ann. § 13-11-1, et seq.). ...........................................1118

4.  Violation of the Utah Truth in Advertising Act (Utah Code Ann. § 13-11a-1, et seq.)....................................................1121

5.  Fraud by Omission and Concealment...................................1126

6.  Negligent Misrepresentation..................................................1130

7.  Negligence. .........................................................................1132

8.  Unjust Enrichment. ............................................................1133

QQ.  Vermont State Law Claims for Relief....................................1134

1.  Breach of Implied Warranty of Merchantability Under Vt. Stat. Ann. Tit. 9A, §§ 2-314 and 2A-212............................1134

2.  Breach of Express Warranty Under Vt. Stat. Ann. Tit. 9A, § 2-313. ..............................................................................1137

3.  Violation of the Vermont Consumer Protection Act (Vt. Stat. Ann. Tit. 9, § 2451, et seq.). .............................................1140

COMPLAINT

4.   Fraud by Omission and Concealment.................................1144

5.   Negligent Misrepresentation...........................................1147

6.   Negligence. ...................................................................1149

7.   Unjust Enrichment. ........................................................1150

RR.   Virginia State Law Claims for Relief................................................1151

1.   Breach of Implied Warranty of Merchantability Under Va. Code Ann. §§ 8.2-314 and 8.2A-212....................................1151

2.   Breach of Express Warranty Under Va. Code Ann. § 8.2-313.1154

3.   Violation of the Virginia Consumer Protection Act (Va. Code Ann. § 59.1-196, et seq.).........................................1157

4.   Fraud by Omission and Concealment.................................1161

5.   Constructive Fraud........................................................1164

6.   Negligence. ...................................................................1166

7.   Unjust Enrichment. ........................................................1167

SS.   Washington State Law Claims for Relief........................................1168

1.   Breach of Implied Warranty of Merchantability Under Wash. Rev. Code Ann. §§ 62A.2-314 and 62A.2A-212..................1168

2.   Breach of Express Warranty Under Wash. Rev. Code Ann. § 62A.2-313. .......................................................................1171

3.   Violation of the Washington Consumer Protection Act (Wash. Rev. Code Ann. § 19.86.010, et seq.). ......................1174

4.   Fraud by Omission and Concealment.................................1178

5.   Negligent Misrepresentation...........................................1181

6.   Negligence. ...................................................................1183

7.   Unjust Enrichment. ........................................................1184

TT.   West Virginia State Law Claims for Relief.....................................1185

1.   Breach of Implied Warranty of Merchantability Under W. Va. Code Ann. §§ 46-2-314 and 46-2A-212..........................1185

COMPLAINT

2. Breach of Express Warranty Under W. Va. Code Ann. § 46-2-313. ...................................................................1189

3. Violation of the West Virginia Consumer Credit and Protection Act (W. Va. Code Ann. § 46A-1-101, et seq.). .....1192

4. Fraud by Omission and Concealment. ..................................1195

5. Negligent Misrepresentation. ................................................1199

6. Negligence. ...........................................................................1201

7. Unjust Enrichment. ...............................................................1202

UU. Wisconsin State Law Claims for Relief ...........................................1203

1. Breach of Implied Warranty of Merchantability Under Wis. Stat. Ann. §§ 402.314 and 411.212. ......................................1203

2. Breach of Express Warranty Under Wis. Stat. Ann. § 402.313 ..............................................................................1206

3. Violation of Wisconsin Deceptive Trade Practices Act (Wis. Stat. Ann. § 100.18). ............................................................1209

4. Fraud by Omission and Concealment. ..................................1213

5. Negligent Misrepresentation. ................................................1217

6. Negligence. ...........................................................................1218

7. Unjust Enrichment. ...............................................................1219

VI. PRAYER FOR RELIEF ............................................................................1220

VII. JURY DEMAND ......................................................................................1221

COMPLAINT

Plaintiffs, by and through their counsel, Vorys, Sater, Seymour and Pease LLP and Mason LLP, bring this action against Defendants KIA AMERICA, INC., formerly known as KIA MOTORS AMERICA, INC. ("Kia") and HYUNDAI MOTOR AMERICA ("Hyundai") (collectively, "Kia" and "Hyundai" are referred to herein as the "Defendants") based upon their personal knowledge as to facts specific to them and based upon the investigation of counsel in all other respects, as follows:

## I.    INTRODUCTION

1.    Kia and Hyundai manufactured vehicles that required a key to start. Despite selling these same cars throughout the rest of the world with engine immobilizer technology—technology that prevents theft by starting the vehicle with an electronic code in addition to a manual key—Defendants chose to omit engine immobilizer technology for vehicles sold in the United States.  Defendants' penny-pinching choice had consequences: it led to disproportionate thefts of their vehicles which caused harm to consumers of their vehicles, including but not limited to requiring the consumers to pay significantly increased insurance premiums and suffer accelerated depreciation of the vehicles' value after the defect was discovered and publicized.

2.    From 2010 through 2022, Defendants manufactured and sold approximately 16.8 million vehicles in the United States,[1] a significant percentage of which included certain 2010–2022 Kia vehicles and 2010–2022 Hyundai vehicles that do not contain engine immobilizer technology or any equivalent operational anti-theft equipment required by federal law and mandated by industry standards of care (hereinafter, the "Vehicles"), contrary to Defendants' messaging and marketing about these Vehicles.[2]    Defendants' purposeful design and failure to include engine

---

[1] *See* Good Car Bad Car Automotive Sales Data, *Hyundai Sales Figures – U.S Market*, https://www.goodcarbadcar.net/hyundai-us-sales-figures/ (accessed May 15, 2025); Good Car Bad Car Automotive Sales Data, *Kia Sales Figures – U.S Market*, https://www.goodcarbadcar.net/kia-us-sales-figures/ (accessed May 15, 2025).
[2] Highway Loss Data Institute, *Hyundai and Kia theft losses* (Dec. 2021), https://www.iihs.org/media/0e14ba17-a3c2-4375-8e66-081df9101ed2/opm7QA/HLDI%20Research/Bulletins/hldi_bulletin_38-28.pdf (accessed May 15, 2025).

COMPLAINT

immobilizer technology, or any equivalent operational anti-theft equipment, render the Vehicles prone to theft, unsafe, unreliable, and uncompliant with the law (hereinafter, the "Theft-Prone Design").

3. Specifically, engine immobilizer technology acts as an electronic security system and prevents a vehicle's engine from starting unless the correct key is used. Manufacturing vehicles with engine immobilizer technology has been common industry practice since the 1980s to prevent hot-wiring and unsafe, unauthorized vehicle use.

4. Defendants did not follow common industry practice and chose to manufacture and sell vehicles in the United States without engine immobilizer technology despite selling these same vehicles throughout the rest of the world with engine immobilizer technology.

5. Defendants have known about this design defect for years but actively concealed it until recently. Additionally, Defendants' poor attempt to address their failure—through "Anti-Theft Software Upgrades" and sticker decals warning against theft—has not been successful.

6. Because of the unusual ease with which anyone can break into and start the compromised Kia and Hyundai Vehicles, Defendants' failure to equip their Vehicles with engine immobilizer technology enabled young teenagers, known as the "Kia Boys," to post viral videos on social media exposing the Vehicles' security flaws and enabled young teenagers—sometimes under the legal driving age—to break into, steal, and recklessly drive the Kia and Hyundai Vehicles. As a result, states across the country have experienced a massive surge in thefts and attempted thefts of Kia and Hyundai Vehicles. Defendants' misconduct has not only led to thefts and attempted thefts but also to unnecessary injuries and deaths.

7. Consequently, Defendants' penny-pinching choice also exposed consumers, including Plaintiffs, to extreme hikes in insurance premiums and accelerated the depreciation of consumers', including Plaintiffs', Vehicles after the defect was discovered and publicized. Furthermore, Defendants' misconduct breached

COMPLAINT

express and implied warranties that Defendants made to consumers, including Plaintiffs, promising that their Vehicles were safe, reliable, compliant with theft prevention standards, and of a particular value, among other promises. Defendants' Vehicles had none of these qualities.

8.    Accordingly, Plaintiffs bring this action against Defendants to remedy their losses as consumers of the flawed Kia and Hyundai Vehicles. All Plaintiffs are consumers who leased or purchased Vehicles in the United States and who paid for car insurance for such Vehicles. All Plaintiffs incurred damages and/or losses in the form of increased insurance premiums and accelerated depreciation of their Vehicles because they owned or leased one of Defendants' dangerous, defective, and poor-quality Vehicles.

9.    All Plaintiffs bring this action to recover damages incurred due to (a) the substandard, dangerous, and defective nature of the Vehicles manufactured, designed, assembled, marketed, supplied, and sold by Defendants, (b) Defendants' subsequent misconduct in fraudulently and deceptively concealing, misrepresenting, and failing to warn consumers about their Vehicles' failure to conform to applicable federal and industry anti-theft standards, (c) Defendants' subsequent misconduct in fraudulently and deceptively concealing and misrepresenting the true value, quality, characteristics, and nature of the Vehicles, and (d) the real consequences that Plaintiffs experienced as a result of Defendants' misconduct, including increased insurance premiums and accelerated Vehicle depreciation.

## II.    PARTIES

### A.    Plaintiffs

10.    Plaintiffs are consumers who, at all relevant times, were or are owners and lessees of one or more of Defendants' Vehicles, each of whom, at all relevant times, purchased and/or made payments for an automobile insurance policy for the Vehicle they owned or leased.

11.    Plaintiffs purchased or leased their Vehicles in Alabama, Arizona,

COMPLAINT

Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, Wyoming, or the District of Columbia.

### 1.    Alabama Plaintiffs

12.    Plaintiff Yvonne Bates is a resident of Florence, AL.  Plaintiff purchased a 2013 Hyundai Accent on or around 07/12/2025 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2013 Hyundai Accent is a Vehicle subject to the Theft-Prone Design.

13.    Plaintiff Tammie Boykins is a resident of Mobile, AL.  Plaintiff purchased a 2021 Kia Rio on or around 08/08/2022 for personal and business use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2021 Kia Rio is a Vehicle subject to the Theft-Prone Design.

14.    Plaintiff Joanna Caster is a resident of Headland, AL.  Plaintiff purchased a 2015 Hyundai Elantra on or around 08/10/2023 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2015 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

15.    Plaintiff Evonn Craig is a resident of Odenville, AL.  Plaintiff purchased a 2021 Hyundai Sonata on or around 06/29/2021 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2021 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

COMPLAINT

16.    Plaintiff Brandon Crawley is a resident of Chelsea, AL. Plaintiff purchased a 2017 Hyundai Sonata on or around 07/20/2017 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

17.    Plaintiff Will Duncan is a resident of Birmingham, AL. Plaintiff purchased a 2017 Hyundai Santa Fe Sport on or around 08/26/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Hyundai Santa Fe Sport is a Vehicle subject to the Theft-Prone Design.

18.    Plaintiff Lindsay Emerson is a resident of Huntsville, AL. Plaintiff leased a 2017 Kia Forte on or around 06/24/2023 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Kia Forte is a Vehicle subject to the Theft-Prone Design.

19.    Plaintiff Marjorie Fulmer is a resident of Titus, AL. Plaintiff purchased a 2018 Hyundai Sonata on or around 08/15/2024 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

20.    Plaintiff Patsy Graham is a resident of Vinemont, AL. Plaintiff purchased a 2019 Kia Soul on or around 06/26/2019 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Kia Soul is a Vehicle subject to the Theft-Prone Design.

21.    Plaintiff Michael Johnson is a resident of Cheyenne, WY, and purchased the Vehicle in Alabama. Plaintiff purchased a 2020 Kia Soul on or around 06/20/2020 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition

COMPLAINT

system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2020 Kia Soul is a Vehicle subject to the Theft-Prone Design.

22.    Plaintiff Carlos Jones is a resident of Demopolis, AL.  Plaintiff purchased a 2020 Kia Forte on or around 06/15/2023 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2020 Kia Forte is a Vehicle subject to the Theft-Prone Design.

23.    Plaintiff Amelia Kennedy is a resident of Birmingham, AL.  Plaintiff purchased a 2015 Kia Forte on or around 06/21/2020 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2015 Kia Forte is a Vehicle subject to the Theft-Prone Design.

24.    Plaintiff Christina Martin is a resident of Hoover, AL.  Plaintiff purchased a 2018 Hyundai Santa Fe Sport on or around 04/18/2018 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2018 Hyundai Santa Fe Sport is a Vehicle subject to the Theft-Prone Design.

25.    Plaintiff Wanda Mayer is a resident of Ocean Springs, MS, and purchased the Vehicle in Alabama.  Plaintiff purchased a 2021 Kia Soul on or around 05/21/2021 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2021 Kia Soul is a Vehicle subject to the Theft-Prone Design.

26.    Plaintiff William McCullough is a resident of Pell City, AL.  Plaintiff leased a 2012 Kia Soul on or around 03/01/2022 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2012 Kia Soul is a Vehicle subject to the Theft-Prone Design.

27.    Plaintiff Genesis Mclendon is a resident of Ozark, AL.  Plaintiff purchased

COMPLAINT

a 2017 Hyundai Accent on or around 08/23/2019 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2017 Hyundai Accent is a Vehicle subject to the Theft-Prone Design.

28.    Plaintiff Matthew Poe is a resident of Anniston, AL.  Plaintiff purchased a 2011 Kia Forte on or around 06/26/2020 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2011 Kia Forte is a Vehicle subject to the Theft-Prone Design.

29.    Plaintiff Tameka Tunstall is a resident of Mobile, AL.  Plaintiff purchased a 2017 Hyundai Elantra on or around 02/24/2023 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2017 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

30.    Plaintiff Matheny Wagner is a resident of Mobile, AL.  Plaintiff purchased a 2020 Kia Rio on or around 12/05/2023 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2020 Kia Rio is a Vehicle subject to the Theft-Prone Design.

31.    Plaintiff Latauya Wilson is a resident of Camden, AL.  Plaintiff purchased a 2015 Kia Sorento on or around 07/14/2022 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2015 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

32.    Plaintiff Elizabeth Woods is a resident of Florence, AL.  Plaintiff purchased a 2014 Kia Sorento on or around 07/24/2024 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2014 Kia Sorento is a Vehicle subject

to the Theft-Prone Design.

## 2. Arizona Plaintiffs

33. Plaintiff Theron Anselmo is a resident of Fall River, MA, and purchased the Vehicle in Arizona. Plaintiff purchased a 2018 Kia Soul on or around 05/01/2018 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Kia Soul is a Vehicle subject to the Theft-Prone Design.

34. Plaintiff Melody Ayon is a resident of Tucson, AZ. Plaintiff purchased a 2021 Kia Forte on or around 06/16/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2021 Kia Forte is a Vehicle subject to the Theft-Prone Design.

35. Plaintiff Yvonne Barney is a resident of Tucson, AZ. Plaintiff purchased a 2012 Hyundai Veloster on or around 04/23/2023 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2012 Hyundai Veloster is a Vehicle subject to the Theft-Prone Design.

36. Plaintiff Rebecca Blount is a resident of Casa Grande, AZ. Plaintiff purchased a 2019 Kia Soul on or around 03/26/2020 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Kia Soul is a Vehicle subject to the Theft-Prone Design.

37. Plaintiff Gayle Burge is a resident of Tucson, AZ. Plaintiff purchased a 2018 Kia Sportage on or around 03/12/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

38. Plaintiff Barbara Burke is a resident of Tempe, AZ. Plaintiff purchased a

COMPLAINT

2014 Hyundai Santa Fe Sport on or around 05/13/2015 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2014 Hyundai Santa Fe Sport is a Vehicle subject to the Theft-Prone Design.

39. Plaintiff Juan Calderon is a resident of Phoenix, AZ. Plaintiff leased a 2012 Hyundai Elantra on or around 03/16/2023 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2012 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

40. Plaintiff Margie Diaz is a resident of El Mirage, AZ. Plaintiff purchased a 2019 Kia Optima on or around 05/09/2023 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Kia Optima is a Vehicle subject to the Theft-Prone Design.

41. Plaintiff Stephen Drotar is a resident of Paradise Valley, AZ. Plaintiff purchased a 2017 Kia Sorento on or around 07/09/2023 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

42. Plaintiff Christopher Eden is a resident of Kingman, AZ. Plaintiff purchased a 2019 Hyundai Tucson on or around 12/11/2023 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Hyundai Tucson is a Vehicle subject to the Theft-Prone Design. Plaintiff's Vehicle was damaged due to an attempted theft.

43. Plaintiff Thomas Eichinger is a resident of Chandler, AZ. Plaintiff purchased a 2020 Kia Sportage on or around 02/09/2023 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff

COMPLAINT

purchased insurance for the Vehicle. On information and belief, Plaintiff's 2020 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

44. Plaintiff Joseph Feist is a resident of Phoenix, AZ. Plaintiff purchased a 2016 Kia Soul on or around 06/24/2025 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Kia Soul is a Vehicle subject to the Theft-Prone Design.

45. Plaintiff David Goode is a resident of Chandler, AZ. Plaintiff purchased a 2016 Kia Sorento on or around 01/30/2017 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

46. Plaintiff Heather Gray is a resident of Phoenix, AZ. Plaintiff purchased a 2019 Kia Sportage on or around 12/01/2020 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

47. Plaintiff Annette Gulley is a resident of Casa Grande, AZ. Plaintiff purchased a 2013 Hyundai Sonata on or around 03/05/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2013 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

48. Plaintiff Tandra Hefley is a resident of Buckeye, AZ. Plaintiff purchased a 2013 Hyundai Accent on or around 02/02/2020 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2013 Hyundai Accent is a Vehicle subject to the Theft-Prone Design.

49. Plaintiff Christine Hill is a resident of Apache Junction, AZ. Plaintiff

COMPLAINT

Case 8:25-cv-02389-JVS-KES   Document 1   Filed 10/22/25   Page 118 of 1221   Page ID #:118

purchased a 2012 Kia Sorento on or around 08/31/2015 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2012 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

50. Plaintiff Khristi Howard is a resident of Casa Grande, AZ. Plaintiff purchased a 2014 Hyundai Sonata on or around 02/28/2023 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2014 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

51. Plaintiff Margaret Hughes is a resident of Chandler, AZ. Plaintiff purchased a 2019 Kia Sportage on or around 07/23/2023 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

52. Plaintiff Cassandra Hurd is a resident of Maricopa, AZ. Plaintiff purchased a 2011 Kia Sorento on or around 06/06/2023 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2011 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

53. Plaintiff Khadiah Imani is a resident of Tolleson, AZ. Plaintiff purchased a 2019 Kia Soul on or around 04/30/2020 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Kia Soul is a Vehicle subject to the Theft-Prone Design.

54. Plaintiff Angela Jarman is a resident of Chandler, AZ. Plaintiff purchased a 2016 Hyundai Veloster on or around 07/23/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Hyundai Veloster

is a Vehicle subject to the Theft-Prone Design.

55. Plaintiff Robert Kepler is a resident of Buckeye, AZ. Plaintiff purchased a 2014 Kia Soul on or around 05/23/2014 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2014 Kia Soul is a Vehicle subject to the Theft-Prone Design. Plaintiff purchased a 2019 Kia Soul on or around 10/23/2020 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Kia Soul is a Vehicle subject to the Theft-Prone Design.

56. Plaintiff Mathew King is a resident of Lexington, KY, and purchased the Vehicle in Arizona. Plaintiff purchased a 2018 Hyundai Elantra on or around 01/18/2018 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

57. Plaintiff Sharisse Kubala is a resident of Mesa, AZ. Plaintiff leased a 2020 Kia Sorento on or around 10/12/2020 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2020 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

58. Plaintiff Rachel Lent is a resident of Phoenix, AZ. Plaintiff purchased a 2020 Kia Soul on or around 01/10/2024 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2020 Kia Soul is a Vehicle subject to the Theft-Prone Design.

59. Plaintiff Karen Loevenguth is a resident of Tucson, AZ. Plaintiff purchased a 2015 Hyundai Sonata on or around 02/11/2022 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2015 Hyundai Sonata

COMPLAINT

is a Vehicle subject to the Theft-Prone Design.

60.    Plaintiff Doug Manumaleuga is a resident of Glendale, AZ.    Plaintiff purchased a 2021 Kia Forte on or around 07/06/2021 for personal use.    Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.    Plaintiff purchased insurance for the Vehicle.    On information and belief, Plaintiff's 2021 Kia Forte is a Vehicle subject to the Theft-Prone Design.

61.    Plaintiff Sandra Othon is a resident of Spokane, WA, and purchased the Vehicle in Arizona.    Plaintiff purchased a 2017 Hyundai Accent on or around 09/26/2017 for personal use.    Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.    Plaintiff purchased insurance for the Vehicle.    On information and belief, Plaintiff's 2017 Hyundai Accent is a Vehicle subject to the Theft-Prone Design.

62.    Plaintiff Michelle Peterson is a resident of Phoenix, AZ.    Plaintiff purchased a 2019 Kia Forte on or around 06/01/2019 for personal use.    Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.    Plaintiff purchased insurance for the Vehicle.    On information and belief, Plaintiff's 2019 Kia Forte is a Vehicle subject to the Theft-Prone Design.

63.    Plaintiff Ronald Price is a resident of Tulsa, OK, and purchased the Vehicle in Arizona.    Plaintiff purchased a 2019 Hyundai Accent on or around 10/14/2019 for personal use.    Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.    Plaintiff purchased insurance for the Vehicle.    On information and belief, Plaintiff's 2019 Hyundai Accent is a Vehicle subject to the Theft-Prone Design.

64.    Plaintiff Reagan Priest is a resident of Phoenix, AZ.    Plaintiff purchased a 2019 Kia Forte on or around 04/26/2022 for personal use.    Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.    Plaintiff purchased insurance for the Vehicle.    On information and belief, Plaintiff's 2019 Kia Forte is a Vehicle subject to the Theft-Prone Design.

65.    Plaintiff Trae Rambo is a resident of Mesa, AZ.    Plaintiff purchased a 2011 Kia Sorento on or around 02/05/2019 for personal use.    Plaintiff's Vehicle has a

COMPLAINT

traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2011 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

66.    Plaintiff Kim Richards is a resident of Peoria, AZ.  Plaintiff purchased a 2015 Kia Sorento on or around 04/15/2015 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2015 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

67.    Plaintiff Barbara Roundtree is a resident of Litchfield Park, AZ.  Plaintiff purchased a 2017 Hyundai Tucson on or around 07/20/2017 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2017 Hyundai Tucson is a Vehicle subject to the Theft-Prone Design.

68.    Plaintiff Patchari Schliekelman is a resident of Avondale, AZ.  Plaintiff purchased a 2018 Kia Soul on or around 03/09/2018 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2018 Kia Soul is a Vehicle subject to the Theft-Prone Design.

69.    Plaintiff Jennifer Smith is a resident of Mesa, AZ.  Plaintiff purchased a 2016 Kia Soul on or around 06/23/2018 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2016 Kia Soul is a Vehicle subject to the Theft-Prone Design.

70.    Plaintiff Erin Sullivan is a resident of Chandler, AZ.  Plaintiff purchased a 2015 Kia Soul on or around 10/02/2015 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2015 Kia Soul is a Vehicle subject to the Theft-Prone Design.

COMPLAINT

71.    Plaintiff Denise Sutton is a resident of Colorado Springs, CO, and purchased the Vehicle in Arizona.  Plaintiff purchased a 2015 Kia Soul on or around 06/28/2025 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2015 Kia Soul is a Vehicle subject to the Theft-Prone Design.

72.    Plaintiff Sherry Teeters is a resident of Willcox, AZ.  Plaintiff purchased a 2021 Kia Seltos on or around 10/29/2020 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2021 Kia Seltos is a Vehicle subject to the Theft-Prone Design.

73.    Plaintiff Juan Thames is a resident of Peoria, AZ.  Plaintiff purchased a 2017 Hyundai Elantra on or around 01/17/2022 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2017 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

74.    Plaintiff Tiffany Turner is a resident of Phoenix, AZ.  Plaintiff purchased a 2020 Kia Sorento on or around 10/07/2020 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2020 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

75.    Plaintiff Samuel Venhuizen is a resident of Tucson, AZ.  Plaintiff purchased a 2019 Kia Rio on or around 07/05/2019 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2019 Kia Rio is a Vehicle subject to the Theft-Prone Design.

76.    Plaintiff Keith Whisman is a resident of Phoenix, AZ.  Plaintiff purchased a 2016 Kia Soul on or around 02/17/2024 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for

COMPLAINT

the Vehicle.  On information and belief, Plaintiff's 2016 Kia Soul is a Vehicle subject to the Theft-Prone Design.

77.    Plaintiff Shecarie Wilkerson is a resident of Tuscaloosa, AL, and purchased the Vehicle in Arizona.  Plaintiff purchased a 2017 Hyundai Accent on or around 03/13/2019 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2017 Hyundai Accent is a Vehicle subject to the Theft-Prone Design.

78.    Plaintiff Bruce Woldorf is a resident of Cottage Grove, OR, and purchased the Vehicle in Arizona.  Plaintiff purchased a 2017 Kia Soul on or around 09/07/2017 for personal and business use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2017 Kia Soul is a Vehicle subject to the Theft-Prone Design.

### 3.    Arkansas Plaintiffs

79.    Plaintiff Laurel Brown is a resident of Ozark, AR.  Plaintiff purchased a 2021 Hyundai Tucson on or around 01/02/2021 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2021 Hyundai Tucson is a Vehicle subject to the Theft-Prone Design.

80.    Plaintiff Susan Damico is a resident of Montgomery, IL, and purchased the Vehicle in Arkansas.  Plaintiff purchased a 2020 Kia Soul on or around 03/01/2022 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2020 Kia Soul is a Vehicle subject to the Theft-Prone Design.  Plaintiff purchased a 2018 Kia Optima on or around 03/01/2018 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2018 Kia Optima is a Vehicle subject to the Theft-Prone Design.

81.    Plaintiff Amanda Edens is a resident of Springdale, AR.    Plaintiff

purchased a 2014 Kia Soul on or around 04/23/2013 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2014 Kia Soul is a Vehicle subject to the Theft-Prone Design.

82. Plaintiff Terry Foreman is a resident of Jonesboro, AR. Plaintiff purchased a 2014 Kia Sorento on or around 02/23/2017 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2014 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

83. Plaintiff Mary Alice Mixon is a resident of Corpus Christi, TX, and purchased the Vehicle in Arkansas. Plaintiff purchased a 2019 Hyundai Elantra on or around 04/30/2022 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

84. Plaintiff Stefnie Nesbitt is a resident of Maumelle, AR. Plaintiff leased a 2020 Kia Forte on or around 10/06/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2020 Kia Forte is a Vehicle subject to the Theft-Prone Design.

85. Plaintiff April Smith is a resident of Little Rock, AR. Plaintiff purchased a 2014 Kia Optima on or around 09/01/2020 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2014 Kia Optima is a Vehicle subject to the Theft-Prone Design.

86. Plaintiff Kelsey Wells is a resident of Plano, TX, and purchased the Vehicle in Arkansas. Plaintiff purchased a 2013 Hyundai Tucson on or around 07/23/2013 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition

COMPLAINT

system.   Plaintiff purchased insurance for the Vehicle.   On information and belief, Plaintiff's 2013 Hyundai Tucson is a Vehicle subject to the Theft-Prone Design.

### 4.   California Plaintiffs

87.   Plaintiff Rita Abramian is a resident of Glendale, CA.  Plaintiff leased a 2022 Kia Sportage on or around 09/22/2021 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.   On information and belief, Plaintiff's 2022 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

88.   Plaintiff Kimberly Alvarez is a resident of Long Beach, CA.  Plaintiff purchased a 2013 Kia Sorento on or around 02/14/2017 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2013 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

89.   Plaintiff Jerid Anderson is a resident of Orcutt, CA.  Plaintiff purchased a 2013 Kia Forte on or around 09/23/2012 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2013 Kia Forte is a Vehicle subject to the Theft-Prone Design.

90.   Plaintiff Alaina Baggs is a resident of Cedar City, UT, and purchased the Vehicle in California.  Plaintiff purchased a 2014 Kia Soul on or around 07/25/2019 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2014 Kia Soul is a Vehicle subject to the Theft-Prone Design.

91.   Plaintiff Maryjane Ball is a resident of Fresno, CA.  Plaintiff purchased a 2020 Kia Soul on or around 08/23/2019 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2020 Kia Soul is a Vehicle subject to the Theft-Prone Design.

COMPLAINT

92. Plaintiff Laytorie Barnett is a resident of Madera, CA. Plaintiff leased a 2018 Kia Optima on or around 10/03/2019 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Kia Optima is a Vehicle subject to the Theft-Prone Design. On or about 03/11/2025, Plaintiff's Vehicle was stolen.

93. Plaintiff Kyle Bates is a resident of Yakima, WA, and purchased the Vehicle in California. Plaintiff purchased a 2015 Kia Optima on or around 02/14/2016 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2015 Kia Optima is a Vehicle subject to the Theft-Prone Design.

94. Plaintiff Ellen Battles is a resident of Yorba Linda, CA. Plaintiff purchased a 2018 Kia Forte on or around 05/16/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Kia Forte is a Vehicle subject to the Theft-Prone Design.

95. Plaintiff David Batzer is a resident of Las Vegas, NV, and purchased the Vehicle in California. Plaintiff purchased a 2015 Hyundai Sonata on or around 07/09/2016 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2015 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

96. Plaintiff Alicia Becknell is a resident of Manchester, KY, and purchased the Vehicle in California. Plaintiff purchased a 2020 Hyundai Elantra on or around 02/20/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2020 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

97. Plaintiff Rey Borge is a resident of Redlands, CA. Plaintiff purchased a 2020 Kia Sportage on or around 06/03/2020 for personal use. Plaintiff's Vehicle has a

COMPLAINT

traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2020 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

98.    Plaintiff Ernest Carithers is a resident of Oceanside, CA. Plaintiff purchased a 2015 Kia Optima on or around 07/19/2017 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2015 Kia Optima is a Vehicle subject to the Theft-Prone Design.

99.    Plaintiff Natalie Castro is a resident of Las Vegas, NV, and purchased the Vehicle in California. Plaintiff purchased a 2012 Hyundai Santa Fe on or around 04/01/2013 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2012 Hyundai Santa Fe is a Vehicle subject to the Theft-Prone Design.

100.    Plaintiff Ella Chatterjee is a resident of Hemet, CA. Plaintiff purchased a 2012 Kia Optima on or around 05/10/2015 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2012 Kia Optima is a Vehicle subject to the Theft-Prone Design. Plaintiff purchased a 2019 Hyundai Sonata on or around 08/27/2022 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

101.    Plaintiff Christian Chavez is a resident of Las Vegas, NV, and purchased the Vehicle in California. Plaintiff purchased a 2018 Kia Sorento on or around 06/23/2018 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

102.    Plaintiff Rosemary Coleman is a resident of Las Vegas, NV, and purchased

COMPLAINT

the Vehicle in California.  Plaintiff leased a 2015 Hyundai Elantra on or around 09/23/2015 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2015 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

103.   Plaintiff Miesha Collins is a resident of Riverside, CA.  Plaintiff purchased a 2019 Hyundai Accent on or around 04/01/2019 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2019 Hyundai Accent is a Vehicle subject to the Theft-Prone Design.

104.   Plaintiff Mary Conston is a resident of Moreno Valley, CA.  Plaintiff purchased a 2016 Hyundai Sonata on or around 09/21/2021 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2016 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

105.   Plaintiff Nicholas Cordero is a resident of Eureka, CA.  Plaintiff purchased a 2019 Hyundai Accent on or around 07/23/2019 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2019 Hyundai Accent is a Vehicle subject to the Theft-Prone Design.

106.   Plaintiff Kristine Coulter is a resident of Modesto, CA.  Plaintiff purchased a 2018 Kia Sportage on or around 05/23/2022 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2018 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

107.   Plaintiff Unicque Coutee is a resident of Los Angeles, CA.  Plaintiff purchased a 2016 Hyundai Tucson on or around 02/28/2024 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2016 Hyundai Tucson

is a Vehicle subject to the Theft-Prone Design.  On or about 01/13/2025, Plaintiff's Vehicle was stolen.

108.   Plaintiff Katrina Davis is a resident of Vallejo, CA.  Plaintiff purchased a 2021 Kia Sportage on or around 02/09/2025 for personal and business use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2021 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

109.   Plaintiff Darla DeAnda is a resident of Lake Elsinore, CA.  Plaintiff purchased a 2013 Kia Soul on or around 02/23/2021 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2013 Kia Soul is a Vehicle subject to the Theft-Prone Design.

110.   Plaintiff Patricia Dunne is a resident of Fresno, CA.  Plaintiff purchased a 2013 Hyundai Accent on or around 04/30/2016 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2013 Hyundai Accent is a Vehicle subject to the Theft-Prone Design.

111.   Plaintiff Chris Ehrnman is a resident of Upland, CA.  Plaintiff purchased a 2013 Kia Soul on or around 11/24/2014 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2013 Kia Soul is a Vehicle subject to the Theft-Prone Design.

112.   Plaintiff Mario Ferrero is a resident of Lodi, CA.  Plaintiff purchased a 2014 Hyundai Tucson on or around 09/15/2015 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2014 Hyundai Tucson is a Vehicle subject to the Theft-Prone Design.

113.   Plaintiff Eve Fowler is a resident of Weed, CA.  Plaintiff purchased a 2012

COMPLAINT

Kia Sorento on or around 06/01/2013 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2012 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

114. Plaintiff Jorge Garsia is a resident of Highland, CA. Plaintiff purchased a 2021 Hyundai Venue on or around 03/24/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2021 Hyundai Venue is a Vehicle subject to the Theft-Prone Design.

115. Plaintiff Joe Gates is a resident of Las Vegas, NV, and purchased the Vehicle in California. Plaintiff purchased a 2013 Hyundai Elantra on or around 06/23/2015 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2013 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design. Plaintiff purchased a 2020 Kia Forte on or around 01/22/2024 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2020 Kia Forte is a Vehicle subject to the Theft-Prone Design.

116. Plaintiff Carolyn Givens is a resident of Forney, TX, and purchased the Vehicle in California. Plaintiff purchased a 2018 Hyundai Santa Fe Sport on or around 12/20/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Hyundai Santa Fe Sport is a Vehicle subject to the Theft-Prone Design.

117. Plaintiff Edie Golikov is a resident of Tarzana, CA. Plaintiff leased a 2022 Hyundai Santa Fe on or around 11/05/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2022 Hyundai Santa Fe is a Vehicle

COMPLAINT

subject to the Theft-Prone Design.

118.   Plaintiff Joshua Gonzalez is a resident of Moreno Valley, CA.  Plaintiff leased a 2016 Hyundai Accent on or around 04/23/2018 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2016 Hyundai Accent is a Vehicle subject to the Theft-Prone Design.

119.   Plaintiff Lissette Gonzalez is a resident of Imperial Beach, CA.  Plaintiff purchased a 2022 Kia Sportage on or around 09/23/2021 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2022 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

120.   Plaintiff Jesus Guerrero is a resident of Beaumont, CA.  Plaintiff purchased a 2014 Hyundai Sonata on or around 06/02/2022 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2014 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.  On or about 10/24/2024, Plaintiff's Vehicle was stolen.

121.   Plaintiff Nicole Hill is a resident of New Orleans, LA, and purchased the Vehicle in California.  Plaintiff purchased a 2018 Kia Soul on or around 08/24/2018 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2018 Kia Soul is a Vehicle subject to the Theft-Prone Design.

122.   Plaintiff Jasmen Huitron is a resident of Mesa, AZ, and purchased the Vehicle in California.  Plaintiff purchased a 2018 Hyundai Elantra on or around 09/24/2022 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2018 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

123.   Plaintiff Patricia Hursey is a resident of Marysville, CA.   Plaintiff

purchased a 2018 Hyundai Elantra on or around 10/07/2019 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

124. Plaintiff Mason Ibarra is a resident of Winchester, CA. Plaintiff purchased a 2020 Hyundai Elantra on or around 11/23/2022 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2020 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

125. Plaintiff Wael Jaradat is a resident of Rocklin, CA. Plaintiff purchased a 2017 Hyundai Elantra on or around 11/30/2016 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

126. Plaintiff Mikal Jefferson is a resident of Yucca Valley, CA. Plaintiff leased a 2013 Hyundai Accent on or around 02/24/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2013 Hyundai Accent is a Vehicle subject to the Theft-Prone Design.

127. Plaintiff Amaris Jones is a resident of Henderson, NV, and purchased the Vehicle in California. Plaintiff purchased a 2014 Hyundai Elantra GT on or around 09/16/2023 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2014 Hyundai Elantra GT is a Vehicle subject to the Theft-Prone Design.

128. Plaintiff Evelyn Joslyn is a resident of Orange, CA. Plaintiff purchased a 2015 Kia Forte on or around 06/23/2020 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for

COMPLAINT

the Vehicle.  On information and belief, Plaintiff's 2015 Kia Forte is a Vehicle subject to the Theft-Prone Design.

129.   Plaintiff Jeffrey Klee is a resident of Fresno, CA.  Plaintiff purchased a 2016 Hyundai Santa Fe Sport on or around 05/11/2020 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2016 Hyundai Santa Fe Sport is a Vehicle subject to the Theft-Prone Design.

130.   Plaintiff Matthew Lamprecht is a resident of Hoyt Lakes, MN, and purchased the Vehicle in California.  Plaintiff purchased a 2016 Kia Optima on or around 03/20/2019 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2016 Kia Optima is a Vehicle subject to the Theft-Prone Design.

131.   Plaintiff Keilan Love is a resident of Sacramento, CA.  Plaintiff leased a 2014 Kia Soul on or around 11/21/2019 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2014 Kia Soul is a Vehicle subject to the Theft-Prone Design.

132.   Plaintiff Frank Mann is a resident of Orange, CA.  Plaintiff purchased a 2014 Kia Sportage on or around 04/29/2022 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2014 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

133.   Plaintiff Teresa Martinez is a resident of Bishop, CA.  Plaintiff leased a 2016 Kia Sorento on or around 02/27/2020 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2016 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

COMPLAINT

134.    Plaintiff Cassandra Martinson is a resident of Kent, WA, and purchased the Vehicle in California.   Plaintiff purchased a 2022 Hyundai Tucson on or around 09/21/2021 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2022 Hyundai Tucson is a Vehicle subject to the Theft-Prone Design.

135.    Plaintiff Tatijana Matthis is a resident of Sacramento, CA.  Plaintiff leased a 2020 Kia Optima on or around 01/10/2023 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2020 Kia Optima is a Vehicle subject to the Theft-Prone Design.

136.    Plaintiff Laurinda McTucker is a resident of Arroyo Grande, CA.  Plaintiff purchased a 2014 Kia Sportage on or around 04/04/2016 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2014 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

137.    Plaintiff Carrie Mills is a resident of Sacramento, CA.  Plaintiff purchased a 2011 Kia Forte on or around 03/11/2023 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2011 Kia Forte is a Vehicle subject to the Theft-Prone Design.

138.    Plaintiff Jorge Miranda is a resident of Buena Park, CA.  Plaintiff purchased a 2016 Kia Optima on or around 11/09/2018 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2016 Kia Optima is a Vehicle subject to the Theft-Prone Design.

139.    Plaintiff Sierra Moder is a resident of Los Angeles, CA.  Plaintiff purchased a 2014 Kia Forte on or around 04/14/2015 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased

insurance for the Vehicle. On information and belief, Plaintiff's 2014 Kia Forte is a Vehicle subject to the Theft-Prone Design.

140. Plaintiff Lillian Morales is a resident of Turlock, CA. Plaintiff purchased a 2019 Kia Optima on or around 09/28/2023 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Kia Optima is a Vehicle subject to the Theft-Prone Design.

141. Plaintiff Chris Murua is a resident of Westminster, CA. Plaintiff purchased a 2021 Kia Forte on or around 02/23/2021 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2021 Kia Forte is a Vehicle subject to the Theft-Prone Design. Plaintiff's Vehicle was damaged due to an attempted theft.

142. Plaintiff Cedric Nelson Sr is a resident of Long Beach, CA. Plaintiff purchased a 2012 Hyundai Santa Fe on or around 06/12/2024 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2012 Hyundai Santa Fe is a Vehicle subject to the Theft-Prone Design.

143. Plaintiff Christian Osborne is a resident of Vallejo, CA. Plaintiff purchased a 2017 Hyundai Santa Fe Sport on or around 05/23/2020 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Hyundai Santa Fe Sport is a Vehicle subject to the Theft-Prone Design.

144. Plaintiff Charmaine Pearce is a resident of San Diego, CA. Plaintiff purchased a 2019 Kia Soul on or around 04/06/2022 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Kia Soul is a Vehicle subject to the Theft-Prone Design.

COMPLAINT

145.    Plaintiff Lucy Perkins is a resident of Carlsbad, CA.  Plaintiff purchased a 2013 Hyundai Elantra Coupe on or around 02/23/2012 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2013 Hyundai Elantra Coupe is a Vehicle subject to the Theft-Prone Design.

146.    Plaintiff Melanie Pickett is a resident of Victorville, CA.  Plaintiff purchased a 2020 Kia Optima on or around 07/24/2020 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2020 Kia Optima is a Vehicle subject to the Theft-Prone Design.

147.    Plaintiff Maria Piroli is a resident of Desert Hot Springs, CA.  Plaintiff purchased a 2020 Hyundai Venue on or around 12/10/2020 for personal use.  Plaintiff purchased the Vehicle in CA while Plaintiff lived there.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2020 Hyundai Venue is a Vehicle subject to the Theft-Prone Design.

148.    Plaintiff Tinika Placido is a resident of Oakland, CA.  Plaintiff purchased a 2017 Kia Optima on or around 03/13/2021 for business use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2017 Kia Optima is a Vehicle subject to the Theft-Prone Design.  On or about 12/31/2022, Plaintiff's Vehicle was stolen.

149.    Plaintiff Aaliyah Powell is a resident of Ontario, CA.  Plaintiff leased a 2021 Kia Forte on or around 05/23/2020 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2021 Kia Forte is a Vehicle subject to the Theft-Prone Design.

150.    Plaintiff Marlo Pullum is a resident of Santa Rosa, CA.  Plaintiff purchased a 2015 Kia Sorento on or around 08/01/2021 for personal use.  Plaintiff's Vehicle has a

traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2015 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

151.   Plaintiff Kamaya Range is a resident of Fairfield, CA.  Plaintiff leased a 2016 Kia Optima on or around 06/23/2018 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2016 Kia Optima is a Vehicle subject to the Theft-Prone Design.  On or about 05/02/2025, Plaintiff's Vehicle was stolen.

152.   Plaintiff Christine Rocha is a resident of Paso Robles, CA.  Plaintiff purchased a 2021 Kia Forte on or around 09/01/2022 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2021 Kia Forte is a Vehicle subject to the Theft-Prone Design.

153.   Plaintiff Antonio Rodriguez is a resident of Murrieta, CA.  Plaintiff purchased a 2012 Hyundai Elantra on or around 06/24/2011 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2012 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

154.   Plaintiff Guillermina Roman is a resident of San Jose, CA.  Plaintiff purchased a 2016 Kia Sorento on or around 02/11/2018 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2016 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

155.   Plaintiff wynesha Ross is a resident of Colton, CA.  Plaintiff purchased a 2015 Kia Sportage on or around 07/09/2015 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2015 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

COMPLAINT

156.    Plaintiff Matthew Rutledge is a resident of Apple Valley, CA.  Plaintiff leased a 2018 Hyundai Sonata on or around 05/06/2021 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2018 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

157.    Plaintiff Kevin Salay is a resident of Shasta Lake, CA.  Plaintiff purchased a 2018 Kia Soul on or around 08/23/2022 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2018 Kia Soul is a Vehicle subject to the Theft-Prone Design.

158.    Plaintiff Samantha Sanchez is a resident of Los Angeles, CA.  Plaintiff leased a 2019 Kia Optima on or around 05/19/2019 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2019 Kia Optima is a Vehicle subject to the Theft-Prone Design.

159.    Plaintiff Sandra Sanchez is a resident of Stockton, CA.  Plaintiff purchased a 2014 Hyundai Elantra GT on or around 11/02/2023 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2014 Hyundai Elantra GT is a Vehicle subject to the Theft-Prone Design.

160.    Plaintiff Robert Santa Ana is a resident of San Jose, CA.  Plaintiff leased a 2015 Hyundai Sonata on or around 07/23/2022 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2015 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

161.    Plaintiff Daniel Santana is a resident of San Bernardino, CA.  Plaintiff purchased a 2019 Kia Forte on or around 06/15/2022 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased

insurance for the Vehicle. On information and belief, Plaintiff's 2019 Kia Forte is a Vehicle subject to the Theft-Prone Design.

162. Plaintiff Michael Santana is a resident of Orange County, CA. Plaintiff purchased a 2014 Hyundai Accent on or around 02/15/2022 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2014 Hyundai Accent is a Vehicle subject to the Theft-Prone Design. On or about 01/15/2025, Plaintiff's Vehicle was stolen.

163. Plaintiff Bettina Shilling is a resident of Albany, OR, and purchased the Vehicle in California. Plaintiff purchased a 2013 Hyundai Elantra on or around 12/09/2012 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2013 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

164. Plaintiff Phillip Silva is a resident of Ontario, CA. Plaintiff purchased a 2016 Hyundai Elantra on or around 12/19/2015 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

165. Plaintiff Tiffany Starks is a resident of Fremont, CA. Plaintiff leased a 2016 Kia Sportage on or around 01/06/2018 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

166. Plaintiff Kyle Sundgren is a resident of Brentwood, CA. Plaintiff purchased a 2017 Kia Rio on or around 10/09/2023 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Kia Rio is a Vehicle subject to the Theft-Prone Design.

COMPLAINT

167. Plaintiff Lakema Tate is a resident of Los Angeles, CA. Plaintiff purchased a 2016 Kia Soul on or around 10/17/2016 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Kia Soul is a Vehicle subject to the Theft-Prone Design.

168. Plaintiff Justin Trichter is a resident of Anaheim, CA. Plaintiff purchased a 2016 Kia Soul on or around 10/09/2016 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Kia Soul is a Vehicle subject to the Theft-Prone Design.

169. Plaintiff Leah Urbank is a resident of Hawthorne, CA. Plaintiff purchased a 2017 Kia Forte on or around 12/01/2017 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Kia Forte is a Vehicle subject to the Theft-Prone Design.

170. Plaintiff Lydia West is a resident of Fortuna, CA. Plaintiff purchased a 2016 Hyundai Elantra on or around 01/01/2018 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

171. Plaintiff Maxine Wyckoff is a resident of Aledo, TX, and purchased the Vehicle in California. Plaintiff purchased a 2020 Kia Soul on or around 11/23/2019 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2020 Kia Soul is a Vehicle subject to the Theft-Prone Design.

**5. Colorado Plaintiffs**

172. Plaintiff Jamie Boller is a resident of Berthoud, CO. Plaintiff purchased a 2018 Hyundai Elantra on or around 06/23/2019 for personal use. Plaintiff's Vehicle has

a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2018 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

173.  Plaintiff Gwendolyn Boyce is a resident of Rocky Mount, NC, and purchased the Vehicle in Colorado.  Plaintiff purchased a 2015 Kia Sorento on or around 01/04/2021 for personal and business use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2015 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

174.  Plaintiff Julie Brown is a resident of Longmont, CO.  Plaintiff purchased a 2021 Kia Seltos on or around 01/01/2021 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2021 Kia Seltos is a Vehicle subject to the Theft-Prone Design.

175.  Plaintiff Lorraine Chambers is a resident of Aurora, CO.  Plaintiff purchased a 2016 Kia Sorento on or around 05/26/2017 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2016 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

176.  Plaintiff Toni Davis is a resident of Castle Rock, CO.  Plaintiff purchased a 2011 Hyundai Tucson on or around 10/15/2022 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2011 Hyundai Tucson is a Vehicle subject to the Theft-Prone Design.

177.  Plaintiff Donna Jones is a resident of Grand Junction, CO.  Plaintiff purchased a 2017 Kia Forte on or around 07/22/2017 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2017 Kia Forte is a

COMPLAINT

Vehicle subject to the Theft-Prone Design.

178. Plaintiff Wilfred Knapp is a resident of White Hall, AR. Plaintiff purchased a 2021 Kia Sorento in Colorado on or around 03/18/2023 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2021 Kia Sorento is a Vehicle subject to the Theft-Prone Design. Plaintiff purchased a 2017 Hyundai Santa Fe in Florida on or around 10/02/2022 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Hyundai Santa Fe is a Vehicle subject to the Theft-Prone Design.

179. Plaintiff Samantha Lopez Mendez is a resident of Loveland, CO. Plaintiff purchased a 2011 Hyundai Sonata on or around 05/05/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2011 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

180. Plaintiff Courtney Mazza is a resident of Northglenn, CO. Plaintiff purchased a 2019 Hyundai Santa Fe on or around 03/10/2020 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Hyundai Santa Fe is a Vehicle subject to the Theft-Prone Design.

181. Plaintiff Christian Miller is a resident of Windsor, CO. Plaintiff purchased a 2014 Kia Sportage on or around 08/23/2018 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2014 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

182. Plaintiff Crystal Schleicher is a resident of Mitchell, NE, and purchased the Vehicle in Colorado. Plaintiff purchased a 2014 Hyundai Santa Fe Sport on or around 06/26/2018 for personal use. Plaintiff's Vehicle has a traditional "insert-and-

turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2014 Hyundai Santa Fe Sport is a Vehicle subject to the Theft-Prone Design.

183.  Plaintiff Joseph Schmidt is a resident of Neenah, WI, and purchased the Vehicle in Colorado.  Plaintiff purchased a 2017 Hyundai Elantra on or around 05/23/2018 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2017 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

184.  Plaintiff Gail Zuetlau is a resident of Pearcy, AR, and purchased the Vehicle in Colorado.  Plaintiff purchased a 2017 Hyundai Accent on or around 10/16/2019 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2017 Hyundai Accent is a Vehicle subject to the Theft-Prone Design.

### 6.    Connecticut Plaintiffs

185.  Plaintiff Judith Belcourt is a resident of Meriden, CT.  Plaintiff purchased a 2018 Hyundai Elantra on or around 03/02/2024 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2018 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

186.  Plaintiff Amy Hogberg is a resident of Groton, CT.  Plaintiff leased a 2017 Kia Sportage on or around 08/15/2017 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2017 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

187.  Plaintiff Dana Wilson is a resident of Bridgeport, CT.  Plaintiff purchased a 2013 Hyundai Elantra on or around 04/09/2016 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2013 Hyundai Elantra

COMPLAINT

is a Vehicle subject to the Theft-Prone Design. On or about 12/01/2024, Plaintiff's Vehicle was stolen.

### 7.    Delaware Plaintiffs

188.   Plaintiff Matt Mullowney is a resident of Downingtown, PA, and purchased the Vehicle in Delaware.  Plaintiff purchased a 2016 Hyundai Elantra on or around 12/23/2016 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2016 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

189.   Plaintiff Shannon Murphy is a resident of Newark, DE.  Plaintiff purchased a 2016 Hyundai Tucson on or around 05/11/2017 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2016 Hyundai Tucson is a Vehicle subject to the Theft-Prone Design.

### 8.    Florida Plaintiffs

190.   Plaintiff James Adams is a resident of Jacksonville, FL.   Plaintiff purchased a 2020 Hyundai Elantra on or around 01/30/2021 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2020 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

191.   Plaintiff Peter Aliseo is a resident of Lake Mary, FL.  Plaintiff purchased a 2020 Kia Optima on or around 11/16/2022 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2020 Kia Optima is a Vehicle subject to the Theft-Prone Design.

192.   Plaintiff Biagio Ambrosino is a resident of Oakland Park, FL.  Plaintiff purchased a 2016 Kia Sorento on or around 10/01/2021 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased

COMPLAINT

insurance for the Vehicle.  On information and belief, Plaintiff's 2016 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

193.   Plaintiff Jennifer Anderson is a resident of Milton, FL.  Plaintiff purchased a 2020 Kia Soul on or around 08/07/2020 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2020 Kia Soul is a Vehicle subject to the Theft-Prone Design.

194.   Plaintiff Cesar Avila Miranda is a resident of Davenport, FL.  Plaintiff purchased a 2018 Kia Sorento on or around 02/29/2020 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2018 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

195.   Plaintiff Carolyn Barnes is a resident of Tampa, FL.  Plaintiff purchased a 2017 Kia Soul on or around 09/13/2017 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2017 Kia Soul is a Vehicle subject to the Theft-Prone Design.

196.   Plaintiff Dawn Bartosek is a resident of Masaryktown, FL.  Plaintiff leased a 2015 Hyundai Elantra on or around 05/26/2024 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2015 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

197.   Plaintiff Paul Basher is a resident of Fort Pierce, FL.  Plaintiff purchased a 2017 Kia Optima on or around 10/23/2017 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2017 Kia Optima is a Vehicle subject to the Theft-Prone Design.

198.   Plaintiff Alexandra Beach is a resident of Orlando, FL.  Plaintiff purchased

- 145 -

COMPLAINT

a 2016 Hyundai Santa Fe Sport on or around 08/20/2016 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Hyundai Santa Fe Sport is a Vehicle subject to the Theft-Prone Design.

199. Plaintiff Diossi Benjamin is a resident of Tampa, FL. Plaintiff purchased a 2017 Kia Sorento on or around 08/23/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

200. Plaintiff Krisanne Bentley is a resident of St Johns, FL. Plaintiff purchased a 2020 Kia Soul on or around 01/01/2020 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2020 Kia Soul is a Vehicle subject to the Theft-Prone Design. Plaintiff purchased a 2016 Kia Soul on or around 05/23/2016 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Kia Soul is a Vehicle subject to the Theft-Prone Design.

201. Plaintiff Lila Bloecker is a resident of Fort Lauderdale, FL. Plaintiff purchased a 2017 Hyundai Santa Fe Sport on or around 02/24/2018 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Hyundai Santa Fe Sport is a Vehicle subject to the Theft-Prone Design.

202. Plaintiff Sheakia Bogan is a resident of Fort Walton Beach, FL. Plaintiff purchased a 2019 Kia Sorento on or around 06/23/2020 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

203. Plaintiff Christopher Bradbury is a resident of San Antonio, TX, and

- 146 -
COMPLAINT

purchased the Vehicle in Florida.  Plaintiff purchased a 2020 Kia Soul on or around 10/14/2019 for business use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2020 Kia Soul is a Vehicle subject to the Theft-Prone Design.

204.  Plaintiff Scott Bray is a resident of Summerfield, FL.  Plaintiff purchased a 2020 Kia Optima on or around 04/01/2020 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2020 Kia Optima is a Vehicle subject to the Theft-Prone Design.

205.  Plaintiff Donalea Butcher is a resident of Winter Park, FL.  Plaintiff purchased a 2016 Hyundai Elantra on or around 02/21/2021 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2016 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

206.  Plaintiff Victoria Calderon is a resident of Deltona, FL.  Plaintiff purchased a 2018 Kia Soul on or around 06/23/2018 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2018 Kia Soul is a Vehicle subject to the Theft-Prone Design.

207.  Plaintiff William Camp is a resident of Lakeland, FL.  Plaintiff purchased a 2015 Hyundai Sonata on or around 07/30/2022 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2015 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

208.  Plaintiff Grace Candreva is a resident of Ocala, FL.  Plaintiff purchased a 2016 Kia Rio on or around 06/10/2015 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2016 Kia Rio is a Vehicle subject to

COMPLAINT

the Theft-Prone Design.

209.   Plaintiff Florin Carlin is a resident of Hernando, FL.  Plaintiff leased a 2021 Hyundai Elantra on or around 06/14/2021 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2021 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

210.   Plaintiff Destinee Carson is a resident of Pensacola, FL.  Plaintiff leased a 2016 Kia Soul on or around 08/26/2018 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2016 Kia Soul is a Vehicle subject to the Theft-Prone Design.

211.   Plaintiff Lisa Cato is a resident of Monticello, FL.  Plaintiff purchased a 2017 Hyundai Elantra for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2017 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

212.   Plaintiff Kristin Chenault is a resident of Monmouth, IL, and purchased the Vehicle in Florida.  Plaintiff purchased a 2018 Hyundai Elantra on or around 07/29/2021 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2018 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

213.   Plaintiff Toni Cherim is a resident of Jacksonville, FL.  Plaintiff leased a 2020 Kia Rio on or around 01/09/2023 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2020 Kia Rio is a Vehicle subject to the Theft-Prone Design.

214.   Plaintiff Mishell Clugston is a resident of Leesburg, FL.  Plaintiff leased a 2019 Hyundai Santa Fe on or around 04/26/2024 for personal use.  Plaintiff's Vehicle

COMPLAINT

has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Hyundai Santa Fe is a Vehicle subject to the Theft-Prone Design.

215. Plaintiff Jennifer Conley is a resident of St. Cloud, FL. Plaintiff purchased a 2015 Kia Forte on or around 04/04/2015 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2015 Kia Forte is a Vehicle subject to the Theft-Prone Design.

216. Plaintiff Darlene Connolly is a resident of Panama City, FL. Plaintiff purchased a 2016 Kia Soul on or around 01/19/2024 for business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Kia Soul is a Vehicle subject to the Theft-Prone Design.

217. Plaintiff John Cooper is a resident of Tavares, FL. Plaintiff purchased a 2016 Hyundai Tucson on or around 07/30/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Hyundai Tucson is a Vehicle subject to the Theft-Prone Design.

218. Plaintiff Frederick Corsino is a resident of Punta Gorda, FL. Plaintiff leased a 2016 Kia Soul on or around 01/01/2017 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Kia Soul is a Vehicle subject to the Theft-Prone Design. Plaintiff leased a 2015 Kia Sorento on or around 10/01/2015 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2015 Kia Sorento is a Vehicle subject to the Theft-Prone Design. Plaintiff leased a 2019 Kia Sorento on or around 09/01/2019 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.

COMPLAINT

Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2019 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

219.   Plaintiff Roger Cox is a resident of Bradenton, FL.  Plaintiff purchased a 2012 Hyundai Tucson on or around 03/26/2012 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2012 Hyundai Tucson is a Vehicle subject to the Theft-Prone Design.

220.   Plaintiff Deedra Crespo is a resident of Greenacres, FL.  Plaintiff purchased a 2019 Kia Sportage on or around 02/27/2023 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2019 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

221.   Plaintiff Kathy Dahn is a resident of Homosassa, FL.  Plaintiff purchased a 2014 Hyundai Sonata on or around 06/23/2016 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2014 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

222.   Plaintiff Robert Dance is a resident of Cocoa Beach, FL.  Plaintiff purchased a 2019 Kia Soul on or around 07/12/2023 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2019 Kia Soul is a Vehicle subject to the Theft-Prone Design.

223.   Plaintiff Mary De Vore is a resident of North Port, FL.  Plaintiff purchased a 2020 Kia Rio on or around 04/29/2020 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2020 Kia Rio is a Vehicle subject to the Theft-Prone Design.

224.   Plaintiff Kathryn Demorest is a resident of Ocala, FL.  Plaintiff leased a

2017 Kia Sorento on or around 05/16/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

225. Plaintiff Climistina Dixon is a resident of Deltona, FL. Plaintiff purchased a 2019 Kia Rio on or around 07/23/2020 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Kia Rio is a Vehicle subject to the Theft-Prone Design.

226. Plaintiff Matthew Dudley is a resident of Winter Haven, FL. Plaintiff purchased a 2018 Hyundai Elantra on or around 09/25/2020 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

227. Plaintiff Brian Farrimond is a resident of Orlando, FL. Plaintiff purchased a 2018 Hyundai Kona on or around 08/06/2018 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Hyundai Kona is a Vehicle subject to the Theft-Prone Design.

228. Plaintiff Tammi Finan is a resident of Riverview, FL. Plaintiff purchased a 2022 Kia Sportage on or around 07/13/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2022 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

229. Plaintiff Bradley Frail is a resident of Leesburg, FL. Plaintiff purchased a 2020 Kia Sorento on or around 06/01/2021 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2020 Kia Sorento is a

COMPLAINT

Vehicle subject to the Theft-Prone Design.

230. Plaintiff Vanessa Franklin is a resident of Ocala, FL. Plaintiff purchased a 2011 Kia Sorento on or around 07/09/2022 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2011 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

231. Plaintiff Dana Gagne is a resident of Lakeland, FL. Plaintiff purchased a 2016 Hyundai Elantra on or around 12/11/2020 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design. Plaintiff purchased a 2018 Hyundai Tucson on or around 06/08/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Hyundai Tucson is a Vehicle subject to the Theft-Prone Design.

232. Plaintiff Lisa Galanter is a resident of Sanford, FL. Plaintiff purchased a 2011 Kia Rio on or around 07/24/2011 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2011 Kia Rio is a Vehicle subject to the Theft-Prone Design.

233. Plaintiff Ramon Garcia is a resident of Ocala, FL. Plaintiff purchased a 2011 Hyundai Sonata on or around 08/24/2020 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2011 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

234. Plaintiff Yvonne Gary is a resident of Miami, FL. Plaintiff purchased a 2018 Hyundai Tucson on or around 04/18/2018 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance

COMPLAINT

for the Vehicle.  On information and belief, Plaintiff's 2018 Hyundai Tucson is a Vehicle subject to the Theft-Prone Design.

235.  Plaintiff Harriet Gesshel is a resident of Clearwater, FL.  Plaintiff purchased a 2019 Hyundai Kona on or around 05/14/2019 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2019 Hyundai Kona is a Vehicle subject to the Theft-Prone Design.

236.  Plaintiff Francoise Glass is a resident of Crawfordville, FL.  Plaintiff purchased a 2021 Kia Sportage on or around 02/23/2023 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2021 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

237.  Plaintiff Steven Goldberg is a resident of Tallahassee, FL.  Plaintiff purchased a 2017 Kia Sorento on or around 11/01/2017 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2017 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

238.  Plaintiff Lateia Goodman is a resident of Hollywood, FL.  Plaintiff purchased a 2017 Hyundai Elantra on or around 03/02/2017 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2017 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

239.  Plaintiff Shelton Gore is a resident of Davenport, FL.  Plaintiff purchased a 2016 Kia Optima on or around 02/23/2017 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2016 Kia Optima is a Vehicle subject to the Theft-Prone Design.

240.  Plaintiff Robin Gregory is a resident of Pensacola, FL.  Plaintiff purchased

a 2018 Kia Soul on or around 06/22/2023 for business use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2018 Kia Soul is a Vehicle subject to the Theft-Prone Design.

241.  Plaintiff Amanda Griswold is a resident of Orange City, FL.  Plaintiff purchased a 2016 Kia Sportage on or around 07/15/2017 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2016 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

242.  Plaintiff Johnnie Gunsby is a resident of Melbourne, FL.  Plaintiff leased a 2019 Kia Optima on or around 03/27/2019 for personal and business use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2019 Kia Optima is a Vehicle subject to the Theft-Prone Design.

243.  Plaintiff Joanne Gushue is a resident of Parrish, FL.  Plaintiff purchased a 2017 Hyundai Elantra on or around 04/09/2022 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2017 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

244.  Plaintiff Randall Hainan is a resident of Ft Myers, Fl.  Plaintiff purchased a 2020 Kia Sportage on or around 11/02/2020 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2020 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

245.  Plaintiff Cynthia Hanson is a resident of Panama City, FL.  Plaintiff purchased a 2017 Hyundai Santa Fe Sport on or around 10/09/2016 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2017

- 154 -

COMPLAINT

Hyundai Santa Fe Sport is a Vehicle subject to the Theft-Prone Design.

246. Plaintiff Danetta Harris is a resident of Miami, FL. Plaintiff purchased a 2015 Hyundai Elantra GT on or around 10/03/2023 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2015 Hyundai Elantra GT is a Vehicle subject to the Theft-Prone Design.

247. Plaintiff Aaron Henderson is a resident of Stuart, FL. Plaintiff purchased a 2019 Kia Sportage on or around 08/27/2022 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

248. Plaintiff Teleka Humphries is a resident of Jacksonville, FL. Plaintiff purchased a 2016 Kia Soul on or around 07/23/2016 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Kia Soul is a Vehicle subject to the Theft-Prone Design.

249. Plaintiff Brandi Indell is a resident of Port Charlotte, FL. Plaintiff purchased a 2017 Kia Forte on or around 06/23/2017 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Kia Forte is a Vehicle subject to the Theft-Prone Design.

250. Plaintiff Angel James is a resident of Miami, FL. Plaintiff purchased a 2018 Hyundai Elantra on or around 02/09/2022 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

251. Plaintiff Shannon Jarman is a resident of New Port Richey, FL. Plaintiff purchased a 2016 Hyundai Elantra GT on or around 08/10/2021 for personal use.

Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Hyundai Elantra GT is a Vehicle subject to the Theft-Prone Design.

252. Plaintiff Nina Jewett is a resident of Port St. Lucie, FL. Plaintiff purchased a 2015 Kia Sorento on or around 01/01/2014 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2015 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

253. Plaintiff Angela Johnson is a resident of Pensacola, FL. Plaintiff purchased a 2014 Kia Soul on or around 01/01/2017 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2014 Kia Soul is a Vehicle subject to the Theft-Prone Design.

254. Plaintiff Thomas Jones is a resident of Altoona, FL. Plaintiff purchased a 2020 Kia Soul on or around 06/23/2025 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2020 Kia Soul is a Vehicle subject to the Theft-Prone Design.

255. Plaintiff Kais Jribi is a resident of Lakeland, FL. Plaintiff purchased a 2016 Hyundai Elantra on or around 09/27/2023 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

256. Plaintiff Ayahne Kates is a resident of St. Petersburg, FL. Plaintiff purchased a 2013 Hyundai Elantra on or around 03/11/2023 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2013 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

COMPLAINT

257. Plaintiff Wilfred Knapp is a resident of White Hall, AR. Plaintiff purchased a 2021 Kia Sorento in Colorado on or around 03/18/2023 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2021 Kia Sorento is a Vehicle subject to the Theft-Prone Design. Plaintiff purchased a 2017 Hyundai Santa Fe in Florida on or around 10/02/2022 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Hyundai Santa Fe is a Vehicle subject to the Theft-Prone Design.

258. Plaintiff Lloydteya Knowles is a resident of Miami, FL. Plaintiff purchased a 2021 Hyundai Venue on or around 07/26/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2021 Hyundai Venue is a Vehicle subject to the Theft-Prone Design.

259. Plaintiff Pamela Krause is a resident of Fort Pierce, FL. Plaintiff purchased a 2018 Kia Soul on or around 03/08/2018 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Kia Soul is a Vehicle subject to the Theft-Prone Design.

260. Plaintiff Loren Lamoureux is a resident of Orlando, FL. Plaintiff purchased a 2020 Kia Rio on or around 11/10/2020 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2020 Kia Rio is a Vehicle subject to the Theft-Prone Design.

261. Plaintiff Christopher Light is a resident of Sarasota, FL. Plaintiff purchased a 2016 Kia Sedona on or around 10/29/2016 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Kia Sedona is a

COMPLAINT

Vehicle subject to the Theft-Prone Design.

262. Plaintiff La Shanda Lowe is a resident of Pensacola, FL. Plaintiff purchased a 2019 Kia Sorento on or around 12/04/2019 for business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

263. Plaintiff Ron Lupien II is a resident of Tampa, FL. Plaintiff purchased a 2017 Kia Sorento on or around 07/08/2023 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

264. Plaintiff Jeanine Maak is a resident of Turlock, CA, and purchased the Vehicle in Florida. Plaintiff purchased a 2017 Kia Sorento on or around 05/02/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

265. Plaintiff Nancy Mangold is a resident of Silver Springs, FL. Plaintiff purchased a 2016 Kia Soul on or around 02/18/2022 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Kia Soul is a Vehicle subject to the Theft-Prone Design.

266. Plaintiff Alaina Marshall is a resident of Vero Beach, FL. Plaintiff leased a 2014 Hyundai Sonata on or around 06/26/2017 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2014 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

267. Plaintiff Ayme Martin is a resident of Melbourne, FL. Plaintiff purchased a 2011 Hyundai Elantra on or around 10/08/2021 for personal use. Plaintiff's Vehicle

COMPLAINT

has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2011 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

268.   Plaintiff Brian Mazur is a resident of Nolensville, TN, and purchased the Vehicle in Florida.  Plaintiff purchased a 2015 Hyundai Sonata on or around 06/23/2016 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2015 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

269.   Plaintiff Pamela McDonald is a resident of Ruskin, FL.  Plaintiff purchased a 2016 Kia Soul on or around 01/01/2022 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2016 Kia Soul is a Vehicle subject to the Theft-Prone Design.

270.   Plaintiff Sherry McLaughlin is a resident of Deltona, FL.  Plaintiff purchased a 2020 Hyundai Elantra on or around 11/23/2019 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2020 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

271.   Plaintiff DeMarria Miles is a resident of Lake Wales, FL.  Plaintiff purchased a 2015 Hyundai Accent on or around 12/09/2022 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2015 Hyundai Accent is a Vehicle subject to the Theft-Prone Design.

272.   Plaintiff Janice Milot is a resident of New Prt Rchy, FL.  Plaintiff purchased a 2017 Kia Soul on or around 11/24/2017 for business use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2017 Kia Soul is a Vehicle subject to the Theft-Prone Design.

COMPLAINT

273.   Plaintiff April Mitchell is a resident of Ocala, FL.  Plaintiff leased a 2014 Kia Forte on or around 04/03/2019 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2014 Kia Forte is a Vehicle subject to the Theft-Prone Design.

274.   Plaintiff Lisa Moore is a resident of Altamonte Springs, FL.  Plaintiff purchased a 2020 Kia Optima on or around 04/10/2020 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2020 Kia Optima is a Vehicle subject to the Theft-Prone Design.

275.   Plaintiff Dasir Morgan is a resident of Jacksonville, FL.  Plaintiff leased a 2018 Hyundai Tucson on or around 09/22/2021 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2018 Hyundai Tucson is a Vehicle subject to the Theft-Prone Design.

276.   Plaintiff Tracy Moye is a resident of Quincy, FL.  Plaintiff leased a 2024 Kia Seltos on or around 03/30/2024 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2024 Kia Seltos is a Vehicle subject to the Theft-Prone Design.

277.   Plaintiff Patricia Nall is a resident of Venice, FL.  Plaintiff leased a 2019 Kia Optima on or around 05/14/2025 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2019 Kia Optima is a Vehicle subject to the Theft-Prone Design.

278.   Plaintiff Crystal Nason is a resident of Daytona Beach, FL.  Plaintiff purchased a 2012 Hyundai Santa Fe on or around 07/21/2023 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff

COMPLAINT

purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2012 Hyundai Santa Fe is a Vehicle subject to the Theft-Prone Design.

279.   Plaintiff Mary Nobles is a resident of Gainesville, FL.  Plaintiff purchased a 2021 Kia Sportage on or around 02/10/2022 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2021 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

280.   Plaintiff Kathy Noland is a resident of Fort Lauderdale, FL.  Plaintiff leased a 2016 Kia Optima on or around 09/03/2016 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  Plaintiff leased a 2019 Kia Optima on or around 08/28/2019 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2019 Kia Optima is a Vehicle subject to the Theft-Prone Design.

281.   Plaintiff Lorena Orozco is a resident of Davie, FL.  Plaintiff purchased a 2014 Hyundai Sonata on or around 10/23/2022 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2014 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

282.   Plaintiff Renee Page is a resident of Orlando, FL.  Plaintiff purchased a 2020 Hyundai Elantra on or around 06/29/2023 for personal and business use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2020 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

283.   Plaintiff Sydney Parker is a resident of Tampa, FL.  Plaintiff leased a 2018 Kia Forte on or around 08/23/2018 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2018 Kia Forte is a Vehicle subject to

COMPLAINT

the Theft-Prone Design.

284.    Plaintiff Bronwyn Perez is a resident of Boynton Beach, FL.  Plaintiff purchased a 2021 Kia Forte on or around 04/12/2021 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2021 Kia Forte is a Vehicle subject to the Theft-Prone Design.

285.    Plaintiff Lois Plarinos is a resident of Havelock, NC, and purchased the Vehicle in Florida.  Plaintiff purchased a 2017 Kia Soul on or around 10/14/2023 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2017 Kia Soul is a Vehicle subject to the Theft-Prone Design.

286.    Plaintiff Michael Prytulak is a resident of Venice, FL.  Plaintiff purchased a 2019 Kia Sorento on or around 03/19/2019 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2019 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

287.    Plaintiff Clifford Querette is a resident of Boynton Beach, FL.  Plaintiff purchased a 2015 Hyundai Sonata on or around 06/09/2022 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2015 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

288.    Plaintiff Melissa Rajzynger is a resident of Davie, FL.  Plaintiff leased a 2021 Kia Seltos on or around 03/28/2021 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2021 Kia Seltos is a Vehicle subject to the Theft-Prone Design.

289.    Plaintiff Gloria Reardon is a resident of Port Orange, FL.  Plaintiff purchased a 2017 Kia Soul on or around 04/18/2017 for personal use.  Plaintiff's Vehicle

COMPLAINT

has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Kia Soul is a Vehicle subject to the Theft-Prone Design.

290. Plaintiff Gil Reed Lugo is a resident of Hollywood, FL. Plaintiff purchased a 2016 Kia Optima on or around 11/11/2022 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Kia Optima is a Vehicle subject to the Theft-Prone Design.

291. Plaintiff Curtis Remaley is a resident of Leesburg, FL. Plaintiff purchased a 2017 Kia Optima on or around 06/26/2020 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Kia Optima is a Vehicle subject to the Theft-Prone Design.

292. Plaintiff Chasity Rhoden is a resident of Orlando, FL. Plaintiff leased a 2017 Hyundai Elantra on or around 01/01/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

293. Plaintiff Willie Rodgers is a resident of Tallahassee, Fl. Plaintiff purchased a 2019 Hyundai Santa Fe on or around 09/19/2019 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Hyundai Santa Fe is a Vehicle subject to the Theft-Prone Design.

294. Plaintiff Mirielle Rodriguez is a resident of Hialeah, FL. Plaintiff purchased a 2016 Kia Soul on or around 09/26/2019 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Kia Soul is a Vehicle subject to the Theft-Prone Design.

COMPLAINT

295.    Plaintiff Dominicus Rooijackers is a resident of Winter Haven, FL. Plaintiff purchased a 2015 Kia Soul on or around 09/24/2014 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2015 Kia Soul is a Vehicle subject to the Theft-Prone Design.

296.    Plaintiff Ross Ruffino is a resident of St. Augustine Beach, FL.  Plaintiff purchased a 2019 Hyundai Kona on or around 01/24/2020 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2019 Hyundai Kona is a Vehicle subject to the Theft-Prone Design.  Plaintiff purchased a 2016 Hyundai Veloster on or around 09/24/2016 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2016 Hyundai Veloster is a Vehicle subject to the Theft-Prone Design.

297.    Plaintiff Shelbea Sadusky is a resident of Inglis, FL.  Plaintiff purchased a 2019 Kia Sorento on or around 03/22/2021 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2019 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

298.    Plaintiff Ruth Servius is a resident of Cocoa, FL.  Plaintiff purchased a 2017 Hyundai Elantra on or around 11/12/2018 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2017 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

299.    Plaintiff Britney Sharpe is a resident of Bradenton, FL.  Plaintiff purchased a 2015 Kia Soul on or around 03/15/2023 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2015 Kia Soul is a Vehicle subject

to the Theft-Prone Design.

300.    Plaintiff Jamie Shull is a resident of Phenix City, AL, and purchased the Vehicle in Florida.  Plaintiff purchased a 2016 Hyundai Accent on or around 11/12/2016 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2016 Hyundai Accent is a Vehicle subject to the Theft-Prone Design.

301.    Plaintiff Steven Silver is a resident of Fort Myers, FL.  Plaintiff purchased a 2021 Hyundai Venue on or around 11/24/2023 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2021 Hyundai Venue is a Vehicle subject to the Theft-Prone Design.

302.    Plaintiff Danielle Smith is a resident of Fruitland Pk, Fl.  Plaintiff purchased a 2017 Hyundai Tucson on or around 01/18/2021 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2017 Hyundai Tucson is a Vehicle subject to the Theft-Prone Design.

303.    Plaintiff Wilbur Smith is a resident of Leesburg, FL.  Plaintiff purchased a 2015 Hyundai Accent on or around 03/01/2023 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2015 Hyundai Accent is a Vehicle subject to the Theft-Prone Design.

304.    Plaintiff Sandra Stevens is a resident of Clarkridge, AR, and purchased the Vehicle in Florida.  Plaintiff purchased a 2020 Kia Soul on or around 04/03/2020 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2020 Kia Soul is a Vehicle subject to the Theft-Prone Design.

305.    Plaintiff Laura Summeralls is a resident of Felda, FL.  Plaintiff purchased a 2018 Kia Soul on or around 07/22/2018 for personal use.  Plaintiff's Vehicle has a

traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Kia Soul is a Vehicle subject to the Theft-Prone Design.

306. Plaintiff Alicia Swanson is a resident of Kissimmee, FL. Plaintiff purchased a 2016 Kia Forte on or around 05/20/2023 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Kia Forte is a Vehicle subject to the Theft-Prone Design.

307. Plaintiff David Swentner is a resident of Bradenton, FL. Plaintiff purchased a 2016 Hyundai Tucson on or around 07/11/2017 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Hyundai Tucson is a Vehicle subject to the Theft-Prone Design. Plaintiff purchased a 2017 Hyundai Elantra on or around 09/01/2017 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

308. Plaintiff Walter Szkwarek is a resident of Parkland, FL. Plaintiff purchased a 2018 Hyundai Santa Fe on or around 09/17/2018 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Hyundai Santa Fe is a Vehicle subject to the Theft-Prone Design.

309. Plaintiff Michelle Thompson is a resident of Manchester, CT, and purchased the Vehicle in Florida. Plaintiff purchased a 2013 Kia Sorento on or around 04/22/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2013 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

310. Plaintiff Noel Thurman is a resident of Dunedin, FL. Plaintiff leased a

2016 Hyundai Veloster on or around 04/23/2023 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Hyundai Veloster is a Vehicle subject to the Theft-Prone Design.

311. Plaintiff Janette Torres is a resident of Clermont, FL. Plaintiff purchased a 2015 Hyundai Accent on or around 07/15/2019 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2015 Hyundai Accent is a Vehicle subject to the Theft-Prone Design.

312. Plaintiff Jasmin Vega is a resident of Altamonte Springs, FL. Plaintiff leased a 2022 Kia Soul on or around 08/26/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2022 Kia Soul is a Vehicle subject to the Theft-Prone Design.

313. Plaintiff Kathy Viator is a resident of Inverness, FL. Plaintiff purchased a 2016 Kia Soul on or around 12/13/2016 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Kia Soul is a Vehicle subject to the Theft-Prone Design.

314. Plaintiff Matthew Webster is a resident of Tallahassee, FL. Plaintiff purchased a 2018 Hyundai Elantra on or around 09/28/2018 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

315. Plaintiff Staci Whiddon is a resident of Lakeland, FL. Plaintiff purchased a 2019 Hyundai Elantra on or around 03/25/2023 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Hyundai Elantra

COMPLAINT

is a Vehicle subject to the Theft-Prone Design.

316.  Plaintiff Carlos Williams is a resident of St. Augustine, FL.  Plaintiff purchased a 2018 Kia Forte on or around 08/01/2018 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2018 Kia Forte is a Vehicle subject to the Theft-Prone Design.

317.  Plaintiff Joshua Wrzesinski is a resident of Daytona Beach, FL.  Plaintiff purchased a 2017 Hyundai Elantra on or around 06/24/2018 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2017 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.  On or about 06/24/2023, Plaintiff's Vehicle was stolen.

318.  Plaintiff Ursula Zamora is a resident of Webster, NY, and purchased the Vehicle in Florida.  Plaintiff leased a 2013 Kia Soul on or around 04/13/2013 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2013 Kia Soul is a Vehicle subject to the Theft-Prone Design.

319.  Plaintiff Michael Zaragoza is a resident of New Port Richey, FL.  Plaintiff purchased a 2019 Kia Soul on or around 11/10/2021 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2019 Kia Soul is a Vehicle subject to the Theft-Prone Design.

**9.    Georgia Plaintiffs**

320.  Plaintiff Dion Alexander is a resident of Pine Lake, GA.  Plaintiff purchased a 2014 Hyundai Santa Fe Sport on or around 07/01/2022 for personal and business use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2014 Hyundai Santa Fe Sport is a Vehicle subject to the Theft-Prone Design.

COMPLAINT

321.    Plaintiff Christine Allah is a resident of Marietta, GA.  Plaintiff purchased a 2015 Kia Optima on or around 10/15/2015 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2015 Kia Optima is a Vehicle subject to the Theft-Prone Design.

322.    Plaintiff Janet Anthony is a resident of Ellerslie, GA.  Plaintiff purchased a 2021 Kia Forte on or around 12/12/2022 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2021 Kia Forte is a Vehicle subject to the Theft-Prone Design.

323.    Plaintiff Lynette Armstrong is a resident of Griffin, GA.  Plaintiff purchased a 2012 Kia Optima on or around 10/23/2012 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2012 Kia Optima is a Vehicle subject to the Theft-Prone Design.

324.    Plaintiff Taylor Belcher is a resident of Mabelton, GA.  Plaintiff leased a 2018 Hyundai Sonata on or around 10/01/2023 for personal and business use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2018 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

325.    Plaintiff Yvette Bell is a resident of Douglasville, GA.  Plaintiff purchased a 2014 Kia Sorento on or around 07/08/2013 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2014 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

326.    Plaintiff William Boerner is a resident of Rocky Face, GA.  Plaintiff purchased a 2011 Kia Sorento on or around 10/17/2024 for personal and business use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff

COMPLAINT

purchased insurance for the Vehicle. On information and belief, Plaintiff's 2011 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

327. Plaintiff James Bonner is a resident of Fort Mitchell, AL, and purchased the Vehicles in Georgia. Plaintiff purchased a 2017 Hyundai Sonata on or around 05/01/2024 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design. Plaintiff purchased a 2014 Kia Soul on or around 12/28/2023 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2014 Kia Soul is a Vehicle subject to the Theft-Prone Design.

328. Plaintiff Michael Bower is a resident of Snellville, GA. Plaintiff purchased a 2011 Kia Sorento on or around 10/11/2023 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2011 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

329. Plaintiff Sharika Braddy is a resident of Douglasville, GA. Plaintiff purchased a 2019 Kia Optima on or around 11/12/2018 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Kia Optima is a Vehicle subject to the Theft-Prone Design.

330. Plaintiff Danyel Brown is a resident of Byron, GA. Plaintiff purchased a 2015 Kia Soul on or around 03/17/2023 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2015 Kia Soul is a Vehicle subject to the Theft-Prone Design.

331. Plaintiff Cheryl Brown is a resident of Washington, DC, and purchased the Vehicle in Georgia. Plaintiff leased a 2020 Kia Soul on or around 09/25/2023 for

personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2020 Kia Soul is a Vehicle subject to the Theft-Prone Design.

332. Plaintiff Mollie Bryan is a resident of Duluth, GA. Plaintiff purchased a 2014 Hyundai Sonata on or around 05/27/2017 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2014 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

333. Plaintiff Anquneta Buckholts is a resident of Jacksonville, FL, and purchased the Vehicle in Georgia. Plaintiff purchased a 2019 Kia Sorento on or around 01/23/2019 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

334. Plaintiff Andrea Burnett is a resident of Newnan, GA. Plaintiff purchased a 2016 Kia Soul on or around 12/17/2019 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Kia Soul is a Vehicle subject to the Theft-Prone Design.

335. Plaintiff Germaine Coakley-Mays is a resident of Conyers, GA. Plaintiff purchased a 2019 Kia Forte on or around 04/15/2019 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Kia Forte is a Vehicle subject to the Theft-Prone Design.

336. Plaintiff Shuntae Colbert is a resident of Tuscaloosa, AL, and purchased the Vehicle in Georgia. Plaintiff purchased a 2020 Kia Sportage on or around 01/24/2021 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2020 Kia Sportage is a Vehicle subject to the Theft-

COMPLAINT

Prone Design.

337. Plaintiff Evelyn Collins is a resident of Atlanta, GA. Plaintiff purchased a 2017 Hyundai Elantra on or around 09/15/2020 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

338. Plaintiff Catherine Colton is a resident of Fairburn, GA. Plaintiff leased a 2018 Kia Optima on or around 07/09/2023 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Kia Optima is a Vehicle subject to the Theft-Prone Design. On or about 05/13/2024, Plaintiff's Vehicle was stolen.

339. Plaintiff Johnathan Davis is a resident of Dalton, GA. Plaintiff purchased a 2016 Kia Soul on or around 11/17/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Kia Soul is a Vehicle subject to the Theft-Prone Design.

340. Plaintiff Shawaski Davis is a resident of Covington, GA. Plaintiff purchased a 2015 Kia Optima on or around 12/27/2014 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2015 Kia Optima is a Vehicle subject to the Theft-Prone Design.

341. Plaintiff Jasmine Ellis is a resident of Hinesville, GA. Plaintiff purchased a 2017 Hyundai Sonata on or around 02/26/2020 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

342. Plaintiff Denise Fareed is a resident of Riverdale, GA. Plaintiff purchased a 2022 Kia Sportage on or around 06/16/2021 for personal use. Plaintiff's Vehicle has

COMPLAINT

a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2022 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

343.   Plaintiff Ayanna Farmer is a resident of Riverdale, GA.  Plaintiff leased a 2018 Kia Optima on or around 10/23/2020 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2018 Kia Optima is a Vehicle subject to the Theft-Prone Design.

344.   Plaintiff Theresa Genett is a resident of Acworth, GA.  Plaintiff purchased a 2016 Kia Optima on or around 12/15/2022 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2016 Kia Optima is a Vehicle subject to the Theft-Prone Design.

345.   Plaintiff Barbara Gibson is a resident of Hogansville, GA.  Plaintiff purchased a 2015 Kia Soul on or around 03/09/2024 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2015 Kia Soul is a Vehicle subject to the Theft-Prone Design.

346.   Plaintiff Bonita Gilbert is a resident of Villa Rica, GA.  Plaintiff purchased a 2013 Kia Sorento on or around 06/24/2021 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2013 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

347.   Plaintiff Edmond Green is a resident of Phenix City, AL, and purchased the Vehicle in Georgia.  Plaintiff purchased a 2018 Hyundai Santa Fe on or around 06/23/2023 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2018 Hyundai Santa Fe is a Vehicle subject to the Theft-Prone Design.

COMPLAINT

348.   Plaintiff Quanita Hardnett is a resident of Decatur, GA.  Plaintiff purchased a 2018 Kia Soul on or around 06/16/2018 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2018 Kia Soul is a Vehicle subject to the Theft-Prone Design.

349.   Plaintiff Rishaunda Hawes is a resident of Augusta, GA.  Plaintiff leased a 2020 Kia Forte on or around 03/21/2023 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2020 Kia Forte is a Vehicle subject to the Theft-Prone Design.

350.   Plaintiff Stanley Horton is a resident of Atlanta, GA.  Plaintiff purchased a 2016 Kia Optima on or around 02/15/2017 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2016 Kia Optima is a Vehicle subject to the Theft-Prone Design.

351.   Plaintiff Lawanda Hough is a resident of Gray, GA.  Plaintiff purchased a 2014 Kia Sorento on or around 04/15/2023 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2014 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

352.   Plaintiff Xingbe Huang is a resident of Norcross, GA.  Plaintiff purchased a 2011 Kia Forte on or around 08/03/2021 for personal and business use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2011 Kia Forte is a Vehicle subject to the Theft-Prone Design.

353.   Plaintiff Helen Huffman is a resident of Oxford, GA.  Plaintiff purchased a 2017 Hyundai Sonata on or around 08/25/2023 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased

COMPLAINT

insurance for the Vehicle.  On information and belief, Plaintiff's 2017 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

354.   Plaintiff Clarence James is a resident of Phenix City, AL, and purchased the Vehicle in Georgia.  Plaintiff purchased a 2020 Kia Forte on or around 07/13/2020 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2020 Kia Forte is a Vehicle subject to the Theft-Prone Design.

355.   Plaintiff Ciara Jefferies is a resident of Savannah, GA.  Plaintiff purchased a 2014 Kia Forte on or around 08/17/2018 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2014 Kia Forte is a Vehicle subject to the Theft-Prone Design.

356.   Plaintiff Deloris Jefferson is a resident of Ellenwood, GA.  Plaintiff purchased a 2020 Hyundai Santa Fe on or around 11/17/2021 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2020 Hyundai Santa Fe is a Vehicle subject to the Theft-Prone Design.

357.   Plaintiff Kavetrius Jiles is a resident of Austell, GA.  Plaintiff purchased a 2013 Hyundai Elantra on or around 02/12/2019 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2013 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

358.   Plaintiff Darren Jones is a resident of Atlanta, GA.  Plaintiff purchased a 2015 Hyundai Elantra on or around 09/23/2016 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2015 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

359.   Plaintiff Nicole Jones is a resident of Marietta, GA.  Plaintiff purchased a

COMPLAINT

2020 Kia Sorento on or around 03/23/2023 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2020 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

360. Plaintiff Terralyn Landry is a resident of Austell, GA. Plaintiff purchased a 2020 Kia Sportage on or around 08/09/2020 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2020 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

361. Plaintiff Ashley Lazenby is a resident of Atlanta, GA. Plaintiff leased a 2016 Hyundai Accent on or around 04/09/2023 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Hyundai Accent is a Vehicle subject to the Theft-Prone Design.

362. Plaintiff Mark Malek is a resident of Atlanta, GA. Plaintiff purchased a 2016 Kia Forte on or around 06/20/2018 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Kia Forte is a Vehicle subject to the Theft-Prone Design.

363. Plaintiff Aide Martinez is a resident of Savannah, GA. Plaintiff purchased a 2015 Hyundai Sonata on or around 08/13/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2015 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

364. Plaintiff Briahna Mayson is a resident of Jonesboro, GA. Plaintiff leased a 2011 Kia Soul on or around 05/09/2020 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2011 Kia Soul is a Vehicle subject to

COMPLAINT

the Theft-Prone Design.

365.   Plaintiff LaShonda McDaniel is a resident of Augusta, GA.   Plaintiff purchased a 2014 Kia Soul on or around 10/27/2023 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.   Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2014 Kia Soul is a Vehicle subject to the Theft-Prone Design.

366.   Plaintiff Victor Mercado is a resident of Snellville, GA.  Plaintiff leased a 2018 Kia Rio on or around 08/14/2018 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2018 Kia Rio is a Vehicle subject to the Theft-Prone Design.

367.   Plaintiff Amber Middlebrooks is a resident of Atlanta, GA.   Plaintiff purchased a 2019 Hyundai Sonata on or around 07/09/2021 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2019 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

368.   Plaintiff Shermaine Miller is a resident of Jonesboro, GA.   Plaintiff purchased a 2019 Kia Sorento on or around 02/19/2020 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2019 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

369.   Plaintiff Astaria Mincey is a resident of Metter, GA.  Plaintiff leased a 2018 Hyundai Sonata on or around 07/09/2023 for personal and business use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2018 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

370.   Plaintiff Jennifer Moon is a resident of Woodland, AL, and purchased the Vehicle in Georgia.  Plaintiff purchased a 2019 Kia Optima on or around 03/08/2019

COMPLAINT

for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2019 Kia Optima is a Vehicle subject to the Theft-Prone Design.

371.   Plaintiff Tina Moore is a resident of Covington, GA.  Plaintiff leased a 2015 Kia Optima on or around 03/23/2019 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2015 Kia Optima is a Vehicle subject to the Theft-Prone Design.

372.   Plaintiff Chad Morrell is a resident of Douglasville, GA.  Plaintiff purchased a 2015 Hyundai Sonata on or around 07/01/2015 for personal and business use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2015 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

373.   Plaintiff Andrea Myers is a resident of Macon, GA.  Plaintiff leased a 2016 Kia Sportage on or around 07/10/2019 for personal and business use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2016 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

374.   Plaintiff Karen Oliver is a resident of Montezuma, GA.  Plaintiff purchased a 2013 Kia Sorento on or around 07/20/2021 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2013 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

375.   Plaintiff Paul Peklay is a resident of Sandy Springs, GA.  Plaintiff purchased a 2011 Kia Soul on or around 12/31/2010 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2011 Kia Soul is a Vehicle subject to the Theft-Prone Design.

COMPLAINT

376.   Plaintiff Michelle Reed is a resident of Dacula, GA.  Plaintiff purchased a 2019 Kia Soul on or around 10/01/2020 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2019 Kia Soul is a Vehicle subject to the Theft-Prone Design.

377.   Plaintiff Quentin Sanders is a resident of Augusta, GA.  Plaintiff purchased a 2015 Hyundai Sonata on or around 06/07/2017 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2015 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

378.   Plaintiff Jodie Sava is a resident of Waynesboro, GA.  Plaintiff purchased a 2021 Kia Soul on or around 03/26/2023 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2021 Kia Soul is a Vehicle subject to the Theft-Prone Design.

379.   Plaintiff Randall Sellers is a resident of Douglasville, GA.  Plaintiff purchased a 2016 Kia Forte on or around 01/10/2025 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2016 Kia Forte is a Vehicle subject to the Theft-Prone Design.

380.   Plaintiff Sandy Sewell is a resident of Yatesville, GA.  Plaintiff purchased a 2014 Hyundai Elantra Coupe on or around 07/01/2015 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2014 Hyundai Elantra Coupe is a Vehicle subject to the Theft-Prone Design.

381.   Plaintiff Linda Simpson is a resident of Stone Mountain, GA.  Plaintiff purchased a 2017 Kia Forte on or around 05/25/2017 for personal and business use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff

COMPLAINT

purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Kia Forte is a Vehicle subject to the Theft-Prone Design.

382. Plaintiff Alisa Smith is a resident of Rome, GA. Plaintiff purchased a 2012 Hyundai Sonata on or around 01/23/2023 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2012 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

383. Plaintiff Jymara Smith is a resident of Atlanta, GA. Plaintiff leased a 2017 Hyundai Sonata on or around 03/23/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design. On or about 05/17/2025, Plaintiff's Vehicle was stolen.

384. Plaintiff Joseph Speer is a resident of Atlanta, GA. Plaintiff purchased a 2015 Hyundai Elantra on or around 05/10/2019 for business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2015 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

385. Plaintiff Blythe Spindler is a resident of Savannah, GA. Plaintiff leased a 2017 Kia Forte on or around 01/11/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Kia Forte is a Vehicle subject to the Theft-Prone Design.

386. Plaintiff Linda Tatum is a resident of Newnan, GA. Plaintiff purchased a 2015 Kia Forte on or around 06/23/2025 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2015 Kia Forte is a Vehicle subject to the Theft-Prone Design.

COMPLAINT

387.   Plaintiff Antonio Taylor is a resident of McDonough, GA.   Plaintiff purchased a 2021 Kia Rio on or around 10/15/2021 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.   Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2021 Kia Rio is a Vehicle subject to the Theft-Prone Design.

388.   Plaintiff Josh Vergara is a resident of Ruston, LA, and purchased the Vehicle in Georgia.  Plaintiff purchased a 2015 Kia Sorento on or around 05/30/2014 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.   Plaintiff purchased insurance for the Vehicle.   On information and belief, Plaintiff's 2015 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

389.   Plaintiff Heather Webb is a resident of Lawrenceville, GA.   Plaintiff purchased a 2019 Hyundai Elantra on or around 07/23/2020 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2019 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

390.   Plaintiff Elizabeth Wheeler is a resident of Sylvania, GA.   Plaintiff purchased a 2018 Hyundai Elantra on or around 04/26/2020 for personal and business use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2018 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

391.   Plaintiff Samira Williams is a resident of Midway, GA.  Plaintiff leased a 2013 Hyundai Sonata on or around 05/23/2023 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2013 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

392.   Plaintiff Tina Williams is a resident of Stockbridge, GA.   Plaintiff purchased a 2016 Kia Soul on or around 12/15/2016 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.   Plaintiff purchased

COMPLAINT

insurance for the Vehicle. On information and belief, Plaintiff's 2016 Kia Soul is a Vehicle subject to the Theft-Prone Design. On or about 05/16/2025, Plaintiff's Vehicle was stolen.

393. Plaintiff Aletha Wilson is a resident of Wrens, GA. Plaintiff purchased a 2021 Kia Rio on or around 10/15/2020 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2021 Kia Rio is a Vehicle subject to the Theft-Prone Design.

394. Plaintiff Donna Woodall is a resident of Smiths Station, AL, and purchased the Vehicle in Georgia. Plaintiff purchased a 2018 Kia Optima on or around 11/23/2018 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Kia Optima is a Vehicle subject to the Theft-Prone Design.

395. Plaintiff Brittney Wright is a resident of Covington, GA. Plaintiff leased a 2016 Kia Forte on or around 12/30/2023 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Kia Forte is a Vehicle subject to the Theft-Prone Design.

396. Plaintiff Jodie Wyche is a resident of Decatur, GA. Plaintiff purchased a 2019 Kia Optima on or around 11/27/2018 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Kia Optima is a Vehicle subject to the Theft-Prone Design.

### 10. Hawaii Plaintiffs

397. Plaintiff Jenny Ahsingkaahanuiis a resident of Kapolei, HI. Plaintiff purchased a 2018 Kia Soul on or around 02/05/2018 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Kia Soul is a

COMPLAINT

Vehicle subject to the Theft-Prone Design.

398.   Plaintiff Rocky Ard is a resident of Colmesneil, TX, and purchased the Vehicle in Hawaii.  Plaintiff purchased a 2017 Kia Forte on or around 08/31/2021 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2017 Kia Forte is a Vehicle subject to the Theft-Prone Design.

### 11.   Idaho Plaintiffs

399.   Plaintiff Michael Grezeszak is a resident of Boise, ID.  Plaintiff purchased a 2018 Kia Forte on or around 06/25/2018 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2018 Kia Forte is a Vehicle subject to the Theft-Prone Design.

400.   Plaintiff Rachel Halper is a resident of Milton-Freewater, OR, and purchased the Vehicle in Idaho.  Plaintiff leased a 2014 Kia Sportage on or around 01/16/2023 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2014 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

401.   Plaintiff Deborah Hunt is a resident of Tukwila, WA, and purchased the Vehicle in Idaho.  Plaintiff purchased a 2019 Hyundai Kona on or around 12/30/2022 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2019 Hyundai Kona is a Vehicle subject to the Theft-Prone Design.

402.   Plaintiff Louise Samson is a resident of Stuart, FL, and purchased the Vehicle in Idaho.  Plaintiff purchased a 2019 Hyundai Tucson on or around 01/15/2020 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2019 Hyundai Tucson is a Vehicle subject to the Theft-Prone Design.

### 12.   Illinois Plaintiffs

COMPLAINT

403.    Plaintiff Mathilda Adesina-Oludoyi is a resident of Mount Prospect, IL. Plaintiff purchased a 2018 Hyundai Santa Fe Sport on or around 11/19/2022 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2018 Hyundai Santa Fe Sport is a Vehicle subject to the Theft-Prone Design.

404.    Plaintiff Kashara Allen is a resident of Maywood, IL.  Plaintiff purchased a 2013 Hyundai Sonata on or around 04/26/2021 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2013 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

405.    Plaintiff Shmantha Anderson is a resident of Ford Heights, IL.  Plaintiff leased a 2017 Hyundai Elantra on or around 09/03/2016 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2017 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.  On or about 03/07/2023, Plaintiff's Vehicle was stolen.

406.    Plaintiff Sandy Arenas is a resident of Montgomery, IL.  Plaintiff leased a 2015 Kia Forte on or around 04/10/2015 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2015 Kia Forte is a Vehicle subject to the Theft-Prone Design.

407.    Plaintiff Sara Ayala is a resident of Streamwood, IL.  Plaintiff purchased a 2019 Kia Sorento LX on or around 02/09/2019 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2019 Kia Sorento LX is a Vehicle subject to the Theft-Prone Design.

408.    Plaintiff Anthony Belsanti is a resident of Emmitsburg, MD, and purchased the Vehicle in Illinois.  Plaintiff purchased a 2020 Hyundai Elantra on or around

COMPLAINT

07/30/2020 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2020 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

409. Plaintiff Dorota Barreto is a resident of Downers Grove, IL. Plaintiff purchased a 2018 Kia Forte on or around 08/01/2018 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Kia Forte is a Vehicle subject to the Theft-Prone Design.

410. Plaintiff Danuta Bielanski is a resident of Schaumburg, IL. Plaintiff purchased a 2012 Hyundai Sonata on or around 02/23/2013 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2012 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

411. Plaintiff James Bridgewater is a resident of Stanford, IL. Plaintiff purchased a 2017 Kia Soul on or around 06/21/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Kia Soul is a Vehicle subject to the Theft-Prone Design.

412. Plaintiff Shane Brown is a resident of Buda, TX, and purchased the Vehicle in Illinois. Plaintiff purchased a 2022 Kia K5 on or around 11/26/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2022 Kia K5 is a Vehicle subject to the Theft-Prone Design.

413. Plaintiff Lindsey Buettner is a resident of Swansea, IL. Plaintiff leased a 2016 Hyundai Accent on or around 09/23/2016 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Hyundai Accent is a Vehicle subject to the Theft-Prone Design.

COMPLAINT

414.   Plaintiff Daphne Bunch is a resident of Rock Island, IL.  Plaintiff leased a 2013 Kia Rio on or around 06/30/2015 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2013 Kia Rio is a Vehicle subject to the Theft-Prone Design.  Plaintiff leased a 2020 Kia Sportage on or around 11/01/2023 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2020 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

415.   Plaintiff Antionette Burts is a resident of Joliet, IL.  Plaintiff purchased a 2011 Kia Optima on or around 08/26/2011 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2011 Kia Optima is a Vehicle subject to the Theft-Prone Design.

416.   Plaintiff Cecilia Cintora is a resident of Elgin, IL.  Plaintiff purchased a 2018 Hyundai Elantra on or around 11/10/2017 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2018 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

417.   Plaintiff Kazey Cohan is a resident of Mattoon, IL.  Plaintiff purchased a 2020 Hyundai Elantra on or around 01/02/2023 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2020 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

418.   Plaintiff Hazel Cookbey is a resident of Joliet, IL.  Plaintiff purchased a 2021 Kia Forte on or around 10/08/2021 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2021 Kia Forte is a Vehicle subject to the Theft-Prone Design.

COMPLAINT

419. Plaintiff Karen Cooksey is a resident of Elk Grove Village, IL. Plaintiff purchased a 2018 Kia Soul on or around 05/03/2019 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Kia Soul is a Vehicle subject to the Theft-Prone Design.

420. Plaintiff Erica Cooper is a resident of Southern View, IL. Plaintiff purchased a 2020 Kia Optima on or around 08/04/2020 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2020 Kia Optima is a Vehicle subject to the Theft-Prone Design.

421. Plaintiff Linda Coulson is a resident of Elmwood Park, IL. Plaintiff purchased a 2013 Hyundai Sonata on or around 03/26/2016 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2013 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

422. Plaintiff Patricia Cunniff is a resident of Lansing, IL. Plaintiff purchased a 2016 Hyundai Elantra GT on or around 04/28/2017 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Hyundai Elantra GT is a Vehicle subject to the Theft-Prone Design.

423. Plaintiff Dina DeCarlo is a resident of Plainfield, IL. Plaintiff purchased a 2019 Kia Sportage on or around 07/08/2019 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

424. Plaintiff Matteo DeLuca is a resident of Boulder, CO, and purchased the Vehicle in Illinois. Plaintiff purchased a 2020 Kia Soul on or around 02/09/2023 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition

COMPLAINT

system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2020 Kia Soul is a Vehicle subject to the Theft-Prone Design.

425.  Plaintiff Linda Flanagan Vahl is a resident of Oak Lawn, IL.  Plaintiff purchased a 2011 Kia Sedona on or around 08/23/2011 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2011 Kia Sedona is a Vehicle subject to the Theft-Prone Design.

426.  Plaintiff Jimmy Flinchum is a resident of Carpentersville, IL.  Plaintiff purchased a 2016 Hyundai Santa Fe Sport on or around 06/26/2015 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2016 Hyundai Santa Fe Sport is a Vehicle subject to the Theft-Prone Design.

427.  Plaintiff Kevin Gillen is a resident of Hammond, IN, and purchased the Vehicle in Illinois.  Plaintiff purchased a 2013 Kia Soul on or around 06/05/2019 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2013 Kia Soul is a Vehicle subject to the Theft-Prone Design.

428.  Plaintiff Vladimir Gjeorgjiev is a resident of Willowbrook, IL.  Plaintiff purchased a 2014 Hyundai Elantra on or around 12/15/2022 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2014 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

429.  Plaintiff Marisa Glass is a resident of Berwyn, IL.  Plaintiff purchased a 2022 Kia Sportage on or around 09/24/2022 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2022 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

430.  Plaintiff Jose Gonzalez is a resident of Lyons, IL.  Plaintiff purchased a

COMPLAINT

2020 Kia Sorento on or around 05/09/2020 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2020 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

431. Plaintiff Kyra Gribble is a resident of Belvidere, IL. Plaintiff leased a 2019 Kia Soul on or around 08/23/2023 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Kia Soul is a Vehicle subject to the Theft-Prone Design.

432. Plaintiff Marlon Hampton is a resident of Indianapolis, IN, and purchased the Vehicle in Illinois. Plaintiff purchased a 2015 Hyundai Sonata on or around 06/30/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2015 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

433. Plaintiff Nicole Hassan is a resident of Lena, IL. Plaintiff purchased a 2018 Kia Soul on or around 01/23/2023 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Kia Soul is a Vehicle subject to the Theft-Prone Design.

434. Plaintiff Ralleda Hayes is a resident of Park Forest, IL. Plaintiff purchased a 2011 Kia Soul on or around 05/04/2019 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2011 Kia Soul is a Vehicle subject to the Theft-Prone Design.

435. Plaintiff Alfredo Hernandez is a resident of Burbank, IL. Plaintiff purchased a 2020 Hyundai Elantra on or around 08/24/2019 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2020 Hyundai Elantra

COMPLAINT

is a Vehicle subject to the Theft-Prone Design.

436. Plaintiff Lonnie Holman is a resident of Joliet, IL. Plaintiff purchased a 2021 Kia Forte on or around 08/01/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2021 Kia Forte is a Vehicle subject to the Theft-Prone Design.

437. Plaintiff Kimberly Hubbard is a resident of Bonnie, IL. Plaintiff purchased a 2016 Kia Forte on or around 03/26/2020 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Kia Forte is a Vehicle subject to the Theft-Prone Design.

438. Plaintiff DeOntae Hudson is a resident of Chicago, IL. Plaintiff leased a 2014 Hyundai Santa Fe Sport on or around 01/05/2022 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2014 Hyundai Santa Fe Sport is a Vehicle subject to the Theft-Prone Design. On or about 07/14/2024, Plaintiff's Vehicle was stolen.

439. Plaintiff Phyllis Iverson is a resident of Wesley Chapel, FL, and purchased the Vehicle in Illinois. Plaintiff purchased a 2012 Hyundai Tucson on or around 12/16/2014 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2012 Hyundai Tucson is a Vehicle subject to the Theft-Prone Design.

440. Plaintiff Kim Jackson is a resident of Downers Grove, IL. Plaintiff purchased a 2014 Kia Sorento on or around 10/21/2023 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2014 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

441. Plaintiff Veronica Jackson is a resident of Charlotte, NC, and purchased

COMPLAINT

the Vehicle in Illinois.  Plaintiff purchased a 2021 Kia Rio on or around 08/14/2021 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2021 Kia Rio is a Vehicle subject to the Theft-Prone Design.

442.  Plaintiff Meredith Jamry is a resident of Vernon Hills, IL.  Plaintiff purchased a 2021 Kia Soul on or around 08/04/2020 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2021 Kia Soul is a Vehicle subject to the Theft-Prone Design.

443.  Plaintiff Lisa Jefferson is a resident of Naperville, IL.  Plaintiff purchased a 2013 Kia Optima on or around 06/29/2017 for personal and business use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2013 Kia Optima is a Vehicle subject to the Theft-Prone Design.

444.  Plaintiff Melissa Johns is a resident of Edwardsville, IL.  Plaintiff purchased a 2013 Hyundai Sonata on or around 12/15/2015 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2013 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

445.  Plaintiff Natalie Johnson is a resident of Libertyville, IL.  Plaintiff purchased a 2016 Kia Soul on or around 09/30/2017 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2016 Kia Soul is a Vehicle subject to the Theft-Prone Design.

446.  Plaintiff Shanell Johnson is a resident of Chicago, IL.  Plaintiff purchased a 2014 Kia Sportage on or around 04/07/2016 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2014 Kia Sportage is a Vehicle

COMPLAINT

subject to the Theft-Prone Design.

447.   Plaintiff Vanessa Kelley is a resident of Niota, IL.  Plaintiff purchased a 2017 Hyundai Tucson on or around 11/23/2021 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2017 Hyundai Tucson is a Vehicle subject to the Theft-Prone Design.

448.   Plaintiff Renae Kenney is a resident of Gary, IN, and purchased the Vehicle in Illinois.  Plaintiff purchased a 2019 Hyundai Accent on or around 01/26/2019 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2019 Hyundai Accent is a Vehicle subject to the Theft-Prone Design.

449.   Plaintiff Katherine Klein is a resident of Chicago, IL.  Plaintiff purchased a 2011 Hyundai Tucson on or around 03/12/2011 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2011 Hyundai Tucson is a Vehicle subject to the Theft-Prone Design.

450.   Plaintiff Jennifer Klincik is a resident of Hoffman Estates, IL.  Plaintiff purchased a 2018 Hyundai Tucson on or around 05/01/2021 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2018 Hyundai Tucson is a Vehicle subject to the Theft-Prone Design.

451.   Plaintiff Michael Kolkovich is a resident of Roselle, IL.  Plaintiff purchased a 2019 Kia Forte on or around 05/09/2022 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2019 Kia Forte is a Vehicle subject to the Theft-Prone Design.

452.   Plaintiff Julie Kolp is a resident of Glen Ellyn, IL.  Plaintiff purchased a 2019 Kia Soul on or around 03/18/2022 for personal use.  Plaintiff's Vehicle has a

COMPLAINT

traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2019 Kia Soul is a Vehicle subject to the Theft-Prone Design.

453.   Plaintiff Phillip Komada is a resident of Palos Hills, IL.  Plaintiff purchased a 2017 Kia Forte on or around 01/02/2017 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2017 Kia Forte is a Vehicle subject to the Theft-Prone Design.

454.   Plaintiff Debra Krystyn is a resident of Chicago, IL.  Plaintiff purchased a 2017 Hyundai Accent on or around 05/02/2017 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2017 Hyundai Accent is a Vehicle subject to the Theft-Prone Design.

455.   Plaintiff Odette Lamon is a resident of Fairview Heights, IL.  Plaintiff purchased a 2011 Kia Optima on or around 05/25/2018 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2011 Kia Optima is a Vehicle subject to the Theft-Prone Design.

456.   Plaintiff Cynthia Larson is a resident of Shorewood, IL.  Plaintiff purchased a 2017 Kia Soul on or around 02/26/2017 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2017 Kia Soul is a Vehicle subject to the Theft-Prone Design.

457.   Plaintiff Tikia Laws is a resident of Chicago, IL.  Plaintiff purchased a 2021 Hyundai Kona on or around 09/05/2022 for personal and business use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2021 Hyundai Kona is a Vehicle subject to the Theft-Prone Design.

COMPLAINT

458.   Plaintiff Byung Jin Lee is a resident of Plainfield, IL.  Plaintiff purchased a 2017 Hyundai Elantra GT on or around 06/19/2019 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2017 Hyundai Elantra GT is a Vehicle subject to the Theft-Prone Design.

459.   Plaintiff Anthony Lima is a resident of Franklin Park, IL.  Plaintiff purchased a 2016 Kia Forte on or around 06/19/2023 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2016 Kia Forte is a Vehicle subject to the Theft-Prone Design.

460.   Plaintiff Charles Lineberry is a resident of Cape Girardeau, MO, and purchased the Vehicle in Illinois.  Plaintiff purchased a 2016 Kia Optima on or around 04/01/2016 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2016 Kia Optima is a Vehicle subject to the Theft-Prone Design.

461.   Plaintiff Nathaniel Logan is a resident of Cary, IL.  Plaintiff purchased a 2019 Hyundai Veloster on or around 06/19/2020 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2019 Hyundai Veloster is a Vehicle subject to the Theft-Prone Design.

462.   Plaintiff Toni Lynch is a resident of Huntley, IL.  Plaintiff purchased a 2022 Kia Soul on or around 04/26/2023 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2022 Kia Soul is a Vehicle subject to the Theft-Prone Design.

463.   Plaintiff Louia Malley is a resident of Orland Park, IL.  Plaintiff purchased a 2018 Hyundai Elantra GT on or around 10/09/2022 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased

insurance for the Vehicle. On information and belief, Plaintiff's 2018 Hyundai Elantra GT is a Vehicle subject to the Theft-Prone Design.

464. Plaintiff Kerry Marzo is a resident of Chicago, IL. Plaintiff purchased a 2017 Hyundai Santa Fe on or around 02/23/2017 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Hyundai Santa Fe is a Vehicle subject to the Theft-Prone Design. Plaintiff purchased a 2017 Hyundai Elantra on or around 09/23/2017 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

465. Plaintiff Devieon Mathis is a resident of Riverdale, IL. Plaintiff leased a 2015 Kia Optima on or around 04/01/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2015 Kia Optima is a Vehicle subject to the Theft-Prone Design.

466. Plaintiff Sean May is a resident of McHenry, IL. Plaintiff purchased a 2016 Hyundai Accent on or around 05/15/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Hyundai Accent is a Vehicle subject to the Theft-Prone Design.

467. Plaintiff Tamika McClary is a resident of Riverdale, IL. Plaintiff purchased a 2020 Kia Soul on or around 07/16/2025 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2020 Kia Soul is a Vehicle subject to the Theft-Prone Design.

468. Plaintiff Maria McKenna is a resident of Galesburg, IL. Plaintiff purchased a 2020 Kia Sportage on or around 06/23/2020 for personal use. Plaintiff's

COMPLAINT

Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2020 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

469. Plaintiff Terry McVeen is a resident of Lake Zurich, IL. Plaintiff purchased a 2016 Hyundai Elantra on or around 03/25/2016 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

470. Plaintiff Jamie Meneley is a resident of Jacksonville, IL. Plaintiff purchased a 2011 Hyundai Santa Fe on or around 03/23/2018 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2011 Hyundai Santa Fe is a Vehicle subject to the Theft-Prone Design.

471. Plaintiff Kelli Meserole is a resident of DeKalb, IL. Plaintiff purchased a 2016 Kia Soul on or around 03/26/2016 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Kia Soul is a Vehicle subject to the Theft-Prone Design.

472. Plaintiff Stacy Migut is a resident of Hanover Park, IL. Plaintiff purchased a 2013 Hyundai Sonata on or around 07/01/2012 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2013 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design. Plaintiff's Vehicle was damaged due to an attempted theft.

473. Plaintiff Kimberly Mitchell is a resident of Duluth, GA, and purchased the Vehicle in Illinois. Plaintiff leased a 2012 Kia Optima on or around 11/20/2013 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief,

COMPLAINT

Plaintiff's 2012 Kia Optima is a Vehicle subject to the Theft-Prone Design.

474. Plaintiff Kimberly Moore is a resident of Wilmington, IL. Plaintiff purchased a 2020 Kia Soul on or around 06/04/2019 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2020 Kia Soul is a Vehicle subject to the Theft-Prone Design.

475. Plaintiff Joyce Mueller is a resident of St. Louis, MO, and purchased the Vehicle in Illinois. Plaintiff purchased a 2017 Kia Soul on or around 02/17/2022 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Kia Soul is a Vehicle subject to the Theft-Prone Design.

476. Plaintiff Quinn Naugle is a resident of Springfield, IL. Plaintiff purchased a 2018 Hyundai Elantra on or around 06/26/2019 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

477. Plaintiff Jerome Nelson Jr is a resident of Danville, IL. Plaintiff purchased a 2018 Hyundai Sonata on or around 11/24/2018 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

478. Plaintiff Kerri Newman is a resident of Leesburg, FL, and purchased the Vehicle in Illinois. Plaintiff purchased a 2012 Hyundai Tucson on or around 10/15/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2012 Hyundai Tucson is a Vehicle subject to the Theft-Prone Design.

479. Plaintiff Amber Newtown is a resident of Marion, IL. Plaintiff purchased a 2021 Kia Seltos on or around 02/19/2020 for personal use. Plaintiff's Vehicle has a

COMPLAINT

traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2021 Kia Seltos is a Vehicle subject to the Theft-Prone Design.

480. Plaintiff Rosemarie Nieves is a resident of Crest Hill, IL. Plaintiff purchased a 2014 Kia Rio on or around 06/09/2019 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2014 Kia Rio is a Vehicle subject to the Theft-Prone Design.

481. Plaintiff Steffanie Paszko is a resident of Country Club Hills, IL. Plaintiff purchased a 2018 Hyundai Elantra on or around 08/05/2020 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

482. Plaintiff Aja Patrick is a resident of Dolton, IL. Plaintiff purchased a 2016 Kia Forte on or around 04/23/2016 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Kia Forte is a Vehicle subject to the Theft-Prone Design.

483. Plaintiff Rene Perez is a resident of Alsip, IL. Plaintiff purchased a 2018 Kia Soul on or around 12/04/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Kia Soul is a Vehicle subject to the Theft-Prone Design. Plaintiff's Vehicle was damaged due to an attempted theft.

484. Plaintiff Danielle Perkins is a resident of Springfield, IL. Plaintiff purchased a 2018 Hyundai Sonata on or around 03/15/2023 for business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

485. Plaintiff Zoran Podunavac is a resident of Batavia, IL. Plaintiff purchased a 2011 Hyundai Sonata on or around 06/28/2025 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2011 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

486. Plaintiff Dawn Pollard is a resident of Henry, IL. Plaintiff purchased a 2021 Kia Soul on or around 11/16/2023 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2021 Kia Soul is a Vehicle subject to the Theft-Prone Design.

487. Plaintiff Lydia Porter is a resident of Dwight, IL. Plaintiff purchased a 2018 Hyundai Tucson on or around 06/10/2019 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Hyundai Tucson is a Vehicle subject to the Theft-Prone Design.

488. Plaintiff Kelley Price is a resident of Creve Coeur, IL. Plaintiff purchased a 2021 Kia Soul on or around 06/23/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2021 Kia Soul is a Vehicle subject to the Theft-Prone Design.

489. Plaintiff Bryan Puerta is a resident of Austin, TX, and purchased the Vehicle in Illinois. Plaintiff leased a 2021 Hyundai Venue on or around 01/23/2024 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2021 Hyundai Venue is a Vehicle subject to the Theft-Prone Design.

490. Plaintiff Diana Ramanauskas is a resident of Chicago, IL. Plaintiff purchased a 2018 Hyundai Elantra on or around 05/01/2019 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.

COMPLAINT

Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2018 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.  Plaintiff's Vehicle was damaged due to an attempted theft.

491.   Plaintiff Tracya Randle is a resident of Chicago, IL.  Plaintiff purchased a 2016 Kia Forte on or around 04/11/2016 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2016 Kia Forte is a Vehicle subject to the Theft-Prone Design.  On or about 04/03/2023, Plaintiff's Vehicle was stolen.

492.   Plaintiff Regan Rice is a resident of Woodridge, IL.  Plaintiff purchased a 2019 Kia Optima on or around 10/24/2018 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2019 Kia Optima is a Vehicle subject to the Theft-Prone Design.  Plaintiff purchased a 2018 Kia Sorento on or around 06/23/2018 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2018 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

493.   Plaintiff Katrina Riley-Omari is a resident of Chicago, IL.  Plaintiff purchased a 2013 Hyundai Elantra on or around 05/09/2016 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2013 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.  On or about 03/09/2024, Plaintiff's Vehicle was stolen.

494.   Plaintiff Luther Rodgers is a resident of Chicago, IL.  Plaintiff leased a 2020 Kia Soul on or around 03/12/2020 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2020 Kia Soul is a Vehicle subject to the Theft-Prone Design.

495.   Plaintiff Sam Rosenberg is a resident of West Dundee, IL.  Plaintiff

COMPLAINT

purchased a 2019 Kia Sorento on or around 06/01/2022 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Kia Sorento is a Vehicle subject to the Theft-Prone Design. Plaintiff purchased a 2012 Kia Soul on or around 06/23/2016 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2012 Kia Soul is a Vehicle subject to the Theft-Prone Design.

496. Plaintiff Rockwell Rydeberg is a resident of Davis Junction, IL. Plaintiff purchased a 2015 Kia Sportage on or around 03/13/2019 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2015 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

497. Plaintiff Steve Sampson is a resident of Poplar Grove, IL. Plaintiff purchased a 2017 Kia Sportage on or around 01/22/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

498. Plaintiff Steve Schultz is a resident of Park Forest, IL. Plaintiff purchased a 2019 Kia Sorento on or around 09/01/2019 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

499. Plaintiff Joshua Senese is a resident of Riverside, IL. Plaintiff purchased a 2015 Kia Soul on or around 04/27/2015 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2015 Kia Soul is a Vehicle subject to the Theft-Prone Design.

COMPLAINT

500.   Plaintiff Ashley Simpson is a resident of Belleville, IL.  Plaintiff purchased a 2013 Kia Rio on or around 02/25/2022 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2013 Kia Rio is a Vehicle subject to the Theft-Prone Design.

501.   Plaintiff Daniel Skorupa is a resident of Kenosha, WI, and purchased the Vehicle in Illinois.  Plaintiff purchased a 2018 Kia Forte on or around 08/10/2018 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2018 Kia Forte is a Vehicle subject to the Theft-Prone Design.

502.   Plaintiff Mary Spalo is a resident of Wheaton, IL.  Plaintiff purchased a 2020 Kia Sportage on or around 09/14/2019 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2020 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

503.   Plaintiff Marcus Spencer is a resident of Winthrop Harbor, IL.  Plaintiff purchased a 2017 Kia Forte on or around 03/05/2022 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2017 Kia Forte is a Vehicle subject to the Theft-Prone Design.

504.   Plaintiff John Steinberg is a resident of Bourbonnais, IL.  Plaintiff purchased a 2021 Hyundai Santa Fe on or around 05/01/2021 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2021 Hyundai Santa Fe is a Vehicle subject to the Theft-Prone Design.

505.   Plaintiff Robert Stoll is a resident of Bolingbrook, IL.  Plaintiff purchased a 2017 Kia Forte on or around 06/01/2017 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for

COMPLAINT

the Vehicle.  On information and belief, Plaintiff's 2017 Kia Forte is a Vehicle subject to the Theft-Prone Design.

506.    Plaintiff Joanne Stone is a resident of Granite City, IL.  Plaintiff purchased a 2019 Kia Soul on or around 12/26/2019 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2019 Kia Soul is a Vehicle subject to the Theft-Prone Design.

507.    Plaintiff Latanya Thomas is a resident of Country Club Hills, IL.  Plaintiff purchased a 2017 Hyundai Accent on or around 12/12/2019 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2017 Hyundai Accent is a Vehicle subject to the Theft-Prone Design.

508.    Plaintiff Kami Tobey is a resident of Lake in the Hills, IL.  Plaintiff purchased a 2016 Kia Soul on or around 03/01/2019 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2016 Kia Soul is a Vehicle subject to the Theft-Prone Design.

509.    Plaintiff Gwenevere Turner is a resident of Broadview, IL.  Plaintiff purchased a 2018 Kia Sorento on or around 01/18/2018 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2018 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

510.    Plaintiff Elda Villarreal is a resident of South Wilmington, IL.  Plaintiff purchased a 2015 Kia Soul on or around 07/25/2019 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2015 Kia Soul is a Vehicle subject to the Theft-Prone Design.

511.    Plaintiff Renata Waclawska is a resident of Hot Springs, AR, and

COMPLAINT

purchased the Vehicle in Illinois.  Plaintiff purchased a 2015 Hyundai Sonata on or around 09/10/2015 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2015 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.  Plaintiff's Vehicle was damaged due to an attempted theft.

512.   Plaintiff Taylor Walthers is a resident of Crest Hill, IL.  Plaintiff leased a 2018 Kia Forte on or around 11/02/2017 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2018 Kia Forte is a Vehicle subject to the Theft-Prone Design.

513.   Plaintiff Danielle Williams is a resident of Chicago, IL.  Plaintiff purchased a 2012 Hyundai Sonata on or around 02/12/2014 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2012 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

514.   Plaintiff Brian Wilson is a resident of Oakwood Hills, IL.  Plaintiff purchased a 2021 Kia Seltos on or around 02/10/2021 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2021 Kia Seltos is a Vehicle subject to the Theft-Prone Design.

515.   Plaintiff Bogdan Worwa is a resident of Wood Dale, IL.  Plaintiff purchased a 2020 Kia Forte on or around 10/09/2022 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2020 Kia Forte is a Vehicle subject to the Theft-Prone Design.

516.   Plaintiff Doug Wozniak is a resident of New Lenox, IL.  Plaintiff purchased a 2021 Kia Soul on or around 07/09/2021 for personal and business use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased

COMPLAINT

insurance for the Vehicle.  On information and belief, Plaintiff's 2021 Kia Soul is a Vehicle subject to the Theft-Prone Design.

517.  Plaintiff Watcharin Yahatta is a resident of Chicago, IL.  Plaintiff purchased a 2014 Kia Soul on or around 12/14/2023 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2014 Kia Soul is a Vehicle subject to the Theft-Prone Design.

518.  Plaintiff Shannon Cole is a resident of Bourbonnais, IL.  Plaintiff leased a 2014 Kia Forte on or around 09/21/2023 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2014 Kia Forte is a Vehicle subject to the Theft-Prone Design.

519.  Plaintiff Kesha Quagraine is a resident of Park Forest, IL.  Plaintiff purchased a 2013 Hyundai Elantra on or around 12/14/2014 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2013 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

520.  Plaintiff Guy Visconti is a resident of Chicago, IL.  Plaintiff purchased a 2013 Hyundai Tucson on or around 11/21/2013 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2013 Hyundai Tucson is a Vehicle subject to the Theft-Prone Design.

### 13.    Indiana Plaintiffs

521.  Plaintiff Terri Brown is a resident of Minneapolis, MN, and purchased the Vehicle in Indiana.  Plaintiff purchased a 2019 Hyundai Santa Fe on or around 09/12/2020 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2019 Hyundai Santa Fe is a Vehicle subject to the Theft-Prone Design.

COMPLAINT

522.   Plaintiff Tyla Cox is a resident of Rushville, IN.  Plaintiff purchased a 2019 Kia Optima on or around 07/10/2021 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2019 Kia Optima is a Vehicle subject to the Theft-Prone Design.

523.   Plaintiff Jack Densford is a resident of Greenwood, IN.  Plaintiff purchased a 2017 Hyundai Accent on or around 03/24/2019 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2017 Hyundai Accent is a Vehicle subject to the Theft-Prone Design.

524.   Plaintiff Brenda Edwards is a resident of Carmel, IN.  Plaintiff purchased a 2020 Kia Soul on or around 07/28/2022 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2020 Kia Soul is a Vehicle subject to the Theft-Prone Design.

525.   Plaintiff Alice Frazier is a resident of Indianapolis, IN.  Plaintiff purchased a 2015 Hyundai Sonata on or around 09/07/2022 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2015 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

526.   Plaintiff Jerry Gilliatt is a resident of Indianapolis, IN.  Plaintiff purchased a 2012 Kia Soul on or around 03/12/2016 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2012 Kia Soul is a Vehicle subject to the Theft-Prone Design.

527.   Plaintiff David Goehst is a resident of Kokomo, IN.  Plaintiff purchased a 2022 Hyundai Tucson on or around 06/23/2022 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance

COMPLAINT

for the Vehicle. On information and belief, Plaintiff's 2022 Hyundai Tucson is a Vehicle subject to the Theft-Prone Design.

528. Plaintiff Huda Hamed is a resident of East Chicago, IN. Plaintiff purchased a 2017 Kia Sorento on or around 09/10/2019 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

529. Plaintiff Elizabeth Hoskins is a resident of Jacksonville, NC, and purchased the Vehicle in Indiana. Plaintiff purchased a 2019 Kia Soul on or around 09/15/2018 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Kia Soul is a Vehicle subject to the Theft-Prone Design.

530. Plaintiff Ashley Humphrey is a resident of South Bend, IN. Plaintiff purchased a 2011 Kia Sorento on or around 06/16/2015 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2011 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

531. Plaintiff Marcia Humphrey is a resident of South Bend, IN. Plaintiff purchased a 2015 Kia Forte on or around 11/12/2016 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2015 Kia Forte is a Vehicle subject to the Theft-Prone Design.

532. Plaintiff Brittany Lockert is a resident of Jacksonville, FL, and purchased the Vehicle in Indiana. Plaintiff purchased a 2016 Kia Sorento on or around 02/23/2022 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

533. Plaintiff Katelyn Miller is a resident of Crawfordsville, IN. Plaintiff

COMPLAINT

purchased a 2016 Kia Optima on or around 02/26/2024 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Kia Optima is a Vehicle subject to the Theft-Prone Design.

534. Plaintiff Larry Pearman is a resident of Dolton, IL, and purchased the Vehicle in Indiana. Plaintiff purchased a 2013 Hyundai accent on or around 08/04/2012 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2013 Hyundai accent is a Vehicle subject to the Theft-Prone Design. Plaintiff's Vehicle was damaged due to an attempted theft.

535. Plaintiff Anne Petty is a resident of Bedford, IN. Plaintiff purchased a 2013 Kia Soul on or around 09/09/2017 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2013 Kia Soul is a Vehicle subject to the Theft-Prone Design.

536. Plaintiff Amara Philebaum is a resident of Muncie, IN. Plaintiff purchased a 2016 Kia Soul on or around 06/23/2019 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Kia Soul is a Vehicle subject to the Theft-Prone Design.

537. Plaintiff Roberto Rios is a resident of Hammond, IN. Plaintiff leased a 2015 Hyundai Elantra on or around 08/09/2019 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2015 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

538. Plaintiff Sheila Roeder is a resident of Grand Prairie, TX, and purchased the Vehicle in Indiana. Plaintiff purchased a 2021 Kia Soul on or around 06/18/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition

COMPLAINT

system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2021 Kia Soul is a Vehicle subject to the Theft-Prone Design.

539.  Plaintiff William Steffy is a resident of Porter, IN.  Plaintiff purchased a 2021 Kia Soul on or around 06/15/2021 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2021 Kia Soul is a Vehicle subject to the Theft-Prone Design.

540.  Plaintiff James Stine is a resident of Indianapolis, IN.  Plaintiff purchased a 2015 Hyundai Sonata for personal and business use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2015 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

541.  Plaintiff Moniqua Walker is a resident of Gary, IN.  Plaintiff purchased a 2011 Hyundai Santa Fe on or around 02/23/2018 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2011 Hyundai Santa Fe is a Vehicle subject to the Theft-Prone Design.

**14.    Iowa Plaintiffs**

542.  Plaintiff Melinda Christensen is a resident of Bellevue, NE, and purchased the Vehicle in Iowa.  Plaintiff purchased a 2019 Kia Optima on or around 05/23/2020 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2019 Kia Optima is a Vehicle subject to the Theft-Prone Design.

543.  Plaintiff Linda Clearwater is a resident of Des Moines, IA.  Plaintiff purchased a 2013 Hyundai Elantra on or around 10/24/2012 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2013 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

COMPLAINT

544.   Plaintiff Matthew Esser is a resident of Cape Coral, FL, and purchased the Vehicles in Iowa.  Plaintiff purchased a 2012 Hyundai Veloster on or around 12/13/2011 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.   Plaintiff purchased insurance for the Vehicle.   On information and belief, Plaintiff's 2012 Hyundai Veloster is a Vehicle subject to the Theft-Prone Design. Plaintiff purchased a 2012 Hyundai Veloster on or around 12/13/2011 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.   On information and belief, Plaintiff's 2012 Hyundai Veloster is a Vehicle subject to the Theft-Prone Design.

545.   Plaintiff Fatonia Green is a resident of Douglasville, GA, and purchased the Vehicle in Iowa.  Plaintiff leased a 2014 Hyundai Tucson on or around 05/10/2019 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.   Plaintiff purchased insurance for the Vehicle.   On information and belief, Plaintiff's 2014 Hyundai Tucson is a Vehicle subject to the Theft-Prone Design.

546.   Plaintiff Brian Hoffmann is a resident of Waukee, IA.  Plaintiff purchased a 2016 Kia Soul on or around 06/25/2017 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2016 Kia Soul is a Vehicle subject to the Theft-Prone Design.

547.   Plaintiff Lisa Staake is a resident of Monona, IA.  Plaintiff purchased a 2017 Kia Soul on or around 10/10/2017 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2017 Kia Soul is a Vehicle subject to the Theft-Prone Design.

### 15.    Kansas Plaintiffs

548.   Plaintiff Devina Burnett is a resident of Independence, MO, and purchased the Vehicle in Kansas.  Plaintiff purchased a 2013 Kia Optima on or around 11/04/2021 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition

COMPLAINT

system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2013 Kia Optima is a Vehicle subject to the Theft-Prone Design.

549.  Plaintiff Luke Hadley is a resident of Nazareth, PA, and purchased the Vehicle in Kansas.  Plaintiff purchased a 2014 Kia Forte on or around 07/09/2016 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2014 Kia Forte is a Vehicle subject to the Theft-Prone Design.

550.  Plaintiff Derek Hermreck is a resident of Overland Park, KS.  Plaintiff purchased a 2013 Kia Rio on or around 07/25/2013 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2013 Kia Rio is a Vehicle subject to the Theft-Prone Design.

551.  Plaintiff Carla Martin is a resident of Wichita, KS.  Plaintiff purchased a 2020 Kia Optima on or around 04/02/2022 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2020 Kia Optima is a Vehicle subject to the Theft-Prone Design.

552.  Plaintiff Lauren Shipman is a resident of Wichita, KS.  Plaintiff purchased a 2016 Kia Optima on or around 01/07/2020 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2016 Kia Optima is a Vehicle subject to the Theft-Prone Design.

553.  Plaintiff Terry Steenstry is a resident of Kansas City, MO, and purchased the Vehicle in Kansas.  Plaintiff purchased a 2017 Kia Soul on or around 06/23/2017 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2017 Kia Soul is a Vehicle subject to the Theft-Prone Design.

554.  Plaintiff Zackary Terhune is a resident of Kansas City, MO, and purchased

COMPLAINT

the Vehicle in Kansas.  Plaintiff purchased a 2014 Hyundai Sonata on or around 05/27/2020 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2014 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

### 16.    Kentucky Plaintiffs

555.    Plaintiff Susan Asher is a resident of Madison, IN, and purchased the Vehicle in Kentucky.  Plaintiff purchased a 2018 Kia Forte on or around 07/17/2018 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2018 Kia Forte is a Vehicle subject to the Theft-Prone Design.

556.    Plaintiff Cassandra Berry is a resident of Lexington, KY.  Plaintiff leased a 2018 Hyundai Tucson on or around 06/24/2023 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2018 Hyundai Tucson is a Vehicle subject to the Theft-Prone Design.

557.    Plaintiff Angel Cooper is a resident of Dry Ridge, KY.  Plaintiff leased a 2014 Hyundai Santa Fe Sport on or around 06/23/2021 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2014 Hyundai Santa Fe Sport is a Vehicle subject to the Theft-Prone Design.

558.    Plaintiff Daniel Cooper is a resident of Nicholasville, KY.  Plaintiff leased a 2017 Kia Forte on or around 04/23/2017 for personal and business use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2017 Kia Forte is a Vehicle subject to the Theft-Prone Design.

559.    Plaintiff Doris Corcoran is a resident of Louisville, KY.  Plaintiff purchased a 2020 Kia Forte on or around 08/26/2020 for personal and business use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased

COMPLAINT

insurance for the Vehicle.  On information and belief, Plaintiff's 2020 Kia Forte is a Vehicle subject to the Theft-Prone Design.

560.    Plaintiff Jessica Duncan is a resident of Paducah, KY.  Plaintiff purchased a 2016 Hyundai Santa Fe Sport on or around 10/14/2021 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2016 Hyundai Santa Fe Sport is a Vehicle subject to the Theft-Prone Design.

561.    Plaintiff Kathi Grant is a resident of Elizabethtown, KY.  Plaintiff purchased a 2021 Kia Soul on or around 08/22/2020 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2021 Kia Soul is a Vehicle subject to the Theft-Prone Design.

562.    Plaintiff Keith Highley is a resident of Louisville, KY.  Plaintiff purchased a 2015 Kia Sportage for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2015 Kia Sportage is a Vehicle subject to the Theft-Prone Design.  Plaintiff purchased a 2020 Kia Forte on or around 02/23/2020 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2020 Kia Forte is a Vehicle subject to the Theft-Prone Design.

563.    Plaintiff Miriam Holley is a resident of Ferguson, KY.  Plaintiff purchased a 2015 Kia Optima on or around 02/20/2021 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2015 Kia Optima is a Vehicle subject to the Theft-Prone Design.

564.    Plaintiff Amberly Huguley is a resident of Louisville, KY.  Plaintiff purchased a 2017 Hyundai Sonata on or around 06/01/2023 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased

insurance for the Vehicle.  On information and belief, Plaintiff's 2017 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

565.   Plaintiff Jaime Johnson is a resident of Fort Thomas, KY.   Plaintiff purchased a 2018 Hyundai Tucson on or around 12/10/2018 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2018 Hyundai Tucson is a Vehicle subject to the Theft-Prone Design.

566.   Plaintiff Elizabeth Kelly is a resident of Bowling Green, KY.   Plaintiff purchased a 2012 Hyundai Tucson on or around 09/17/2018 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2012 Hyundai Tucson is a Vehicle subject to the Theft-Prone Design.

567.   Plaintiff April Leonard-Norrington is a resident of Madison, IL, and purchased the Vehicle in Kentucky.  Plaintiff purchased a 2015 Kia Soul on or around 02/28/2020 for business use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2015 Kia Soul is a Vehicle subject to the Theft-Prone Design.

568.   Plaintiff April Lopez is a resident of Hoffman Estates, IL, and purchased the Vehicle in Kentucky.  Plaintiff purchased a 2012 Hyundai Elantra on or around 04/02/2018 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2012 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

569.   Plaintiff Kimberly Mcray is a resident of Harrodsburg, KY.   Plaintiff purchased a 2015 Hyundai Sonata on or around 08/06/2022 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2015 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

570.   Plaintiff Tonya Norris is a resident of Somerset, KY.  Plaintiff purchased a

COMPLAINT

2012 Kia Soul on or around 10/23/2018 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2012 Kia Soul is a Vehicle subject to the Theft-Prone Design.

571. Plaintiff Jeremy Patrick is a resident of Eastern, KY. Plaintiff leased a 2020 Hyundai Tucson on or around 06/24/2024 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2020 Hyundai Tucson is a Vehicle subject to the Theft-Prone Design.

572. Plaintiff Joan Phillips is a resident of Oneida, TN, and purchased the Vehicle in Kentucky. Plaintiff purchased a 2017 Hyundai Sonata on or around 06/23/2018 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

573. Plaintiff Laura Schedko is a resident of Louisville, KY. Plaintiff purchased a 2012 Hyundai Santa Fe on or around 05/10/2023 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2012 Hyundai Santa Fe is a Vehicle subject to the Theft-Prone Design.

574. Plaintiff Gericka Thornton is a resident of Lexington, KY. Plaintiff leased a 2014 Kia Optima on or around 02/22/2019 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2014 Kia Optima is a Vehicle subject to the Theft-Prone Design.

**17.    Louisiana Plaintiffs**

575. Plaintiff Ronika Arceneaux is a resident of New Iberia, LA. Plaintiff purchased a 2019 Kia Sorento on or around 09/14/2019 for personal use. Plaintiff's

Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2019 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

576.    Plaintiff Robert Banks is a resident of Gretna, LA.  Plaintiff purchased a 2019 Kia Soul on or around 01/03/2022 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2019 Kia Soul is a Vehicle subject to the Theft-Prone Design.

577.    Plaintiff Stacy Calligan is a resident of Baton Rouge, LA.  Plaintiff purchased a 2019 Kia Sportage on or around 05/24/2022 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2019 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

578.    Plaintiff Holly Castillo is a resident of Hammond, LA.  Plaintiff purchased a 2013 Hyundai Tucson on or around 06/01/2012 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2013 Hyundai Tucson is a Vehicle subject to the Theft-Prone Design.

579.    Plaintiff Barbara Coste-Holton is a resident of New Orleans, LA.  Plaintiff purchased a 2017 Hyundai Santa Fe Sport on or around 09/01/2017 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2017 Hyundai Santa Fe Sport is a Vehicle subject to the Theft-Prone Design.  Plaintiff's Vehicle was damaged due to an attempted theft.

580.    Plaintiff Douglas Flatau is a resident of Baton Rouge, LA.  Plaintiff purchased a 2012 Hyundai Elantra on or around 04/02/2015 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2012 Hyundai Elantra

COMPLAINT

is a Vehicle subject to the Theft-Prone Design.

581.    Plaintiff Kianna Grant is a resident of Fresno, TX, and purchased the Vehicle in Louisiana.  Plaintiff purchased a 2012 Hyundai Elantra on or around 06/26/2018 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2012 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

582.    Plaintiff Khadijah Gregg Johnson is a resident of Winnfield, LA.  Plaintiff leased a 2019 Kia Forte on or around 01/09/2020 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2019 Kia Forte is a Vehicle subject to the Theft-Prone Design.

583.    Plaintiff Shuntaye Jacobs is a resident of Monroe, LA.  Plaintiff purchased a 2016 Hyundai Elantra on or around 12/09/2015 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2016 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

584.    Plaintiff Linda Mays is a resident of Shreveport, LA.  Plaintiff purchased a 2018 Hyundai Elantra on or around 02/26/2023 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2018 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

585.    Plaintiff Fheryl Miller is a resident of Oakdale, LA.  Plaintiff purchased a 2018 Kia Optima on or around 07/13/2018 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2018 Kia Optima is a Vehicle subject to the Theft-Prone Design.

586.    Plaintiff Amanda Ohler is a resident of Slidell, LA.  Plaintiff purchased a 2021 Kia Sorento on or around 02/25/2023 for personal use.  Plaintiff's Vehicle has a

COMPLAINT

traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2021 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

587. Plaintiff Sharonda Oliver is a resident of Springhill, LA. Plaintiff purchased a 2019 Hyundai Accent on or around 05/17/2023 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Hyundai Accent is a Vehicle subject to the Theft-Prone Design.

588. Plaintiff Ronald Roth is a resident of Gretna, LA. Plaintiff purchased a 2019 Hyundai Santa Fe XL on or around 01/03/2023 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Hyundai Santa Fe XL is a Vehicle subject to the Theft-Prone Design.

589. Plaintiff Charlotte Sneddon is a resident of Lake Charles, LA. Plaintiff purchased a 2017 Hyundai Tucson on or around 11/16/2017 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Hyundai Tucson is a Vehicle subject to the Theft-Prone Design.

590. Plaintiff Tony Stanley is a resident of Rayville, LA. Plaintiff purchased a 2017 Hyundai Sonata on or around 06/28/2017 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

591. Plaintiff Pamela Stark is a resident of Largo, FL, and purchased the Vehicle in Louisiana. Plaintiff purchased a 2016 Kia Soul on or around 10/26/2016 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Kia Soul is a Vehicle subject to the Theft-Prone Design.

COMPLAINT

592.   Plaintiff Johnathan West is a resident of Church Point, LA.   Plaintiff purchased a 2017 Hyundai Elantra on or around 06/23/2021 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2017 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

## 18.    Maine Plaintiffs

593.   Plaintiff Dolores Cormier is a resident of Rehoboth Beach, DE, and purchased the Vehicle in Maine.  Plaintiff purchased a 2018 Hyundai Tucson on or around 10/17/2018 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2018 Hyundai Tucson is a Vehicle subject to the Theft-Prone Design.

594.   Plaintiff Karen Eastman is a resident of Bradley, ME.  Plaintiff purchased a 2019 Kia Optima on or around 08/15/2024 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2019 Kia Optima is a Vehicle subject to the Theft-Prone Design.

595.   Plaintiff Heather Gurney is a resident of Dixfield, ME.  Plaintiff purchased a 2016 Hyundai Elantra on or around 07/07/2016 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2016 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

596.   Plaintiff Anthony Randazzo is a resident of Auburn, ME.   Plaintiff purchased a 2020 Kia Forte on or around 09/01/2021 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2020 Kia Forte is a Vehicle subject to the Theft-Prone Design.

## 19.    Maryland Plaintiffs

597. Plaintiff Jakeita Breeden is a resident of Baltimore, MD. Plaintiff purchased a 2020 Hyundai Elantra on or around 06/29/2025 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2020 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

598. Plaintiff Karen Butler-Smith is a resident of District Heights, MD. Plaintiff purchased a 2020 Kia Sorento on or around 10/09/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2020 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

599. Plaintiff Alyson Cominio is a resident of Baltimore, MD. Plaintiff purchased a 2015 Hyundai Elantra on or around 06/01/2018 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2015 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design. On or about 05/09/2024, Plaintiff's Vehicle was stolen.

600. Plaintiff Sarah Gipson is a resident of Dundalk, MD. Plaintiff leased a 2018 Hyundai Elantra on or around 09/20/2023 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

601. Plaintiff Cathy Gum is a resident of Poolesville, MD. Plaintiff purchased a 2019 Kia Soul on or around 01/01/2018 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Kia Soul is a Vehicle subject to the Theft-Prone Design.

602. Plaintiff Angeline Gunter is a resident of North East, MD. Plaintiff purchased a 2020 Kia Sorento on or around 07/26/2020 for personal use. Plaintiff's

Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2020 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

603. Plaintiff Keon Hayes is a resident of Woodbine, MD. Plaintiff purchased a 2019 Kia Soul on or around 07/23/2020 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Kia Soul is a Vehicle subject to the Theft-Prone Design.

604. Plaintiff Tonja Hodges is a resident of Owings Mills, MD. Plaintiff purchased a 2018 Hyundai Elantra on or around 09/23/2018 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design. On or about 10/23/2023, Plaintiff's Vehicle was stolen.

605. Plaintiff Willie Lee is a resident of Baltimore, MD. Plaintiff purchased a 2013 Kia Optima on or around 04/23/2016 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2013 Kia Optima is a Vehicle subject to the Theft-Prone Design.

606. Plaintiff Michael Malbran is a resident of Bel Air, MD. Plaintiff leased a 2014 Kia Soul on or around 08/06/2022 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2014 Kia Soul is a Vehicle subject to the Theft-Prone Design.

607. Plaintiff Dorlene Mills is a resident of Williamsport, MD. Plaintiff purchased a 2016 Kia Rio on or around 12/17/2019 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Kia Rio is a

Vehicle subject to the Theft-Prone Design.

608.    Plaintiff Cynthia Milstead is a resident of Middle River, MD.  Plaintiff purchased a 2019 Kia Sorento on or around 05/10/2023 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2019 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

609.    Plaintiff Hugo Moscoso is a resident of Woodbridge, VA, and purchased the Vehicle in Maryland.  Plaintiff purchased a 2020 Hyundai Elantra GT on or around 06/15/2022 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2020 Hyundai Elantra GT is a Vehicle subject to the Theft-Prone Design.

610.    Plaintiff Patrick Nicolucci is a resident of Columbia, MD.  Plaintiff purchased a 2015 Hyundai Sonata on or around 02/05/2019 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2015 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

611.    Plaintiff Sean Parks is a resident of Cleveland, TN, and purchased the Vehicle in Maryland.  Plaintiff purchased a 2011 Hyundai Sonata on or around 11/26/2018 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2011 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

612.    Plaintiff Denise Sansonese is a resident of Frederick, MD.  Plaintiff purchased a 2017 Kia Forte on or around 11/20/2017 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2017 Kia Forte is a Vehicle subject to the Theft-Prone Design.

613.    Plaintiff Lorretta Sisco is a resident of Rock Hall, MD.  Plaintiff purchased

COMPLAINT

a 2018 Hyundai Elantra on or around 11/13/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

614. Plaintiff Scott Sullivan is a resident of Germantown, MD. Plaintiff purchased a 2013 Hyundai Sonata on or around 07/09/2014 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2013 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

615. Plaintiff Cherritta Thrasher is a resident of Cockeysville, MD. Plaintiff purchased a 2015 Hyundai Santa Fe Sport on or around 06/26/2015 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2015 Hyundai Santa Fe Sport is a Vehicle subject to the Theft-Prone Design.

616. Plaintiff Courtney Whisel is a resident of Goldsboro, PA. Plaintiff purchased a 2018 Hyundai Elantra in Maryland on or around 09/02/2019 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design. Plaintiff purchased a 2019 Hyundai Elantra in Pennsylvania on or around 04/12/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

### 20.    Massachusetts Plaintiffs

617. Plaintiff Gladys Collins is a resident of Marlborough, MA. Plaintiff purchased a 2014 Kia Soul on or around 05/01/2023 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2014 Kia Soul is a

Vehicle subject to the Theft-Prone Design.

618. Plaintiff Seamus Corbett is a resident of Lexington, MA. Plaintiff purchased a 2018 Kia Soul on or around 02/04/2020 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Kia Soul is a Vehicle subject to the Theft-Prone Design.

619. Plaintiff Sherri Cote is a resident of Lowell, MA. Plaintiff purchased a 2013 Kia Forte on or around 04/24/2023 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2013 Kia Forte is a Vehicle subject to the Theft-Prone Design.

620. Plaintiff Kacy Crider is a resident of Lynn, MA. Plaintiff purchased a 2020 Kia Soul on or around 12/27/2020 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2020 Kia Soul is a Vehicle subject to the Theft-Prone Design.

621. Plaintiff Lorelei Currier is a resident of Baldwinville, MA. Plaintiff purchased a 2015 Hyundai Elantra on or around 08/01/2015 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2015 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

622. Plaintiff Paul Daigneault is a resident of Woonsocket, RI. Plaintiff purchased a 2019 Kia Soul in Massachusetts on or around 02/06/2019 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Kia Soul is a Vehicle subject to the Theft-Prone Design.

623. Plaintiff Elizabeth DeMeo is a resident of Littleton, MA. Plaintiff purchased a 2016 Hyundai Elantra on or around 06/23/2025 for personal use. Plaintiff's

COMPLAINT

Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

624. Plaintiff Eric Dumas is a resident of Easthampton, MA. Plaintiff purchased a 2013 Hyundai Elantra on or around 01/01/2024 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2013 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

625. Plaintiff Barry Duval is a resident of Fitchburg, MA. Plaintiff leased a 2017 Kia Forte on or around 01/01/2019 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Kia Forte is a Vehicle subject to the Theft-Prone Design.

626. Plaintiff Kristina Emerson is a resident of Stoughton, MA. Plaintiff purchased a 2018 Hyundai Tucson on or around 04/24/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Hyundai Tucson is a Vehicle subject to the Theft-Prone Design.

627. Plaintiff Carol Faherty is a resident of North Attleborough, MA. Plaintiff purchased a 2011 Hyundai Sonata on or around 02/01/2013 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2011 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

628. Plaintiff Marion Fratus is a resident of Port St. Lucie, FL. Plaintiff purchased a 2013 Hyundai Tucson in Massachusetts on or around 11/09/2013 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2013 Hyundai Tucson is a Vehicle subject to the Theft-Prone Design.

COMPLAINT

629. Plaintiff Juliana Gonzalez is a resident of Framingham, MA. Plaintiff purchased a 2017 Kia Rio on or around 07/16/2017 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Kia Rio is a Vehicle subject to the Theft-Prone Design.

630. Plaintiff Thomas Haynes is a resident of Braintree, MA. Plaintiff leased a 2013 Kia Soul on or around 06/18/2013 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2013 Kia Soul is a Vehicle subject to the Theft-Prone Design.

631. Plaintiff Stephanie Hickson is a resident of Chicopee, MA. Plaintiff leased a 2011 Hyundai Elantra on or around 03/28/2018 for business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2011 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design. On or about 07/27/2023, Plaintiff's Vehicle was stolen.

632. Plaintiff Nicole Martineau is a resident of Montague, MA. Plaintiff purchased a 2019 Kia Sorento on or around 09/26/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

633. Plaintiff Maribel Ortiz is a resident of Holyoke, MA. Plaintiff purchased a 2019 Hyundai Santa Fe on or around 05/05/2019 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Hyundai Santa Fe is a Vehicle subject to the Theft-Prone Design.

634. Plaintiff Laurie Pelosi is a resident of Chelsea, MA. Plaintiff purchased a 2020 Kia Soul on or around 02/27/2023 for personal use. Plaintiff's Vehicle has a

COMPLAINT

traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2020 Kia Soul is a Vehicle subject to the Theft-Prone Design.

635. Plaintiff Cheryl Rosen is a resident of Worcester, MA. Plaintiff leased a 2016 Hyundai Accent on or around 02/29/2016 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Hyundai Accent is a Vehicle subject to the Theft-Prone Design.

636. Plaintiff Jennifer Woodworth is a resident of Taunton, MA. Plaintiff purchased a 2016 Hyundai Santa Fe Sport on or around 06/23/2025 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Hyundai Santa Fe Sport is a Vehicle subject to the Theft-Prone Design.

### 21. Michigan Plaintiffs

637. Plaintiff Tamela Arnold is a resident of Jackson, MI. Plaintiff purchased a 2016 Kia Soul on or around 02/12/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Kia Soul is a Vehicle subject to the Theft-Prone Design.

638. Plaintiff Justin Ellenwood is a resident of Battle Creek, MI. Plaintiff purchased a 2017 Hyundai Elantra on or around 09/16/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

639. Plaintiff Mark Feather is a resident of South Lyon, MI. Plaintiff leased a 2021 Kia Sportage on or around 09/01/2020 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2021 Kia Sportage is a Vehicle

COMPLAINT

subject to the Theft-Prone Design. Plaintiff's Vehicle was damaged due to an attempted theft.

640. Plaintiff Takeia Hampton is a resident of Detroit, MI. Plaintiff leased a 2017 Hyundai Accent on or around 05/24/2019 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Hyundai Accent is a Vehicle subject to the Theft-Prone Design.

641. Plaintiff Angel Ingram is a resident of Royal Oak, MI. Plaintiff leased a 2019 Kia Sorento on or around 12/20/2018 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

642. Plaintiff Dustin Jorah is a resident of Southfield, MI. Plaintiff purchased a 2019 Kia Sportage on or around 05/08/2019 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

643. Plaintiff Michelle Karl is a resident of Clinton Township, MI. Plaintiff purchased a 2017 Kia Soul on or around 11/22/2019 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Kia Soul is a Vehicle subject to the Theft-Prone Design.

644. Plaintiff James Leffel is a resident of Troy, MI. Plaintiff purchased a 2013 Hyundai Sonata on or around 12/31/2013 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2013 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

645. Plaintiff Nicholas Lyon is a resident of Port Huron, MI. Plaintiff purchased

COMPLAINT

a 2014 Hyundai Santa Fe Sport on or around 10/04/2022 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2014 Hyundai Santa Fe Sport is a Vehicle subject to the Theft-Prone Design. Plaintiff Bradley McCarty is a resident of Redford Charter Township, MI. Plaintiff purchased a 2012 Kia Sedona on or around 04/21/2018 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2012 Kia Sedona is a Vehicle subject to the Theft-Prone Design.

646. Plaintiff Tiffany Mcclellan is a resident of Monroe, MI. Plaintiff purchased a 2014 Kia Forte on or around 05/23/2022 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2014 Kia Forte is a Vehicle subject to the Theft-Prone Design.

647. Plaintiff Antionette Satterwhite is a resident of Detroit, MI. Plaintiff purchased a 2019 Kia Forte on or around 03/23/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Kia Forte is a Vehicle subject to the Theft-Prone Design.

648. Plaintiff Antonios Spiliopoulos is a resident of Roseville, MI. Plaintiff purchased a 2016 Kia Soul on or around 06/01/2023 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Kia Soul is a Vehicle subject to the Theft-Prone Design.

649. Plaintiff Shawn Thompson is a resident of St. Clair Shores, MI. Plaintiff purchased a 2017 Kia Soul on or around 12/25/2023 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Kia Soul is a

COMPLAINT

Vehicle subject to the Theft-Prone Design.  On or about 12/02/2024, Plaintiff's Vehicle was stolen.

650.   Plaintiff Dannette Ward is a resident of Walker, MI.  Plaintiff purchased a 2017 Kia Sportage on or around 05/10/2021 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2017 Kia Sportage is a Vehicle subject to the Theft-Prone Design. On or about 05/19/2024, Plaintiff's Vehicle was stolen.

651.   Plaintiff Kimberly Wilson is a resident of Battle Creek, MI.  Plaintiff purchased a 2013 Kia Soul on or around 07/01/2020 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2013 Kia Soul is a Vehicle subject to the Theft-Prone Design.  Plaintiff purchased a 2015 Hyundai Elantra on or around 03/11/2020 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2015 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

### 22.    Minnesota Plaintiffs

652.   Plaintiff Jennifer Bjorklund is a resident of Weslaco, TX, and purchased the Vehicle in Minnesota.  Plaintiff purchased a 2015 Hyundai Santa Fe on or around 11/05/2018 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2015 Hyundai Santa Fe is a Vehicle subject to the Theft-Prone Design.

653.   Plaintiff Aaron Cady is a resident of Pine Island, MN.  Plaintiff purchased a 2011 Kia Sportage on or around 02/23/2023 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2011 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

COMPLAINT

654. Plaintiff Bobbie Carey is a resident of Lakeland, MN. Plaintiff purchased a 2013 Kia Soul on or around 11/02/2012 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2013 Kia Soul is a Vehicle subject to the Theft-Prone Design.

655. Plaintiff Samantha Cotten is a resident of Superior, WI, and purchased the Vehicle in Minnesota. Plaintiff purchased a 2012 Kia Sorento on or around 04/15/2023 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2012 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

656. Plaintiff Terri Dilworth is a resident of Saint Paul, MN. Plaintiff purchased a 2016 Kia Sportage on or around 10/17/2017 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

657. Plaintiff Anthony Engle is a resident of Minneapolis, MN. Plaintiff leased a 2022 Kia Sportage on or around 07/14/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2022 Kia Sportage is a Vehicle subject to the Theft-Prone Design. Plaintiff's Vehicle was damaged due to an attempted theft.

658. Plaintiff Karen Fusilli is a resident of Lake City, MN. Plaintiff purchased a 2019 Kia Soul on or around 06/24/2019 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Kia Soul is a Vehicle subject to the Theft-Prone Design.

659. Plaintiff Hunter Henley is a resident of Saint Paul, MN. Plaintiff purchased a 2017 Kia Soul on or around 12/10/2020 for personal use. Plaintiff's Vehicle has a

traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Kia Soul is a Vehicle subject to the Theft-Prone Design.

660. Plaintiff Kathleen Jackson is a resident of Oakdale, MN. Plaintiff purchased a 2014 Kia Soul on or around 01/25/2023 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2014 Kia Soul is a Vehicle subject to the Theft-Prone Design.

661. Plaintiff Brenna Kelly is a resident of Minneapolis, MN. Plaintiff purchased a 2011 Hyundai Tucson on or around 03/01/2017 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2011 Hyundai Tucson is a Vehicle subject to the Theft-Prone Design.

662. Plaintiff Sara Lightbody is a resident of St. Louis Park, MN. Plaintiff purchased a 2015 Kia Sportage on or around 11/13/2018 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2015 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

663. Plaintiff John Neset is a resident of Dilworth, MN. Plaintiff purchased a 2020 Hyundai Tucson on or around 08/21/2020 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2020 Hyundai Tucson is a Vehicle subject to the Theft-Prone Design.

664. Plaintiff Kimberleigh Rasmussen is a resident of Lake Elmo, MN. Plaintiff purchased a 2018 Kia Sorento on or around 03/23/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

COMPLAINT

665.   Plaintiff Trina Saice is a resident of Willmar, MN.  Plaintiff purchased a 2020 Kia Sportage on or around 04/23/2024 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2020 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

666.   Plaintiff Adison Stapleton is a resident of Waseca, MN.  Plaintiff purchased a 2019 Kia Optima on or around 03/09/2022 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2019 Kia Optima is a Vehicle subject to the Theft-Prone Design.

### 23.   Mississippi Plaintiffs

667.   Plaintiff Sherrie Angueira is a resident of Biloxi, MS.  Plaintiff purchased a 2015 Hyundai Tucson on or around 02/23/2022 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2015 Hyundai Tucson is a Vehicle subject to the Theft-Prone Design.

668.   Plaintiff Janet Blanton is a resident of Gloster, MS.  Plaintiff purchased a 2018 Kia Optima on or around 08/23/2018 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2018 Kia Optima is a Vehicle subject to the Theft-Prone Design.

669.   Plaintiff Elisha Harris is a resident of Tucson, AZ, and purchased the Vehicle in Mississippi.  Plaintiff leased a 2017 Kia Forte on or around 10/25/2022 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2017 Kia Forte is a Vehicle subject to the Theft-Prone Design.

670.   Plaintiff Nicole Harris is a resident of Baton Rouge, LA, and purchased the Vehicle in Mississippi.  Plaintiff purchased a 2019 Hyundai Elantra on or around

09/23/2023 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

671.   Plaintiff Fontreia Hilliard-Magee is a resident of Magee, MS. Plaintiff purchased a 2015 Kia Soul on or around 12/12/2019 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2015 Kia Soul is a Vehicle subject to the Theft-Prone Design.

672.   Plaintiff Karen Jamison is a resident of Jackson, MS. Plaintiff purchased a 2018 Hyundai Sonata on or around 05/17/2023 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

673.   Plaintiff Christian Johnson is a resident of Tylertown, MS. Plaintiff purchased a 2011 Hyundai Sonata on or around 11/24/2019 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2011 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

674.   Plaintiff Patrice Johnson is a resident of Courtland, MS. Plaintiff purchased a 2014 Hyundai Tucson on or around 03/08/2019 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2014 Hyundai Tucson is a Vehicle subject to the Theft-Prone Design.

675.   Plaintiff Robert Kimberlin is a resident of Bogue Chitto, MS. Plaintiff purchased a 2016 Kia Soul on or around 04/05/2016 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Kia Soul is a Vehicle subject to the Theft-Prone Design.

COMPLAINT

676.    Plaintiff Carmen Lewis is a resident of Jackson, MS.  Plaintiff purchased a 2019 Kia Forte on or around 07/27/2023 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2019 Kia Forte is a Vehicle subject to the Theft-Prone Design.

677.    Plaintiff Cyndi Middleton is a resident of Mize, MS.  Plaintiff purchased a 2019 Hyundai Sonata on or around 06/02/2019 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2019 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

678.    Plaintiff Betty Robinson is a resident of McComb, MS.  Plaintiff purchased a 2019 Kia Forte on or around 08/09/2019 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2019 Kia Forte is a Vehicle subject to the Theft-Prone Design.

679.    Plaintiff Linda Rorie is a resident of Ecru, MS.  Plaintiff purchased a 2015 Kia Optima on or around 12/31/2014 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2015 Kia Optima is a Vehicle subject to the Theft-Prone Design.

680.    Plaintiff Lashayla Sims is a resident of Gloster, MS.  Plaintiff purchased a 2019 Kia Soul on or around 10/22/2022 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2019 Kia Soul is a Vehicle subject to the Theft-Prone Design.

**24.    Missouri Plaintiffs**

681.    Plaintiff Scott Boergert is a resident of Springfield, MO.  Plaintiff purchased a 2019 Kia Soul on or around 10/23/2023 for personal use.  Plaintiff's Vehicle

has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Kia Soul is a Vehicle subject to the Theft-Prone Design.

682. Plaintiff Chanelle Charlton is a resident of Kansas City, MO. Plaintiff leased a 2017 Kia Sportage on or around 09/17/2022 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

683. Plaintiff Celeste Cloutier is a resident of Jefferson City, MO. Plaintiff purchased a 2013 Kia Sorento on or around 02/06/2023 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2013 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

684. Plaintiff William Cook is a resident of Fenton, MO. Plaintiff purchased a 2011 Hyundai Sonata on or around 07/06/2010 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2011 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

685. Plaintiff Scott Cross is a resident of New Berlin, IL, and purchased the Vehicle in Missouri. Plaintiff purchased a 2020 Kia Sportage on or around 05/06/2025 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2020 Kia Sportage is a Vehicle subject to the Theft-Prone Design. Plaintiff purchased a 2018 Kia Rio on or around 11/17/2020 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Kia Rio is a Vehicle subject to the Theft-Prone Design.

686. Plaintiff Raquel Engle is a resident of Defiance, MO. Plaintiff purchased

COMPLAINT

a 2019 Kia Sorento on or around 12/24/2018 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

687. Plaintiff Tanya Fields is a resident of Dupo, IL, and purchased the Vehicle in Missouri. Plaintiff purchased a 2020 Hyundai Venue on or around 03/18/2023 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2020 Hyundai Venue is a Vehicle subject to the Theft-Prone Design.

688. Plaintiff Sarah Futrell is a resident of Kansas City, MO. Plaintiff purchased a 2020 Kia Sorento on or around 09/10/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2020 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

689. Plaintiff Stephanie Gray is a resident of Hazelwood, MO. Plaintiff purchased a 2016 Kia Optima on or around 05/23/2019 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Kia Optima is a Vehicle subject to the Theft-Prone Design.

690. Plaintiff Nicole Hays is a resident of Centralia, IL, and purchased the Vehicle in Missouri. Plaintiff purchased a 2016 Kia Soul on or around 07/01/2019 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Kia Soul is a Vehicle subject to the Theft-Prone Design.

691. Plaintiff Debra Johnson is a resident of Pacific, MO. Plaintiff purchased a 2020 Kia Soul on or around 10/09/2019 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2020 Kia Soul is a Vehicle subject

COMPLAINT

to the Theft-Prone Design.

692. Plaintiff Citara Juarez is a resident of Grain Valley, MO. Plaintiff purchased a 2021 Kia Forte on or around 01/01/2023 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2021 Kia Forte is a Vehicle subject to the Theft-Prone Design.

693. Plaintiff Anthony Martin is a resident of Columbia, IL, and purchased the Vehicle in Missouri. Plaintiff purchased a 2016 Kia Sedona on or around 06/29/2017 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Kia Sedona is a Vehicle subject to the Theft-Prone Design.

694. Plaintiff Connie McMiller-Johnson is a resident of St. Louis, MO. Plaintiff purchased a 2019 Kia Sorento on or around 08/12/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

695. Plaintiff Susan Mello is a resident of Webster Groves, MO. Plaintiff purchased a 2015 Hyundai Accent on or around 07/20/2015 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2015 Hyundai Accent is a Vehicle subject to the Theft-Prone Design.

696. Plaintiff Amy Moutray is a resident of Clacton-on-Sea, Essex. Plaintiff purchased a 2016 Kia Optima on or around 07/19/2021 for personal use. Plaintiff purchased the Vehicle in MO while Plaintiff lived there. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Kia Optima is a Vehicle subject to the Theft-Prone Design. Plaintiff's Vehicle was damaged due to an attempted theft.

697. Plaintiff Michael Nigro is a resident of Troy, IL, and purchased the Vehicle

in Missouri.  Plaintiff purchased a 2020 Hyundai Elantra on or around 09/26/2020 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2020 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design. Plaintiff's Vehicle was damaged due to an attempted theft.

698.    Plaintiff William Peters is a resident of Doniphan, MO.  Plaintiff leased a 2012 Kia Soul on or around 06/09/2023 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2012 Kia Soul is a Vehicle subject to the Theft-Prone Design.

699.    Plaintiff Chasity Reese is a resident of Exeter, MO.  Plaintiff purchased a 2013 Kia Optima on or around 06/09/2020 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2013 Kia Optima is a Vehicle subject to the Theft-Prone Design.

700.    Plaintiff Paul Reynolds is a resident of Wentzville, MO.    Plaintiff purchased a 2017 Kia Sorento on or around 05/01/2018 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2017 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

701.    Plaintiff Jessica Senger is a resident of Duenweg, Missouri.  Plaintiff leased a 2016 Hyundai Sonata on or around 12/14/2022 for personal use.  Plaintiff purchased the Vehicle in MO while Plaintiff lived there.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2016 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

702.    Plaintiff Thomas Stow is a resident of Bentonville, AR, and purchased the Vehicle in Missouri.  Plaintiff purchased a 2012 Kia Soul on or around 08/06/2014 for

COMPLAINT

personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2012 Kia Soul is a Vehicle subject to the Theft-Prone Design.

703.  Plaintiff Debbie Stratton is a resident of Berger, MO.  Plaintiff purchased a 2018 Kia Soul on or around 04/15/2021 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2018 Kia Soul is a Vehicle subject to the Theft-Prone Design.

704.  Plaintiff Ronisha Thompson is a resident of Saint Ann, MO.  Plaintiff leased a 2013 Kia Optima on or around 02/26/2022 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2013 Kia Optima is a Vehicle subject to the Theft-Prone Design.

705.  Plaintiff Anthony Velasquez is a resident of Kansas City, MO.  Plaintiff purchased a 2013 Hyundai Sonata on or around 10/01/2013 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2013 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

706.  Plaintiff Kathleen Waeltermann is a resident of O'Fallon, MO.  Plaintiff purchased a 2015 Kia Optima on or around 07/10/2016 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2015 Kia Optima is a Vehicle subject to the Theft-Prone Design.

707.  Plaintiff Kathleen Williamson is a resident of St. Peters, MO.  Plaintiff purchased a 2016 Kia Sedona on or around 02/09/2017 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2016 Kia Sedona is a Vehicle subject to the Theft-Prone Design.

COMPLAINT

708. Plaintiff Enza Zito is a resident of Saint Ann, MO. Plaintiff purchased a 2013 Hyundai Elantra on or around 08/01/2019 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2013 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

### 25. Montana Plaintiffs

709. Plaintiff Phil McClure is a resident of Palm Coast, FL, and purchased the Vehicle in Montana. Plaintiff purchased a 2016 Kia Sedona on or around 01/26/2019 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Kia Sedona is a Vehicle subject to the Theft-Prone Design.

### 26. Nebraska Plaintiffs

710. Plaintiff Christina Doyle is a resident of Grand Island, NE. Plaintiff purchased a 2014 Kia Soul on or around 01/26/2022 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2014 Kia Soul is a Vehicle subject to the Theft-Prone Design.

711. Plaintiff Dean Willson Jr is a resident of Omaha, NE. Plaintiff purchased a 2013 Kia Soul on or around 02/10/2013 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2013 Kia Soul is a Vehicle subject to the Theft-Prone Design.

712. Plaintiff David Wishart is a resident of Bunnell, FL, and purchased the Vehicles in Nebraska. Plaintiff purchased a 2015 Kia Soul on or around 04/01/2016 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2015 Kia Soul is a Vehicle subject to the Theft-Prone Design. Plaintiff purchased a 2017 Hyundai Elantra on or around 11/01/2016 for personal use. Plaintiff's

Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2017 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

713.   Plaintiff Joan Wilson is a resident of Lincoln, NE.  Plaintiff purchased a 2015 Kia Soul in South Dakota on or around 10/25/2020 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2015 Kia Soul is a Vehicle subject to the Theft-Prone Design. Plaintiff purchased a 2014 Kia Optima in Nebraska on or around 11/05/2024 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2014 Kia Optima is a Vehicle subject to the Theft-Prone Design.

### 27.   Nevada Plaintiffs

714.   Plaintiff Devon Baxter is a resident of Las Vegas, NV.  Plaintiff purchased a 2015 Hyundai Sonata on or around 06/04/2018 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2015 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

715.   Plaintiff Lisa Calhoun is a resident of Las Vegas, NV.  Plaintiff purchased a 2018 Kia Sportage on or around 05/17/2018 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2018 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

716.   Plaintiff Julio Colon is a resident of Mound House, NV.  Plaintiff purchased a 2016 Kia Sorento on or around 06/06/2023 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2016 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

717. Plaintiff Dionne Counts is a resident of Las Vegas, NV. Plaintiff purchased a 2011 Hyundai Sonata on or around 06/23/2020 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2011 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design. On or about 06/23/2024, Plaintiff's Vehicle was stolen.

718. Plaintiff Christie-Ann Cyr is a resident of Las Vegas, NV. Plaintiff purchased a 2021 Hyundai Tucson on or around 12/28/2020 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2021 Hyundai Tucson is a Vehicle subject to the Theft-Prone Design.

719. Plaintiff Jason Dorrity is a resident of Las Vegas, NV. Plaintiff purchased a 2019 Kia Soul on or around 03/09/2019 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Kia Soul is a Vehicle subject to the Theft-Prone Design.

720. Plaintiff Harold Duffy is a resident of Reno, NV. Plaintiff purchased a 2016 Kia Rio on or around 05/02/2024 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Kia Rio is a Vehicle subject to the Theft-Prone Design.

721. Plaintiff Stanley Fenton is a resident of Punta Gorda, FL, and purchased the Vehicle in Nevada. Plaintiff purchased a 2016 Hyundai Santa Fe Sport on or around 05/23/2019 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Hyundai Santa Fe Sport is a Vehicle subject to the Theft-Prone Design.

722. Plaintiff Kristofer Geffen is a resident of Portland, OR, and purchased the

Vehicle in Nevada. Plaintiff purchased a 2014 Kia Soul on or around 01/01/2019 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2014 Kia Soul is a Vehicle subject to the Theft-Prone Design.

723. Plaintiff Sonya Goetz is a resident of Las Vegas, NV. Plaintiff purchased a 2017 Hyundai Accent on or around 03/15/2017 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Hyundai Accent is a Vehicle subject to the Theft-Prone Design.

724. Plaintiff Gabriel Guerrero is a resident of Las Vegas, NV. Plaintiff purchased a 2020 Kia Optima on or around 04/26/2023 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2020 Kia Optima is a Vehicle subject to the Theft-Prone Design. On or about 06/02/2024, Plaintiff's Vehicle was stolen.

725. Plaintiff Marty Gunter is a resident of Las Vegas, NV. Plaintiff purchased a 2021 Kia Seltos on or around 12/20/2024 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2021 Kia Seltos is a Vehicle subject to the Theft-Prone Design. On or about 03/14/2025, Plaintiff's Vehicle was stolen.

726. Plaintiff Ella Hendrix is a resident of Sparks, NV. Plaintiff purchased a 2017 Hyundai Sonata on or around 08/23/2019 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

727. Plaintiff Sandra Leach is a resident of North Las Vegas, NV. Plaintiff purchased a 2012 Hyundai Santa Fe on or around 01/09/2012 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff

COMPLAINT

purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2012 Hyundai Santa Fe is a Vehicle subject to the Theft-Prone Design.

728.  Plaintiff Matthew Levinson is a resident of Las Vegas, NV.  Plaintiff purchased a 2015 Kia Sedona on or around 10/27/2020 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2015 Kia Sedona is a Vehicle subject to the Theft-Prone Design.

729.  Plaintiff Elizabeth Michels is a resident of Tyler, TX, and purchased the Vehicle in Nevada.  Plaintiff purchased a 2019 Kia Sorento on or around 01/05/2019 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2019 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

730.  Plaintiff Kelsey Moilanen is a resident of Las Vegas, NV.  Plaintiff purchased a 2015 Hyundai Sonata on or around 10/23/2016 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2015 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

731.  Plaintiff Kevin O'Dell is a resident of Las Vegas, NV.  Plaintiff purchased a 2013 Hyundai Elantra on or around 04/18/2017 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2013 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

732.  Plaintiff Sydney Philpott is a resident of Las Vegas, NV.  Plaintiff purchased a 2019 Hyundai Elantra on or around 06/15/2023 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2019 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

733.  Plaintiff Billie Porter is a resident of Lafayette, IN, and purchased the

COMPLAINT

Vehicle in Nevada.  Plaintiff purchased a 2016 Kia Soul on or around 04/23/2021 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2016 Kia Soul is a Vehicle subject to the Theft-Prone Design.

734.  Plaintiff Lillian Proctor is a resident of North Las Vegas, NV.  Plaintiff purchased a 2016 Kia Soul on or around 02/03/2022 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2016 Kia Soul is a Vehicle subject to the Theft-Prone Design.

735.  Plaintiff Charles Sangster is a resident of Las Vegas, NV.  Plaintiff purchased a 2016 Hyundai Elantra on or around 02/23/2022 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2016 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

736.  Plaintiff Knisha Smith is a resident of Mobile, AL, and purchased the Vehicle in Nevada.  Plaintiff purchased a 2019 Kia Soul on or around 06/28/2020 for personal and business use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2019 Kia Soul is a Vehicle subject to the Theft-Prone Design.

737.  Plaintiff Kristina Sosnowski is a resident of Surprise, AZ, and purchased the Vehicle in Nevada.  Plaintiff purchased a 2016 Hyundai Tucson on or around 05/01/2021 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2016 Hyundai Tucson is a Vehicle subject to the Theft-Prone Design.

738.  Plaintiff Myeasha Strain is a resident of Las Vegas, NV.  Plaintiff purchased a 2020 Kia Optima on or around 05/01/2020 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2020 Kia Optima is a

COMPLAINT

Vehicle subject to the Theft-Prone Design.

739. Plaintiff Grace Thompson is a resident of Las Vegas, NV. Plaintiff purchased a 2015 Kia Soul on or around 01/10/2023 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2015 Kia Soul is a Vehicle subject to the Theft-Prone Design.

740. Plaintiff Dennis Vollmer is a resident of Reno, NV. Plaintiff purchased a 2013 Hyundai Elantra on or around 02/14/2015 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2013 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

### 28. New Hampshire Plaintiffs

741. Plaintiff John Arico is a resident of Manchester, NH. Plaintiff purchased a 2015 Hyundai Sonata on or around 12/10/2020 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2015 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

742. Plaintiff Angela Brown is a resident of North Swanzey, NH. Plaintiff purchased a 2017 Kia Sorento on or around 08/26/2019 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

743. Plaintiff Alison Bushey is a resident of Fort Collins, CO, and purchased the Vehicle in New Hampshire. Plaintiff purchased a 2014 Hyundai Elantra on or around 08/01/2014 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2014 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

COMPLAINT

744. Plaintiff Peggy Jellie is a resident of Charlestown, NH. Plaintiff purchased a 2013 Hyundai Elantra on or around 02/11/2017 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2013 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

745. Plaintiff Michelle Keown is a resident of Concord, NH. Plaintiff leased a 2019 Kia Sportage on or around 06/23/2025 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

746. Plaintiff Joseph Lachance is a resident of Manchester, NH. Plaintiff purchased a 2018 Kia Sportage on or around 09/23/2017 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

### 29. New Jersey Plaintiffs

747. Plaintiff Shannan Arrington is a resident of Greer, SC, and purchased the Vehicle in New Jersey. Plaintiff purchased a 2013 Hyundai Sonata on or around 08/23/2017 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2013 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

748. Plaintiff Chevohn Conners is a resident of East Orange, NJ. Plaintiff purchased a 2015 Hyundai Elantra on or around 03/22/2016 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2015 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

749. Plaintiff Allison Cox is a resident of Hummelstown, PA, and purchased the Vehicle in New Jersey. Plaintiff purchased a 2020 Kia Sorento on or around 07/23/2022

for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2020 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

750. Plaintiff Lennox Devlugt is a resident of Trenton, NJ. Plaintiff purchased a 2013 Kia Optima on or around 05/05/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2013 Kia Optima is a Vehicle subject to the Theft-Prone Design.

751. Plaintiff Brenda Earl is a resident of Lindenwold, NJ. Plaintiff purchased a 2015 Hyundai Tucson on or around 02/15/2018 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2015 Hyundai Tucson is a Vehicle subject to the Theft-Prone Design.

752. Plaintiff Rokiya Fields is a resident of Lawrenceville, GA, and purchased the Vehicle in New Jersey. Plaintiff purchased a 2018 Kia Forte on or around 03/09/2017 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Kia Forte is a Vehicle subject to the Theft-Prone Design.

753. Plaintiff Shakira Granger is a resident of Greenville, NC, and purchased the Vehicle in New Jersey. Plaintiff purchased a 2017 Hyundai Accent on or around 01/01/2018 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Hyundai Accent is a Vehicle subject to the Theft-Prone Design.

754. Plaintiff Pamela Hackett is a resident of Vineland, NJ. Plaintiff leased a 2020 Kia Forte on or around 05/22/2020 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2020 Kia Forte is a Vehicle subject to the Theft-Prone Design.

COMPLAINT

755.    Plaintiff Caroline Hurley is a resident of Mount Holly, NJ.  Plaintiff leased a 2019 Kia Optima on or around 08/28/2019 for personal and business use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2019 Kia Optima is a Vehicle subject to the Theft-Prone Design.  Plaintiff purchased a 2014 Kia Forte on or around 06/01/2021 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2014 Kia Forte is a Vehicle subject to the Theft-Prone Design.

756.    Plaintiff Carolyn Johnson is a resident of Vineland, NJ.  Plaintiff purchased a 2013 Hyundai Tucson on or around 08/28/2017 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2013 Hyundai Tucson is a Vehicle subject to the Theft-Prone Design.

757.    Plaintiff Amanda Kennedy is a resident of Manchester, CT, and purchased the Vehicle in New Jersey.  Plaintiff purchased a 2021 Kia Soul on or around 01/01/2022 for personal and business use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2021 Kia Soul is a Vehicle subject to the Theft-Prone Design.

758.    Plaintiff Katie Korkolios is a resident of Spring Lake, NJ.  Plaintiff purchased a 2018 Hyundai Tucson on or around 11/10/2021 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2018 Hyundai Tucson is a Vehicle subject to the Theft-Prone Design.

759.    Plaintiff Gregory Lavook is a resident of Glassboro, NJ.  Plaintiff purchased a 2013 Hyundai Elantra on or around 06/05/2023 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2013 Hyundai Elantra

COMPLAINT

is a Vehicle subject to the Theft-Prone Design. Plaintiff's Vehicle was damaged due to an attempted theft.

760. Plaintiff Scott Madlinger is a resident of Toms River, NJ. Plaintiff purchased a 2016 Hyundai Elantra on or around 12/26/2015 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

761. Plaintiff Vinnie Mccoy is a resident of Paterson, NJ. Plaintiff purchased a 2013 Hyundai Elantra on or around 06/01/2017 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2013 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

762. Plaintiff Kathleen Messino is a resident of Southampton Township, NJ. Plaintiff purchased a 2014 Kia Sorento on or around 06/13/2013 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2014 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

763. Plaintiff Leonia Omojola is a resident of Hillside, NJ. Plaintiff purchased a 2016 Hyundai Santa Fe Sport on or around 01/01/2020 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Hyundai Santa Fe Sport is a Vehicle subject to the Theft-Prone Design. Plaintiff's Vehicle was damaged due to an attempted theft.

764. Plaintiff Kenny Pe-Curto is a resident of EAST WINDSOR, NJ. Plaintiff purchased a 2020 Hyundai Elantra on or around 09/04/2023 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2020 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

COMPLAINT

765.   Plaintiff Bonnie Sander is a resident of Keansburg, NJ.  Plaintiff purchased a 2012 Kia Soul on or around 06/24/2022 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2012 Kia Soul is a Vehicle subject to the Theft-Prone Design.

766.   Plaintiff Eva Shum is a resident of East Windsor, NJ.  Plaintiff purchased a 2020 Hyundai Elantra on or around 09/04/2023 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2020 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.  Plaintiff purchased a 2015 Hyundai Elantra GT on or around 02/21/2019 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2015 Hyundai Elantra GT is a Vehicle subject to the Theft-Prone Design.

767.   Plaintiff Paul Spalding Jr is a resident of North Brunswick Township, NJ. Plaintiff leased a 2018 Kia Forte on or around 04/21/2018 for personal and business use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2018 Kia Forte is a Vehicle subject to the Theft-Prone Design.

768.   Plaintiff Barbara Sullivan is a resident of Suffern, NY, and purchased the Vehicle in New Jersey.  Plaintiff purchased a 2012 Hyundai Elantra on or around 01/15/2014 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2012 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

769.   Plaintiff Melissa Wise is a resident of Sicklerville, NJ.  Plaintiff purchased a 2012 Kia Soul on or around 04/23/2022 for personal and business use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2012 Kia Soul is a

COMPLAINT

Vehicle subject to the Theft-Prone Design.

770. Plaintiff Elizabeth York is a resident of Ocala, FL, and purchased the Vehicle in New Jersey. Plaintiff purchased a 2020 Kia Sorento on or around 06/23/2022 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2020 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

### 30. New Mexico Plaintiffs

771. Plaintiff Teresa Blyze is a resident of Roswell, NM. Plaintiff purchased a 2013 Hyundai Elantra on or around 05/01/2014 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2013 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

772. Plaintiff Aulena Cain is a resident of Portales, NM. Plaintiff purchased a 2018 Kia Soul on or around 07/01/2022 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Kia Soul is a Vehicle subject to the Theft-Prone Design.

773. Plaintiff Michele Crockett is a resident of Portales, NM. Plaintiff purchased a 2018 Hyundai Elantra on or around 06/26/2025 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

774. Plaintiff Jackie Evans is a resident of Colorado Springs, CO, and purchased the Vehicle in New Mexico. Plaintiff purchased a 2021 Kia Forte on or around 08/23/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2021 Kia Forte is a Vehicle subject to the Theft-Prone Design.

775. Plaintiff Dolores Moreno is a resident of Albuquerque, NM. Plaintiff

purchased a 2015 Hyundai accent on or around 04/22/2022 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2015 Hyundai accent is a Vehicle subject to the Theft-Prone Design.

776. Plaintiff Trisha Reid is a resident of Alamogordo, NM. Plaintiff purchased a 2017 Kia Rio on or around 10/01/2017 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Kia Rio is a Vehicle subject to the Theft-Prone Design.

777. Plaintiff Linda Salazar is a resident of Las Vegas, NM. Plaintiff purchased a 2019 Hyundai Veloster on or around 08/23/2019 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Hyundai Veloster is a Vehicle subject to the Theft-Prone Design.

### 31. New York Plaintiffs

778. Plaintiff Christopher Ahn is a resident of Brewster, NY. Plaintiff purchased a 2015 Hyundai Sonata on or around 12/21/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2015 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

779. Plaintiff Linda Aiello is a resident of Rocky Point, NY. Plaintiff purchased a 2014 Hyundai Sonata on or around 05/09/2020 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2014 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

780. Plaintiff Mindy Alexander is a resident of Johnson City, NY. Plaintiff purchased a 2019 Kia Sorento on or around 10/11/2019 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff

purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2019 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

781.    Plaintiff Eric Anderson is a resident of Jamestown, NY.  Plaintiff purchased a 2015 Kia Sedona on or around 08/04/2015 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2015 Kia Sedona is a Vehicle subject to the Theft-Prone Design.

782.    Plaintiff Dom Belfiglio is a resident of Little Falls, NJ, and purchased the Vehicle in New York.  Plaintiff purchased a 2022 Hyundai Tucson on or around 06/23/2023 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2022 Hyundai Tucson is a Vehicle subject to the Theft-Prone Design.

783.    Plaintiff Kevin Bennett is a resident of Buffalo, NY.  Plaintiff purchased a 2019 Hyundai Elantra on or around 07/18/2020 for personal and business use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2019 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

784.    Plaintiff Jennifer Chandler is a resident of Hastings, NY.  Plaintiff leased a 2019 Kia Sportage on or around 03/01/2023 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2019 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

785.    Plaintiff Kaitlin Dean is a resident of Bloomingburg, NY.  Plaintiff purchased a 2013 Kia Sorento on or around 11/26/2018 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2013 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

786.    Plaintiff Ian Delvalle is a resident of Gloversville, NY.  Plaintiff leased a

COMPLAINT

2018 Kia Optima on or around 04/24/2023 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Kia Optima is a Vehicle subject to the Theft-Prone Design.

787. Plaintiff Brandi Devenport is a resident of Rochester, NY. Plaintiff purchased a 2018 Hyundai Elantra on or around 12/26/2018 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

788. Plaintiff Richard DiSanto is a resident of Brewerton, NY. Plaintiff purchased a 2012 Hyundai Sonata on or around 04/10/2015 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2012 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

789. Plaintiff Scott Doherty is a resident of Buffalo, NY. Plaintiff purchased a 2014 Hyundai Elantra GT on or around 12/13/2019 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2014 Hyundai Elantra GT is a Vehicle subject to the Theft-Prone Design.

790. Plaintiff David Gould is a resident of Ballston Spa, NY. Plaintiff purchased a 2016 Hyundai Veloster on or around 11/23/2016 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Hyundai Veloster is a Vehicle subject to the Theft-Prone Design.

791. Plaintiff Michael Haas is a resident of Whitesboro, NY. Plaintiff purchased a 2018 Kia Sportage on or around 05/28/2018 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Kia Sportage is a Vehicle

COMPLAINT

subject to the Theft-Prone Design. Plaintiff purchased a 2021 Kia Sportage on or around 11/25/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2021 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

792. Plaintiff Teresa Jeffrey is a resident of Staten Island, NY. Plaintiff purchased a 2016 Kia Sorento on or around 01/31/2020 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

793. Plaintiff Elaine Johnson is a resident of West Hempstead, NY. Plaintiff purchased a 2013 Hyundai Sonata on or around 07/09/2015 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2013 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

794. Plaintiff Victor Katz is a resident of Suffern, NY. Plaintiff leased a 2020 Kia Sportage on or around 03/12/2020 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2020 Kia Sportage is a Vehicle subject to the Theft-Prone Design. Plaintiff leased a 2018 Hyundai Elantra on or around 11/20/2017 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

795. Plaintiff Steven Kingsley is a resident of Hannibal, NY. Plaintiff purchased a 2019 Kia Sorento on or around 02/25/2019 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

COMPLAINT

796. Plaintiff Daniel McLean is a resident of Stillwater, MN, and purchased the Vehicle in New York. Plaintiff leased a 2019 Hyundai Tucson on or around 10/10/2019 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Hyundai Tucson is a Vehicle subject to the Theft-Prone Design.

797. Plaintiff Carol McNelly is a resident of Rush, NY. Plaintiff purchased a 2013 Hyundai Santa Fe on or around 07/27/2015 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2013 Hyundai Santa Fe is a Vehicle subject to the Theft-Prone Design.

798. Plaintiff Patrick Moccia is a resident of Staten Island, NY. Plaintiff leased a 2020 Kia Sportage on or around 06/24/2020 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2020 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

799. Plaintiff Jessica Mosley is a resident of Salina, NY. Plaintiff leased a 2015 Kia Soul on or around 02/28/2023 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2015 Kia Soul is a Vehicle subject to the Theft-Prone Design.

800. Plaintiff Michael Nelson is a resident of Hauppauge, NY. Plaintiff leased a 2021 Hyundai Elantra on or around 03/01/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2021 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

801. Plaintiff Jakub Przybylowicz is a resident of Kings Park, NY. Plaintiff leased a 2019 Kia Sorento on or around 11/27/2018 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased

COMPLAINT

insurance for the Vehicle.  On information and belief, Plaintiff's 2019 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

802.    Plaintiff Ronell Purificato is a resident of Bellport, NY.  Plaintiff purchased a 2018 Hyundai Elantra on or around 06/20/2022 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2018 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

803.    Plaintiff Peter Radioli is a resident of Brooklyn, NY.  Plaintiff purchased a 2012 Kia Soul on or around 05/23/2020 for personal and business use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2012 Kia Soul is a Vehicle subject to the Theft-Prone Design.

804.    Plaintiff Danielle Teeter is a resident of Lockport, NY.  Plaintiff leased a 2018 Kia Optima on or around 02/24/2024 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2018 Kia Optima is a Vehicle subject to the Theft-Prone Design.

805.    Plaintiff Jolanta Wolf is a resident of Reading, PA, and purchased the Vehicle in New York.  Plaintiff purchased a 2020 Kia Sportage on or around 07/23/2020 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2020 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

### 32.    North Carolina Plaintiffs

806.    Plaintiff Nathaniel Anderson is a resident of Greensboro, NC.  Plaintiff purchased a 2012 Kia Optima on or around 06/12/2012 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2012 Kia Optima is a Vehicle subject to the Theft-Prone Design.

807.   Plaintiff Kimberly Arpin is a resident of Fayetteville, NC.  Plaintiff purchased a 2011 Kia Soul on or around 10/01/2016 for personal and business use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2011 Kia Soul is a Vehicle subject to the Theft-Prone Design.

808.   Plaintiff Tonya Atkins is a resident of Jonesville, NC.  Plaintiff purchased a 2015 Hyundai Santa Fe on or around 11/15/2017 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2015 Hyundai Santa Fe is a Vehicle subject to the Theft-Prone Design.

809.   Plaintiff Kimberely Austin is a resident of Vale, NC.  Plaintiff purchased a 2013 Hyundai Elantra on or around 06/23/2025 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2013 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

810.   Plaintiff Brittany Berry is a resident of Savannah, GA, and purchased the Vehicle in North Carolina.  Plaintiff purchased a 2021 Kia K5 on or around 12/25/2020 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2021 Kia K5 is a Vehicle subject to the Theft-Prone Design.

811.   Plaintiff Candace Bethea is a resident of Raleigh, NC.  Plaintiff purchased a 2011 Hyundai Elantra on or around 06/01/2017 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2011 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

812.   Plaintiff Terry Bolick is a resident of Township of Taylorsville, NC.  Plaintiff purchased a 2019 Kia Sorento on or around 06/07/2019 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff

purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

813. Plaintiff Richard Carter is a resident of Concord, NC. Plaintiff purchased a 2018 Kia Soul on or around 01/14/2018 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Kia Soul is a Vehicle subject to the Theft-Prone Design.

814. Plaintiff Aldrich Cherry is a resident of Charlotte, NC. Plaintiff purchased a 2018 Kia Sorento on or around 06/01/2018 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

815. Plaintiff Gloria Clark is a resident of Belmont, NC. Plaintiff purchased a 2020 Kia Soul on or around 12/15/2020 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2020 Kia Soul is a Vehicle subject to the Theft-Prone Design.

816. Plaintiff Destinee Cohen is a resident of Raleigh, NC. Plaintiff purchased a 2016 Hyundai Sonata on or around 02/23/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

817. Plaintiff Penny Coker is a resident of Siler City, NC. Plaintiff purchased a 2013 Hyundai Veloster on or around 05/12/2018 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2013 Hyundai Veloster is a Vehicle subject to the Theft-Prone Design.

818. Plaintiff Robert David is a resident of Bronx, NY, and purchased the

Vehicle in North Carolina. Plaintiff purchased a 2017 Hyundai Sonata on or around 04/23/2020 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

819. Plaintiff Christina Dupree is a resident of Benson, NC. Plaintiff purchased a 2018 Kia Soul on or around 09/10/2018 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Kia Soul is a Vehicle subject to the Theft-Prone Design.

820. Plaintiff Felicia Ellis is a resident of Salisbury, NC. Plaintiff purchased a 2017 Hyundai Tucson on or around 03/20/2024 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Hyundai Tucson is a Vehicle subject to the Theft-Prone Design.

821. Plaintiff Chasity Gladney is a resident of Charlotte, NC. Plaintiff leased a 2020 Kia Optima on or around 03/24/2023 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2020 Kia Optima is a Vehicle subject to the Theft-Prone Design.

822. Plaintiff Amelia Graham-Ulastirici is a resident of Clio, SC, and purchased the Vehicles in North Carolina. Plaintiff purchased a 2013 Kia Optima on or around 07/23/2018 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2013 Kia Optima is a Vehicle subject to the Theft-Prone Design. Plaintiff purchased a 2019 Kia Optima on or around 03/23/2023 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Kia Optima is a Vehicle subject to the Theft-Prone Design.

COMPLAINT

823. Plaintiff Lucinda Gray is a resident of Charlotte, NC. Plaintiff purchased a 2017 Kia Sportage on or around 09/19/2020 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

824. Plaintiff Jennifer Green is a resident of Statesville, NC. Plaintiff purchased a 2018 Hyundai Tucson on or around 06/23/2020 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Hyundai Tucson is a Vehicle subject to the Theft-Prone Design.

825. Plaintiff Lashekia Grimes is a resident of Greensboro, NC. Plaintiff purchased a 2014 Kia Forte on or around 04/08/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2014 Kia Forte is a Vehicle subject to the Theft-Prone Design.

826. Plaintiff Laura Guyer is a resident of Raleigh, NC. Plaintiff leased a 2019 Kia Soul on or around 04/24/2019 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Kia Soul is a Vehicle subject to the Theft-Prone Design.

827. Plaintiff Nakeya Hairston is a resident of Greensboro, NC. Plaintiff purchased a 2011 Kia Sorento on or around 04/05/2019 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2011 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

828. Plaintiff Heidi Hatfield is a resident of Franklinton, NC. Plaintiff purchased a 2018 Kia Forte on or around 05/23/2018 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased

insurance for the Vehicle. On information and belief, Plaintiff's 2018 Kia Forte is a Vehicle subject to the Theft-Prone Design.

829. Plaintiff Christina Henson is a resident of Little River, SC, and purchased the Vehicle in North Carolina. Plaintiff purchased a 2015 Kia Optima on or around 09/25/2015 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2015 Kia Optima is a Vehicle subject to the Theft-Prone Design.

830. Plaintiff Sarah Jennings is a resident of Leland, NC. Plaintiff purchased a 2021 Kia Forte on or around 01/12/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2021 Kia Forte is a Vehicle subject to the Theft-Prone Design.

831. Plaintiff Daphne Johnson is a resident of Bryans Road, MD, and purchased the Vehicle in North Carolina. Plaintiff purchased a 2016 Kia Sorento on or around 05/20/2016 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

832. Plaintiff Rhonda Leggett-Melton is a resident of Washington, NC. Plaintiff purchased a 2020 Kia Soul on or around 02/18/2022 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2020 Kia Soul is a Vehicle subject to the Theft-Prone Design.

833. Plaintiff Teresa McDaniel is a resident of Cowpens, SC, and purchased the Vehicle in North Carolina. Plaintiff purchased a 2011 Kia Soul on or around 06/23/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2011 Kia Soul is a Vehicle subject to the Theft-Prone Design.

834. Plaintiff Candace McDonald is a resident of Montgomery, AL, and

COMPLAINT

purchased the Vehicle in North Carolina. Plaintiff purchased a 2015 Hyundai Sonata on or around 07/23/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2015 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

835. Plaintiff Margaret McLauchlin is a resident of Hayesville, NC. Plaintiff purchased a 2016 Kia Forte on or around 03/08/2019 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Kia Forte is a Vehicle subject to the Theft-Prone Design.

836. Plaintiff Christina Moody is a resident of Morganton, NC. Plaintiff purchased a 2016 Kia Sportage on or around 05/12/2023 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

837. Plaintiff Jeannie Powell is a resident of Ruffin, NC. Plaintiff purchased a 2018 Kia Soul on or around 11/11/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Kia Soul is a Vehicle subject to the Theft-Prone Design.

838. Plaintiff Lee Robinson is a resident of Houston, TX, and purchased the Vehicles in North Carolina. Plaintiff purchased a 2012 Kia Sportage on or around 06/09/2016 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2012 Kia Sportage is a Vehicle subject to the Theft-Prone Design. Plaintiff purchased a 2014 Kia Sportage on or around 06/14/2017 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2014 Kia

COMPLAINT

Sportage is a Vehicle subject to the Theft-Prone Design.

839. Plaintiff Kenneth Scott is a resident of Danville, VA, and purchased the Vehicle in North Carolina. Plaintiff purchased a 2016 Kia Optima on or around 01/13/2023 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Kia Optima is a Vehicle subject to the Theft-Prone Design.

840. Plaintiff Cray Sellars is a resident of Burlington, NC. Plaintiff purchased a 2016 Hyundai Sonata on or around 07/05/2019 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

841. Plaintiff Tinisha St. Brice is a resident of High Point, NC. Plaintiff purchased a 2021 Kia Rio on or around 05/01/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2021 Kia Rio is a Vehicle subject to the Theft-Prone Design.

842. Plaintiff Emery Thornwell is a resident of Charlotte, NC. Plaintiff purchased a 2017 Kia Rio on or around 08/23/2017 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Kia Rio is a Vehicle subject to the Theft-Prone Design.

843. Plaintiff Alexis Walton is a resident of Charlotte, NC. Plaintiff purchased a 2020 Kia Forte on or around 02/23/2021 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2020 Kia Forte is a Vehicle subject to the Theft-Prone Design. On or about 003/14/2025, Plaintiff's Vehicle was stolen.

844. Plaintiff Denise Wood is a resident of Hampstead, NC. Plaintiff purchased

COMPLAINT

a 2020 Kia Soul on or around 10/04/2023 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2020 Kia Soul is a Vehicle subject to the Theft-Prone Design.

### 33. Ohio Plaintiffs

845. Plaintiff Saji Abraham is a resident of Galena, OH. Plaintiff purchased a 2012 Kia Soul on or around 07/09/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2012 Kia Soul is a Vehicle subject to the Theft-Prone Design.

846. Plaintiff David Brown is a resident of Cottageville, WV, and purchased the Vehicle in Ohio. Plaintiff purchased a 2019 Hyundai Elantra on or around 04/23/2023 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

847. Plaintiff Kimberly Kitts Carpenter is a resident of Elsmere, KY, and purchased the Vehicle in Ohio. Plaintiff purchased a 2017 Hyundai Sonata on or around 06/10/2022 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

848. Plaintiff Laura Priest is a resident of Center Line, MI, and purchased the Vehicle in Ohio. Plaintiff purchased a 2011 Hyundai Santa Fe on or around 06/23/2016 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2011 Hyundai Santa Fe is a Vehicle subject to the Theft-Prone Design.

849. Plaintiff Nancy Smith is a resident of Louisville, OH. Plaintiff purchased a 2017 Kia Forte on or around 06/10/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for

the Vehicle.  On information and belief, Plaintiff's 2017 Kia Forte is a Vehicle subject to the Theft-Prone Design.

850.   Plaintiff Shannon Staul is a resident of New Castle, PA, and purchased the Vehicle in Ohio.  Plaintiff purchased a 2018 Kia Soul on or around 03/12/2019 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2018 Kia Soul is a Vehicle subject to the Theft-Prone Design.

851.   Plaintiff Jessica Vesco is a resident of Arlington Heights, IL, and purchased the Vehicle in Ohio.  Plaintiff purchased a 2018 Hyundai Elantra GT on or around 05/01/2018 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2018 Hyundai Elantra GT is a Vehicle subject to the Theft-Prone Design.

852.   Plaintiff Nathan Weaver is a resident of Lehigh Acres, FL, and purchased his Vehicles in Ohio.  Plaintiff purchased a 2012 Kia Soul on or around 04/20/2013 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2012 Kia Soul is a Vehicle subject to the Theft-Prone Design.  Plaintiff purchased a 2020 Kia Rio on or around 03/05/2020 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2020 Kia Rio is a Vehicle subject to the Theft-Prone Design.

853.   Plaintiff James Wiedeman is a resident of Cincinnati, OH.  Plaintiff leased a 2016 Kia Forte on or around 10/26/2023 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2016 Kia Forte is a Vehicle subject to the Theft-Prone Design.

**34.    Oklahoma Plaintiffs**

COMPLAINT

854. Plaintiff Jeff Ashcraft is a resident of Newport, KY, and purchased the vehicle in Oklahoma. Plaintiff purchased a 2014 Hyundai Elantra GT on or around 06/14/2015 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2014 Hyundai Elantra GT is a Vehicle subject to the Theft-Prone Design.

855. Plaintiff Vicki Brown is a resident of Tulsa, OK. Plaintiff purchased a 2014 Kia Rio on or around 07/10/2015 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2014 Kia Rio is a Vehicle subject to the Theft-Prone Design.

856. Plaintiff Jessica Ellison is a resident of Jenks, OK. Plaintiff purchased a 2014 Kia Sorento on or around 07/18/2023 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2014 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

857. Plaintiff Michelle Hicks is a resident of Tulsa, OK. Plaintiff purchased a 2013 Hyundai Elantra on or around 05/20/2023 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2013 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

858. Plaintiff Daniel McCabe is a resident of Edmond, OK. Plaintiff purchased a 2017 Hyundai Santa Fe on or around 10/26/2017 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Hyundai Santa Fe is a Vehicle subject to the Theft-Prone Design.

859. Plaintiff Iris Sherman is a resident of Guthrie, OK. Plaintiff purchased a 2018 Kia Soul on or around 03/31/2018 for personal use. Plaintiff's Vehicle has a

COMPLAINT

traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2018 Kia Soul is a Vehicle subject to the Theft-Prone Design.

860.   Plaintiff Kristen Vickers is a resident of Gainesville, TX, and purchased the Vehicle in Oklahoma.  Plaintiff purchased a 2015 Hyundai Accent on or around 06/26/2023 for personal and business use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2015 Hyundai Accent is a Vehicle subject to the Theft-Prone Design.

861.   Plaintiff Ashley West is a resident of Hominy, OK.  Plaintiff purchased a 2017 Kia Sportage on or around 06/24/2021 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2017 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

### 35.    Oregon Plaintiffs

862.  Plaintiff Joseph Anderson is a resident of Portland, OR.  Plaintiff purchased a 2014 Hyundai Elantra on or around 06/06/2015 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2014 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

863.   Plaintiff Kasey Breuier is a resident of Beaverton, OR.  Plaintiff purchased a 2014 Hyundai Elantra GT on or around 03/03/2021 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2014 Hyundai Elantra GT is a Vehicle subject to the Theft-Prone Design.

864.   Plaintiff Tami Carswell is a resident of Tigard, OR.  Plaintiff purchased a 2012 Kia Soul on or around 06/26/2018 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for

COMPLAINT

the Vehicle.  On information and belief, Plaintiff's 2012 Kia Soul is a Vehicle subject to the Theft-Prone Design.

865.   Plaintiff Tina Dillard is a resident of Salem, OR.  Plaintiff purchased a 2014 Kia Forte on or around 01/02/2019 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2014 Kia Forte is a Vehicle subject to the Theft-Prone Design.

866.   Plaintiff Jorge Garcia is a resident of Spokane, WA, and purchased the Vehicle in Oregon.  Plaintiff purchased a 2019 Kia Soul on or around 08/18/2020 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2019 Kia Soul is a Vehicle subject to the Theft-Prone Design.

867.   Plaintiff Nerissa Green is a resident of Ackley, IA, and purchased the Vehicle in Oregon.  Plaintiff leased a 2015 Kia Soul on or around 12/20/2023 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2015 Kia Soul is a Vehicle subject to the Theft-Prone Design.

868.   Plaintiff Keith Johnson is a resident of Cathlamet, WA, and purchased the Vehicle in Oregon.  Plaintiff purchased a 2016 Kia Optima on or around 05/05/2017 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2016 Kia Optima is a Vehicle subject to the Theft-Prone Design.

869.   Plaintiff Jessica Kelly is a resident of Little Elm, TX, and purchased the Vehicle in Oregon.  Plaintiff purchased a 2020 Hyundai Tucson on or around 04/02/2020 for personal and business use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2020 Hyundai Tucson is a Vehicle subject to the Theft-Prone Design.

COMPLAINT

870.    Plaintiff Katherine Lee is a resident of Portland, OR.  Plaintiff purchased a 2012 Kia Rio on or around 04/06/2022 for personal and business use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2012 Kia Rio is a Vehicle subject to the Theft-Prone Design.

871.    Plaintiff Nikki Maxwell is a resident of Gresham, OR.  Plaintiff purchased a 2017 Kia Forte on or around 02/06/2017 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2017 Kia Forte is a Vehicle subject to the Theft-Prone Design.

872.    Plaintiff Jessyca Mitchell is a resident of Arlington, TX, and purchased the Vehicle in Oregon.  Plaintiff purchased a 2016 Hyundai Sonata on or around 12/22/2023 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2016 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

873.    Plaintiff Liz Nisley is a resident of Keizer, OR.  Plaintiff purchased a 2013 Kia Sorento on or around 02/15/2024 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2013 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

874.    Plaintiff Bill Ready is a resident of Eugene, OR.  Plaintiff purchased a 2011 Kia Soul on or around 07/26/2010 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2011 Kia Soul is a Vehicle subject to the Theft-Prone Design.

875.    Plaintiff Shelly Sievers is a resident of Central Point, OR.  Plaintiff purchased a 2015 Kia Soul on or around 07/23/2023 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased

COMPLAINT

insurance for the Vehicle.  On information and belief, Plaintiff's 2015 Kia Soul is a Vehicle subject to the Theft-Prone Design.

876.    Plaintiff Cheryl Stanley is a resident of Oregon City, OR.  Plaintiff purchased a 2016 Hyundai Tucson on or around 02/06/2023 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2016 Hyundai Tucson is a Vehicle subject to the Theft-Prone Design.

877.    Plaintiff Sharon Storey is a resident of St. Helens, OR.  Plaintiff purchased a 2019 Hyundai Accent on or around 04/23/2020 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2019 Hyundai Accent is a Vehicle subject to the Theft-Prone Design.

878.    Plaintiff SheriLee Stritof is a resident of Ocean Park, WA, and purchased the Vehicle in Oregon.  Plaintiff purchased a 2015 Kia Soul on or around 06/01/2015 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2015 Kia Soul is a Vehicle subject to the Theft-Prone Design.

879.    Plaintiff Julie Thurber is a resident of Albany, OR.  Plaintiff purchased a 2019 Kia Soul on or around 06/26/2019 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2019 Kia Soul is a Vehicle subject to the Theft-Prone Design.

### 36.    Pennsylvania Plaintiffs

880.    Plaintiff Robert Abrams is a resident of Wilmington, DE, and purchased the Vehicles in Pennsylvania.  Plaintiff purchased a 2015 Kia Forte on or around 09/12/2014 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2015 Kia Forte is a Vehicle subject to the Theft-Prone Design.

COMPLAINT

Plaintiff purchased a 2016 Kia Sportage on or around 07/20/2018 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Kia Sportage is a Vehicle subject to the Theft-Prone Design. Plaintiff's Vehicle was damaged due to an attempted theft.

881. Plaintiff Sherry Ash is a resident of Somerset, PA. Plaintiff purchased a 2012 Kia Rio on or around 07/15/2015 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2012 Kia Rio is a Vehicle subject to the Theft-Prone Design.

882. Plaintiff Michael Barretta is a resident of Bensalem, PA. Plaintiff leased a 2020 Hyundai Kona on or around 03/20/2020 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2020 Hyundai Kona is a Vehicle subject to the Theft-Prone Design.

883. Plaintiff John Black is a resident of East Stroudsburg, PA. Plaintiff purchased a 2016 Kia Sorento on or around 10/01/2016 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

884. Plaintiff Michelle Bracken is a resident of Davenport, FL, and purchased the Vehicle in Pennsylvania. Plaintiff purchased a 2018 Hyundai Elantra on or around 06/25/2018 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

885. Plaintiff Suzanne Corbin is a resident of Easton, PA. Plaintiff purchased a 2018 Hyundai Elantra on or around 11/14/2018 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance

for the Vehicle.  On information and belief, Plaintiff's 2018 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

886.   Plaintiff Nicholas Dambrosio is a resident of Mount Laurel Township, NJ, and purchased the Vehicle in Pennsylvania.  Plaintiff purchased a 2017 Hyundai Elantra on or around 09/23/2023 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2017 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

887.   Plaintiff Lauren Daniels is a resident of Morrisville, PA.  Plaintiff purchased a 2015 Kia Soul on or around 05/13/2016 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2015 Kia Soul is a Vehicle subject to the Theft-Prone Design.

888.   Plaintiff Lisa Davailus is a resident of White Deer, PA.  Plaintiff purchased a 2016 Kia Sportage on or around 03/09/2019 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2016 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

889.   Plaintiff James Davis is a resident of Forest City, PA.  Plaintiff purchased a 2020 Kia Sorento on or around 05/23/2020 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2020 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

890.   Plaintiff Anthony DiCarlo is a resident of West Middlesex, PA.  Plaintiff purchased a 2016 Hyundai Santa Fe on or around 10/23/2018 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2016 Hyundai Santa Fe is a Vehicle subject to the Theft-Prone Design.

- 275 -
COMPLAINT

891. Plaintiff LaChanta Gatling is a resident of Philadelphia, PA. Plaintiff purchased a 2013 Kia Sorento on or around 07/09/2015 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2013 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

892. Plaintiff Dana Gibbs is a resident of Philadelphia, PA. Plaintiff purchased a 2017 Hyundai Accent on or around 08/01/2019 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Hyundai Accent is a Vehicle subject to the Theft-Prone Design.

893. Plaintiff Amanda Hay is a resident of Florence, AZ, and purchased the Vehicle in Pennsylvania. Plaintiff purchased a 2017 Kia Forte on or around 07/23/2017 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Kia Forte is a Vehicle subject to the Theft-Prone Design.

894. Plaintiff Danielle Hutchins is a resident of Harmony, PA. Plaintiff purchased a 2018 Kia Forte on or around 03/14/2020 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Kia Forte is a Vehicle subject to the Theft-Prone Design.

895. Plaintiff Kathleen Leach is a resident of Verona, PA. Plaintiff purchased a 2015 Hyundai Sonata on or around 10/14/2016 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2015 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

896. Plaintiff Frank Lewis is a resident of Huntingdon Vy, PA. Plaintiff leased a 2022 Kia Sportage on or around 10/15/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance

COMPLAINT

for the Vehicle.  On information and belief, Plaintiff's 2022 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

897.   Plaintiff Tonia Lightner is a resident of Red Lion, PA.  Plaintiff purchased a 2020 Hyundai Accent on or around 08/11/2020 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2020 Hyundai Accent is a Vehicle subject to the Theft-Prone Design.

898.   Plaintiff Michelene Madonna is a resident of Millsboro, DE, and purchased the Vehicle in Pennsylvania.  Plaintiff purchased a 2013 Kia Soul on or around 07/04/2013 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2013 Kia Soul is a Vehicle subject to the Theft-Prone Design.

899.   Plaintiff Stephen Malone is a resident of Leesburg, FL, and purchased the Vehicle in Pennsylvania.  Plaintiff purchased a 2017 Kia Sedona on or around 05/06/2021 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2017 Kia Sedona is a Vehicle subject to the Theft-Prone Design.

900.   Plaintiff Richard Manges is a resident of Central City, PA.  Plaintiff purchased a 2013 Kia Sorento on or around 06/14/2025 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2013 Kia Sorento is a Vehicle subject to the Theft-Prone Design.  Plaintiff purchased a 2019 Kia Sorento on or around 06/26/2025 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2019 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

901.   Plaintiff Shannon McKlveen is a resident of Connellsville, PA.  Plaintiff purchased a 2014 Kia Optima on or around 01/09/2014 for personal use.  Plaintiff's

Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2014 Kia Optima is a Vehicle subject to the Theft-Prone Design. Plaintiff purchased a 2013 Hyundai Elantra on or around 06/18/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2013 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

902. Plaintiff Priscilla Mejia is a resident of Newark, NJ, and purchased the Vehicle in Pennsylvania. Plaintiff purchased a 2018 Hyundai Elantra on or around 01/20/2018 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

903. Plaintiff Craig Miller is a resident of Elizabethtown, PA. Plaintiff purchased a 2021 Kia Soul on or around 03/23/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2021 Kia Soul is a Vehicle subject to the Theft-Prone Design.

904. Plaintiff James Musser is a resident of Volant, PA. Plaintiff purchased a 2017 Hyundai Tucson on or around 04/26/2024 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Hyundai Tucson is a Vehicle subject to the Theft-Prone Design.

905. Plaintiff Tonya Myers is a resident of Lancaster, PA. Plaintiff purchased a 2014 Hyundai Tucson on or around 03/10/2018 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2014 Hyundai Tucson is a Vehicle subject to the Theft-Prone Design.

906. Plaintiff Sadrac Noel is a resident of Reading, PA. Plaintiff purchased a

COMPLAINT

2014 Kia Sorento on or around 12/23/2013 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2014 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

907.    Plaintiff Catherine Oliver is a resident of Pittston, PA.  Plaintiff purchased a 2013 Kia Rio on or around 06/08/2023 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2013 Kia Rio is a Vehicle subject to the Theft-Prone Design.

908.    Plaintiff Kimberly Ortiz is a resident of Mayfield, PA.  Plaintiff purchased a 2020 Kia Sportage on or around 06/03/2020 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2020 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

909.    Plaintiff Gregory Patsy is a resident of Acme, PA.  Plaintiff purchased a 2017 Hyundai Santa Fe on or around 02/27/2017 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2017 Hyundai Santa Fe is a Vehicle subject to the Theft-Prone Design.

910.    Plaintiff Daniel Petchonka is a resident of Phillipsburg, NJ, and purchased the Vehicle in Pennsylvania.  Plaintiff purchased a 2014 Hyundai Accent on or around 04/23/2018 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2014 Hyundai Accent is a Vehicle subject to the Theft-Prone Design.

911.    Plaintiff Victoria Peters is a resident of Philadelphia, PA.  Plaintiff leased a 2020 Hyundai Elantra on or around 05/23/2021 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2020 Hyundai Elantra

COMPLAINT

is a Vehicle subject to the Theft-Prone Design.

912.    Plaintiff Wendy Quito is a resident of East Stroudsburg, PA.  Plaintiff purchased a 2021 Kia Forte on or around 04/17/2021 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2021 Kia Forte is a Vehicle subject to the Theft-Prone Design.

913.    Plaintiff Robert Ravelli is a resident of Clifton Heights, PA.  Plaintiff purchased a 2018 Kia Sorento on or around 03/23/2018 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2018 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

914.    Plaintiff Catherine Reilly is a resident of Coatesville, PA.  Plaintiff leased a 2015 Hyundai Santa Fe Sport on or around 04/15/2016 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2015 Hyundai Santa Fe Sport is a Vehicle subject to the Theft-Prone Design.

915.    Plaintiff Megan Rodgers is a resident of Spring Grove, PA.  Plaintiff purchased a 2015 Kia Optima on or around 03/09/2019 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2015 Kia Optima is a Vehicle subject to the Theft-Prone Design.

916.    Plaintiff Jennifer Romascavage is a resident of Allentown, PA.  Plaintiff purchased a 2017 Kia Sorento on or around 10/23/2019 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2017 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

917.    Plaintiff Jennifer Saksun is a resident of Bridgeville, PA.  Plaintiff purchased a 2019 Kia Sportage on or around 05/24/2022 for personal and business use.

COMPLAINT

Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

918. Plaintiff Jennifer Senft is a resident of East Berlin, PA. Plaintiff purchased a 2011 Kia Soul on or around 03/23/2018 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2011 Kia Soul is a Vehicle subject to the Theft-Prone Design.

919. Plaintiff Laura Shapiro is a resident of Holland, PA. Plaintiff leased a 2018 Hyundai Tucson on or around 02/03/2024 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Hyundai Tucson is a Vehicle subject to the Theft-Prone Design.

920. Plaintiff Amanda Smith is a resident of Jeannette, PA. Plaintiff purchased a 2014 Kia Soul on or around 09/01/2018 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2014 Kia Soul is a Vehicle subject to the Theft-Prone Design.

921. Plaintiff Sharon Stebick is a resident of Ridgway, PA. Plaintiff purchased a 2015 Kia Optima on or around 05/12/2018 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2015 Kia Optima is a Vehicle subject to the Theft-Prone Design.

922. Plaintiff Wendy Steiner is a resident of Johnstown, PA. Plaintiff purchased a 2016 Hyundai Santa Fe Sport on or around 06/03/2024 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Hyundai Santa Fe Sport is a Vehicle subject to the Theft-Prone Design.

COMPLAINT

923.   Plaintiff Daniel Swartz is a resident of Smyrna, DE, and purchased the Vehicle in Pennsylvania.   Plaintiff purchased a 2015 Kia Sportage on or around 05/23/2020 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2015 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

924.   Plaintiff Courtney Whisel is a resident of Goldsboro, PA.   Plaintiff purchased a 2018 Hyundai Elantra in Maryland on or around 09/02/2019 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2018 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.   Plaintiff purchased a 2019 Hyundai Elantra in Pennsylvania on or around 04/12/2021 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2019 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

925.   Plaintiff Jonathan Wozny is a resident of Cranberry Township, PA. Plaintiff leased a 2020 Hyundai Accent on or around 06/26/2020 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.   On information and belief, Plaintiff's 2020 Hyundai Accent is a Vehicle subject to the Theft-Prone Design.

### 37.   South Carolina Plaintiffs

926.   Plaintiff Joshua Bain is a resident of West Columbia, SC.   Plaintiff purchased a 2012 Kia Soul on or around 11/18/2013 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.   Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2012 Kia Soul is a Vehicle subject to the Theft-Prone Design.

927.   Plaintiff Christopher Blanchet is a resident of Greenville, SC.   Plaintiff purchased a 2016 Kia Soul on or around 03/07/2019 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.   Plaintiff purchased

COMPLAINT

insurance for the Vehicle.  On information and belief, Plaintiff's 2016 Kia Soul is a Vehicle subject to the Theft-Prone Design.

928.   Plaintiff Pamela Britt-Jones is a resident of Branchville, SC.  Plaintiff purchased a 2014 Kia Optima on or around 03/16/2016 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2014 Kia Optima is a Vehicle subject to the Theft-Prone Design.

929.   Plaintiff Jimal Ellison is a resident of Rock Hill, SC.  Plaintiff purchased a 2015 Hyundai Sonata on or around 05/30/2021 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2015 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

930.   Plaintiff Jeremiah Cox is a resident of Wilmington, NC, and purchased the Vehicle in South Carolina.  Plaintiff purchased a 2011 Kia Soul on or around 04/08/2015 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2011 Kia Soul is a Vehicle subject to the Theft-Prone Design.  Plaintiff purchased a 2017 Kia Soul on or around 09/12/2018 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2017 Kia Soul is a Vehicle subject to the Theft-Prone Design.  Plaintiff purchased a 2018 Kia Soul on or around 09/06/2022 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2018 Kia Soul is a Vehicle subject to the Theft-Prone Design.

931.   Plaintiff Crystal Goings is a resident of Darlington, SC.  Plaintiff purchased a 2011 Kia Soul on or around 11/29/2023 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased

COMPLAINT

insurance for the Vehicle. On information and belief, Plaintiff's 2011 Kia Soul is a Vehicle subject to the Theft-Prone Design. On or about 08/26/2021, Plaintiff's Vehicle was stolen.

932. Plaintiff Alfreda Grant is a resident of Blackstock, SC. Plaintiff purchased a 2015 Hyundai Sonata on or around 05/15/2017 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2015 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

933. Plaintiff Nikita Green is a resident of Summerville, SC. Plaintiff purchased a 2013 Kia Optima on or around 08/08/2016 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2013 Kia Optima is a Vehicle subject to the Theft-Prone Design.

934. Plaintiff Sally Hughes is a resident of Gray Court, SC. Plaintiff purchased a 2016 Hyundai Sonata on or around 09/03/2020 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

935. Plaintiff Virgie Johnson is a resident of Darlington, SC. Plaintiff purchased a 2021 Kia Soul on or around 02/23/2023 for business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2021 Kia Soul is a Vehicle subject to the Theft-Prone Design. Plaintiff's Vehicle was damaged due to an attempted theft.

936. Plaintiff Sherica Kearse is a resident of Taylors, SC. Plaintiff leased a 2019 Hyundai Santa Fe on or around 09/26/2020 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Hyundai Santa Fe is a Vehicle subject to the Theft-Prone Design.

COMPLAINT

937.   Plaintiff Fran Kemmerlin is a resident of Apex, NC, and purchased the Vehicle in South Carolina.  Plaintiff leased a 2016 Hyundai Accent on or around 09/16/2022 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2016 Hyundai Accent is a Vehicle subject to the Theft-Prone Design.

938.   Plaintiff Erin Leming is a resident of Mount Pleasant, SC.  Plaintiff purchased a 2016 Kia Sportage on or around 10/10/2024 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2016 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

939.   Plaintiff Emily Major is a resident of Columbia, SC.  Plaintiff purchased a 2012 Kia Forte on or around 08/23/2023 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2012 Kia Forte is a Vehicle subject to the Theft-Prone Design.

940.   Plaintiff Kimberly Milligan is a resident of Summerville, SC.  Plaintiff purchased a 2019 Kia Optima on or around 05/13/2023 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2019 Kia Optima is a Vehicle subject to the Theft-Prone Design.  On or about 07/13/2024, Plaintiff's Vehicle was stolen.

941.   Plaintiff James Moore is a resident of Columbia, SC.  Plaintiff purchased a 2019 Kia Optima on or around 10/10/2022 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2019 Kia Optima is a Vehicle subject to the Theft-Prone Design.

942.   Plaintiff Allen Poole is a resident of Greenville, SC.  Plaintiff purchased a 2018 Hyundai Elantra on or around 08/18/2018 for personal use.  Plaintiff's Vehicle has

a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

943. Plaintiff Jesseca Powell is a resident of Myrtle Beach, SC. Plaintiff purchased a 2016 Kia Soul on or around 05/08/2022 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Kia Soul is a Vehicle subject to the Theft-Prone Design.

944. Plaintiff April Rainey is a resident of Jenkinsville, SC. Plaintiff purchased a 2015 Kia Soul on or around 02/11/2020 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2015 Kia Soul is a Vehicle subject to the Theft-Prone Design.

945. Plaintiff Samaria Ramadhan is a resident of Rock Hill, SC. Plaintiff leased a 2017 Kia Sportage on or around 04/26/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

946. Plaintiff Davonna Ramirez is a resident of Columbia, SC. Plaintiff purchased a 2016 Kia Forte on or around 04/30/2019 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Kia Forte is a Vehicle subject to the Theft-Prone Design.

947. Plaintiff Holly Ricci is a resident of Statesville, NC, and purchased the Vehicle in South Carolina. Plaintiff purchased a 2014 Hyundai Accent on or around 03/14/2014 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2014 Hyundai Accent is a Vehicle subject to the Theft-Prone Design.

COMPLAINT

948.   Plaintiff Houston Seagroves is a resident of Fountain Inn, SC.  Plaintiff purchased a 2024 Kia Soul on or around 05/08/2024 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2024 Kia Soul is a Vehicle subject to the Theft-Prone Design.

949.   Plaintiff Sheryl Tidwell is a resident of Sumter, SC.  Plaintiff purchased a 2019 Kia Forte on or around 11/17/2018 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2019 Kia Forte is a Vehicle subject to the Theft-Prone Design.

950.   Plaintiff Lakeisha Williams is a resident of Latta, SC.  Plaintiff leased a 2020 Kia Optima on or around 10/31/2022 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2020 Kia Optima is a Vehicle subject to the Theft-Prone Design.

951.   Plaintiff Donald Williford is a resident of Chester, SC.  Plaintiff purchased a 2014 Hyundai Sonata on or around 04/03/2015 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2014 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

### 38.   South Dakota Plaintiffs

952.   Plaintiff Tiffaniee Cope is a resident of Sioux Falls, SD.  Plaintiff purchased a 2020 Hyundai Venue on or around 12/01/2023 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2020 Hyundai Venue is a Vehicle subject to the Theft-Prone Design.

953.   Plaintiff Matricial Nathan is a resident of North Providence, RI, and purchased the Vehicle in South Dakota.  Plaintiff purchased a 2019 Hyundai Tucson on

or around 12/26/2020 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Hyundai Tucson is a Vehicle subject to the Theft-Prone Design.

954. Plaintiff Ronald Turnbaugh is a resident of Rapid City, SD. Plaintiff purchased a 2020 Kia Sorento on or around 03/02/2020 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2020 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

955. Plaintiff Deena Walkden is a resident of Brazil, IN, and purchased the Vehicle in South Dakota. Plaintiff purchased a 2018 Kia Optima on or around 10/11/2017 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Kia Optima is a Vehicle subject to the Theft-Prone Design.

956. Plaintiff Joan Wilson is a resident of Lincoln, NE. Plaintiff purchased a 2015 Kia Soul in South Dakota on or around 10/25/2020 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2015 Kia Soul is a Vehicle subject to the Theft-Prone Design. Plaintiff purchased a 2014 Kia Optima in Nebraska on or around 11/05/2024 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2014 Kia Optima is a Vehicle subject to the Theft-Prone Design.

### 39. Tennessee Plaintiffs

957. Plaintiff Cory Adams is a resident of Madisonville, KY, and purchased the Vehicle in Tennessee. Plaintiff leased a 2017 Hyundai Veloster on or around 11/15/2018 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief,

COMPLAINT

Plaintiff's 2017 Hyundai Veloster is a Vehicle subject to the Theft-Prone Design.

958.   Plaintiff Pamela Copeland is a resident of Bartlett, TN.  Plaintiff purchased a 2020 Hyundai Santa Fe on or around 01/26/2022 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2020 Hyundai Santa Fe is a Vehicle subject to the Theft-Prone Design.

959.   Plaintiff Julie Ehrenfelt is a resident of Big Sandy, TN.  Plaintiff purchased a 2016 Kia Sorento on or around 04/15/2021 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2016 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

960.   Plaintiff Jason Gribble is a resident of Murfreesboro, TN.  Plaintiff purchased a 2014 Hyundai Elantra on or around 05/23/2019 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2014 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

961.   Plaintiff Renee Gunn is a resident of Clarksville, TN.  Plaintiff purchased a 2018 Hyundai Tucson on or around 06/23/2023 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2018 Hyundai Tucson is a Vehicle subject to the Theft-Prone Design.

962.   Plaintiff Melissa Hinderliter is a resident of Tennessee Ridge, TN.  Plaintiff purchased a 2015 Kia Forte on or around 08/16/2023 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2015 Kia Forte is a Vehicle subject to the Theft-Prone Design.

963.   Plaintiff Michael Hutson is a resident of Nashville, TN.  Plaintiff purchased a 2020 Kia Forte on or around 01/04/2024 for personal use.  Plaintiff's Vehicle has a

traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2020 Kia Forte is a Vehicle subject to the Theft-Prone Design.

964. Plaintiff Sonya Johns is a resident of La Vergne, TN. Plaintiff leased a 2013 Hyundai Sonata on or around 06/05/2015 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2013 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

965. Plaintiff Glenda Johnson is a resident of Jackson, TN. Plaintiff leased a 2016 Hyundai Elantra on or around 01/23/2023 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

966. Plaintiff Charlotte Jones is a resident of Millington, TN. Plaintiff purchased a 2015 Kia Forte on or around 08/02/2016 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2015 Kia Forte is a Vehicle subject to the Theft-Prone Design.

967. Plaintiff Tiara Jones is a resident of Memphis, TN. Plaintiff purchased a 2019 Hyundai Elantra on or around 05/23/2023 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

968. Plaintiff Randy Kennedy is a resident of Strawberry Plains, TN. Plaintiff purchased a 2021 Hyundai Accent on or around 04/06/2023 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2021 Hyundai Accent is a Vehicle subject to the Theft-Prone Design.

COMPLAINT

969. Plaintiff Sharon Letterman is a resident of Hooker, OK, and purchased the Vehicle in Tennessee. Plaintiff purchased a 2016 Kia Soul on or around 08/04/2016 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Kia Soul is a Vehicle subject to the Theft-Prone Design.

970. Plaintiff Ashley Long is a resident of Harrison, TN. Plaintiff purchased a 2021 Hyundai Tucson on or around 02/23/2020 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2021 Hyundai Tucson is a Vehicle subject to the Theft-Prone Design.

971. Plaintiff Tonja Prackett is a resident of Edmondson, AR, and purchased the Vehicle in Tennessee. Plaintiff purchased a 2020 Kia Sorento on or around 04/23/2023 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2020 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

972. Plaintiff Whitney Robertson is a resident of Byhalia, MS, and purchased the Vehicle in Tennessee. Plaintiff leased a 2016 Kia Optima on or around 10/23/2019 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Kia Optima is a Vehicle subject to the Theft-Prone Design.

973. Plaintiff Joi Smith is a resident of Des Plaines, IL, and purchased the Vehicle in Tennessee. Plaintiff purchased a 2021 Kia Forte on or around 04/01/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2021 Kia Forte is a Vehicle subject to the Theft-Prone Design.

974. Plaintiff Christopher Stacy is a resident of Murfreesboro, TN. Plaintiff leased a 2015 Kia Soul on or around 01/01/2022 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased

COMPLAINT

insurance for the Vehicle.  On information and belief, Plaintiff's 2015 Kia Soul is a Vehicle subject to the Theft-Prone Design.

975.  Plaintiff Shari Sylvia is a resident of Knoxville, TN.  Plaintiff purchased a 2016 Kia Soul on or around 08/15/2022 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2016 Kia Soul is a Vehicle subject to the Theft-Prone Design.

976.  Plaintiff Joy Vasser is a resident of Memphis, TN.  Plaintiff purchased a 2018 Kia Sportage on or around 12/26/2020 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2018 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

977.  Plaintiff Regina Wade is a resident of Franklin, TN.  Plaintiff purchased a 2017 Kia Sportage on or around 06/30/2020 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2017 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

978.  Plaintiff Michael Warren is a resident of Knoxville, TN.  Plaintiff purchased a 2016 Kia Optima on or around 06/30/2016 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2016 Kia Optima is a Vehicle subject to the Theft-Prone Design.

979.  Plaintiff Evelyn Wheeler is a resident of Murfreesboro, TN.  Plaintiff purchased a 2020 Hyundai Elantra on or around 08/25/2023 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2020 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

980.  Plaintiff Michael White is a resident of Bristol, TN.  Plaintiff purchased a

COMPLAINT

2019 Hyundai Tucson on or around 08/24/2022 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Hyundai Tucson is a Vehicle subject to the Theft-Prone Design.

981. Plaintiff Janice Wilkes is a resident of South Fulton, TN. Plaintiff purchased a 2020 Kia Soul on or around 05/16/2024 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2020 Kia Soul is a Vehicle subject to the Theft-Prone Design.

### 40. Texas Plaintiffs

982. Plaintiff Jamie Achilli is a resident of Carrollton, TX. Plaintiff purchased a 2015 Kia Optima on or around 02/23/2020 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2015 Kia Optima is a Vehicle subject to the Theft-Prone Design.

983. Plaintiff Araseli Acosta is a resident of Lubbock, TX. Plaintiff purchased a 2019 Kia Soul on or around 03/24/2019 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Kia Soul is a Vehicle subject to the Theft-Prone Design.

984. Plaintiff Barbara Alvarez is a resident of San Marcos, TX. Plaintiff purchased a 2017 Kia Forte on or around 03/26/2016 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Kia Forte is a Vehicle subject to the Theft-Prone Design.

985. Plaintiff Marcos Alvarez is a resident of Houston, TX. Plaintiff purchased a 2019 Kia Forte on or around 10/23/2023 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for

COMPLAINT

the Vehicle. On information and belief, Plaintiff's 2019 Kia Forte is a Vehicle subject to the Theft-Prone Design.

986. Plaintiff Diana Andrews is a resident of Killeen, TX. Plaintiff purchased a 2015 Kia Optima on or around 05/26/2015 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2015 Kia Optima is a Vehicle subject to the Theft-Prone Design.

987. Plaintiff Jessica Atkins is a resident of Fort Worth, TX. Plaintiff purchased a 2019 Hyundai Elantra GT on or around 09/01/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Hyundai Elantra GT is a Vehicle subject to the Theft-Prone Design.

988. Plaintiff Kimberly Barrett is a resident of Temple, TX. Plaintiff purchased a 2020 Kia Rio on or around 08/27/2022 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2020 Kia Rio is a Vehicle subject to the Theft-Prone Design.

989. Plaintiff Melissa Barrow is a resident of Kingwood, TX. Plaintiff purchased a 2018 Hyundai Santa Fe on or around 05/21/2019 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Hyundai Santa Fe is a Vehicle subject to the Theft-Prone Design.

990. Plaintiff Renika Bass is a resident of Katy, TX. Plaintiff leased a 2016 Kia Sorento on or around 11/23/2019 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

991. Plaintiff Ashley Bergerson is a resident of Anna, TX. Plaintiff purchased

COMPLAINT

a 2020 Hyundai Venue on or around 12/28/2022 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2020 Hyundai Venue is a Vehicle subject to the Theft-Prone Design.

992. Plaintiff Ana Bernal is a resident of El Paso, TX. Plaintiff purchased a 2020 Hyundai Elantra on or around 09/09/2023 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2020 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

993. Plaintiff Jessica Bess is a resident of Splendora, TX. Plaintiff purchased a 2015 Kia Forte on or around 07/09/2019 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2015 Kia Forte is a Vehicle subject to the Theft-Prone Design.

994. Plaintiff Mary Bolden is a resident of Euless, TX. Plaintiff purchased a 2015 Kia Soul on or around 03/14/2023 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2015 Kia Soul is a Vehicle subject to the Theft-Prone Design.

995. Plaintiff LaToya Bonapart is a resident of McKinney, TX. Plaintiff purchased a 2018 Hyundai Elantra on or around 05/12/2018 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

996. Plaintiff Nancy Boyce is a resident of Grapevine, TX. Plaintiff purchased a 2012 Kia Soul on or around 05/07/2012 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2012 Kia Soul is a Vehicle subject

COMPLAINT

to the Theft-Prone Design.

997. Plaintiff Senica Bradford is a resident of Arlington, TX. Plaintiff purchased a 2019 Kia Sorento on or around 10/23/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

998. Plaintiff Ethelyn Briscoe is a resident of Garland, TX. Plaintiff purchased a 2022 Kia Sportage on or around 08/10/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2022 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

999. Plaintiff Melody Cammon is a resident of Killeen, TX. Plaintiff leased a 2014 Kia Forte on or around 01/26/2023 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2014 Kia Forte is a Vehicle subject to the Theft-Prone Design.

1000. Plaintiff Sandra Campbell is a resident of Fort Worth, TX. Plaintiff purchased a 2015 Kia Sorento on or around 11/22/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2015 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

1001. Plaintiff Arlene Caroselli is a resident of Hermon, ME, and purchased the Vehicle in Texas. Plaintiff purchased a 2017 Kia Forte on or around 04/05/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Kia Forte is a Vehicle subject to the Theft-Prone Design.

1002. Plaintiff Stephanie Castro is a resident of Houston, TX. Plaintiff purchased a 2016 Kia Soul on or around 01/10/2016 for personal use. Plaintiff's Vehicle has a

COMPLAINT

traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Kia Soul is a Vehicle subject to the Theft-Prone Design.

1003. Plaintiff Belinda Chairez is a resident of Grapevine, TX. Plaintiff purchased a 2015 Kia Optima on or around 11/13/2015 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2015 Kia Optima is a Vehicle subject to the Theft-Prone Design.

1004. Plaintiff Helen Christian is a resident of San Marcos, TX. Plaintiff purchased a 2014 Hyundai Santa Fe Sport on or around 01/15/2016 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2014 Hyundai Santa Fe Sport is a Vehicle subject to the Theft-Prone Design.

1005. Plaintiff Jennifer Collins is a resident of Greely, CO, and purchased the Vehicle in Texas. Plaintiff purchased a 2020 Kia Forte on or around 04/01/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2020 Kia Forte is a Vehicle subject to the Theft-Prone Design.

1006. Plaintiff Andrew Cornwell is a resident of Humble, TX. Plaintiff purchased a 2022 Kia K5 on or around 12/23/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2022 Kia K5 is a Vehicle subject to the Theft-Prone Design.

1007. Plaintiff Jessica Craddock is a resident of Sherman, TX. Plaintiff purchased a 2013 Hyundai accent on or around 06/20/2021 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2013 Hyundai accent is a Vehicle subject to the Theft-Prone Design.

COMPLAINT

1008. Plaintiff Robert Davila is a resident of San Antonio, TX.  Plaintiff purchased a 2015 Hyundai Santa Fe Sport on or around 07/05/2018 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2015 Hyundai Santa Fe Sport is a Vehicle subject to the Theft-Prone Design.

1009. Plaintiff Vicky Davis is a resident of Austin, TX.  Plaintiff purchased a 2016 Kia Optima on or around 07/10/2017 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2016 Kia Optima is a Vehicle subject to the Theft-Prone Design.

1010. Plaintiff Sabrina DeAngelis is a resident of San Antonio, TX.  Plaintiff purchased a 2013 Hyundai Elantra on or around 12/09/2013 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2013 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

1011. Plaintiff Wendy DeGraaff is a resident of Kempner, TX.  Plaintiff purchased a 2018 Hyundai Sonata on or around 05/01/2018 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2018 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

1012. Plaintiff Jack Dieckhoner is a resident of Dallas, TX.  Plaintiff purchased a 2018 Hyundai Elantra GT on or around 10/06/2017 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2018 Hyundai Elantra GT is a Vehicle subject to the Theft-Prone Design.

1013. Plaintiff Mercedes Dishaw is a resident of Conroe, TX.  Plaintiff purchased a 2019 Kia Sorento on or around 07/09/2021 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for

COMPLAINT

the Vehicle.  On information and belief, Plaintiff's 2019 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

1014. Plaintiff Miriam Dominguez is a resident of El Paso, TX.  Plaintiff leased a 2019 Hyundai Accent on or around 05/09/2022 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2019 Hyundai Accent is a Vehicle subject to the Theft-Prone Design.

1015. Plaintiff Deborah Dowdle is a resident of Longview, TX.  Plaintiff purchased a 2020 Kia Soul on or around 08/30/2019 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2020 Kia Soul is a Vehicle subject to the Theft-Prone Design.

1016. Plaintiff Chereise Dunn is a resident of New Albany, OH, and purchased the Vehicle in Texas.  Plaintiff purchased a 2018 Hyundai Santa Fe on or around 12/15/2018 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2018 Hyundai Santa Fe is a Vehicle subject to the Theft-Prone Design.

1017. Plaintiff Jay Dunnahoo is a resident of Azle, TX.  Plaintiff purchased a 2018 Kia Forte on or around 09/15/2021 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2018 Kia Forte is a Vehicle subject to the Theft-Prone Design.

1018. Plaintiff Janice Elliott is a resident of Mesquite, TX.  Plaintiff purchased a 2011 Kia Soul on or around 10/27/2012 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2011 Kia Soul is a Vehicle subject to the Theft-Prone Design.

1019. Plaintiff James Elvgren is a resident of Waco, TX.  Plaintiff purchased a

COMPLAINT

2017 Kia Forte on or around 07/28/2022 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Kia Forte is a Vehicle subject to the Theft-Prone Design.

1020. Plaintiff Alnesha Ferguson is a resident of Houston, TX. Plaintiff leased a 2020 Kia Sportage on or around 09/01/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2020 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

1021. Plaintiff Natalie Fields is a resident of Flower Mound, TX. Plaintiff purchased a 2019 Hyundai Sonata on or around 07/23/2019 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

1022. Plaintiff David Fierro is a resident of El Paso, TX. Plaintiff purchased a 2016 Kia Rio on or around 05/27/2016 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Kia Rio is a Vehicle subject to the Theft-Prone Design.

1023. Plaintiff Josef Gaona is a resident of Midland, TX. Plaintiff purchased a 2012 Kia Sportage on or around 05/16/2022 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2012 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

1024. Plaintiff Cruz Garcia III is a resident of San Antonio, TX. Plaintiff purchased a 2012 Hyundai Sonata on or around 08/02/2014 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2012 Hyundai Sonata

COMPLAINT

is a Vehicle subject to the Theft-Prone Design.

1025. Plaintiff Cuciukywana Giles is a resident of Manvel, TX. Plaintiff purchased a 2021 Hyundai Tucson on or around 08/20/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2021 Hyundai Tucson is a Vehicle subject to the Theft-Prone Design.

1026. Plaintiff Tara Gilford is a resident of Houston, TX. Plaintiff purchased a 2017 Hyundai Tucson on or around 08/30/2019 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Hyundai Tucson is a Vehicle subject to the Theft-Prone Design.

1027. Plaintiff Bobby Gillentine is a resident of Dallas, TX. Plaintiff purchased a 2021 Kia Soul on or around 01/26/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2021 Kia Soul is a Vehicle subject to the Theft-Prone Design.

1028. Plaintiff Jonathan Golden is a resident of Austin, TX. Plaintiff purchased a 2012 Hyundai Elantra on or around 04/24/2019 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2012 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

1029. Plaintiff Fred Goulden is a resident of San Antonio, TX. Plaintiff purchased a 2012 Hyundai Sonata on or around 12/17/2019 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2012 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

1030. Plaintiff Samantha Hanney is a resident of McKinney, TX. Plaintiff purchased a 2019 Kia Forte on or around 03/04/2022 for personal use. Plaintiff's

Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Kia Forte is a Vehicle subject to the Theft-Prone Design.

1031. Plaintiff Ashraf Hasan is a resident of Houston, TX. Plaintiff purchased a 2018 Kia Sportage on or around 09/09/2023 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

1032. Plaintiff Talisha Hawthorne is a resident of Pearland, TX. Plaintiff purchased a 2018 Kia Optima on or around 05/25/2020 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Kia Optima is a Vehicle subject to the Theft-Prone Design.

1033. Plaintiff Tonya Holmes-Kirk is a resident of Arlington, TX. Plaintiff purchased a 2020 Kia Soul on or around 01/31/2020 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2020 Kia Soul is a Vehicle subject to the Theft-Prone Design.

1034. Plaintiff Clayton Hunt is a resident of Houston, TX. Plaintiff purchased a 2018 Hyundai Elantra GT on or around 09/25/2018 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Hyundai Elantra GT is a Vehicle subject to the Theft-Prone Design.

1035. Plaintiff Krystal Jackson is a resident of Fairfield, TX. Plaintiff leased a 2014 Kia Soul on or around 06/01/2024 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2014 Kia Soul is a Vehicle subject to the Theft-Prone Design.

COMPLAINT

1036. Plaintiff Rose Jarvis is a resident of Hutto, TX.  Plaintiff leased a 2018 Kia Sportage on or around 09/30/2021 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2018 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

1037. Plaintiff Donald Jeffers is a resident of Charlestown, IN, and purchased the Vehicle in Texas.  Plaintiff purchased a 2013 Kia Sportage on or around 07/18/2018 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2013 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

1038. Plaintiff Lahoma Johnson is a resident of Beaumont, TX.  Plaintiff purchased a 2012 Kia Sorento on or around 03/05/2014 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2012 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

1039. Plaintiff Stephanie Johnson is a resident of Manvel, TX.  Plaintiff purchased a 2016 Hyundai Sonata on or around 01/13/2023 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2016 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

1040. Plaintiff Betty Jones is a resident of Frisco, TX.  Plaintiff purchased a 2014 Hyundai Sonata on or around 02/11/2017 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2014 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

1041. Plaintiff Chondale Jones is a resident of Hutto, TX.  Plaintiff purchased a 2018 Hyundai Santa Fe Sport on or around 03/23/2020 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased

COMPLAINT

insurance for the Vehicle.  On information and belief, Plaintiff's 2018 Hyundai Santa Fe Sport is a Vehicle subject to the Theft-Prone Design.

1042. Plaintiff Frank Jones is a resident of White Oak, TX.  Plaintiff purchased a 2015 Kia Sorento on or around 10/23/2019 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2015 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

1043. Plaintiff Michael Juarez is a resident of Kodiak, AK, and purchased the Vehicle in Texas.  Plaintiff purchased a 2021 Kia Seltos on or around 05/23/2021 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2021 Kia Seltos is a Vehicle subject to the Theft-Prone Design.

1044. Plaintiff Sheronda Lacy is a resident of Red Oak, TX.  Plaintiff purchased a 2018 Hyundai Elantra on or around 02/26/2019 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2018 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

1045. Plaintiff Zoelynn Leach is a resident of Killeen, TX.  Plaintiff purchased a 2018 Kia Sportage on or around 10/01/2020 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2018 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

1046. Plaintiff Karl Lindemann is a resident of El Paso, TX.  Plaintiff purchased a 2015 Hyundai Accent on or around 02/01/2020 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2015 Hyundai Accent is a Vehicle subject to the Theft-Prone Design.

1047. Plaintiff Kendra Lowe is a resident of San Marcos, TX.  Plaintiff leased a

COMPLAINT

2021 Kia Forte on or around 02/21/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2021 Kia Forte is a Vehicle subject to the Theft-Prone Design.

1048. Plaintiff Damian Mann is a resident of Lake Jackson, TX. Plaintiff purchased a 2014 Kia Optima on or around 10/10/2022 for business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2014 Kia Optima is a Vehicle subject to the Theft-Prone Design.

1049. Plaintiff Justin Marcum Sr is a resident of Katy, TX. Plaintiff purchased a 2011 Kia Soul on or around 06/23/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2011 Kia Soul is a Vehicle subject to the Theft-Prone Design.

1050. Plaintiff Paulette Mayfield is a resident of Huffman, TX. Plaintiff purchased a 2012 Kia Sportage on or around 12/20/2011 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2012 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

1051. Plaintiff Kristin McDonald is a resident of Houston, TX. Plaintiff purchased a 2014 Kia Soul on or around 12/01/2014 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2014 Kia Soul is a Vehicle subject to the Theft-Prone Design.

1052. Plaintiff Yaminah McDonald is a resident of Kyle, TX. Plaintiff purchased a 2017 Hyundai Sonata on or around 09/24/2019 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Hyundai Sonata

COMPLAINT

is a Vehicle subject to the Theft-Prone Design.

1053. Plaintiff Demian McElhinny is a resident of El Paso, TX. Plaintiff purchased a 2019 Hyundai Elantra on or around 09/30/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design. Plaintiff purchased a 2022 Hyundai Elantra on or around 09/09/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2022 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

1054. Plaintiff Harvonica Mcfarland is a resident of Tyler, TX. Plaintiff purchased a 2017 Kia Optima on or around 10/18/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Kia Optima is a Vehicle subject to the Theft-Prone Design.

1055. Plaintiff Lauren McLaughlin is a resident of Fort Worth, TX. Plaintiff purchased a 2016 Hyundai Veloster on or around 01/23/2022 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Hyundai Veloster is a Vehicle subject to the Theft-Prone Design.

1056. Plaintiff Stephen Metarelis is a resident of Conroe, TX. Plaintiff purchased a 2015 Kia Forte on or around 10/10/2015 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2015 Kia Forte is a Vehicle subject to the Theft-Prone Design.

1057. Plaintiff Melissa Meyer is a resident of Oak Park, IL, and purchased the Vehicle in Texas. Plaintiff purchased a 2019 Kia Sorento on or around 06/23/2022 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition

COMPLAINT

system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Kia Sorento is a Vehicle subject to the Theft-Prone Design. Plaintiff's Vehicle was damaged due to an attempted theft.

1058. Plaintiff Jermey Mitchem is a resident of Justin, TX. Plaintiff leased a 2021 Kia Seltos on or around 03/23/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2021 Kia Seltos is a Vehicle subject to the Theft-Prone Design.

1059. Plaintiff Travis Montour is a resident of Houston, TX. Plaintiff purchased a 2018 Kia Soul on or around 02/15/2018 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Kia Soul is a Vehicle subject to the Theft-Prone Design.

1060. Plaintiff Robert Moore is a resident of Fort Worth, TX. Plaintiff leased a 2017 Kia Sportage on or around 11/18/2018 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

1061. Plaintiff Patricia Pampinella is a resident of Howe, TX. Plaintiff purchased a 2016 Hyundai Elantra on or around 05/16/2016 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

1062. Plaintiff Shelley Panter is a resident of Iowa Park, TX. Plaintiff purchased a 2016 Hyundai Sonata on or around 04/23/2016 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

COMPLAINT

1063. Plaintiff Sergei Parsegov is a resident of Houston, TX. Plaintiff purchased a 2014 Kia Soul on or around 02/01/2024 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2014 Kia Soul is a Vehicle subject to the Theft-Prone Design. On or about 01/07/2025, Plaintiff's Vehicle was stolen.

1064. Plaintiff Marilyn Price is a resident of Humble, TX. Plaintiff purchased a 2019 Kia Sportage on or around 10/26/2019 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

1065. Plaintiff Weiwei Qin is a resident of Frisco, TX. Plaintiff purchased a 2013 Hyundai Tucson on or around 07/01/2017 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2013 Hyundai Tucson is a Vehicle subject to the Theft-Prone Design.

1066. Plaintiff Randy Ramsey is a resident of Dallas, TX. Plaintiff purchased a 2017 Kia Sorento on or around 02/10/2020 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Kia Sorento is a Vehicle subject to the Theft-Prone Design. On or about 11/09/2024, Plaintiff's Vehicle was stolen.

1067. Plaintiff Monique Randolph is a resident of Houston, TX. Plaintiff purchased a 2013 Hyundai Elantra on or around 01/24/2018 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2013 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

1068. Plaintiff Oholibama Rangel is a resident of Spring, TX. Plaintiff purchased a 2013 Hyundai Sonata on or around 06/26/2021 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff

COMPLAINT

purchased insurance for the Vehicle. On information and belief, Plaintiff's 2013 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

1069. Plaintiff Vincent Reese is a resident of Leslie, MO, and purchased the Vehicle in Texas. Plaintiff purchased a 2018 Kia Soul on or around 05/26/2019 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Kia Soul is a Vehicle subject to the Theft-Prone Design.

1070. Plaintiff Jvanne Rhodes is a resident of Dallas, TX. Plaintiff purchased a 2019 Kia Sorento on or around 04/08/2020 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

1071. Plaintiff Cherinda Richardson is a resident of Longview, TX. Plaintiff purchased a 2019 Hyundai Sonata on or around 02/28/2020 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

1072. Plaintiff Dennis Riddlesperger is a resident of Jacksonville, TX. Plaintiff purchased a 2021 Hyundai Venue on or around 01/15/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2021 Hyundai Venue is a Vehicle subject to the Theft-Prone Design.

1073. Plaintiff Deleeza Robinson is a resident of Dallas, TX. Plaintiff purchased a 2020 Kia Forte on or around 02/15/2021 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2020 Kia Forte is a Vehicle subject to the Theft-Prone Design.

1074. Plaintiff Chassity Rolle is a resident of Lufkin, TX. Plaintiff purchased a

- 309 -
COMPLAINT

2020 Hyundai Elantra on or around 09/01/2020 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2020 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

1075. Plaintiff Casey Rozell is a resident of Spring, TX.  Plaintiff purchased a 2017 Hyundai Elantra on or around 09/01/2017 for personal and business use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2017 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

1076. Plaintiff Emily Rubel is a resident of Lufkin, TX.  Plaintiff purchased a 2018 Kia Soul on or around 02/23/2023 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2018 Kia Soul is a Vehicle subject to the Theft-Prone Design.  On or about 03/10/2025, Plaintiff's Vehicle was stolen.

1077. Plaintiff Nicholas Samosir is a resident of Humble, TX.  Plaintiff leased a 2021 Kia Seltos on or around 06/26/2021 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2021 Kia Seltos is a Vehicle subject to the Theft-Prone Design.

1078. Plaintiff Scott Selasky is a resident of Harlingen, TX.  Plaintiff purchased a 2013 Hyundai Elantra on or around 06/15/2013 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2013 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

1079. Plaintiff Cynthia Selle is a resident of Little Elm, TX.  Plaintiff purchased a 2019 Kia Optima on or around 12/26/2018 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2019 Kia Optima is a Vehicle subject

COMPLAINT

to the Theft-Prone Design.

1080. Plaintiff Stephanie Sibley is a resident of Fort Worth, TX. Plaintiff purchased a 2012 Hyundai Elantra on or around 02/25/2015 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2012 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

1081. Plaintiff Robert Smart is a resident of Lexington, KY, and purchased the Vehicle in Texas. Plaintiff purchased a 2017 Hyundai Tucson on or around 01/06/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Hyundai Tucson is a Vehicle subject to the Theft-Prone Design.

1082. Plaintiff Donald Smither is a resident of Houston, TX. Plaintiff purchased a 2016 Hyundai Elantra GT on or around 10/14/2020 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Hyundai Elantra GT is a Vehicle subject to the Theft-Prone Design.

1083. Plaintiff Timothy Swope is a resident of Houston, TX. Plaintiff purchased a 2017 Hyundai Elantra on or around 12/23/2016 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

1084. Plaintiff Jordan Tague is a resident of Dallas, TX. Plaintiff purchased a 2016 Kia Soul on or around 02/23/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Kia Soul is a Vehicle subject to the Theft-Prone Design.

1085. Plaintiff Elisa D Torres is a resident of Tucson, AZ, and purchased the Vehicle in Texas. Plaintiff purchased a 2013 Kia Soul on or around 07/09/2013 for

COMPLAINT

personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2013 Kia Soul is a Vehicle subject to the Theft-Prone Design.

1086. Plaintiff Trenise Trotter is a resident of Spring, TX.  Plaintiff purchased a 2017 Hyundai Elantra on or around 11/27/2019 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2017 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

1087. Plaintiff Kristin Valenzuela is a resident of Chaparral, NM, and purchased the Vehicle in Texas.  Plaintiff purchased a 2013 Kia Optima on or around 2/29/2013 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2013 Kia Optima is a Vehicle subject to the Theft-Prone Design.

1088. Plaintiff Robert Wagner is a resident of Katy, TX.  Plaintiff purchased a 2014 Hyundai Sonata on or around 08/16/2018 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2014 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

1089. Plaintiff Anthony Walters is a resident of Lago Vista, TX.  Plaintiff purchased a 2011 Kia Soul on or around 02/08/2014 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2011 Kia Soul is a Vehicle subject to the Theft-Prone Design.

1090. Plaintiff David Weber Sr. is a resident of Highlands, TX.  Plaintiff purchased a 2014 Kia Forte on or around 05/23/2019 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2014 Kia Forte is a Vehicle subject to the Theft-Prone Design.

COMPLAINT

1091. Plaintiff Sharon White is a resident of Missouri City, TX. Plaintiff purchased a 2014 Hyundai Sonata on or around 08/05/2017 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2014 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

1092. Plaintiff Alexandria Williams is a resident of Arlington, TX. Plaintiff leased a 2012 Kia Soul on or around 01/10/2022 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2012 Kia Soul is a Vehicle subject to the Theft-Prone Design. Plaintiff leased a 2021 Kia Rio on or around 11/10/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2021 Kia Rio is a Vehicle subject to the Theft-Prone Design.

1093. Plaintiff Austin Williams is a resident of Webster, TX. Plaintiff purchased a 2012 Hyundai Tucson on or around 06/13/2022 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2012 Hyundai Tucson is a Vehicle subject to the Theft-Prone Design.

1094. Plaintiff Charles Williams is a resident of Houston, TX. Plaintiff purchased a 2013 Kia Rio on or around 06/23/2013 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2013 Kia Rio is a Vehicle subject to the Theft-Prone Design.

1095. Plaintiff Lenora Woods is a resident of Dallas, TX. Plaintiff purchased a 2019 Hyundai Tucson on or around 08/07/2019 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Hyundai Tucson is a Vehicle subject to the Theft-Prone Design. Plaintiff purchased a

COMPLAINT

2024 Kia Sportage on or around 02/12/2024 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2024 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

1096. Plaintiff JohnK Wright V is a resident of Plano, TX. Plaintiff purchased a 2017 Kia Sportage on or around 01/23/2017 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

1097. Plaintiff Caron Yarbrough is a resident of Denison, TX. Plaintiff purchased a 2016 Kia Soul on or around 11/26/2019 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Kia Soul is a Vehicle subject to the Theft-Prone Design.

1098. Plaintiff Stewart Younger is a resident of Biloxi, MS, and purchased the Vehicles in Texas. Plaintiff purchased a 2014 Kia Forte on or around 10/16/2016 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2014 Kia Forte is a Vehicle subject to the Theft-Prone Design. Plaintiff purchased a 2014 Kia Forte on or around 10/01/2016 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2014 Kia Forte is a Vehicle subject to the Theft-Prone Design.

**41.    Utah Plaintiffs**

1099. Plaintiff Michelle Armstrong is a resident of Tacoma, WA, and purchased the Vehicle in Utah. Plaintiff purchased a 2016 Hyundai Elantra on or around 05/23/2022 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and

belief, Plaintiff's 2016 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

1100. Plaintiff Andrew Bair is a resident of Erda, UT. Plaintiff purchased a 2019 Hyundai Santa Fe on or around 11/07/2019 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Hyundai Santa Fe is a Vehicle subject to the Theft-Prone Design. Plaintiff purchased a 2013 Hyundai Elantra on or around 01/15/2015 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2013 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

1101. Plaintiff Oscar Figueroa is a resident of Salt Lake City, UT. Plaintiff purchased a 2018 Hyundai Elantra on or around 07/30/2020 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

1102. Plaintiff Meleane Laumatia is a resident of Las Vegas, NV. Plaintiff purchased a 2013 Hyundai Elantra in Utah on or around 05/07/2022 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2013 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design. On or about 08/20/2024, Plaintiff's Vehicle was stolen.

1103. Plaintiff Gordon Mortensen is a resident of West Valley City, UT. Plaintiff purchased a 2012 Kia Sportage on or around 03/31/2012 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2012 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

1104. Plaintiff Sidnye Paiz is a resident of Magna, UT. Plaintiff purchased a 2016 Hyundai Elantra on or around 04/27/2022 for personal use. Plaintiff's Vehicle has

COMPLAINT

a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

1105. Plaintiff Dante Ramirez is a resident of St. Augustine, FL, and purchased the Vehicle in Utah. Plaintiff purchased a 2014 Kia Soul on or around 08/24/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2014 Kia Soul is a Vehicle subject to the Theft-Prone Design. Plaintiff purchased a 2019 Kia Soul on or around 06/24/2023 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Kia Soul is a Vehicle subject to the Theft-Prone Design.

1106. Plaintiff Toshia Sorensen is a resident of Magna, UT. Plaintiff leased a 2020 Kia Sorento on or around 06/14/2023 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2020 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

### 42.   Vermont Plaintiffs

1107. Plaintiff Tyler Baker is a resident of Underhill, VT. Plaintiff purchased a 2015 Kia Forte on or around 10/01/2020 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2015 Kia Forte is a Vehicle subject to the Theft-Prone Design.

1108. Plaintiff Nancy Cook is a resident of Essex Junction, VT. Plaintiff purchased a 2014 Hyundai Elantra on or around 06/10/2015 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2014 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

COMPLAINT

### 43.    Virginia Plaintiffs

1109. Plaintiff Sherri Adams is a resident of Newport News, VA.  Plaintiff purchased a 2017 Hyundai Sonata on or around 08/20/2019 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2017 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

1110. Plaintiff Kieran Arcand is a resident of Rehoboth Beach, DE, and purchased the Vehicle in Virginia.  Plaintiff purchased a 2012 Hyundai Elantra on or around 08/26/2014 for personal and business use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2012 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

1111. Plaintiff Sherryn Beckner is a resident of Vinton, VA.  Plaintiff purchased a 2015 Hyundai Elantra on or around 04/05/2016 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2015 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

1112. Plaintiff Daniel Crowder is a resident of Petersburg, VA.  Plaintiff leased a 2015 Hyundai Sonata on or around 02/10/2025 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2015 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

1113. Plaintiff Tiffany Daniels is a resident of Carrollton, GA, and purchased the Vehicle in Virginia.  Plaintiff purchased a 2014 Kia Optima on or around 08/10/2022 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2014 Kia Optima is a Vehicle subject to the Theft-Prone Design.

1114. Plaintiff Rudolph Ditto is a resident of Las Vegas, NV, and purchased the

Vehicle in Virginia. Plaintiff purchased a 2015 Kia Soul on or around 05/31/2015 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2015 Kia Soul is a Vehicle subject to the Theft-Prone Design.

1115. Plaintiff Kari Espada is a resident of Newport News, VA. Plaintiff purchased a 2017 Hyundai Sonata on or around 10/25/2018 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

1116. Plaintiff Paul Farrar is a resident of Spencer, VA. Plaintiff purchased a 2021 Kia Seltos on or around 08/23/2020 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2021 Kia Seltos is a Vehicle subject to the Theft-Prone Design.

1117. Plaintiff Amanda Fitzwater is a resident of Harrisonburg, VA. Plaintiff purchased a 2019 Kia Sorento on or around 04/23/2020 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

1118. Plaintiff Staci Grogan is a resident of Woodbridge, VA. Plaintiff purchased a 2018 Kia Sorento on or around 12/20/2020 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

1119. Plaintiff Arleaciea Haymes is a resident of Danville, VA. Plaintiff leased a 2015 Hyundai Elantra on or around 01/28/2023 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2015 Hyundai Elantra

COMPLAINT

is a Vehicle subject to the Theft-Prone Design.

1120. Plaintiff Monica Howard is a resident of North Chesterfield, VA. Plaintiff leased a 2019 Kia Optima on or around 06/17/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Kia Optima is a Vehicle subject to the Theft-Prone Design.

1121. Plaintiff Adam Hunt is a resident of Baltimore, MD, and purchased the Vehicle in Virginia. Plaintiff purchased a 2019 Hyundai Kona on or around 01/20/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Hyundai Kona is a Vehicle subject to the Theft-Prone Design.

1122. Plaintiff Jessica Jackson is a resident of Baltimore, MD, and purchased the Vehicle in Virginia. Plaintiff purchased a 2016 Hyundai Elantra on or around 09/19/2017 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design. On or about 05/18/2025, Plaintiff's Vehicle was stolen.

1123. Plaintiff Kanika Johnson is a resident of Newport News, VA. Plaintiff purchased a 2019 Hyundai Accent on or around 09/23/2019 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Hyundai Accent is a Vehicle subject to the Theft-Prone Design.

1124. Plaintiff David Jung is a resident of Fairfax, VA. Plaintiff purchased a 2013 Hyundai Elantra on or around 09/09/2013 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2013 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

1125. Plaintiff Brad Kramer is a resident of Fredericksburg, VA. Plaintiff

COMPLAINT

purchased a 2017 Hyundai Sonata on or around 03/03/2017 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2017 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

1126. Plaintiff Noah Magerkorth is a resident of Centreville, VA.  Plaintiff purchased a 2014 Hyundai Accent on or around 02/29/2016 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2014 Hyundai Accent is a Vehicle subject to the Theft-Prone Design.

1127. Plaintiff David McDonough is a resident of Farmville, VA.  Plaintiff purchased a 2017 Hyundai Elantra on or around 10/23/2023 for personal and business use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2017 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

1128. Plaintiff Takella Mease is a resident of Danville, VA.  Plaintiff purchased a 2016 Kia Forte on or around 07/23/2022 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2016 Kia Forte is a Vehicle subject to the Theft-Prone Design.

1129. Plaintiff Marian Motley is a resident of Richmond, VA.  Plaintiff purchased a 2016 Hyundai Sonata on or around 06/20/2019 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2016 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

1130. Plaintiff Jason Noel is a resident of Raphine, VA.  Plaintiff purchased a 2013 Kia Soul on or around 02/13/2024 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2013 Kia Soul is a Vehicle subject

to the Theft-Prone Design.

1131. Plaintiff Michelle Price is a resident of Shawboro, NC, and purchased the Vehicle in Virginia. Plaintiff purchased a 2015 Hyundai Sonata on or around 01/01/2019 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2015 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

1132. Plaintiff Tyriq Taliferro is a resident of Richmond, VA. Plaintiff purchased a 2015 Kia Forte on or around 09/26/2015 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2015 Kia Forte is a Vehicle subject to the Theft-Prone Design. Plaintiff's Vehicle was damaged due to an attempted theft.

1133. Plaintiff Christie Vedaa is a resident of Manitou Beach-Devils Lake, MI, and purchased the Vehicle in Virginia. Plaintiff purchased a 2018 Hyundai Tucson on or around 06/07/2018 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Hyundai Tucson is a Vehicle subject to the Theft-Prone Design. On or about 01/09/2024, Plaintiff's Vehicle was stolen.

1134. Plaintiff Angela Wagner is a resident of Henrico, VA. Plaintiff purchased a 2018 Hyundai Tucson on or around 02/23/2019 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Hyundai Tucson is a Vehicle subject to the Theft-Prone Design.

1135. Plaintiff Anica Walker is a resident of Washington, DC, and purchased the Vehicle in Virginia. Plaintiff leased a 2018 Kia Forte on or around 06/22/2020 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Kia Forte is a Vehicle subject to the Theft-Prone Design.

1136. Plaintiff Anson Williams is a resident of Chester, VA. Plaintiff purchased

- 321 -
COMPLAINT

a 2013 Hyundai Accent on or around 07/05/2013 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2013 Hyundai Accent is a Vehicle subject to the Theft-Prone Design.

1137. Plaintiff Dan Zhovtis is a resident of Fredericksburg, VA. Plaintiff purchased a 2018 Kia Optima on or around 10/23/2018 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Kia Optima is a Vehicle subject to the Theft-Prone Design.

### 44.    Washington Plaintiffs

1138. Plaintiff Jodith Allen is a resident of Coleman, TX, and purchased the Vehicle in Washington. Plaintiff purchased a 2018 Hyundai Tucson on or around 04/01/2018 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Hyundai Tucson is a Vehicle subject to the Theft-Prone Design.

1139. Plaintiff Danielle Anderson is a resident of Spokane Valley, WA. Plaintiff purchased a 2022 Kia Sportage on or around 11/26/2021 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2022 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

1140. Plaintiff TImothy Bartlett is a resident of Spanaway, WA. Plaintiff purchased a 2021 Kia Seltos on or around 05/25/2020 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2021 Kia Seltos is a Vehicle subject to the Theft-Prone Design.

1141. Plaintiff Carol Berlin is a resident of lakewood, WA. Plaintiff purchased a 2012 Kia Soul on or around 06/24/2021 for personal use. Plaintiff's Vehicle has a

COMPLAINT

traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2012 Kia Soul is a Vehicle subject to the Theft-Prone Design.

1142. Plaintiff Akira Blay is a resident of Centralia, WA. Plaintiff leased a 2019 Kia Forte on or around 10/09/2023 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Kia Forte is a Vehicle subject to the Theft-Prone Design.

1143. Plaintiff Ryan Duncan is a resident of Rosalia, WA. Plaintiff purchased a 2015 Kia Soul on or around 06/23/2021 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2015 Kia Soul is a Vehicle subject to the Theft-Prone Design.

1144. Plaintiff Mark Flaten is a resident of Federal Way, WA. Plaintiff purchased a 2014 Hyundai Elantra GT on or around 07/25/2014 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2014 Hyundai Elantra GT is a Vehicle subject to the Theft-Prone Design.

1145. Plaintiff Desiree Fryer is a resident of Port Orchard, WA. Plaintiff purchased a 2012 Hyundai Accent on or around 04/13/2019 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2012 Hyundai Accent is a Vehicle subject to the Theft-Prone Design.

1146. Plaintiff Chrystee Gillett is a resident of Port Orchard, WA. Plaintiff purchased a 2020 Kia Sorento on or around 11/18/2023 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2020 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

COMPLAINT

1147. Plaintiff Karynna Jackson is a resident of Tacoma, WA. Plaintiff purchased a 2014 Kia Forte on or around 05/01/2014 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2014 Kia Forte is a Vehicle subject to the Theft-Prone Design.

1148. Plaintiff Jesse Just is a resident of Lakewood, WA. Plaintiff purchased a 2015 Kia Soul on or around 05/26/2015 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2015 Kia Soul is a Vehicle subject to the Theft-Prone Design.

1149. Plaintiff Jesse Kilmon is a resident of Seattle, WA. Plaintiff purchased a 2017 Hyundai Elantra GT on or around 03/01/2023 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Hyundai Elantra GT is a Vehicle subject to the Theft-Prone Design.

1150. Plaintiff Joshua King is a resident of Lacey, WA. Plaintiff purchased a 2022 Kia Sorento on or around 05/08/2022 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2022 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

1151. Plaintiff Laura Lancaster is a resident of Cheney, WA. Plaintiff purchased a 2020 Kia Forte on or around 06/23/2025 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2020 Kia Forte is a Vehicle subject to the Theft-Prone Design.

1152. Plaintiff Courtney Lee is a resident of Pascagoula, MS, and purchased the Vehicle in Washington. Plaintiff purchased a 2011 Hyundai Sonata on or around 12/23/2016 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel

COMPLAINT

key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2011 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

1153. Plaintiff Allen Lightsey is a resident of Petal, MS, and purchased the Vehicle in Washington.  Plaintiff purchased a 2013 Hyundai Elantra on or around 03/10/2015 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2013 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

1154. Plaintiff Lacey Mackey is a resident of Vancouver, WA.  Plaintiff purchased a 2021 Kia K5 on or around 07/27/2022 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2021 Kia K5 is a Vehicle subject to the Theft-Prone Design.

1155. Plaintiff Shannon McKenzie is a resident of Spokane, WA.  Plaintiff purchased a 2014 Hyundai Elantra on or around 10/31/2014 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2014 Hyundai Elantra is a Vehicle subject to the Theft-Prone Design.

1156. Plaintiff Gina Natucci is a resident of Parkland, WA.  Plaintiff purchased a 2017 Kia Forte on or around 05/08/2017 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2017 Kia Forte is a Vehicle subject to the Theft-Prone Design.

1157. Plaintiff Julie Peltola is a resident of Longview, WA.  Plaintiff purchased a 2017 Hyundai Accent on or around 06/22/2018 for personal use.  Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system.  Plaintiff purchased insurance for the Vehicle.  On information and belief, Plaintiff's 2017 Hyundai Accent is a Vehicle subject to the Theft-Prone Design.

1158. Plaintiff Carolyn Pierce is a resident of Kent, WA.  Plaintiff purchased a

COMPLAINT

2021 Hyundai Kona on or around 03/30/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2021 Hyundai Kona is a Vehicle subject to the Theft-Prone Design.

1159. Plaintiff Alexandra Roos is a resident of Seattle, WA. Plaintiff purchased a 2016 Kia Soul on or around 09/10/2022 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Kia Soul is a Vehicle subject to the Theft-Prone Design.

1160. Plaintiff Evelyn Seltz is a resident of Lynnwood, WA. Plaintiff leased a 2020 Kia Forte on or around 03/11/2023 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2020 Kia Forte is a Vehicle subject to the Theft-Prone Design.

1161. Plaintiff Kim Sola is a resident of Graham, WA. Plaintiff purchased a 2019 Kia Sportage on or around 05/23/2022 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

1162. Plaintiff Ann Soulier is a resident of King City, OR, and purchased the Vehicle in Washington. Plaintiff purchased a 2012 Hyundai Santa Fe on or around 11/11/2019 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2012 Hyundai Santa Fe is a Vehicle subject to the Theft-Prone Design.

1163. Plaintiff Veronica Williams is a resident of Renton, WA. Plaintiff purchased a 2020 Kia Forte on or around 03/04/2022 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2020 Kia Forte is a

COMPLAINT

Vehicle subject to the Theft-Prone Design.

1164. Plaintiff Wadell Williams is a resident of Renton, WA. Plaintiff purchased a 2015 Hyundai Accent on or around 06/02/2015 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2015 Hyundai Accent is a Vehicle subject to the Theft-Prone Design. On or about 12/06/2024, Plaintiff's Vehicle was stolen.

1165. Plaintiff Matt Wuscher is a resident of Shelton, WA. Plaintiff purchased a 2017 Hyundai Accent on or around 10/31/2022 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Hyundai Accent is a Vehicle subject to the Theft-Prone Design.

### 45.    West Virginia Plaintiffs

1166. Plaintiff Timothy Cavallier is a resident of Savannah, GA, and purchased the Vehicle in West Virginia. Plaintiff leased a 2020 Kia Sportage on or around 04/23/2024 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2020 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

1167. Plaintiff Loretta Cogar is a resident of Lost Creek, WV. Plaintiff purchased a 2018 Kia Sportage on or around 06/19/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

1168. Plaintiff Angela Meadows is a resident of Fayetteville, WV. Plaintiff purchased a 2015 Kia Forte on or around 03/11/2016 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2015 Kia Forte is a Vehicle subject to the Theft-Prone Design.

COMPLAINT

1169. Plaintiff Douglas Stenda is a resident of Glen Dale, WV. Plaintiff purchased a 2021 Kia Sportage on or around 10/20/2021 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2021 Kia Sportage is a Vehicle subject to the Theft-Prone Design.

1170. Plaintiff Ryan Watson is a resident of London, WV. Plaintiff purchased a 2019 Kia Sorento on or around 12/23/2019 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

**46.    Wisconsin Plaintiffs**

1171. Plaintiff Mary Becerra is a resident of Milwaukee, WI. Plaintiff purchased a 2014 Kia Rio on or around 08/01/2014 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2014 Kia Rio is a Vehicle subject to the Theft-Prone Design. On or about 01/18/2024, Plaintiff's Vehicle was stolen.

1172. Plaintiff Andrea Covey is a resident of Sheboygan, WI. Plaintiff purchased a 2015 Kia Soul on or around 07/06/2023 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2015 Kia Soul is a Vehicle subject to the Theft-Prone Design.

1173. Plaintiff Alan Dekker is a resident of New Holstein, WI. Plaintiff purchased a 2017 Kia Rio on or around 01/03/2023 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Kia Rio is a Vehicle subject to the Theft-Prone Design.

1174. Plaintiff Michael Eddy is a resident of Milwaukee, WI. Plaintiff purchased

COMPLAINT

a 2019 Hyundai Accent on or around 03/23/2020 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Hyundai Accent is a Vehicle subject to the Theft-Prone Design.

1175. Plaintiff Victoria Fenty is a resident of La Crescent, MN, and purchased the Vehicle in Wisconsin. Plaintiff purchased a 2018 Kia Soul on or around 04/23/2019 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2018 Kia Soul is a Vehicle subject to the Theft-Prone Design.

1176. Plaintiff Serena Ganoung is a resident of Palatine, IL, and purchased the Vehicle in Wisconsin. Plaintiff purchased a 2015 Kia Sorento on or around 06/23/2022 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2015 Kia Sorento is a Vehicle subject to the Theft-Prone Design.

1177. Plaintiff Michael May is a resident of Lindenhurst, IL, and purchased the Vehicle in Wisconsin. Plaintiff purchased a 2017 Kia Soul on or around 12/30/2019 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Kia Soul is a Vehicle subject to the Theft-Prone Design.

1178. Plaintiff Colleen McCollom Jamison is a resident of Endeavor, WI. Plaintiff purchased a 2015 Kia Sorento on or around 06/01/2018 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2015 Kia Sorento is a Vehicle subject to the Theft-Prone Design. Plaintiff purchased a 2015 Kia Forte on or around 05/30/2019 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2015 Kia Forte is a Vehicle subject to the Theft-Prone Design.

1179. Plaintiff James Miller is a resident of Sun City, AZ, and purchased the Vehicles in Wisconsin. Plaintiff purchased a 2017 Kia Forte on or around 06/23/2017 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2017 Kia Forte is a Vehicle subject to the Theft-Prone Design. Plaintiff purchased a 2016 Kia Optima on or around 06/23/2016 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2016 Kia Optima is a Vehicle subject to the Theft-Prone Design.

1180. Plaintiff Gregory Movrich is a resident of Mequon, WI. Plaintiff purchased a 2019 Hyundai Sonata on or around 12/02/2019 for personal use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2019 Hyundai Sonata is a Vehicle subject to the Theft-Prone Design.

1181. Plaintiff Josue Reyes is a resident of Waukegan, IL, and purchased the Vehicle in Wisconsin. Plaintiff purchased a 2014 Kia Soul on or around 09/02/2022 for personal and business use. Plaintiff's Vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff purchased insurance for the Vehicle. On information and belief, Plaintiff's 2014 Kia Soul is a Vehicle subject to the Theft-Prone Design. On or about 08/12/2024, Plaintiff's Vehicle was stolen.

### 47. Together, "Plaintiffs"

1182. As a result of (a) Defendants' failure to equip certain Kia and Hyundai Vehicles with anti-theft engine immobilizers or any equivalent technology to prevent or deter theft, (b) Defendants' violation of accepted industry standards and practices, and (c) Defendants' noncompliance with federal and state safety standards and regulations, Plaintiffs have and/or continue to pay insurance premiums for their owned or leased Vehicles that are above and beyond what Plaintiffs would otherwise pay for the same insurance coverage on the same Vehicle but for the presence of the Theft-

Prone Design.

1183. Had Defendants disclosed the Theft-Prone Design, Plaintiffs would not have purchased their Vehicles, or would have paid less to do so.

1184. Plaintiffs reviewed and relied on Hyundai and/or Kia's representations about the Vehicles' safety, reliability, and quality, advertised by marketing material, websites, manuals for Vehicles, commercials, and dealership spokespersons.

1185. Defendants failed to disclose the Theft-Prone Design and instead touted the Vehicles' safety, reliability, and quality, which prevented Plaintiffs from uncovering that their Vehicles were affected by the Theft-Prone Design.

**B.    Defendants**

1186. Defendant Hyundai is a California corporation with its principal place of business located at 10550 Talbert Avenue, Fountain Valley, California 92708.  Hyundai engages in substantial business throughout the United States, including in the Central District of California.

1187. Hyundai is a subsidiary of Hyundai Motor Company and is actively engaged in manufacturing, assembling, marketing, and distributing Hyundai vehicles sold in California and the rest of the United States.

1188. Hyundai's C-Suite executives and employees who are responsible for the manufacture, development, distribution, marketing, sales, customer service, and warranty servicing of Hyundai vehicles, are located at the company's Fountain Valley headquarters in California.  As described in greater detail below, the decisions regarding the marketing and sale of the Vehicles, the development and issuance of safety recalls and product updates, and decisions regarding the disclosure or non-disclosure of the Theft-Prone Design were in whole or substantial part made by Hyundai at its California headquarters.

1189. Hyundai has 835 dealerships across the United States that serve as its

COMPLAINT

agents to consumers, including Plaintiffs.[3]  For example, in Hyundai's announcement of its "Anti-Theft Software Upgrade," it instructs consumers to bring their Vehicles into "Hyundai dealers" for the software update.  Similarly, in other recall notices to consumers, Hyundai instructs owners and lessees of Vehicles to contact the "nearest Hyundai dealer" to schedule defect repairs.[4]

1190. On information and belief, Hyundai controls details regarding its dealers' operations through various written agreements, such as: (a) granting each dealer a license to use its respective trademarks and intellectual property; (b) furnishing each dealer with marketing materials to assist in the sale of its vehicles; (c) providing training to dealership personnel to assist in its sales activities; (d) providing guidance to dealerships and dealership personnel as to how to handle customers, including, but not limited to, handling complaints regarding the Theft-Prone Design; and (e) prohibiting its dealers from engaging in certain practices that otherwise detract from its respective brands or undermine the sale of its respective vehicles, including the Vehicles.

1191. Defendant Kia is a California corporation with its principal place of business located at 111 Peter Canyon Rd., Irvine, California 92606.  Kia is a subsidiary of Kia Corporation and is actively engaged in manufacturing, assembling, marketing, and distributing Kia vehicles sold in the United States, including in California.

1192. Kia's C-Suite executives and employees who are responsible for the manufacture, development, distribution, marketing, sales, customer service, and warranty servicing of Kia vehicles, are located at the company's Irvine headquarters in California.  As described in greater detail below, the decisions regarding the marketing

---

[3]  Hyundai, *Hyundai in America*, https://www.hyundaiusa.com/us/en/why-hyundai/hyundai-in-america (accessed May 15, 2025) ("How many states does Hyundai have a direct impact in?  [Hyundai]'s dealer network has 835 independent dealers across all fifty states.  The ten states with the highest number of [Hyundai] dealerships are California, Texas, Florida, New York, Pennsylvania, Illinois, Ohio, North Carolina, Georgia, and Virginia.").

[4]  Hyundai Motor America, *Important Safety Recall, Hyundai Recall Number 195, NHTSA Recall Number 20V-543*, https://static.nhtsa.gov/odi/rcl/2020/RCONL-20V543-0565.pdf (accessed May 15, 2025).

COMPLAINT

and sale of the Vehicles, the development and issuance of safety recalls and product updates, and decisions regarding the disclosure or non-disclosure of the Theft-Prone Design were in whole or substantial part made by Kia at its California headquarters.

1193. Kia has a network of over 750 dealers in the United States that serve as its agents to customers.[5]  For example, Kia tells customers that they must "bring their vehicle[s] to the nearest Kia dealership" in order to receive the "enhanced security software" as a purported remedy for the Theft-Prone Design.[6]

1194. On information and belief, Kia controls various details regarding its dealers' operations through various written agreements, such as: (a) granting each dealer a license to use its respective trademarks and intellectual property; (b) furnishing each dealer with marketing materials to assist in the sale of its vehicles; (c) providing training to dealership personnel to assist in its sales activities; (d) providing guidance to dealerships and dealership personnel as to how to handle customers, including, but not limited to, handling complaints regarding the Theft-Prone Design; and (e) prohibiting its dealers from engaging in certain practices that otherwise detract from its respective brands or undermine the sale of its respective vehicles, including the Vehicles.

## III.  JURISDICTION AND VENUE

1195. This Court has subject-matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1331.  This Court also has subject-matter jurisdiction over this matter pursuant to 15 U.S.C. § 2310(d)(1)(B) because the amount in controversy for each individual claim is more than $25.00, the total amount in controversy is more than the sum or value

---

[5] PR Newswire, *KIA AMERICA COMPLETES BEST RETAIL SALES YEAR IN COMPANY HISTORY* (Jan. 4, 2023), https://www.prnewswire.com/news-releases/kia-america-completes-best-retail-sales-year-in-company-history-301713187.html (accessed May 15, 2025).

[6] Tara Molina, CBS News, *Kia hopes new software update curbs spiking auto theft crisis* (Mar. 8, 2023), https://www.cbsnews.com/chicago/news/kia-software-update-auto-theft-crisis/ (accessed May 15, 2025); Gregg Palermo and Associated Press, Spectrum News, *Hyundai, Kia release free software update to prevent thefts* (Feb. 14, 2023), https://spectrumlocalnews.com/mo/st-louis/news/2023/02/14/hyundai-releases-free-software-update-to-prevent-thefts (accessed May 15, 2025).

COMPLAINT

of \$50,000.00, and this action is not brought as a class action.

1196. This Court has supplemental jurisdiction over the state court claims pursuant to 28 U.S.C. § 1367.

1197. Defendants are subject to personal jurisdiction in the State of California pursuant to Federal Rule of Civil Procedure 4(k) and the Fourteenth Amendment of the United States Constitution.  In particular, this Court has general personal jurisdiction over Defendants as both companies are incorporated in California and maintain their principal places of business in California.  This Court has specific personal jurisdiction over Defendants as they purposely served the California market for automobiles.

1198. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.  Defendants are both headquartered in this district, transact substantial business in this district, advertise in this district, and received substantial revenue and profits from sales and/or leases of the Vehicles in this district.  Therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district.

## IV.  FACTS

**A.  Kia and Hyundai's Failure to Install Anti-Theft Technology in Their Vehicles Allowed the "Kia Boys" to Start a Dangerous Viral Social Media Challenge that Killed Teenagers and Community Members, Exposing the Extreme Nature of Kia and Hyundai's Misconduct.**

1199. Kia and Hyundai became infamous among car thieves and joyriders in the fall of 2021 when the "Kia Boys" went viral on social media platforms such as TikTok, YouTube, and Instagram.  Seeking "likes" on their social media posts and joyride thrills, the Kia Boys were young teenagers who exposed and took advantage of Kia and Hyundai's failure to install anti-theft technology in their Vehicles and comply with federal and state law.

1200. Using only a USB charging cable and a screwdriver, in just minutes the Kia Boys could break into, start, and steal certain models of the Kia and Hyundai Vehicles that did not have the anti-theft prevention engine immobilizer technology.  The

Kia Boys took to social media platforms to share their method of theft and inform their followers of the vulnerable Kia and Hyundai Vehicles.  Stealing and driving these Vehicles soon became dubbed "the Kia Boys challenge."

1201. The Kia Boys challenge was attempted by young teenagers—sometimes under the legal driving age—who, after successfully breaking into and starting Kia or Hyundai Vehicles without a key, took dangerous joyrides.  The Kia Boys were known for swerving, speeding, ignoring traffic lights and road lines, and performing tricks in the stolen cars.  The Kia Boys became so well known for their recklessness and dangerous driving that passersby and other drivers learned to run or pull over to avoid getting hit or killed by the stolen car.

1202. The dangerous Kia Boys challenge spread nationwide and instigated a series of thefts resulting in severe injuries and deaths.

1203. For example, in July 2022, a 14-year-old Central Ohio teenager died after he lost control of a stolen Hyundai while driving the vehicle at 80 miles per hour.  Of the teen's two passengers—also 14-year-old boys—one passed away and one was seriously injured.[7]  Notoriously, the surviving passenger went on to steal another Hyundai and crashed the vehicle into a garbage truck, sending all four teenagers in the stolen vehicle to the hospital.[8]

1204. Thefts of Kia and Hyundai Vehicles have increased dramatically.  For example, between January 1, 2022, and October 18, 2022, there were 7,833 successful and attempted vehicle thefts in Columbus, Ohio.  Of those thefts, Kia and Hyundai vehicles accounted for about 60% of the attempted thefts and about 42% of the

---

[7] Bri Buckley, ABC6, *"You're driving yourself into an early grave," leaders call for teen car theft to stop* (July 25, 2022), https://abc6onyourside.com/news/local/youre-driving-yourself-into-an-early-grave-community-religious-leaders-calls-for-teen-car-theft-to-stop-real-kia-boys-hyundai-fatal-crash-we-are-linden-columbus-franklin-county-ohio (accessed May 15, 2025).

[8] Steve Levine, ABC6, *Police in Central Ohio say teens stealing cars is now a trend that is escalating quickly* (Aug. 17, 2022), https://abc6onyourside.com/news/local/police-in-central-ohio-say-teens-stealing-cars-is-now-a-trend-that-is-escalating-quickly-whitehall-columbus-real-kia-boys-franklin-county-sheriffs-office (accessed May 15, 2025).

COMPLAINT

successful thefts.  During that same period in 2022, there were more than 21 times as many attempted thefts and almost five times as many successful thefts of Kia and Hyundai Vehicles as the year prior.[9]

1205. Specifically, from January 1, 2021, to October 8, 2021, there were four reported theft attempts of both Kia and Hyundai Vehicles combined.  During that same period in 2022, the number jumped to 860 reported theft attempts.  From January 1, 2021, to October 8, 2021, there were 461 reported thefts of both Kia and Hyundai Vehicles combined.  During that same period in 2022, the number jumped to 2740 reported thefts.[10]

| | 1/1/2022-10/18/2022 | 1/1/2021-10/18/2021 | Difference | % Increase from 2021 to 2022 |
|---|---|---|---|---|
| Motor Vehicle Thefts & Attempts | 7833 | 4913 | 2920 | 59% |
| Just Attempts | 1417 | 93 | 1324 | 1424% |
| Just Motor Vehicle Thefts | 6416 | 4820 | 1596 | 33% |
| Hyundai Theft Attempts | 353 | 2 | 351 | 17550% |
| Hyundai Thefts | 1497 | 237 | 1260 | 532% |
| Kia Theft Attempts | 507 | 2 | 505 | 25250% |
| Kia Thefts | 1243 | 224 | 1019 | 455% |
| | | | | |
| Total Kia/ Hyundai Attempt | 860 | 4 | 856 | 21400% |
| Total Kia/Hyundai Theft | 2740 | 461 | 2279 | 494% |
| | | | | |
| % Of Attempts that are Kia/Hyundai | 60.69% | 4.30% | | |
| % Of MV Thefts that are Kia/Hyundai | 42.71% | 9.56% | | |

*Figure 1: City of Columbus's Attempt and Theft Data between January 2021 and October 2022*[11]

1206. Thefts of Kia and Hyundai Vehicles have also spread nationwide.  In

---

[9] *City of Columbus, Ohio v. Kia America, Inc. and Hyundai Motor America*, Case No. 2:23-cv-00654 (S.D. Ohio), ECF No. 1 (Compl. filed Feb. 15, 2023) ¶ 6.
[10] *Id.*
[11] *Id.*

COMPLAINT

Orleans Parish, Louisiana, one-quarter of the cars stolen in 2022 were manufactured by Hyundai or Kia.[12]

1207. In 2023, the New Orleans Police Department estimated that vehicle thefts had risen by 160% year over year and that 48% of stolen vehicles in the first five months of 2023 were manufactured by Hyundai or Kia.[13] On May 17, 2023, a New Orleans news report remarked, "[i]n the city of New Orleans, auto thefts have reached alarming levels, with a staggering statistic that one car is stolen, on average, every hour."[14]

1208. In St. Louis, Missouri, Kia and Hyundai thefts account for nearly 77% of all vehicles stolen in 2022.[15]

1209. In 2019, a little over 200 Kias and 200 Hyundai Vehicles were stolen statewide in Colorado.  In 2020, the number jumped to 400 each.  In 2021, the number more than doubled to over 1,000.  By August 31, 2022, over 3,000 Kias and 3,000 Hyundais had already been stolen.[16]

1210. In St. Paul, Minnesota, thefts of Kia Vehicles have increased 1300% while thefts of Hyundai Vehicles have increased 584%.[17]

1211. In Milwaukee, Wisconsin, Kia and Hyundai Vehicles represented two out

---

[12] Missy Wilkinson and Jeff Adleson, *Auto thefts surge in New Orleans; Kias, Hyundais responsible for uptick,* The Times-Picayune (January 30, 2023), https://www.nola.com/news/crime_police/auto-theft-new-orleans-kia-hyundai-challenge/article_48275114-9e6b-11ed-9fa1-076ae93ed4ba.html.

[13] Natasha Robin, *An auto theft epidemic is plaguing New Orleans, with nearly one car stolen every hour,* WVUE Fox 8 (May 17, 2023), https://www.fox8live.com/2023/05/17/an-auto-theft-epidemic-is-plaguing-new-orleans-with-nearly-one-car-stolen-every-hour/.

[14] *Id.*

[15] Kevin S. Held and Andy Banker, *City threatens to sue Kia and Hyundai, says cars are too easy to steal,* Nexstar Media Wire, (Aug. 30, 2022), https://www.wate.com/news/nexstar-media-wire/city-threatens-to-sue-kia-and-hyundai-says-cars-are-too-easy-to-steal/.

[16] Karen Morfitt, *KIA and Hyundai vehicles an easy target for thieves, and social media is partly the reason why*, CBS Colorado, (Aug. 31, 2022), https://www.cbsnews.com/colorado/news/kia-and-hyundai-vehicles-easy-target-thieves-social-media/.

[17] Caroline Cummings, *Thefts of Kia and Hyundai cars soar in St. Paul, data show*, CBS Minnesota (July 19, 2022), https://www.cbsnews.com/minnesota/news/thefts-of-kia-and-hyundai-cars-soar-in-st-paul-data-show/.

- 337 -
COMPLAINT

of every three vehicles stolen during the first half of 2021.[18]

1212. Current owners and lessees of the Kia and Hyundai Vehicles, including Plaintiffs, are paying the price of Kia and Hyundai's failure to install the anti-theft technology that would have prevented this dangerous nationwide trend.  As a result of the extreme surge in stolen Kia and Hyundai Vehicles, insurance companies are facing a substantial increase in insurance claims.[19]  Consequently, consumers of these affected Vehicles, including Plaintiffs, have been subjected to severe hikes in insurance premiums above and beyond what they would have paid in other brands' vehicles.[20]

1213. But for Kia and Hyundai's failure to install this theft prevention technology—technology they installed in identical cars sold outside of the United States—the number of attempted thefts and successful thefts would not have increased and the Plaintiffs would not be facing the losses they see today, including higher insurance premiums and accelerated depreciation of the Vehicles.  Plaintiffs were

---

[18] Clifford Atiyeh, *Hyundai, Kia Take Action after Cars Become Theft Targets in Milwaukee*, Car and Driver (Dec. 11, 2021), https://www.caranddriver.com/news/a38491394/hyundai-kia-thefts-milwaukee-action/.

[19] Highway Loss Data Institute, *Hyundai and Kia theft losses* (Dec. 2021), https://www.iihs.org/media/0e14ba17-a3c2-4375-8e66-081df9101ed2/opm7QA/HLDI%20Research/Bulletins/hldi_bulletin_38-28.pdf (accessed May 15, 2025) ("Hyundai and Kia claim frequencies were almost 80 percent higher than that of all other manufacturers combined for January–June 2021.").

[20] *See* Peter Valdes-Dapena, CNN Business, *Some auto insurers are refusing to cover certain Hyundai and Kia models* (Jan. 28, 2023), https://www.cnn.com/2023/01/27/business/progressive-state-farm-hyundai-kia/index.html (accessed May 15, 2025) (Progressive spokesman Jeff Sibel said, "Given that we price our policies based on the level of risk they represent, this explosive increase in thefts in many cases makes these vehicles extremely challenging for us to insure.  In response, in some geographic areas we have increased our rates and limited our sale of new insurance policies on some of these models."); Pete Grieve, The Charlotte Observer, *Car Insurance Woes Continue for Kia and Hyundai Owners Despite $200 Million Settlement* (May 22, 2023), https://www.charlotteobserver.com/money/kia-hyundai-settlement-car-insurance-coverage/ (accessed May 15, 2025) ("Some Kia and Hyundai drivers are still being denied car insurance or charged higher premiums because of the staggeringly high incidences of theft of many of the automakers' vehicles produced between 2011 and 2021 . . . . 'As theft rates continue to escalate across the U.S., more auto insurers are placing moratoriums on writing new policies for owners of at-risk Hyundai and Kia vehicles,' says Mark Friedlander, a spokesperson for the Insurance Information Institute, an industry trade group.  'Further, many vehicle owners are reporting their policy renewal premium has increased significantly.'").

COMPLAINT

promised a safe, reliable, and quality vehicle, and never received the benefit of their bargains.

**B.    Defendants Knowingly and Intentionally Designed, Manufactured, and/or Sold the Vehicles Without Standard and Mandatory Anti-Theft Technology.**

1214. Defendants knowingly and intentionally designed, manufactured, and/or sold the Vehicles without standard and mandatory anti-theft technology or design elements that would prevent the Vehicles from being stolen in mere minutes. Contrary to federal and industry anti-theft standards, Defendants' Vehicles can be started (in a matter of seconds), driven, steered, and otherwise operated without a key at all. Indeed, Defendants' vehicles sold outside of the United States had technology to prevent this from happening. These defects constitute significant security vulnerabilities, render the Vehicles easy to steal, expose members of the public to the risk of serious bodily injury arising from dangerous driving following the thefts, diminish the value of the Vehicles, increase the insurance premiums for the Vehicles, and cause consumers to be rejected from insurance opportunities, all of which has been documented.

1215. Specifically, Defendants failed to include an engine immobilizer. An immobilizer is an anti-theft device that prevents vehicles from being started until a verified code is received by a transponder that controls the engine and fuel.[21] This theft-prevention device thus prevents the vehicle from being "hot-wired" or started by any means other than an authorized key. Engine immobilizers have been described as "simple and low-cost anti-theft device[s]."[22]

1216. Engine immobilizers are critical for curtailing thieves who can bypass the ignition lock. The ignition lock (also referred to as an ignition cylinder or lock cylinder)

---

[21] *See* 81 Fed.Reg. 66833 (Sept. 29, 2016).
[22] Jan C. van Ours and Ben Vollaard, *The Engine Immobilizer: A Non-Starter for Car Thieves, CentER Discussion Paper Series No. 2013-004, TILEC Discussion Paper No. 2013-001* (Jan. 14, 2013), available to download at SSRN https://papers.ssrn.com/sol3/papers.cfm?abstract_id=2202165 (accessed May 14, 2025).

COMPLAINT

is the portion of the ignition assembly where the key is inserted.

1217. When the key is inserted, small actuators in the lock cylinder will match up with the key and allow the driver to turn it; a process that, in turn, rotates the vehicle's ignition switch and starts the vehicle.  However, when an engine immobilizer is also included, the fuel pump or starter motor remains disengaged unless and until the correct transponder code (located in or on the vehicle's corresponding key) is used.

1218. Thus, without the engine immobilizer, the Kia Boys merely had to remove the ignition lock to successfully start one of the Vehicles.  The fuel pump or starter motor was engaged merely with the ignition because Defendants chose to omit the engine immobilizer that would otherwise require additional transponder codes to start one of the Vehicles.

1219. These design flaws in the Vehicles allow thieves to easily steal the Vehicles in seconds because the Vehicles do not contain physical engine immobilizers or any other comparable and effective anti-theft equipment or device.  These flaws constitute the "Theft-Prone Design."  The years, makes, and models of the Plaintiffs' Vehicles affected by the Theft-Prone Design are listed in Exhibit A.

1220. Defendants' Theft-Prone Design drastically deviates from the industry standard.  A study conducted by the Highway Data Loss Institute found that immobilizers were standard on 62% of non-Hyundai and non-Kia vehicles by the introduction of the 2000 model year ("MY") vehicles.[23]  By the time 2015 MY vehicles were sold, 96% of non-Hyundai and non-Kia vehicles were equipped with immobilizers.

1221. However, around that same time, only 26% of Hyundai and Kia vehicles were sold with immobilizers as standard equipment.[24]  As competitors in the vehicle

---

[23] Highway Loss Data Institute, *Hyundai and Kia theft losses* (Dec. 2021), https://www.iihs.org/media/0e14ba17-a3c2-4375-8e66-081df9101ed2/opm7QA/HLDI%20Research/Bulletins/hldi_bulletin_38-28.pdf (accessed May 15, 2025).
[24] *Id.*

COMPLAINT

manufacturing industry, Kia and Hyundai were aware of their Theft-Prone Design and deviation.

1222. Hyundai and Kia vehicles contain similar components and internal design features, "shar[ing] products under [their] skin."[25]  Indeed, the same group of engineers work on Hyundai and Kia vehicles at Hyundai-Kia America Technical Center, Inc. ("HATCI").[26]  HATCI serves as the "authorized representative" for both Hyundai and Kia and their parent companies to fulfill the reporting requirements of the National Highway Traffic Safety Administration ("NHTSA") in connection with various safety standards.[27]

1223. Defendants issued Technical Service Bulletins[28] and Early Warning Reports to NHTSA that identified the makes and models of Vehicles that Defendants admit lacked the engine immobilizer technology and therefore contained the Theft-Prone Design.  The years, makes, and models of the Vehicles that Defendants identified in Technical Service Bulletins and other communications to regulatory authorities are listed in Exhibit B.

1224. Upon information and belief, Defendants knew the Vehicles contained the "Theft-Prone Design" from the beginning.  Defendants are experienced in the design and manufacture of consumer vehicles.  Defendants would have uncovered the Theft-Prone Design through the Federal Motor Vehicle Safety Standards self-certification process and pre-sale testing, as detailed below.

---

[25] Jim Henry, Forbes, *Balancing Act: Hyundai and Kia Share Products Under The Skin, But Must Not Blur Identities* (May 31, 2013) https://www.forbes.com/sites/jimhenry/2013/05/31/balancing-act-hyundai-and-kia-share-products-under-the-skin-but-must-avoid-blurring-identities/?sh=1f27d251c7a1 (accessed May 15, 2025).

[26] Hyundai Motor Group, *About Us*, https://www.hatci.com/about/ (accessed May 15, 2025).

[27] National Highway Traffic Safety Administration, *Manufacturer Portal, Domestic Manufacturers (49 CFR Part 566)*, https://vpic.nhtsa.dot.gov/mfrportal/Manufacturers/Submission/8d92323d-c94e-41a0-8f26-a21dae50d570 (accessed May 15 2025).

[28] These technical service bulletins include, but are not limited to, numbers SC993, P32, 23-01-014H-1, CS2301, CS2302, CS2303, CS2304, CS2305L, CS2305, CS2306L, CS2306, CS2307L, CS2307, CS2308, and CS2309.

COMPLAINT

1225. As experienced manufacturers required to report to NHTSA, Defendants were and are aware of applicable safety standards required for reporting, including the Federal Motor Vehicle Safety Standard No. 114 ("FMVSS No. 114").

1226. FMVSS No. 114 requires a vehicle's starting system to have theft-protection technology, including a key that contains a physical or electronic code enabling the vehicle operator to activate the engine, and which, "whenever the key is removed from the starting system prevents: (a) [t]he normal activation of the vehicle's engine or motor; and (b) [e]ither steering, or forward self-mobility, of the vehicle or both."[29]  In other words, it requires an engine immobilizer.

1227. Relevantly, FMVSS No. 114 was directly promulgated with the purpose of "decreas[ing] the likelihood that a vehicle is stolen."[30]  It therefore directly aimed to prevent the very scenario of which the Kia Boys took advantage.

1228. As the Kia Boys demonstrated with a USB cord and a screwdriver, a key was not necessary to activate the Hyundai and Kia Vehicles because the Vehicles did not have engine immobilizers.

1229. In addition to NHTSA reporting requirements, 49 U.S.C. § 30115 requires Defendants to certify to distributors or dealers that each of their vehicles "complies with applicable motor vehicle safety standards."

1230. Defendants also include a Vehicle Identification Number ("VIN") plate on each Vehicle.  It acts as an express warranty that Vehicles made by Defendants comply with all applicable motor vehicle safety standards.  On the VIN plates, Defendants expressly warrant that each Vehicle made by Defendants complies with all theft prevention standards that were in effect on the date of manufacture.

1231. On information and belief, Defendants extended these express warranties for every vehicle, including Plaintiffs' Vehicles, and warranted that each of the Vehicles "conforms to all applicable U.S.A. federal motor vehicle safety, bumper, and theft

---

[29] 49 C.F.R. 571.114 (2023).
[30] Id.

COMPLAINT

prevention standards in effect on the date of manufacture."

1232. Accordingly, Defendants reasonably knew of the relevant applicable motor vehicle safety standards and expressly certified that their Vehicles complied with them, including the anti-theft regulations of FMVSS No. 114.

1233. On information and belief, Defendants even employ consultants and engineers who are knowledgeable of the safety standards, including FMVSS No. 114, and who are involved in the design, manufacturing, and testing of the Vehicles prior to sale for compliance purposes.

1234. For example, Hyundai's parent company states that it conducts "preemptive quality and safety measures from the vehicle development stage."[31] It also markets its featured Product Quality Management systems based on "its quality philosophy of 'producing defect-free vehicles without breakdowns'" and its efforts to "develop new safety technologies."[32]

1235. Kia's parent company states that it conducts expansive presale testing on its vehicles to make sure they "endure over a long time without fault."[33] Further, it states that it conducts "performance and durability tests" on "all Kia vehicles sold in the U.S."[34]

1236. Hyundai claims that members of its staff "hand check nuts, bolts, cables, wiring and power components before any Hyundai leaves the plant. Then every vehicle is road tested to eliminate squeaks and rattles that can't be detected on the factory

[31] Hyundai, *ESG Magazine, Social*, https://www.hyundai.com/content/dam/hyundai/ww/en/images/company/sustainability/about-sustainability/hmc-2023-sustainability-report-social-en.pdf, pg. 64 (accessed May 15, 2025).
[32] *Id.*
[33] Kia, *Innovation Story: Performance*, https://www.kia.com/fj/experience/innovation-story/performance.Kappa.html (accessed May 15, 2025).
[34] Kia, *Kia Motors Annual Report 2017*, available at https://worldwide.kia.com/int/company/ir/archive/annual-report, pg. 58 (accessed May 15, 2025).

COMPLAINT

floor."[35]  Further, Hyundai states that it has "250 robots, equipped with optical sensors far more sensitive than the human eye, [that] inspect[] every vehicle for quality welds and proper fit.  This ensures tight seams and seals, as well as perfect alignment."[36]

1237. Together, upon information and belief, these detailed and robust safety inspections would have been grounded in a strong understanding of the federal and industry safety standards and the required compliance measures throughout the time of design, manufacture, and sale.  Specifically, Defendants should have uncovered the Theft-Prone Design through this testing and inspection phase and as part of their 49 U.S.C. § 30115 self-certification and reporting process.

1238. Upon information and belief, Defendants knew at the time of manufacture that their Vehicles did not include any anti-theft measures that satisfied FMVSS No. 114 and that the lack of anti-theft measures would make their Vehicles more prone to theft.

1239. Upon information and belief, Defendants, as sophisticated and knowledgeable long-time actors in the industry of vehicle manufacturing, distribution, sales, and regulation, knew at the time of manufacture that because their Vehicles did not include any anti-theft measures that satisfied FMVSS No. 114, making their Vehicles more prone to theft, the Vehicles would require a higher rate of insurance and would depreciate at a more rapid rate than a comparable vehicle with anti-theft measure that satisfied FMVSS No. 114.

1240. Upon information and belief, Defendants knew their Vehicles did not include any anti-theft measures that satisfied FMVSS No. 114 and continued to promote and sell the Vehicles in the U.S. anyway.

**C.**     **By Promoting the Safety, Reliability, and Quality of Their Vehicles, Hyundai and Kia Have Become Top-Selling Automakers in the United**

---

[35]  Hyundai, *2008 Hyundai Entourage*, available at https://www.auto-brochures.com/makes/Hyundai/Entourage/Hyundai_US%20Entourage_2008.pdf (accessed May 15, 2025).
[36] *Id.*

COMPLAINT

**States.**

1241. Hyundai sells and services its vehicles in the U.S. through its network of more than 835 dealerships nationwide.[37] It is currently one of the best-selling car brands in the U.S.[38] In the United States, Hyundai accounted for approximately 5.13% of the total market in 2024 and sold an average of 707,566 vehicles per year from 2010 to 2024.[39]

1242. Similarly, Kia sells and services its vehicles in the U.S. through its own network of over 750 dealerships.[40] In the United States, Kia accounted for approximately 4.94% of the total market in 2024 and sold an average of 625,894 vehicles per year from 2010 to 2024.[41]

1243. Hyundai's parent company, Hyundai Motor Company, markets its continued improvement of quality and safety measures and how it conducts extensive post-sale monitoring of its vehicles; it does so because Hyundai knows that safety and quality are material to consumers and affect the value of the vehicle:

> Hyundai is striving to achieve its quality philosophy of "producing defect-free vehicles without breakdowns" and develop new safety technologies that protect drivers, passengers, and pedestrians. To this end, we continue upgrading overall quality and safety systems not only by promoting preemptive quality and safety measures from the vehicle development stage but also by preventing any significant problems afterward through early detection, early improvement, and early after-

---

[37] Hyundai, *Hyundai in America*, https://www.hyundaiusa.com/us/en/why-hyundai/hyundai-in-america (accessed May 15, 2025).
[38] Good Car Bad Car Automotive Sales Data, *Hyundai Sales Figures – U.S Market* https://www.goodcarbadcar.net/hyundai-us-sales-figures/ (accessed May 15, 2025).
[39] *See id.*
[40] PR Newswire, *KIA AMERICA COMPLETES BEST RETAIL SALES YEAR IN COMPANY HISTORY* (Jan. 4, 2023), https://www.prnewswire.com/news-releases/kia-america-completes-best-retail-sales-year-in-company-history-301713187.html (accessed May 15, 2025).
[41] *See* Good Car Bad Car Automotive Sales Data, *Kia Sales Figures – U.S Market*, https://www.goodcarbadcar.net/kia-us-sales-figures/ (accessed May 15, 2025).

COMPLAINT

sales actions. In particular, we are focused on building a sustainable safety management system by developing training programs, operating quality and safety reporting centers, analyzing safety information, and establishing safety test sites to strengthen our quality verification capabilities, which in turn will enable us to maximize customer satisfaction and build trust.[42]

Hyundai has included similar messaging in its sustainability reports for the past few years.[43]

1244. In Hyundai's 2019 Tucson brochure, the company states that its "commitment to Hyundai owners doesn't end with the transfer of keys" and that the vehicle includes "more standard safety features" and that it is "flush with . . . advanced safety technologies."[44] In particular, Hyundai claims that "[u]nlike many competitors, Tucson doesn't require you to move up to costlier trim levels to enjoy" certain safety features.[45]

1245. The 2017 Hyundai Tucson brochure similarly provides that the vehicle contains "[a]n arsenal of advanced safety features" that are "class-leading."[46]

1246. Likewise, Kia advertises that part of what comprises "[t]he Kia difference"

---

[42] Hyundai, *ESG Magazine, Social*, https://www.hyundai.com/content/dam/hyundai/ww/en/images/company/sustainability/about-sustainability/hmc-2023-sustainability-report-social-en.pdf, pg. 64 (accessed May 15, 2025).

[43] Hyundai, *Road to Sustainability 2024 Sustainability Report*, https://www.hyundai.com/content/hyundai/ww/data/csr/data/0000000052/attach/english/hmc-2024-sustainability-report-en-v5.pdf, pg. 71 (accessed May 15, 2025); Hyundai, *Road to Sustainability 2023 Sustainability Report*, https://www.hyundai.com/content/hyundai/ww/data/csr/data/0000000051/attach/english/hmc-2023-sustainability-report-en-v9.pdf, pg. 64 (accessed May 15, 2025); Hyundai, *Road to Sustainability 2022 Sustainability Report*, https://www.hyundai.com/content/hyundai/ww/data/csr/data/0000000050/attach/english/hmc-2022-sustainability-report-en-v12.pdf, pg. 48 (accessed May 15, 2025).

[44] Hyundai, *Tucson 2019*, https://secure.viewer.zmags.com/publication/2f65b9a9#/2f65b9a9/1, pgs. 2, 8, 16 (accessed May 15, 2025).

[45] *Id*. at pg. 8.

[46] Hyundai, *Tucson 2017*, http://viewer.zmags.com/publication/006d43a3?cs:o=%272017_Certifed_Tucson_Brochure%27#/006d43a3/1, pgs. 2, 11 (accessed May 15, 2025).

COMPLAINT

is that Kia offers a "suite of advanced safety features designed to give you extra peace of mind."[47]

1247. Kia's Warranty and Consumer Information Manual and promotional materials for Kia Vehicles similarly promote its purported dedication to safety.

1248. In addition, Defendants also expressly warrant that their Vehicles are safe on each VIN plate affixed to every Vehicle that is manufactured by Defendants.

1249. Upon information and belief, these advertisements and warrants feature safety as a selling point and as a description of the value and quality of the Vehicles because Defendants believe it to be material to consumers, including Plaintiffs.

**D.     Despite Holding Out Their Vehicles as Safe, Reliable, and of High Quality, Defendants Have Known that Their "Theft-Prone Design" Is Unsafe, Unreliable, and Uncompliant.**

1250. It is well-established that auto thefts like that of the Kia Boys pose a serious safety risk to automobile operators and bystanders. In 1966, Congress enacted the National Traffic and Motor Vehicle Safety Act (the "Safety Act"), 49 U.S.C. § 30101, et seq., "to reduce traffic accidents and deaths and injuries resulting from traffic accidents" and "to prescribe motor vehicle safety standards."

1251. Just two years later, pursuant to the Safety Act, the Department of Transportation ("DOT") promulgated FMVSS No. 114. Titled "Theft Protection; Passenger Cars," FMVSS No. 114 set out to "reduce the incidence of unauthorized use of cars."[48]

1252. Specifically, FMVSS No. 114—requiring engine immobilizers—was implemented to increase motor vehicle safety by decreasing vehicle theft after it was "demonstrated that stolen cars constitute a major hazard to life and limb on the highways." In particular, the DOT reasoned that "[t]he evidence shows that cars operated by unauthorized persons are far more likely to cause unreasonable risk of

[47] Kia, *Why Kia?*, https://www.kia.com/us/en/why-kia (accessed May 15, 2025).
[48] 33 Fed.Reg. 6471 (Apr. 27, 1968).

COMPLAINT

accident, personal injury, and death than those which are driven by authorized individuals" and that a reduction in the incidence of auto theft "would not only reduce the number of injuries and deaths among those who steal cars, it would also protect the many innocent members of the public who are killed and injured by stolen cars each year."[49]

1253. Among the evidence used in support of the DOT's conclusion was a 1968 study conducted by the Department of Justice ("DOJ") that found that a substantially significant number of stolen vehicles result in personal injury accidents and that, like the current incidents of the Kia Boys today, "the large majority of car thieves [were] amateurs, almost half of whom [were] engaged in so-called 'joy-riding.'"[50]  Thus, FMVSS No. 114 instituted engine immobilizers specifically to deter incidents like the Kia Boys' thefts in order to increase motor vehicle safety.

1254. Most notably, the DOJ survey further found that "[t]he number of car thieves who start cars with so-called 'master keys' and devices which bypass the lock is also large enough to produce a significant safety hazard."[51]  Accordingly, FMVSS No. 114 was explicitly designed to "defeat" this method for stealing a vehicle, requiring "[a] large number of locking-system combinations and a steering or self-mobility lock."[52]

1255. While promulgating FMVSS No. 114, the DOT rejected several comments in opposition to the standard that argued that "since any locking system, no matter how it is constructed, can be defeated by persons possessing sufficient skill, equipment, and tenacity, provisions for ensuring removal of ignition keys would be futile because a thief need not make use of a key."[53]

1256. Since the DOT recognized the safety risks posed by auto thefts, the agency

---

[49] *Id.*
[50] *Id.*
[51] *Id.*
[52] *Id.*
[53] *Id.*

has continued to monitor the safety risks posed by auto thefts and modernize its rules designed to prevent auto thefts.  For example, Congress enacted the Motor Vehicle Theft Law Enforcement Act (the "Theft Act"), 49 U.S.C. § 33101, et seq., which directs NHTSA to establish theft prevention standards for passenger vehicles.[54]

1257. Pursuant to the Theft Act, NHTSA implemented 49 C.F.R. § 541, et seq., which requires manufacturers of designated high-theft passenger car lines to inscribe or affix the VIN onto the engine, the transmission, and major parts.  Each vehicle in a high-theft line must have its major parts and major replacement parts marked unless the vehicle line is granted an exemption from the parts-marking requirements ("PMR").  A manufacturer may petition for a PMR exemption when it plans to install a standard and effective anti-theft device on the entire line.[55]  The agency must determine that the anti-theft device to be installed on the line is likely to be as effective in reducing and deterring motor vehicle theft as parts-marking.

1258. Congress also enacted the Anti Car Theft Act (Pub. L. No. 102-519, codified at 49 U.S.C. § 331, et seq.) which expanded the PMR to include multipurpose passenger vehicles among other vehicles and trucks.

1259. On April 6, 2004, the Federal Motor Vehicle Theft Prevention Standard was also expanded with similar provisions.[56]

1260. In 2006, NHTSA stated that its "safety standard on theft protection [FMVSS No. 114] specifies vehicle performance requirements intended to reduce the incidence of crashes resulting from theft and accidental rollaway of motor vehicles."[57] NHTSA made clear that "the standard sought to ensure that the vehicle could not be easily operated without the key" and that "thieves . . . could [not] bypass the ignition lock," like Hyundai and Kia later enabled the Kia Boys to do.[58]

---

[54] *See* 81 Fed.Reg. 66833, 66834 (Sept. 29, 2016).
[55] *See* 49 C.F.R. 543.1, et seq.
[56] 69 Fed.Reg. 17960 (Apr. 6, 2004).
[57] 71 Fed.Reg. 17752 (Apr. 7, 2006).
[58] 71 Fed.Reg. 17752–53 (Apr. 7, 2006).

COMPLAINT

1261. FMVSS No. 114 is currently codified as 49 C.F.R. § 571.114, which provides:

**S1.**   **Scope**. This standard specifies vehicle performance requirements intended to reduce the incidence of crashes resulting from theft and accidental rollaway of motor vehicles.

**S2.**   **Purpose**. The purpose of this standard is to decrease the likelihood that a vehicle is stolen, or accidentally set in motion.

**S3.**   **Application**. This standard applies to all passenger cars, and to trucks and multipurpose passenger vehicles with a GVWR of 4,536 kilograms (10,000 pounds) or less.  However, it does not apply to walk-in van-type vehicles.  Additionally, paragraph S5.3 of this standard applies to all motor vehicles, except trailers and motorcycles, with a GVWR of 4,536 kilograms (10,000 pounds) or less.

**S4.**   **Definitions**.

*Combination* means a variation of the key that permits the starting system of a particular vehicle to be operated.

*Key* means a physical device or an electronic code which when inserted into the starting system (by physical or electronic means), enables the vehicle operator to activate the engine or motor.

. . .

*Starting system* means the vehicle system used in conjunction with the key to activate the engine or motor.

*Vehicle type*, as used in S5.1.2, refers to passenger car, truck, or multipurpose passenger vehicle, as those terms are defined in 49 CFR 571.3.

**S5 Requirements**. Each vehicle subject to this standard must meet the requirements of S5.1, S5.2, and S5.3.  Open-body type vehicles are not required to comply with S5.1.3.

**S5.1 Theft protection**.

S5.1.1 Each vehicle must have a starting system which, whenever the key is removed from the starting system prevents:

> (a) The normal activation of the vehicle's engine or motor; and
>
> (b) Either steering, or forward self-mobility, of the vehicle, or both.

1262. NHTSA has repeatedly demonstrated its support for the installation of immobilizers. It stated that the device complies with FMVSS No. 114 and addresses the agency's concern that "car thieves . . . could bypass the ignition lock." NHTSA explained:

> We note that in promulgating FMVSS No. 114, the agency expressed concern about car thieves who could bypass the ignition lock. In response to this concern, the agency decided to require a device, which would prevent either self-mobility or steering even if the ignition lock were bypassed (see 33 FR 4471, April 27, 1968). The engine control module immobilizer described in your letter satisfies the requirements of S4.2(b) because it locks out the engine control module if an attempt is made to start the vehicle without the correct key or to bypass the electronic ignition system. When the engine control module is locked, the vehicle is not capable of forward self-mobility because it is incapable of moving forward under its own power.[59]

1263. FMVSS No. 114 is a "self-certification" process. In other words, "NHTSA does not issue type approval certifications and does not certify any motor vehicles or

---

[59] 71 Fed.Reg. 17753 (Apr. 7, 2006).

COMPLAINT

motor vehicle equipment as complying with applicable FMVSS."[60]  Instead, NHTSA relies on manufacturers, including Defendants, to accurately report that they are complying with the standard.  The Vehicles, however, clearly do not satisfy FMVSS No. 114.  Defendants, on information and belief, did not comply with their obligations to accurately self-report compliance with FMVSS No. 114.

1264. NHTSA is also required to periodically obtain and publish accurate and reliable theft data.[61]  The National Crime Information Center ("NCIC") of the Federal Bureau of Investigation provides this data to NHTSA.  The NCIC is a governmental system that receives vehicle theft data from approximately 23,000 criminal justice agencies and other law enforcement authorities throughout the United States.  This national data includes the reported thefts of self-insured and uninsured vehicles, not all of which are reported to other data sources.

1265. In connection with fulfilling its administrative mandate under both the Safety Act and the Theft Act, NHTSA regularly interacts with, seeks comment from, and shares information with automotive manufacturers and their authorized representatives, including Hyundai and Kia.

1266. Over the last three decades, Defendants themselves have asserted in petitions they filed with NHTSA that immobilizers have been proven to be highly effective in dramatically reducing auto theft.[62]  HATCI, the "authorized representative" for Hyundai, Kia, and their parent companies to fulfill the reporting, even submitted an application to NHTSA stating that engine immobilizer technology would be "as effective in reducing and deterring motor vehicle theft as compliance with the parts-marking requirements of the Theft Prevention Standard (49 CFR Part 541)."[63]

---

[60] National Highway Traffic Safety Administration, *NEW MANUFACTURERS HANDBOOK, Requirements for Manufacturers of Motor Vehicles and Motor Vehicle Equipment* (Mar. 27, 2014), https://www.nhtsa.gov/sites/nhtsa.gov/files/manufacturer_information_march2014.pdf (accessed May 15, 2025).
[61] 49 U.S.C. 33104(b)(4) (Designation of high theft vehicle lines and parts).
[62] *See* 72 Fed.Reg. 39661 (July 19, 2007).
[63] 72 Fed.Reg. 39662 (July 19, 2007).

COMPLAINT

1267. Notably, the Defendants themselves have asserted in their NHTSA filings that thefts of vehicles equipped with immobilizers decrease car thefts by up to 70%, if not more.[64]

1268. Defendants' self-reporting and public comment show that Defendants knew as early as 2007 that the installation of engine immobilizers was a critical and effective means to drastically deter and reduce thefts while complying with FMVSS No. 114, long before they started cutting corners and stopped putting engine immobilizer technology in certain Kia and Hyundai Vehicles beginning around 2010.

1269. On information and belief, each Defendant was aware of the Theft-Prone Design and the safety risk it posed to Vehicle owners and lessees (as well as bystanders), through the following sources, including, but not limited to: (a) their presale testing and safety standards self-certification process for the Vehicles; (b) their analyses and usage of engine immobilizers in non-Vehicles; (c) their PMR petitions; (d) their usage of engine immobilizers in vehicles sold outside the U.S. market; (e) the practices of peer automobile makers; (f) their monitoring of Vehicle thefts; and (g) their monitoring of customer complaints, dealership records, warranty claims, and replacement parts orders.

1270. By contrast, Plaintiffs were unaware of the Theft-Prone Design and could not reasonably be expected to discover it on their own due to the technical and hidden nature of the defect.  Therefore, Plaintiffs could not have known or expected the danger of the Theft-Prone Design.

**E.    Kia and Hyundai Purposefully Failed to Equip Their Vehicles With Anti-Theft Protection.**

1271. Defendants were able to install anti-theft protection in the Vehicles but chose not to.  Notably, Defendants sold the Vehicles in the United States without the effective anti-theft protection but sold those same vehicles in other countries *with* the

---

[64] *Id.*; 82 Fed.Reg. 22049 (May 11, 2017); 75 Fed.Reg. 1447, 1448 (Jan. 11, 2010).

COMPLAINT

anti-theft protection technology.[65]

1272. Internationally, the very same (or substantially similar) Kia and Hyundai Vehicles were sold with engine immobilizers included as a standard feature. For example, in the 2020 Kia Sportage Owner's Manual for Canada, Kia notes that the "vehicle is equipped with an electronic engine immobilizer system to reduce the risk of unauthorized vehicle use."[66]

1273. Similarly, Defendants provided anti-theft protection and engine immobilizers in their more expensive vehicle models but did not provide effective anti-theft measures in the less expensive versions of their vehicles, including Plaintiffs' Vehicles.[67] Instead, Defendants only offered anti-theft engine immobilizer technology to consumers of the defective Vehicles if the consumers, including Plaintiffs, paid for expensive upgrades and luxury trim packages. Defendants failed to disclose to consumers, including Plaintiffs, that the Vehicles came without industry-standard anti-theft protection.

**F.    Defendants Have Failed to Remedy the Vehicles' Theft-Prone Design.**

1274. In April 2023, Defendants issued a Technical Service Bulletin that applied to many Vehicles manufactured and sold by Defendants without mandatory anti-theft protections. The Technical Service Bulletin mandates that all dealers "must" install software to update the impacted Vehicles' Integrated Body Control Unit/Body Control

---

[65] Aaron Gordon, Vice, *One Regulation Could Have Stopped a Nationwide Car Theft Wave. Why Don't We Have It?* (Nov. 1, 2023), https://www.vice.com/en/article/7kxdmx/one-regulation-could-have-stopped-a-nationwide-car-theft-wave-why-dont-we-have-it (accessed May 15, 2025); *see also* Heather Long, The Washington Post, *My car was almost stolen outside police headquarters. Blame U.S. regulators* (Jan. 10, 2024), https://www.washingtonpost.com/opinions/2024/01/10/kia-hyundai-theft-settlement-recall/ (accessed May 15, 2025).

[66] Kia, *Owner's Manual* (2019), https://www.destinationkia.com/blogs/1016/wp-content/uploads/2019/07/2020-Kia-Sportage-Owners-Manual.pdf (accessed May 15, 2025).

[67] Peter Valdes-Dapena, CNN Business, *Some auto insurers are refusing to cover certain Hyundai and Kia models* (Jan. 28, 2023), https://www.cnn.com/2023/01/27/business/progressive-state-farm-hyundai-kia/index.html (accessed May 15, 2025).

- 354 -

COMPLAINT

Module (the "Software Update"). A true and accurate copy of the Technical Service Bulletin is attached as Exhibit C.

1275. Defendants required dealers to install the Software Update on any vehicle that "may not be equipped with an immobilizer" either "prior to customer retail delivery" or "whenever an affected vehicle is in the shop for any maintenance or repair." Defendants' requirement that dealers actively modify all impacted vehicles is an implicit acknowledgment that the Vehicles do not conform to federal law and industry standards.

1276. The Software Update does not cure the defects with the Vehicles or operate as an effective substitute for the missing physical immobilizer or other anti-theft protection at the time of manufacture. Rather, the Software Update impairs owners' self-help attempts to prevent the theft of their Vehicles and has actually increased the rate of vandalism.[68] The Defendants' Technical Service Bulletin notes that the Software Update may cause vehicles "equipped with aftermarket/add-on alarms or remote start systems" to operate abnormally.

1277. In addition to requiring dealers to install the Software Update, Defendants also require technicians to apply an "anti-theft decal" to vehicle windows as a cosmetic fix. This measure is an ineffective attempt to deter thieves who seek to exploit the inherent vulnerabilities of Defendants' Theft-Prone Design and their failure to include anti-theft technology. Instead, Vehicles have been reported stolen within days of applying the anti-theft decal, and defacement of the Vehicles and similar vandalism acts

---

[68] Highway Loss Data Institute, *Reductions In Hyundai and Kia Comprehensive Losses Associated with the Anti-Theft Software Upgrade* (May 2025), https://www.iihs.org/media/d2c7da66-9ce8-4c61-b129-5d5732707ef1/Cpu9CA/HLDI%20Research/Bulletins/hldi_bulletin_42-07.pdf (accessed Sept. 17, 2025) ("[T]he vandalism claim frequency for VINs that were upgraded was higher than that for VINs that were not upgraded for both Hyundai and Kia throughout [2023 and 2024].")

have actually increased since the Software Update.[69, 70]

1278. In June 2023, Defendants issued a Technical Service Bulletin that applied to more than two million Vehicles that were manufactured and sold "without push-button ignitions and immobilizer anti-theft devices."  A true and accurate copy of the Technical Service Bulletin is attached as Exhibit D.

1279. The Vehicles covered by the June Technical Service Bulletin were ineligible for Defendants' makeshift Software Update.  For these customers, Defendants made no attempt to bring the Vehicles into compliance with applicable mandatory safety standards.  Instead, Defendants only offered to provide steering wheel locks in lieu of mandatory anti-theft equipment.  These steering wheel locks are heavy and cumbersome devices that are not effective anti-theft measures and fail to comply with federal and industry standards, regulations, and guidelines.

1280. Defendants' public statements and conduct effectively function as a concession that the Vehicles were defective and unsafe at the time of sale.  Yet, Defendants have failed to effectively correct the risks posed by these Vehicles to Plaintiffs and refuse to reimburse Plaintiffs for their losses incurred as a result of the

---

[69] Cari Spencer, MPRNews, *Kia and Hyundai owners continue to report car theft after free security upgrades* (Mar. 11, 2024), https://www.mprnews.org/story/2024/03/11/kia-and-hyundai-owners-continue-to-report-car-theft-after-free-security-upgrades (accessed May 15, 2025); Brittany Toolis, KIRO 7 News, *KIA owner finds car stolen weeks after obtaining company anti-theft software upgrade* (Nov. 24, 2023), https://www.kiro7.com/news/local/kia-owner-finds-car-stolen-weeks-after-obtaining-company-anti-theft-software-upgrade/23GTTUMOVZFK3MJBBOSWGL72TQ/ (accessed May 15, 2025); David Booth, Driving, *Good – and bad – news about Hyundai, Kia anti-theft updates* (Aug. 7, 2024), https://driving.ca/auto-news/driver-info/hyundai-kia-theft-update-vandalism-stolen-tiktok-challenge (accessed May 15, 2025) (reporting that the American Highway Loss Data Institute has indicated that a rise in vandalism is occurring in part due to frustrated thieves who do not know the cars have been upgraded and are "nonetheless breaking windows, scratching cars, and damaging steering columns[,]" in frustration, noting **"[i]n fact, vandalism was *more common* for Hyundai and Kia vehicles *with the new anti-theft software than for those without it"**) (emphasis added).

[70] It should also be noted that damages from unsuccessful auto thefts are generally considered and processed by insurance companies as vandalism claims as the vehicles were not actually stolen and the motive of the persons who caused the damages cannot be known.

COMPLAINT

Theft-Prone Design. Instead, Defendants have only offered inadequate and ineffective software upgrades or after-market external steering wheel locks. Neither of these solutions bring the Vehicles into compliance with applicable safety standards.

1281. After the Theft-Prone Design became common knowledge and the epidemic of thefts began to sweep the country, Defendants announced that, going forward, they would install engine immobilizers in all their vehicles. This change affected certain 2022 MY vehicles and all Hyundai and Kia vehicles from 2023 onward. However, Defendants' recent change in design does not provide any relief to Plaintiffs who have suffered harm as a result of the Theft-Prone Design.

**G. Defendants' Failure to Include the Required Anti-Theft Measures in the Vehicles Caused Plaintiffs to Pay Increased and Inflated Insurance Premiums, Accelerated the Depreciation of the Vehicles, and Caused the Market Price to Drop.**

1282. The so-called "anti-theft" remedies that Kia and Hyundai offered to make up for the Theft-Prone Design do not stop theft.[71] And they do nothing to mitigate Plaintiffs' damages. Rather, due to the increased frequency of thefts and attempted thefts, many consumers, including Plaintiffs, were charged unreasonably high insurance premiums for their Vehicles.[72]

1283. Plaintiffs' high insurance premiums were above and beyond the amount that Plaintiffs would have otherwise paid but for the presence of the Theft-Prone Design

---

[71] *See, e.g.*, LockPickingLawyer, YouTube *Seriously? THIS is Kia/Hyundai's Solution (Garbage Steering Wheel Lock)* (Sept. 21, 2023), https://www.youtube.com/watch?v=JodD_KARacg (accessed May 15, 2025); Tom Krisher, *Despite Security Fix Hyundai and Kia Thefts Keep Rising* (May 11, 2023), https://www.carriermanagement.com/news/2023/05/11/248236.htm (accessed May 15, 2025).

[72] *See, e.g.*, Pete Grieve, Money, *Car Insurance Woes Continue for Kia and Hyundai Owners Despite $200 Million Settlement* (May 23, 2023), https://money.com/kia-hyundai-settlement-car-insurance-coverage/ (accessed May 15, 2025) ("Some Kia and Hyundai drivers are still being denied car insurance or charged higher premiums because of the staggeringly high incidences of theft of many of the automakers' vehicles produced between 2011 and 2021, including the Kia Soul and Sorento and the Hyundai Tucson and Elantra.").

COMPLAINT

in the Vehicles.[73]

1284. Defendants' failure to provide anti-theft prevention technology has severely increased insurance claim frequencies.[74]   Insurers have responded by drastically increasing insurance premiums or declining to provide insurance to certain Kia and Hyundai owners altogether.[75]

---

[73] *See* Peter Valdes-Dapena, CNN Business, *Some auto insurers are refusing to cover certain Hyundai and Kia models* (Jan. 28, 2023), https://www.cnn.com/2023/01/27/business/progressive-state-farm-hyundai-kia/index.html (accessed May 15, 2025) ("In Wisconsin, where the crimes first became prevalent, theft claims of Hyundais and Kias spiked to more than 30 times 2019 levels in dollar terms.").

[74] See Highway Loss Data Institute, *Hyundai and Kia theft losses* (Dec. 2021), https://www.iihs.org/media/0e14ba17-a3c2-4375-8e66-081df9101ed2/opm7QA/HLDI%20Research/Bulletins/hldi_bulletin_38-28.pdf (accessed May 15, 2025) ("Hyundai and Kia claim frequencies were almost 80 percent higher than that of all other manufacturers combined for January–June 2021."); CBSNews, *Why some Hyundai and Kia cars are easy prey for car thieves* (Sept. 22, 2022), https://www.cbsnews.com/news/hyundai-kia-engine-immobilizer-car-theft/ (accessed May 15, 2025) ("The Highway Loss Data Institute, a unit of the Insurance Institute for Highway Safety, found that Hyundais and Kias without immobilizers had a vehicle theft claim rate of 2.18 per 1,000 insured vehicle years.  The rest of the industry combined had a rate of 1.21.").

[75] See Kiona Dyches, 10WBNS, *Report: Several insurance companies raising rates or dropping coverage of certain Hyundai, Kia models due to theft* (July 20, 2023), https://www.10tv.com/article/news/local/kia-hyundai-insurance-rate-changes-high-theft-prevention/530-cd887674-5f4a-479b-888e-b18323a22762 (accessed May 15, 2025) ("The number of Kia and Hyundai thefts has skyrocketed in central Ohio. Now, some owners have to go the extra mile to get insurance for their vehicles. . . . Allstate, Progressive, and State Farm are among a list of car insurance providers that have announced they won't issue new policies in some states for certain Hyundai and Kia models, including the following:
- 2015–2021 Hyundai Accent
- 2015–2021 Hyundai Elantra
- 2015–2021 Hyundai Kona
- 2015–2021 Hyundai Santa Fe
- 2015–2021 Hyundai Tucson
- 2015–2021 Kia Forte
- 2015–2021 Kia Optima (regular)
- 2015–2016 Kia Optima (hybrid)
- 2015–2021 Kia Rio
- 2015–2021 Kia Sedona
- 2015–2016 Kia Sorento").;
Peter Valdes-Dapena, CNN Business, *Some auto insurers are refusing to cover certain Hyundai and Kia models* (Jan. 28, 2023), https://www.cnn.com/2023/01/27/business/progressive-state-farm-hyundai-kia/index.html (accessed May 15, 2025) ("Progressive and State Farm, two of

COMPLAINT

1285. The increased premiums for the theft-prone Vehicles is not surprising. According to the Ohio Department of Insurance:

> Insurance is a product that relies on the spreading of risk among diverse individuals or groups in order to operate.  All insurance companies use data and statistics to predict levels of risk for various individuals or groups.  This risk calculation information is also used to develop rating plans.  **Generally, higher risk factors will result in higher premium rates and lower risk factors will drive premiums lower**.[76]

1286. Even without the benefit of any discovery, Plaintiffs have been able to uncover concrete examples of increased insurance premiums for the Vehicles which are being plead here to bolster, not prove, Plaintiffs' allegations of increased insurance premiums tied to the Defendants' Theft-Prone Design that discovery in this matter will yield admissible evidence showing how insurers have responded to the increased risks and losses of insuring the Vehicles including what actions they have taken to limit and/or recoup those excess losses relating to Defendants' Theft-Prone Design including increased insurance premiums or surcharges for the Vehicles.

1287. By way of example, and not by way of limitation, Plaintiffs have

America's largest auto insurers, are refusing to write policies in certain cities for some older Hyundai and Kia models that have been deemed too easy to steal, according to the companies."); Joe Hernandez, NPR Business, *Dealers still sell Hyundais and Kias vulnerable to theft, but insurance is hard to get* (May 4, 2023) https://www.npr.org/2023/05/04/1173048646/hyundai-kia-car-theft-tiktok-insurance-dealerships (accessed May 15, 2025); Dustyne Bryant, Rise & Insurance Education Alliance, *Time Is Running Out for Coverage on Kias or Hyundais* (Aug. 2, 2023), https://www.riskeducation.org/time-is-running-out-for-coverage-on-kias-or-hyundais/ (accessed May 15, 2025) ("Progressive Public Relations Associate Manager, Jeff Seibel, told CNN "During the past year we've seen theft rates for certain Hyundai and Kia vehicles more than triple and in some markets, these vehicles are almost 20 times more likely to be stolen than other vehicles.  Given that we price our policies based on the level of risk they represent, this explosive increase in thefts in many cases makes these vehicles extremely challenging for us to insure.  In response, in some geographic areas, we have increased our rates and limited our sale of new insurance policies on some of these models.").

[76] *See* Ohio Department of Insurance, *How Insurance Rates Are Determined*, https://insurance.ohio.gov/consumers/resources/how-insurance-rates-are-determined (accessed May 15, 2025) (emphasis added).

COMPLAINT

uncovered evidence that Allstate, one of the top five auto insurers in the U.S., increased its comprehensive coverage insurance premiums in various states for the Vehicles specifically in response to the increased exposure from the thefts or attempted thefts related to the Theft-Prone Design in the Vehicles.[77] Again, the following examples of premium increases are being provided as just that, examples, and that full discovery will be needed by Plaintiffs to obtain the necessary evidence to prove their allegation of increased insurance premiums.

1288. **Allstate – Colorado**. On or about May 19, 2023, Allstate Fire and Casualty Insurance Company (which collectively with its other related companies mentioned herein is referred to as "Allstate") submitted a Rate/Rule Filing with an effective date of July 29, 2023, for the State of Colorado adjusting the premiums on 2011–2022+ Kia and Hyundai Vehicles due to the increased theft rates.[78] Specifically, in its Rate Filing Memorandum, Allstate described this increase in premiums as:

> Allstate is introducing an interaction between Make and Model Year. This interaction will be used **to adjust Comprehensive coverage rates for Kia and Hyundai vehicles with increased theft risk due to both real and perceived absences of certain anti-theft technologies.**

[77] *See* National Association of Insurance Commissioners, *SERFF Filing Access, SERFF Tracking Number: ALSE-133885209, Allstate Fire and Casualty Insurance Company* (Nov. 10, 2023), portions of which are publicly available at https://filingaccess.serff.com/sfa/home/OH (accessed May 21, 2025).

[78] *See* National Association of Insurance Commissioners, *SERFF Filing Access, SERFF Tracking Number: ALSE-133680350, Allstate Fire and Casualty Insurance Company* (May 19, 2023), portions of which are publicly available at https://filingaccess.serff.com/sfa/home/CO (accessed Sept. 13, 2025).

These flat multiplicative factors were selected from a loss ratio relativity analysis using a credibility-weighting of Allstate countrywide and Colorado-specific paid loss data for the fiscal accident year ending and evaluated as of 12/31/2022. Please see the table below for indicated and selected Kia and Hyundai vehicle flat multiplicative factors by Model Year.[79]

| Kia and Hyundai Vehicle Factor Table | | |
|---|---|---|
| Model Year | Indicated Factor | Selected Factor |
| 2011-2019 | 3.52 | 1.83 |
| 2020 | 1.87 | 1.29 |
| 2021 | 1.35 | 1.12 |
| 2022+ | 1.29 | 1.10 |

1289. Thus, based on the above, Allstate increased the premiums for the comprehensive portion of auto insurance coverage, which covers theft related claims, by a flat multiplicative factor of 1.83 (an 83% increase) for 2011-2019 Vehicles, by a flat multiplicative factor of 1.29 (a 29% increase) for 2020 Vehicles, by a flat multiplicative factor of 1.12 for (a 12% increase) for 2021 Vehicles and by a flat multiplicative factor of 1.10 (a 10% increase) for 2022+ Kia and Hyundais in Colorado.[80]

1290. **Allstate – Illinois**.  On or about 05/12/2023 Allstate North American Insurance Company submitted a Rate/Rule Filing with an effective date of July 14, 2023, for the State of Illinois adjusting the premiums on 2011-2022+ Kia and Hyundai Vehicles due to the increased theft rates.[81]  Specifically, in its Illinois Rate Filing Memorandum, Allstate described this increase in premiums as:

With this filing, Allstate is introducing Variable Interaction Pattern 1 between

---

[79] *Id.* (emphasis added).

[80] *Id.*

[81] *See* National Association of Insurance Commissioners, *SERFF Filing Access, SERFF Tracking Number: ALSE-13367021, Allstate Fire and Casualty Insurance Company* (May 12, 2023), portions of which are publicly available at https://filingaccess.serff.com/sfa/home/il (accessed Sept. 13, 2025).

COMPLAINT

Make, Model and Model Year. This interaction will be used **to adjust Comprehensive coverage rates for Kia and Hyundai vehicles where we have seen increased theft losses.**

These flat multiplicative factors were selected from a loss ratio relativity analysis using credibility weighted Illinois paid loss data for the fiscal accident year ending and evaluated as of 12/31/2022. The countrywide indicated flat multiplicative factors were used as the complement of credibility. Please see the table below for indicated and selected flat multiplicative factors by Model Year for all Kia models and specific Hyundai models.[82]

| Kia and Hyundai Vehicle Factor Table | | | | | |
|---|---|---|---|---|---|
| Model Year | Countrywide Indicated Factor | Illinois Indicated Factor | Illinois Credibility (8K Claims Standard) | Credibility Weighted Indicated Factor | Selected Factor |
| 2011-2019 | 1.63 | 2.29 | 49% | 1.95 | 1.70 |
| 2020 | 1.46 | 2.51 | 22% | 1.69 | 1.50 |
| 2021 | 1.29 | 2.00 | 20% | 1.44 | 1.35 |
| 2022+ | 1.15 | 1.65 | 19% | 1.25 | 1.15 |

1291. Thus, based on the above, Allstate increased the premiums for the comprehensive portion of auto insurance coverage, which covers theft related claims, by a flat multiplicative factor of 1.70 (a 70% increase) for 2011-2019 Vehicles, by a flat multiplicative factor of 1.50 (a 50% increase) for 2020 Vehicles, by a flat multiplicative factor of 1.35 for (a 35% increase) for 2021 Vehicles and by a flat multiplicative factor of 1.15 (a 15% increase) for 2022+ Kia and Hyundais in Illinois.[83]

1292. **Allstate – New Jersey**. On or about February 12, 2023, Allstate New Jersey Property and Casualty Insurance Company submitted a Rate/Rule Filing with an effective date of October 16, 2023 for New policies and an effective date of November 23, 2023 for renewal policies for the State of New Jersey adjusting the

---

[82] *Id.* (emphasis added).
[83] *Id.*

COMPLAINT

premiums for 2011-2022+ Kia and Hyundai Vehicles.[84]  Specifically, in its New Jersey Rate Filing Memorandum, Allstate, as relevant here, described this increase in premiums as:

Make and Model Year Interaction Rating

Allstate is introducing an interaction between Make and Model Year.  This interaction will be used **to adjust Comprehensive coverage rates for Kia and Hyundai vehicles with increased theft risk due to both real and perceived absences of certain anti-theft technologies**.

The flat multiplicative factors below were selected from a loss ratio relativity analysis using credibility weighted Allstate New Jersey paid loss data for the fiscal accident year ending and evaluated as of 12/31/2022.  The Allstate countrywide loss ratio relativities were used as a complement of credibility for calculating indicated flat multiplicative factors.  Please see the table below for indicated and selected Kia and Hyundai vehicle flat multiplicative factors by Model Year.  Note that the selected flat multiplicative factor for Model Year 2022 applies to subsequent Model Years as well.  Also, due to capping, the proposed flat multiplicative factors are only being applied to non-Milewise policies at this time.  Allstate plans to move towards the proposed flat multiplicative factors for Milewise policies as well with future rate filings.

---

[84] *See* National Association of Insurance Commissioners, *SERFF Filing Access, SERFF Tracking Number: ALSE-133521624, Allstate Fire and Casualty Insurance Company* (Jan. 12, 2023), portions of which are publicly available at https://filingaccess.serff.com/sfa/home/NJ (accessed Sept. 13, 2025).

**Note that proposed Kia and Hyundai vehicle flat multiplicative factors apply to all Kia and Hyundai models for the impacted Model Years. As shown below, these models face an elevated theft risk compared to other models. While the vehicle manufacturers are offering customers options to respond to the heightened theft risk, we have not yet seen these steps reduce theft rates, and these vehicles are still proving vulnerable to this heightened theft even though safety features can vary across models.** Allstate will continue to monitor the manufacturer fix and corresponding theft risk and will re-evaluate the pricing as appropriate.[85]

| Kia and Hyundai Vehicle Factor Table | | | | |
|---|---|---|---|---|
| Model Year | Countrywide Loss Ratio Relativity | New Jersey Loss Ratio Relativity | Credibility Weighted Loss Ratio Relativity | Proposed Factor |
| 2011-2015 | 1.68 | 1.12 | 1.55 | 1.30 |
| 2016-2019 | 1.58 | 0.99 | 1.43 | 1.20 |
| 2020-2021 | 1.38 | 0.90 | 1.26 | 1.10 |
| 2022 | 1.19 | 0.53 | 1.08 | 1.05 |

1293. Thus, based on the above, Allstate increased the premiums for the comprehensive portion of auto insurance coverage, which covers theft related claims, by a flat multiplicative factor of 1.30 (a 30% increase) for 2011-2015 Vehicles, by a flat multiplicative factor of 1.20 (a 20% increase) for 2016-2019 Vehicles, by a flat multiplicative factor of 1.10 (a 10% increase) for 2020-2021 Vehicles and by a flat multiplicative factor of 1.05 (a 5% increase) for 2022+ Kia and Hyundais in New Jersey.[86]

1294. **Allstate – New Mexico**. On or about January 12, 2023, Allstate Fire and Casualty Insurance Company submitted a Rate/Rule Filing with an effective date of March 4, 2024 for new policies and an effective date of April 8, 2024 for renewal policies for the State of New Mexico adjusting the premiums for 2011-2022+ Kia and

---

[85] *Id.* (emphasis added).
[86] *Id.*

Hyundai Vehicles due to the increased theft rates.[87]  Specifically, in its New Mexico Rate Filing Memorandum, Allstate, as relevant here, described this increase in premiums as:

Make and Model Year Interaction Rating

With this filing, Allstate is updating an interaction between Make and Model Year.  This interaction is used **to adjust Comprehensive coverage rates for Kia and Hyundai vehicles with increased theft risk due to both real and perceived absences of certain anti-theft technologies.**

These factors were selected from a loss ratio relativity analysis using credibility weighted New Mexico paid loss data from 1/1/2022-6/30/2023 evaluated as of 6/30/2023.  The countrywide indicated factors were used as the complement of credibility.  Please see the table below for indicated and selected Kia and Hyundai vehicle factors by Model Year.[88]

**Kia and Hyundai Vehicle Factors**

| Model Year | Indicated Factor | Selected Factor |
|---|---|---|
| Prior Years | 0.97 | 1.00 |
| 2011-2019 | 2.15 | 1.85 |
| 2020 | 1.71 | 1.55 |
| 2021 | 1.49 | 1.40 |
| 2022-2023 | 1.26 | 1.20 |
| 2024+ | - | 1.20 |

1295.  Thus, based on the above, Allstate increased the premiums for the comprehensive portion of auto insurance coverage, which covers theft related claims,

---

[87] *See* National Association of Insurance Commissioners, *SERFF Filing Access, SERFF Tracking Number: ALSE-133990584, Allstate Fire and Casualty Insurance Company* (Feb. 12, 2024), portions of which are publicly available at https://filingaccess.serff.com/sfa/home/nm (accessed Sept. 13, 2025).
[88] *Id.* (emphasis added).

COMPLAINT

by a flat multiplicative factor of 1.85 (an 85% increase) for 2011-2019 Vehicles, by a flat multiplicative factor of 1.55 (a 55% increase) for 2020 Vehicles, by a flat multiplicative factor of 1.40 (a 40% increase) for 2021 Vehicles and by a flat multiplicative factor of 1.20 (a 20% increase) for 2022+ Kia and Hyundais in New Mexico.[89]

1296. **Allstate – Ohio**. On or about November 9, 2023, Allstate Fire and Casualty Insurance Company ("Allstate") submitted a Rate/Rule Filing with an effective date of November 20, 2023, for new policies, and an effective date of December 21, 2023, for renewal policies for the State of Ohio adjusting the premiums for 2011–2022+ Kia and Hyundai vehicles due to the increased theft rates. Specifically, in its Ohio Rate Filing Memorandum, Allstate explained the increase in premiums:

> After monitoring the experience of the affected vehicles, Allstate is revising the interaction between Make and Model Year with this filing. This interaction will be used to adjust Comprehensive coverage rates **for Kia and Hyundai vehicles with increased theft risk due to both real and perceived absences of certain antitheft technologies**.
>
> These factors were selected from a loss ratio relativity analysis using credibility weighted Ohio paid loss data from 1/1/2022-6/30/2023 evaluated as of 6/30/2023. Please see the table below for indicated and selected Kia and Hyundai vehicle factors by Model Year for the Comprehensive coverage.[90]

---

[89] *Id.*

[90] *Id*. (emphasis added).

COMPLAINT

| Model Year | Countrywide Indicated Factor | Ohio Indicated Factor | Credibility (10,623 Claims Standard) | Credibility Weighted Indicated Factor | Selected Factor |
|---|---|---|---|---|---|
| 2011-2019 | 1.92 | 2.36 | 57% | 2.17 | 1.90 |
| 2020 | 1.67 | 2.34 | 24% | 1.83 | 1.65 |
| 2021 | 1.44 | 2.50 | 24% | 1.70 | 1.45 |
| 2022+ | 1.24 | 1.71 | 26% | 1.36 | 1.25 |

1297. Thus, based on the above, Allstate increased the premiums for the comprehensive portion of auto insurance coverage, which covers theft-related claims, by a flat multiplicative factor of 1.9 (a 90% increase) for the 2011–2019 Vehicles, 1.65 (a 65% increase) for the 2020 Vehicles, 1.45 (a 45% increase) for the 2021 Vehicles, and 1.25 (a 25% increase) for the 2022+ Kia and Hyundai Vehicles in Ohio.[91]

1298. **Allstate – Pennsylvania**.  On or about August 10, 2023, Allstate North American Insurance Company submitted a Rate/Rule Filing with an effective date of November 20, 2023 for new policies, and an effective date of February 12, 2024, for renewal policies for the State of Pennsylvania adjusting the premiums for 2011-2022+ Kia and Hyundai Vehicles due to the increased theft rates.[92]  Specifically, in its Pennsylvania Rate Filing Memorandum, Allstate, as relevant here, described this increase in premiums as:

Model results are being implemented as indicated, with the following exceptions:

• **Variable Interaction Factors for Kia and Hyundai vehicles have been adjusted where we have seen increased theft losses.**

These adjustments apply to Comprehensive coverage in the Make, Model, and Model Year interaction table.  The factor adjustments were selected based on a

---

[91] *Id.*

[92] *See* National Association of Insurance Commissioners, *SERFF Filing Access, SERFF Tracking Number: ALSE-13776613, Allstate Fire and Casualty Insurance Company* (Aug. 10, 2023), portions of which are publicly available at https://filingaccess.serff.com/sfa/home/PA (accessed Sept. 13, 2025).

COMPLAINT

loss ratio relativity analysis using Allstate countrywide paid loss data for the fiscal accident year ending and evaluated as of 12/31/2022.

**Please see the table below for indicated and selected factor adjustments by Model Year for all Kia models and specific Hyundai models.**[93]

| Kia and Hyundai Vehicle Factor Adjustment Table | | |
|---|---|---|
| Model Year | Indicated Factor Adjustment | Selected Factor Adjustment |
| Prior Years | 0.93 | 1.00 |
| 2011-2019 | 1.63 | 1.45 |
| 2020 | 1.46 | 1.35 |
| 2021 | 1.29 | 1.20 |
| 2022+ | 1.15 | 1.10 |

1299. Thus, based on the above, Allstate increased the premiums for the comprehensive portion of auto insurance coverage, which covers theft related claims, by a flat multiplicative factor of 1.45 (a 45% increase) for 2011-2019 Vehicles, by a flat multiplicative factor of 1.35 (a 35% increase) for 2020 Vehicles, by a flat multiplicative factor of 1.20 (a 20% increase) for 2021 Vehicles and by a flat multiplicative factor of 1.10 (a 10% increase) for 2022+ Kia and Hyundai Vehicles in Pennsylvania.[94]

1300. **Allstate – Texas**.  On or about August 25, 2023, Allstate Fire and Casualty Insurance Company submitted a Rate/Rule Filing with an effective date of October 19, 2023 for the State of Ohio adjusting the premiums for 2011-2022+ Kia and Hyundai Vehicles due to the increased theft rates.[95]  Specifically, in its Texas Rate Filing Memorandum, Allstate, as relevant here, described this increase in premiums as:

---

[93] *Id*. (emphasis added).

[94] *Id*.

[95] *See* National Association of Insurance Commissioners, *SERFF Filing Access, SERFF Tracking Number: ALSE-13794968, Allstate Fire and Casualty Insurance Company* (Aug. 10, 2023), portions of which are publicly available at https://filingaccess.serff.com/sfa/home/TX (accessed Sept. 13, 2025).

COMPLAINT

Make and Model Year Interaction Rating

Allstate is introducing an interaction between Make and Model Year. This interaction will be **used to adjust Comprehensive coverage rates for Kia and Hyundai vehicles with increased theft risk due to both real and perceived absences of certain anti-theft technologies.**

These factors were selected from a loss ratio relativity analysis using Allstate countrywide paid loss data for the fiscal accident year ending and evaluated as of 12/31/2022. Please see the table below for indicated and selected Kia and Hyundai vehicle factors by Model Year.[96]

| Kia and Hyundai Vehicle Factor Table | | |
| --- | --- | --- |
| Model Year | Indicated Factor | Selected Factor |
| Prior Years | 0.94 | 1.00 |
| 2011-2019 | 1.62 | 1.45 |
| 2020 | 1.46 | 1.35 |
| 2021 | 1.29 | 1.20 |
| 2022+ | 1.20 | 1.10 |

1301. Thus, based on the above, Allstate increased the premiums for the comprehensive portion of auto insurance coverage, which covers theft related claims, by a flat multiplicative factor of 1.45 (a 45% increase) for the 2011-2019 Vehicles, by a flat multiplicative factor of 1.35 (a 35% increase) for 2020 Vehicles, by a flat multiplicative factor of 1.20 (a 20% increase) for 2021 Vehicles and by a flat multiplicative factor of 1.10 (a 10% increase) for 2022+ Kia and Hyundai Vehicles in Texas.[97]

1302. **Allstate – Wisconsin**. On or about May 10, 2023, Allstate Property Casualty Insurance Company submitted a Rate/Rule Filing with an effective date of

[96] *Id*. (emphasis added).
[97] *Id*.

COMPLAINT

May 15, 2023 for new policies, and an effective date of July 19, 2023, for renewal policies for the State of Wisconsin adjusting the premiums for 2011-2022+ Kia and Hyundai Vehicles due to the increased theft rates.[98]  Specifically, in its Wisconsin Rate Filing Memorandum, Allstate, as relevant here, described this increase in premiums as:

> With this filing, Allstate is introducing an interaction between Make and Model Year and will be revising the Rate Adjustment factors.

> Make and Model Year Interaction Rating

> With this filing, Allstate is introducing an interaction between Make and Model Year.  This interaction will be used **to adjust Comprehensive coverage rates for Kia and Hyundai vehicles with increased theft risk due to a lack of certain anti-theft technologies.**

> These factors were selected from a loss ratio relativity analysis using credibility weighted Wisconsin paid loss data for the fiscal accident year ending and evaluated as of 12/31/2022.  The countrywide indicated factors were used as the complement of credibility.  Please see the table below for indicated and selected Kia and Hyundai vehicle factors by Model Year.[99]

| Kia and Hyundai Vehicle Factor Table | | | | | |
|---|---|---|---|---|---|
| Model Year | Countrywide Indicated Factor | Wisconsin Indicated Factor | Wisconsin Credibility (8K Claims Standard) | Credibility Weighted Indicated Factor | Selected Factor |
| 2011-2019 | 1.62 | 2.31 | 21% | 1.76 | 1.65 |
| 2020 | 1.46 | 5.79 | 9% | 1.84 | 1.60 |
| 2021 | 1.29 | 4.95 | 9% | 1.62 | 1.55 |
| 2022+ | 1.16 | 2.05 | 8% | 1.23 | 1.15 |

---

[98] *See* National Association of Insurance Commissioners, *SERFF Filing Access, SERFF Tracking Number: ALSE-133669832, Allstate Fire and Casualty Insurance Company* (May 10, 2023), portions of which are publicly available at https://filingaccess.serff.com/sfa/home/wi (accessed Sept. 13, 2025).
[99] *Id*. (emphasis added).

1303. Thus, based on the above, Allstate increased the premiums for the comprehensive portion of auto insurance coverage, which covers theft related claims, by a flat multiplicative factor of 1.65 (a 65% increase) for 2011-2019 Vehicles, by a flat multiplicative factor of 1.60 (a 60% increase) for 2020 Vehicles, by a flat multiplicative factor of 1.55 (a 55% increase) for 2021 Vehicles and by a flat multiplicative factor of 1.15 (a 15% increase) for 2022+ Kia and Hyundai Vehicles in Wisconsin.[100]

1304. Plaintiffs have also uncovered additional examples of insurers raising their premium rates due to the theft-prone design and increased theft and attempted theft rates.

1305. **Nationwide – Ohio**.   Nationwide Insurance Company of America ("Nationwide") is another example of a major insurance provider that increased its insurance premium rates for the Vehicles as a direct result of the increased thefts and attempted thefts rates for the Vehicles across the U.S.  Like Allstate, Nationwide opted to increase the comprehensive coverage rates on the theft-prone Hyundai and Kia Vehicles.

1306. In its February 23, 2024, letter to the Ohio Department of Insurance in support of its rate filing to increase the insurance premiums for the Hyundai and Kia Vehicles, Nationwide explained that it was increasing its "comprehensive coverage rates for Kia and Hyundai vehicles, in model year 2011–2020, due to increased theft risk based on both real and perceived absences of certain anti-theft protection measures. Even the vehicles that have installed anti-theft devices are still at increased risk of significant loss due to vandalism."[101]

1307. Specifically, Nationwide applied a 2.148 rating factor (or multiplier) to the comprehensive rates for the Kia and Hyundai Vehicles in Ohio, thus more than doubling

---

[100] *Id.*

[101] *See* National Association of Insurance Commissioners, *SERFF Filing Access, SERFF Tracking Number: NWPP-133993556, Response to Objections Received 02-21-2024* (Feb. 23, 2024), portions of which are publicly available at https://filingaccess.serff.com/sfa/home/OH (accessed May 21, 2025).

COMPLAINT

the premiums for comprehensive insurance coverage for these Vehicles effective May 5, 2024, for new policies, and June 5, 2024, for renewal policies.[102]

1308. Again, the above examples of actual specific rate increases are being provided herein to bolster Plaintiffs' allegations of increased insurance premiums, not to prove their claims, and to show that discovery will lead to admissible further proof of insurance rate increases.

1309. Many insurers also ceased writing new policies on the vehicles as a stop-gap measure to protect themselves with the increased rates of thefts and attempted thefts.

1310. For example, National Public Radio ("NPR") reported that "Allstate, Progressive and State Farm all confirmed to NPR that they aren't granting new insurance policies in some states for certain Hyundai and Kia vehicles due to the high risk posed by the thefts."[103]

1311. Likewise, on February 17, 2023, an Ohio-based insurance agency reported that Progressive was no longer writing new policies for Kia and Hyundai vehicles, regardless of model or year, due to the increased thefts in certain areas.[104]

1312. Because of the Theft-Prone Design, the Vehicles are more expensive to

---

[102] *See* National Association of Insurance Commissioners, *SERFF Filing Access, SERFF Tracking Number: NWPP-133993556, Filing Requirements Summary - P&C* (Feb. 15, 2024), portions of which are publicly available at https://filingaccess.serff.com/sfa/home/OH (accessed May 21, 2025).

[103] Joe Hernandez, NPR Business, *Dealers still sell Hyundais and Kias vulnerable to theft, but insurance is hard to get* (May 4, 2023), https://www.npr.org/2023/05/04/1173048646/hyundai-kia-car-theft-tiktok-insurance-dealerships (accessed May 15, 2025); *see also* WHIOTV 7, *'Call your agent;' Local insurance agent has advice for Kia and Hyundai owners* (Feb. 1, 2023), https://www.whio.com/news/local/call-your-agent-local-insurance-agent-has-advice-owners-kia-hyundai-vehicles/XZXUMUFT65EM7P5JHHELVRN4QY/ (accessed May 15, 2025).

[104] *See* Wallace & Turner, *Progressive No Longer Writing New Coverage for Hyundai and Kia Vehicles Due to Increase in Thefts* (Feb. 17, 2023), https://www.wtins.com/wt-new/progressive-no-longer-writing-new-coverage-for-hyundai-and-kia-vehicles-due-to-increase-in-thefts (accessed May 15, 2025); John Matarese, WCPO Cincinnati, *Some Kia, Hyundai owners struggle to get insurance coverage* (Sept. 12, 2024), https://www.wcpo.com/money/consumer/dont-waste-your-money/some-kia-hyundai-owners-struggle-to-get-insurance-coverage (accessed May 15, 2025).

COMPLAINT

insure than other comparable vehicles.[105]  Plaintiffs paid more in insurance premiums for their Vehicles than they would have absent the Theft-Prone Design.

1313. Similarly, Defendants' conduct has also caused the value of the Vehicles to decrease at a faster rate than the value would have decreased absent the Theft-Prone Design.[106]  Plaintiffs' Vehicles have a lower value than they would have absent the

---

[105] *See* Daniel Finkelstein, 13WHAM, Car Thefts Hike Insurance Rates, Hitting Rochester-Area Policyholders (Feb. 27, 2025), https://13wham.com/news/local/car-thefts-in-monroe-county-lead-to-rising-insurance-rates (accessed Sept. 9, 2025) ("David Kirst, an insurance expert with AAA of Western New York, explained. . . 'Even if it wasn't your car that was stolen, there is an increase in insurance rates on those specific vehicles because they are high-theft vehicles[.]'"); Jarah Wright, KTNV Las Vegas, Nevada Auto Insurance Premiums Expected to Stay High Through 2025 (Nov, 2, 2023), https://www.ktnv.com/news/nevada-auto-insurance-premiums-expected-to-stay-high-through-2025 (accessed Sept. 9, 2025) ("'The treatment of Kia and Hyundai vehicles varies by insurer and some insurers have been approved to surcharge certain makes, models, and model years based on detailed data showing these vehicles [have] heightened threat frequency,' said Gennady Stolyarov II, Lead Actuary, Property & Casualty for the Nevada Division of Insurance."); Tiffany Salameh, News4Jax, Kia and Hyundai Insurance Rates Spike as Thefts Escalate (Aug. 2, 2023), https://www.news4jax.com/news/local/2023/08/02/kia-and-hyundai-insurance-rates-spike-as-thefts-escalate/ (accessed Sept. 9, 2025) ("Insurance companies are raising rates or dropping coverage altogether for the cars that are at a high risk of being stolen. . . . Allstate, Progressive and State Farm are among the car insurance providers that have announced they won't issue new policies in some states for certain Hyundai and Kia models. In Florida, they're also raising premiums[.]"); Drew Gula, Nerdwallet, *The Kia Challenge: What to Do If You Drive a Kia or Hyundai* (May 1, 2023), https://www.nerdwallet.com/article/insurance/kia-and-hyundai-insurance (accessed Sept. 9, 2025) ("[T]he increased risk for specific Kia and Hyundai years and models has made insurance companies wary of covering those vehicles. In an emailed statement, State Farm confirmed it has 'temporarily stopped accepting' applications in some states for some Hyundai and Kia vehicles. Progressive has taken a similar stance, saying in an emailed statement that the company has seen theft increase by a factor of 20 in some areas. A spokesperson confirmed via email that the company will continue insuring current customers but has issued fewer new policies and increased premiums in some locations."). *See also* Progressive, *Hyundai Car Insurance* https://www.progressive.com/answers/hyundai-car-insurance/ (accessed Sept. 9, 2025); Progressive, *Kia Car Insurance* https://www.progressive.com/answers/kia-car-insurance/ (accessed Sept. 9, 2025).

[106] *See* Joe Hernandez, NPR Business, *Dealers still sell Hyundais and Kias vulnerable to theft, but insurance is hard to get* (May 4, 2023), https://www.npr.org/2023/05/04/1173048646/hyundai-kiacar-theft-tiktok-insurance-dealerships (accessed May 15, 2025) (explaining that when a customer could not obtain insurance coverage for her Kia Forte, she attempted to sell the car back to the dealership at a $7,000 loss); Taryn Phaneuf, NASDAQ, *Own a Kia or Hyundai? Here's Why Your Insurance Rates Could Go Up* (Sept. 29, 2022), https://www.nasdaq.com/articles/own-a-kia-or-hyundai-heres-why-your-insurance-rates-could-go-up (accessed May 15, 2025) ("[I]f you own one of the affected Kia or Hyundai models, you could face additional consequences, including pricier insurance and reduced resale value on a vehicle that's known to be easily stolen.").

- 373 -
COMPLAINT

Theft-Prone Design.

## H. Upon Information and Belief, Defendants Fraudulently Omitted and/or Concealed From Consumers the "Theft-Prone Design."

1314. Absent discovery, Plaintiffs are unaware of, and unable through reasonable investigation to obtain, the true names and identities of those individuals employed by Defendants responsible for making false and misleading statements regarding the Vehicles. Defendants necessarily are in possession of all this information. Plaintiffs' claims arise out of Defendants' fraudulent omission/concealment of the Theft-Prone Design, as well as Defendants' representations about the quality, reliability, and safety of the Vehicles.

1315. Plaintiffs allege that, at all relevant times, including specifically at the time that Plaintiffs purchased their Vehicles, Defendants knew, or were reckless in not knowing, of the Theft-Prone Design; Defendants had a duty to disclose the Theft-Prone Design based upon their exclusive knowledge due to, among other things, the self-certification process and given their repeated statements alleged herein as to compliance with relevant safety and anti-theft standards; and Defendants never disclosed the Theft-Prone Design to Plaintiffs or the public at any time or place in any manner prior to 2022.

1316. Hyundai and Kia both expressly promised to all customers in writing that the Vehicles conformed to all applicable theft prevention standards. Defendants also actively concealed and omitted the Theft-Prone Design from Plaintiffs while simultaneously touting the quality, safety, and dependability of the Vehicles, as alleged herein. Plaintiffs are unaware of, and therefore unable to identify, the true names and identities of those specific individuals responsible for making such statements while concealing key material information.

1317. Defendants concealed and omitted the Theft-Prone Design while making representations about the safety, dependability, and other attributes of the Vehicles, as alleged herein. At the same time, Defendants promised that the Vehicles conform to all theft prevention standards.

1318. Defendants concealed and omitted material information regarding the Theft-Prone Design at all relevant times, while making representations about the quality, safety, and dependability of the Vehicles on an ongoing basis, and continuing to this day. Defendants still have not disclosed the truth about the full scope of the Theft-Prone Design in the Vehicles, and when consumers brought their vehicles to Hyundai and Kia dealerships or called Defendants' respective customer service and warranty departments complaining of the Theft-Prone Design, Defendants denied an adequate repair for the Theft-Prone Design and warranty coverage. On information and belief, Defendants have instead sought to use this crisis as a means to drive sales of unrelated maintenance services to their customers.

1319. Defendants concealed and omitted material information regarding the true nature of the Theft-Prone Design in every communication they had with Plaintiffs and made representations about the quality, reliability, and safety of the Vehicles. Each Vehicle contains an express promise that it conforms with all applicable theft prevention standards. On information and belief, similar promises and statements were made about the safety of the Vehicles. Plaintiffs are aware of no document, communication, or other place or thing, in which Defendants disclosed the truth about the full scope of the Theft-Prone Design in the Vehicles prior to 2022. Such information is not adequately disclosed in any sales documents, displays, advertisements, warranties, owners' manuals, or on Defendants' websites. There are channels through which Defendants could have disclosed the Theft-Prone Design, including, but not limited to: (a) point of sale communications; (b) the owner's manual; and/or (c) direct communication to Plaintiffs through means such as state vehicle registry lists and e-mail notifications.

1320. Defendants concealed and omitted the Theft-Prone Design from Plaintiffs and made representations about the quality, safety, value, and dependability of the Vehicles. At the same time, Defendants promised in writing that each Vehicle conformed with all applicable theft prevention standards. Each Defendant actively concealed and omitted the truth about the existence, scope, and nature of the Theft-

COMPLAINT

Prone Design from Plaintiffs at all relevant times, even though they each knew about the Theft-Prone Design and knew that information about the Theft-Prone Design would be important to a reasonable consumer, and Defendants promised in their marketing materials, VIN plates, and similar warranties that Vehicles have qualities that they do not have.

1321. Defendants actively concealed and omitted material information about the Theft-Prone Design in the Vehicles for the purpose of inducing Plaintiffs to purchase and/or lease Vehicles, rather than purchasing or leasing competitors' vehicles that actually complied with applicable theft prevention standards, and instead made false representations about the quality, safety, and durability of the Vehicles. Had Defendants disclosed the truth, for example, in their advertisements or other materials or communications, Plaintiffs (and all reasonable consumers) would have been aware of the Theft-Prone Design, and it is reasonably likely that Plaintiffs would not have bought or leased the Vehicles or would not have paid as much for them.

## I.   In Summary, Plaintiffs Are Entitled to Relief for the Costs They Bore, Including Inflated Insurance Premiums and Accelerated Depreciation.

1322. As a result of increased and inflated insurance premiums and the accelerated depreciation of their Vehicles, Plaintiffs are legally entitled to recover compensation from the Defendants who are legally liable for having caused the Plaintiffs' damages.

1323. As a result of Defendants' unfair, deceptive and/or fraudulent business practices, breach of warranties, omission, misrepresentation, and concealment, consumers of the Vehicles, including Plaintiffs, have suffered an ascertainable loss of money and/or property in the form of higher insurance premiums and lower Vehicle values absent the Theft-Prone Design. Accordingly, Plaintiffs bring this action to redress Defendants' misconduct.

## V.   CLAIMS FOR RELIEF

**A.** **Federal Claims for Relief**

**(Alleged by All Plaintiffs Against All Defendants)**

**1.** **Breach of Express and Implied Warranties Under the Magnuson-Moss Warranty Act of 15 U.S.C. § 2301, et seq.**

1324. Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

1325. The Vehicles are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

1326. Plaintiffs are "consumers" within the meaning of 15 U.S.C. § 2301(3).

1327. Defendants are "suppliers" and "warrantors" within the meaning of 15 U.S.C. § 2301(4)–(5).

1328. Defendants are and were at all relevant times the manufacturer, distributor, warrantor, and seller or lessor of the Vehicles.

1329. Alternatively, if Defendants were not the sellers of the Vehicles to Plaintiffs, Plaintiffs were the intended third-party beneficiaries on any sales contracts in which Defendants sold the Vehicles to Kia and Hyundai dealers or others with the intent to sell or lease the Vehicles to consumers, including Plaintiffs.

1330. Defendants provided Plaintiffs with an express warranty, found on each Vehicle and provided at the point of sale or lease, that the Vehicles conformed to all applicable motor vehicle safety and theft prevention standards at the time of manufacture.

1331. Defendants breached that express warranty because the Theft-Prone Design left the Vehicles without any anti-theft equipment or design elements, made the Vehicles highly susceptible to theft, and made the Vehicles noncompliant with federal motor vehicle safety and theft prevention standards, including FMVSS No. 114.

1332. Defendants also provided Plaintiffs with implied warranties of merchantability that the Vehicles were of merchantable quality and fit for their ordinary purpose and intended use. These implied warranties included that the Vehicles (a) were

a safe and reliable form of transportation, (b) were not at an abnormally high risk of theft, (c) would pass without objection in the trade of motor vehicle manufacture, distribution, and sale and/or lease, and (d) complied with all applicable federal and state laws and regulations, including FMVSS No. 114.

1333. Defendants breached these implied warranties because the Vehicles were defective, not in merchantable condition, and not fit for their ordinary purpose and intended use of providing safe and reliable transportation at the time of sale or thereafter.  Defendants knew at the time of manufacture that the Theft-Prone Design left the Vehicles without anti-theft equipment or design features that provide effective theft prevention sufficient to satisfy FMVSS No. 114.  The Defendants' conduct and Theft-Prone Design rendered the Vehicles unsafe and vulnerable to an abnormally high risk of theft.  Defendants knew at the time of manufacture that because their Vehicles did not include any anti-theft measures that satisfied FMVSS No. 114, making their Vehicles more prone to theft and failing to comply with federal regulations, the Vehicles would require larger insurance premiums and would depreciate at a more rapid rate than a comparable vehicle with anti-theft measure that satisfied FMVSS No. 114. Consequently, at the time of sale and/or lease, the Vehicles were not fit for their ordinary purpose of providing safe and reliable transportation.

1334. Defendants' breaches of express and implied warranties have deprived Plaintiffs of the benefit of their bargains.

1335. Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure.  Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Plaintiffs' breach of warranty claims.  Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles.  Defendants were also on notice

of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers, which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches. To date, Defendants failed to remedy their breaches.

1336. Alternatively, Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches. Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

1337. Additionally, Plaintiffs were not required to bring their claims through Defendants' informal dispute settlement procedures prior to initiating this action because such attempts to resolve Plaintiffs' claims through the informal dispute settlement procedures would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches. Defendants offer of sticker decals, wheel bars, and software upgrades were not sufficient remedies to the Theft-Prone Design and did not mitigate Plaintiffs' damages. Defendants did not offer a permanent mechanical repair to fix the Theft-Prone Design, nor did they respond to Plaintiffs' repeated attempts to resolve their claims during prior class litigation and multiple demand letters. Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the

COMPLAINT

Theft-Prone Design if they proceeded with Defendants' informal dispute settlement procedures.

1338. As a direct and proximate result of Defendants' breach of express and implied warranties, Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages including the difference in value between the Vehicles as warranted and the value of the defective Vehicles, increased insurance premiums that Plaintiffs have paid and will continue to pay, accelerated depreciation, other damages and costs for which the Defendants are liable, statutory attorney's fees, and such other relief the Court deems to be just and appropriate.

**B. Alabama State Law Claims for Relief**

**(Alleged by Alabama Plaintiffs Against All Defendants)**

**1. Breach of Implied Warranty of Merchantability (Ala. Code §§ 7-2-314 and 7-2a-212).**

1339. Alabama Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

1340. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Ala. Code §§ 7-2-314 and 7-2A-212.

1341. Defendants are and were at all relevant times "merchants" with respect to motor vehicles Ala. Code §§ 7-2-104(1) and 7-2A-103(3), "sellers" of motor vehicles under § 7-2-103(1)(d), and with respect to leases, "lessors" of motor vehicles under §§ 7-2A-103(1)(p).

1342. At all relevant times, Alabama Plaintiffs who purchased Vehicles in Alabama were and are "buyers" within the meaning of Ala. Code §§ 7-2-103(1)(a).

1343. At all relevant times, Alabama Plaintiffs who leased Vehicles in Alabama were and are "lessees" within the meaning of Ala. Code § 7-2A-103(1)(n).

1344. At all relevant times, Alabama Plaintiffs' Vehicles (whether purchased or leased) were and are "goods" within the meaning of Ala. Code §§ 7-2-105 and

7-2A-103(1)(h).

1345. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased.  Defendants provided Alabama Plaintiffs with an implied warranty that the purchased and leased Vehicles were in merchantable condition and fit for the ordinary purposes for which they were sold or leased.  This implied warranty included that the Vehicles (a) were manufactured, supplied, distributed, and sold by Defendants, (b) were safe and reliable for transportation, (c) complied with all federal, state, and industry motor vehicle regulations and safety standards, including FMVSS No. 114, and (d) were not at abnormally high risk of theft.

1346. The Vehicles did not comply with the implied warranty of merchantability because the Vehicles were defective and not in merchantable condition at the time of sale and/or lease, were not fit for their ordinary purpose of providing safe and reliable transportation at the time of sale or lease, and would not pass without objection in the trade as they deviated significantly from the industry standard and can be stolen in mere minutes without a key.  Defendants knew at the time of manufacture that the Vehicles contained the Theft-Prone Design and lacked any anti-theft equipment or design elements that effectively prevent theft or comply with FMVSS No. 114.  Therefore, the Defendants knew at the time of manufacture that the Vehicles are at an abnormally high risk of theft and are unsafe and an unreliable form of transportation.  The Theft-Prone Design renders the Vehicles highly vulnerable to theft and a prime target for thieves as they can be easily stolen in seconds.  Defendants knew at the time of manufacture that because their Vehicles did not include any anti-theft measures that satisfied FMVSS No. 114, making their Vehicles more prone to theft and failing to comply with federal regulations, the Vehicles would require larger insurance premiums and would depreciate at a more rapid rate than a comparable vehicle with anti-theft measure that satisfied FMVSS No. 114. Consequently, at the time of sale and/or lease, the Vehicles were not fit for their ordinary purpose of providing safe and reliable transportation.

1347. So far as Defendants have attempted to disclaim or limit the warranty, such

disclaimer or limitation is unconscionable and unenforceable. Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Alabama Plaintiffs, of the safety defect. Any time limitations regarding the warranty period were also unconscionable and inadequate to protect Alabama Plaintiffs. Alabama Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants. A gross disadvantage in bargaining power existed between Alabama Plaintiffs and Defendants, which unreasonably favored Defendants. Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left Alabama Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

1348. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that Alabama Plaintiffs may seek alternative remedies. Alabama Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provided safe and reliable transportation.

1349. Alabama Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure. Alabama Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Alabama Plaintiffs' breach of warranty claims. Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Alabama Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and

COMPLAINT

claims alleged in this Count.  Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Alabama Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches.  To date, Defendants failed to remedy their breaches.

1350. Alternatively, Alabama Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches.  Alabama Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

1351. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Alabama Plaintiffs' Vehicles were and are defective, the Theft-Prone Design in the Vehicles has not been remedied, and Alabama Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that Alabama Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

### 2. Breach of Express Warranty Under Ala. Code § 7-2-313.

1352. Alabama Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

1353. During the relevant time periods, Defendants manufactured the Vehicles and Alabama Plaintiffs purchased and/or leased the Vehicles from Defendants.

1354. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Ala. Code §§ 7-2-104(1) and 7-2A-103(3), "sellers" of motor vehicles under § 7-2-103(1)(d), and with respect to leases, "lessors" of motor vehicles under §§ 7-2A-103(1)(p).

COMPLAINT

1355. At all relevant times, Alabama Plaintiffs who purchased Vehicles in Alabama were and are "buyers" within the meaning of Ala. Code §§ 7-2-103(1)(a).

1356. At all relevant times, Alabama Plaintiffs who leased Vehicles in Alabama were and are "lessees" within the meaning of Ala. Code § 7-2A-103(1)(n).

1357. At all relevant times, Alabama Plaintiffs' Vehicles (whether purchased or leased) were and are "goods" within the meaning of Ala. Code §§ 7-2-105 and 7-2A-103(1)(h).

1358. By affixing a VIN plate to each Vehicle at the time of manufacture, Defendants expressly warranted each Vehicles' conformance to "all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture shown." These statements constitute a description, affirmation of fact, and promise made to Alabama Plaintiffs as to the Vehicles' condition, quality, safety, and reliability. These statements, affirmations, and descriptions became the basis of the bargain between Alabama Plaintiffs and Defendants, as Alabama Plaintiffs relied on these statements when making their decisions to purchase and/or lease the Vehicles. As such, the statements are an express warranty under Alabama law pursuant to Ala. Code § 7-2-313, and the Vehicles did not conform to the affirmations of fact, promises made by Defendants, or Defendants' description of the Vehicles.

1359. Alabama Plaintiffs used the Vehicles in accordance with their normal operation and did not misuse or mishandle the Vehicles in any way material to the allegations set forth herein.

1360. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable. Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Alabama Plaintiffs, of the safety defect. Any time limitations regarding the warranty period were also unconscionable and inadequate to protect Alabama Plaintiffs. Alabama Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored

COMPLAINT

Defendants.  A gross disadvantage in bargaining power existed between Alabama Plaintiffs and Defendants, which unreasonably favored Defendants.  Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left Alabama Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

1361. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that Alabama Plaintiffs may seek alternative remedies.  Alabama Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provided safe and reliable transportation.

1362. Alabama Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure.  Alabama Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Alabama Plaintiffs' breach of warranty claims.  Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Alabama Plaintiffs' claims.  Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles.  Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count.  Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Alabama Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches.  To date, Defendants failed to remedy their breaches.

1363. Alternatively, Alabama Plaintiffs were not required to provide Defendants

with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches. Alabama Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

1364. The Vehicles did not perform as promised in accordance with Defendants' express warranty; instead, the Vehicles did not meet all applicable motor vehicle safety and theft prevention standards in effect on the date of manufacture. The Vehicles are capable of being stolen in a matter of seconds without a key and do not comply with the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles do not, in fact, conform to the applicable anti-theft standards.

1365. As a direct and proximate result of Defendants' breaches, Alabama Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that Alabama Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

### 3. Violation of Alabama Deceptive Trade Practices Act Under Ala. Code § 8-19-1, et seq.

1366. Alabama Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

1367. The Alabama Deceptive Trade Practices Act ("ADTPA") prohibits deceptive trade practices. Ala. Code §§ 8-19-1–8-19-15.

1368. Defendants are "persons" within the meaning of Ala. Code § 8-19-3(10).

1369. Alabama Plaintiffs are "consumers" within the meaning of Ala. Code § 8-19-3(4).

1370. The Vehicles are "goods" within the meaning of Ala. Code. § 8-19-3(6).

1371. Through their misrepresentations, concealment, omissions, and

withholding of these material facts, Defendants engaged in unfair and deceptive acts or practices in the course of their business, as prohibited by Ala. Code §§ 8-19-5(5)–(7), 8-19-5(9), 8-19-5(27).

1372. In the course of their business, Defendants, through their agents, representatives, and subsidiaries, engaged in unfair and unconscionable deceptive acts or practices by misrepresenting the Vehicles as safe, reliable, free from defects, designed according to federal and industry standards, insurable, and priced accurately, by failing to disclose and actively concealing the dangers and risk posed by the Theft-Prone Design, and by knowingly and intentionally concealing, misrepresenting, omitting, and withholding material facts.  These material facts include that (a) the Vehicles had a hidden Theft-Prone Design which left the Vehicles without standard anti-theft measures and was not reasonably discoverable to consumers, (b) the Vehicles did not comply with federal or industry motor vehicle safety and theft prevention standards, including FMVSS No. 114, (c) the Vehicles were at an abnormally high risk of theft and therefore would be costly to insure, and (d) the Vehicles had a lower value and were of a lower standard and quality than Defendants knowingly misrepresented.

1373. Specifically, Defendants engaged in the following unfair or deceptive business practices in violation of ADTPA: (a) causing confusion or misunderstanding as to the approval or certification of the Vehicles; (b) representing that the Vehicles have characteristics, uses, benefits, and qualities which they do not have; (c) representing that the Vehicles are of a particular standard, quality, and grade when they are not; and (d) advertising the Vehicles with the intent not to sell or lease them as advertised.  Ala. Code §§ 8-19-5(5)–(7), 8-19-5(9), 8-19-5(27).

1374. Under ADTPA, Defendants had an ongoing duty to Alabama Plaintiffs as consumers to refrain from unfair or deceptive acts, practices, and representations in the course of their business.  Specifically, Defendants owed the Alabama Plaintiffs a duty to disclose all the material facts concerning the Theft-Prone Design in the Vehicles and to refrain from representing their Vehicles were of a particular standard or quality when

they were of another.

1375. As detailed above, the information concerning the Theft-Prone Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles. Defendants knew that, because of the Theft-Prone Design, the Vehicles posed a significant safety risk to consumers that used the Vehicles. Defendants knew that the Theft-Prone Design and lack of standard anti-theft measures priced the Vehicles at a substantially lower value than the price for which they were advertised, marketed, sold, and/or leased and required higher insurance rates.

1376. Defendants knew these material facts would have been material to consumers', including Alabama Plaintiffs', decision to purchase and/or lease the Vehicles.

1377. Defendants nevertheless made intentionally misleading and incomplete affirmative statements and representations about the Vehicles' safety, reliability, value, insurability, and conformance with all applicable safety and theft prevention standards, while also concealing, omitting, and withholding material facts from consumers, including Alabama Plaintiffs, at the time the Vehicles were advertised, sold, and/or leased. Defendants marketed and sold the Vehicles as safe despite their knowledge that the Theft-Prone Design posed a significant safety risk to consumers and the general public. Through advertisements, marketing materials, and their websites, Defendants made incomplete representations and/or concealed the Vehicles' defective condition. Defendants further misrepresented that the Vehicles were compliant with all applicable motor vehicle safety and theft prevention standards, when in reality they were not. Defendants further marketed and sold/leased the Vehicles at an inflated and misleading price, given the Vehicles' Theft-Prone Design and lack of standard anti-theft equipment and design elements.

1378. Alabama Plaintiffs were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants'

COMPLAINT

misrepresentations that the Vehicles were safe, reliable, free from defects, designed according to federal and industry standards, insurable, and priced accurately when deciding to purchase or lease the Vehicles.

1379. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection and that the Vehicles were not affected by the Theft-Prone Design.

1380. Defendants intended for Alabama Plaintiffs to rely on them to provide adequately designed Vehicles and to honestly and accurately reveal the safety hazards described above.

1381. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Alabama Plaintiffs, about the true safety and reliability of Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

1382. Given the Theft-Prone Design's hidden and technical nature, Alabama Plaintiffs' reliance was reasonable, as they had no way of discerning if Defendants' representations were false and misleading or otherwise learning that the Vehicles contained the Theft-Prone Design, as alleged above. Alabama Plaintiffs did not, and could not, unravel Defendants' deception on their own.

1383. Instead, Defendants had exclusive and superior knowledge of the Theft-Prone Design, related facts, and the Vehicles' noncompliance with federal and industry safety and theft prevention standards. Defendants knew these facts were hidden and not reasonably discoverable by consumers, including Alabama Plaintiffs. Alabama Plaintiffs lack the sophisticated expertise in vehicle components that would have been necessary to discover the Theft-Prone Design on their own.

1384. Had they known the truth about the Theft-Prone Design, Alabama Plaintiffs would not have purchased or leased the Vehicles, or Alabama Plaintiffs would have paid significantly less for the Vehicles.

COMPLAINT

1385. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Theft-Prone Design and true characteristics of the Vehicles were material to the decisions of Alabama Plaintiffs to purchase and lease the Vehicles, as Defendants intended.

1386. Alabama Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

1387. Defendants' violations present a continuing risk to Alabama Plaintiffs, as well as to the general public, because the Vehicles remain unsafe due to the Theft-Prone Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

1388. On September 17, 2025, Alabama Plaintiffs sent Defendants written notice letters of Defendants' violations, Plaintiffs' claims, and a proposed cure to the violations. To date, Defendants failed to remedy their violations.

1389. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile. As alleged above, Defendants have long known that the Vehicles contained the Theft-Prone Design yet did nothing to remedy the Theft-Prone Design.

1390. Pursuant to Ala. Code §§ 8-19-5., Alabama Plaintiffs seek an order (1) enjoining Defendants' unfair and/or deceptive acts, methods, or practices alleged herein, and (2) awarding damages, punitive damages, attorney's fees, costs, and/or any other just and proper relief available under ADTPA.

**4.    Fraud by Misrepresentation, Omission, and Concealment (in the Alternative).**

1391. Alabama Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

1392. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards and are

COMPLAINT

therefore of a particular value. In reality, however, the Vehicles do not comply with such standards.

1393. Defendants were aware of the Theft-Prone Design when they manufactured, marketed, and sold the Vehicles to Alabama Plaintiffs. Defendants further knew that the Theft-Prone Design gave rise to serious safety risks for the consumers that would use the Vehicles and naturally give rise to higher insurance premiums and accelerated depreciation. At the same time, Defendants were aware of the Federal Motor Vehicle Safety Standards and of the effectiveness of engine immobilizer technology in reducing safety hazards. Defendants were also aware that noncompliance with federal and industry standards lowered the value of the Vehicles and would render the Vehicles difficult to insure.

1394. Defendants knew that the Theft-Prone Design, the safety hazards it posed, and the reduction in the Vehicles' value would have been material facts in the Alabama Plaintiffs' decisions to buy or lease the Vehicles.

1395. A reasonable person would find the Vehicles' lack of industry-standard anti-theft measures and noncompliance with applicable safety standards material to their decision to purchase, lease, and maintain the Vehicles because these deficiencies impact safety, availability, the Vehicles' value, and the cost to insure the Vehicles.

1396. Defendants knowingly made affirmatively false or incomplete statements of material facts as to the Vehicles' safety, reliability, quality, value, and compliance with applicable motor vehicle safety and theft prevention standards, while they intentionally withheld, concealed, omitted, suppressed, and failed to disclose material facts about the Theft-Prone Design, including the lack of effective anti-theft measures, significant safety risks, noncompliance with federal motor vehicle safety standards, and the Vehicles' true value.

1397. Defendants volunteered incomplete information about the Vehicles they offered for sale and/or lease to consumers, including false statements as to the Vehicles' safety, compliance with applicable safety and anti-theft standards, and value while at

the same time withholding the existence of the Theft-Prone Design. Defendants further knew and failed to disclose that the Theft-Prone Design and lack of standard anti-theft measures left the Vehicles at substantially lower value than the price for which they were advertised, marketed, sold, and/or leased.

1398. Alternatively, Defendants made false misrepresentations about the Theft-Prone Design with such utter disregard and recklessness that their knowledge regarding the Theft-Prone Design, its unsafe and unreliable nature, and its substantially lower value may be inferred.

1399. Defendants intended for the Alabama Plaintiffs to rely on their omissions and concealment—which Alabama Plaintiffs did by purchasing and leasing the Vehicles at the prices they paid believing that their vehicles would not have a Theft-Prone Design that would affect the quality, reliability, and safety of the Vehicles.

1400. Alabama Plaintiffs' reliance on Defendants' misrepresentations and concealment was reasonable and justifiable, as Alabama Plaintiffs had no way of learning the facts that Defendants had concealed or failed to disclose. Alabama Plaintiffs did not, and could not, unravel Defendants' deception on their own.

1401. Having been aware of the Theft-Prone Design within the Vehicles and having known that Alabama Plaintiffs could not have reasonably been expected to know of the Theft-Prone Design, Defendants had a duty to disclose the Theft-Prone Design to Alabama Plaintiffs in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Theft-Prone Design and the true value of the Vehicles.

1402. Instead, Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Alabama Plaintiffs.

1403. If Defendants had fully and adequately disclosed the Theft-Prone Design to consumers, Alabama Plaintiffs would have seen such a disclosure.

COMPLAINT

1404. Had Alabama Plaintiffs known of the Theft-Prone Design within the Vehicles, they would not have purchased the Vehicles or would have paid less for them. Through their omissions and concealment with respect to the Theft-Prone Design within the Vehicles, Defendants intended to induce, and did in fact induce, Alabama Plaintiffs to either purchase a Vehicle that they otherwise would not have purchased or pay more for a Vehicle than they otherwise would have paid.

1405. As a direct and proximate result of Defendants' omissions, Alabama Plaintiffs overpaid for the Vehicles because Alabama Plaintiffs would either have paid less for the Vehicles or would not have purchased the Vehicles at all if the Theft-Prone Design had been disclosed to them.

1406. As a direct and proximate result of Defendants' omissions, Alabama Plaintiffs purchased Vehicles highly susceptible to theft and were forced to pay higher insurance premiums to account for the susceptibility that they did not knowingly accept, purchase, or lease.

1407. As a direct and proximate result of Defendants' omissions, the Alabama Plaintiffs paid higher insurance premiums and are now left with Vehicles with significantly diminished values.

1408. Accordingly, Defendants are liable to Alabama Plaintiffs for their damages, including but not limited to the difference in value, increased insurance premiums that Alabama Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

1409. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, in reckless disregard of the Alabama Plaintiffs' rights and well-being, and to enrich themselves.  Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

**5.    Negligent Misrepresentation (in the Alternative).**

1410. Alabama Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

1411. Defendants, in the course of their business selling and promoting motor vehicles, supplied false information, including that the Vehicles were safe, reliable, and of a particular value, to guide motor vehicle buyers, including Alabama Plaintiffs, in their choice of transaction.

1412. Defendants made misrepresentations of material facts concerning the safety, reliability, and value of the Vehicles that they knew or should have known were false. Specifically, Defendants misrepresented that the Vehicles had effective anti-theft equipment or design elements; misrepresented that the Vehicles were safe and reliable forms of transportation; misrepresented that the Vehicles complied with all federal and industry safety and theft prevention standards; and misrepresented the true value of the Vehicles. Defendants supplied this information in the course of their business to guide Alabama Plaintiffs in their Vehicle selection and induce Alabama Plaintiffs to purchase one of Defendants' Vehicles.

1413. Alabama Plaintiffs justifiably relied upon Defendants' representations because, as the entities responsible for designing and manufacturing the Vehicles, Defendants held themselves out to be knowledgeable about the Vehicles' components and honest in their promotion of the Vehicles. Alabama Plaintiffs' reliance was further reasonable given the hidden and technical nature of the Theft-Prone Design and practical inability of Alabama Plaintiffs to discover the Theft-Prone Design on their own. Because Defendants held the Vehicles out to be in line with industry standards, the representation was not unreasonable on its face and Alabama Plaintiffs had no apparent reason to doubt the veracity of Defendants' representations.

1414. Defendants had a duty to disclose all relevant information regarding the Vehicles' safety, reliability, quality, and characteristics that would affect the Alabama Plaintiffs' choice of purchase as consumers.

1415. Defendants failed to exercise reasonable care or competence in

COMPLAINT

communicating the standards of safety, reliability, quality, and characteristics of the Vehicles to the consumers, including Alabama Plaintiffs, when they failed to disclose the lack of anti-theft prevention technology in the Vehicles. Rather, Defendants published materials and marketed the Vehicles for years as safe, reliable, and of a quality consistent with the industry standard.

1416. Alabama Plaintiffs would not have purchased, or would have purchased for a lower price, the Vehicles which Defendants negligently misrepresented as safe, of standard quality, and containing standard trade characteristics, such as anti-theft prevention technology. Additionally, as a direct and proximate result, Alabama Plaintiffs have had to pay higher insurance premiums to account for the Vehicles' high susceptibility to theft and are now left with Vehicles that have a lower value than they would have had without the defect.

1417. As a direct and proximate result of Alabama Plaintiffs' reasonable reliance on Defendants' negligent misrepresentations, Alabama Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that Alabama Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

**6.     Negligence (in the Alternative).**

1418. Alabama Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

1419. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

1420. Defendants owed a duty of care to Alabama Plaintiffs. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves, higher insurance premiums, and accelerated depreciation.

1421. Defendants failed to exercise reasonable care in connection with their

COMPLAINT

manufacture, distribution, sale, and/or leasing of the Vehicles.

1422. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Alabama Plaintiffs.

1423. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS.

1424. As a direct and proximate result of Defendants' failure to exercise reasonable care, Alabama Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that Alabama Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

1425. Alabama Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 7.    Unjust Enrichment.

1426. Alabama Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

1427. When they purchased and leased the Vehicles, Alabama Plaintiffs conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

1428. In exchange, Defendants did not confer the benefit that was promised to

Plaintiffs when Defendants provided Vehicles of a lesser value and poorer quality than agreed. Rather, Defendants kept the monetary amounts Plaintiffs paid for Vehicles of a particular value and nature that conformed with federal and industry safety standards, but Defendants did not provide Vehicles of that particular value or nature that conformed with federal and industry safety standards.

1429. Alabama Plaintiffs have a reasonable expectation of compensation because they conferred an economic benefit on the Defendants with the expectation that they were receiving a different product—one of the particular design, nature, quality, and value that contained an anti-theft system and was compliant with federal safety and industry standards—in exchange.

1430. Alabama Plaintiffs would not have purchased or leased their Vehicles, or would have paid less for them, had they known of the Theft-Prone Design at the time of purchase or lease. Therefore, Defendants profited from the sale and lease of the Vehicles to the detriment and expense of Alabama Plaintiffs by misrepresenting the Vehicles' true design, nature, quality, and value.

1431. Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft-Prone Design, the Vehicles' noncompliant nature and poorer quality, and the Vehicles' reduced value, yet they failed to disclose this knowledge and misled the Alabama Plaintiffs regarding the design, nature, quality, and value of the Vehicles while profiting from this deception.

1432. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, in part because they were procured as a result of their wrongful conduct alleged above.

1433. Alabama Plaintiffs are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Alabama Plaintiffs to the position they occupied prior to dealing with these Defendants, with such amounts to be

COMPLAINT

determined at trial.

1434. Alabama Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages, because if Alabama Plaintiffs' claims for damages are dismissed or judgment is entered in favor of Defendants, Alabama Plaintiffs will have no adequate legal remedy.

### C. Arizona State Law Claims for Relief

### (Alleged by Arizona Plaintiffs Against All Defendants)

#### 1. Breach of Implied Warranty of Merchantability Under Ariz. Rev. Stat. Ann. §§ 47-2314 and 47-2A212.

1435. Arizona Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

1436. A warranty that the Vehicles were in merchantable condition is implied by law pursuant to Ariz. Rev. Stat. Ann. §§ 47-2314 and 47-2A212.

1437. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Ariz. Rev. Stat. Ann. §§ 47-2314, 47-2104(A) and 47-2A103(C)(11), "sellers" of motor vehicles under § 47-2103(A)(4), and with respect to leases, "lessors" of motor vehicles under § 4-2A103(A)(16).

1438. At all relevant times, Arizona Plaintiffs' Vehicles (whether purchased or leased) were and are "goods" within the meaning of Ariz. Rev. Stat. Ann. §§ 47-2105(A) and 47-2A103(A)(8).

1439. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Arizona Plaintiffs with an implied warranty that the purchased and leased Vehicles were in merchantable condition and fit for the ordinary purposes for which they were sold or leased. This implied warranty included that the Vehicles (a) were manufactured, supplied, distributed, and sold by Defendants, (b) were safe and reliable for transportation, (c) complied with all federal, state, and industry motor vehicle regulations and safety standards, including FMVSS No. 114, and (d) were not at abnormally high risk of theft.

1440. The Vehicles did not comply with the implied warranty of merchantability because the Vehicles were defective and not in merchantable condition at the time of sale and/or lease, were not fit for their ordinary purpose of providing safe and reliable transportation at the time of sale or lease, and would not pass without objection in the trade as they deviated significantly from the industry standard and can be stolen in mere minutes without a key. Defendants knew at the time of manufacture that the Vehicles contained the Theft-Prone Design and lacked any anti-theft equipment or design elements that effectively prevent theft or comply with FMVSS No. 114. Therefore, the Defendants knew at the time of manufacture that the Vehicles are at an abnormally high risk of theft and are unsafe and an unreliable form of transportation. The Theft-Prone Design renders the Vehicles highly vulnerable to theft and a prime target for thieves as they can be easily stolen in seconds. Defendants knew at the time of manufacture that because their Vehicles did not include any anti-theft measures that satisfied FMVSS No. 114, making their Vehicles more prone to theft and failing to comply with federal regulations, the Vehicles would require larger insurance premiums and would depreciate at a more rapid rate than a comparable vehicle with anti-theft measure that satisfied FMVSS No. 114. Consequently, at the time of sale and/or lease, the Vehicles were not fit for their ordinary purpose of providing safe and reliable transportation.

1441. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable. Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Arizona Plaintiffs, of the safety defect. Any time limitations regarding the warranty period were also unconscionable and inadequate to protect Arizona Plaintiffs. Arizona Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants. A gross disadvantage in bargaining power existed between Arizona Plaintiffs and Defendants, which unreasonably favored Defendants. Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and

technical nature of the Theft-Prone Design left Arizona Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

1442. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that Arizona Plaintiffs may seek alternative remedies.  Arizona Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provided safe and reliable transportation.

1443. Arizona Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure.  Arizona Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Arizona Plaintiffs' breach of warranty claims.  Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Arizona Plaintiffs' claims.  Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles.  Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count.  Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Arizona Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches.  To date, Defendants failed to remedy their breaches.

1444. Alternatively, Arizona Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design.

COMPLAINT

Defendants have not cured, remedied, or repaired their breaches. Arizona Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

1445. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Arizona Plaintiffs' Vehicles were and are defective, the Theft-Prone Design in the Vehicles has not been remedied, and Arizona Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that Arizona Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

**2.      Breach of Express Warranty Under Ariz. Rev. Stat. Ann. §§ 47-2313, 47-2A210.**

1446. Arizona Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

1447. During the relevant time periods, Defendants manufactured the Vehicles and Arizona Plaintiffs purchased and/or leased the Vehicles from Defendants.

1448. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Ariz. Rev. Stat. Ann. §§ 47-2314, 47-2104(A) and 47-2A103(C)(11), "sellers" of motor vehicles under § 47-2103(A)(4), and with respect to leases, "lessors" of motor vehicles under § 4-2A103(A)(16).

1449. At all relevant times, Arizona Plaintiffs' Vehicles (whether purchased or leased) were and are "goods" within the meaning of Ariz. Rev. Stat. Ann. §§ 47-2105(A) and 47-2A103(A)(8).

1450. By affixing a VIN plate to each Vehicle at the time of manufacture, Defendants expressly warranted each Vehicles' conformance to "all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture shown." These statements constitute a description, affirmation of fact, and promise made to Arizona Plaintiffs as to the Vehicles' condition, quality,

safety, and reliability.  These statements, affirmations, and descriptions became the basis of the bargain between Arizona Plaintiffs and Defendants, as Arizona Plaintiffs relied on these statements when making their decisions to purchase and/or lease the Vehicles.  As such, the statements are an express warranty under Arizona law pursuant to Ariz. Rev. Stat. Ann. §§ 47-2313 and 47-2A210, and the Vehicles did not conform to the affirmations of fact, promises made by Defendants, or Defendants' description of the Vehicles.

1451. Arizona Plaintiffs used the Vehicles in accordance with their normal operation and did not misuse or mishandle the Vehicles in any way material to the allegations set forth herein.

1452. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable.  Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Arizona Plaintiffs, of the safety defect.  Any time limitations regarding the warranty period were also unconscionable and inadequate to protect Arizona Plaintiffs.  Arizona Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants.  A gross disadvantage in bargaining power existed between Arizona Plaintiffs and Defendants, which unreasonably favored Defendants.  Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left Arizona Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

1453. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that Arizona Plaintiffs may seek alternative remedies.  Arizona Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provided safe and reliable transportation.

1454. Arizona Plaintiffs provided Defendants with reasonable notice of their

COMPLAINT

breaches of warranties and an opportunity to cure. Arizona Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Arizona Plaintiffs' breach of warranty claims. Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Arizona Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Arizona Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches. To date, Defendants failed to remedy their breaches.

1455. Alternatively, Arizona Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches. Arizona Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

1456. The Vehicles did not perform as promised in accordance with Defendants' express warranty; instead, the Vehicles did not meet all applicable motor vehicle safety and theft prevention standards in effect on the date of manufacture. The Vehicles are capable of being stolen in a matter of seconds without a key and do not comply with the terms of the express warranty described in the Vehicles' VIN plates because the

COMPLAINT

Vehicles do not, in fact, conform to the applicable anti-theft standards.

1457. As a direct and proximate result of Defendants' breaches, Arizona Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that Arizona Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

### 3.   Violation of Arizona Consumer Sales Practices Act Under Ariz. Rev. Stat. Ann. § 44-1521, et seq.

1458. Arizona Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

1459. Defendants and Arizona Plaintiffs are "persons" within the meaning of Ariz. Rev. Stat. Ann. § 44-1521(6).

1460. The Vehicles are "merchandise" within the definition of Ariz. Rev. Stat. Ann § 44-1521(5).

1461. Defendants engaged in unlawful business practices as prohibited under the Arizona Consumer Fraud Act ("Arizona CFA").  Ariz. Rev. Stat. Ann § 44-1522(A).

1462. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Arizona CFA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Theft-Prone Design, as detailed above.  Defendants used deception and unfair practices, false pretense, false promise, misrepresentation, concealment, suppression, and omission of material facts with the intent that Arizona Plaintiffs rely on such concealment, suppression, or omission in connection with the sale or advertisement of their Vehicles, in violation of Ariz. Rev. Stat. § 44-1522(A).

1463. Under the Arizona CFA, Defendants had an ongoing duty to Arizona Plaintiffs to refrain from unfair or deceptive practices in the course of their business. Specifically, Defendants owed Arizona Plaintiffs a duty to disclose all the material facts

concerning the Theft-Prone Design in the Vehicles.

1464. Defendants had exclusive access to and far superior knowledge about facts regarding the Theft-Prone Design, and Defendants knew these facts were not known to or reasonably discoverable by Arizona Plaintiffs.

1465. Given the Theft-Prone Design's hidden and technical nature, Arizona Plaintiffs lack the sophisticated expertise in vehicle components necessary to discover the Theft-Prone Design on their own.

1466. Defendants knew that the Theft-Prone Design gave rise to safety concerns for the consumers who use the Vehicles, and that the Theft-Prone Design would have been a material fact in the Arizona Plaintiffs' decisions to buy or lease the Vehicles.

1467. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect.  In advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Theft-Prone Design.  Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

1468. As detailed above, the information concerning the Theft-Prone Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

1469. By misrepresenting the Vehicles as safe, reliable, and free from defects, and by failing to disclose and actively concealing the dangers and risks posed by the Theft-Prone Design, Defendants engaged in the following unfair or deceptive business practices in violation of the Arizona CFA: (a) representing that the Vehicles have characteristics, uses, benefits, and qualities which they do not have and (b) representing that the Vehicles are of a particular standard, quality, and grade when they are not.

1470. Defendants intended for Arizona Plaintiffs to rely on them to provide adequately designed Vehicles and to honestly and accurately reveal the safety hazards

described above.

1471. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Theft-Prone Design. Those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Arizona Plaintiffs, about the true safety and reliability of the Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

1472. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Theft-Prone Design and true characteristics of the Vehicles were material to the decisions of Arizona Plaintiffs to purchase or lease the Vehicles, as Defendants intended. Arizona Plaintiffs were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase or lease the Vehicles.

1473. Arizona Plaintiffs' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, and/or otherwise learning that the Vehicles contained the Theft-Prone Design, as alleged above. Arizona Plaintiffs did not, and could not, unravel Defendants' deception on their own.

1474. Had they known the truth about the Theft-Prone Design, Arizona Plaintiffs would not have purchased or leased the Vehicles or would have paid significantly less for them.

1475. Arizona Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

1476. Defendants' violations present a continuing risk to Arizona Plaintiffs and the general public because the Vehicles remain unsafe due to the Theft-Prone Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

1477. Defendants had ample notice provided by the numerous complaints filed against them, internet videos, and news reports. Furthermore, on September 17, 2025, Arizona Plaintiffs sent Defendants written notice letters of Defendants' violations, Plaintiffs' claims, and a proposed cure to the violations. To date, Defendants failed to remedy their violations. Because Defendants failed to remedy their unlawful conduct, Arizona Plaintiffs seek all damages and relief to which Arizona Plaintiffs are entitled.

1478. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile. As alleged above, Defendants have long known that the Vehicles contained the Theft-Prone Design yet did nothing to remedy the Theft-Prone Design.

1479. Arizona Plaintiffs seek an order (1) enjoining Defendants' unfair and/or deceptive acts, methods, or practices alleged herein, and (2) awarding damages, punitive damages, attorney's fees, costs, and/or any other just and proper relief available under the Arizona CFA.

### 4. Fraud by Misrepresentation, Omission, and Concealment.

1480. Arizona Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

1481. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards and are therefore of a particular value and quality. In reality, however, the Vehicles do not comply with such standards and are of a lesser value and quality accordingly.

1482. Defendants were aware of the Theft-Prone Design when they manufactured, marketed, and sold the Vehicles to Arizona Plaintiffs. Defendants further knew that the Theft-Prone Design gave rise to serious safety risks for the consumers that would use the Vehicles and naturally give rise to higher insurance premiums and accelerated depreciation. At the same time, Defendants were aware of the Federal Motor Vehicle Safety Standards and of the effectiveness of engine immobilizer technology in reducing safety hazards. Defendants were also aware that

COMPLAINT

noncompliance with federal and industry standards lowered the value of the Vehicles and would render the Vehicles difficult to insure.

1483. Defendants knew that the Theft-Prone Design, the safety hazards it posed, and the reduction in the Vehicles' value would have been material facts to the Arizona Plaintiffs' decisions to buy or lease the Vehicles.

1484. A reasonable person would find the Vehicles' lack of industry-standard anti-theft measures and noncompliance with applicable safety standards material to their decision to purchase, lease, and maintain the Vehicles because these deficiencies impact safety, availability, the Vehicles' value, and the cost to insure the Vehicles.

1485. Defendants knowingly made affirmatively false or incomplete statements of material facts as to the Vehicles' safety, reliability, quality, value, and compliance with applicable motor vehicle safety and theft prevention standards, while they intentionally withheld, concealed, omitted, suppressed, and failed to disclose material facts about the Theft-Prone Design, including the lack of effective anti-theft measures, significant safety risks, noncompliance with federal motor vehicle safety standards, and the Vehicles' true value.

1486. Defendants volunteered incomplete information about the Vehicles they offered for sale and/or lease to consumers, including false statements as to the Vehicles' safety, compliance with applicable safety and anti-theft standards, and value while at the same time withholding the existence of the Theft-Prone Design. Defendants further knew and failed to disclose that the Theft-Prone Design and lack of standard anti-theft measures left the Vehicles at substantially lower value than the price for which they were advertised, marketed, sold, and/or leased.

1487. Alternatively, Defendants made false misrepresentations about the Theft-Prone Design with such utter disregard and recklessness that their knowledge regarding the Theft-Prone Design, its unsafe and unreliable nature, and its substantially lower value may be inferred.

1488. Defendants intended for the Arizona Plaintiffs to rely on their omissions

COMPLAINT

and concealment—which Arizona Plaintiffs did in the manner reasonably contemplated by Defendants when they purchased or leased the Vehicles at the prices they paid believing that their vehicles would not have a Theft-Prone Design that would affect the quality, reliability, and safety of the Vehicles.

1489. Arizona Plaintiffs' reliance on Defendants' misrepresentations and concealment was reasonable and justifiable, as Arizona Plaintiffs had no way of learning the facts that Defendants had concealed or failed to disclose.  Arizona Plaintiffs did not, and could not, unravel Defendants' deception on their own.

1490. Having been aware of the Theft-Prone Design within the Vehicles and having known that Arizona Plaintiffs could not have reasonably been expected to know of the Theft-Prone Design, Defendants had a duty to disclose the Theft-Prone Design to Arizona Plaintiffs in connection with the sale of the Vehicles.  Defendants further had a duty to disclose the Theft-Prone Design and the true value of the Vehicles.

1491. Instead, Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products.  They did so at the expense of Arizona Plaintiffs.

1492. If Defendants had fully and adequately disclosed the Theft-Prone Design to consumers, Arizona Plaintiffs would have seen such a disclosure.

1493. Had Arizona Plaintiffs known of the Theft-Prone Design within the Vehicles, they would not have purchased the Vehicles or would have paid less for them. Through their omissions and concealment with respect to the Theft-Prone Design within the Vehicles, Defendants intended to induce, and did in fact induce, Arizona Plaintiffs to either purchase a Vehicle that they otherwise would not have purchased or pay more for a Vehicle than they otherwise would have paid.

1494. As a direct and proximate result of Defendants' omissions, Arizona Plaintiffs overpaid for the Vehicles because Arizona Plaintiffs would either have paid

COMPLAINT

less for the Vehicles or would not have purchased the Vehicles at all if the Theft-Prone Design had been disclosed to them.

1495. As a direct and proximate result of Defendants' omissions, Arizona Plaintiffs purchased Vehicles highly susceptible to theft and were forced to pay higher insurance premiums to account for the susceptibility that they did not knowingly accept, purchase, or lease.

1496. As a direct and proximate result of Defendants' omissions, the Arizona Plaintiffs paid higher insurance premiums and are now left with Vehicles with significantly diminished values.

1497. Accordingly, Defendants are liable to Arizona Plaintiffs for their damages, including but not limited to the difference in value, increased insurance premiums that Arizona Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

1498. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, in reckless disregard of the Arizona Plaintiffs' rights and well-being, and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

1499. Arizona Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

**5.     Negligent Misrepresentation.**

1500. Arizona Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

1501. Defendants, in the course of their business selling and promoting motor vehicles, supplied false information, including that the Vehicles were safe, reliable, and of a particular value, to guide motor vehicle buyers, including Arizona Plaintiffs, in their choice of transaction.

COMPLAINT

1502. Defendants made misrepresentations of material facts concerning the safety, reliability, and value of the Vehicles that they knew or should have known were false. Specifically, Defendants misrepresented that the Vehicles had effective anti-theft equipment or design elements; misrepresented that the Vehicles were safe and reliable forms of transportation; misrepresented that the Vehicles complied with all federal and industry safety and theft prevention standards; and misrepresented the true value of the Vehicles. Defendants supplied this information in the course of their business to guide Arizona Plaintiffs in their Vehicle selection and intended to induce Arizona Plaintiffs to purchase one of Defendants' Vehicles.

1503. Arizona Plaintiffs justifiably relied upon Defendants' representations because, as the entities responsible for designing and manufacturing the Vehicles, Defendants held themselves out to be knowledgeable about the Vehicles' components and honest in their promotion of the Vehicles. Arizona Plaintiffs' reliance was further reasonable given the hidden and technical nature of the Theft-Prone Design and practical inability of Arizona Plaintiffs to discover the Theft-Prone Design on their own. Because Defendants held the Vehicles out to be in line with industry standards, the representation was not unreasonable on its face and Arizona Plaintiffs had no apparent reason to doubt the veracity of Defendants' representations.

1504. Defendants had a duty to disclose all relevant information regarding the Vehicles' safety, reliability, quality, and characteristics that would affect the Arizona Plaintiffs' choice of purchase as consumers.

1505. Defendants failed to exercise reasonable care or competence in communicating the standards of safety, reliability, quality, and characteristics of the Vehicles to the consumers, including Arizona Plaintiffs, when they failed to disclose the lack of anti-theft prevention technology in the Vehicles. Rather, Defendants published materials and marketed the Vehicles for years as safe, reliable, and of a quality consistent with the industry standard.

1506. Arizona Plaintiffs would not have purchased, or would have purchased for

COMPLAINT

a lower price, the Vehicles which Defendants negligently misrepresented as safe, of standard quality, and containing standard trade characteristics, such as anti-theft prevention technology. Additionally, as a direct and proximate result, Arizona Plaintiffs have had to pay higher insurance premiums to account for the Vehicles' high susceptibility to theft and are now left with Vehicles that have a lower value than they would have had without the defect.

1507. As a direct and proximate result of Arizona Plaintiffs' reasonable reliance on Defendants' negligent misrepresentations, Arizona Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that Arizona Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

1508. Arizona Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 6. Negligence.

1509. Arizona Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

1510. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

1511. Defendants owed a duty of care to Arizona Plaintiffs. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves, higher insurance premiums, and accelerated depreciation.

1512. Defendants failed to exercise reasonable care in connection with their manufacture, distribution, sale, and/or leasing of the Vehicles.

1513. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to

- 412 -
COMPLAINT

ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Arizona Plaintiffs.

1514. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS.

1515. As a direct and proximate result of Defendants' failure to exercise reasonable care, Arizona Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that Arizona Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

1516. Arizona Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 7. Unjust Enrichment.

1517. Arizona Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

1518. When they purchased and leased the Vehicles, Arizona Plaintiffs conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

1519. In exchange, Defendants did not confer the benefit that was promised to Plaintiffs when Defendants provided Vehicles of a lesser value and poorer quality than agreed. Rather, Defendants kept the monetary amounts Plaintiffs paid for Vehicles of a particular value and nature that conformed with federal and industry safety standards, but Defendants did not provide Vehicles of that particular value or nature that

COMPLAINT

conformed with federal and industry safety standards.

1520. Arizona Plaintiffs have a reasonable expectation of compensation because they conferred an economic benefit on the Defendants with the expectation that they were receiving a different product—one of the particular design, nature, quality, and value that contained an anti-theft system and was compliant with federal safety and industry standards—in exchange.

1521. Arizona Plaintiffs would not have purchased or leased their Vehicles, or would have paid less for them, had they known of the Theft-Prone Design at the time of purchase or lease. Therefore, Defendants profited from the sale and lease of the Vehicles to the detriment and expense of Arizona Plaintiffs by misrepresenting the Vehicles' true design, nature, quality, and value.

1522. Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft-Prone Design, the Vehicles' noncompliant nature and poorer quality, and the Vehicles' reduced value, yet they failed to disclose this knowledge and misled the Arizona Plaintiffs regarding the design, nature, quality, and value of the Vehicles while profiting from this deception.

1523. Accordingly, Arizona Plaintiffs have been impoverished due to Defendants' enrichment without justification.

1524. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, in part because they were procured as a result of their wrongful conduct alleged above.

1525. Arizona Plaintiffs are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Arizona Plaintiffs to the position they occupied prior to dealing with these Defendants, with such amounts to be determined at trial.

1526. Arizona Plaintiffs plead this claim separately, as well as in the alternative

COMPLAINT

to their claims for damages, because if Arizona Plaintiffs' claims for damages are dismissed or judgment is entered in favor of Defendants, Arizona Plaintiffs will have no adequate legal remedy.

**D. Arkansas State Law Claims for Relief**

**(Alleged by Arkansas Plaintiffs Against All Defendants)**

**1. Breach of Implied Warranty of Merchantability Under Ark. Code Ann. §§ 4-2-314 and 4-2A-212.**

1527. Arkansas Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

1528. A warranty that the Vehicles were in merchantable condition is implied by law pursuant to Ark. Code Ann. §§ 4-2-314 and 4- 2A-212.

1529. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Ark. Code Ann. §§ 4-2-104(1), 4-2-314(1), and 4-2A-103(3), "sellers" of motor vehicles under §§ 4-2-103(1)(d) and 4-2A-103(3), and with respect to leases, "lessors" of motor vehicles under § § 4-2A-103(1)(p).

1530. In the alternative, if Defendants were not the sellers of the Vehicles to Arkansas Plaintiffs, then Arkansas Plaintiffs were the intended third-party beneficiaries of any and all sales contracts in which one or more Defendant sold Vehicles to Kia and Hyundai dealers or others with the intent that they be resold to consumers, including Arkansas Plaintiffs. Defendants are therefore liable to Plaintiffs under Ark. Code Ann. § 4-86-101.

1531. At all relevant times, Arkansas Plaintiffs who purchased Vehicles in Arkansas were and are "buyers" within the meaning of Ark. Code Ann. § 4-2-103(1)(a).

1532. At all relevant times, Arkansas Plaintiffs who leased Vehicles in Arkansas were and are "lessees" within the meaning of Ark. Code Ann. § 4-2A-103(1)(n).

1533. At all relevant times, Arkansas Plaintiffs' Vehicles (whether purchased or leased) were and are "goods" within the meaning of Ark. Code Ann. §§ 4-2-105 and 4-2A-103(1)(h).

COMPLAINT

1534. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased.  Defendants provided Arkansas Plaintiffs with an implied warranty that the purchased and leased Vehicles were in merchantable condition and fit for the ordinary purposes for which they were sold or leased.  This implied warranty included that the Vehicles (a) were manufactured, supplied, distributed, and sold by Defendants, (b) were safe and reliable for transportation, (c) complied with all federal, state, and industry motor vehicle regulations and safety standards, including FMVSS No. 114, (d) were not at abnormally high risk of theft, and (e) were of a particular value and quality that complied with federal and industry safety standards.

1535. The Vehicles did not comply with the implied warranty of merchantability because the Vehicles were defective and not in merchantable condition at the time of sale and/or lease, were not fit for their ordinary purpose of providing safe and reliable transportation at the time of sale or lease, and would not pass without objection in the trade as they deviated significantly from the industry standard and can be stolen in mere minutes without a key.  Defendants knew at the time of manufacture that the Vehicles contained the Theft-Prone Design and lacked any anti-theft equipment or design elements that effectively prevent theft or comply with FMVSS No. 114.  Therefore, the Defendants knew at the time of manufacture that the Vehicles are at an abnormally high risk of theft and are unsafe and an unreliable form of transportation.  The Theft-Prone Design renders the Vehicles highly vulnerable to theft and a prime target for thieves as they can be easily stolen in seconds.  Defendants knew at the time of manufacture that because their Vehicles did not include any anti-theft measures that satisfied FMVSS No. 114, making their Vehicles more prone to theft and failing to comply with federal regulations, the Vehicles would require larger insurance premiums and would depreciate at a more rapid rate than a comparable vehicle with anti-theft measure that satisfied FMVSS No. 114. Consequently, at the time of sale and/or lease, the Vehicles were not fit for their ordinary purpose of providing safe and reliable transportation.

COMPLAINT

1536. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable. Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Arkansas Plaintiffs, of the safety defect. Any time limitations regarding the warranty period were also unconscionable and inadequate to protect Arkansas Plaintiffs. Arkansas Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants. A gross disadvantage in bargaining power existed between Arkansas Plaintiffs and Defendants, which unreasonably favored Defendants. Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left Arkansas Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

1537. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that Arkansas Plaintiffs may seek alternative remedies. Arkansas Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provided safe and reliable transportation.

1538. Arkansas Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure. Arkansas Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Arkansas Plaintiffs' breach of warranty claims. Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Arkansas Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news

COMPLAINT

reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Arkansas Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches. To date, Defendants failed to remedy their breaches.

1539. Alternatively, Arkansas Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches. Arkansas Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

1540. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Arkansas Plaintiffs' Vehicles were and are defective, the Theft-Prone Design in the Vehicles has not been remedied, and Arkansas Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that Arkansas Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

### 2. Breach of Express Warranty Under Ark. Code Ann. §§ 4-2-313 and 4-2A-210.

1541. Arkansas Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

1542. During the relevant time periods, Defendants manufactured the Vehicles and Arkansas Plaintiffs purchased and/or leased the Vehicles from Defendants.

1543. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Ark. Code Ann. §§ 4-2-104(1), 4-2-314(1), and 4-2A-103(3),

"sellers" of motor vehicles under §§ 4-2-103(1)(d) and 4-2A-103(3), and with respect to leases, "lessors" of motor vehicles under § § 4-2A-103(1)(p).

1544. In the alternative, if Defendants were not the sellers of the Vehicles to Arkansas Plaintiffs, then Arkansas Plaintiffs were the intended third-party beneficiaries of any and all sales contracts in which one or more Defendant sold Vehicles to Kia and Hyundai dealers or others with the intent that they be resold to consumers, including Arkansas Plaintiffs. Defendants are therefore liable to Plaintiffs under Ark. Code Ann. § 4-86-101.

1545. At all relevant times, Arkansas Plaintiffs who purchased Vehicles in Arkansas were and are "buyers" within the meaning of Ark. Code Ann. § 4-2-103(1)(a).

1546. At all relevant times, Arkansas Plaintiffs who leased Vehicles in Arkansas were and are "lessees" within the meaning of Ark. Code Ann. § 4-2A-103(1)(n).

1547. At all relevant times, Arkansas Plaintiffs' Vehicles (whether purchased or leased) were and are "goods" within the meaning of Ark. Code Ann. §§ 4-2-105(1) and 4-2A-103(1)(h).

1548. By affixing a VIN plate to each Vehicle at the time of manufacture, Defendants expressly warranted each Vehicles' conformance to "all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture shown." These statements constitute a description, affirmation of fact, and promise made to Arkansas Plaintiffs as to the Vehicles' condition, quality, safety, and reliability. These statements, affirmations, and descriptions became the basis of the bargain between Arkansas Plaintiffs and Defendants, as Arkansas Plaintiffs relied on these statements when making their decisions to purchase and/or lease the Vehicles. As such, the statements are an express warranty under Arkansas law pursuant to Ark. Code Ann. §§ 4-2-313 and 4-2A-210, and the Vehicles did not conform to the affirmations of fact, promises made by Defendants, or Defendants' description of the Vehicles.

1549. Arkansas Plaintiffs used the Vehicles in accordance with their normal

operation and did not misuse or mishandle the Vehicles in any way material to the allegations set forth herein.

1550. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable. Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Arkansas Plaintiffs, of the safety defect. Any time limitations regarding the warranty period were also unconscionable and inadequate to protect Arkansas Plaintiffs. Arkansas Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants. A gross disadvantage in bargaining power existed between Arkansas Plaintiffs and Defendants, which unreasonably favored Defendants. Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left Arkansas Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

1551. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that Arkansas Plaintiffs may seek alternative remedies. Arkansas Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provided safe and reliable transportation.

1552. Arkansas Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure. Arkansas Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Arkansas Plaintiffs' breach of warranty claims. Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Arkansas Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance

COMPLAINT

with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count.  Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Arkansas Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches.  To date, Defendants failed to remedy their breaches.

1553. Alternatively, Arkansas Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches.  Arkansas Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

1554. The Vehicles did not perform as promised in accordance with Defendants' express warranty; instead, the Vehicles did not meet all applicable motor vehicle safety and theft prevention standards in effect on the date of manufacture.  The Vehicles are capable of being stolen in a matter of seconds without a key and do not comply with the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles do not, in fact, conform to the applicable anti-theft standards.

1555. As a direct and proximate result of Defendants' breaches, Arkansas Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that Arkansas Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

### 3.    Violation of Arkansas Deceptive Trade Practices Act Under Ark. Code Ann. § 4-88-101, et seq.

- 421 -
COMPLAINT

1556. Arkansas Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

1557. The Arkansas Deceptive Trade Practices Act ("ADTPA") prohibits deceptive and unconscionable trade practices.  Ark. Code Ann. § 4-88-107(a).

1558. Defendants and Arkansas Plaintiffs are "persons" within the meaning of Ark. Code Ann. § 4-88-102(5).

1559. The Vehicles are "goods" within the meaning of Ark. Code Ann. § 4-88-102(4).

1560. Through their misrepresentations, concealment, omissions, and withholding of these material facts, Defendants engaged in unfair and deceptive acts or practices in the course of their business, as prohibited by Ark. Code Ann. § 4-88-107(a).

1561. In the course of their business, Defendants, through their agents, representatives, and subsidiaries, engaged in unfair and unconscionable deceptive acts or practices by misrepresenting the Vehicles as safe, reliable, free from defects, designed according to federal and industry standards, insurable, and priced accurately, by failing to disclose and actively concealing the dangers and risk posed by the Theft-Prone Design, and by knowingly and intentionally concealing, misrepresenting, omitting, and withholding material facts. These material facts include that (a) the Vehicles had a hidden Theft-Prone Design which left the Vehicles without standard anti-theft measures and was not reasonably discoverable to consumers, (b) the Vehicles did not comply with federal or industry motor vehicle safety and theft prevention standards, including FMVSS No. 114, (c) the Vehicles were at an abnormally high risk of theft and therefore would be costly to insure, and (d) the Vehicles had a lower value and were of a lower standard and quality than Defendants knowingly misrepresented.

1562. Specifically, Defendants engaged in the following unfair or deceptive business practices in violation of ADTPA: (a) causing confusion or misunderstanding as to the approval or certification of the Vehicles; (b) representing that the Vehicles have characteristics, uses, benefits, and qualities which they do not have; (c)

COMPLAINT

representing that the Vehicles are of a particular standard, quality, and grade when they are not; (d) advertising the Vehicles with the intent not to sell or lease them as advertised; (e) the act, use, or employment of deception, fraud, and false pretense to sell and advertise Vehicles with the Theft-Prone Design without disclosing the Theft-Prone Design; and (f) the concealment, suppression, and omission of the material fact of the Theft-Prone Design and lower value with the intent that Arkansas Plaintiffs rely upon the concealment, suppression, and omission. Ark. Code Ann. §§ 4-88-107(a)(1), (3), and (10) and 4-88-108(a).

1563. Under ADTPA, Defendants had an ongoing duty to Arkansas Plaintiffs as consumers to refrain from unfair or deceptive acts, practices, and representations in the course of their business. Specifically, Defendants owed the Arkansas Plaintiffs a duty to disclose all the material facts concerning the Theft-Prone Design in the Vehicles and to refrain from representing their Vehicles were of a particular standard or quality when they were of another.

1564. As detailed above, the information concerning the Theft-Prone Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles. Defendants knew that, because of the Theft-Prone Design, the Vehicles posed a significant safety risk to consumers that used the Vehicles. Defendants knew that the Theft-Prone Design and lack of standard anti-theft measures priced the Vehicles at a substantially lower value than the price for which they were advertised, marketed, sold, and/or leased and required higher insurance rates.

1565. Defendants knew these material facts would have been material to consumers', including Arkansas Plaintiffs', decision to purchase and/or lease the Vehicles.

1566. Defendants nevertheless made intentionally misleading and incomplete affirmative statements and representations about the Vehicles' safety, reliability, value, insurability, and conformance with all applicable safety and theft prevention standards,

while also concealing, omitting, and withholding material facts from consumers, including Arkansas Plaintiffs, at the time the Vehicles were advertised, sold, and/or leased. Defendants marketed and sold the Vehicles as safe despite their knowledge that the Theft-Prone Design posed a significant safety risk to consumers and the general public. Through advertisements, marketing materials, and their websites, Defendants made incomplete representations and/or concealed the Vehicles' defective condition. Defendants further misrepresented that the Vehicles were compliant with all applicable motor vehicle safety and theft prevention standards, when in reality they were not. Defendants further marketed and sold/leased the Vehicles at an inflated and misleading price, given the Vehicles' Theft-Prone Design and lack of standard anti-theft equipment and design elements.

1567. Arkansas Plaintiffs were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe, reliable, free from defects, designed according to federal and industry standards, insurable, and priced accurately when deciding to purchase or lease the Vehicles.

1568. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection and that the Vehicles were not affected by the Theft-Prone Design.

1569. Defendants intended for Arkansas Plaintiffs to rely on them to provide adequately designed Vehicles and to honestly and accurately reveal the safety hazards described above.

1570. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Arkansas Plaintiffs, about the true safety and reliability of Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

1571. Given the Theft-Prone Design's hidden and technical nature, Arkansas

COMPLAINT

Plaintiffs' reliance was reasonable, as they had no way of discerning if Defendants' representations were false and misleading or otherwise learning that the Vehicles contained the Theft-Prone Design, as alleged above. Arkansas Plaintiffs did not, and could not, unravel Defendants' deception on their own.

1572. Instead, Defendants had exclusive and superior knowledge of the Theft-Prone Design, related facts, and the Vehicles' noncompliance with federal and industry safety and theft prevention standards. Defendants knew these facts were hidden and not reasonably discoverable by consumers, including Arkansas Plaintiffs. Arkansas Plaintiffs lack the sophisticated expertise in vehicle components that would have been necessary to discover the Theft-Prone Design on their own.

1573. Had they known the truth about the Theft-Prone Design, Arkansas Plaintiffs would not have purchased or leased the Vehicles, or Arkansas Plaintiffs would have paid significantly less for the Vehicles.

1574. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Theft-Prone Design and true characteristics of the Vehicles were material to the decisions of Arkansas Plaintiffs to purchase and lease the Vehicles, as Defendants intended.

1575. Arkansas Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

1576. Defendants' violations present a continuing risk to Arkansas Plaintiffs, as well as to the general public, because the Vehicles remain unsafe due to the Theft-Prone Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

1577. Defendants had ample notice provided by the numerous complaints filed against them, internet videos, and news reports. Furthermore, on September 17, 2025, Arkansas Plaintiffs sent Defendants written notice letters of Defendants' violations, Plaintiffs' claims, and a proposed cure to the violations. To date, Defendants failed to

remedy their violations. Because Defendants failed to remedy their unlawful conduct, Arkansas Plaintiffs seek all damages and relief to which Arkansas Plaintiffs are entitled.

1578. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile. As alleged above, Defendants have long known that the Vehicles contained the Theft-Prone Design yet did nothing to remedy the Theft-Prone Design.

1579. Arkansas Plaintiffs seek an order (1) enjoining Defendants' unfair and/or deceptive acts, methods, or practices alleged herein, and (2) awarding damages, punitive damages, attorney's fees, costs, and/or any other just and proper relief available under ADTPA.

**4.      Fraud by Misrepresentation, Omission, and Concealment.**

1580. Arkansas Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

1581. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards and are therefore of a particular value and quality. In reality, however, the Vehicles do not comply with such standards and are of a lesser value and quality accordingly.

1582. Defendants were aware of the Theft-Prone Design when they manufactured, marketed, and sold the Vehicles to Arkansas Plaintiffs. Defendants further knew that the Theft-Prone Design gave rise to serious safety risks for the consumers that would use the Vehicles and naturally give rise to higher insurance premiums and accelerated depreciation. At the same time, Defendants were aware of the Federal Motor Vehicle Safety Standards and of the effectiveness of engine immobilizer technology in reducing safety hazards. Defendants were also aware that noncompliance with federal and industry standards lowered the value of the Vehicles and would render the Vehicles difficult to insure.

1583. Defendants knew that the Theft-Prone Design, the safety hazards it posed, and the reduction in the Vehicles' value would have been material facts to the Arkansas

Plaintiffs' decisions to buy or lease the Vehicles.

1584. A reasonable person would find the Vehicles' lack of industry-standard anti-theft measures and noncompliance with applicable safety standards material to their decision to purchase, lease, and maintain the Vehicles because these deficiencies impact safety, availability, the Vehicles' value, and the cost to insure the Vehicles.

1585. Defendants knowingly made affirmatively false or incomplete statements of material facts as to the Vehicles' safety, reliability, quality, value, and compliance with applicable motor vehicle safety and theft prevention standards, while they intentionally withheld, concealed, omitted, suppressed, and failed to disclose material facts about the Theft-Prone Design, including the lack of effective anti-theft measures, significant safety risks, noncompliance with federal motor vehicle safety standards, and the Vehicles' true value.

1586. Defendants volunteered incomplete information about the Vehicles they offered for sale and/or lease to consumers, including false statements as to the Vehicles' safety, compliance with applicable safety and anti-theft standards, and value while at the same time withholding the existence of the Theft-Prone Design. Defendants further knew and failed to disclose that the Theft-Prone Design and lack of standard anti-theft measures left the Vehicles at substantially lower value than the price for which they were advertised, marketed, sold, and/or leased.

1587. Alternatively, Defendants made false misrepresentations about the Theft-Prone Design with such utter disregard and recklessness that their knowledge regarding the Theft-Prone Design, its unsafe and unreliable nature, and its substantially lower value may be inferred.

1588. Defendants intended for the Arkansas Plaintiffs to rely on their omissions and concealment—which Arkansas Plaintiffs did in the manner reasonably contemplated by Defendants when they purchased or leased the Vehicles at the prices they paid believing that their vehicles would not have a Theft-Prone Design that would affect the quality, reliability, and safety of the Vehicles.

COMPLAINT

1589. Arkansas Plaintiffs' reliance on Defendants' misrepresentations and concealment was reasonable and justifiable, as Arkansas Plaintiffs had no way of learning the facts that Defendants had concealed or failed to disclose. Arkansas Plaintiffs did not, and could not, unravel Defendants' deception on their own.

1590. Having been aware of the Theft-Prone Design within the Vehicles and having known that Arkansas Plaintiffs could not have reasonably been expected to know of the Theft-Prone Design, Defendants had a duty to disclose the Theft-Prone Design to Arkansas Plaintiffs in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Theft-Prone Design and the true value of the Vehicles.

1591. Instead, Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Arkansas Plaintiffs.

1592. If Defendants had fully and adequately disclosed the Theft-Prone Design to consumers, Arkansas Plaintiffs would have seen such a disclosure.

1593. Had Arkansas Plaintiffs known of the Theft-Prone Design within the Vehicles, they would not have purchased the Vehicles or would have paid less for them. Through their omissions and concealment with respect to the Theft-Prone Design within the Vehicles, Defendants intended to induce, and did in fact induce, Arkansas Plaintiffs to either purchase a Vehicle that they otherwise would not have purchased or pay more for a Vehicle than they otherwise would have paid.

1594. As a direct and proximate result of Defendants' omissions, Arkansas Plaintiffs overpaid for the Vehicles because Arkansas Plaintiffs would either have paid less for the Vehicles or would not have purchased the Vehicles at all if the Theft-Prone Design had been disclosed to them.

1595. As a direct and proximate result of Defendants' omissions, Arkansas Plaintiffs purchased Vehicles highly susceptible to theft and were forced to pay higher

insurance premiums to account for the susceptibility that they did not knowingly accept, purchase, or lease.

1596. As a direct and proximate result of Defendants' omissions, the Arkansas Plaintiffs paid higher insurance premiums and are now left with Vehicles with significantly diminished values.

1597. Accordingly, Defendants are liable to Arkansas Plaintiffs for their damages, including but not limited to the difference in value, increased insurance premiums that Arkansas Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

1598. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, in reckless disregard of the Arkansas Plaintiffs' rights and well-being, and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

1599. Arkansas Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 5.    Negligent Misrepresentation.

1600. Arkansas Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

1601. Defendants, in the course of their business selling and promoting motor vehicles, supplied false information, including that the Vehicles were safe, reliable, and of a particular value, to guide motor vehicle buyers, including Arkansas Plaintiffs, in their choice of transaction.

1602. Defendants made misrepresentations of material facts concerning the safety, reliability, and value of the Vehicles that they knew or should have known were false. Specifically, Defendants misrepresented that the Vehicles had effective anti-theft equipment or design elements; misrepresented that the Vehicles were safe and reliable

COMPLAINT

forms of transportation; misrepresented that the Vehicles complied with all federal and industry safety and theft prevention standards; and misrepresented the true value of the Vehicles. Defendants supplied this information in the course of their business to guide Arkansas Plaintiffs in their Vehicle selection and intended to induce Arkansas Plaintiffs to purchase one of Defendants' Vehicles.

1603. Arkansas Plaintiffs justifiably relied upon Defendants' representations because, as the entities responsible for designing and manufacturing the Vehicles, Defendants held themselves out to be knowledgeable about the Vehicles' components and honest in their promotion of the Vehicles. Arkansas Plaintiffs' reliance was further reasonable given the hidden and technical nature of the Theft-Prone Design and practical inability of Arkansas Plaintiffs to discover the Theft-Prone Design on their own. Because Defendants held the Vehicles out to be in line with industry standards, the representation was not unreasonable on its face and Arkansas Plaintiffs had no apparent reason to doubt the veracity of Defendants' representations.

1604. Defendants had a duty to disclose all relevant information regarding the Vehicles' safety, reliability, quality, and characteristics that would affect the Arkansas Plaintiffs' choice of purchase as consumers.

1605. Defendants failed to exercise reasonable care or competence in communicating the standards of safety, reliability, quality, and characteristics of the Vehicles to the consumers, including Arkansas Plaintiffs, when they failed to disclose the lack of anti-theft prevention technology in the Vehicles. Rather, Defendants published materials and marketed the Vehicles for years as safe, reliable, and of a quality consistent with the industry standard.

1606. Arkansas Plaintiffs would not have purchased, or would have purchased for a lower price, the Vehicles which Defendants negligently misrepresented as safe, of standard quality, and containing standard trade characteristics, such as anti-theft prevention technology. Additionally, as a direct and proximate result, Arkansas Plaintiffs have had to pay higher insurance premiums to account for the Vehicles' high

susceptibility to theft and are now left with Vehicles that have a lower value than they would have had without the defect.

1607. As a direct and proximate result of Arkansas Plaintiffs' reasonable reliance on Defendants' negligent misrepresentations, Arkansas Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that Arkansas Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

1608. Arkansas Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

**6.    Negligence.**

1609. Arkansas Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

1610. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

1611. Defendants owed a duty of care to Arkansas Plaintiffs. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves, higher insurance premiums, and accelerated depreciation.

1612. Defendants failed to exercise reasonable care in connection with their manufacture, distribution, sale, and/or leasing of the Vehicles.

1613. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into

COMPLAINT

with Arkansas Plaintiffs.

1614. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS.

1615. As a direct and proximate result of Defendants' failure to exercise reasonable care, Arkansas Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that Arkansas Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

1616. Arkansas Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 7.   Unjust Enrichment.

1617. Arkansas Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

1618. When they purchased and leased the Vehicles, Arkansas Plaintiffs conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

1619. In exchange, Defendants did not confer the benefit that was promised to Plaintiffs when Defendants provided Vehicles of a lesser value and poorer quality than agreed. Rather, Defendants kept the monetary amounts Plaintiffs paid for Vehicles of a particular value and nature that conformed with federal and industry safety standards, but Defendants did not provide Vehicles of that particular value or nature that conformed with federal and industry safety standards.

1620. Arkansas Plaintiffs have a reasonable expectation of compensation because they conferred an economic benefit on the Defendants with the expectation that they were receiving a different product—one of the particular design, nature, quality,

and value that contained an anti-theft system and was compliant with federal safety and industry standards—in exchange.

1621. Arkansas Plaintiffs would not have purchased or leased their Vehicles, or would have paid less for them, had they known of the Theft-Prone Design at the time of purchase or lease.  Therefore, Defendants profited from the sale and lease of the Vehicles to the detriment and expense of Arkansas Plaintiffs by misrepresenting the Vehicles' true design, nature, quality, and value.

1622. Defendants appreciated these economic benefits.  These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers.  They knew of these benefits because they were aware of the Theft-Prone Design, the Vehicles' noncompliant nature and poorer quality, and the Vehicles' reduced value, yet they failed to disclose this knowledge and misled the Arkansas Plaintiffs regarding the design, nature, quality, and value of the Vehicles while profiting from this deception.

1623. Accordingly, Arkansas Plaintiffs have been impoverished due to Defendants' enrichment without justification.

1624. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, in part because they were procured as a result of their wrongful conduct alleged above.

1625. Arkansas Plaintiffs are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Arkansas Plaintiffs to the position they occupied prior to dealing with these Defendants, with such amounts to be determined at trial.

1626. Arkansas Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages, because if Arkansas Plaintiffs' claims for damages are dismissed or judgment is entered in favor of Defendants, Arkansas Plaintiffs will have no adequate legal remedy.

**E.    California State Law Claims for Relief**

**(Alleged by California Plaintiffs Against All Defendants)**

**1.      Breach of Implied Warranty of Merchantability (California Commercial Code §§ 2314 and 10212).**

1627. California Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

1628. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Cal. Com. Code §§ 2104(1) and 10103(c).

1629. Defendants are and were at all relevant times "sellers" of motor vehicles under Cal. Com. Code § 2103(1)(d).

1630. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Cal. Com. Code § 10103(a)(16).

1631. California Plaintiffs who purchased the Vehicles are and were at all relevant times "buyers" of the Vehicles under Cal. Com. Code § 2103(1)(a).

1632. California Plaintiffs who leased the Vehicles are and were at all relevant times "lessees" of the Vehicles under Cal. Com. Code § 10103(a)(14).

1633. The Vehicles are and were at all relevant times "goods" within the meaning of Cal. Com. Code § 2105(1) and § 10103(a)(8).

1634. A warranty that the Vehicles were in merchantable condition and fit for their ordinary purpose is implied by California law pursuant to Cal. Com. Code. §§ 2314 and 10212.

1635. Defendants knew or had reason to know the specific use for which the Vehicles were purchased and/or leased.  Defendants provided California Plaintiffs with an implied warranty that the Vehicles were in merchantable condition and fit for their ordinary purpose for which they were sold or leased.  This implied warranty included that the Vehicles were manufactured, supplied, distributed, and sold and/or leased by Defendants and were safe and reliable for transportation, complied with all federal, state, and industry motor vehicle regulations and safety standards, including FMVSS No. 114, and were not at abnormally high risk of theft.

COMPLAINT

Defendants breached the implied warranty of merchantability because the Vehicles were defective at the time of manufacture and not in merchantable condition at the time of sale and/or lease, were not fit for their ordinary purpose of providing safe and reliable transportation at the time of sale or lease, and would not pass without objection in the trade. The Vehicles lacked standard anti-theft mechanisms or design, contained the Theft-Prone Design, and otherwise failed to comply with FMVSS No. 114, leaving them at abnormally high risk of theft, unsafe, and unreliable form of transportation, and of a different value than marketed. Defendants knew at the time of manufacture that because their Vehicles did not include any anti-theft measures that satisfied FMVSS No. 114, making their Vehicles more prone to theft and failing to comply with federal regulations, the Vehicles would require larger insurance premiums and would depreciate at a more rapid rate than a comparable vehicle with anti-theft measure that satisfied FMVSS No. 114. Consequently, at the time of sale and/or lease, the Vehicles were not fit for their ordinary purpose of providing safe and reliable transportation.

1636. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable. Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including California Plaintiffs, of the safety defect. Any time limitations regarding the warranty period were also unconscionable and inadequate to protect California Plaintiffs. California Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants. A gross disadvantage in bargaining power existed between California Plaintiffs and Defendants, which unreasonably favored Defendants. Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left California Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

1637. These circumstances caused any exclusive or limited remedy to fail its

essential purpose such that California Plaintiffs may seek alternative remedies. California Plaintiffs were denied the benefit of their bargains that they were purchasing and/or leasing the Vehicles with sufficient anti-theft protection that complied with federal and industry standards, and that the Vehicles would provide safe and reliable transportation.

1638. California Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure. California Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of California Plaintiffs' breach of warranty claims. Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and California Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, California Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches. To date, Defendants failed to remedy their breaches.

1639. Alternatively, Plaintiffs were not required to provide Defendants with notice and opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches. California Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches

COMPLAINT

or the Theft-Prone Design if they presented their Vehicles for repair.

1640. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, California Plaintiffs' Vehicles were and are defective, the Theft-Prone Design in the Vehicles has not been remedied, and California Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that California Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

### 2. Breach of Express Warranty Under California Commercial Code (Cal. Com. Code §§ 2313 and 10210).[107]

1641. California Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

1642. During the relevant time periods, Defendants manufactured the Vehicles and California Plaintiffs purchased and/or leased Vehicles from Defendants.

1643. Defendants created an express warranty by affixing a VIN plate to each Vehicle at the time of manufacture with affirmative statements or promises as to each Vehicles' conformance to "all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture shown." These statements are an affirmation of fact or promise made to California Plaintiffs as to the Vehicles' condition, quality, safety, and reliability. These statements became the basis of the bargain between California Plaintiffs and Defendants, as California Plaintiffs relied on these statements when making their decisions to purchase and/or lease the Vehicles. As such, the statements are an express warranty under California law pursuant to Cal. Com. Code §§ 2313 and 10210.

1644. Defendants breached the express warranty because the Vehicles did not

---

[107] For the names of the California Plaintiffs who do not allege a claim for Breach of Express Warranty Under California Commercial Code (Cal. Com. Code §§ 2313 and 10210), see Exhibit E.

COMPLAINT

conform to the affirmative statements or promises made, and otherwise did not perform as promised. The Vehicles contained the Theft-Prone Design, leaving them noncompliant with applicable motor vehicle safety and theft prevention standards, including FMVSS No. 114, and were at abnormally high risk of theft. This noncompliance and lack of anti-theft instrumentality existed at the time the Vehicles were purchased and/or leased.

1645. California Plaintiffs used the Vehicles in accordance with their normal operation and did not misuse or mishandle the Vehicles in a way material to the allegations set forth herein.

1646. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable. Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including California Plaintiffs, of the safety defect. Any time limitations regarding the warranty period were also unconscionable and inadequate to protect California Plaintiffs. California Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants. A gross disadvantage in bargaining power existed between California Plaintiffs and Defendants, which unreasonably favored Defendants. Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left California Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

1647. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that California Plaintiffs may seek alternative remedies. California Plaintiffs were denied the benefit of their bargains that they were purchasing and/or leasing the Vehicles with sufficient anti-theft protection that complied with federal and industry standards, and that the Vehicles would provide safe and reliable transportation.

1648. California Plaintiffs provided Defendants with reasonable notice of their

breaches of warranties and an opportunity to cure. California Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of California Plaintiffs' breach of warranty claims. Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and California Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, California Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches. To date, Defendants failed to remedy their breaches.

1649. Alternatively, Plaintiffs were not required to provide Defendants with notice and opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches. California Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

1650. As a direct and proximate result of Defendants' breaches, California Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that California Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

COMPLAINT

**3.    Breach of Implied Warranty of Merchantability (Song-Beverly Consumer Warranty Act) (Cal. Civ. Code §§ 1791.1(a) and 1792).**

1651. California Plaintiffs incorporate by reference and reallege each allegation as though fully set forth herein.

1652. The Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

1653. Defendants are "manufacturers" of the Vehicles within the meaning of Cal. Civ. Code § 1791(j).

1654. Defendants are and were at all relevant times "sellers" of motor vehicles under Cal. Civ. Code § 1791(l).

1655. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Cal. Civ. Code § 1791(i).

1656. California Plaintiffs who purchased Vehicles are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

1657. California Plaintiffs who leased Vehicles are "lessees" within the meaning of § 1791(h).

1658. Defendants impliedly warranted to California Plaintiffs that the Vehicles were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) and 1792.

1659. Cal. Civ. Code § 1791.1(a) provides: "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that consumer goods meet each of the following: (1) pass without objection in the trade under the contract description; (2) are fit for the ordinary purpose for which such goods are used; (3) are adequately contained, packaged, and labeled; and (4) conform to the promises or affirmations of fact made on the container or label.

1660. Defendants breached the implied warranty of merchantability because the Vehicles would not pass without objection in the automotive trade.  The Theft-Prone Design renders the Vehicles unmerchantable, unsafe, and unreliable, and thus are not

fit for their ordinary purpose of providing safe and reliable transportation. Moreover, the Theft-Prone Design and lack of anti-theft mechanisms would cause objection in the automotive trade.

1661. Additionally, the Vehicles are not adequately labeled because the Theft-Prone Design is not disclosed, and the VIN plates falsely state that the Vehicles comply with all applicable safety and theft prevention standards at the time of manufacture.

1662. The Vehicles also do not conform to the promises or affirmations made by Defendants regarding safety, quality, reliability, availability, and value of the Vehicles.

1663. California Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure. California Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of California Plaintiffs' breach of warranty claims. Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and California Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, California Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches. To date, Defendants failed to remedy their breaches.

1664. Alternatively, Plaintiffs were not required to provide Defendants with notice and opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured,

distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches. California Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

1665. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, California Plaintiffs' Vehicles were and are defective, the Theft-Prone Design in the Vehicles has not been remedied, and California Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that California Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

1666. Pursuant to Cal. Civ. Code §§ 1791.1(d) and 1794, California Plaintiffs seek damages, punitive damages, and any other just and proper relief available under the Song-Beverly Consumer Warranty Act.

**4.    Breach of Express Warranty (Song-Beverly Warranty Act).[108]**

1667. California Plaintiffs incorporate by reference and reallege each preceding and succeeding paragraph as though fully set forth at length herein.

1668. California Plaintiffs purchased and/or leased the Vehicles from Defendants during the relevant time periods described above.

1669. Defendants expressly warranted, by affixing a VIN plate to each Vehicle at the time of manufacture with affirmative statements or promises, each Vehicles' conformance to "all applicable U.S.A. motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture shown." These statements are an affirmation of fact or promise made to California Plaintiffs as to the Vehicles' condition, quality, utility, safety, performance, and reliability.    These statements

---

[108] For the names of the California Plaintiffs who do not allege a claim for Breach of Express Warranty (Song-Beverly Warranty Act), see Exhibit E.

- 442 -

COMPLAINT

became the basis of the bargain between California Plaintiffs and Defendants, as California Plaintiffs relied on these statements when making their decisions to purchase and/or lease the Vehicles. Such statements amount to an express warranty under Cal. Civ. Code. § 1791.2(a).

1670. As a direct and proximate result of Defendants' breaches, California Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including the difference in value between the defective Vehicles at the time of sale or lease and the value of the Vehicles had they been sold as warranted, increased insurance premiums California Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

1671. Defendants created an express warranty by affixing a VIN plate to each Vehicle with affirmative statements or promises as to each Vehicles' conformance to "all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture shown." These statements are an affirmation of fact or promise made to California Plaintiffs as to the Vehicles' condition, quality, safety, and reliability. These statements became the basis of the bargain between California Plaintiffs and Defendants, as California Plaintiffs relied on these statements when making their decisions to purchase and/or lease the Vehicles. As such, the statements are an express warranty under the Song-Beverly Consumer Warranty Act.

1672. Defendants breached the express warranty because the Vehicles did not conform to the affirmative statements or promises made, and otherwise did not perform as promised. The Vehicles contained the Theft-Prone Design, leaving them noncompliant with applicable motor vehicle safety and theft prevention standards, including FMVSS No. 114, and were at abnormally high risk of theft. This noncompliance and lack of anti-theft instrumentality existed at the time the Vehicles were purchased and/or leased.

1673. California Plaintiffs used the Vehicles in accordance with their normal

operation and did not misuse or mishandle the Vehicles in a way material to the allegations set forth herein.

1674. California Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure. California Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of California Plaintiffs' breach of warranty claims. Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and California Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, California Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches. To date, Defendants failed to remedy their breaches.

1675. Alternatively, Plaintiffs were not required to provide Defendants with notice and opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches. California Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

1676. Defendants knew that compliance with federal safety and theft prevention standards was required by law. These standards could have easily been met by

COMPLAINT

designing and manufacturing the Vehicles with a standard engine immobilizer. However, Defendants willfully violated the Song-Beverly Consumer Warranty Act by not designing, manufacturing, or installing any anti-theft mechanisms which complied with federal and industry standards. Those failures resulted in the Vehicles being at abnormally high risk of theft and significantly decreasing the Vehicles' value below what the California Plaintiffs paid. After receiving notice of the Theft-Prone Design and widespread theft of the Vehicles, Defendants have not offered an effective repair or remedy.

1677. As a direct and proximate result of Defendants' breaches, California Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that California Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

1678. Pursuant to Cal. Civ. Code §§ 1791.1(d) and 1794, California Plaintiffs seek damages, punitive damages, and any other just and proper relief available under the Song-Beverly Consumer Warranty Act.

1679. California Plaintiffs are also entitled to a civil penalty against Defendants of two times actual damages for Defendants' willful violation of the Song-Beverly Consumer Warranty Act pursuant to Cal. Civ. Code. § 1794(c).

### 5. Violation of Consumer Legal Remedies Act (Cal. Civ. Code. § 1750, et seq.).[109]

1680. California Plaintiffs incorporate by reference and reallege each preceding and succeeding paragraph as though fully set forth at length herein.

1681. The Vehicles are "goods" within the meaning of Cal. Civ. Code § 1761(a).

1682. California Plaintiffs are "consumers" within the meaning of Cal. Civ. Code § 1761(d).

---

[109] For the names of the California Plaintiffs who do not allege a claim for Violation of Consumer Legal Remedies Act (Cal. Civ. Code. § 1750, et seq.), see Exhibit E.

COMPLAINT

1683. California Plaintiffs and Defendants are "persons" within the meaning of Cal. Civ. Code § 1761(c).

1684. The transactions for which this cause of action arise include transactions involving the sale or lease of goods or services for personal, family, or household purposes, within the meaning of Cal. Civ. Code § 1761(d).

1685. The California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, et seq. ("CLRA") prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer[.]" Cal. Civ. Code § 1770.

1686. In the course of their business and in transactions for the sale or lease of goods to consumers, Defendants, through their agents, representatives, and subsidiaries, engaged in unfair and deceptive acts or practices and knowingly and intentionally misrepresented, concealed, omitted and withheld material facts about the Vehicles' quality, reliability, safety, and value. These material facts include that the Vehicles had a hidden Theft-Prone Design that was not reasonably discoverable to consumers, did not comply with federal and industry motor vehicle safety and theft prevention standards including FMVSS 114, were at an abnormally high risk of theft, and had a value which Defendants knew they did not.

1687. Defendants had an ongoing duty to California consumers, including California Plaintiffs, to refrain from unfair and deceptive practices or acts, and to disclose material facts concerning the Theft-Prone Design. Defendants had exclusive and superior knowledge of the Theft-Prone Designs, which Defendants knew were hidden and not reasonably discoverable by California Plaintiffs. Defendants further knew that the Theft-Prone Design left the vehicles at abnormally high risk of theft and that the defects would be material to consumers, including California Plaintiffs' decision to purchase and/or lease the Vehicles.

1688. Defendants nevertheless made knowing and intentionally misleading statements and representations about the Vehicles' safety, reliability, and value, while

also concealing, omitting and withholding material facts from consumers, including California Plaintiffs, at the time the Vehicles were advertised, sold, and leased, about the true nature of the Vehicles and the Theft-Prone Design.

1689. Through their misrepresentations, concealment, omissions, and withholding of these material facts, Defendants engaged in unfair and deceptive acts or practices in transactions for the sale or lease of goods, as prohibited by CLRA § 1770.

1690. Defendants' unfair and deceptive acts or practices are in violation of at least the following enumerated deceptive acts under the CLRA:

    a. Representing that goods have characteristics, uses, benefits, and qualities which they do not have.  (§ 1770(a)(5)).

    b. Representing that goods are of a particular standard, quality, and grade when they are not.  (§ 1770(a)(7)).

    c. Advertising goods with the intent not to sell or lease them as advertised. (§ 1770(a)(9).

    d. Representing that the goods to a transaction have been supplied in accordance with a previous representation when they have not. (§ 1770(a)(16)).

1691. Defendants' unfair and deceptive acts or practices were intended to, and had a high likelihood to, mislead and deceive reasonable consumers, including California Plaintiffs, that the Vehicles contained adequate anti-theft protection and did not contain the Theft-Prone Design.

1692. Defendants' unfair and deceptive acts were done willfully, as they knew or should have known that their misrepresentations, omissions, concealment, and withholding of material facts would deceive or had a high likelihood to deceive consumers.  Reasonable consumers, including California Plaintiffs, were in fact deceived about the true safety, reliability, and value of the Vehicles as a result of Defendants' misrepresentations, concealment, omissions, and withholding of the material facts.

COMPLAINT

1693. Defendants' unfair, deceptive, and unconscionable acts or practice were material to consumers', including California Plaintiffs', decisions to purchase and/or lease the Vehicles because a reasonable consumer would find the safety, reliability, value of the Vehicles, and cost to insure the Vehicles, important to the decision to purchase and/or lease a motor vehicle.

1694. California Plaintiffs were exposed to Defendants' misrepresentations, omissions, concealment, and suppression of material facts and did in fact rely on those misrepresentations that the Vehicles were a safe and reliable form of transportation that contained appropriate anti-theft protection, did not contain the Theft-Prone Design, complied with all applicable regulations and standards, and were appropriately valued when deciding to purchase and lease the Vehicles.

1695. California Plaintiffs' reliance on Defendants' misrepresentations, concealment, omissions, and failures to disclose were reasonable, given the hidden and technical nature of the Theft-Prone Design that was not reasonably discoverable, and California Plaintiffs had no way of knowing that Defendants' representations were false and misleading. Defendants had exclusive and superior access to the material facts regarding the Vehicles' Theft-Prone Design and noncompliance with federal and industry safety and theft prevention standards and knew these facts were not reasonably discoverable by consumers, including California Plaintiffs. Defendants knew that because of the Theft-Prone Design, the Vehicles posed a significant safety risk to consumers that used the Vehicles and that such facts were material to consumers', including California Plaintiffs', decision to purchase and/or lease the Vehicles.

1696. If not for Defendants' unfair, deceptive, and unconscionable acts or practices, and had California Plaintiffs known the truth of the Theft-Prone Design and noncompliance with federal safety standards, they would not have purchased and/or leased the Vehicles, or at a minimum would have paid significantly less for the Vehicles than they did.

1697. Defendants' CLRA violations present a continuing risk to California

COMPLAINT

consumers, including California Plaintiffs, and affect the public interest because the Vehicles remain unsafe due to the Theft-Prone Design and Defendants have not corrected or remedied the defect.

1698. Defendants have received notice pursuant to CLRA section § 1782(a) of California Plaintiffs' claims under this cause of action. California Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Vehicles, the Theft-Prone Design, and violations of CLRA § 1770(a) and that demanded they correct or agree to correct the actions described therein within thirty days of such notice. Defendants have entered into a class settlement with those consumers asserting CLRA violations that did in fact have their Vehicles stolen due to the Theft-Prone Design. Defendants failed to adequately remedy their deceptive acts or practices within the requisite time. California Plaintiffs therefore seek all damages and relief to which they are entitled. Furthermore, on September 17, 2025, Plaintiffs sent Defendants written notice letters of Defendants' violations, Plaintiffs' claims, and a proposed cure to the violations. To date, Defendants failed to remedy their violations.

1699. Alternatively, California Plaintiffs were not required to provide Defendants with notice and opportunity to cure their breach prior to filing suit, because such notice and opportunity would have been futile. Defendants have long known of the Theft-Prone Design and have not remedied the Theft-Prone Design.

1700. As a direct and proximate result of Defendants' CLRA violations, California Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including the difference in value between the defective Vehicles at the time of sale or lease and the value of the Vehicles had they been sold as warranted, increased insurance premiums that California Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

1701. Pursuant to Cal. Civ. Code § 1780, California Plaintiffs seek an order (1) enjoining Defendants' unfair and/or deceptive acts, methods, or practices alleged herein, and (2) awarding damages, punitive damages, attorney's fees, costs, and/or any

other just and proper relief available under the CLRA.

### 6.     Fraud by Omission and Concealment.[110]

1702. California Plaintiffs incorporate by reference and reallege each preceding and succeeding paragraph as though fully set forth at length herein.

1703. Defendants were aware of the Theft-Prone Design when they marketed, sold, and/or leased the Vehicles to California Plaintiffs.

1704. Defendants had a duty to disclose the Theft-Prone Design and noncompliance with applicable safety and theft prevention standards because Defendants were aware at the time of manufacture that the defect was hidden, not reasonably discoverable, and discovery of which required technical knowledge of motor vehicle anti-theft mechanisms. Defendants had exclusive and superior knowledge of the material facts regarding the Theft-Prone Design and knew these facts were unknown to consumers, including California Plaintiffs, or were otherwise not reasonably discoverable.

1705. Defendants made affirmative false or incomplete statements as to the Vehicles' safety, reliability, and compliance with applicable standards, while they intentionally withheld, concealed, omitted, suppressed, and failed to disclose material facts about the Theft-Prone Design. Defendants volunteered information about the Vehicles they offered for sale and/or lease to consumers, including false statements as to the Vehicles' safety and compliance with applicable safety and anti-theft standards. As such, Defendants had a duty to disclose the entire truth about the Vehicles.

1706. Defendants breached their duties to disclose by failing to disclose the Theft-Prone Design and noncompliance with applicable standards to California Plaintiffs in connection with the sale and/or lease of the Vehicles.

1707. The Theft-Prone Design and noncompliance with applicable anti-theft standards were material facts about the safety, reliability, and value of the Vehicles. A

---

[110] For the names of the California Plaintiffs who do not allege a claim for Fraud by Omission and Concealment, see Exhibit E.

reasonable person would find the Vehicles' lack of anti-theft mechanisms and noncompliance with applicable safety standards important in their decision to purchase, lease, and maintain the Vehicles because it would impact safety, availability, the Vehicles' value, and the cost to insure the Vehicles.

1708. Defendants intended California Plaintiffs to rely and act on their omissions, concealment, and failures to disclose. Defendants knew that the safety, reliability, Vehicle value, and cost to insure the Vehicles would be material to consumers, including California Plaintiffs, who purchased and/or leased the Vehicles. Nevertheless, to protect profits, avoid manufacturing costs, maintain a market for the Vehicles, avoid potential recalls, and to preserve their reputation, Defendants intentionally omitted, concealed, and suppressed the Theft-Prone Design to induce California Plaintiffs to purchase and lease a Vehicle they otherwise would not have purchased and/or leased, or at a minimum, pay more for a Vehicle than they otherwise would have.

1709. California Plaintiffs did in fact rely to their detriment on Defendants' concealment, omissions, suppressions, and failures to disclose the material facts. California Plaintiffs purchased and/or leased the Vehicles at the prices they paid without knowledge of the Theft-Prone Design and believing that their Vehicles would not contain the Theft-Prone Design that would affect the safety, reliability, quality, and value of the Vehicles. California Plaintiffs' reliance was reasonable given the hidden and technical nature of the Theft-Prone Design and practical impossibility for California Plaintiffs to discover the Theft-Prone Design, and without anyway of discovering that Defendants had omitted, concealed, or withheld the material facts. California Plaintiffs simply had no way of uncovering Defendants' deception.

1710. As a direct and proximate result of Defendants' omissions, California Plaintiffs purchased Vehicles highly susceptible to theft and were forced to pay higher insurance premiums to account for the susceptibility that they did not knowingly accept, purchase, or lease.

1711. As a direct and proximate result of Defendants' omissions, the California Plaintiffs paid higher insurance premiums and are now left with Vehicles with significantly diminished values.

1712. Accordingly, Defendants are liable to California Plaintiffs for their damages, including but not limited to the difference in value, increased insurance premiums that California Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

1713. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, in reckless disregard of the California Plaintiffs' rights and well-being, and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

1714. California Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 7.    Negligent Misrepresentation.[111]

1715. California Plaintiffs reallege and incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

1716. Defendants manufactured, distributed, sold, and leased the Vehicles.

1717. In the advertising, sale, and lease of the Vehicles, Defendants made misrepresentations of material facts concerning the safety and reliability of the Vehicles that they knew or should have known were false. Specifically, Defendants misrepresented that the Vehicles had adequate anti-theft instrumentality; misrepresented that the Vehicles were safe and reliable forms of transportation; misrepresented that the Vehicles complied with all federal and industry safety and theft prevention standards; and misrepresented the true value of the Vehicles.

---

[111] For the names of the California Plaintiffs who do not allege a claim for Negligent Misrepresentation, see Exhibit E.

COMPLAINT

1718. Defendants supplied California Plaintiffs with false information through misrepresentations as to the Vehicles' characteristics, uses, benefits, qualities, and value they do not have. When describing or communicating information about the Vehicles, Defendants misrepresented, omitted, concealed, and failed to disclose material facts as to the true nature of the Vehicles, including the Theft-Prone Design.

1719. Defendants knew they were providing false information or at least failed to exercise reasonable care in communicating these statements because they should have known they were false.  Defendants have long known of the Theft-Prone Design, that the Vehicles did not conform to applicable safety and theft prevention standards, that the Vehicles were at an abnormally high risk of theft, and were not of the value Defendants purported them to be.  Defendants knew or should have known this information to be false prior to and at the time of purchase and/or lease, and had no reasonable ground for believing their statements to be true.

1720. Defendants intended California Plaintiffs to rely on their misrepresentations.  Defendants knew that the safety, reliability, value, and cost to insure the Vehicles would be material to consumers, including California Plaintiffs, who purchased and leased the Vehicles.  Nevertheless, to protect profits, avoid manufacturing costs, maintain a market for the Vehicles, avoid potential recalls, and to preserve their reputation, Defendants misrepresented the characteristic, uses, benefits, and qualities of the Vehicles to induce California Plaintiffs to purchase and lease a Vehicle they otherwise would not have purchased or leased, and pay more for a Vehicle than they otherwise would have.

1721. California Plaintiffs did in fact rely on Defendants' misrepresentations to their detriment.  California Plaintiffs' reliance was reasonable given the hidden and technical nature of the Theft-Prone Design and practical inability for California Plaintiffs to discover the Theft-Prone Design.   If not for Defendants' misrepresentations, California Plaintiffs would not have purchased and leased the Vehicles, or otherwise would not have paid the amount for the Vehicles that they did.

COMPLAINT

1722. As a direct and proximate result of California Plaintiffs' reasonable reliance on Defendants' negligent misrepresentations, California Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that California Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

1723. California Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

**8.    Negligence.**

1724. California Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

1725. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

1726. Defendants owed a duty of care to California Plaintiffs. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves, higher insurance premiums, and accelerated depreciation.

1727. Defendants failed to exercise reasonable care in connection with their manufacture, distribution, sale, and/or leasing of the Vehicles.

1728. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with California Plaintiffs.

COMPLAINT

1729. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS.

1730. As a direct and proximate result of Defendants' failure to exercise reasonable care, California Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that California Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

1731. California Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 9.    Unjust Enrichment.[112]

1732. California Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

1733. When they purchased and leased the Vehicles, California Plaintiffs conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

1734. In exchange, Defendants did not confer the benefit that was promised to California Plaintiffs when Defendants provided Vehicles of a lesser value and poorer quality than agreed.   Rather, Defendants kept the monetary amounts California Plaintiffs paid for Vehicles of a particular value and nature that conformed with federal and industry safety standards, but Defendants did not provide Vehicles of that particular value or nature that conformed with federal and industry safety standards.

1735. California Plaintiffs have a reasonable expectation of compensation because they conferred an economic benefit on the Defendants with the expectation that

---

[112] For the names of the California Plaintiffs who do not allege a claim for Unjust Enrichment, see Exhibit E.

COMPLAINT

they were receiving a different product—one of the particular design, nature, quality, and value that contained an anti-theft system and was compliant with federal safety and industry standards—in exchange.

1736. California Plaintiffs would not have purchased or leased their Vehicles, or would have paid less for them, had they known of the Theft-Prone Design at the time of purchase or lease. Therefore, Defendants profited from the sale and lease of the Vehicles to the detriment and expense of California Plaintiffs by misrepresenting the Vehicles' true design, nature, quality, and value.

1737. Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft-Prone Design, the Vehicles' noncompliant nature and poorer quality, and the Vehicles' reduced value, yet they failed to disclose this knowledge and misled the California Plaintiffs regarding the design, nature, quality, and value of the Vehicles while profiting from this deception.

1738. Accordingly, California Plaintiffs have been impoverished due to Defendants' enrichment without justification.

1739. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, in part because they were procured as a result of their wrongful conduct alleged above.

1740. California Plaintiffs are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return California Plaintiffs to the position they occupied prior to dealing with these Defendants, with such amounts to be determined at trial.

1741. California Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages, because if California Plaintiffs' claims for damages are dismissed or judgment is entered in favor of Defendants, California Plaintiffs will have no adequate legal remedy.

COMPLAINT

**F.      Colorado State Law Claims for Relief**

**(Alleged by Colorado Plaintiffs Against All Defendants)**

**1.      Breach of Implied Warranty of Merchantability Under Colo. Rev. Stat. § 4-2-314.**

1742. Colorado Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

1743. A warranty that the Vehicles were in merchantable condition is implied by law pursuant to Colo. Rev. Stat. § 4-2-314.

1744. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Colo. Rev. Stat. § 4-2-104, "sellers" of motor vehicles under § 4-2-103(1)(d), and with respect to leases, "lessors" of motor vehicles under § 4-2.5-103(1)(p).

1745. At all relevant times, Colorado Plaintiffs who purchased Vehicles in Colorado were and are "buyers" within the meaning of Colo. Rev. Stat. § 4-2-103(1)(a).

1746. At all relevant times, Colorado Plaintiffs who leased Vehicles in Colorado were and are "lessees" within the meaning of Colo. Rev. Stat. § 4-2.5-103(1)(n).

1747. At all relevant times, Colorado Plaintiffs' Vehicles (whether purchased or leased) were and are "goods" within the meaning of Colo. Rev. Stat.§§ 4-2-105 and 4-2.5-103(1)(h).

1748. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased.  Defendants provided Colorado Plaintiffs with an implied warranty that the purchased and leased Vehicles were in merchantable condition and fit for the ordinary purposes for which they were sold or leased.  This implied warranty included that the Vehicles (a) were manufactured, supplied, distributed, and sold by Defendants, (b) were safe and reliable for transportation, (c) complied with all federal, state, and industry motor vehicle regulations and safety standards, including FMVSS No. 114, (d) were not at abnormally high risk of theft, and (e) were of a particular value and quality that complied with federal and industry safety

- 457 -
COMPLAINT

standards.

1749. The Vehicles did not comply with the implied warranty of merchantability because the Vehicles were defective and not in merchantable condition at the time of sale and/or lease, were not fit for their ordinary purpose of providing safe and reliable transportation at the time of sale or lease, and would not pass without objection in the trade as they deviated significantly from the industry standard and can be stolen in mere minutes without a key. Defendants knew at the time of manufacture that the Vehicles contained the Theft-Prone Design and lacked any anti-theft equipment or design elements that effectively prevent theft or comply with FMVSS No. 114. Therefore, the Defendants knew at the time of manufacture that the Vehicles are at an abnormally high risk of theft and are unsafe and an unreliable form of transportation. The Theft-Prone Design renders the Vehicles highly vulnerable to theft and a prime target for thieves as they can be easily stolen in seconds. Defendants knew at the time of manufacture that because their Vehicles did not include any anti-theft measures that satisfied FMVSS No. 114, making their Vehicles more prone to theft and failing to comply with federal regulations, the Vehicles would require larger insurance premiums and would depreciate at a more rapid rate than a comparable vehicle with anti-theft measure that satisfied FMVSS No. 114. Consequently, at the time of sale and/or lease, the Vehicles were not fit for their ordinary purpose of providing safe and reliable transportation.

1750. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable. Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Colorado Plaintiffs, of the safety defect. Any time limitations regarding the warranty period were also unconscionable and inadequate to protect Colorado Plaintiffs. Colorado Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants. A gross disadvantage in bargaining power existed between Colorado Plaintiffs and Defendants, which unreasonably favored Defendants. Moreover,

- 458 -
COMPLAINT

Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left Colorado Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

1751. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that Colorado Plaintiffs may seek alternative remedies. Colorado Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provided safe and reliable transportation.

1752. Colorado Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure. Colorado Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Colorado Plaintiffs' breach of warranty claims. Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Colorado Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Colorado Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches. To date, Defendants failed to remedy their breaches.

1753. Alternatively, Colorado Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured,

COMPLAINT

distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches. Colorado Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

1754. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Colorado Plaintiffs' Vehicles were and are defective, the Theft-Prone Design in the Vehicles has not been remedied, and Colorado Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that Colorado Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

**2.      Breach of Express Warranty Under Colo. Rev. Stat. § 4-2-313 and 4-2.5-210.**

1755. Colorado Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

1756. During the relevant time periods, Defendants manufactured the Vehicles and Colorado Plaintiffs purchased and/or leased the Vehicles from Defendants.

1757. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Colo. Rev. Stat. § 4-2-104, "sellers" of motor vehicles under § 4-2-103(1)(d), and with respect to leases, "lessors" of motor vehicles under § 4-2.5-103(1)(p).

1758. At all relevant times, Colorado Plaintiffs who purchased Vehicles in Colorado were and are "buyers" within the meaning of Colo. Rev. Stat. § 4-2-103(1)(a).

1759. At all relevant times, Colorado Plaintiffs who leased Vehicles in Colorado were and are "lessees" within the meaning of Colo. Rev. Stat. § 4-2.5-103(1)(n).

1760. At all relevant times, Colorado Plaintiffs' Vehicles (whether purchased or leased) were and are "goods" within the meaning of Colo. Rev. Stat.§§ 4-2-105 and 4-2.5-103(1)(h).

COMPLAINT

1761. By affixing a VIN plate to each Vehicle at the time of manufacture, Defendants expressly warranted each Vehicles' conformance to "all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture shown." These statements constitute a description, affirmation of fact, and promise made to Colorado Plaintiffs as to the Vehicles' condition, quality, safety, and reliability. These statements, affirmations, and descriptions became the basis of the bargain between Colorado Plaintiffs and Defendants, as Colorado Plaintiffs relied on these statements when making their decisions to purchase and/or lease the Vehicles. As such, the statements are an express warranty under Colorado law pursuant to Colo. Rev. Stat. §§ 4-2-313 and 4-2.5-210, and the Vehicles did not conform to the affirmations of fact, promises made by Defendants, or Defendants' description of the Vehicles.

1762. Colorado Plaintiffs used the Vehicles in accordance with their normal operation and did not misuse or mishandle the Vehicles in any way material to the allegations set forth herein.

1763. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable. Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Colorado Plaintiffs, of the safety defect. Any time limitations regarding the warranty period were also unconscionable and inadequate to protect Colorado Plaintiffs. Colorado Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants. A gross disadvantage in bargaining power existed between Colorado Plaintiffs and Defendants, which unreasonably favored Defendants. Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left Colorado Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

1764. These circumstances caused any exclusive or limited remedy to fail its

essential purpose such that Colorado Plaintiffs may seek alternative remedies.  Colorado Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provided safe and reliable transportation.

1765. Colorado Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure.  Colorado Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Colorado Plaintiffs' breach of warranty claims.  Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Colorado Plaintiffs' claims.  Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles.  Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count.  Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Colorado Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches.  To date, Defendants failed to remedy their breaches.

1766. Alternatively, Colorado Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches.  Colorado Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

COMPLAINT

1767. The Vehicles did not perform as promised in accordance with Defendants' express warranty; instead, the Vehicles did not meet all applicable motor vehicle safety and theft prevention standards in effect on the date of manufacture. The Vehicles are capable of being stolen in a matter of seconds without a key and do not comply with the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles do not, in fact, conform to the applicable anti-theft standards.

1768. As a direct and proximate result of Defendants' breaches, Colorado Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that Colorado Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

### 3. Violation of Colorado Consumer Protection Act Under Colo. Rev. Stat. § 6-1-101, et seq.

1769. Colorado Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

1770. Defendants and Colorado Plaintiffs are "persons" within the meaning of Colo. Rev. Stat. § 6-1-102(6).

1771. Defendants engaged in unlawful business practices as prohibited under the Colorado Consumer Protection Act ("Colorado CPA"), Colo. Rev. Stat. §§ 6-1-105(b), (e), (g), and (i).

1772. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Colorado CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Theft-Prone Design, as detailed above. Defendants used deception and unfair practices, false pretense, false promise, misrepresentation, concealment, suppression, and omission of material facts with the intent that Colorado Plaintiffs rely on such concealment, suppression, or omission in connection with the sale or advertisement of their Vehicles,

in violation of Colorado CPA.

1773. Under the Colorado CPA, Defendants had an ongoing duty to Colorado Plaintiffs to refrain from unfair or deceptive practices in the course of their business. Specifically, Defendants owed Colorado Plaintiffs a duty to disclose all the material facts concerning the Theft-Prone Design in the Vehicles.

1774. Defendants had exclusive access to and far superior knowledge about facts regarding the Theft-Prone Design, and Defendants knew these facts were not known to or reasonably discoverable by Colorado Plaintiffs.

1775. Given the Theft-Prone Design's hidden and technical nature, Colorado Plaintiffs lack the sophisticated expertise in vehicle components necessary to discover the Theft-Prone Design on their own.

1776. Defendants knew that the Theft-Prone Design gave rise to safety concerns for the consumers who use the Vehicles, and that the Theft-Prone Design would have been a material fact in the Colorado Plaintiffs' decisions to buy or lease the Vehicles.

1777. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Theft-Prone Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

1778. As detailed above, the information concerning the Theft-Prone Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

1779. By misrepresenting the Vehicles as safe, reliable, and free from defects, and by failing to disclose and actively concealing the dangers and risks posed by the Theft-Prone Design, Defendants engaged in the following unfair or deceptive business practices in violation of the Colorado CPA: (a) representing that the Vehicles have

characteristics, uses, benefits, and qualities which they do not have and (b) representing that the Vehicles are of a particular standard, quality, and grade when they are not.

1780. Defendants intended for Colorado Plaintiffs to rely on them to provide adequately designed Vehicles and to honestly and accurately reveal the safety hazards described above.

1781. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Theft-Prone Design.  Those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Colorado Plaintiffs, about the true safety and reliability of the Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

1782. Defendants'  misrepresentations,  concealments,  omissions,  and suppressions of material facts regarding the Theft-Prone Design and true characteristics of the Vehicles were material to the decisions of Colorado Plaintiffs to purchase or lease the Vehicles, as Defendants intended.  Colorado Plaintiffs were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase or lease the Vehicles.

1783. Colorado Plaintiffs' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, and/or otherwise learning that the Vehicles contained the Theft-Prone Design, as alleged above. Colorado Plaintiffs did not, and could not, unravel Defendants' deception on their own.

1784. Had they known the truth about the Theft-Prone Design, Colorado Plaintiffs would not have purchased or leased the Vehicles or would have paid significantly less for them.

1785. Colorado Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or

COMPLAINT

failure to disclose material information.

1786. Defendants' violations present a continuing risk to Colorado Plaintiffs and the general public because the Vehicles remain unsafe due to the Theft-Prone Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

1787. Defendants had ample notice provided by the numerous complaints filed against them, internet videos, and news reports. Furthermore, on September 17, 2025, Colorado Plaintiffs sent Defendants written notice letters of Defendants' violations, Plaintiffs' claims, and a proposed cure to the violations. To date, Defendants failed to remedy their violations. Because Defendants failed to remedy their unlawful conduct, Colorado Plaintiffs seek all damages and relief to which Colorado Plaintiffs are entitled.

1788. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile. As alleged above, Defendants have long known that the Vehicles contained the Theft-Prone Design yet did nothing to remedy the Theft-Prone Design.

1789. Colorado Plaintiffs seek an order (1) enjoining Defendants' unfair and/or deceptive acts, methods, or practices alleged herein, and (2) awarding damages, punitive damages, attorney's fees, costs, and/or any other just and proper relief available under the Colorado CPA.

**4.      Fraud by Misrepresentation, Omission, and Concealment.**

1790. Colorado Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

1791. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards and are therefore of a particular value and quality. In reality, however, the Vehicles do not comply with such standards and are of a lesser value and quality accordingly.

1792. Defendants were aware of the Theft-Prone Design when they manufactured, marketed, and sold the Vehicles to Colorado Plaintiffs. Defendants further knew that the Theft-Prone Design gave rise to serious safety risks for the

- 466 -
COMPLAINT

consumers that would use the Vehicles and naturally give rise to higher insurance premiums and accelerated depreciation.  At the same time, Defendants were aware of the Federal Motor Vehicle Safety Standards and of the effectiveness of engine immobilizer technology in reducing safety hazards.  Defendants were also aware that noncompliance with federal and industry standards lowered the value of the Vehicles and would render the Vehicles difficult to insure.

1793. Defendants knew that the Theft-Prone Design, the safety hazards it posed, and the reduction in the Vehicles' value would have been material facts to the Colorado Plaintiffs' decisions to buy or lease the Vehicles.

1794. A reasonable person would find the Vehicles' lack of industry-standard anti-theft measures and noncompliance with applicable safety standards material to their decision to purchase, lease, and maintain the Vehicles because these deficiencies impact safety, availability, the Vehicles' value, and the cost to insure the Vehicles.

1795. Defendants knowingly made affirmatively false or incomplete statements of material facts as to the Vehicles' safety, reliability, quality, value, and compliance with applicable motor vehicle safety and theft prevention standards, while they intentionally withheld, concealed, omitted, suppressed, and failed to disclose material facts about the Theft-Prone Design, including the lack of effective anti-theft measures, significant safety risks, noncompliance with federal motor vehicle safety standards, and the Vehicles' true value.

1796. Defendants volunteered incomplete information about the Vehicles they offered for sale and/or lease to consumers, including false statements as to the Vehicles' safety, compliance with applicable safety and anti-theft standards, and value while at the same time withholding the existence of the Theft-Prone Design.  Defendants further knew and failed to disclose that the Theft-Prone Design and lack of standard anti-theft measures left the Vehicles at substantially lower value than the price for which they were advertised, marketed, sold, and/or leased.

1797. Alternatively, Defendants made false misrepresentations about the Theft-

COMPLAINT

Prone Design with such utter disregard and recklessness that their knowledge regarding the Theft-Prone Design, its unsafe and unreliable nature, and its substantially lower value may be inferred.

1798. Defendants intended for the Colorado Plaintiffs to rely on their omissions and concealment—which Colorado Plaintiffs did in the manner reasonably contemplated by Defendants when they purchased or leased the Vehicles at the prices they paid believing that their vehicles would not have a Theft-Prone Design that would affect the quality, reliability, and safety of the Vehicles.

1799. Colorado Plaintiffs' reliance on Defendants' misrepresentations and concealment was reasonable and justifiable, as Colorado Plaintiffs had no way of learning the facts that Defendants had concealed or failed to disclose. Colorado Plaintiffs did not, and could not, unravel Defendants' deception on their own.

1800. Having been aware of the Theft-Prone Design within the Vehicles and having known that Colorado Plaintiffs could not have reasonably been expected to know of the Theft-Prone Design, Defendants had a duty to disclose the Theft-Prone Design to Colorado Plaintiffs in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Theft-Prone Design and the true value of the Vehicles.

1801. Instead, Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Colorado Plaintiffs.

1802. If Defendants had fully and adequately disclosed the Theft-Prone Design to consumers, Colorado Plaintiffs would have seen such a disclosure.

1803. Had Colorado Plaintiffs known of the Theft-Prone Design within the Vehicles, they would not have purchased the Vehicles or would have paid less for them. Through their omissions and concealment with respect to the Theft-Prone Design within the Vehicles, Defendants intended to induce, and did in fact induce, Colorado Plaintiffs

COMPLAINT

to either purchase a Vehicle that they otherwise would not have purchased or pay more for a Vehicle than they otherwise would have paid.

1804. As a direct and proximate result of Defendants' omissions, Colorado Plaintiffs overpaid for the Vehicles because Colorado Plaintiffs would either have paid less for the Vehicles or would not have purchased the Vehicles at all if the Theft-Prone Design had been disclosed to them.

1805. As a direct and proximate result of Defendants' omissions, Colorado Plaintiffs purchased Vehicles highly susceptible to theft and were forced to pay higher insurance premiums to account for the susceptibility that they did not knowingly accept, purchase, or lease.

1806. As a direct and proximate result of Defendants' omissions, the Colorado Plaintiffs paid higher insurance premiums and are now left with Vehicles with significantly diminished values.

1807. Accordingly, Defendants are liable to Colorado Plaintiffs for their damages, including but not limited to the difference in value, increased insurance premiums that Colorado Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

1808. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, in reckless disregard of the Colorado Plaintiffs' rights and well-being, and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

1809. Colorado Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 5.    Negligent Misrepresentation.

1810. Colorado Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

1811. Defendants, in the course of their business selling and promoting motor vehicles, supplied false information, including that the Vehicles were safe, reliable, and of a particular value, to guide motor vehicle buyers, including Colorado Plaintiffs, in their choice of transaction.

1812. Defendants made misrepresentations of material facts concerning the safety, reliability, and value of the Vehicles that they knew or should have known were false. Specifically, Defendants misrepresented that the Vehicles had effective anti-theft equipment or design elements; misrepresented that the Vehicles were safe and reliable forms of transportation; misrepresented that the Vehicles complied with all federal and industry safety and theft prevention standards; and misrepresented the true value of the Vehicles. Defendants supplied this information in the course of their business to guide Colorado Plaintiffs in their Vehicle selection and intended to induce Colorado Plaintiffs to purchase one of Defendants' Vehicles.

1813. Colorado Plaintiffs justifiably relied upon Defendants' representations because, as the entities responsible for designing and manufacturing the Vehicles, Defendants held themselves out to be knowledgeable about the Vehicles' components and honest in their promotion of the Vehicles. Colorado Plaintiffs' reliance was further reasonable given the hidden and technical nature of the Theft-Prone Design and practical inability of Colorado Plaintiffs to discover the Theft-Prone Design on their own. Because Defendants held the Vehicles out to be in line with industry standards, the representation was not unreasonable on its face and Colorado Plaintiffs had no apparent reason to doubt the veracity of Defendants' representations.

1814. Defendants had a duty to disclose all relevant information regarding the Vehicles' safety, reliability, quality, and characteristics that would affect the Colorado Plaintiffs' choice of purchase as consumers.

1815. Defendants failed to exercise reasonable care or competence in communicating the standards of safety, reliability, quality, and characteristics of the Vehicles to the consumers, including Colorado Plaintiffs, when they failed to disclose

the lack of anti-theft prevention technology in the Vehicles.  Rather, Defendants published materials and marketed the Vehicles for years as safe, reliable, and of a quality consistent with the industry standard.

1816. Colorado Plaintiffs would not have purchased, or would have purchased for a lower price, the Vehicles which Defendants negligently misrepresented as safe, of standard quality, and containing standard trade characteristics, such as anti-theft prevention technology.  Additionally, as a direct and proximate result, Colorado Plaintiffs have had to pay higher insurance premiums to account for the Vehicles' high susceptibility to theft and are now left with Vehicles that have a lower value than they would have had without the defect.

1817. As a direct and proximate result of Colorado Plaintiffs' reasonable reliance on Defendants' negligent misrepresentations, Colorado Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that Colorado Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

1818. Colorado Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

**6.    Negligence.**

1819. Colorado Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

1820. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

1821. Defendants owed a duty of care to Colorado Plaintiffs. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves, higher insurance premiums, and accelerated depreciation.

1822. Defendants failed to exercise reasonable care in connection with their

COMPLAINT

manufacture, distribution, sale, and/or leasing of the Vehicles.

1823. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Colorado Plaintiffs.

1824. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS.

1825. As a direct and proximate result of Defendants' failure to exercise reasonable care, Colorado Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that Colorado Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

1826. Colorado Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 7.    Unjust Enrichment.

1827. Colorado Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

1828. When they purchased and leased the Vehicles, Colorado Plaintiffs conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

1829. In exchange, Defendants did not confer the benefit that was promised to

COMPLAINT

Plaintiffs when Defendants provided Vehicles of a lesser value and poorer quality than agreed.  Rather, Defendants kept the monetary amounts Plaintiffs paid for Vehicles of a particular value and nature that conformed with federal and industry safety standards, but Defendants did not provide Vehicles of that particular value or nature that conformed with federal and industry safety standards.

1830. Colorado Plaintiffs have a reasonable expectation of compensation because they conferred an economic benefit on the Defendants with the expectation that they were receiving a different product—one of the particular design, nature, quality, and value that contained an anti-theft system and was compliant with federal safety and industry standards—in exchange.

1831. Colorado Plaintiffs would not have purchased or leased their Vehicles, or would have paid less for them, had they known of the Theft-Prone Design at the time of purchase or lease.  Therefore, Defendants profited from the sale and lease of the Vehicles to the detriment and expense of Colorado Plaintiffs by misrepresenting the Vehicles' true design, nature, quality, and value.

1832. Defendants appreciated these economic benefits.  These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers.  They knew of these benefits because they were aware of the Theft-Prone Design, the Vehicles' noncompliant nature and poorer quality, and the Vehicles' reduced value, yet they failed to disclose this knowledge and misled the Colorado Plaintiffs regarding the design, nature, quality, and value of the Vehicles while profiting from this deception.

1833. Accordingly, Colorado Plaintiffs have been impoverished due to Defendants' enrichment without justification.

1834. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, in part because they were procured as a result of their wrongful conduct alleged above.

1835. Colorado Plaintiffs are entitled to restitution of the benefits Defendants

COMPLAINT

unjustly retained and/or any amounts necessary to return Colorado Plaintiffs to the position they occupied prior to dealing with these Defendants, with such amounts to be determined at trial.

1836. Colorado Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages, because if Colorado Plaintiffs' claims for damages are dismissed or judgment is entered in favor of Defendants, Colorado Plaintiffs will have no adequate legal remedy.

**G.    Connecticut State Law Claims for Relief**

**(Alleged by Connecticut Plaintiffs Against All Defendants)**

**1.    Breach of Implied Warranty of Merchantability Under Conn. Gen. Stat. Ann. §§ 42a-2-314 and 42a-2a-504.**

1837. Connecticut Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

1838. A warranty that the Vehicles were in merchantable condition is implied by law pursuant to Conn. Gen. Stat. Ann. §§ 42A-2-314 and 42a-2a-504.

1839. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Conn. Gen. Stat. Ann. §§ 42a-2-104(1) and 42(a)-2-103(2), "sellers" of motor vehicles under § 42a-2-103(1)(c), and with respect to leases, "lessors" of motor vehicles under § 42a-2A-102(a)(23).

1840. At all relevant times, Connecticut Plaintiffs who purchased Vehicles in Connecticut were and are "buyers" within the meaning of Conn. Gen. Stat. Ann. §42a-2-103(1)(a).

1841. At all relevant times, Connecticut Plaintiffs who leased Vehicles in Connecticut were and are "lessees" within the meaning of Conn. Gen. Stat. Ann. § 42a-2A-102(a)(21).

1842. At all relevant times, Connecticut Plaintiffs' Vehicles (whether purchased or leased) were and are "goods" within the meaning of Conn. Gen. Stat. Ann. §§ 42a-2-105(1) and 42a-2-103(2).

COMPLAINT

1843. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased.  Defendants provided Connecticut Plaintiffs with an implied warranty that the purchased and leased Vehicles were in merchantable condition and fit for the ordinary purposes for which they were sold or leased.  This implied warranty included that the Vehicles (a) were manufactured, supplied, distributed, and sold by Defendants, (b) were safe and reliable for transportation, (c) complied with all federal, state, and industry motor vehicle regulations and safety standards, including FMVSS No. 114, (d) were not at abnormally high risk of theft, and (e) were of a particular value and quality that complied with federal and industry safety standards.

1844. The Vehicles did not comply with the implied warranty of merchantability because the Vehicles were defective and not in merchantable condition at the time of sale and/or lease, were not fit for their ordinary purpose of providing safe and reliable transportation at the time of sale or lease, and would not pass without objection in the trade as they deviated significantly from the industry standard and can be stolen in mere minutes without a key.  Defendants knew at the time of manufacture that the Vehicles contained the Theft-Prone Design and lacked any anti-theft equipment or design elements that effectively prevent theft or comply with FMVSS No. 114.  Therefore, the Defendants knew at the time of manufacture that the Vehicles are at an abnormally high risk of theft and are unsafe and an unreliable form of transportation.  The Theft-Prone Design renders the Vehicles highly vulnerable to theft and a prime target for thieves as they can be easily stolen in seconds.  Defendants knew at the time of manufacture that because their Vehicles did not include any anti-theft measures that satisfied FMVSS No. 114, making their Vehicles more prone to theft and failing to comply with federal regulations, the Vehicles would require larger insurance premiums and would depreciate at a more rapid rate than a comparable vehicle with anti-theft measure that satisfied FMVSS No. 114. Consequently, at the time of sale and/or lease, the Vehicles were not fit for their ordinary purpose of providing safe and reliable transportation

- 475 -

COMPLAINT

1845. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable. Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Connecticut Plaintiffs, of the safety defect. Any time limitations regarding the warranty period were also unconscionable and inadequate to protect Connecticut Plaintiffs. Connecticut Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants. A gross disadvantage in bargaining power existed between Connecticut Plaintiffs and Defendants, which unreasonably favored Defendants. Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left Connecticut Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

1846. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that Connecticut Plaintiffs may seek alternative remedies. Connecticut Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provided safe and reliable transportation.

1847. Connecticut Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure. Connecticut Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Connecticut Plaintiffs' breach of warranty claims. Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Connecticut Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news

reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Connecticut Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches. To date, Defendants failed to remedy their breaches.

1848. Alternatively, Connecticut Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches. Connecticut Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

1849. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Connecticut Plaintiffs' Vehicles were and are defective, the Theft-Prone Design in the Vehicles has not been remedied, and Connecticut Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that Connecticut Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

## 2. Breach of Express Warranty Under Conn. Gen. Stat. Ann. § 42a-2-313.

1850. Connecticut Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

1851. During the relevant time periods, Defendants manufactured the Vehicles and Connecticut Plaintiffs purchased and/or leased the Vehicles from Defendants.

1852. Defendants are and were at all relevant times "merchants" with respect to

motor vehicles under Conn. Gen. Stat. Ann. §§ 42a-2-104(1) and 42(a)-2-103(2), "sellers" of motor vehicles under § 42a-2-103(1)(c), and with respect to leases, "lessors" of motor vehicles under § 42a-2A-102(a)(23).

1853. At all relevant times, Connecticut Plaintiffs who purchased Vehicles in Connecticut were and are "buyers" within the meaning of Conn. Gen. Stat. Ann. §42a-2-103(1)(a).

1854. At all relevant times, Connecticut Plaintiffs who leased Vehicles in Connecticut were and are "lessees" within the meaning of Conn. Gen. Stat. Ann. § 42a-2A-102(a)(21).

1855. At all relevant times, Connecticut Plaintiffs' Vehicles (whether purchased or leased) were and are "goods" within the meaning of Conn. Gen. Stat. Ann. §§ 42a-2-105(1) and 42a-2-103(2).

1856. By affixing a VIN plate to each Vehicle at the time of manufacture, Defendants expressly warranted each Vehicles' conformance to "all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture shown." These statements constitute a description, affirmation of fact, and promise made to Connecticut Plaintiffs as to the Vehicles' condition, quality, safety, and reliability. These statements, affirmations, and descriptions became the basis of the bargain between Connecticut Plaintiffs and Defendants, as Connecticut Plaintiffs relied on these statements when making their decisions to purchase and/or lease the Vehicles. As such, the statements are an express warranty under Connecticut law pursuant to Conn. Gen. Stat. Ann. § 42a-2-313, and the Vehicles did not conform to the affirmations of fact, promises made by Defendants, or Defendants' description of the Vehicles.

1857. Connecticut Plaintiffs used the Vehicles in accordance with their normal operation and did not misuse or mishandle the Vehicles in any way material to the allegations set forth herein.

1858. So far as Defendants have attempted to disclaim or limit the warranty, such

disclaimer or limitation is unconscionable and unenforceable. Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Connecticut Plaintiffs, of the safety defect. Any time limitations regarding the warranty period were also unconscionable and inadequate to protect Connecticut Plaintiffs. Connecticut Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants. A gross disadvantage in bargaining power existed between Connecticut Plaintiffs and Defendants, which unreasonably favored Defendants. Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left Connecticut Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

1859. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that Connecticut Plaintiffs may seek alternative remedies. Connecticut Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

1860. Connecticut Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure. Connecticut Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Connecticut Plaintiffs' breach of warranty claims. Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Connecticut Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and

COMPLAINT

claims alleged in this Count.  Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Connecticut Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches.  To date, Defendants failed to remedy their breaches.

1861. Alternatively, Connecticut Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile.  Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design.  Defendants have not cured, remedied, or repaired their breaches.  Connecticut Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

1862. The Vehicles did not perform as promised in accordance with Defendants' express warranty; instead, the Vehicles did not meet all applicable motor vehicle safety and theft prevention standards in effect on the date of manufacture.  The Vehicles are capable of being stolen in a matter of seconds without a key and do not comply with the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles do not, in fact, conform to the applicable anti-theft standards.

1863. As a direct and proximate result of Defendants' breaches, Connecticut Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that Connecticut Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

**3.    Violation of Connecticut Unlawful Trade Practices Act Under Conn. Gen. Stat. § 42-100a, et seq.**

1864. Connecticut Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

COMPLAINT

1865. Defendants and Connecticut Plaintiffs are "persons" within the meaning of Conn. Gen. Stat. Ann. § 42-110a(3).

1866. Defendants were and are engaged in the "trade" or "commerce" within the meaning of Conn. Gen. Stat. Ann. § 42-110a(4).

1867. Defendants engaged in unlawful business practices, including "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce," as prohibited under the Connecticut Unfair Trade Practices Act ("Connecticut UTPA"), Conn. Gen. Stat. Ann. § 42-110b(a).

1868. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Connecticut UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Theft-Prone Design, as detailed above.  Defendants used deception and unfair practices, false pretense, false promise, misrepresentation, concealment, suppression, and omission of material facts with the intent that Connecticut Plaintiffs rely on such concealment, suppression, or omission in connection with the sale or advertisement of their Vehicles, in violation of Conn. Gen. Stat. Ann. § 42-110b(a).

1869. Under the Connecticut UTPA, Defendants had an ongoing duty to Connecticut Plaintiffs to refrain from unfair or deceptive practices in the course of their business.  Specifically, Defendants owed Connecticut Plaintiffs a duty to disclose all the material facts concerning the Theft-Prone Design in the Vehicles.

1870. Defendants had exclusive access to and far superior knowledge about facts regarding the Theft-Prone Design, and Defendants knew these facts were not known to or reasonably discoverable by Connecticut Plaintiffs.

1871. Given the Theft-Prone Design's hidden and technical nature, Connecticut Plaintiffs lack the sophisticated expertise in vehicle components necessary to discover the Theft-Prone Design on their own.

1872. Defendants knew that the Theft-Prone Design gave rise to safety concerns

for the consumers who use the Vehicles, and that the Theft-Prone Design would have been a material fact in the Connecticut Plaintiffs' decisions to buy or lease the Vehicles.

1873. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect.  In advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Theft-Prone Design.  Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

1874. As detailed above, the information concerning the Theft-Prone Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

1875. By misrepresenting the Vehicles as safe, reliable, and free from defects, and by failing to disclose and actively concealing the dangers and risks posed by the Theft-Prone Design, Defendants engaged in the following unfair or deceptive business practices in violation of the Connecticut UTPA: (a) representing that the Vehicles have characteristics, uses, benefits, and qualities which they do not have and (b) representing that the Vehicles are of a particular standard, quality, and grade when they are not.

1876. Defendants intended for Connecticut Plaintiffs to rely on them to provide adequately designed Vehicles and to honestly and accurately reveal the safety hazards described above.

1877. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Theft-Prone Design.  Those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Connecticut Plaintiffs, about the true safety and reliability of the Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

1878. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Theft-Prone Design and true characteristics of the Vehicles were material to the decisions of Connecticut Plaintiffs to purchase or lease the Vehicles, as Defendants intended. Connecticut Plaintiffs were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase or lease the Vehicles.

1879. Connecticut Plaintiffs' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, and/or otherwise learning that the Vehicles contained the Theft-Prone Design, as alleged above. Connecticut Plaintiffs did not, and could not, unravel Defendants' deception on their own.

1880. Had they known the truth about the Theft-Prone Design, Connecticut Plaintiffs would not have purchased or leased the Vehicles or would have paid significantly less for them.

1881. Connecticut Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

1882. Defendants' violations present a continuing risk to Connecticut Plaintiffs and the general public because the Vehicles remain unsafe due to the Theft-Prone Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

1883. Defendants had ample notice provided by the numerous complaints filed against them, internet videos, and news reports. Furthermore, on September 17, 2025, Connecticut Plaintiffs sent Defendants written notice letters of Defendants' violations, Plaintiffs' claims, and a proposed cure to the violations. To date, Defendants failed to remedy their violations. Because Defendants failed to remedy their unlawful conduct, Connecticut Plaintiffs seek all damages and relief to which Connecticut Plaintiffs are

- 483 -
COMPLAINT

entitled.

1884. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile.  As alleged above, Defendants have long known that the Vehicles contained the Theft-Prone Design yet did nothing to remedy the Theft-Prone Design.

1885. Pursuant to Conn. Gen. Stat. Ann. § 42-110g, Connecticut Plaintiffs seek an order (1) enjoining Defendants' unfair and/or deceptive acts, methods, or practices alleged herein, and (2) awarding damages, punitive damages, attorney's fees, costs, and/or any other just and proper relief available under the Connecticut UTPA.

### 4.      Fraud by Omission and Concealment.

1886. Connecticut Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

1887. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards and are therefore of a particular value and quality.  In reality, however, the Vehicles do not comply with such standards and are of a lesser value and quality accordingly.

1888. Defendants were aware of the Theft-Prone Design when they manufactured, marketed, and sold the Vehicles to Connecticut Plaintiffs.  Defendants further knew that the Theft-Prone Design gave rise to serious safety risks for the consumers that would use the Vehicles and naturally give rise to higher insurance premiums and accelerated depreciation.  At the same time, Defendants were aware of the Federal Motor Vehicle Safety Standards and of the effectiveness of engine immobilizer technology in reducing safety hazards.  Defendants were also aware that noncompliance with federal and industry standards lowered the value of the Vehicles and would render the Vehicles difficult to insure.

1889. Defendants knew that the Theft-Prone Design, the safety hazards it posed, and the reduction in the Vehicles' value would have been material facts to the Connecticut Plaintiffs' decisions to buy or lease the Vehicles.

COMPLAINT

1890. A reasonable person would find the Vehicles' lack of industry-standard anti-theft measures and noncompliance with applicable safety standards material to their decision to purchase, lease, and maintain the Vehicles because these deficiencies impact safety, availability, the Vehicles' value, and the cost to insure the Vehicles.

1891. Defendants knowingly made affirmatively false or incomplete statements of material facts as to the Vehicles' safety, reliability, quality, value, and compliance with applicable motor vehicle safety and theft prevention standards, while they intentionally withheld, concealed, omitted, suppressed, and failed to disclose material facts about the Theft-Prone Design, including the lack of effective anti-theft measures, significant safety risks, noncompliance with federal motor vehicle safety standards, and the Vehicles' true value.

1892. Defendants volunteered incomplete information about the Vehicles they offered for sale and/or lease to consumers, including false statements as to the Vehicles' safety, compliance with applicable safety and anti-theft standards, and value while at the same time withholding the existence of the Theft-Prone Design.  Defendants further knew and failed to disclose that the Theft-Prone Design and lack of standard anti-theft measures left the Vehicles at substantially lower value than the price for which they were advertised, marketed, sold, and/or leased.

1893. Alternatively, Defendants made false misrepresentations about the Theft-Prone Design with such utter disregard and recklessness that their knowledge regarding the Theft-Prone Design, its unsafe and unreliable nature, and its substantially lower value may be inferred.

1894. Defendants intended for the Connecticut Plaintiffs to rely on their omissions and concealment—which Connecticut Plaintiffs did in the manner reasonably contemplated by Defendants when they purchased or leased the Vehicles at the prices they paid believing that their vehicles would not have a Theft-Prone Design that would affect the quality, reliability, and safety of the Vehicles.

1895. Connecticut Plaintiffs' reliance on Defendants' misrepresentations and

concealment was reasonable and justifiable, as Connecticut Plaintiffs had no way of learning the facts that Defendants had concealed or failed to disclose. Connecticut Plaintiffs did not, and could not, unravel Defendants' deception on their own.

1896. Having been aware of the Theft-Prone Design within the Vehicles and having known that Connecticut Plaintiffs could not have reasonably been expected to know of the Theft-Prone Design, Defendants had a duty to disclose the Theft-Prone Design to Connecticut Plaintiffs in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Theft-Prone Design and the true value of the Vehicles.

1897. Instead, Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Connecticut Plaintiffs.

1898. If Defendants had fully and adequately disclosed the Theft-Prone Design to consumers, Connecticut Plaintiffs would have seen such a disclosure.

1899. Had Connecticut Plaintiffs known of the Theft-Prone Design within the Vehicles, they would not have purchased the Vehicles or would have paid less for them. Through their omissions and concealment with respect to the Theft-Prone Design within the Vehicles, Defendants intended to induce, and did in fact induce, Connecticut Plaintiffs to either purchase a Vehicle that they otherwise would not have purchased or pay more for a Vehicle than they otherwise would have paid.

1900. As a direct and proximate result of Defendants' omissions, Connecticut Plaintiffs overpaid for the Vehicles because Connecticut Plaintiffs would either have paid less for the Vehicles or would not have purchased the Vehicles at all if the Theft-Prone Design had been disclosed to them.

1901. As a direct and proximate result of Defendants' omissions, Connecticut Plaintiffs purchased Vehicles highly susceptible to theft and were forced to pay higher insurance premiums to account for the susceptibility that they did not knowingly accept,

COMPLAINT

purchase, or lease.

1902. As a direct and proximate result of Defendants' omissions, the Connecticut Plaintiffs paid higher insurance premiums and are now left with Vehicles with significantly diminished values.

1903. Accordingly, Defendants are liable to Connecticut Plaintiffs for their damages, including but not limited to the difference in value, increased insurance premiums that Connecticut Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

1904. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, in reckless disregard of the Connecticut Plaintiffs' rights and well-being, and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

1905. Connecticut Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 5.    Negligent Misrepresentation.

1906. Connecticut Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

1907. Defendants, in the course of their business selling and promoting motor vehicles, supplied false information, including that the Vehicles were safe, reliable, and of a particular value, to guide motor vehicle buyers, including Connecticut Plaintiffs, in their choice of transaction.

1908. Defendants made misrepresentations of material facts concerning the safety, reliability, and value of the Vehicles that they knew or should have known were false. Specifically, Defendants misrepresented that the Vehicles had effective anti-theft equipment or design elements; misrepresented that the Vehicles were safe and reliable forms of transportation; misrepresented that the Vehicles complied with all federal and

industry safety and theft prevention standards; and misrepresented the true value of the Vehicles. Defendants supplied this information in the course of their business to guide Connecticut Plaintiffs in their Vehicle selection and intended to induce Connecticut Plaintiffs to purchase one of Defendants' Vehicles.

1909. Connecticut Plaintiffs justifiably relied upon Defendants' representations because, as the entities responsible for designing and manufacturing the Vehicles, Defendants held themselves out to be knowledgeable about the Vehicles' components and honest in their promotion of the Vehicles. Connecticut Plaintiffs' reliance was further reasonable given the hidden and technical nature of the Theft-Prone Design and practical inability of Connecticut Plaintiffs to discover the Theft-Prone Design on their own. Because Defendants held the Vehicles out to be in line with industry standards, the representation was not unreasonable on its face and Connecticut Plaintiffs had no apparent reason to doubt the veracity of Defendants' representations.

1910. Defendants had a duty to disclose all relevant information regarding the Vehicles' safety, reliability, quality, and characteristics that would affect the Connecticut Plaintiffs' choice of purchase as consumers.

1911. Defendants failed to exercise reasonable care or competence in communicating the standards of safety, reliability, quality, and characteristics of the Vehicles to the consumers, including Connecticut Plaintiffs, when they failed to disclose the lack of anti-theft prevention technology in the Vehicles. Rather, Defendants published materials and marketed the Vehicles for years as safe, reliable, and of a quality consistent with the industry standard.

1912. Connecticut Plaintiffs would not have purchased, or would have purchased for a lower price, the Vehicles which Defendants negligently misrepresented as safe, of standard quality, and containing standard trade characteristics, such as anti-theft prevention technology. Additionally, as a direct and proximate result, Connecticut Plaintiffs have had to pay higher insurance premiums to account for the Vehicles' high susceptibility to theft and are now left with Vehicles that have a lower value than they

COMPLAINT

would have had without the defect.

1913. As a direct and proximate result of Connecticut Plaintiffs' reasonable reliance on Defendants' negligent misrepresentations, Connecticut Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that Connecticut Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

1914. Connecticut Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

**6.    Negligence.**

1915. Connecticut Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

1916. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

1917. Defendants owed a duty of care to Connecticut Plaintiffs. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves, higher insurance premiums, and accelerated depreciation.

1918. Defendants failed to exercise reasonable care in connection with their manufacture, distribution, sale, and/or leasing of the Vehicles.

1919. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into

COMPLAINT

with Connecticut Plaintiffs.

1920. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS.

1921. As a direct and proximate result of Defendants' failure to exercise reasonable care, Connecticut Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that Connecticut Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

1922. Connecticut Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 7. Unjust Enrichment.

1923. Connecticut Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

1924. When they purchased and leased the Vehicles, Connecticut Plaintiffs conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

1925. In exchange, Defendants did not confer the benefit that was promised to Plaintiffs when Defendants provided Vehicles of a lesser value and poorer quality than agreed. Rather, Defendants kept the monetary amounts Plaintiffs paid for Vehicles of a particular value and nature that conformed with federal and industry safety standards, but Defendants did not provide Vehicles of that particular value or nature that conformed with federal and industry safety standards.

1926. Connecticut Plaintiffs have a reasonable expectation of compensation because they conferred an economic benefit on the Defendants with the expectation that they were receiving a different product—one of the particular design, nature, quality,

and value that contained an anti-theft system and was compliant with federal safety and industry standards—in exchange.

1927. Connecticut Plaintiffs would not have purchased or leased their Vehicles, or would have paid less for them, had they known of the Theft-Prone Design at the time of purchase or lease. Therefore, Defendants profited from the sale and lease of the Vehicles to the detriment and expense of Connecticut Plaintiffs by misrepresenting the Vehicles' true design, nature, quality, and value.

1928. Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft-Prone Design, the Vehicles' noncompliant nature and poorer quality, and the Vehicles' reduced value, yet they failed to disclose this knowledge and misled the Connecticut Plaintiffs regarding the design, nature, quality, and value of the Vehicles while profiting from this deception.

1929. Accordingly, Connecticut Plaintiffs have been impoverished due to Defendants' enrichment without justification.

1930. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, in part because they were procured as a result of their wrongful conduct alleged above.

1931. Connecticut Plaintiffs are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Connecticut Plaintiffs to the position they occupied prior to dealing with these Defendants, with such amounts to be determined at trial.

1932. Connecticut Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages, because if Connecticut Plaintiffs' claims for damages are dismissed or judgment is entered in favor of Defendants, Connecticut Plaintiffs will have no adequate legal remedy.

**H.     Delaware State Law Claims for Relief**

**(Alleged by Delaware Plaintiffs Against All Defendants)**

**1.    Breach of Implied Warranty of Merchantability Under Del. Code Ann. tit. 6, §§ 2-314, 2-315, 2A-212 and 2A-213.**

1933. Delaware Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

1934. A warranty that the Vehicles were in merchantable condition is implied by law pursuant to Del. Code Ann. tit. 6, §§ 2-314, 2-315, 2A-212 and 2A-213.

1935. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under 6 Del. C. §§ 2-104(1) and 2A-103(3), "sellers" of motor vehicles under § 2-103(1)(d), and with respect to leases, "lessors" of motor vehicles under 6 Del. C. § 2A-103(1)(p).

1936. At all relevant times, Delaware Plaintiffs who purchased Vehicles in Delaware were and are "buyers" within the meaning of 6 Del. C. § 2-103(1)(a).

1937. At all relevant times, Delaware Plaintiffs who leased Vehicles in Delaware were and are "lessees" within the meaning of 6 Del. C. § 2A-103(1)(n).

1938. At all relevant times, Delaware Plaintiffs' Vehicles (whether purchased or leased) were and are "goods" within the meaning of 6 Del. C. §§ 2-105(1) and 2A-103(1)(h).

1939. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased.  Defendants provided Delaware Plaintiffs with an implied warranty that the purchased and leased Vehicles were in merchantable condition and fit for the ordinary purposes for which they were sold or leased.  This implied warranty included that the Vehicles (a) were manufactured, supplied, distributed, and sold by Defendants, (b) were safe and reliable for transportation, (c) complied with all federal, state, and industry motor vehicle regulations and safety standards, including FMVSS No. 114, (d) were not at abnormally high risk of theft, and (e) were of a particular value and quality that complied with federal and industry safety standards.

1940. The Vehicles did not comply with the implied warranty of merchantability because the Vehicles were defective and not in merchantable condition at the time of sale and/or lease, were not fit for their ordinary purpose of providing safe and reliable transportation at the time of sale or lease, and would not pass without objection in the trade as they deviated significantly from the industry standard and can be stolen in mere minutes without a key. Defendants knew at the time of manufacture that the Vehicles contained the Theft-Prone Design and lacked any anti-theft equipment or design elements that effectively prevent theft or comply with FMVSS No. 114. Therefore, the Defendants knew at the time of manufacture that the Vehicles are at an abnormally high risk of theft and are unsafe and an unreliable form of transportation. The Theft-Prone Design renders the Vehicles highly vulnerable to theft and a prime target for thieves as they can be easily stolen in seconds. Defendants knew at the time of manufacture that because their Vehicles did not include any anti-theft measures that satisfied FMVSS No. 114, making their Vehicles more prone to theft and failing to comply with federal regulations, the Vehicles would require larger insurance premiums and would depreciate at a more rapid rate than a comparable vehicle with anti-theft measure that satisfied FMVSS No. 114. Consequently, at the time of sale and/or lease, the Vehicles were not fit for their ordinary purpose of providing safe and reliable transportation.

1941. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable. Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Delaware Plaintiffs, of the safety defect. Any time limitations regarding the warranty period were also unconscionable and inadequate to protect Delaware Plaintiffs. Delaware Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants. A gross disadvantage in bargaining power existed between Delaware Plaintiffs and Defendants, which unreasonably favored Defendants. Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the

hidden and technical nature of the Theft-Prone Design left Delaware Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

1942. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that Delaware Plaintiffs may seek alternative remedies. Delaware Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

1943. Delaware Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure. Delaware Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Delaware Plaintiffs' breach of warranty claims. Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Delaware Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Plaintiffs sent Defendants written notice letters of Defendants' breaches, Delaware Plaintiffs' claims, and a proposed cure to the breaches. To date, Defendants failed to remedy their breaches.

1944. Alternatively, Delaware Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured,

- 494 -

COMPLAINT

distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches. Delaware Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

1945. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Delaware Plaintiffs' Vehicles were and are defective, the Theft-Prone Design in the Vehicles has not been remedied, and Delaware Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that Delaware Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

## 2. Breach of Express Warranty Under Del. Code Ann. tit. 6, §§ 2-313 and 2A-210.

1946. Delaware Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

1947. During the relevant time periods, Defendants manufactured the Vehicles and Delaware Plaintiffs purchased and/or leased the Vehicles from Defendants.

1948. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under 6 Del. C. §§ 2-104(1) and 2A-103(3), "sellers" of motor vehicles under § 2-103(1)(d), and with respect to leases, "lessors" of motor vehicles under 6 Del. C. § 2A-103(1)(p).

1949. At all relevant times, Delaware Plaintiffs who purchased Vehicles in Delaware were and are "buyers" within the meaning of 6 Del. C. § 2-103(1)(a).

1950. At all relevant times, Delaware Plaintiffs who leased Vehicles in Delaware were and are "lessees" within the meaning of 6 Del. C. § 2A-103(1)(n).

1951. At all relevant times, Delaware Plaintiffs' Vehicles (whether purchased or leased) were and are "goods" within the meaning of 6 Del. C. §§ 2-105(1) and 2A-103(1)(h).

COMPLAINT

1952. By affixing a VIN plate to each Vehicle at the time of manufacture, Defendants expressly warranted each Vehicles' conformance to "all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture shown." These statements constitute a description, affirmation of fact, and promise made to Delaware Plaintiffs as to the Vehicles' condition, quality, safety, and reliability. These statements, affirmations, and descriptions became the basis of the bargain between Delaware Plaintiffs and Defendants, as Delaware Plaintiffs relied on these statements when making their decisions to purchase and/or lease the Vehicles. As such, the statements are an express warranty under Delaware law pursuant to Del. Code Ann. tit. 6, §§ 2-313 and 2A-210, and the Vehicles did not conform to the affirmations of fact, promises made by Defendants, or Defendants' description of the Vehicles.

1953. Delaware Plaintiffs used the Vehicles in accordance with their normal operation and did not misuse or mishandle the Vehicles in any way material to the allegations set forth herein.

1954. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable. Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Delaware Plaintiffs, of the safety defect. Any time limitations regarding the warranty period were also unconscionable and inadequate to protect Delaware Plaintiffs. Delaware Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants. A gross disadvantage in bargaining power existed between Delaware Plaintiffs and Defendants, which unreasonably favored Defendants. Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left Delaware Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

1955. These circumstances caused any exclusive or limited remedy to fail its

essential purpose such that Delaware Plaintiffs may seek alternative remedies. Delaware Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

1956. Delaware Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure. Delaware Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Delaware Plaintiffs' breach of warranty claims. Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Delaware Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Delaware Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches. To date, Defendants failed to remedy their breaches.

1957. Alternatively, Delaware Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches. Delaware Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

COMPLAINT

1958. The Vehicles did not perform as promised in accordance with Defendants' express warranty; instead, the Vehicles did not meet all applicable motor vehicle safety and theft prevention standards in effect on the date of manufacture. The Vehicles are capable of being stolen in a matter of seconds without a key and do not comply with the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles do not, in fact, conform to the applicable anti-theft standards.

1959. As a direct and proximate result of Defendants' breaches, Delaware Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that Delaware Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

### 3. Violation of Delaware Consumer Fraud Act Under Del. Code Ann. tit. 6, § 2511, et seq.

1960. Delaware Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

1961. Defendants and Delaware Plaintiffs are "persons" within the meaning of Del. Code Ann. tit. 6, § 2511(7).

1962. Defendants engaged in unlawful business practices as prohibited under the Delaware Consumer Fraud Act ("Delaware CFA"), Del. Code Ann. tit. 6, § 2513(a).

1963. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Delaware CFA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Theft-Prone Design, as detailed above. Defendants used deception and unfair practices, false pretense, false promise, misrepresentation, concealment, suppression, and omission of material facts with the intent that Delaware Plaintiffs rely on such concealment, suppression, or omission in connection with the sale or advertisement of their Vehicles, in violation of Del. Code Ann. tit. 6, § 2513(a).

COMPLAINT

1964. Under the Delaware CFA, Defendants had an ongoing duty to Delaware Plaintiffs to refrain from unfair or deceptive practices in the course of their business. Specifically, Defendants owed Delaware Plaintiffs a duty to disclose all the material facts concerning the Theft-Prone Design in the Vehicles.

1965. Defendants had exclusive access to and far superior knowledge about facts regarding the Theft-Prone Design, and Defendants knew these facts were not known to or reasonably discoverable by Delaware Plaintiffs.

1966. Given the Theft-Prone Design's hidden and technical nature, Delaware Plaintiffs lack the sophisticated expertise in vehicle components necessary to discover the Theft-Prone Design on their own.

1967. Defendants knew that the Theft-Prone Design gave rise to safety concerns for the consumers who use the Vehicles, and that the Theft-Prone Design would have been a material fact in the Delaware Plaintiffs' decisions to buy or lease the Vehicles.

1968. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Theft-Prone Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

1969. As detailed above, the information concerning the Theft-Prone Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

1970. By misrepresenting the Vehicles as safe, reliable, and free from defects, and by failing to disclose and actively concealing the dangers and risks posed by the Theft-Prone Design, Defendants engaged in the following unfair or deceptive business practices in violation of Del. Code Ann. tit. 6, § 2-513(a): using or employing deception, fraud, false pretense, false promise, misrepresentation, unfair practice, or the

concealment, suppression, or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale/lease of the Vehicles, whether or not any person has in fact been misled, deceived or damaged thereby.

1971. Defendants intended for Delaware Plaintiffs to rely on them to provide adequately designed Vehicles and to honestly and accurately reveal the safety hazards described above.

1972. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Theft-Prone Design.  Those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Delaware Plaintiffs, about the true safety and reliability of the Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

1973. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Theft-Prone Design and true characteristics of the Vehicles were material to the decisions of Delaware Plaintiffs to purchase or lease the Vehicles, as Defendants intended.  Delaware Plaintiffs were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase or lease the Vehicles.

1974. Delaware Plaintiffs' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, and/or otherwise learning that the Vehicles contained the Theft-Prone Design, as alleged above. Delaware Plaintiffs did not, and could not, unravel Defendants' deception on their own.

1975. Had they known the truth about the Theft-Prone Design, Delaware Plaintiffs would not have purchased or leased the Vehicles or would have paid significantly less for them.

COMPLAINT

1976. Delaware Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

1977. Defendants' violations present a continuing risk to Delaware Plaintiffs and the general public because the Vehicles remain unsafe due to the Theft-Prone Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

1978. Defendants had ample notice provided by the numerous complaints filed against them, internet videos, and news reports.  Furthermore, on September 17, 2025, Delaware Plaintiffs sent Defendants written notice letters of Defendants' violations, Plaintiffs' claims, and a proposed cure to the violations.  To date, Defendants failed to remedy their violations.  Because Defendants failed to remedy their unlawful conduct, Delaware Plaintiffs seek all damages and relief to which Delaware Plaintiffs are entitled.

1979. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile.  As alleged above, Defendants have long known that the Vehicles contained the Theft-Prone Design yet did nothing to remedy the Theft-Prone Design.

1980. Pursuant to Del. Code Ann. tit. 6, §§ 2525, Delaware Plaintiffs seek an order (1) enjoining Defendants' unfair and/or deceptive acts, methods, or practices alleged herein, and (2) awarding damages, punitive damages, attorney's fees, costs, and/or any other just and proper relief available under the Delaware CFA.

**4.     Violation of Delaware Deceptive Trade Practices Act Under Del. Code Ann. tit. 6, § 2531, et seq.**

1981. Delaware Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

1982. The Delaware Deceptive Trade Practices Act ("Delaware DTPA") prohibits deceptive and unconscionable trade practices.  Del. Code Ann. tit. 6, § 2532(a).

COMPLAINT

1983. Defendants and Delaware Plaintiffs are "persons" within the meaning of Del. Code Ann. tit. 6, § 2531(5).

1984. Through their misrepresentations, concealment, omissions, and withholding of these material facts, Defendants engaged in unfair and deceptive acts or practices in the course of their business, as prohibited by Del. Code Ann. tit. 6, § 2532.

1985. In the course of their business, Defendants, through their agents, representatives, and subsidiaries, engaged in unfair and unconscionable deceptive acts or practices by misrepresenting the Vehicles as safe, reliable, free from defects, designed according to federal and industry standards, insurable, and priced accurately, by failing to disclose and actively concealing the dangers and risk posed by the Theft-Prone Design, and by knowingly and intentionally concealing, misrepresenting, omitting, and withholding material facts.  These material facts include that (a) the Vehicles had a hidden Theft-Prone Design which left the Vehicles without standard anti-theft measures and was not reasonably discoverable to consumers, (b) the Vehicles did not comply with federal or industry motor vehicle safety and theft prevention standards, including FMVSS No. 114, (c) the Vehicles were at an abnormally high risk of theft and therefore would be costly to insure, and (d) the Vehicles had a lower value and were of a lower standard and quality than Defendants knowingly misrepresented.

1986. Specifically, Defendants engaged in the following unfair or deceptive business practices in violation of Delaware DTPA: (a) causing confusion or misunderstanding as to the approval or certification of the Vehicles; (b) representing that the Vehicles have characteristics, uses, benefits, and qualities which they do not have; (c) representing that the Vehicles are of a particular standard, quality, and grade when they are not; (d) advertising the Vehicles with the intent not to sell or lease them as advertised; and (e) engaging in any other conduct which created a likelihood of confusion or of misunderstanding.  Del. Code Ann. tit. 6, § 2532.

1987. Under Delaware DTPA, Defendants had an ongoing duty to Delaware Plaintiffs as consumers to refrain from unfair or deceptive acts, practices, and

representations in the course of their business. Specifically, Defendants owed the Delaware Plaintiffs a duty to disclose all the material facts concerning the Theft-Prone Design in the Vehicles and to refrain from representing their Vehicles were of a particular standard or quality when they were of another.

1988. As detailed above, the information concerning the Theft-Prone Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles. Defendants knew that, because of the Theft-Prone Design, the Vehicles posed a significant safety risk to consumers that used the Vehicles. Defendants knew that the Theft-Prone Design and lack of standard anti-theft measures priced the Vehicles at a substantially lower value than the price for which they were advertised, marketed, sold, and/or leased and required higher insurance rates.

1989. Defendants knew these material facts would have been material to consumers', including Delaware Plaintiffs', decision to purchase and/or lease the Vehicles.

1990. Defendants nevertheless made intentionally misleading and incomplete affirmative statements and representations about the Vehicles' safety, reliability, value, insurability, and conformance with all applicable safety and theft prevention standards, while also concealing, omitting, and withholding material facts from consumers, including Delaware Plaintiffs, at the time the Vehicles were advertised, sold, and/or leased. Defendants marketed and sold the Vehicles as safe despite their knowledge that the Theft-Prone Design posed a significant safety risk to consumers and the general public. Through advertisements, marketing materials, and their websites, Defendants made incomplete representations and/or concealed the Vehicles' defective condition. Defendants further misrepresented that the Vehicles were compliant with all applicable motor vehicle safety and theft prevention standards, when in reality they were not. Defendants further marketed and sold/leased the Vehicles at an inflated and misleading price, given the Vehicles' Theft-Prone Design and lack of standard anti-theft equipment

COMPLAINT

and design elements.

1991. Delaware Plaintiffs were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe, reliable, free from defects, designed according to federal and industry standards, insurable, and priced accurately when deciding to purchase or lease the Vehicles.

1992. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection and that the Vehicles were not affected by the Theft-Prone Design.

1993. Defendants intended for Delaware Plaintiffs to rely on them to provide adequately designed Vehicles and to honestly and accurately reveal the safety hazards described above.

1994. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Delaware Plaintiffs, about the true safety and reliability of Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

1995. Given the Theft-Prone Design's hidden and technical nature, Delaware Plaintiffs' reliance was reasonable, as they had no way of discerning if Defendants' representations were false and misleading or otherwise learning that the Vehicles contained the Theft-Prone Design, as alleged above. Delaware Plaintiffs did not, and could not, unravel Defendants' deception on their own.

1996. Instead, Defendants had exclusive and superior knowledge of the Theft-Prone Design, related facts, and the Vehicles' noncompliance with federal and industry safety and theft prevention standards. Defendants knew these facts were hidden and not reasonably discoverable by consumers, including Delaware Plaintiffs. Delaware Plaintiffs lack the sophisticated expertise in vehicle components that would have been necessary to discover the Theft-Prone Design on their own.

COMPLAINT

1997. Had they known the truth about the Theft-Prone Design, Delaware Plaintiffs would not have purchased or leased the Vehicles, or Delaware Plaintiffs would have paid significantly less for the Vehicles.

1998. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Theft-Prone Design and true characteristics of the Vehicles were material to the decisions of Delaware Plaintiffs to purchase and lease the Vehicles, as Defendants intended.

1999. Delaware Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2000. Defendants' violations present a continuing risk to Delaware Plaintiffs, as well as to the general public, because the Vehicles remain unsafe due to the Theft-Prone Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

2001. Defendants had ample notice provided by the numerous complaints filed against them, internet videos, and news reports. Furthermore, on September 17, 2025, Delaware Plaintiffs sent Defendants written notice letters of Defendants' violations, Plaintiffs' claims, and a proposed cure to the violations. To date, Defendants failed to remedy their violations. Because Defendants failed to remedy their unlawful conduct, Delaware Plaintiffs seek all damages and relief to which Delaware Plaintiffs are entitled.

2002. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile. As alleged above, Defendants have long known that the Vehicles contained the Theft-Prone Design yet did nothing to remedy the Theft-Prone Design.

2003. Delaware Plaintiffs seek an order (1) enjoining Defendants' unfair and/or deceptive acts, methods, or practices alleged herein, and (2) awarding damages, punitive damages, attorney's fees, costs, and/or any other just and proper relief available

COMPLAINT

under Delaware DTPA.

### 5. Fraud by Omission and Concealment.

2004. Delaware Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

2005. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards and are therefore of a particular value and quality. In reality, however, the Vehicles do not comply with such standards and are of a lesser value and quality accordingly.

2006. Defendants were aware of the Theft-Prone Design when they manufactured, marketed, and sold the Vehicles to Delaware Plaintiffs. Defendants further knew that the Theft-Prone Design gave rise to serious safety risks for the consumers that would use the Vehicles and naturally give rise to higher insurance premiums and accelerated depreciation. At the same time, Defendants were aware of the Federal Motor Vehicle Safety Standards and of the effectiveness of engine immobilizer technology in reducing safety hazards. Defendants were also aware that noncompliance with federal and industry standards lowered the value of the Vehicles and would render the Vehicles difficult to insure.

2007. Defendants knew that the Theft-Prone Design, the safety hazards it posed, and the reduction in the Vehicles' value would have been material facts to the Delaware Plaintiffs' decisions to buy or lease the Vehicles.

2008. A reasonable person would find the Vehicles' lack of industry-standard anti-theft measures and noncompliance with applicable safety standards material to their decision to purchase, lease, and maintain the Vehicles because these deficiencies impact safety, availability, the Vehicles' value, and the cost to insure the Vehicles.

2009. Defendants knowingly made affirmatively false or incomplete statements of material facts as to the Vehicles' safety, reliability, quality, value, and compliance with applicable motor vehicle safety and theft prevention standards, while they intentionally withheld, concealed, omitted, suppressed, and failed to disclose material

facts about the Theft-Prone Design, including the lack of effective anti-theft measures, significant safety risks, noncompliance with federal motor vehicle safety standards, and the Vehicles' true value.

2010. Defendants volunteered incomplete information about the Vehicles they offered for sale and/or lease to consumers, including false statements as to the Vehicles' safety, compliance with applicable safety and anti-theft standards, and value while at the same time withholding the existence of the Theft-Prone Design. Defendants further knew and failed to disclose that the Theft-Prone Design and lack of standard anti-theft measures left the Vehicles at substantially lower value than the price for which they were advertised, marketed, sold, and/or leased.

2011. Alternatively, Defendants made false misrepresentations about the Theft-Prone Design with such utter disregard and recklessness that their knowledge regarding the Theft-Prone Design, its unsafe and unreliable nature, and its substantially lower value may be inferred.

2012. Defendants intended for the Delaware Plaintiffs to rely on their omissions and concealment—which Delaware Plaintiffs did in the manner reasonably contemplated by Defendants when they purchased or leased the Vehicles at the prices they paid believing that their vehicles would not have a Theft-Prone Design that would affect the quality, reliability, and safety of the Vehicles.

2013. Delaware Plaintiffs' reliance on Defendants' misrepresentations and concealment was reasonable and justifiable, as Delaware Plaintiffs had no way of learning the facts that Defendants had concealed or failed to disclose. Delaware Plaintiffs did not, and could not, unravel Defendants' deception on their own.

2014. Having been aware of the Theft-Prone Design within the Vehicles and having known that Delaware Plaintiffs could not have reasonably been expected to know of the Theft-Prone Design, Defendants had a duty to disclose the Theft-Prone Design to Delaware Plaintiffs in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Theft-Prone Design and the true value of the Vehicles.

COMPLAINT

2015. Instead, Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products.  They did so at the expense of Delaware Plaintiffs.

2016. If Defendants had fully and adequately disclosed the Theft-Prone Design to consumers, Delaware Plaintiffs would have seen such a disclosure.

2017. Had Delaware Plaintiffs known of the Theft-Prone Design within the Vehicles, they would not have purchased the Vehicles or would have paid less for them. Through their omissions and concealment with respect to the Theft-Prone Design within the Vehicles, Defendants intended to induce, and did in fact induce, Delaware Plaintiffs to either purchase a Vehicle that they otherwise would not have purchased or pay more for a Vehicle than they otherwise would have paid.

2018. As a direct and proximate result of Defendants' omissions, Delaware Plaintiffs overpaid for the Vehicles because Delaware Plaintiffs would either have paid less for the Vehicles or would not have purchased the Vehicles at all if the Theft-Prone Design had been disclosed to them.

2019. As a direct and proximate result of Defendants' omissions, Delaware Plaintiffs purchased Vehicles highly susceptible to theft and were forced to pay higher insurance premiums to account for the susceptibility that they did not knowingly accept, purchase, or lease.

2020. As a direct and proximate result of Defendants' omissions, the Delaware Plaintiffs paid higher insurance premiums and are now left with Vehicles with significantly diminished values.

2021. Accordingly, Defendants are liable to Delaware Plaintiffs for their damages, including but not limited to the difference in value, increased insurance premiums that Delaware Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an

COMPLAINT

amount to be proven at trial.

2022. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, in reckless disregard of the Delaware Plaintiffs' rights and well-being, and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

2023. Delaware Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 6. Negligent Misrepresentation.

2024. Delaware Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

2025. Defendants, in the course of their business selling and promoting motor vehicles, supplied false information, including that the Vehicles were safe, reliable, and of a particular value, to guide motor vehicle buyers, including Delaware Plaintiffs, in their choice of transaction.

2026. Defendants made misrepresentations of material facts concerning the safety, reliability, and value of the Vehicles that they knew or should have known were false. Specifically, Defendants misrepresented that the Vehicles had effective anti-theft equipment or design elements; misrepresented that the Vehicles were safe and reliable forms of transportation; misrepresented that the Vehicles complied with all federal and industry safety and theft prevention standards; and misrepresented the true value of the Vehicles. Defendants supplied this information in the course of their business to guide Delaware Plaintiffs in their Vehicle selection and intended to induce Delaware Plaintiffs to purchase one of Defendants' Vehicles.

2027. Delaware Plaintiffs justifiably relied upon Defendants' representations because, as the entities responsible for designing and manufacturing the Vehicles, Defendants held themselves out to be knowledgeable about the Vehicles' components and honest in their promotion of the Vehicles. Delaware Plaintiffs' reliance was further

COMPLAINT

reasonable given the hidden and technical nature of the Theft-Prone Design and practical inability of Delaware Plaintiffs to discover the Theft-Prone Design on their own. Because Defendants held the Vehicles out to be in line with industry standards, the representation was not unreasonable on its face and Delaware Plaintiffs had no apparent reason to doubt the veracity of Defendants' representations.

2028. Defendants had a duty to disclose all relevant information regarding the Vehicles' safety, reliability, quality, and characteristics that would affect the Delaware Plaintiffs' choice of purchase as consumers.

2029. Defendants failed to exercise reasonable care or competence in communicating the standards of safety, reliability, quality, and characteristics of the Vehicles to the consumers, including Delaware Plaintiffs, when they failed to disclose the lack of anti-theft prevention technology in the Vehicles. Rather, Defendants published materials and marketed the Vehicles for years as safe, reliable, and of a quality consistent with the industry standard.

2030. Delaware Plaintiffs would not have purchased, or would have purchased for a lower price, the Vehicles which Defendants negligently misrepresented as safe, of standard quality, and containing standard trade characteristics, such as anti-theft prevention technology. Additionally, as a direct and proximate result, Delaware Plaintiffs have had to pay higher insurance premiums to account for the Vehicles' high susceptibility to theft and are now left with Vehicles that have a lower value than they would have had without the defect.

2031. As a direct and proximate result of Delaware Plaintiffs' reasonable reliance on Defendants' negligent misrepresentations, Delaware Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that Delaware Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

2032. Delaware Plaintiffs plead this claim separately, as well as in the alternative

COMPLAINT

to their claims for damages.

### 7. Negligence.

2033. Delaware Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

2034. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

2035. Defendants owed a duty of care to Delaware Plaintiffs. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves, higher insurance premiums, and accelerated depreciation.

2036. Defendants failed to exercise reasonable care in connection with their manufacture, distribution, sale, and/or leasing of the Vehicles.

2037. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Delaware Plaintiffs.

2038. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS.

2039. As a direct and proximate result of Defendants' failure to exercise reasonable care, Delaware Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that Delaware Plaintiffs have paid and will

COMPLAINT

continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

2040. Delaware Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 8.    Unjust Enrichment.

2041. Delaware Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

2042. When they purchased and leased the Vehicles, Delaware Plaintiffs conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

2043. In exchange, Defendants did not confer the benefit that was promised to Plaintiffs when Defendants provided Vehicles of a lesser value and poorer quality than agreed.  Rather, Defendants kept the monetary amounts Plaintiffs paid for Vehicles of a particular value and nature that conformed with federal and industry safety standards, but Defendants did not provide Vehicles of that particular value or nature that conformed with federal and industry safety standards.

2044. Delaware Plaintiffs have a reasonable expectation of compensation because they conferred an economic benefit on the Defendants with the expectation that they were receiving a different product—one of the particular design, nature, quality, and value that contained an anti-theft system and was compliant with federal safety and industry standards—in exchange.

2045. Delaware Plaintiffs would not have purchased or leased their Vehicles, or would have paid less for them, had they known of the Theft-Prone Design at the time of purchase or lease.  Therefore, Defendants profited from the sale and lease of the Vehicles to the detriment and expense of Delaware Plaintiffs by misrepresenting the Vehicles' true design, nature, quality, and value.

2046. Defendants appreciated these economic benefits.  These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their

customers. They knew of these benefits because they were aware of the Theft-Prone Design, the Vehicles' noncompliant nature and poorer quality, and the Vehicles' reduced value, yet they failed to disclose this knowledge and misled the Delaware Plaintiffs regarding the design, nature, quality, and value of the Vehicles while profiting from this deception.

2047. Accordingly, Delaware Plaintiffs have been impoverished due to Defendants' enrichment without justification.

2048. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, in part because they were procured as a result of their wrongful conduct alleged above.

2049. Delaware Plaintiffs are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Delaware Plaintiffs to the position they occupied prior to dealing with these Defendants, with such amounts to be determined at trial.

2050. Delaware Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages, because if Delaware Plaintiffs' claims for damages are dismissed or judgment is entered in favor of Defendants, Delaware Plaintiffs will have no adequate legal remedy.

**I.    Florida State Law Claims for Relief**

**(Alleged by Florida Plaintiffs Against All Defendants)**

**1.    Breach of Implied Warranty of Merchantability Under Fla. Stat. §§ 672.314 and 680.212.**

2051. Florida Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

2052. A warranty that the Vehicles were in merchantable condition is implied by law pursuant to Fla. Stat. §§ 672.314 and 680.212.

2053. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Fla. Stat. §§ 672.104(1) and 680.1031(3)(k), "sellers" of motor

vehicles under § 672.103(1)(d) and, with respect to leases, "lessors" of motor vehicles under § 680.1031(1)(p).

2054. At all relevant times, Florida Plaintiffs who purchased Vehicles in Florida were and are "buyers" within the meaning of Fla. Stat. § 672.103(1)(a).

2055. At all relevant times, Florida Plaintiffs who leased Vehicles in Florida were and are "lessees" within the meaning of Fla. Stat. § 680.1031(1)(o).

2056. At all relevant times, Florida Plaintiffs' Vehicles (whether purchased or leased) were and are "goods" within the meaning of Fla. Stat. §§ 672.105(1) and 680.1031(1)(h).

2057. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased.  Defendants provided Florida Plaintiffs with an implied warranty that the purchased and leased Vehicles were in merchantable condition and fit for the ordinary purposes for which they were sold or leased.  This implied warranty included that the Vehicles (a) were manufactured, supplied, distributed, and sold by Defendants, (b) were safe and reliable for transportation, (c) complied with all federal, state, and industry motor vehicle regulations and safety standards, including FMVSS No. 114, (d) were not at an abnormally high risk of theft, and (e) were of a particular value and quality that complied with federal and industry safety standards.

2058. The Vehicles did not comply with the implied warranty of merchantability because the Vehicles were defective and not in merchantable condition at the time of sale and/or lease, were not fit for their ordinary purpose of providing safe and reliable transportation at the time of sale or lease, and would not pass without objection in the trade as they deviated significantly from the industry standard and can be stolen in mere minutes without a key.  Defendants knew at the time of manufacture that the Vehicles contained the Theft-Prone Design and lacked any anti-theft equipment or design elements that effectively prevent theft or comply with FMVSS No. 114.  Therefore, the Defendants knew at the time of manufacture that the Vehicles are at an abnormally high

risk of theft and are unsafe and an unreliable form of transportation. The Theft-Prone Design renders the Vehicles highly vulnerable to theft and a prime target for thieves as they can be easily stolen in seconds. Defendants knew at the time of manufacture that because their Vehicles did not include any anti-theft measures that satisfied FMVSS No. 114, making their Vehicles more prone to theft and failing to comply with federal regulations, the Vehicles would require larger insurance premiums and would depreciate at a more rapid rate than a comparable vehicle with anti-theft measure that satisfied FMVSS No. 114. Consequently, at the time of sale and/or lease, the Vehicles were not fit for their ordinary purpose of providing safe and reliable transportation.

2059. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable. Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Florida Plaintiffs, of the safety defect. Any time limitations regarding the warranty period were also unconscionable and inadequate to protect Florida Plaintiffs. Florida Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants. A gross disadvantage in bargaining power existed between Florida Plaintiffs and Defendants, which unreasonably favored Defendants. Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left Florida Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

2060. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that Florida Plaintiffs may seek alternative remedies. Florida Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

2061. Florida Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure. Florida Plaintiffs have opted out of

a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Florida Plaintiffs' breach of warranty claims.  Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Florida Plaintiffs' claims.  Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles.  Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count.  Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Florida Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches.  To date, Defendants failed to remedy their breaches.

2062. Alternatively, Florida Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches.  Florida Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

2063. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Florida Plaintiffs' Vehicles were and are defective, the Theft-Prone Design in the Vehicles has not been remedied, and Florida Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that Florida Plaintiffs have paid and will continue to pay, and accelerated

depreciation, in an amount to be proven at trial.

### 2. Breach of Express Warranty Under Fla. Stat. §§ 672.313 and 680.21.[113]

2064. Florida Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

2065. During the relevant time periods, Defendants manufactured the Vehicles and Florida Plaintiffs purchased and/or leased the Vehicles from Defendants.

2066. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Fla. Stat. §§ 672.104(1) and 680.1031(3)(k), "sellers" of motor vehicles under § 672.103(1)(d) and, with respect to leases, "lessors" of motor vehicles under § 680.1031(1)(p).

2067. At all relevant times, Florida Plaintiffs who purchased Vehicles in Florida were and are "buyers" within the meaning of Fla. Stat. § 672.103(1)(a).

2068. At all relevant times, Florida Plaintiffs who leased Vehicles in Florida were and are "lessees" within the meaning of Fla. Stat. § 680.1031(1)(o).

2069. At all relevant times, Florida Plaintiffs' Vehicles (whether purchased or leased) were and are "goods" within the meaning of Fla. Stat. §§ 672.105(1) and 680.1031(1)(h).

2070. By affixing a VIN plate to each Vehicle at the time of manufacture, Defendants expressly warranted each Vehicles' conformance to "all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture shown." These statements constitute a description, affirmation of fact, and promise made to Florida Plaintiffs as to the Vehicles' condition, quality, safety, and reliability. These statements, affirmations, and descriptions became the basis of the bargain between Florida Plaintiffs and Defendants, as Florida Plaintiffs relied on these

---

[113] For the names of the Florida Plaintiffs who do not allege a claim for Breach of Express Warranty Under Fla. Stat. §§ 672.313 and 680.21, see Exhibit E.

COMPLAINT

statements when making their decisions to purchase and/or lease the Vehicles. As such, the statements are an express warranty under Florida law pursuant to Fla. Stat. §§ 672.313 and 680.21, and the Vehicles did not conform to the affirmations of fact, promises made by Defendants, or Defendants' description of the Vehicles.

2071. Florida Plaintiffs used the Vehicles in accordance with their normal operation and did not misuse or mishandle the Vehicles in any way material to the allegations set forth herein.

2072. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable. Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Florida Plaintiffs, of the safety defect. Any time limitations regarding the warranty period were also unconscionable and inadequate to protect Florida Plaintiffs. Florida Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants. A gross disadvantage in bargaining power existed between Florida Plaintiffs and Defendants, which unreasonably favored Defendants. Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left Florida Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

2073. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that Florida Plaintiffs may seek alternative remedies. Florida Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

2074. Florida Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure. Florida Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and

COMPLAINT

reasonable notice of Florida Plaintiffs' breach of warranty claims. Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Florida Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Florida Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches. To date, Defendants failed to remedy their breaches.

2075. Alternatively, Florida Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches. Florida Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

2076. The Vehicles did not perform as promised in accordance with Defendants' express warranty; instead, the Vehicles did not meet all applicable motor vehicle safety and theft prevention standards in effect on the date of manufacture. The Vehicles are capable of being stolen in a matter of seconds without a key and do not comply with the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles do not, in fact, conform to the applicable anti-theft standards.

2077. As a direct and proximate result of Defendants' breaches, Florida Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages,

COMPLAINT

costs, and fees, including but not limited to the difference in value, increased insurance premiums that Florida Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

### 3.   Violation of Unfair and Deceptive Trade Practices Act Under Fla. Stat. § 501 et seq.[114]

2078. Florida Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

2079. Defendants and Florida Plaintiffs are "consumers" within the meaning of Fla. Stat. § 501.203(7).

2080. Defendants engaged in unlawful business practices, including "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce[,]" as prohibited under the Florida Unfair and Deceptive Trade Practices Act ("Florida UDTPA"), Fla. Stat. § 501.204(1).

2081. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Florida UDTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Theft-Prone Design, as detailed above.  Defendants used deception and unfair practices, false pretense, false promise, misrepresentation, concealment, suppression, and omission of material facts with the intent that Florida Plaintiffs rely on such concealment, suppression, or omission in connection with the sale or advertisement of their Vehicles, in violation of Fla. Stat. § 501.204(1).

2082. Under the Florida UDTPA, Defendants had an ongoing duty to Florida Plaintiffs to refrain from unfair or deceptive practices in the course of their business. Specifically, Defendants owed Florida Plaintiffs a duty to disclose all the material facts

---

[114] For the names of the Florida Plaintiffs who do not allege a claim for Violation of Unfair and Deceptive Trade Practices Act Under Fla. Stat. § 501 et seq., see Exhibit E.

COMPLAINT

concerning the Theft-Prone Design in the Vehicles.

2083. Defendants had exclusive access to and far superior knowledge about facts regarding the Theft-Prone Design, and Defendants knew these facts were not known to or reasonably discoverable by Florida Plaintiffs.

2084. Given the Theft-Prone Design's hidden and technical nature, Florida Plaintiffs lack the sophisticated expertise in vehicle components necessary to discover the Theft-Prone Design on their own.

2085. Defendants knew that the Theft-Prone Design gave rise to safety concerns for the consumers who use the Vehicles, and that the Theft-Prone Design would have been a material fact in the Florida Plaintiffs' decisions to buy or lease the Vehicles.

2086. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect.  In advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Theft-Prone Design.  Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

2087. As detailed above, the information concerning the Theft-Prone Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

2088. By misrepresenting the Vehicles as safe, reliable, and free from defects, and by failing to disclose and actively concealing the dangers and risks posed by the Theft-Prone Design, Defendants engaged in the following unfair or deceptive business practices in violation of Florida UDTPA: unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices by selling Vehicles with the Theft-Prone Design without disclosure.  Fla. Stat. § 501.204(1)

2089. Defendants intended for Florida Plaintiffs to rely on them to provide adequately designed Vehicles and to honestly and accurately reveal the safety hazards

described above.

2090. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Theft-Prone Design. Those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Florida Plaintiffs, about the true safety and reliability of the Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

2091. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Theft-Prone Design and true characteristics of the Vehicles were material to the decisions of Florida Plaintiffs to purchase or lease the Vehicles, as Defendants intended. Florida Plaintiffs were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase or lease the Vehicles.

2092. Florida Plaintiffs' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, and/or otherwise learning that the Vehicles contained the Theft-Prone Design, as alleged above. Florida Plaintiffs did not, and could not, unravel Defendants' deception on their own.

2093. Had they known the truth about the Theft-Prone Design, Florida Plaintiffs would not have purchased or leased the Vehicles or would have paid significantly less for them.

2094. Florida Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2095. Defendants' violations present a continuing risk to Florida Plaintiffs and the general public because the Vehicles remain unsafe due to the Theft-Prone Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

COMPLAINT

2096. Defendants had ample notice provided by the numerous complaints filed against them, internet videos, and news reports. Furthermore, on September 17, 2025, Plaintiffs sent Defendants written notice letters of Defendants' violations, Plaintiffs' claims, and a proposed cure to the violations. To date, Defendants failed to remedy their violations. Because Defendants failed to remedy their unlawful conduct, Florida Plaintiffs seek all damages and relief to which Florida Plaintiffs are entitled.

2097. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile. As alleged above, Defendants have long known that the Vehicles contained the Theft-Prone Design yet did nothing to remedy the Theft-Prone Design.

2098. Pursuant to Fla. Stat. § 501.211, Florida Plaintiffs seek an order (1) enjoining Defendants' unfair and/or deceptive acts, methods, or practices alleged herein, and (2) awarding damages, punitive damages, attorney's fees, costs, and/or any other just and proper relief available under the Florida UDTPA.

### 4.    Fraud by Omission, Concealment, and Misrepresentation.[115]

2099. Florida Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

2100. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards and are therefore of a particular value and quality. In reality, however, the Vehicles do not comply with such standards and are of a lesser value and quality accordingly.

2101. Defendants were aware of the Theft-Prone Design when they manufactured, marketed, and sold the Vehicles to Florida Plaintiffs. Defendants further knew that the Theft-Prone Design gave rise to serious safety risks for the consumers that would use the Vehicles and naturally give rise to higher insurance premiums and accelerated depreciation. At the same time, Defendants were aware of the Federal

---

[115] For the names of the Florida Plaintiffs who do not allege a claim for Fraud by Omission, Concealment, and Misrepresentation, see Exhibit E.

COMPLAINT

Motor Vehicle Safety Standards and of the effectiveness of engine immobilizer technology in reducing safety hazards. Defendants were also aware that noncompliance with federal and industry standards lowered the value of the Vehicles and would render the Vehicles difficult to insure.

2102. Defendants knew that the Theft-Prone Design, the safety hazards it posed, and the reduction in the Vehicles' value would have been material facts to the Florida Plaintiffs' decisions to buy or lease the Vehicles.

2103. A reasonable person would find the Vehicles' lack of industry-standard anti-theft measures and noncompliance with applicable safety standards material to their decision to purchase, lease, and maintain the Vehicles because these deficiencies impact safety, availability, the Vehicles' value, and the cost to insure the Vehicles.

2104. Defendants knowingly made affirmatively false or incomplete statements of material facts as to the Vehicles' safety, reliability, quality, value, and compliance with applicable motor vehicle safety and theft prevention standards, while they intentionally withheld, concealed, omitted, suppressed, and failed to disclose material facts about the Theft-Prone Design, including the lack of effective anti-theft measures, significant safety risks, noncompliance with federal motor vehicle safety standards, and the Vehicles' true value.

2105. Defendants volunteered incomplete information about the Vehicles they offered for sale and/or lease to consumers, including false statements as to the Vehicles' safety, compliance with applicable safety and anti-theft standards, and value while at the same time withholding the existence of the Theft-Prone Design. Defendants further knew and failed to disclose that the Theft-Prone Design and lack of standard anti-theft measures left the Vehicles at substantially lower value than the price for which they were advertised, marketed, sold, and/or leased.

2106. Alternatively, Defendants made false misrepresentations about the Theft-Prone Design with such utter disregard and recklessness that their knowledge regarding the Theft-Prone Design, its unsafe and unreliable nature, and its substantially lower

value may be inferred.

2107. Defendants intended for the Florida Plaintiffs to rely on their omissions and concealment—which Florida Plaintiffs did in the manner reasonably contemplated by Defendants when they purchased or leased the Vehicles at the prices they paid believing that their vehicles would not have a Theft-Prone Design that would affect the quality, reliability, and safety of the Vehicles.

2108. Florida Plaintiffs' reliance on Defendants' misrepresentations and concealment was reasonable and justifiable, as Florida Plaintiffs had no way of learning the facts that Defendants had concealed or failed to disclose. Florida Plaintiffs did not, and could not, unravel Defendants' deception on their own.

2109. Having been aware of the Theft-Prone Design within the Vehicles and having known that Florida Plaintiffs could not have reasonably been expected to know of the Theft-Prone Design, Defendants had a duty to disclose the Theft-Prone Design to Florida Plaintiffs in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Theft-Prone Design and the true value of the Vehicles.

2110. Instead, Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Florida Plaintiffs.

2111. If Defendants had fully and adequately disclosed the Theft-Prone Design to consumers, Florida Plaintiffs would have seen such a disclosure.

2112. Had Florida Plaintiffs known of the Theft-Prone Design within the Vehicles, they would not have purchased the Vehicles or would have paid less for them. Through their omissions and concealment with respect to the Theft-Prone Design within the Vehicles, Defendants intended to induce, and did in fact induce, Florida Plaintiffs to either purchase a Vehicle that they otherwise would not have purchased or pay more for a Vehicle than they otherwise would have paid.

2113. As a direct and proximate result of Defendants' omissions, Florida Plaintiffs overpaid for the Vehicles because Florida Plaintiffs would either have paid less for the Vehicles or would not have purchased the Vehicles at all if the Theft-Prone Design had been disclosed to them.

2114. As a direct and proximate result of Defendants' omissions, Florida Plaintiffs purchased Vehicles highly susceptible to theft and were forced to pay higher insurance premiums to account for the susceptibility that they did not knowingly accept, purchase, or lease.

2115. As a direct and proximate result of Defendants' omissions, the Florida Plaintiffs paid higher insurance premiums and are now left with Vehicles with significantly diminished values.

2116. Accordingly, Defendants are liable to Florida Plaintiffs for their damages, including but not limited to the difference in value, increased insurance premiums that Florida Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

2117. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, in reckless disregard of the Florida Plaintiffs' rights and well-being, and to enrich themselves.  Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

2118. Florida Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 5. Negligent Misrepresentation.[116]

2119. Florida Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

---

[116] For the names of the Florida Plaintiffs who do not allege a claim for Negligent Misrepresentation, see Exhibit E.

- 526 -

2120. Defendants, in the course of their business selling and promoting motor vehicles, supplied false information, including that the Vehicles were safe, reliable, and of a particular value, to guide motor vehicle buyers, including Florida Plaintiffs, in their choice of transaction.

2121. Defendants made misrepresentations of material facts concerning the safety, reliability, and value of the Vehicles that they knew or should have known were false. Specifically, Defendants misrepresented that the Vehicles had effective anti-theft equipment or design elements; misrepresented that the Vehicles were safe and reliable forms of transportation; misrepresented that the Vehicles complied with all federal and industry safety and theft prevention standards; and misrepresented the true value of the Vehicles. Defendants supplied this information in the course of their business to guide Florida Plaintiffs in their Vehicle selection and intended to induce Florida Plaintiffs to purchase one of Defendants' Vehicles.

2122. Florida Plaintiffs justifiably relied upon Defendants' representations because, as the entities responsible for designing and manufacturing the Vehicles, Defendants held themselves out to be knowledgeable about the Vehicles' components and honest in their promotion of the Vehicles. Florida Plaintiffs' reliance was further reasonable given the hidden and technical nature of the Theft-Prone Design and practical inability of Florida Plaintiffs to discover the Theft-Prone Design on their own. Because Defendants held the Vehicles out to be in line with industry standards, the representation was not unreasonable on its face and Florida Plaintiffs had no apparent reason to doubt the veracity of Defendants' representations.

2123. Defendants had a duty to disclose all relevant information regarding the Vehicles' safety, reliability, quality, and characteristics that would affect the Florida Plaintiffs' choice of purchase as consumers.

2124. Defendants failed to exercise reasonable care or competence in communicating the standards of safety, reliability, quality, and characteristics of the Vehicles to the consumers, including Florida Plaintiffs, when they failed to disclose the

COMPLAINT

lack of anti-theft prevention technology in the Vehicles.  Rather, Defendants published materials and marketed the Vehicles for years as safe, reliable, and of a quality consistent with the industry standard.

2125. Florida Plaintiffs would not have purchased, or would have purchased for a lower price, the Vehicles which Defendants negligently misrepresented as safe, of standard quality, and containing standard trade characteristics, such as anti-theft prevention technology.  Additionally, as a direct and proximate result, Florida Plaintiffs have had to pay higher insurance premiums to account for the Vehicles' high susceptibility to theft and are now left with Vehicles that have a lower value than they would have had without the defect.

2126. As a direct and proximate result of Florida Plaintiffs' reasonable reliance on Defendants' negligent misrepresentations, Florida Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that Florida Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

2127. Florida Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 6. Negligence.

2128. Florida Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

2129. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

2130. Defendants owed a duty of care to Florida Plaintiffs. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves, higher insurance premiums, and accelerated depreciation.

2131. Defendants failed to exercise reasonable care in connection with their

manufacture, distribution, sale, and/or leasing of the Vehicles.

2132. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Florida Plaintiffs.

2133. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS No. 114.

2134. As a direct and proximate result of Defendants' failure to exercise reasonable care, Florida Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that Florida Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

2135. Florida Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 7.    Unjust Enrichment.[117]

2136. Florida Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

2137. When they purchased and leased the Vehicles, Florida Plaintiffs conferred tangible and material economic benefits upon Defendants, who readily accepted and

---

[117] For the names of the Florida Plaintiffs who do not allege a claim for Unjust Enrichment, see Exhibit E.

COMPLAINT

retained these benefits.

2138. In exchange, Defendants did not confer the benefit that was promised to Plaintiffs when Defendants provided Vehicles of a lesser value and poorer quality than agreed.  Rather, Defendants kept the monetary amounts Plaintiffs paid for Vehicles of a particular value and nature that conformed with federal and industry safety standards, but Defendants did not provide Vehicles of that particular value or nature that conformed with federal and industry safety standards.

2139. Florida Plaintiffs have a reasonable expectation of compensation because they conferred an economic benefit on the Defendants with the expectation that they were receiving a different product—one of the particular design, nature, quality, and value that contained an anti-theft system and was compliant with federal safety and industry standards—in exchange.

2140. Florida Plaintiffs would not have purchased or leased their Vehicles, or would have paid less for them, had they known of the Theft-Prone Design at the time of purchase or lease.  Therefore, Defendants profited from the sale and lease of the Vehicles to the detriment and expense of Florida Plaintiffs by misrepresenting the Vehicles' true design, nature, quality, and value.

2141. Defendants appreciated these economic benefits.  These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers.  They knew of these benefits because they were aware of the Theft-Prone Design, the Vehicles' noncompliant nature and poorer quality, and the Vehicles' reduced value, yet they failed to disclose this knowledge and misled the Florida Plaintiffs regarding the design, nature, quality, and value of the Vehicles while profiting from this deception.

2142. Accordingly, Florida Plaintiffs have been impoverished due to Defendants' enrichment without justification.

2143. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, in part because they were procured as a result of their wrongful

COMPLAINT

conduct alleged above.

2144. Florida Plaintiffs are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Florida Plaintiffs to the position they occupied prior to dealing with these Defendants, with such amounts to be determined at trial.

2145. Florida Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages, because if Florida Plaintiffs' claims for damages are dismissed or judgment is entered in favor of Defendants, Florida Plaintiffs will have no adequate legal remedy.

**J.    Georgia State Law Claims for Relief**

**(Alleged by Georgia Plaintiffs Against All Defendants)**

**1.    Breach of Implied Warranty of Merchantability Under Ga. Code Ann. §§ 11-2-314 and 11-2A-212.**

2146. Georgia Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

2147. A warranty that the Vehicles were in merchantable condition is implied by law pursuant to Ga. Code Ann. §§ 11-2-314 and 11-2A-212.

2148. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Ga. Code Ann. §§ 11-2-104(a) and 11-2A-103(3), "sellers" of motor vehicles under § 11-2-103(1)(d) and, with respect to leases, "lessors" of motor vehicles under § 11-2A-103(1)(p).

2149. At all relevant times, Georgia Plaintiffs who purchased Vehicles in Georgia were and are "buyers" within the meaning of Ga. Code Ann. § 11-2-103(1)(a).

2150. At all relevant times, Georgia Plaintiffs who leased Vehicles in Georgia were and are "lessees" within the meaning of Ga. Code Ann. § 11-2A-103(1)(n).

2151. At all relevant times, Georgia Plaintiffs' Vehicles (whether purchased or leased) were and are "goods" within the meaning of Ga. Code Ann. §§ 11-2-105(1) and 11-2A-103(1)(h).

2152. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased.  Defendants provided Georgia Plaintiffs with an implied warranty that the purchased and leased Vehicles were in merchantable condition and fit for the ordinary purposes for which they were sold or leased.  This implied warranty included that the Vehicles (a) were manufactured, supplied, distributed, and sold by Defendants, (b) were safe and reliable for transportation, (c) complied with all federal, state, and industry motor vehicle regulations and safety standards, including FMVSS No. 114, (d) were not at an abnormally high risk of theft, and (e) were of a particular value and quality that complied with federal and industry safety standards.

2153. The Vehicles did not comply with the implied warranty of merchantability because the Vehicles were defective and not in merchantable condition at the time of sale and/or lease, were not fit for their ordinary purpose of providing safe and reliable transportation at the time of sale or lease, and would not pass without objection in the trade as they deviated significantly from the industry standard and can be stolen in mere minutes without a key.  Defendants knew at the time of manufacture that the Vehicles contained the Theft-Prone Design and lacked any anti-theft equipment or design elements that effectively prevent theft or comply with FMVSS No. 114.  Therefore, the Defendants knew at the time of manufacture that the Vehicles are at an abnormally high risk of theft and are unsafe and an unreliable form of transportation.  The Theft-Prone Design renders the Vehicles highly vulnerable to theft and a prime target for thieves as they can be easily stolen in seconds.  Defendants knew at the time of manufacture that because their Vehicles did not include any anti-theft measures that satisfied FMVSS No. 114, making their Vehicles more prone to theft and failing to comply with federal regulations, the Vehicles would require larger insurance premiums and would depreciate at a more rapid rate than a comparable vehicle with anti-theft measure that satisfied FMVSS No. 114. Consequently, at the time of sale and/or lease, the Vehicles were not fit for their ordinary purpose of providing safe and reliable transportation.

2154. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable. Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Georgia Plaintiffs, of the safety defect. Any time limitations regarding the warranty period were also unconscionable and inadequate to protect Georgia Plaintiffs. Georgia Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants. A gross disadvantage in bargaining power existed between Georgia Plaintiffs and Defendants, which unreasonably favored Defendants. Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left Georgia Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

2155. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that Georgia Plaintiffs may seek alternative remedies. Georgia Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

2156. Georgia Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure. Georgia Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Georgia Plaintiffs' breach of warranty claims. Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Georgia Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news

reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Georgia Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches. To date, Defendants failed to remedy their breaches.

2157. Alternatively, Georgia Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches. Georgia Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

2158. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Georgia Plaintiffs' Vehicles were and are defective, the Theft-Prone Design in the Vehicles has not been remedied, and Georgia Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that Georgia Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

> **2.** **Breach of Express Warranty Under Ga. Code Ann. § 11-2-313, et seq.[118]**

2159. Georgia Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

2160. During the relevant time periods, Defendants manufactured the Vehicles and Georgia Plaintiffs purchased and/or leased the Vehicles from Defendants.

---

[118] For the names of the Georgia Plaintiffs who do not allege a claim for Breach of Express Warranty Under Ga. Code Ann. § 11-2-313, et seq., see Exhibit E.

COMPLAINT

2161. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Ga. Code Ann. §§ 11-2-104(a) and 11-2A-103(3), "sellers" of motor vehicles under § 11-2-103(1)(d) and, with respect to leases, "lessors" of motor vehicles under § 11-2A-103(1)(p).

2162. At all relevant times, Georgia Plaintiffs who purchased Vehicles in Georgia were and are "buyers" within the meaning of Ga. Code Ann. § 11-2-103(1)(a).

2163. At all relevant times, Georgia Plaintiffs who leased Vehicles in Georgia were and are "lessees" within the meaning of Ga. Code Ann. § 11-2A-103(1)(n).

2164. At all relevant times, Georgia Plaintiffs' Vehicles (whether purchased or leased) were and are "goods" within the meaning of Ga. Code Ann. §§ 11-2-105(1) and 11-2A-103(1)(h).

2165. By affixing a VIN plate to each Vehicle at the time of manufacture, Defendants expressly warranted each Vehicles' conformance to "all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture shown." These statements constitute a description, affirmation of fact, and promise made to Georgia Plaintiffs as to the Vehicles' condition, quality, safety, and reliability. These statements, affirmations, and descriptions became the basis of the bargain between Georgia Plaintiffs and Defendants, as Georgia Plaintiffs relied on these statements when making their decisions to purchase and/or lease the Vehicles. As such, the statements are an express warranty under Georgia law pursuant to Ga. Code Ann. § 11-2-313, and the Vehicles did not conform to the affirmations of fact, promises made by Defendants, or Defendants' description of the Vehicles.

2166. Georgia Plaintiffs used the Vehicles in accordance with their normal operation and did not misuse or mishandle the Vehicles in any way material to the allegations set forth herein.

2167. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable. Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without

COMPLAINT

informing consumers, including Georgia Plaintiffs, of the safety defect. Any time limitations regarding the warranty period were also unconscionable and inadequate to protect Georgia Plaintiffs. Georgia Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants. A gross disadvantage in bargaining power existed between Georgia Plaintiffs and Defendants, which unreasonably favored Defendants. Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left Georgia Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

2168. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that Georgia Plaintiffs may seek alternative remedies. Georgia Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

2169. Georgia Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure. Georgia Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Georgia Plaintiffs' breach of warranty claims. Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Georgia Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which

Plaintiffs here opted out of. Furthermore, on September 17, 2025, Georgia Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches.  To date, Defendants failed to remedy their breaches.

2170. Alternatively, Georgia Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches.  Georgia Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

2171. The Vehicles did not perform as promised in accordance with Defendants' express warranty; instead, the Vehicles did not meet all applicable motor vehicle safety and theft prevention standards in effect on the date of manufacture.  The Vehicles are capable of being stolen in a matter of seconds without a key and do not comply with the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles do not, in fact, conform to the applicable anti-theft standards.

2172. As a direct and proximate result of Defendants' breaches, Georgia Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that Georgia Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

### 3. Violation of Georgia Uniform Deceptive Trade Practices Act Under Ga. Code Ann. § 10-1-390, et seq.[119]

2173. Georgia Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

---

[119] For the names of the Georgia Plaintiffs who do not allege a claim for Violation of Georgia Uniform Deceptive Trade Practices Act Under Ga. Code Ann. § 10-1-390, et seq., see Exhibit E.

COMPLAINT

2174. Defendants and Georgia Plaintiffs are "persons" within the meaning of Ga. Code Ann. § 10-1-371(5).

2175. Defendants engaged in unlawful and deceptive trade practices, including misrepresenting the "standard, quality, or grade" of goods and services and engaging "in any other conduct which similarly creates a likelihood of confusion or of misunderstanding[,]" as prohibited under the Georgia Uniform Deceptive Trade Practices Act ("Georgia UDTPA"), Ga. Code Ann. § 1§ 10-1-372(a).

2176. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Georgia UDTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Theft-Prone Design, as detailed above.  Defendants used deception and unfair practices, false pretense, false promise, misrepresentation, concealment, suppression, and omission of material facts with the intent that Georgia Plaintiffs rely on such concealment, suppression, or omission in connection with the sale or advertisement of their Vehicles, in violation of Ga. Code Ann. § 10-1-372(a).

2177. Under the Georgia UDTPA, Defendants had an ongoing duty to Georgia Plaintiffs to refrain from unfair or deceptive practices in the course of their business. Specifically, Defendants owed Georgia Plaintiffs a duty to disclose all the material facts concerning the Theft-Prone Design in the Vehicles.

2178. Defendants had exclusive access to and far superior knowledge about facts regarding the Theft-Prone Design, and Defendants knew these facts were not known to or reasonably discoverable by Georgia Plaintiffs.

2179. Given the Theft-Prone Design's hidden and technical nature, Georgia Plaintiffs lack the sophisticated expertise in vehicle components necessary to discover the Theft-Prone Design on their own.

2180. Defendants knew that the Theft-Prone Design gave rise to safety concerns for the consumers who use the Vehicles, and that the Theft-Prone Design would have

been a material fact in the Georgia Plaintiffs' decisions to buy or lease the Vehicles.

2181. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect.  In advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Theft-Prone Design.  Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

2182. As detailed above, the information concerning the Theft-Prone Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

2183. By misrepresenting the Vehicles as safe, reliable, and free from defects, and by failing to disclose and actively concealing the dangers and risks posed by the Theft-Prone Design, Defendants engaged in the following unfair or deceptive business practices in violation of Georgia UDTPA: (a) causing likelihood of confusion or of misunderstanding as to the approval or certification of the Vehicles; (b) representing that the Vehicles have approval, characteristics, uses, and benefits which they do not have; (c) representing that the Vehicles are of a particular standard, quality, and grade when they are not; (d) advertising the Vehicles with the intent not to sell or lease them as advertised; and (e) engaging in conduct which creates a likelihood of confusion or of misleading persons regarding the Vehicles.  Ga. Code Ann. § 10-1-372(2), (5), (7), (9), (12).

2184. Defendants intended for Georgia Plaintiffs to rely on them to provide adequately designed Vehicles and to honestly and accurately reveal the safety hazards described above.

2185. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not

affected by the Theft-Prone Design. Those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Georgia Plaintiffs, about the true safety and reliability of the Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

2186. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Theft-Prone Design and true characteristics of the Vehicles were material to the decisions of Georgia Plaintiffs to purchase or lease the Vehicles, as Defendants intended. Georgia Plaintiffs were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase or lease the Vehicles.

2187. Georgia Plaintiffs' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, and/or otherwise learning that the Vehicles contained the Theft-Prone Design, as alleged above. Georgia Plaintiffs did not, and could not, unravel Defendants' deception on their own.

2188. Had they known the truth about the Theft-Prone Design, Georgia Plaintiffs would not have purchased or leased the Vehicles or would have paid significantly less for them.

2189. Georgia Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2190. Defendants' violations present a continuing risk to Georgia Plaintiffs and the general public because the Vehicles remain unsafe due to the Theft-Prone Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

2191. Defendants had ample notice provided by the numerous complaints filed against them, internet videos, and news reports. Furthermore, on September 17, 2025, Georgia Plaintiffs sent Defendants written notice letters of Defendants' violations, Plaintiffs' claims, and a proposed cure to the violations. To date, Defendants failed to

COMPLAINT

remedy their violations. Because Defendants failed to remedy their unlawful conduct, Georgia Plaintiffs seek all damages and relief to which Georgia Plaintiffs are entitled.

2192. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile. As alleged above, Defendants have long known that the Vehicles contained the Theft-Prone Design yet did nothing to remedy the Theft-Prone Design.

2193. Pursuant to Ga. Code Ann. § 10-1-373, Georgia Plaintiffs seek an order (1) enjoining Defendants' unfair and/or deceptive acts, methods, or practices alleged herein, and (2) awarding damages, punitive damages, attorney's fees, costs, and/or any other just and proper relief available under the Georgia UDTPA.

### 4. Violation of Georgia Fair Business Practices Act Under Ga. Code Ann. § 10-1-390, et seq.[120]

2194. Georgia Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

2195. Defendants and Georgia Plaintiffs are "persons" within the meaning of Ga. Code Ann. § 10-1-371(5).

2196. Defendants engaged in unlawful and deceptive trade practices, including "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce[,]" as prohibited under the Georgia Fair Business Practices Act ("Georgia FBPA"), Ga. Code Ann. § 10-1-393(a).

2197. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Georgia FBPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Theft-Prone Design, as detailed above. Defendants used deception and unfair practices, false

---

[120] For the names of the Georgia Plaintiffs who do not allege a claim for Violation of Georgia Fair Business Practices Act Under Ga. Code Ann. § 10-1-390, et seq., see Exhibit E.

pretense, false promise, misrepresentation, concealment, suppression, and omission of material facts with the intent that Georgia Plaintiffs rely on such concealment, suppression, or omission in connection with the sale or advertisement of their Vehicles, in violation of Ga. Code Ann. §§ 10-1-393(a) and (b).

2198. Under the Georgia FBPA, Defendants had an ongoing duty to Georgia Plaintiffs to refrain from unfair or deceptive practices in the course of their business. Specifically, Defendants owed Georgia Plaintiffs a duty to disclose all the material facts concerning the Theft-Prone Design in the Vehicles.

2199. Defendants had exclusive access to and far superior knowledge about facts regarding the Theft-Prone Design, and Defendants knew these facts were not known to or reasonably discoverable by Georgia Plaintiffs.

2200. Given the Theft-Prone Design's hidden and technical nature, Georgia Plaintiffs lack the sophisticated expertise in vehicle components necessary to discover the Theft-Prone Design on their own.

2201. Defendants knew that the Theft-Prone Design gave rise to safety concerns for the consumers who use the Vehicles, and that the Theft-Prone Design would have been a material fact in the Georgia Plaintiffs' decisions to buy or lease the Vehicles.

2202. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Theft-Prone Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

2203. As detailed above, the information concerning the Theft-Prone Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

2204. By misrepresenting the Vehicles as safe, reliable, and free from defects,

COMPLAINT

and by failing to disclose and actively concealing the dangers and risks posed by the Theft-Prone Design, Defendants engaged in the following unfair or deceptive business practices in violation of Georgia FBPA: (a) causing likelihood of confusion or of misunderstanding as to the approval or certification of the Vehicles; (b) representing that the Vehicles have approval, characteristics, uses, and benefits which they do not have; (c) representing that the Vehicles are of a particular standard, quality, and grade when they are not; and (d) advertising the Vehicles with the intent not to sell or lease them as advertised. Ga. Code Ann. § 10-1-393(b).

2205. Defendants intended for Georgia Plaintiffs to rely on them to provide adequately designed Vehicles and to honestly and accurately reveal the safety hazards described above.

2206. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Theft-Prone Design. Those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Georgia Plaintiffs, about the true safety and reliability of the Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

2207. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Theft-Prone Design and true characteristics of the Vehicles were material to the decisions of Georgia Plaintiffs to purchase or lease the Vehicles, as Defendants intended. Georgia Plaintiffs were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase or lease the Vehicles.

2208. Georgia Plaintiffs' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, and/or otherwise learning that the Vehicles contained the Theft-Prone Design, as alleged above. Georgia

Plaintiffs did not, and could not, unravel Defendants' deception on their own.

2209. Had they known the truth about the Theft-Prone Design, Georgia Plaintiffs would not have purchased or leased the Vehicles or would have paid significantly less for them.

2210. Georgia Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2211. Defendants' violations present a continuing risk to Georgia Plaintiffs and the general public because the Vehicles remain unsafe due to the Theft-Prone Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

2212. Defendants had ample notice provided by the numerous complaints filed against them, internet videos, and news reports. Furthermore, on September 17, 2025, Georgia Plaintiffs sent Defendants written notice letters of Defendants' violations, Plaintiffs' claims, and a proposed cure to the violations. To date, Defendants failed to remedy their violations. Because Defendants failed to remedy their unlawful conduct, Georgia Plaintiffs seek all damages and relief to which Georgia Plaintiffs are entitled.

2213. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile. As alleged above, Defendants have long known that the Vehicles contained the Theft-Prone Design yet did nothing to remedy the Theft-Prone Design.

2214. Pursuant to Ga. Code Ann. § 10-1-399, Georgia Plaintiffs seek an order (1) enjoining Defendants' unfair and/or deceptive acts, methods, or practices alleged herein, and (2) awarding damages, punitive damages, attorney's fees, costs, and/or any other just and proper relief available under the Georgia FBPA.

### 5. Fraud by Omission and Concealment.[121]

---

[121] For the names of the Georgia Plaintiffs who do not allege a claim for Fraud by Omission and Concealment, see Exhibit E.

- 544 -

COMPLAINT

2215. Georgia Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

2216. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards and are therefore of a particular value and quality. In reality, however, the Vehicles do not comply with such standards and are of a lesser value and quality accordingly.

2217. Defendants were aware of the Theft-Prone Design when they manufactured, marketed, and sold the Vehicles to Georgia Plaintiffs. Defendants further knew that the Theft-Prone Design gave rise to serious safety risks for the consumers that would use the Vehicles and naturally give rise to higher insurance premiums and accelerated depreciation. At the same time, Defendants were aware of the Federal Motor Vehicle Safety Standards and of the effectiveness of engine immobilizer technology in reducing safety hazards. Defendants were also aware that noncompliance with federal and industry standards lowered the value of the Vehicles and would render the Vehicles difficult to insure.

2218. Defendants knew that the Theft-Prone Design, the safety hazards it posed, and the reduction in the Vehicles' value would have been material facts to the Georgia Plaintiffs' decisions to buy or lease the Vehicles.

2219. A reasonable person would find the Vehicles' lack of industry-standard anti-theft measures and noncompliance with applicable safety standards material to their decision to purchase, lease, and maintain the Vehicles because these deficiencies impact safety, availability, the Vehicles' value, and the cost to insure the Vehicles.

2220. Defendants knowingly made affirmatively false or incomplete statements of material facts as to the Vehicles' safety, reliability, quality, value, and compliance with applicable motor vehicle safety and theft prevention standards, while they intentionally withheld, concealed, omitted, suppressed, and failed to disclose material facts about the Theft-Prone Design, including the lack of effective anti-theft measures, significant safety risks, noncompliance with federal motor vehicle safety standards, and

the Vehicles' true value.

2221. Defendants volunteered incomplete information about the Vehicles they offered for sale and/or lease to consumers, including false statements as to the Vehicles' safety, compliance with applicable safety and anti-theft standards, and value while at the same time withholding the existence of the Theft-Prone Design. Defendants further knew and failed to disclose that the Theft-Prone Design and lack of standard anti-theft measures left the Vehicles at substantially lower value than the price for which they were advertised, marketed, sold, and/or leased.

2222. Alternatively, Defendants made false misrepresentations about the Theft-Prone Design with such utter disregard and recklessness that their knowledge regarding the Theft-Prone Design, its unsafe and unreliable nature, and its substantially lower value may be inferred.

2223. Defendants intended for the Georgia Plaintiffs to rely on their omissions and concealment—which Georgia Plaintiffs did in the manner reasonably contemplated by Defendants when they purchased or leased the Vehicles at the prices they paid believing that their vehicles would not have a Theft-Prone Design that would affect the quality, reliability, and safety of the Vehicles.

2224. Georgia Plaintiffs' reliance on Defendants' misrepresentations and concealment was reasonable and justifiable, as Georgia Plaintiffs had no way of learning the facts that Defendants had concealed or failed to disclose. Georgia Plaintiffs did not, and could not, unravel Defendants' deception on their own.

2225. Having been aware of the Theft-Prone Design within the Vehicles and having known that Georgia Plaintiffs could not have reasonably been expected to know of the Theft-Prone Design, Defendants had a duty to disclose the Theft-Prone Design to Georgia Plaintiffs in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Theft-Prone Design and the true value of the Vehicles.

2226. Instead, Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and

to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Georgia Plaintiffs.

2227. If Defendants had fully and adequately disclosed the Theft-Prone Design to consumers, Georgia Plaintiffs would have seen such a disclosure.

2228. Had Georgia Plaintiffs known of the Theft-Prone Design within the Vehicles, they would not have purchased the Vehicles or would have paid less for them. Through their omissions and concealment with respect to the Theft-Prone Design within the Vehicles, Defendants intended to induce, and did in fact induce, Georgia Plaintiffs to either purchase a Vehicle that they otherwise would not have purchased or pay more for a Vehicle than they otherwise would have paid.

2229. As a direct and proximate result of Defendants' omissions, Georgia Plaintiffs overpaid for the Vehicles because Georgia Plaintiffs would either have paid less for the Vehicles or would not have purchased the Vehicles at all if the Theft-Prone Design had been disclosed to them.

2230. As a direct and proximate result of Defendants' omissions, Georgia Plaintiffs purchased Vehicles highly susceptible to theft and were forced to pay higher insurance premiums to account for the susceptibility that they did not knowingly accept, purchase, or lease.

2231. As a direct and proximate result of Defendants' omissions, the Georgia Plaintiffs paid higher insurance premiums and are now left with Vehicles with significantly diminished values.

2232. Accordingly, Defendants are liable to Georgia Plaintiffs for their damages, including but not limited to the difference in value, increased insurance premiums that Georgia Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

2233. Defendants' acts were done maliciously, oppressively, deliberately, with

intent to defraud, in reckless disregard of the Georgia Plaintiffs' rights and well-being, and to enrich themselves.  Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

2234. Georgia Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 6.      Negligent Misrepresentation.[122]

2235. Georgia Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

2236. Defendants, in the course of their business selling and promoting motor vehicles, supplied false information, including that the Vehicles were safe, reliable, and of a particular value, to guide motor vehicle buyers, including Georgia Plaintiffs, in their choice of transaction.

2237. Defendants made misrepresentations of material facts concerning the safety, reliability, and value of the Vehicles that they knew or should have known were false.  Specifically, Defendants misrepresented that the Vehicles had effective anti-theft equipment or design elements; misrepresented that the Vehicles were safe and reliable forms of transportation; misrepresented that the Vehicles complied with all federal and industry safety and theft prevention standards; and misrepresented the true value of the Vehicles.  Defendants supplied this information in the course of their business to guide Georgia Plaintiffs in their Vehicle selection and intended to induce Georgia Plaintiffs to purchase one of Defendants' Vehicles.

2238. Georgia Plaintiffs justifiably relied upon Defendants' representations because, as the entities responsible for designing and manufacturing the Vehicles, Defendants held themselves out to be knowledgeable about the Vehicles' components

---

[122] For the names of the Georgia Plaintiffs who do not allege a claim for Negligent Misrepresentation, see Exhibit E.

COMPLAINT

and honest in their promotion of the Vehicles. Georgia Plaintiffs' reliance was further reasonable given the hidden and technical nature of the Theft-Prone Design and practical inability of Georgia Plaintiffs to discover the Theft-Prone Design on their own. Because Defendants held the Vehicles out to be in line with industry standards, the representation was not unreasonable on its face and Georgia Plaintiffs had no apparent reason to doubt the veracity of Defendants' representations.

2239. Defendants had a duty to disclose all relevant information regarding the Vehicles' safety, reliability, quality, and characteristics that would affect the Georgia Plaintiffs' choice of purchase as consumers.

2240. Defendants failed to exercise reasonable care or competence in communicating the standards of safety, reliability, quality, and characteristics of the Vehicles to the consumers, including Georgia Plaintiffs, when they failed to disclose the lack of anti-theft prevention technology in the Vehicles. Rather, Defendants published materials and marketed the Vehicles for years as safe, reliable, and of a quality consistent with the industry standard.

2241. Georgia Plaintiffs would not have purchased, or would have purchased for a lower price, the Vehicles which Defendants negligently misrepresented as safe, of standard quality, and containing standard trade characteristics, such as anti-theft prevention technology. Additionally, as a direct and proximate result, Georgia Plaintiffs have had to pay higher insurance premiums to account for the Vehicles' high susceptibility to theft and are now left with Vehicles that have a lower value than they would have had without the defect.

2242. As a direct and proximate result of Georgia Plaintiffs' reasonable reliance on Defendants' negligent misrepresentations, Georgia Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that Georgia Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

COMPLAINT

2243. Georgia Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 7. Negligence.

2244. Georgia Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

2245. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

2246. Defendants owed a duty of care to Georgia Plaintiffs. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves, higher insurance premiums, and accelerated depreciation.

2247. Defendants failed to exercise reasonable care in connection with their manufacture, distribution, sale, and/or leasing of the Vehicles.

2248. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Georgia Plaintiffs.

2249. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS No. 114.

2250. As a direct and proximate result of Defendants' failure to exercise reasonable care, Georgia Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in

value, increased insurance premiums that Georgia Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

2251. Georgia Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 8.    Unjust Enrichment.[123]

2252. Georgia Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

2253. When they purchased and leased the Vehicles, Georgia Plaintiffs conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

2254. In exchange, Defendants did not confer the benefit that was promised to Plaintiffs when Defendants provided Vehicles of a lesser value and poorer quality than agreed.  Rather, Defendants kept the monetary amounts Plaintiffs paid for Vehicles of a particular value and nature that conformed with federal and industry safety standards, but Defendants did not provide Vehicles of that particular value or nature that conformed with federal and industry safety standards.

2255. Georgia Plaintiffs have a reasonable expectation of compensation because they conferred an economic benefit on the Defendants with the expectation that they were receiving a different product—one of the particular design, nature, quality, and value that contained an anti-theft system and was compliant with federal safety and industry standards—in exchange.

2256. Georgia Plaintiffs would not have purchased or leased their Vehicles, or would have paid less for them, had they known of the Theft-Prone Design at the time of purchase or lease.  Therefore, Defendants profited from the sale and lease of the

---

[123] For the names of the Georgia Plaintiffs who do not allege a claim for Unjust Enrichment, see Exhibit E.

COMPLAINT

Vehicles to the detriment and expense of Georgia Plaintiffs by misrepresenting the Vehicles' true design, nature, quality, and value.

2257. Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft-Prone Design, the Vehicles' noncompliant nature and poorer quality, and the Vehicles' reduced value, yet they failed to disclose this knowledge and misled the Georgia Plaintiffs regarding the design, nature, quality, and value of the Vehicles while profiting from this deception.

2258. Accordingly, Georgia Plaintiffs have been impoverished due to Defendants' enrichment without justification.

2259. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, in part because they were procured as a result of their wrongful conduct alleged above.

2260. Georgia Plaintiffs are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Georgia Plaintiffs to the position they occupied prior to dealing with these Defendants, with such amounts to be determined at trial.

2261. Georgia Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages, because if Georgia Plaintiffs' claims for damages are dismissed or judgment is entered in favor of Defendants, Georgia Plaintiffs will have no adequate legal remedy.

**K.     Hawaii State Law Claims for Relief**

**(Alleged by Hawaii Plaintiffs Against All Defendants)**

**1.      Breach of Implied Warranty of Merchantability Under Haw. Rev. Stat. §§ 490:2-314 and 490:2A-212.**

2262. Hawaii Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

COMPLAINT

2263. A warranty that the Vehicles were in merchantable condition is implied by law pursuant to Haw. Rev. Stat. §§ 490:2-314 and 490:2A-212 and 213.

2264. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Haw. Rev. Stat. §§ 490:2-104(1) and 490:2A-103(b), "sellers" of motor vehicles under § 490:2-103(1)(d) and, with respect to leases, "lessors" of motor vehicles under § 490:2A-103(a)(16).

2265. At all relevant times, Hawaii Plaintiffs who purchased Vehicles in Hawaii were and are "buyers" within the meaning of Haw. Rev. Stat. § 490:9-320.

2266. At all relevant times, Hawaii Plaintiffs who leased Vehicles in Hawaii were and are "lessees" within the meaning of Haw. Rev. Stat. § 490:2A-103.

2267. At all relevant times, Hawaii Plaintiffs' Vehicles (whether purchased or leased) were and are "goods" within the meaning of Haw. Rev. Stat. §§ 490:2-105(1) and 490:2A-103(a)(8).

2268. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Hawaii Plaintiffs with an implied warranty that the purchased and leased Vehicles were in merchantable condition and fit for the ordinary purposes for which they were sold or leased. This implied warranty included that the Vehicles (a) were manufactured, supplied, distributed, and sold by Defendants, (b) were safe and reliable for transportation, (c) complied with all federal, state, and industry motor vehicle regulations and safety standards, including FMVSS No. 114, (d) were not at an abnormally high risk of theft, and (e) were of a particular value and quality that complied with federal and industry safety standards.

2269. The Vehicles did not comply with the implied warranty of merchantability because the Vehicles were defective and not in merchantable condition at the time of sale and/or lease, were not fit for their ordinary purpose of providing safe and reliable transportation at the time of sale or lease, and would not pass without objection in the trade as they deviated significantly from the industry standard and can be stolen in mere

minutes without a key. Defendants knew at the time of manufacture that the Vehicles contained the Theft-Prone Design and lacked any anti-theft equipment or design elements that effectively prevent theft or comply with FMVSS No. 114. Therefore, the Defendants knew at the time of manufacture that the Vehicles are at an abnormally high risk of theft and are unsafe and an unreliable form of transportation. The Theft-Prone Design renders the Vehicles highly vulnerable to theft and a prime target for thieves as they can be easily stolen in seconds. Defendants knew at the time of manufacture that because their Vehicles did not include any anti-theft measures that satisfied FMVSS No. 114, making their Vehicles more prone to theft and failing to comply with federal regulations, the Vehicles would require larger insurance premiums and would depreciate at a more rapid rate than a comparable vehicle with anti-theft measure that satisfied FMVSS No. 114. Consequently, at the time of sale and/or lease, the Vehicles were not fit for their ordinary purpose of providing safe and reliable transportation.

2270. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable. Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Hawaii Plaintiffs, of the safety defect. Any time limitations regarding the warranty period were also unconscionable and inadequate to protect Hawaii Plaintiffs. Hawaii Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants. A gross disadvantage in bargaining power existed between Hawaii Plaintiffs and Defendants, which unreasonably favored Defendants. Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left Hawaii Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

2271. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that Hawaii Plaintiffs may seek alternative remedies. Hawaii Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient

anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

2272. Hawaii Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure.  Hawaii Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Hawaii Plaintiffs' breach of warranty claims.  Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Hawaii Plaintiffs' claims.  Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles.  Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count.  Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Hawaii Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches.  To date, Defendants failed to remedy their breaches.

2273. Alternatively, Hawaii Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches.  Hawaii Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

2274. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Hawaii Plaintiffs' Vehicles were and are defective, the

COMPLAINT

Theft-Prone Design in the Vehicles has not been remedied, and Hawaii Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that Hawaii Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

**2. Breach of Express Warranty Under Haw. Rev. Stat. §§ 409:2-313 and 409:2A-210.**

2275. Hawaii Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

2276. During the relevant time periods, Defendants manufactured the Vehicles and Hawaii Plaintiffs purchased and/or leased the Vehicles from Defendants.

2277. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Haw. Rev. Stat. §§ 490:2-104(1) and 490:2A-103(b), "sellers" of motor vehicles under § 490:2-103(1)(d) and, with respect to leases, "lessors" of motor vehicles under § 490:2A-103(a)(16).

2278. At all relevant times, Hawaii Plaintiffs who purchased Vehicles in Hawaii were and are "buyers" within the meaning of Haw. Rev. Stat. § 490:9-320.

2279. At all relevant times, Hawaii Plaintiffs who leased Vehicles in Hawaii were and are "lessees" within the meaning of Haw. Rev. Stat. § 490:2A-103.

2280. At all relevant times, Hawaii Plaintiffs' Vehicles (whether purchased or leased) were and are "goods" within the meaning of Haw. Rev. Stat. §§ 490:2-105(1) and 490:2A-103(a)(8).

2281. By affixing a VIN plate to each Vehicle at the time of manufacture, Defendants expressly warranted each Vehicles' conformance to "all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture shown." These statements constitute a description, affirmation of fact, and promise made to Hawaii Plaintiffs as to the Vehicles' condition, quality, safety, and reliability. These statements, affirmations, and descriptions became the basis of the

bargain between Hawaii Plaintiffs and Defendants, as Hawaii Plaintiffs relied on these statements when making their decisions to purchase and/or lease the Vehicles. As such, the statements are an express warranty under Hawaii law pursuant to Haw. Rev. Stat. §§ 409:2-313 and 409:2A-210, and the Vehicles did not conform to the affirmations of fact, promises made by Defendants, or Defendants' description of the Vehicles.

2282. Hawaii Plaintiffs used the Vehicles in accordance with their normal operation and did not misuse or mishandle the Vehicles in any way material to the allegations set forth herein.

2283. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable. Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Hawaii Plaintiffs, of the safety defect. Any time limitations regarding the warranty period were also unconscionable and inadequate to protect Hawaii Plaintiffs. Hawaii Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants. A gross disadvantage in bargaining power existed between Hawaii Plaintiffs and Defendants, which unreasonably favored Defendants. Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left Hawaii Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

2284. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that Hawaii Plaintiffs may seek alternative remedies. Hawaii Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

2285. Hawaii Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure. Hawaii Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the

COMPLAINT

Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Hawaii Plaintiffs' breach of warranty claims. Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Hawaii Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Hawaii Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches. To date, Defendants failed to remedy their breaches.

2286. Alternatively, Hawaii Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches. Hawaii Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

2287. The Vehicles did not perform as promised in accordance with Defendants' express warranty; instead, the Vehicles did not meet all applicable motor vehicle safety and theft prevention standards in effect on the date of manufacture. The Vehicles are capable of being stolen in a matter of seconds without a key and do not comply with the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles do not, in fact, conform to the applicable anti-theft standards.

2288. As a direct and proximate result of Defendants' breaches, Hawaii Plaintiffs

have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that Hawaii Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

### 3. Violation of Hawaii Unfair and Deceptive Acts and Practices Act Under Haw. Rev. Stat. § 480, et seq.

2289. Hawaii Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

2290. Hawaii Plaintiffs are "consumers" within the meaning of Haw. Rev. Stat. § 480-1.

2291. The Vehicles are "commodities" within the meaning of Haw. Rev. Stat. § 480-1.

2292. Defendants are engaged in trade or commerce within the meaning of Haw. Rev. Stat. § 480-1.

2293. Defendants engaged in unlawful and deceptive trade practices, including "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce[,]" as prohibited under the Hawaii Uniform Deceptive Trade Practices Act ("Hawaii UDTPA"), Haw. Rev. Stat. § 480-2(a).

2294. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Hawaii UDTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Theft-Prone Design, as detailed above. Defendants used deception and unfair practices, false pretense, false promise, misrepresentation, concealment, suppression, and omission of material facts with the intent that Hawaii Plaintiffs rely on such concealment, suppression, or omission in connection with the sale or advertisement of their Vehicles, in violation of Haw. Rev. Stat. § 480-2(a).

2295. Under the Hawaii UDTPA, Defendants had an ongoing duty to Hawaii

Plaintiffs to refrain from unfair or deceptive practices in the course of their business. Specifically, Defendants owed Hawaii Plaintiffs a duty to disclose all the material facts concerning the Theft-Prone Design in the Vehicles.

2296. Defendants had exclusive access to and far superior knowledge about facts regarding the Theft-Prone Design, and Defendants knew these facts were not known to or reasonably discoverable by Hawaii Plaintiffs.

2297. Given the Theft-Prone Design's hidden and technical nature, Hawaii Plaintiffs lack the sophisticated expertise in vehicle components necessary to discover the Theft-Prone Design on their own.

2298. Defendants knew that the Theft-Prone Design gave rise to safety concerns for the consumers who use the Vehicles, and that the Theft-Prone Design would have been a material fact in the Hawaii Plaintiffs' decisions to buy or lease the Vehicles.

2299. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Theft-Prone Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

2300. As detailed above, the information concerning the Theft-Prone Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

2301. By misrepresenting the Vehicles as safe, reliable, and free from defects, and by failing to disclose and actively concealing the dangers and risks posed by the Theft-Prone Design, Defendants engaged in the following unfair or deceptive business practices in violation of Hawaii UDTPA: (a) causing likelihood of confusion or of misunderstanding as to the approval or certification of the Vehicles; (b) representing that the Vehicles have approval, characteristics, uses, and benefits which they do not

have; (c) representing that the Vehicles are of a particular standard, quality, and grade when they are not; (d) advertising the Vehicles with the intent not to sell or lease them as advertised; and (e) engaging in conduct which creates a likelihood of confusion or of misleading persons regarding the Vehicles. Haw. Rev. Stat. § 480-2(a).

2302. Defendants intended for Hawaii Plaintiffs to rely on them to provide adequately designed Vehicles and to honestly and accurately reveal the safety hazards described above.

2303. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Theft-Prone Design. Those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Hawaii Plaintiffs, about the true safety and reliability of the Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

2304. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Theft-Prone Design and true characteristics of the Vehicles were material to the decisions of Hawaii Plaintiffs to purchase or lease the Vehicles, as Defendants intended. Hawaii Plaintiffs were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase or lease the Vehicles.

2305. Hawaii Plaintiffs' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, and/or otherwise learning that the Vehicles contained the Theft-Prone Design, as alleged above. Hawaii Plaintiffs did not, and could not, unravel Defendants' deception on their own.

2306. Had they known the truth about the Theft-Prone Design, Hawaii Plaintiffs would not have purchased or leased the Vehicles or would have paid significantly less for them.

2307. Hawaii Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2308. Defendants' violations present a continuing risk to Hawaii Plaintiffs and the general public because the Vehicles remain unsafe due to the Theft-Prone Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

2309. Defendants had ample notice provided by the numerous complaints filed against them, internet videos, and news reports. Furthermore, on September 17, 2025, Hawaii Plaintiffs sent Defendants written notice letters of Defendants' violations, Plaintiffs' claims, and a proposed cure to the violations. To date, Defendants failed to remedy their violations. Because Defendants failed to remedy their unlawful conduct, Hawaii Plaintiffs seek all damages and relief to which Hawaii Plaintiffs are entitled.

2310. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile. As alleged above, Defendants have long known that the Vehicles contained the Theft-Prone Design yet did nothing to remedy the Theft-Prone Design.

2311. Hawaii Plaintiffs seek an order (1) enjoining Defendants' unfair and/or deceptive acts, methods, or practices alleged herein, and (2) awarding damages, punitive damages, attorney's fees, costs, and/or any other just and proper relief available under the Hawaii UDAP.

### 4.     Fraud by Omission and Concealment.

2312. Hawaii Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

2313. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards and are therefore of a particular value and quality. In reality, however, the Vehicles do not comply with such standards and are of a lesser value and quality accordingly.

2314. Defendants were aware of the Theft-Prone Design when they

COMPLAINT

manufactured, marketed, and sold the Vehicles to Hawaii Plaintiffs. Defendants further knew that the Theft-Prone Design gave rise to serious safety risks for the consumers that would use the Vehicles and naturally give rise to higher insurance premiums and accelerated depreciation. At the same time, Defendants were aware of the Federal Motor Vehicle Safety Standards and of the effectiveness of engine immobilizer technology in reducing safety hazards. Defendants were also aware that noncompliance with federal and industry standards lowered the value of the Vehicles and would render the Vehicles difficult to insure.

2315. Defendants knew that the Theft-Prone Design, the safety hazards it posed, and the reduction in the Vehicles' value would have been material facts to the Hawaii Plaintiffs' decisions to buy or lease the Vehicles.

2316. A reasonable person would find the Vehicles' lack of industry-standard anti-theft measures and noncompliance with applicable safety standards material to their decision to purchase, lease, and maintain the Vehicles because these deficiencies impact safety, availability, the Vehicles' value, and the cost to insure the Vehicles.

2317. Defendants knowingly made affirmatively false or incomplete statements of material facts as to the Vehicles' safety, reliability, quality, value, and compliance with applicable motor vehicle safety and theft prevention standards, while they intentionally withheld, concealed, omitted, suppressed, and failed to disclose material facts about the Theft-Prone Design, including the lack of effective anti-theft measures, significant safety risks, noncompliance with federal motor vehicle safety standards, and the Vehicles' true value.

2318. Defendants volunteered incomplete information about the Vehicles they offered for sale and/or lease to consumers, including false statements as to the Vehicles' safety, compliance with applicable safety and anti-theft standards, and value while at the same time withholding the existence of the Theft-Prone Design. Defendants further knew and failed to disclose that the Theft-Prone Design and lack of standard anti-theft measures left the Vehicles at substantially lower value than the price for which they

were advertised, marketed, sold, and/or leased.

2319. Alternatively, Defendants made false misrepresentations about the Theft-Prone Design with such utter disregard and recklessness that their knowledge regarding the Theft-Prone Design, its unsafe and unreliable nature, and its substantially lower value may be inferred.

2320. Defendants intended for the Hawaii Plaintiffs to rely on their omissions and concealment—which Hawaii Plaintiffs did in the manner reasonably contemplated by Defendants when they purchased or leased the Vehicles at the prices they paid believing that their vehicles would not have a Theft-Prone Design that would affect the quality, reliability, and safety of the Vehicles.

2321. Hawaii Plaintiffs' reliance on Defendants' misrepresentations and concealment was reasonable and justifiable, as Hawaii Plaintiffs had no way of learning the facts that Defendants had concealed or failed to disclose. Hawaii Plaintiffs did not, and could not, unravel Defendants' deception on their own.

2322. Having been aware of the Theft-Prone Design within the Vehicles and having known that Hawaii Plaintiffs could not have reasonably been expected to know of the Theft-Prone Design, Defendants had a duty to disclose the Theft-Prone Design to Hawaii Plaintiffs in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Theft-Prone Design and the true value of the Vehicles.

2323. Instead, Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Hawaii Plaintiffs.

2324. If Defendants had fully and adequately disclosed the Theft-Prone Design to consumers, Hawaii Plaintiffs would have seen such a disclosure.

2325. Had Hawaii Plaintiffs known of the Theft-Prone Design within the Vehicles, they would not have purchased the Vehicles or would have paid less for them.

Through their omissions and concealment with respect to the Theft-Prone Design within the Vehicles, Defendants intended to induce, and did in fact induce, Hawaii Plaintiffs to either purchase a Vehicle that they otherwise would not have purchased or pay more for a Vehicle than they otherwise would have paid.

2326. As a direct and proximate result of Defendants' omissions, Hawaii Plaintiffs overpaid for the Vehicles because Hawaii Plaintiffs would either have paid less for the Vehicles or would not have purchased the Vehicles at all if the Theft-Prone Design had been disclosed to them.

2327. As a direct and proximate result of Defendants' omissions, Hawaii Plaintiffs purchased Vehicles highly susceptible to theft and were forced to pay higher insurance premiums to account for the susceptibility that they did not knowingly accept, purchase, or lease.

2328. As a direct and proximate result of Defendants' omissions, the Hawaii Plaintiffs paid higher insurance premiums and are now left with Vehicles with significantly diminished values.

2329. Accordingly, Defendants are liable to Hawaii Plaintiffs for their damages, including but not limited to the difference in value, increased insurance premiums that Hawaii Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

2330. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, in reckless disregard of the Hawaii Plaintiffs' rights and well-being, and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

2331. Hawaii Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

**5.      Negligent Misrepresentation.**

- 565 -

2332. Hawaii Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

2333. Defendants, in the course of their business selling and promoting motor vehicles, supplied false information, including that the Vehicles were safe, reliable, and of a particular value, to guide motor vehicle buyers, including Hawaii Plaintiffs, in their choice of transaction.

2334. Defendants made misrepresentations of material facts concerning the safety, reliability, and value of the Vehicles that they knew or should have known were false. Specifically, Defendants misrepresented that the Vehicles had effective anti-theft equipment or design elements; misrepresented that the Vehicles were safe and reliable forms of transportation; misrepresented that the Vehicles complied with all federal and industry safety and theft prevention standards; and misrepresented the true value of the Vehicles. Defendants supplied this information in the course of their business to guide Hawaii Plaintiffs in their Vehicle selection and intended to induce Hawaii Plaintiffs to purchase one of Defendants' Vehicles.

2335. Hawaii Plaintiffs justifiably relied upon Defendants' representations because, as the entities responsible for designing and manufacturing the Vehicles, Defendants held themselves out to be knowledgeable about the Vehicles' components and honest in their promotion of the Vehicles. Hawaii Plaintiffs' reliance was further reasonable given the hidden and technical nature of the Theft-Prone Design and practical inability of Hawaii Plaintiffs to discover the Theft-Prone Design on their own. Because Defendants held the Vehicles out to be in line with industry standards, the representation was not unreasonable on its face and Hawaii Plaintiffs had no apparent reason to doubt the veracity of Defendants' representations.

2336. Defendants had a duty to disclose all relevant information regarding the Vehicles' safety, reliability, quality, and characteristics that would affect the Hawaii Plaintiffs' choice of purchase as consumers.

2337. Defendants failed to exercise reasonable care or competence in

communicating the standards of safety, reliability, quality, and characteristics of the Vehicles to the consumers, including Hawaii Plaintiffs, when they failed to disclose the lack of anti-theft prevention technology in the Vehicles.  Rather, Defendants published materials and marketed the Vehicles for years as safe, reliable, and of a quality consistent with the industry standard.

2338. Hawaii Plaintiffs would not have purchased, or would have purchased for a lower price, the Vehicles which Defendants negligently misrepresented as safe, of standard quality, and containing standard trade characteristics, such as anti-theft prevention technology.  Additionally, as a direct and proximate result, Hawaii Plaintiffs have had to pay higher insurance premiums to account for the Vehicles' high susceptibility to theft and are now left with Vehicles that have a lower value than they would have had without the defect.

2339. As a direct and proximate result of Hawaii Plaintiffs' reasonable reliance on Defendants' negligent misrepresentations, Hawaii Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that Hawaii Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

2340. Hawaii Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 6.    Negligence.

2341. Hawaii Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

2342. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

2343. Defendants owed a duty of care to Hawaii Plaintiffs. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by

COMPLAINT

casual car thieves, higher insurance premiums, and accelerated depreciation.

2344. Defendants failed to exercise reasonable care in connection with their manufacture, distribution, sale, and/or leasing of the Vehicles.

2345. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Hawaii Plaintiffs.

2346. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS No. 114.

2347. As a direct and proximate result of Defendants' failure to exercise reasonable care, Hawaii Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that Hawaii Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

2348. Hawaii Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 7.   Unjust Enrichment.

2349. Hawaii Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

2350. When they purchased and leased the Vehicles, Hawaii Plaintiffs conferred tangible and material economic benefits upon Defendants, who readily accepted and

retained these benefits.

2351. In exchange, Defendants did not confer the benefit that was promised to Plaintiffs when Defendants provided Vehicles of a lesser value and poorer quality than agreed. Rather, Defendants kept the monetary amounts Plaintiffs paid for Vehicles of a particular value and nature that conformed with federal and industry safety standards, but Defendants did not provide Vehicles of that particular value or nature that conformed with federal and industry safety standards.

2352. Hawaii Plaintiffs have a reasonable expectation of compensation because they conferred an economic benefit on the Defendants with the expectation that they were receiving a different product—one of the particular design, nature, quality, and value that contained an anti-theft system and was compliant with federal safety and industry standards—in exchange.

2353. Hawaii Plaintiffs would not have purchased or leased their Vehicles, or would have paid less for them, had they known of the Theft-Prone Design at the time of purchase or lease. Therefore, Defendants profited from the sale and lease of the Vehicles to the detriment and expense of Hawaii Plaintiffs by misrepresenting the Vehicles' true design, nature, quality, and value.

2354. Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft-Prone Design, the Vehicles' noncompliant nature and poorer quality, and the Vehicles' reduced value, yet they failed to disclose this knowledge and misled the Hawaii Plaintiffs regarding the design, nature, quality, and value of the Vehicles while profiting from this deception.

2355. Accordingly, Hawaii Plaintiffs have been impoverished due to Defendants' enrichment without justification.

2356. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, in part because they were procured as a result of their wrongful

conduct alleged above.

2357. Hawaii Plaintiffs are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Hawaii Plaintiffs to the position they occupied prior to dealing with these Defendants, with such amounts to be determined at trial.

2358. Hawaii Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages, because if Hawaii Plaintiffs' claims for damages are dismissed or judgment is entered in favor of Defendants, Hawaii Plaintiffs will have no adequate legal remedy.

**L.  Idaho State Law Claims for Relief**

**(Alleged by Idaho Plaintiffs Against All Defendants)**

**1.  Breach of Implied Warranty Under Idaho Code §§ 28-2-314 and 28-12-212.**

2359. Idaho Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

2360. A warranty that the Vehicles were in merchantable condition is implied by law pursuant to Idaho Code §§ 28-2-314 and 28-12-212.

2361. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Idaho Code §§ 28-2-104(1) and 28-12-103(3), "sellers" of motor vehicles under § 28-2-103(1)(d) and, with respect to leases, "lessors" of motor vehicles under § 28-12-103(1)(p).

2362. At all relevant times, Idaho Plaintiffs who purchased Vehicles in Idaho were and are "buyers" within the meaning of Idaho Code § 28-2-103(a).

2363. At all relevant times, Idaho Plaintiffs who leased Vehicles in Idaho were and are "lessees" within the meaning of Idaho Code § 28-12-103(1)(n).

2364. At all relevant times, Idaho Plaintiffs' Vehicles (whether purchased or leased) were and are "goods" within the meaning of Idaho Code §§ 28-2-105(1) and 28-12-103(1)(h).

- 570 -
COMPLAINT

2365. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased.  Defendants provided Idaho Plaintiffs with an implied warranty that the purchased and leased Vehicles were in merchantable condition and fit for the ordinary purposes for which they were sold or leased.  This implied warranty included that the Vehicles (a) were manufactured, supplied, distributed, and sold by Defendants, (b) were safe and reliable for transportation, (c) complied with all federal, state, and industry motor vehicle regulations and safety standards, including FMVSS No. 114, (d) were not at an abnormally high risk of theft, and (e) were of a particular value and quality that complied with federal and industry safety standards.

2366. The Vehicles did not comply with the implied warranty of merchantability because the Vehicles were defective and not in merchantable condition at the time of sale and/or lease, were not fit for their ordinary purpose of providing safe and reliable transportation at the time of sale or lease, and would not pass without objection in the trade as they deviated significantly from the industry standard and can be stolen in mere minutes without a key.  Defendants knew at the time of manufacture that the Vehicles contained the Theft-Prone Design and lacked any anti-theft equipment or design elements that effectively prevent theft or comply with FMVSS No. 114.  Therefore, the Defendants knew at the time of manufacture that the Vehicles are at an abnormally high risk of theft and are unsafe and an unreliable form of transportation.  The Theft-Prone Design renders the Vehicles highly vulnerable to theft and a prime target for thieves as they can be easily stolen in seconds.  Defendants knew at the time of manufacture that because their Vehicles did not include any anti-theft measures that satisfied FMVSS No. 114, making their Vehicles more prone to theft and failing to comply with federal regulations, the Vehicles would require larger insurance premiums and would depreciate at a more rapid rate than a comparable vehicle with anti-theft measure that satisfied FMVSS No. 114. Consequently, at the time of sale and/or lease, the Vehicles were not fit for their ordinary purpose of providing safe and reliable transportation.

2367. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable. Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Idaho Plaintiffs, of the safety defect. Any time limitations regarding the warranty period were also unconscionable and inadequate to protect Idaho Plaintiffs. Idaho Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants. A gross disadvantage in bargaining power existed between Idaho Plaintiffs and Defendants, which unreasonably favored Defendants. Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left Idaho Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

2368. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that Idaho Plaintiffs may seek alternative remedies. Idaho Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

2369. Idaho Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure. Idaho Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Idaho Plaintiffs' breach of warranty claims. Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Idaho Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news

COMPLAINT

reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Idaho Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches. To date, Defendants failed to remedy their breaches.

2370. Alternatively, Idaho Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches. Idaho Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

2371. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Idaho Plaintiffs' Vehicles were and are defective, the Theft-Prone Design in the Vehicles has not been remedied, and Idaho Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that Idaho Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

## 2. Breach of Express Warranty Under Idaho Code §§ 28-2-313 and 28-12-210.

2372. Idaho Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

2373. During the relevant time periods, Defendants manufactured the Vehicles and Idaho Plaintiffs purchased and/or leased the Vehicles from Defendants.

2374. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Idaho Code §§ 28-2-104(1) and 28-12-103(3), "sellers" of motor

vehicles under § 28-2- 103(1)(d) and, with respect to leases, "lessors" of motor vehicles under § 28-12-103(1)(p).

2375. At all relevant times, Idaho Plaintiffs who purchased Vehicles in Idaho were and are "buyers" within the meaning of Idaho Code § 28-2-103(a).

2376. At all relevant times, Idaho Plaintiffs who leased Vehicles in Idaho were and are "lessees" within the meaning of Idaho Code § 28-12-103(1)(n).

2377. At all relevant times, Idaho Plaintiffs' Vehicles (whether purchased or leased) were and are "goods" within the meaning of Idaho Code §§ 28-2-105(1) and 28-12-103(1)(h).

2378. By affixing a VIN plate to each Vehicle at the time of manufacture, Defendants expressly warranted each Vehicles' conformance to "all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture shown." These statements constitute a description, affirmation of fact, and promise made to Idaho Plaintiffs as to the Vehicles' condition, quality, safety, and reliability. These statements, affirmations, and descriptions became the basis of the bargain between Idaho Plaintiffs and Defendants, as Idaho Plaintiffs relied on these statements when making their decisions to purchase and/or lease the Vehicles. As such, the statements are an express warranty under Idaho law pursuant to Idaho Code § 28-2-313(a) and (b), and the Vehicles did not conform to the affirmations of fact, promises made by Defendants, or Defendants' description of the Vehicles.

2379. Idaho Plaintiffs used the Vehicles in accordance with their normal operation and did not misuse or mishandle the Vehicles in any way material to the allegations set forth herein.

2380. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable. Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Idaho Plaintiffs, of the safety defect. Any time limitations regarding the warranty period were also unconscionable and inadequate to

protect Idaho Plaintiffs. Idaho Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants. A gross disadvantage in bargaining power existed between Idaho Plaintiffs and Defendants, which unreasonably favored Defendants. Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left Idaho Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

2381. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that Idaho Plaintiffs may seek alternative remedies. Idaho Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

2382. Idaho Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure. Idaho Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Idaho Plaintiffs' breach of warranty claims. Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Idaho Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Idaho Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a

proposed cure to the breaches. To date, Defendants failed to remedy their breaches.

2383. Alternatively, Idaho Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches. Idaho Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

2384. The Vehicles did not perform as promised in accordance with Defendants' express warranty; instead, the Vehicles did not meet all applicable motor vehicle safety and theft prevention standards in effect on the date of manufacture. The Vehicles are capable of being stolen in a matter of seconds without a key and do not comply with the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles do not, in fact, conform to the applicable anti-theft standards.

2385. As a direct and proximate result of Defendants' breaches, Idaho Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that Idaho Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

**3.    Violation of Idaho Consumer Protection Act Under Idaho Code § 48-601, et seq.**

2386. Idaho Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

2387. Defendants and Idaho Plaintiffs are "persons" within the meaning of Idaho Code § 48-602(1).

2388. The Vehicles are "goods" within the meaning of Idaho Code § 48-602(6).

2389. Defendants are engaged in trade or commerce within the meaning of Idaho Code § 48-602(2).

- 576 -
COMPLAINT

2390. Defendants engaged in unlawful and deceptive trade practices, including "unfair methods of competition and unfair or deceptive acts or practices[,]" as prohibited under the Idaho Consumer Protection Act ("Idaho CPA"), Idaho Code § 48-603.

2391. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Idaho CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Theft-Prone Design, as detailed above. Defendants used deception and unfair practices, false pretense, false promise, misrepresentation, concealment, suppression, and omission of material facts with the intent that Idaho Plaintiffs rely on such concealment, suppression, or omission in connection with the sale or advertisement of their Vehicles, in violation of Idaho Code § 48-603.

2392. Under the Idaho CPA, Defendants had an ongoing duty to Idaho Plaintiffs to refrain from unfair or deceptive practices in the course of their business. Specifically, Defendants owed Idaho Plaintiffs a duty to disclose all the material facts concerning the Theft-Prone Design in the Vehicles.

2393. Defendants had exclusive access to and far superior knowledge about facts regarding the Theft-Prone Design, and Defendants knew these facts were not known to or reasonably discoverable by Idaho Plaintiffs.

2394. Given the Theft-Prone Design's hidden and technical nature, Idaho Plaintiffs lack the sophisticated expertise in vehicle components necessary to discover the Theft-Prone Design on their own.

2395. Defendants knew that the Theft-Prone Design gave rise to safety concerns for the consumers who use the Vehicles, and that the Theft-Prone Design would have been a material fact in the Idaho Plaintiffs' decisions to buy or lease the Vehicles.

2396. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known

safety defect.  In advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Theft-Prone Design.  Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

2397. As detailed above, the information concerning the Theft-Prone Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

2398. By misrepresenting the Vehicles as safe, reliable, and free from defects, and by failing to disclose and actively concealing the dangers and risks posed by the Theft-Prone Design, Defendants engaged in the following unfair or deceptive business practices in violation of Idaho CPA: (a) causing likelihood of confusion or of misunderstanding as to the approval or certification of the Vehicles; (b) representing that the Vehicles have approval, characteristics, uses, and benefits which they do not have; (c) representing that the Vehicles are of a particular standard, quality, and grade when they are not; (d) advertising the Vehicles with the intent not to sell or lease them as advertised; (e) engaging in conduct which creates a likelihood of confusion or of misleading persons regarding the Vehicles; and (f) engaging in any unconscionable method, act or practice in the conduct of trade or commerce.  Idaho Code §§ 48-603(2), (5), (7), (9), (17), and (18).

2399. Defendants intended for Idaho Plaintiffs to rely on them to provide adequately designed Vehicles and to honestly and accurately reveal the safety hazards described above.

2400. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Theft-Prone Design.  Those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers,

including Idaho Plaintiffs, about the true safety and reliability of the Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

2401. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Theft-Prone Design and true characteristics of the Vehicles were material to the decisions of Idaho Plaintiffs to purchase or lease the Vehicles, as Defendants intended. Idaho Plaintiffs were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase or lease the Vehicles.

2402. Idaho Plaintiffs' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, and/or otherwise learning that the Vehicles contained the Theft-Prone Design, as alleged above. Idaho Plaintiffs did not, and could not, unravel Defendants' deception on their own.

2403. Had they known the truth about the Theft-Prone Design, Idaho Plaintiffs would not have purchased or leased the Vehicles or would have paid significantly less for them.

2404. Idaho Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2405. Defendants' violations present a continuing risk to Idaho Plaintiffs and the general public because the Vehicles remain unsafe due to the Theft-Prone Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

2406. Defendants had ample notice provided by the numerous complaints filed against them, internet videos, and news reports. Furthermore, on September 17, 2025, Plaintiffs sent Defendants written notice letters of Defendants' violations, Idaho Plaintiffs' claims, and a proposed cure to the violations. To date, Defendants failed to remedy their violations. Because Defendants failed to remedy their unlawful conduct, Idaho Plaintiffs seek all damages and relief to which Idaho Plaintiffs are entitled.

COMPLAINT

2407. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile.  As alleged above, Defendants have long known that the Vehicles contained the Theft-Prone Design yet did nothing to remedy the Theft-Prone Design.

2408. Idaho Plaintiffs seek an order (1) enjoining Defendants' unfair and/or deceptive acts, methods, or practices alleged herein, and (2) awarding damages, punitive damages, attorney's fees, costs, and/or any other just and proper relief available under the Idaho CPA.

### 4. Fraud by Omission and Concealment.

2409. Idaho Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

2410. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards and are therefore of a particular value and quality.  In reality, however, the Vehicles do not comply with such standards and are of a lesser value and quality accordingly.

2411. Defendants were aware of the Theft-Prone Design when they manufactured, marketed, and sold the Vehicles to Idaho Plaintiffs.  Defendants further knew that the Theft-Prone Design gave rise to serious safety risks for the consumers that would use the Vehicles and naturally give rise to higher insurance premiums and accelerated depreciation.  At the same time, Defendants were aware of the Federal Motor Vehicle Safety Standards and of the effectiveness of engine immobilizer technology in reducing safety hazards.  Defendants were also aware that noncompliance with federal and industry standards lowered the value of the Vehicles and would render the Vehicles difficult to insure.

2412. Defendants knew that the Theft-Prone Design, the safety hazards it posed, and the reduction in the Vehicles' value would have been material facts to the Idaho Plaintiffs' decisions to buy or lease the Vehicles.

2413. A reasonable person would find the Vehicles' lack of industry-standard

COMPLAINT

anti-theft measures and noncompliance with applicable safety standards material to their decision to purchase, lease, and maintain the Vehicles because these deficiencies impact safety, availability, the Vehicles' value, and the cost to insure the Vehicles.

2414. Defendants knowingly made affirmatively false or incomplete statements of material facts as to the Vehicles' safety, reliability, quality, value, and compliance with applicable motor vehicle safety and theft prevention standards, while they intentionally withheld, concealed, omitted, suppressed, and failed to disclose material facts about the Theft-Prone Design, including the lack of effective anti-theft measures, significant safety risks, noncompliance with federal motor vehicle safety standards, and the Vehicles' true value.

2415. Defendants volunteered incomplete information about the Vehicles they offered for sale and/or lease to consumers, including false statements as to the Vehicles' safety, compliance with applicable safety and anti-theft standards, and value while at the same time withholding the existence of the Theft-Prone Design. Defendants further knew and failed to disclose that the Theft-Prone Design and lack of standard anti-theft measures left the Vehicles at substantially lower value than the price for which they were advertised, marketed, sold, and/or leased.

2416. Alternatively, Defendants made false misrepresentations about the Theft-Prone Design with such utter disregard and recklessness that their knowledge regarding the Theft-Prone Design, its unsafe and unreliable nature, and its substantially lower value may be inferred.

2417. Defendants intended for the Idaho Plaintiffs to rely on their omissions and concealment—which Idaho Plaintiffs did in the manner reasonably contemplated by Defendants when they purchased or leased the Vehicles at the prices they paid believing that their vehicles would not have a Theft-Prone Design that would affect the quality, reliability, and safety of the Vehicles.

2418. Idaho Plaintiffs' reliance on Defendants' misrepresentations and concealment was reasonable and justifiable, as Idaho Plaintiffs had no way of learning

the facts that Defendants had concealed or failed to disclose. Idaho Plaintiffs did not, and could not, unravel Defendants' deception on their own.

2419. Having been aware of the Theft-Prone Design within the Vehicles and having known that Idaho Plaintiffs could not have reasonably been expected to know of the Theft-Prone Design, Defendants had a duty to disclose the Theft-Prone Design to Idaho Plaintiffs in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Theft-Prone Design and the true value of the Vehicles.

2420. Instead, Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Idaho Plaintiffs.

2421. If Defendants had fully and adequately disclosed the Theft-Prone Design to consumers, Idaho Plaintiffs would have seen such a disclosure.

2422. Had Idaho Plaintiffs known of the Theft-Prone Design within the Vehicles, they would not have purchased the Vehicles or would have paid less for them. Through their omissions and concealment with respect to the Theft-Prone Design within the Vehicles, Defendants intended to induce, and did in fact induce, Idaho Plaintiffs to either purchase a Vehicle that they otherwise would not have purchased or pay more for a Vehicle than they otherwise would have paid.

2423. As a direct and proximate result of Defendants' omissions, Idaho Plaintiffs overpaid for the Vehicles because Idaho Plaintiffs would either have paid less for the Vehicles or would not have purchased the Vehicles at all if the Theft-Prone Design had been disclosed to them.

2424. As a direct and proximate result of Defendants' omissions, Idaho Plaintiffs purchased Vehicles highly susceptible to theft and were forced to pay higher insurance premiums to account for the susceptibility that they did not knowingly accept, purchase, or lease.

2425. As a direct and proximate result of Defendants' omissions, the Idaho Plaintiffs paid higher insurance premiums and are now left with Vehicles with significantly diminished values.

2426. Accordingly, Defendants are liable to Idaho Plaintiffs for their damages, including but not limited to the difference in value, increased insurance premiums that Idaho Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

2427. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, in reckless disregard of the Idaho Plaintiffs' rights and well-being, and to enrich themselves.  Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

2428. Idaho Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 5.    Negligent Misrepresentation.

2429. Idaho Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

2430. Defendants, in the course of their business selling and promoting motor vehicles, supplied false information, including that the Vehicles were safe, reliable, and of a particular value, to guide motor vehicle buyers, including Idaho Plaintiffs, in their choice of transaction.

2431. Defendants made misrepresentations of material facts concerning the safety, reliability, and value of the Vehicles that they knew or should have known were false.  Specifically, Defendants misrepresented that the Vehicles had effective anti-theft equipment or design elements; misrepresented that the Vehicles were safe and reliable forms of transportation; misrepresented that the Vehicles complied with all federal and industry safety and theft prevention standards; and misrepresented the true value of the

Vehicles. Defendants supplied this information in the course of their business to guide Idaho Plaintiffs in their Vehicle selection and intended to induce Idaho Plaintiffs to purchase one of Defendants' Vehicles.

2432. Idaho Plaintiffs justifiably relied upon Defendants' representations because, as the entities responsible for designing and manufacturing the Vehicles, Defendants held themselves out to be knowledgeable about the Vehicles' components and honest in their promotion of the Vehicles. Idaho Plaintiffs' reliance was further reasonable given the hidden and technical nature of the Theft-Prone Design and practical inability of Idaho Plaintiffs to discover the Theft-Prone Design on their own. Because Defendants held the Vehicles out to be in line with industry standards, the representation was not unreasonable on its face and Idaho Plaintiffs had no apparent reason to doubt the veracity of Defendants' representations.

2433. Defendants had a duty to disclose all relevant information regarding the Vehicles' safety, reliability, quality, and characteristics that would affect the Idaho Plaintiffs' choice of purchase as consumers.

2434. Defendants failed to exercise reasonable care or competence in communicating the standards of safety, reliability, quality, and characteristics of the Vehicles to the consumers, including Idaho Plaintiffs, when they failed to disclose the lack of anti-theft prevention technology in the Vehicles. Rather, Defendants published materials and marketed the Vehicles for years as safe, reliable, and of a quality consistent with the industry standard.

2435. Idaho Plaintiffs would not have purchased, or would have purchased for a lower price, the Vehicles which Defendants negligently misrepresented as safe, of standard quality, and containing standard trade characteristics, such as anti-theft prevention technology. Additionally, as a direct and proximate result, Idaho Plaintiffs have had to pay higher insurance premiums to account for the Vehicles' high susceptibility to theft and are now left with Vehicles that have a lower value than they would have had without the defect.

COMPLAINT

2436. As a direct and proximate result of Idaho Plaintiffs' reasonable reliance on Defendants' negligent misrepresentations, Idaho Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that Idaho Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

2437. Idaho Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 6.      Negligence.

2438. Idaho Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

2439. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

2440. Defendants owed a duty of care to Idaho Plaintiffs. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves, higher insurance premiums, and accelerated depreciation.

2441. Defendants failed to exercise reasonable care in connection with their manufacture, distribution, sale, and/or leasing of the Vehicles.

2442. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Idaho Plaintiffs.

2443. Defendants' violation of their duties under applicable law and/or the

COMPLAINT

applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS No. 114.

2444. As a direct and proximate result of Defendants' failure to exercise reasonable care, Idaho Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that Idaho Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

2445. Idaho Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 7.    Unjust Enrichment.

2446. Idaho Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

2447. When they purchased and leased the Vehicles, Idaho Plaintiffs conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

2448. In exchange, Defendants did not confer the benefit that was promised to Plaintiffs when Defendants provided Vehicles of a lesser value and poorer quality than agreed.  Rather, Defendants kept the monetary amounts Plaintiffs paid for Vehicles of a particular value and nature that conformed with federal and industry safety standards, but Defendants did not provide Vehicles of that particular value or nature that conformed with federal and industry safety standards.

2449. Idaho Plaintiffs have a reasonable expectation of compensation because they conferred an economic benefit on the Defendants with the expectation that they were receiving a different product—one of the particular design, nature, quality, and value that contained an anti-theft system and was compliant with federal safety and industry standards—in exchange.

COMPLAINT

2450. Idaho Plaintiffs would not have purchased or leased their Vehicles, or would have paid less for them, had they known of the Theft-Prone Design at the time of purchase or lease. Therefore, Defendants profited from the sale and lease of the Vehicles to the detriment and expense of Idaho Plaintiffs by misrepresenting the Vehicles' true design, nature, quality, and value.

2451. Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft-Prone Design, the Vehicles' noncompliant nature and poorer quality, and the Vehicles' reduced value, yet they failed to disclose this knowledge and misled the Idaho Plaintiffs regarding the design, nature, quality, and value of the Vehicles while profiting from this deception.

2452. Accordingly, Idaho Plaintiffs have been impoverished due to Defendants' enrichment without justification.

2453. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, in part because they were procured as a result of their wrongful conduct alleged above.

2454. Idaho Plaintiffs are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Idaho Plaintiffs to the position they occupied prior to dealing with these Defendants, with such amounts to be determined at trial.

2455. Idaho Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages, because if Idaho Plaintiffs' claims for damages are dismissed or judgment is entered in favor of Defendants, Idaho Plaintiffs will have no adequate legal remedy.

**M.** **Illinois State Law Claims for Relief**

**(Alleged by Illinois Plaintiffs Against All Defendants)**

**1.** **Breach of Implied Warranty Under 810 Ill. Comp. Stat. 5/2-314**

**and 5/2A-212.**

2456. Illinois Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

2457. A warranty that the Vehicles were in merchantable condition is implied by law pursuant to 810 Ill. Comp. Stat. 5/2-314 and 5/2A-212.

2458. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under 810 Ill. Comp. Stat. 5/2-104(1) and 5/2A-103(3), a "seller" of motor vehicles under 810 Ill. Comp. Stat. 5/2-103(1)(d) and, with respect to leases, "lessors" of motor vehicles under 810 Ill. Comp. Stat. 5/2A-103(1)(p).

2459. At all relevant times, Illinois Plaintiffs who purchased Vehicles in Illinois were and are "buyers" within the meaning of 810 Ill. Comp. Stat. 5/2-103(1)(a).

2460. At all relevant times, Illinois Plaintiffs who leased Vehicles in Illinois were and are "lessees" within the meaning of 810 Ill. Comp. Stat. 5/2A-103(1)(n).

2461. At all relevant times, Illinois Plaintiffs' Vehicles (whether purchased or leased) were and are "goods" within the meaning of 810 Ill. Comp. Stat. 5/2-314 and 5/2A-212.

2462. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Illinois Plaintiffs with an implied warranty that the purchased and leased Vehicles were in merchantable condition and fit for the ordinary purposes for which they were sold or leased. This implied warranty included that the Vehicles (a) were manufactured, supplied, distributed, and sold by Defendants, (b) were safe and reliable for transportation, (c) complied with all federal, state, and industry motor vehicle regulations and safety standards, including FMVSS No. 114, (d) were not at an abnormally high risk of theft, and (e) were of a particular value and quality that complied with federal and industry safety standards.

2463. The Vehicles did not comply with the implied warranty of merchantability because the Vehicles were defective and not in merchantable condition at the time of

COMPLAINT

sale and/or lease, were not fit for their ordinary purpose of providing safe and reliable transportation at the time of sale or lease, and would not pass without objection in the trade as they deviated significantly from the industry standard and can be stolen in mere minutes without a key.  Defendants knew at the time of manufacture that the Vehicles contained the Theft-Prone Design and lacked any anti-theft equipment or design elements that effectively prevent theft or comply with FMVSS No. 114.  Therefore, the Defendants knew at the time of manufacture that the Vehicles are at an abnormally high risk of theft and are unsafe and an unreliable form of transportation.  The Theft-Prone Design renders the Vehicles highly vulnerable to theft and a prime target for thieves as they can be easily stolen in seconds.  Defendants knew at the time of manufacture that because their Vehicles did not include any anti-theft measures that satisfied FMVSS No. 114, making their Vehicles more prone to theft and failing to comply with federal regulations, the Vehicles would require larger insurance premiums and would depreciate at a more rapid rate than a comparable vehicle with anti-theft measure that satisfied FMVSS No. 114. Consequently, at the time of sale and/or lease, the Vehicles were not fit for their ordinary purpose of providing safe and reliable transportation.

2464. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable.  Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Illinois Plaintiffs, of the safety defect.  Any time limitations regarding the warranty period were also unconscionable and inadequate to protect Illinois Plaintiffs.  Illinois Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants.  A gross disadvantage in bargaining power existed between Illinois Plaintiffs and Defendants, which unreasonably favored Defendants.   Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left Illinois Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

COMPLAINT

2465. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that Illinois Plaintiffs may seek alternative remedies. Illinois Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

2466. Illinois Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure. Illinois Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Illinois Plaintiffs' breach of warranty claims. Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Illinois Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Illinois Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches. To date, Defendants failed to remedy their breaches.

2467. Alternatively, Illinois Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches. Illinois Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches

or the Theft-Prone Design if they presented their Vehicles for repair.

2468. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Illinois Plaintiffs' Vehicles were and are defective, the Theft-Prone Design in the Vehicles has not been remedied, and Illinois Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that Illinois Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

### 2. Breach of Express Warranty Under 810 Ill. Comp. Stat. 5/2-313 and 5/2A-210.[124]

2469. Illinois Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

2470. During the relevant time periods, Defendants manufactured the Vehicles and Illinois Plaintiffs purchased and/or leased the Vehicles from Defendants.

2471. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under 810 Ill. Comp. Stat. 5/2-104(1) and 5/2A-103(3), a "seller" of motor vehicles under 810 Ill. Comp. Stat. 5/2-103(1)(d) and, with respect to leases, "lessors" of motor vehicles under 810 Ill. Comp. Stat. 5/2A-103(1)(p).

2472. At all relevant times, Illinois Plaintiffs who purchased Vehicles in Illinois were and are "buyers" within the meaning of 810 Ill. Comp. Stat. 5/2-103(1)(a).

2473. At all relevant times, Illinois Plaintiffs who leased Vehicles in Illinois were and are "lessees" within the meaning of 810 Ill. Comp. Stat. 5/2A-103(1)(n).

2474. At all relevant times, Illinois Plaintiffs' Vehicles (whether purchased or leased) were and are "goods" within the meaning of 810 Ill. Comp. Stat. 5/2-314 and 5/2A-212.

---

[124] For the names of the Illinois Plaintiffs who do not allege a claim for Breach of Express Warranty Under 810 Ill. Comp. Stat. 5/2-313 and 5/2A-210, see Exhibit E.

COMPLAINT

2475. By affixing a VIN plate to each Vehicle at the time of manufacture, Defendants expressly warranted each Vehicles' conformance to "all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture shown." These statements constitute a description, affirmation of fact, and promise made to Illinois Plaintiffs as to the Vehicles' condition, quality, safety, and reliability. These statements, affirmations, and descriptions became the basis of the bargain between Illinois Plaintiffs and Defendants, as Illinois Plaintiffs relied on these statements when making their decisions to purchase and/or lease the Vehicles. As such, the statements are an express warranty under Illinois law pursuant to 810 Ill. Comp. Stat. 5/2-313 and 810 Ill. Comp. Stat. 5/2A-210, and the Vehicles did not conform to the affirmations of fact, promises made by Defendants, or Defendants' description of the Vehicles.

2476. Illinois Plaintiffs used the Vehicles in accordance with their normal operation and did not misuse or mishandle the Vehicles in any way material to the allegations set forth herein.

2477. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable. Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Illinois Plaintiffs, of the safety defect. Any time limitations regarding the warranty period were also unconscionable and inadequate to protect Illinois Plaintiffs. Illinois Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants. A gross disadvantage in bargaining power existed between Illinois Plaintiffs and Defendants, which unreasonably favored Defendants. Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left Illinois Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

2478. These circumstances caused any exclusive or limited remedy to fail its

COMPLAINT

essential purpose such that Illinois Plaintiffs may seek alternative remedies. Illinois Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

2479. Illinois Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure. Illinois Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Illinois Plaintiffs' breach of warranty claims. Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Illinois Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Illinois Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches. To date, Defendants failed to remedy their breaches.

2480. Alternatively, Illinois Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches. Illinois Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

- 593 -

COMPLAINT

2481. The Vehicles did not perform as promised in accordance with Defendants' express warranty; instead, the Vehicles did not meet all applicable motor vehicle safety and theft prevention standards in effect on the date of manufacture. The Vehicles are capable of being stolen in a matter of seconds without a key and do not comply with the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles do not, in fact, conform to the applicable anti-theft standards.

2482. As a direct and proximate result of Defendants' breaches, Illinois Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that Illinois Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

**3. Violation of Illinois Consumer Fraud and Deceptive Business Practices Act Under 815 Ill. Comp. Stat. 505/1, et seq.[125]**

2483. Illinois Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

2484. Defendants and Illinois Plaintiffs are "persons" within the meaning of 815 Ill. Comp. Stat. 505/1(c).

2485. Illinois Plaintiffs are "consumers" within the meaning of 815 Ill. Comp. Stat. 505/1(e).

2486. The Vehicles are "merchandise" within the meaning of 815 Ill. Comp. Stat. 505/1(b)

2487. Defendants were and are engaged in "trade" and "commerce" within the meaning of 815 Ill. Comp. Stat. 505/1(f).

2488. Defendants engaged in unlawful and deceptive trade practices, including "[u]nfair methods of competition and unfair or deceptive acts or practices[,]" as

---

[125] For the names of the Illinois Plaintiffs who do not allege a claim for Violation of Illinois Consumer Fraud and Deceptive Business Practices Act Under 815 Ill. Comp. Stat. 505/1, et seq., see Exhibit E.

COMPLAINT

prohibited under the Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA"), 815 Ill. Comp. Stat. 505/2.

2489. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Illinois CFA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Theft-Prone Design, as detailed above.  Defendants used deception and unfair practices, false pretense, false promise, misrepresentation, concealment, suppression, and omission of material facts with the intent that Illinois Plaintiffs rely on such concealment, suppression, or omission in connection with the sale or advertisement of their Vehicles, in violation of 815 Ill. Comp. Stat. 505/2 and 510/2.

2490. Under the Illinois CFA, Defendants had an ongoing duty to Illinois Plaintiffs to refrain from unfair or deceptive practices in the course of their business. Specifically, Defendants owed Illinois Plaintiffs a duty to disclose all the material facts concerning the Theft-Prone Design in the Vehicles.

2491. Defendants had exclusive access to and far superior knowledge about facts regarding the Theft-Prone Design, and Defendants knew these facts were not known to or reasonably discoverable by Illinois Plaintiffs.

2492. Given the Theft-Prone Design's hidden and technical nature, Illinois Plaintiffs lack the sophisticated expertise in vehicle components necessary to discover the Theft-Prone Design on their own.

2493. Defendants knew that the Theft-Prone Design gave rise to safety concerns for the consumers who use the Vehicles, and that the Theft-Prone Design would have been a material fact in the Illinois Plaintiffs' decisions to buy or lease the Vehicles.

2494. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect.  In advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the

Vehicles contained the Theft-Prone Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

2495. As detailed above, the information concerning the Theft-Prone Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

2496. By misrepresenting the Vehicles as safe, reliable, and free from defects, and by failing to disclose and actively concealing the dangers and risks posed by the Theft-Prone Design, Defendants engaged in the following unfair or deceptive business practices in violation of Illinois CFA: (a) causing likelihood of confusion or of misunderstanding as to the approval or certification of the Vehicles; (b) representing that the Vehicles have approval, characteristics, uses, and benefits which they do not have; (c) representing that the Vehicles are of a particular standard, quality, and grade when they are not; (d) advertising the Vehicles with the intent not to sell or lease them as advertised; (e) engaging in conduct which creates a likelihood of confusion or of misunderstanding; and (f) using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression, or omission of a material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the advertisement and sale/lease of the Vehicles, whether or not any person has in fact been misled, deceived, or damaged thereby. 815 Ill. Comp. Stat. 505/2 and 510/2.

2497. Defendants intended for Illinois Plaintiffs to rely on them to provide adequately designed Vehicles and to honestly and accurately reveal the safety hazards described above.

2498. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Theft-Prone Design. Those misrepresentations, concealments,

omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Illinois Plaintiffs, about the true safety and reliability of the Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

2499. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Theft-Prone Design and true characteristics of the Vehicles were material to the decisions of Illinois Plaintiffs to purchase or lease the Vehicles, as Defendants intended. Illinois Plaintiffs were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase or lease the Vehicles.

2500. Illinois Plaintiffs' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, and/or otherwise learning that the Vehicles contained the Theft-Prone Design, as alleged above. Illinois Plaintiffs did not, and could not, unravel Defendants' deception on their own.

2501. Had they known the truth about the Theft-Prone Design, Illinois Plaintiffs would not have purchased or leased the Vehicles or would have paid significantly less for them.

2502. Illinois Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2503. Defendants' violations present a continuing risk to Illinois Plaintiffs and the general public because the Vehicles remain unsafe due to the Theft-Prone Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

2504. Defendants had ample notice provided by the numerous complaints filed against them, internet videos, and news reports. Furthermore, on September 17, 2025, Illinois Plaintiffs sent Defendants written notice letters of Defendants' violations, Plaintiffs' claims, and a proposed cure to the violations. To date, Defendants failed to remedy their violations. Because Defendants failed to remedy their unlawful conduct,

COMPLAINT

Illinois Plaintiffs seek all damages and relief to which Illinois Plaintiffs are entitled.

2505. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile.  As alleged above, Defendants have long known that the Vehicles contained the Theft-Prone Design yet did nothing to remedy the Theft-Prone Design.

2506. Pursuant to 815 Ill. Comp. Stat. 505/10a, Illinois Plaintiffs seek an order (1) enjoining Defendants' unfair and/or deceptive acts, methods, or practices alleged herein, and (2) awarding damages, punitive damages, attorney's fees, costs, and/or any other just and proper relief available under the Illinois CFA.

**4.    Fraud by Omission and Concealment.[126]**

2507. Illinois Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

2508. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards and are therefore of a particular value and quality.  In reality, however, the Vehicles do not comply with such standards and are of a lesser value and quality accordingly.

2509. Defendants were aware of the Theft-Prone Design when they manufactured, marketed, and sold the Vehicles to Illinois Plaintiffs.  Defendants further knew that the Theft-Prone Design gave rise to serious safety risks for the consumers that would use the Vehicles and naturally give rise to higher insurance premiums and accelerated depreciation.  At the same time, Defendants were aware of the Federal Motor Vehicle Safety Standards and of the effectiveness of engine immobilizer technology in reducing safety hazards.  Defendants were also aware that noncompliance with federal and industry standards lowered the value of the Vehicles and would render the Vehicles difficult to insure.

2510. Defendants knew that the Theft-Prone Design, the safety hazards it posed,

---

[126] For the names of the Illinois Plaintiffs who do not allege a claim for Fraud by Omission and Concealment, see Exhibit E.

COMPLAINT

and the reduction in the Vehicles' value would have been material facts to the Illinois Plaintiffs' decisions to buy or lease the Vehicles.

2511. A reasonable person would find the Vehicles' lack of industry-standard anti-theft measures and noncompliance with applicable safety standards material to their decision to purchase, lease, and maintain the Vehicles because these deficiencies impact safety, availability, the Vehicles' value, and the cost to insure the Vehicles.

2512. Defendants knowingly made affirmatively false or incomplete statements of material facts as to the Vehicles' safety, reliability, quality, value, and compliance with applicable motor vehicle safety and theft prevention standards, while they intentionally withheld, concealed, omitted, suppressed, and failed to disclose material facts about the Theft-Prone Design, including the lack of effective anti-theft measures, significant safety risks, noncompliance with federal motor vehicle safety standards, and the Vehicles' true value.

2513. Defendants volunteered incomplete information about the Vehicles they offered for sale and/or lease to consumers, including false statements as to the Vehicles' safety, compliance with applicable safety and anti-theft standards, and value while at the same time withholding the existence of the Theft-Prone Design. Defendants further knew and failed to disclose that the Theft-Prone Design and lack of standard anti-theft measures left the Vehicles at substantially lower value than the price for which they were advertised, marketed, sold, and/or leased.

2514. Alternatively, Defendants made false misrepresentations about the Theft-Prone Design with such utter disregard and recklessness that their knowledge regarding the Theft-Prone Design, its unsafe and unreliable nature, and its substantially lower value may be inferred.

2515. Defendants intended for the Illinois Plaintiffs to rely on their omissions and concealment—which Illinois Plaintiffs did in the manner reasonably contemplated by Defendants when they purchased or leased the Vehicles at the prices they paid believing that their vehicles would not have a Theft-Prone Design that would affect the

quality, reliability, and safety of the Vehicles.

2516. Illinois Plaintiffs' reliance on Defendants' misrepresentations and concealment was reasonable and justifiable, as Illinois Plaintiffs had no way of learning the facts that Defendants had concealed or failed to disclose.  Illinois Plaintiffs did not, and could not, unravel Defendants' deception on their own.

2517. Having been aware of the Theft-Prone Design within the Vehicles and having known that Illinois Plaintiffs could not have reasonably been expected to know of the Theft-Prone Design, Defendants had a duty to disclose the Theft-Prone Design to Illinois Plaintiffs in connection with the sale of the Vehicles.  Defendants further had a duty to disclose the Theft-Prone Design and the true value of the Vehicles.

2518. Instead, Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products.  They did so at the expense of Illinois Plaintiffs.

2519. If Defendants had fully and adequately disclosed the Theft-Prone Design to consumers, Illinois Plaintiffs would have seen such a disclosure.

2520. Had Illinois Plaintiffs known of the Theft-Prone Design within the Vehicles, they would not have purchased the Vehicles or would have paid less for them. Through their omissions and concealment with respect to the Theft-Prone Design within the Vehicles, Defendants intended to induce, and did in fact induce, Illinois Plaintiffs to either purchase a Vehicle that they otherwise would not have purchased or pay more for a Vehicle than they otherwise would have paid.

2521. As a direct and proximate result of Defendants' omissions, Illinois Plaintiffs overpaid for the Vehicles because Illinois Plaintiffs would either have paid less for the Vehicles or would not have purchased the Vehicles at all if the Theft-Prone Design had been disclosed to them.

2522. As a direct and proximate result of Defendants' omissions, Illinois

Plaintiffs purchased Vehicles highly susceptible to theft and were forced to pay higher insurance premiums to account for the susceptibility that they did not knowingly accept, purchase, or lease.

2523. As a direct and proximate result of Defendants' omissions, the Illinois Plaintiffs paid higher insurance premiums and are now left with Vehicles with significantly diminished values.

2524. Accordingly, Defendants are liable to Illinois Plaintiffs for their damages, including but not limited to the difference in value, increased insurance premiums that Illinois Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

2525. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, in reckless disregard of the Illinois Plaintiffs' rights and well-being, and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

2526. Illinois Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 5. Negligent Misrepresentation.[127]

2527. Illinois Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

2528. Defendants, in the course of their business selling and promoting motor vehicles, supplied false information, including that the Vehicles were safe, reliable, and of a particular value, to guide motor vehicle buyers, including Illinois Plaintiffs, in their choice of transaction.

2529. Defendants made misrepresentations of material facts concerning the

---

[127] For the names of the Illinois Plaintiffs who do not allege a claim for Negligent Misrepresentation, see Exhibit E.

COMPLAINT

safety, reliability, and value of the Vehicles that they knew or should have known were false. Specifically, Defendants misrepresented that the Vehicles had effective anti-theft equipment or design elements; misrepresented that the Vehicles were safe and reliable forms of transportation; misrepresented that the Vehicles complied with all federal and industry safety and theft prevention standards; and misrepresented the true value of the Vehicles. Defendants supplied this information in the course of their business to guide Illinois Plaintiffs in their Vehicle selection and intended to induce Illinois Plaintiffs to purchase one of Defendants' Vehicles.

2530. Illinois Plaintiffs justifiably relied upon Defendants' representations because, as the entities responsible for designing and manufacturing the Vehicles, Defendants held themselves out to be knowledgeable about the Vehicles' components and honest in their promotion of the Vehicles. Illinois Plaintiffs' reliance was further reasonable given the hidden and technical nature of the Theft-Prone Design and practical inability of Illinois Plaintiffs to discover the Theft-Prone Design on their own. Because Defendants held the Vehicles out to be in line with industry standards, the representation was not unreasonable on its face and Illinois Plaintiffs had no apparent reason to doubt the veracity of Defendants' representations.

2531. Defendants had a duty to disclose all relevant information regarding the Vehicles' safety, reliability, quality, and characteristics that would affect the Illinois Plaintiffs' choice of purchase as consumers.

2532. Defendants failed to exercise reasonable care or competence in communicating the standards of safety, reliability, quality, and characteristics of the Vehicles to the consumers, including Illinois Plaintiffs, when they failed to disclose the lack of anti-theft prevention technology in the Vehicles. Rather, Defendants published materials and marketed the Vehicles for years as safe, reliable, and of a quality consistent with the industry standard.

2533. Illinois Plaintiffs would not have purchased, or would have purchased for a lower price, the Vehicles which Defendants negligently misrepresented as safe, of

standard quality, and containing standard trade characteristics, such as anti-theft prevention technology. Additionally, as a direct and proximate result, Illinois Plaintiffs have had to pay higher insurance premiums to account for the Vehicles' high susceptibility to theft and are now left with Vehicles that have a lower value than they would have had without the defect.

2534. As a direct and proximate result of Illinois Plaintiffs' reasonable reliance on Defendants' negligent misrepresentations, Illinois Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that Illinois Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

2535. Illinois Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 6. Negligence.

2536. Illinois Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

2537. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

2538. Defendants owed a duty of care to Illinois Plaintiffs. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves, higher insurance premiums, and accelerated depreciation.

2539. Defendants failed to exercise reasonable care in connection with their manufacture, distribution, sale, and/or leasing of the Vehicles.

2540. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal

COMPLAINT

standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Illinois Plaintiffs.

2541. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS No. 114.

2542. As a direct and proximate result of Defendants' failure to exercise reasonable care, Illinois Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that Illinois Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

2543. Illinois Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 7.    Unjust Enrichment.[128]

2544. Illinois Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

2545. When they purchased and leased the Vehicles, Illinois Plaintiffs conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

2546. In exchange, Defendants did not confer the benefit that was promised to Plaintiffs when Defendants provided Vehicles of a lesser value and poorer quality than agreed.  Rather, Defendants kept the monetary amounts Plaintiffs paid for Vehicles of a particular value and nature that conformed with federal and industry safety standards,

---

[128] For the names of the Illinois Plaintiffs who do not allege a claim for Unjust Enrichment, see Exhibit E.

COMPLAINT

but Defendants did not provide Vehicles of that particular value or nature that conformed with federal and industry safety standards.

2547. Illinois Plaintiffs have a reasonable expectation of compensation because they conferred an economic benefit on the Defendants with the expectation that they were receiving a different product—one of the particular design, nature, quality, and value that contained an anti-theft system and was compliant with federal safety and industry standards—in exchange.

2548. Illinois Plaintiffs would not have purchased or leased their Vehicles, or would have paid less for them, had they known of the Theft-Prone Design at the time of purchase or lease. Therefore, Defendants profited from the sale and lease of the Vehicles to the detriment and expense of Illinois Plaintiffs by misrepresenting the Vehicles' true design, nature, quality, and value.

2549. Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft-Prone Design, the Vehicles' noncompliant nature and poorer quality, and the Vehicles' reduced value, yet they failed to disclose this knowledge and misled the Illinois Plaintiffs regarding the design, nature, quality, and value of the Vehicles while profiting from this deception.

2550. Accordingly, Illinois Plaintiffs have been impoverished due to Defendants' enrichment without justification.

2551. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, in part because they were procured as a result of their wrongful conduct alleged above.

2552. Illinois Plaintiffs are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Illinois Plaintiffs to the position they occupied prior to dealing with these Defendants, with such amounts to be determined at trial.

COMPLAINT

2553. Illinois Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages, because if Illinois Plaintiffs' claims for damages are dismissed or judgment is entered in favor of Defendants, Illinois Plaintiffs will have no adequate legal remedy.

### N.    Indiana State Law Claims for Relief

### (Alleged by Indiana Plaintiffs Against All Defendants)

### 1.    Breach of Implied Warranty Under Ind. Code §§ 26-1-2-314 and 26-1-2.1-212.

2554. Indiana Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

2555. A warranty that the Vehicles were in merchantable condition is implied by law pursuant to Ind. Code §§ 26-1-2-314 and 26-1-2.1-212.

2556. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Ind. Code §§ 26-1-2.1-103(3) and 26-1-2-104(1), "sellers" of motor vehicles under § 26-1-2-103(1)(d)) and, with respect to leases, "lessors" of motor vehicles under Ind. Code § 26-1-2.1-103(1)(p).

2557. At all relevant times, Indiana Plaintiffs who purchased Vehicles in Indiana were and are "buyers" within the meaning of Ind. Code § 26-1-2-103(1)(a).

2558. At all relevant times, Indiana Plaintiffs who leased Vehicles in Indiana were and are "lessees" within the meaning of Ind. Code § 26-1-2.1-103(1)(n).

2559. At all relevant times, Indiana Plaintiffs' Vehicles (whether purchased or leased) were and are "goods" within the meaning of Ind. Code §§ 26-1-2.1-103(1)(h) and 26-1-2-105(1).

2560. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Indiana Plaintiffs with an implied warranty that the purchased and leased Vehicles were in merchantable condition and fit for the ordinary purposes for which they were sold or leased. This implied warranty included that the Vehicles (a) were manufactured, supplied,

distributed, and sold by Defendants, (b) were safe and reliable for transportation, (c) complied with all federal, state, and industry motor vehicle regulations and safety standards, including FMVSS No. 114, (d) were not at an abnormally high risk of theft, and (e) were of a particular value and quality that complied with federal and industry safety standards.

2561. The Vehicles did not comply with the implied warranty of merchantability because the Vehicles were defective and not in merchantable condition at the time of sale and/or lease, were not fit for their ordinary purpose of providing safe and reliable transportation at the time of sale or lease, and would not pass without objection in the trade as they deviated significantly from the industry standard and can be stolen in mere minutes without a key.  Defendants knew at the time of manufacture that the Vehicles contained the Theft-Prone Design and lacked any anti-theft equipment or design elements that effectively prevent theft or comply with FMVSS No. 114.  Therefore, the Defendants knew at the time of manufacture that the Vehicles are at an abnormally high risk of theft and are unsafe and an unreliable form of transportation.  The Theft-Prone Design renders the Vehicles highly vulnerable to theft and a prime target for thieves as they can be easily stolen in seconds.  Defendants knew at the time of manufacture that because their Vehicles did not include any anti-theft measures that satisfied FMVSS No. 114, making their Vehicles more prone to theft and failing to comply with federal regulations, the Vehicles would require larger insurance premiums and would depreciate at a more rapid rate than a comparable vehicle with anti-theft measure that satisfied FMVSS No. 114. Consequently, at the time of sale and/or lease, the Vehicles were not fit for their ordinary purpose of providing safe and reliable transportation.

2562. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable.  Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Indiana Plaintiffs, of the safety defect.  Any time limitations regarding the warranty period were also unconscionable and inadequate to

protect Indiana Plaintiffs. Indiana Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants. A gross disadvantage in bargaining power existed between Indiana Plaintiffs and Defendants, which unreasonably favored Defendants. Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left Indiana Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

2563. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that Indiana Plaintiffs may seek alternative remedies. Indiana Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

2564. Indiana Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure. Indiana Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Indiana Plaintiffs' breach of warranty claims. Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Indiana Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Indiana Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a

COMPLAINT

proposed cure to the breaches.  To date, Defendants failed to remedy their breaches.

2565. Alternatively, Indiana Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches.  Indiana Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

2566. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Indiana Plaintiffs' Vehicles were and are defective, the Theft-Prone Design in the Vehicles has not been remedied, and Indiana Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that Indiana Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

## 2. Breach of Express Warranty Under Ind. Code §§ 26-1-2-313 and 26-1-2.1-210.

2567. Indiana Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

2568. During the relevant time periods, Defendants manufactured the Vehicles and Indiana Plaintiffs purchased and/or leased the Vehicles from Defendants.

2569. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Ind. Code §§ 26-1-2.1-103(3) and 26-1-2-104(1), "sellers" of motor vehicles under § 26-1-2-103(1)(d)) and, with respect to leases, "lessors" of motor vehicles under Ind. Code § 26-1-2.1-103(1)(p).

2570. At all relevant times, Indiana Plaintiffs who purchased Vehicles in Indiana were and are "buyers" within the meaning of Ind. Code § 26-1-2-103(1)(a).

2571. At all relevant times, Indiana Plaintiffs who leased Vehicles in Indiana

COMPLAINT

were and are "lessees" within the meaning of Ind. Code § 26-1-2.1-103(1)(n).

2572. At all relevant times, Indiana Plaintiffs' Vehicles (whether purchased or leased) were and are "goods" within the meaning of Ind. Code §§ 26-1-2.1-103(1)(h) and 26-1-2-105(1).

2573. By affixing a VIN plate to each Vehicle at the time of manufacture, Defendants expressly warranted each Vehicles' conformance to "all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture shown." These statements constitute a description, affirmation of fact, and promise made to Indiana Plaintiffs as to the Vehicles' condition, quality, safety, and reliability. These statements, affirmations, and descriptions became the basis of the bargain between Indiana Plaintiffs and Defendants, as Indiana Plaintiffs relied on these statements when making their decisions to purchase and/or lease the Vehicles. As such, the statements are an express warranty under Indiana law pursuant to Ind. Code §§ 26-1-2-313 and 26-1-2.1-210, and the Vehicles did not conform to the affirmations of fact, promises made by Defendants, or Defendants' description of the Vehicles.

2574. Indiana Plaintiffs used the Vehicles in accordance with their normal operation and did not misuse or mishandle the Vehicles in any way material to the allegations set forth herein.

2575. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable. Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Indiana Plaintiffs, of the safety defect. Any time limitations regarding the warranty period were also unconscionable and inadequate to protect Indiana Plaintiffs. Indiana Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants. A gross disadvantage in bargaining power existed between Indiana Plaintiffs and Defendants, which unreasonably favored Defendants. Moreover, Defendants'

COMPLAINT

knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left Indiana Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

2576. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that Indiana Plaintiffs may seek alternative remedies. Indiana Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

2577. Indiana Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure. Indiana Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Indiana Plaintiffs' breach of warranty claims. Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Indiana Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Indiana Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches. To date, Defendants failed to remedy their breaches.

2578. Alternatively, Indiana Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured,

COMPLAINT

distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches. Indiana Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

2579. The Vehicles did not perform as promised in accordance with Defendants' express warranty; instead, the Vehicles did not meet all applicable motor vehicle safety and theft prevention standards in effect on the date of manufacture. The Vehicles are capable of being stolen in a matter of seconds without a key and do not comply with the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles do not, in fact, conform to the applicable anti-theft standards.

2580. As a direct and proximate result of Defendants' breaches, Indiana Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that Indiana Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

**3.    Violation of Indiana Deceptive Consumer Sales Act Under Ind. Code § 24-5-0.5-1, et seq.**

2581. Indiana Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

2582. Defendants and Indiana Plaintiffs are "persons" within the meaning of Ind. Code § 24-5-0.5-2(a)(2).

2583. The Vehicles were the "subject of a consumer transaction" within the meaning of Ind. Code § 24-5-0.5-2(a)(4).

2584. Defendants were and are engaged in "consumer transactions" within the meaning of Ind. Code § 24-5-0.5-2(a)(1).

2585. Defendants engaged in unlawful and deceptive trade practices, including "unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction[,]" as prohibited under the Indiana Deceptive Consumer Sales Act ("Indiana

COMPLAINT

DCSA"), Ind. Code § 24-5-0.5-3(a).

2586. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Indiana DCSA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Theft-Prone Design, as detailed above. Defendants used deception and unfair practices, false pretense, false promise, misrepresentation, concealment, suppression, and omission of material facts with the intent that Indiana Plaintiffs rely on such concealment, suppression, or omission in connection with the sale or advertisement of their Vehicles, in violation of Ind. Code § 24-5-0.5-3(a).

2587. Under the Indiana DCSA, Defendants had an ongoing duty to Indiana Plaintiffs to refrain from unfair or deceptive practices in the course of their business. Specifically, Defendants owed Indiana Plaintiffs a duty to disclose all the material facts concerning the Theft-Prone Design in the Vehicles.

2588. Defendants had exclusive access to and far superior knowledge about facts regarding the Theft-Prone Design, and Defendants knew these facts were not known to or reasonably discoverable by Indiana Plaintiffs.

2589. Given the Theft-Prone Design's hidden and technical nature, Indiana Plaintiffs lack the sophisticated expertise in vehicle components necessary to discover the Theft-Prone Design on their own.

2590. Defendants knew that the Theft-Prone Design gave rise to safety concerns for the consumers who use the Vehicles, and that the Theft-Prone Design would have been a material fact in the Indiana Plaintiffs' decisions to buy or lease the Vehicles.

2591. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Theft-Prone Design. Because they volunteered to provide

COMPLAINT

information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

2592. As detailed above, the information concerning the Theft-Prone Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

2593. By misrepresenting the Vehicles as safe, reliable, and free from defects, and by failing to disclose and actively concealing the dangers and risks posed by the Theft-Prone Design, Defendants engaged in the following unfair or deceptive business practices in violation of Indiana DCSA: (a) representing that the Vehicles have approval, characteristics, uses, and benefits which they do not have; (b) representing that the Vehicles are of a particular standard, quality, and grade when they are not; and (c) advertising the Vehicles with the intent not to sell or lease them as advertised. Ind. Code §§ 24-5-0.5-3(b)(1), (2), and (11).

2594. Defendants intended for Indiana Plaintiffs to rely on them to provide adequately designed Vehicles and to honestly and accurately reveal the safety hazards described above.

2595. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Theft-Prone Design. Those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Indiana Plaintiffs, about the true safety and reliability of the Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

2596. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Theft-Prone Design and true characteristics of the Vehicles were material to the decisions of Indiana Plaintiffs to purchase or lease the Vehicles, as Defendants intended. Indiana Plaintiffs were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and

relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase or lease the Vehicles.

2597. Indiana Plaintiffs' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, and/or otherwise learning that the Vehicles contained the Theft-Prone Design, as alleged above. Indiana Plaintiffs did not, and could not, unravel Defendants' deception on their own.

2598. Had they known the truth about the Theft-Prone Design, Indiana Plaintiffs would not have purchased or leased the Vehicles or would have paid significantly less for them.

2599. Indiana Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2600. Defendants' violations present a continuing risk to Indiana Plaintiffs and the general public because the Vehicles remain unsafe due to the Theft-Prone Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

2601. Defendants had ample notice provided by the numerous complaints filed against them, internet videos, and news reports.  Furthermore, on September 17, 2025, Indiana Plaintiffs sent Defendants written notice letters of Defendants' violations, Plaintiffs' claims, and a proposed cure to the violations.  To date, Defendants failed to remedy their violations.  Because Defendants failed to remedy their unlawful conduct, Indiana Plaintiffs seek all damages and relief to which Indiana Plaintiffs are entitled.

2602. To the extent the Theft-Prone Design was an uncured defect, Indiana Plaintiffs gave requisite and timely notice to the Defendants sufficient for the purposes of Ind. Code § 24-5-0.5-5(a) through numerous complaints filed against them including written notice letters Plaintiffs sent Defendants.  To date, Defendants failed to remedy their violations.

2603. Alternatively, the conduct of the Defendants was an incurable deceptive act within the meaning of Ind. Code § 24-5-0.5-2(a)(8) and was done by the Defendants

- 615 -

COMPLAINT

as part of a scheme, artifice, or device with intent to defraud or mislead. Defendants intentionally deceived Plaintiffs by concealing the existence of the Theft-Prone Design and making statements in the VIN plates and other materials provided with the Vehicles that the Vehicles conformed to the applicable federal safety and anti-theft standards when the Defendants knew the Vehicles in fact contained the Theft-Prone Design and did not conform to the standards as advertised. As such, Plaintiffs and Plaintiffs did not have a requirement to provide notice to Defendants for such incurable deceptive acts under Ind. Code §§ 24-5-0.5-2(7), (8) and 24-5-0.5-5(a).

2604. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile. As alleged above, Defendants have long known that the Vehicles contained the Theft-Prone Design yet did nothing to remedy the Theft-Prone Design.

2605. Indiana Plaintiffs seek an order (1) enjoining Defendants' unfair and/or deceptive acts, methods, or practices alleged herein, and (2) awarding damages, punitive damages, attorney's fees, costs, and/or any other just and proper relief available under the Indiana DCSA.

### 4. Fraud by Omission and Concealment.

2606. Indiana Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

2607. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards and are therefore of a particular value and quality. In reality, however, the Vehicles do not comply with such standards and are of a lesser value and quality accordingly.

2608. Defendants were aware of the Theft-Prone Design when they manufactured, marketed, and sold the Vehicles to Indiana Plaintiffs. Defendants further knew that the Theft-Prone Design gave rise to serious safety risks for the consumers that would use the Vehicles and naturally give rise to higher insurance premiums and accelerated depreciation. At the same time, Defendants were aware of the Federal

Motor Vehicle Safety Standards and of the effectiveness of engine immobilizer technology in reducing safety hazards. Defendants were also aware that noncompliance with federal and industry standards lowered the value of the Vehicles and would render the Vehicles difficult to insure.

2609. Defendants knew that the Theft-Prone Design, the safety hazards it posed, and the reduction in the Vehicles' value would have been material facts to the Indiana Plaintiffs' decisions to buy or lease the Vehicles.

2610. A reasonable person would find the Vehicles' lack of industry-standard anti-theft measures and noncompliance with applicable safety standards material to their decision to purchase, lease, and maintain the Vehicles because these deficiencies impact safety, availability, the Vehicles' value, and the cost to insure the Vehicles.

2611. Defendants knowingly made affirmatively false or incomplete statements of material facts as to the Vehicles' safety, reliability, quality, value, and compliance with applicable motor vehicle safety and theft prevention standards, while they intentionally withheld, concealed, omitted, suppressed, and failed to disclose material facts about the Theft-Prone Design, including the lack of effective anti-theft measures, significant safety risks, noncompliance with federal motor vehicle safety standards, and the Vehicles' true value.

2612. Defendants volunteered incomplete information about the Vehicles they offered for sale and/or lease to consumers, including false statements as to the Vehicles' safety, compliance with applicable safety and anti-theft standards, and value while at the same time withholding the existence of the Theft-Prone Design. Defendants further knew and failed to disclose that the Theft-Prone Design and lack of standard anti-theft measures left the Vehicles at substantially lower value than the price for which they were advertised, marketed, sold, and/or leased.

2613. Alternatively, Defendants made false misrepresentations about the Theft-Prone Design with such utter disregard and recklessness that their knowledge regarding the Theft-Prone Design, its unsafe and unreliable nature, and its substantially lower

value may be inferred.

2614. Defendants intended for the Indiana Plaintiffs to rely on their omissions and concealment—which Indiana Plaintiffs did in the manner reasonably contemplated by Defendants when they purchased or leased the Vehicles at the prices they paid believing that their vehicles would not have a Theft-Prone Design that would affect the quality, reliability, and safety of the Vehicles.

2615. Indiana Plaintiffs' reliance on Defendants' misrepresentations and concealment was reasonable and justifiable, as Indiana Plaintiffs had no way of learning the facts that Defendants had concealed or failed to disclose. Indiana Plaintiffs did not, and could not, unravel Defendants' deception on their own.

2616. Having been aware of the Theft-Prone Design within the Vehicles and having known that Indiana Plaintiffs could not have reasonably been expected to know of the Theft-Prone Design, Defendants had a duty to disclose the Theft-Prone Design to Indiana Plaintiffs in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Theft-Prone Design and the true value of the Vehicles.

2617. Instead, Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Indiana Plaintiffs.

2618. If Defendants had fully and adequately disclosed the Theft-Prone Design to consumers, Indiana Plaintiffs would have seen such a disclosure.

2619. Had Indiana Plaintiffs known of the Theft-Prone Design within the Vehicles, they would not have purchased the Vehicles or would have paid less for them. Through their omissions and concealment with respect to the Theft-Prone Design within the Vehicles, Defendants intended to induce, and did in fact induce, Indiana Plaintiffs to either purchase a Vehicle that they otherwise would not have purchased or pay more for a Vehicle than they otherwise would have paid.

2620. As a direct and proximate result of Defendants' omissions, Indiana Plaintiffs overpaid for the Vehicles because Indiana Plaintiffs would either have paid less for the Vehicles or would not have purchased the Vehicles at all if the Theft-Prone Design had been disclosed to them.

2621. As a direct and proximate result of Defendants' omissions, Indiana Plaintiffs purchased Vehicles highly susceptible to theft and were forced to pay higher insurance premiums to account for the susceptibility that they did not knowingly accept, purchase, or lease.

2622. As a direct and proximate result of Defendants' omissions, the Indiana Plaintiffs paid higher insurance premiums and are now left with Vehicles with significantly diminished values.

2623. Accordingly, Defendants are liable to Indiana Plaintiffs for their damages.

2624. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, in reckless disregard of the Indiana Plaintiffs' rights and well-being, and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.As a direct and proximate result of Defendants' omissions, Indiana Plaintiffs purchased Vehicles highly susceptible to theft and were forced to pay higher insurance premiums to account for the susceptibility that they did not knowingly accept, purchase, or lease.

2625. As a direct and proximate result of Defendants' omissions, the Indiana Plaintiffs paid higher insurance premiums and are now left with Vehicles with significantly diminished values.

2626. Accordingly, Defendants are liable to Indiana Plaintiffs for their damages, including but not limited to the difference in value, increased insurance premiums that Indiana Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

COMPLAINT

2627. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, in reckless disregard of the Indiana Plaintiffs' rights and well-being, and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

2628. Indiana Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 5. Negligent Misrepresentation.

2629. Indiana Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

2630. Defendants, in the course of their business selling and promoting motor vehicles, supplied false information, including that the Vehicles were safe, reliable, and of a particular value, to guide motor vehicle buyers, including Indiana Plaintiffs, in their choice of transaction.

2631. Defendants made misrepresentations of material facts concerning the safety, reliability, and value of the Vehicles that they knew or should have known were false. Specifically, Defendants misrepresented that the Vehicles had effective anti-theft equipment or design elements; misrepresented that the Vehicles were safe and reliable forms of transportation; misrepresented that the Vehicles complied with all federal and industry safety and theft prevention standards; and misrepresented the true value of the Vehicles. Defendants supplied this information in the course of their business to guide Indiana Plaintiffs in their Vehicle selection and intended to induce Indiana Plaintiffs to purchase one of Defendants' Vehicles.

2632. Indiana Plaintiffs justifiably relied upon Defendants' representations because, as the entities responsible for designing and manufacturing the Vehicles, Defendants held themselves out to be knowledgeable about the Vehicles' components and honest in their promotion of the Vehicles. Indiana Plaintiffs' reliance was further reasonable given the hidden and technical nature of the Theft-Prone Design and

COMPLAINT

practical inability of Indiana Plaintiffs to discover the Theft-Prone Design on their own. Because Defendants held the Vehicles out to be in line with industry standards, the representation was not unreasonable on its face and Indiana Plaintiffs had no apparent reason to doubt the veracity of Defendants' representations.

2633. Defendants had a duty to disclose all relevant information regarding the Vehicles' safety, reliability, quality, and characteristics that would affect the Indiana Plaintiffs' choice of purchase as consumers.

2634. Defendants failed to exercise reasonable care or competence in communicating the standards of safety, reliability, quality, and characteristics of the Vehicles to the consumers, including Indiana Plaintiffs, when they failed to disclose the lack of anti-theft prevention technology in the Vehicles. Rather, Defendants published materials and marketed the Vehicles for years as safe, reliable, and of a quality consistent with the industry standard.

2635. Indiana Plaintiffs would not have purchased, or would have purchased for a lower price, the Vehicles which Defendants negligently misrepresented as safe, of standard quality, and containing standard trade characteristics, such as anti-theft prevention technology. Additionally, as a direct and proximate result, Indiana Plaintiffs have had to pay higher insurance premiums to account for the Vehicles' high susceptibility to theft and are now left with Vehicles that have a lower value than they would have had without the defect.

2636. As a direct and proximate result of Indiana Plaintiffs' reasonable reliance on Defendants' negligent misrepresentations, Indiana Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that Indiana Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

2637. Indiana Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

COMPLAINT

### 6.    Negligence.

2638. Indiana Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

2639. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

2640. Defendants owed a duty of care to Indiana Plaintiffs. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves, higher insurance premiums, and accelerated depreciation.

2641. Defendants failed to exercise reasonable care in connection with their manufacture, distribution, sale, and/or leasing of the Vehicles.

2642. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Indiana Plaintiffs.

2643. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS No. 114.

2644. As a direct and proximate result of Defendants' failure to exercise reasonable care, Indiana Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that Indiana Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants

COMPLAINT

are liable, in an amount to be proven at trial.

2645. Indiana Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 7. Unjust Enrichment.

2646. Indiana Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

2647. When they purchased and leased the Vehicles, Indiana Plaintiffs conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

2648. In exchange, Defendants did not confer the benefit that was promised to Plaintiffs when Defendants provided Vehicles of a lesser value and poorer quality than agreed.  Rather, Defendants kept the monetary amounts Plaintiffs paid for Vehicles of a particular value and nature that conformed with federal and industry safety standards, but Defendants did not provide Vehicles of that particular value or nature that conformed with federal and industry safety standards.

2649. Indiana Plaintiffs have a reasonable expectation of compensation because they conferred an economic benefit on the Defendants with the expectation that they were receiving a different product—one of the particular design, nature, quality, and value that contained an anti-theft system and was compliant with federal safety and industry standards—in exchange.

2650. Indiana Plaintiffs would not have purchased or leased their Vehicles, or would have paid less for them, had they known of the Theft-Prone Design at the time of purchase or lease.  Therefore, Defendants profited from the sale and lease of the Vehicles to the detriment and expense of Indiana Plaintiffs by misrepresenting the Vehicles' true design, nature, quality, and value.

2651. Defendants appreciated these economic benefits.  These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers.  They knew of these benefits because they were aware of the Theft-Prone

COMPLAINT

Design, the Vehicles' noncompliant nature and poorer quality, and the Vehicles' reduced value, yet they failed to disclose this knowledge and misled the Indiana Plaintiffs regarding the design, nature, quality, and value of the Vehicles while profiting from this deception.

2652. Accordingly, Indiana Plaintiffs have been impoverished due to Defendants' enrichment without justification.

2653. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, in part because they were procured as a result of their wrongful conduct alleged above.

2654. Indiana Plaintiffs are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Indiana Plaintiffs to the position they occupied prior to dealing with these Defendants, with such amounts to be determined at trial.

2655. Indiana Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages, because if Indiana Plaintiffs' claims for damages are dismissed or judgment is entered in favor of Defendants, Indiana Plaintiffs will have no adequate legal remedy.

**O.    Iowa State Law Claims for Relief**

**(Alleged by Iowa Plaintiffs Against All Defendants)**

**1.    Breach of Implied Warranty Under Iowa Code §§ 554.2314 and 554.13212.**

2656. Iowa Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

2657. A warranty that the Vehicles were in merchantable condition is implied by law pursuant to Iowa Code §§ 554.2314 and 554.13212.

2658. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Iowa Code §§ 554.2104(1) and 554.13103(3), "sellers" of motor vehicles under § 554.2103(1)(d) and, with respect to leases, "lessors" of motor vehicles

- 624 -
COMPLAINT

under Iowa Code § 554.13103(1)(p).

2659. At all relevant times, Iowa Plaintiffs who purchased Vehicles in Iowa were and are "buyers" within the meaning of Iowa Code § 554.2103(1)(a).

2660. At all relevant times, Iowa Plaintiffs who leased Vehicles in Iowa were and are "lessees" within the meaning of Iowa Code § 554.13103(1)(o).

2661. At all relevant times, Iowa Plaintiffs' Vehicles (whether purchased or leased) were and are "goods" within the meaning of Iowa Code §§ 554.2105(1) and 554.13103(1)(h).

2662. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased.  Defendants provided Iowa Plaintiffs with an implied warranty that the purchased and leased Vehicles were in merchantable condition and fit for the ordinary purposes for which they were sold or leased.  This implied warranty included that the Vehicles (a) were manufactured, supplied, distributed, and sold by Defendants, (b) were safe and reliable for transportation, (c) complied with all federal, state, and industry motor vehicle regulations and safety standards, including FMVSS No. 114, (d) were not at an abnormally high risk of theft, and (e) were of a particular value and quality that complied with federal and industry safety standards.

2663. The Vehicles did not comply with the implied warranty of merchantability because the Vehicles were defective and not in merchantable condition at the time of sale and/or lease, were not fit for their ordinary purpose of providing safe and reliable transportation at the time of sale or lease, and would not pass without objection in the trade as they deviated significantly from the industry standard and can be stolen in mere minutes without a key.  Defendants knew at the time of manufacture that the Vehicles contained the Theft-Prone Design and lacked any anti-theft equipment or design elements that effectively prevent theft or comply with FMVSS No. 114.  Therefore, the Defendants knew at the time of manufacture that the Vehicles are at an abnormally high risk of theft and are unsafe and an unreliable form of transportation.  The Theft-Prone

Design renders the Vehicles highly vulnerable to theft and a prime target for thieves as they can be easily stolen in seconds. Defendants knew at the time of manufacture that because their Vehicles did not include any anti-theft measures that satisfied FMVSS No. 114, making their Vehicles more prone to theft and failing to comply with federal regulations, the Vehicles would require larger insurance premiums and would depreciate at a more rapid rate than a comparable vehicle with anti-theft measure that satisfied FMVSS No. 114. Consequently, at the time of sale and/or lease, the Vehicles were not fit for their ordinary purpose of providing safe and reliable transportation.

2664. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable. Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Iowa Plaintiffs, of the safety defect. Any time limitations regarding the warranty period were also unconscionable and inadequate to protect Iowa Plaintiffs. Iowa Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants. A gross disadvantage in bargaining power existed between Iowa Plaintiffs and Defendants, which unreasonably favored Defendants. Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left Iowa Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

2665. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that Iowa Plaintiffs may seek alternative remedies. Iowa Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

2666. Iowa Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure. Iowa Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the

Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Iowa Plaintiffs' breach of warranty claims. Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Iowa Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Iowa Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches. To date, Defendants failed to remedy their breaches.

2667. Alternatively, Iowa Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches. Iowa Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

2668. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Iowa Plaintiffs' Vehicles were and are defective, the Theft-Prone Design in the Vehicles has not been remedied, and Iowa Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that Iowa Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

COMPLAINT

## 2.    Breach of Express Warranty Under Iowa Code §§ 554.2313 and 554.13210.[129]

2669. Iowa Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

2670. During the relevant time periods, Defendants manufactured the Vehicles and Iowa Plaintiffs purchased and/or leased the Vehicles from Defendants.

2671. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Iowa Code §§ 554.2104(1) and 554.13103(3), "sellers" of motor vehicles under § 554.2103(1)(d) and, with respect to leases, "lessors" of motor vehicles under Iowa Code § 554.13103(1)(p).

2672. At all relevant times, Iowa Plaintiffs who purchased Vehicles in Iowa were and are "buyers" within the meaning of Iowa Code § 554.2103(1)(a).

2673. At all relevant times, Iowa Plaintiffs who leased Vehicles in Iowa were and are "lessees" within the meaning of Iowa Code § 554.13103(1)(o).

2674. At all relevant times, Iowa Plaintiffs' Vehicles (whether purchased or leased) were and are "goods" within the meaning of Iowa Code §§ 554.2105(1) and 554.13103(1)(h).

2675. By affixing a VIN plate to each Vehicle at the time of manufacture, Defendants expressly warranted each Vehicles' conformance to "all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture shown." These statements constitute a description, affirmation of fact, and promise made to Iowa Plaintiffs as to the Vehicles' condition, quality, safety, and reliability. These statements, affirmations, and descriptions became the basis of the bargain between Iowa Plaintiffs and Defendants, as Iowa Plaintiffs relied on these statements when making their decisions to purchase and/or lease the Vehicles. As such,

---

[129] For the names of the Iowa Plaintiffs who do not allege a claim for Breach of Express Warranty Under Iowa Code §§ 554.2313 and 554.13210, see Exhibit E.

COMPLAINT

the statements are an express warranty under Iowa law pursuant to Iowa Code §§ 554.2313 and 554.13210, and the Vehicles did not conform to the affirmations of fact, promises made by Defendants, or Defendants' description of the Vehicles.

2676. Iowa Plaintiffs used the Vehicles in accordance with their normal operation and did not misuse or mishandle the Vehicles in any way material to the allegations set forth herein.

2677. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable. Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Iowa Plaintiffs, of the safety defect. Any time limitations regarding the warranty period were also unconscionable and inadequate to protect Iowa Plaintiffs. Iowa Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants. A gross disadvantage in bargaining power existed between Iowa Plaintiffs and Defendants, which unreasonably favored Defendants. Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left Iowa Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

2678. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that Iowa Plaintiffs may seek alternative remedies. Iowa Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

2679. Iowa Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure. Iowa Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Iowa Plaintiffs' breach of warranty claims. Additionally,

COMPLAINT

Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Iowa Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Iowa Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches. To date, Defendants failed to remedy their breaches.

2680. Alternatively, Iowa Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches. Iowa Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

2681. The Vehicles did not perform as promised in accordance with Defendants' express warranty; instead, the Vehicles did not meet all applicable motor vehicle safety and theft prevention standards in effect on the date of manufacture. The Vehicles are capable of being stolen in a matter of seconds without a key and do not comply with the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles do not, in fact, conform to the applicable anti-theft standards.

2682. As a direct and proximate result of Defendants' breaches, Iowa Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance

premiums that Iowa Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

### 3. Violation of Iowa Private Right of Action for Consumer Frauds Act Under Iowa Code § 714h.1, et seq.[130]

2683. Iowa Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

2684. Defendants and Iowa Plaintiffs are "persons" within the meaning of Iowa Code § 714H.2(7).

2685. Iowa Plaintiffs are "consumers" within the meaning of Iowa Code § 714H.2(3).

2686. The Vehicles are "merchandise" and "consumer merchandise" within the meanings of Iowa Code §§ 714H.2(4), and (6).

2687. Defendants engaged in unlawful and deceptive trade practices, including engaging in any "practice or act the person knows or reasonably should know is an unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact with the intent that others rely upon the unfair practice, deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression, or omission in connection with the advertisement, sale, or lease of consumer merchandise[,]" as prohibited under the Iowa Private Right of Action for Consumer Frauds Act (the "Iowa CFA"), Iowa Code § 714H.3(1).

2688. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Iowa CFA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Theft-Prone Design, as

---

[130] For the names of the Iowa Plaintiffs who do not allege a claim for Violation of Iowa Private Right of Action for Consumer Frauds Act Under Iowa Code § 714h.1, et seq., see Exhibit E.

COMPLAINT

detailed above. Defendants used deception and unfair practices, false pretense, false promise, misrepresentation, concealment, suppression, and omission of material facts with the intent that Iowa Plaintiffs rely on such concealment, suppression, or omission in connection with the sale or advertisement of their Vehicles, in violation of Iowa Code § 714H.3(1).

2689. Under the Iowa CFA, Defendants had an ongoing duty to Iowa Plaintiffs to refrain from unfair or deceptive practices in the course of their business. Specifically, Defendants owed Iowa Plaintiffs a duty to disclose all the material facts concerning the Theft-Prone Design in the Vehicles.

2690. Defendants had exclusive access to and far superior knowledge about facts regarding the Theft-Prone Design, and Defendants knew these facts were not known to or reasonably discoverable by Iowa Plaintiffs.

2691. Given the Theft-Prone Design's hidden and technical nature, Iowa Plaintiffs lack the sophisticated expertise in vehicle components necessary to discover the Theft-Prone Design on their own.

2692. Defendants knew that the Theft-Prone Design gave rise to safety concerns for the consumers who use the Vehicles, and that the Theft-Prone Design would have been a material fact in the Iowa Plaintiffs' decisions to buy or lease the Vehicles.

2693. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Theft-Prone Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

2694. As detailed above, the information concerning the Theft-Prone Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

2695. By misrepresenting the Vehicles as safe, reliable, and free from defects, and by failing to disclose and actively concealing the dangers and risks posed by the Theft-Prone Design, Defendants engaged in unfair or deceptive business practices in violation of Iowa CFA.  Iowa Code § 714H.3(1).

2696. Defendants intended for Iowa Plaintiffs to rely on them to provide adequately designed Vehicles and to honestly and accurately reveal the safety hazards described above.

2697. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Theft-Prone Design.  Those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Iowa Plaintiffs, about the true safety and reliability of the Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

2698. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Theft-Prone Design and true characteristics of the Vehicles were material to the decisions of Iowa Plaintiffs to purchase or lease the Vehicles, as Defendants intended.  Iowa Plaintiffs were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase or lease the Vehicles.

2699. Iowa Plaintiffs' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, and/or otherwise learning that the Vehicles contained the Theft-Prone Design, as alleged above.  Iowa Plaintiffs did not, and could not, unravel Defendants' deception on their own.

2700. Had they known the truth about the Theft-Prone Design, Iowa Plaintiffs would not have purchased or leased the Vehicles or would have paid significantly less for them.

COMPLAINT

2701. Iowa Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2702. Defendants' violations present a continuing risk to Iowa Plaintiffs and the general public because the Vehicles remain unsafe due to the Theft-Prone Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

2703. Defendants had ample notice provided by the numerous complaints filed against them, internet videos, and news reports. Furthermore, on September 17, 2025, Iowa Plaintiffs sent Defendants written notice letters of Defendants' violations, Plaintiffs' claims, and a proposed cure to the violations. To date, Defendants failed to remedy their violations. Because Defendants failed to remedy their unlawful conduct, Iowa Plaintiffs seek all damages and relief to which Iowa Plaintiffs are entitled.

2704. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile. As alleged above, Defendants have long known that the Vehicles contained the Theft-Prone Design yet did nothing to remedy the Theft-Prone Design.

2705. Pursuant to Iowa Code § 714H.5, Iowa Plaintiffs seek an order (1) enjoining Defendants' unfair and/or deceptive acts, methods, or practices alleged herein, and (2) awarding damages, punitive damages, attorney's fees, costs, and/or any other just and proper relief available under the Iowa CFA.

### 4. Fraud by Omission and Concealment.[131]

2706. Iowa Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

2707. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards and are therefore of a particular value and quality. In reality, however, the Vehicles do not

---

[131] For the names of the Iowa Plaintiffs who do not allege a claim for Fraud by Omission and Concealment, see Exhibit E.

COMPLAINT

comply with such standards and are of a lesser value and quality accordingly.

2708. Defendants were aware of the Theft-Prone Design when they manufactured, marketed, and sold the Vehicles to Iowa Plaintiffs. Defendants further knew that the Theft-Prone Design gave rise to serious safety risks for the consumers that would use the Vehicles and naturally give rise to higher insurance premiums and accelerated depreciation. At the same time, Defendants were aware of the Federal Motor Vehicle Safety Standards and of the effectiveness of engine immobilizer technology in reducing safety hazards. Defendants were also aware that noncompliance with federal and industry standards lowered the value of the Vehicles and would render the Vehicles difficult to insure.

2709. Defendants knew that the Theft-Prone Design, the safety hazards it posed, and the reduction in the Vehicles' value would have been material facts to the Iowa Plaintiffs' decisions to buy or lease the Vehicles.

2710. A reasonable person would find the Vehicles' lack of industry-standard anti-theft measures and noncompliance with applicable safety standards material to their decision to purchase, lease, and maintain the Vehicles because these deficiencies impact safety, availability, the Vehicles' value, and the cost to insure the Vehicles.

2711. Defendants knowingly made affirmatively false or incomplete statements of material facts as to the Vehicles' safety, reliability, quality, value, and compliance with applicable motor vehicle safety and theft prevention standards, while they intentionally withheld, concealed, omitted, suppressed, and failed to disclose material facts about the Theft-Prone Design, including the lack of effective anti-theft measures, significant safety risks, noncompliance with federal motor vehicle safety standards, and the Vehicles' true value.

2712. Defendants volunteered incomplete information about the Vehicles they offered for sale and/or lease to consumers, including false statements as to the Vehicles' safety, compliance with applicable safety and anti-theft standards, and value while at the same time withholding the existence of the Theft-Prone Design. Defendants further

knew and failed to disclose that the Theft-Prone Design and lack of standard anti-theft measures left the Vehicles at substantially lower value than the price for which they were advertised, marketed, sold, and/or leased.

2713. Alternatively, Defendants made false misrepresentations about the Theft-Prone Design with such utter disregard and recklessness that their knowledge regarding the Theft-Prone Design, its unsafe and unreliable nature, and its substantially lower value may be inferred.

2714. Defendants intended for the Iowa Plaintiffs to rely on their omissions and concealment—which Iowa Plaintiffs did in the manner reasonably contemplated by Defendants when they purchased or leased the Vehicles at the prices they paid believing that their vehicles would not have a Theft-Prone Design that would affect the quality, reliability, and safety of the Vehicles.

2715. Iowa Plaintiffs' reliance on Defendants' misrepresentations and concealment was reasonable and justifiable, as Iowa Plaintiffs had no way of learning the facts that Defendants had concealed or failed to disclose. Iowa Plaintiffs did not, and could not, unravel Defendants' deception on their own.

2716. Having been aware of the Theft-Prone Design within the Vehicles and having known that Iowa Plaintiffs could not have reasonably been expected to know of the Theft-Prone Design, Defendants had a duty to disclose the Theft-Prone Design to Iowa Plaintiffs in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Theft-Prone Design and the true value of the Vehicles.

2717. Instead, Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Iowa Plaintiffs.

2718. If Defendants had fully and adequately disclosed the Theft-Prone Design to consumers, Iowa Plaintiffs would have seen such a disclosure.

2719. Had Iowa Plaintiffs known of the Theft-Prone Design within the Vehicles, they would not have purchased the Vehicles or would have paid less for them. Through their omissions and concealment with respect to the Theft-Prone Design within the Vehicles, Defendants intended to induce, and did in fact induce, Iowa Plaintiffs to either purchase a Vehicle that they otherwise would not have purchased or pay more for a Vehicle than they otherwise would have paid.

2720. As a direct and proximate result of Defendants' omissions, Iowa Plaintiffs overpaid for the Vehicles because Iowa Plaintiffs would either have paid less for the Vehicles or would not have purchased the Vehicles at all if the Theft-Prone Design had been disclosed to them.

2721. As a direct and proximate result of Defendants' omissions, Iowa Plaintiffs purchased Vehicles highly susceptible to theft and were forced to pay higher insurance premiums to account for the susceptibility that they did not knowingly accept, purchase, or lease.

2722. As a direct and proximate result of Defendants' omissions, the Iowa Plaintiffs paid higher insurance premiums and are now left with Vehicles with significantly diminished values.

2723. Accordingly, Defendants are liable to Iowa Plaintiffs for their damages, including but not limited to the difference in value, increased insurance premiums that Iowa Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

2724. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, in reckless disregard of the Iowa Plaintiffs' rights and well-being, and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

2725. Iowa Plaintiffs plead this claim separately, as well as in the alternative to

their claims for damages.

### 5.    Negligent Misrepresentation.[132]

2726. Iowa Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

2727. Defendants, in the course of their business selling and promoting motor vehicles, supplied false information, including that the Vehicles were safe, reliable, and of a particular value, to guide motor vehicle buyers, including Iowa Plaintiffs, in their choice of transaction.

2728. Defendants made misrepresentations of material facts concerning the safety, reliability, and value of the Vehicles that they knew or should have known were false. Specifically, Defendants misrepresented that the Vehicles had effective anti-theft equipment or design elements; misrepresented that the Vehicles were safe and reliable forms of transportation; misrepresented that the Vehicles complied with all federal and industry safety and theft prevention standards; and misrepresented the true value of the Vehicles. Defendants supplied this information in the course of their business to guide Iowa Plaintiffs in their Vehicle selection and intended to induce Iowa Plaintiffs to purchase one of Defendants' Vehicles.

2729. Iowa Plaintiffs justifiably relied upon Defendants' representations because, as the entities responsible for designing and manufacturing the Vehicles, Defendants held themselves out to be knowledgeable about the Vehicles' components and honest in their promotion of the Vehicles. Iowa Plaintiffs' reliance was further reasonable given the hidden and technical nature of the Theft-Prone Design and practical inability of Iowa Plaintiffs to discover the Theft-Prone Design on their own. Because Defendants held the Vehicles out to be in line with industry standards, the representation was not unreasonable on its face and Iowa Plaintiffs had no apparent reason to doubt the veracity of Defendants' representations.

---

[132] For the names of the Iowa Plaintiffs who do not allege a claim for Negligent Misrepresentation, see Exhibit E.

2730. Defendants had a duty to disclose all relevant information regarding the Vehicles' safety, reliability, quality, and characteristics that would affect the Iowa Plaintiffs' choice of purchase as consumers.

2731. Defendants failed to exercise reasonable care or competence in communicating the standards of safety, reliability, quality, and characteristics of the Vehicles to the consumers, including Iowa Plaintiffs, when they failed to disclose the lack of anti-theft prevention technology in the Vehicles. Rather, Defendants published materials and marketed the Vehicles for years as safe, reliable, and of a quality consistent with the industry standard.

2732. Iowa Plaintiffs would not have purchased, or would have purchased for a lower price, the Vehicles which Defendants negligently misrepresented as safe, of standard quality, and containing standard trade characteristics, such as anti-theft prevention technology. Additionally, as a direct and proximate result, Iowa Plaintiffs have had to pay higher insurance premiums to account for the Vehicles' high susceptibility to theft and are now left with Vehicles that have a lower value than they would have had without the defect.

2733. As a direct and proximate result of Iowa Plaintiffs' reasonable reliance on Defendants' negligent misrepresentations, Iowa Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that Iowa Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

2734. Iowa Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 6. Negligence.

2735. Iowa Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

2736. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

COMPLAINT

2737. Defendants owed a duty of care to Iowa Plaintiffs. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves, higher insurance premiums, and accelerated depreciation.

2738. Defendants failed to exercise reasonable care in connection with their manufacture, distribution, sale, and/or leasing of the Vehicles.

2739. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Iowa Plaintiffs.

2740. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS No. 114.

2741. As a direct and proximate result of Defendants' failure to exercise reasonable care, Iowa Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that Iowa Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

2742. Iowa Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

- 640 -
COMPLAINT

### 7. Unjust Enrichment.[133]

2743. Iowa Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

2744. When they purchased and leased the Vehicles, Iowa Plaintiffs conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

2745. In exchange, Defendants did not confer the benefit that was promised to Plaintiffs when Defendants provided Vehicles of a lesser value and poorer quality than agreed. Rather, Defendants kept the monetary amounts Plaintiffs paid for Vehicles of a particular value and nature that conformed with federal and industry safety standards, but Defendants did not provide Vehicles of that particular value or nature that conformed with federal and industry safety standards.

2746. Iowa Plaintiffs have a reasonable expectation of compensation because they conferred an economic benefit on the Defendants with the expectation that they were receiving a different product—one of the particular design, nature, quality, and value that contained an anti-theft system and was compliant with federal safety and industry standards—in exchange.

2747. Iowa Plaintiffs would not have purchased or leased their Vehicles, or would have paid less for them, had they known of the Theft-Prone Design at the time of purchase or lease. Therefore, Defendants profited from the sale and lease of the Vehicles to the detriment and expense of Iowa Plaintiffs by misrepresenting the Vehicles' true design, nature, quality, and value.

2748. Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft-Prone Design, the Vehicles' noncompliant nature and poorer quality, and the Vehicles'

_____

[133] For the names of the Iowa Plaintiffs who do not allege a claim for Unjust Enrichment, see Exhibit E.

COMPLAINT

reduced value, yet they failed to disclose this knowledge and misled the Iowa Plaintiffs regarding the design, nature, quality, and value of the Vehicles while profiting from this deception.

2749. Accordingly, Iowa Plaintiffs have been impoverished due to Defendants' enrichment without justification.

2750. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, in part because they were procured as a result of their wrongful conduct alleged above.

2751. Iowa Plaintiffs are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Iowa Plaintiffs to the position they occupied prior to dealing with these Defendants, with such amounts to be determined at trial.

2752. Iowa Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages, because if Iowa Plaintiffs' claims for damages are dismissed or judgment is entered in favor of Defendants, Iowa Plaintiffs will have no adequate legal remedy.

**P.    Kansas State Law Claims for Relief**

**(Alleged by Kansas Plaintiffs Against All Defendants)**

**1.    Breach of Implied Warranty Under Kan. Stat. Ann. §§ 84-2-314 and 84-2A-212.**

2753. Kansas Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

2754. A warranty that the Vehicles were in merchantable condition is implied by law pursuant to Kan. Stat. Ann. §§ 84- 2-314 and 84-2A-212.

2755. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Kan. Stat. Ann. §§ 84-2-104(1) and 84-2A-103(3), "sellers" of motor vehicles under § 84-2-103(1)(d) and, with respect to leases, "lessors" of motor vehicles under Kan. Stat. Ann. § 84-2A-103(1)(p).

2756. At all relevant times, Kansas Plaintiffs' Vehicles (whether purchased or leased) were and are "goods" within the meaning of Kan. Stat. Ann. §§ 84-2-105(1) and 84-2A-103(1)(h).

2757. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Kansas Plaintiffs with an implied warranty that the purchased and leased Vehicles were in merchantable condition and fit for the ordinary purposes for which they were sold or leased. This implied warranty included that the Vehicles (a) were manufactured, supplied, distributed, and sold by Defendants, (b) were safe and reliable for transportation, (c) complied with all federal, state, and industry motor vehicle regulations and safety standards, including FMVSS No. 114, (d) were not at an abnormally high risk of theft, and (e) were of a particular value and quality that complied with federal and industry safety standards.

2758. The Vehicles did not comply with the implied warranty of merchantability because the Vehicles were defective and not in merchantable condition at the time of sale and/or lease, were not fit for their ordinary purpose of providing safe and reliable transportation at the time of sale or lease, and would not pass without objection in the trade as they deviated significantly from the industry standard and can be stolen in mere minutes without a key. Defendants knew at the time of manufacture that the Vehicles contained the Theft-Prone Design and lacked any anti-theft equipment or design elements that effectively prevent theft or comply with FMVSS No. 114. Therefore, the Defendants knew at the time of manufacture that the Vehicles are at an abnormally high risk of theft and are unsafe and an unreliable form of transportation. The Theft-Prone Design renders the Vehicles highly vulnerable to theft and a prime target for thieves as they can be easily stolen in seconds. Defendants knew at the time of manufacture that because their Vehicles did not include any anti-theft measures that satisfied FMVSS No. 114, making their Vehicles more prone to theft and failing to comply with federal regulations, the Vehicles would require larger insurance premiums and would

- 643 -
COMPLAINT

depreciate at a more rapid rate than a comparable vehicle with anti-theft measure that satisfied FMVSS No. 114. Consequently, at the time of sale and/or lease, the Vehicles were not fit for their ordinary purpose of providing safe and reliable transportation.

2759. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable. Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Kansas Plaintiffs, of the safety defect. Any time limitations regarding the warranty period were also unconscionable and inadequate to protect Kansas Plaintiffs. Kansas Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants. A gross disadvantage in bargaining power existed between Kansas Plaintiffs and Defendants, which unreasonably favored Defendants. Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left Kansas Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

2760. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that Kansas Plaintiffs may seek alternative remedies. Kansas Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

2761. Kansas Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure. Kansas Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Kansas Plaintiffs' breach of warranty claims. Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Kansas Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective

COMPLAINT

Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Kansas Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches. To date, Defendants failed to remedy their breaches.

2762. Alternatively, Kansas Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches. Kansas Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

2763. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Kansas Plaintiffs' Vehicles were and are defective, the Theft-Prone Design in the Vehicles has not been remedied, and Kansas Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that Kansas Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

**2.** **Breach of Express Warranty Under Kan. Stat. Ann. §§ 84-2-2-313 and 84-2a-210.**

2764. Kansas Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

2765. During the relevant time periods, Defendants manufactured the Vehicles

- 645 -
COMPLAINT

and Kansas Plaintiffs purchased and/or leased the Vehicles from Defendants.

2766. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Kan. Stat. Ann. §§ 84-2-104(1) and 84-2A-103(3), "sellers" of motor vehicles under § 84-2-103(1)(d) and, with respect to leases, "lessors" of motor vehicles under Kan. Stat. Ann. § 84-2A-103(1)(p).

2767. At all relevant times, Kansas Plaintiffs' Vehicles (whether purchased or leased) were and are "goods" within the meaning of Kan. Stat. Ann. §§ 84-2-105(1) and 84-2A-103(1)(h).

2768. By affixing a VIN plate to each Vehicle at the time of manufacture, Defendants expressly warranted each Vehicles' conformance to "all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture shown." These statements constitute a description, affirmation of fact, and promise made to Kansas Plaintiffs as to the Vehicles' condition, quality, safety, and reliability. These statements, affirmations, and descriptions became the basis of the bargain between Kansas Plaintiffs and Defendants, as Kansas Plaintiffs relied on these statements when making their decisions to purchase and/or lease the Vehicles. As such, the statements are an express warranty under Kansas law pursuant to Kan. Stat. Ann. §§ 84-2-313, and the Vehicles did not conform to the affirmations of fact, promises made by Defendants, or Defendants' description of the Vehicles.

2769. Kansas Plaintiffs used the Vehicles in accordance with their normal operation and did not misuse or mishandle the Vehicles in any way material to the allegations set forth herein.

2770. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable. Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Kansas Plaintiffs, of the safety defect. Any time limitations regarding the warranty period were also unconscionable and inadequate to protect Kansas Plaintiffs. Kansas Plaintiffs had no meaningful choice in determining

these time limitations and such time limitations unreasonably favored Defendants. A gross disadvantage in bargaining power existed between Kansas Plaintiffs and Defendants, which unreasonably favored Defendants. Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left Kansas Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

2771. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that Kansas Plaintiffs may seek alternative remedies. Kansas Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

2772. Kansas Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure. Kansas Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Kansas Plaintiffs' breach of warranty claims. Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Kansas Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Kansas Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches. To date, Defendants failed to remedy their breaches.

2773. Alternatively, Kansas Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches. Kansas Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

2774. The Vehicles did not perform as promised in accordance with Defendants' express warranty; instead, the Vehicles did not meet all applicable motor vehicle safety and theft prevention standards in effect on the date of manufacture. The Vehicles are capable of being stolen in a matter of seconds without a key and do not comply with the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles do not, in fact, conform to the applicable anti-theft standards.

2775. As a direct and proximate result of Defendants' breaches, Kansas Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that Kansas Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

**3.  Violation of Kansas Consumer Protection Act Under Kan. Stat. Ann. § 50-623, et seq.**

2776. Kansas Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

2777. Defendants are "suppliers" within the meaning of Kan. Stat. Ann. § 50-624(l).

2778. Kansas Plaintiffs are "consumers" within the meaning of Kan. Stat. Ann. § 50-624(b).

2779. Defendants and Kansas Plaintiffs are "persons" within the meaning of Kan. Stat. Ann. § 50-624(i).

COMPLAINT

2780. The sale or lease of the Vehicles is a "consumer transaction" within the meaning of Kan. Stat. Ann. § 50-624(c).

2781. Defendants engaged in unlawful and deceptive trade practices in connection with the sale of Vehicles as prohibited under the Kansas Consumer Credit and Protection Act ("Kansas CPA"), Kan. Stat. Ann. § 50-626(a).

2782. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Kansas CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Theft-Prone Design, as detailed above. Defendants used deception and unfair practices, false pretense, false promise, misrepresentation, concealment, suppression, and omission of material facts with the intent that Kansas Plaintiffs rely on such concealment, suppression, or omission in connection with the sale or advertisement of their Vehicles, in violation of Kan. Stat. Ann. § 50-626(a).

2783. Under the Kansas CPA, Defendants had an ongoing duty to Kansas Plaintiffs to refrain from unfair or deceptive practices in the course of their business. Specifically, Defendants owed Kansas Plaintiffs a duty to disclose all the material facts concerning the Theft-Prone Design in the Vehicles.

2784. Defendants had exclusive access to and far superior knowledge about facts regarding the Theft-Prone Design, and Defendants knew these facts were not known to or reasonably discoverable by Kansas Plaintiffs.

2785. Given the Theft-Prone Design's hidden and technical nature, Kansas Plaintiffs lack the sophisticated expertise in vehicle components necessary to discover the Theft-Prone Design on their own.

2786. Defendants knew that the Theft-Prone Design gave rise to safety concerns for the consumers who use the Vehicles, and that the Theft-Prone Design would have been a material fact in the Kansas Plaintiffs' decisions to buy or lease the Vehicles.

2787. Defendants made incomplete representations about the safety and

COMPLAINT

reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Theft-Prone Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

2788. As detailed above, the information concerning the Theft-Prone Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

2789. By misrepresenting the Vehicles as safe, reliable, and free from defects, and by failing to disclose and actively concealing the dangers and risks posed by the Theft-Prone Design, Defendants engaged in the following unfair or deceptive business practices in violation of Kansas CPA: (a) representing that the Vehicles had approval, accessories, characteristics, uses, or benefits that they do not have; (b) representing that the Vehicles are of a particular standard or quality that they do not have; (c) representing that the Vehicles have uses, benefits or characteristics that Defendants knew they did not have; (d) failing to state material facts or willfully concealing, suppressing, or omitting material facts regarding the Vehicles; (e) offering the Vehicles without the intent to sell them as advertised. Kan. Stat. Ann. §§ 50-626(b)(1)(A)(D), (F), (G), (b)(3), (b)(5).

2790. Defendants intended for Kansas Plaintiffs to rely on them to provide adequately designed Vehicles and to honestly and accurately reveal the safety hazards described above.

2791. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Theft-Prone Design. Those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers,

including Kansas Plaintiffs, about the true safety and reliability of the Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

2792. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Theft-Prone Design and true characteristics of the Vehicles were material to the decisions of Kansas Plaintiffs to purchase or lease the Vehicles, as Defendants intended.  Kansas Plaintiffs were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase or lease the Vehicles.

2793. Kansas Plaintiffs' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, and/or otherwise learning that the Vehicles contained the Theft-Prone Design, as alleged above.  Kansas Plaintiffs did not, and could not, unravel Defendants' deception on their own.

2794. Had they known the truth about the Theft-Prone Design, Kansas Plaintiffs would not have purchased or leased the Vehicles or would have paid significantly less for them.

2795. Kansas Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2796. Defendants' violations present a continuing risk to Kansas Plaintiffs and the general public because the Vehicles remain unsafe due to the Theft-Prone Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

2797. Defendants had ample notice provided by the numerous complaints filed against them, internet videos, and news reports.  Furthermore, on September 17, 2025, Kansas Plaintiffs sent Defendants written notice letters of Defendants' violations, Plaintiffs' claims, and a proposed cure to the violations.  To date, Defendants failed to remedy their violations.  Because Defendants failed to remedy their unlawful conduct, Kansas Plaintiffs seek all damages and relief to which Kansas Plaintiffs are entitled.

COMPLAINT

2798. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile.  As alleged above, Defendants have long known that the Vehicles contained the Theft-Prone Design yet did nothing to remedy the Theft-Prone Design.

2799. Pursuant to Kan. Stat. Rev. § 50-634, Kansas Plaintiffs seek an order (1) enjoining Defendants' unfair and/or deceptive acts, methods, or practices alleged herein, and (2) awarding damages, punitive damages, attorney's fees, costs, and/or any other just and proper relief available under the Kansas CPA.

### 4.    Fraud by Omission and Concealment.

2800. Kansas Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

2801. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards and are therefore of a particular value and quality.  In reality, however, the Vehicles do not comply with such standards and are of a lesser value and quality accordingly.

2802. Defendants were aware of the Theft-Prone Design when they manufactured, marketed, and sold the Vehicles to Kansas Plaintiffs.  Defendants further knew that the Theft-Prone Design gave rise to serious safety risks for the consumers that would use the Vehicles and naturally give rise to higher insurance premiums and accelerated depreciation.  At the same time, Defendants were aware of the Federal Motor Vehicle Safety Standards and of the effectiveness of engine immobilizer technology in reducing safety hazards.  Defendants were also aware that noncompliance with federal and industry standards lowered the value of the Vehicles and would render the Vehicles difficult to insure.

2803. Defendants knew that the Theft-Prone Design, the safety hazards it posed, and the reduction in the Vehicles' value would have been material facts to the Kansas Plaintiffs' decisions to buy or lease the Vehicles.

2804. A reasonable person would find the Vehicles' lack of industry-standard

COMPLAINT

anti-theft measures and noncompliance with applicable safety standards material to their decision to purchase, lease, and maintain the Vehicles because these deficiencies impact safety, availability, the Vehicles' value, and the cost to insure the Vehicles.

2805. Defendants knowingly made affirmatively false or incomplete statements of material facts as to the Vehicles' safety, reliability, quality, value, and compliance with applicable motor vehicle safety and theft prevention standards, while they intentionally withheld, concealed, omitted, suppressed, and failed to disclose material facts about the Theft-Prone Design, including the lack of effective anti-theft measures, significant safety risks, noncompliance with federal motor vehicle safety standards, and the Vehicles' true value.

2806. Defendants volunteered incomplete information about the Vehicles they offered for sale and/or lease to consumers, including false statements as to the Vehicles' safety, compliance with applicable safety and anti-theft standards, and value while at the same time withholding the existence of the Theft-Prone Design.  Defendants further knew and failed to disclose that the Theft-Prone Design and lack of standard anti-theft measures left the Vehicles at substantially lower value than the price for which they were advertised, marketed, sold, and/or leased.

2807. Alternatively, Defendants made false misrepresentations about the Theft-Prone Design with such utter disregard and recklessness that their knowledge regarding the Theft-Prone Design, its unsafe and unreliable nature, and its substantially lower value may be inferred.

2808. Defendants intended for the Kansas Plaintiffs to rely on their omissions and concealment—which Kansas Plaintiffs did in the manner reasonably contemplated by Defendants when they purchased or leased the Vehicles at the prices they paid believing that their vehicles would not have a Theft-Prone Design that would affect the quality, reliability, and safety of the Vehicles.

2809. Kansas Plaintiffs' reliance on Defendants' misrepresentations and concealment was reasonable and justifiable, as Kansas Plaintiffs had no way of learning

COMPLAINT

the facts that Defendants had concealed or failed to disclose. Kansas Plaintiffs did not, and could not, unravel Defendants' deception on their own.

2810. Having been aware of the Theft-Prone Design within the Vehicles and having known that Kansas Plaintiffs could not have reasonably been expected to know of the Theft-Prone Design, Defendants had a duty to disclose the Theft-Prone Design to Kansas Plaintiffs in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Theft-Prone Design and the true value of the Vehicles.

2811. Instead, Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Kansas Plaintiffs.

2812. If Defendants had fully and adequately disclosed the Theft-Prone Design to consumers, Kansas Plaintiffs would have seen such a disclosure.

2813. Had Kansas Plaintiffs known of the Theft-Prone Design within the Vehicles, they would not have purchased the Vehicles or would have paid less for them. Through their omissions and concealment with respect to the Theft-Prone Design within the Vehicles, Defendants intended to induce, and did in fact induce, Kansas Plaintiffs to either purchase a Vehicle that they otherwise would not have purchased or pay more for a Vehicle than they otherwise would have paid.

2814. As a direct and proximate result of Defendants' omissions, Kansas Plaintiffs overpaid for the Vehicles because Kansas Plaintiffs would either have paid less for the Vehicles or would not have purchased the Vehicles at all if the Theft-Prone Design had been disclosed to them.

2815. As a direct and proximate result of Defendants' omissions, Kansas Plaintiffs purchased Vehicles highly susceptible to theft and were forced to pay higher insurance premiums to account for the susceptibility that they did not knowingly accept, purchase, or lease.

2816. As a direct and proximate result of Defendants' omissions, the Kansas Plaintiffs paid higher insurance premiums and are now left with Vehicles with significantly diminished values.

2817. Accordingly, Defendants are liable to Kansas Plaintiffs for their damages, including but not limited to the difference in value, increased insurance premiums that Kansas Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

2818. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, in reckless disregard of the Kansas Plaintiffs' rights and well-being, and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

2819. Kansas Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 5.    Negligent Misrepresentation.

2820. Kansas Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

2821. Defendants, in the course of their business selling and promoting motor vehicles, supplied false information, including that the Vehicles were safe, reliable, and of a particular value, to guide motor vehicle buyers, including Kansas Plaintiffs, in their choice of transaction.

2822. Defendants made misrepresentations of material facts concerning the safety, reliability, and value of the Vehicles that they knew or should have known were false. Specifically, Defendants misrepresented that the Vehicles had effective anti-theft equipment or design elements; misrepresented that the Vehicles were safe and reliable forms of transportation; misrepresented that the Vehicles complied with all federal and industry safety and theft prevention standards; and misrepresented the true value of the

COMPLAINT

Vehicles. Defendants supplied this information in the course of their business to guide Kansas Plaintiffs in their Vehicle selection and intended to induce Kansas Plaintiffs to purchase one of Defendants' Vehicles.

2823. Kansas Plaintiffs justifiably relied upon Defendants' representations because, as the entities responsible for designing and manufacturing the Vehicles, Defendants held themselves out to be knowledgeable about the Vehicles' components and honest in their promotion of the Vehicles. Kansas Plaintiffs' reliance was further reasonable given the hidden and technical nature of the Theft-Prone Design and practical inability of Kansas Plaintiffs to discover the Theft-Prone Design on their own. Because Defendants held the Vehicles out to be in line with industry standards, the representation was not unreasonable on its face and Kansas Plaintiffs had no apparent reason to doubt the veracity of Defendants' representations.

2824. Defendants had a duty to disclose all relevant information regarding the Vehicles' safety, reliability, quality, and characteristics that would affect the Kansas Plaintiffs' choice of purchase as consumers.

2825. Defendants failed to exercise reasonable care or competence in communicating the standards of safety, reliability, quality, and characteristics of the Vehicles to the consumers, including Kansas Plaintiffs, when they failed to disclose the lack of anti-theft prevention technology in the Vehicles. Rather, Defendants published materials and marketed the Vehicles for years as safe, reliable, and of a quality consistent with the industry standard.

2826. Kansas Plaintiffs would not have purchased, or would have purchased for a lower price, the Vehicles which Defendants negligently misrepresented as safe, of standard quality, and containing standard trade characteristics, such as anti-theft prevention technology. Additionally, as a direct and proximate result, Kansas Plaintiffs have had to pay higher insurance premiums to account for the Vehicles' high susceptibility to theft and are now left with Vehicles that have a lower value than they would have had without the defect.

COMPLAINT

2827. As a direct and proximate result of Kansas Plaintiffs' reasonable reliance on Defendants' negligent misrepresentations, Kansas Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that Kansas Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

2828. Kansas Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

**6.      Negligence.**

2829. Kansas Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

2830. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

2831. Defendants owed a duty of care to Kansas Plaintiffs. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves, higher insurance premiums, and accelerated depreciation.

2832. Defendants failed to exercise reasonable care in connection with their manufacture, distribution, sale, and/or leasing of the Vehicles.

2833. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Kansas Plaintiffs.

2834. Defendants' violation of their duties under applicable law and/or the

applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS No. 114.

2835. As a direct and proximate result of Defendants' failure to exercise reasonable care, Kansas Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that Kansas Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

2836. Kansas Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

**7.    Unjust Enrichment.**

2837. Kansas Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

2838. When they purchased and leased the Vehicles, Kansas Plaintiffs conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

2839. In exchange, Defendants did not confer the benefit that was promised to Plaintiffs when Defendants provided Vehicles of a lesser value and poorer quality than agreed.  Rather, Defendants kept the monetary amounts Plaintiffs paid for Vehicles of a particular value and nature that conformed with federal and industry safety standards, but Defendants did not provide Vehicles of that particular value or nature that conformed with federal and industry safety standards.

2840. Kansas Plaintiffs have a reasonable expectation of compensation because they conferred an economic benefit on the Defendants with the expectation that they were receiving a different product—one of the particular design, nature, quality, and value that contained an anti-theft system and was compliant with federal safety and industry standards—in exchange.

COMPLAINT

2841. Kansas Plaintiffs would not have purchased or leased their Vehicles, or would have paid less for them, had they known of the Theft-Prone Design at the time of purchase or lease. Therefore, Defendants profited from the sale and lease of the Vehicles to the detriment and expense of Kansas Plaintiffs by misrepresenting the Vehicles' true design, nature, quality, and value.

2842. Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft-Prone Design, the Vehicles' noncompliant nature and poorer quality, and the Vehicles' reduced value, yet they failed to disclose this knowledge and misled the Kansas Plaintiffs regarding the design, nature, quality, and value of the Vehicles while profiting from this deception.

2843. Accordingly, Kansas Plaintiffs have been impoverished due to Defendants' enrichment without justification.

2844. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, in part because they were procured as a result of their wrongful conduct alleged above.

2845. Kansas Plaintiffs are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Kansas Plaintiffs to the position they occupied prior to dealing with these Defendants, with such amounts to be determined at trial.

2846. Kansas Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages, because if Kansas Plaintiffs' claims for damages are dismissed or judgment is entered in favor of Defendants, Kansas Plaintiffs will have no adequate legal remedy.

**Q. Kentucky State Law Claims for Relief**

**(Alleged by Kentucky Plaintiffs Against All Defendants)**

**1. Breach of Implied Warranty Under Ky. Rev. Stat. Ann.**

**§§ 335.2-314 and 355.2A-212.**

2847. Kentucky Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

2848. A warranty that the Vehicles were in merchantable condition is implied by law pursuant to Ky. Rev. Stat. Ann. §§ 335.2-314 and 355.2A-212.

2849. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Ky. Rev. Stat. Ann. §§ 355.2-104(1) and 355.2A-103(3), "sellers" of motor vehicles under § 355.2-103(1)(d) and, with respect to leases, "lessors" of motor vehicles under Ky. Rev. Stat. Ann. § 355.2A-103(1)(p).

2850. At all relevant times, Kentucky Plaintiffs' Vehicles (whether purchased or leased) were and are "goods" within the meaning of Ky. Rev. Stat. Ann. §§ 355.2-105(1) and 355.2A-103(1)(h).

2851. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Kentucky Plaintiffs with an implied warranty that the purchased and leased Vehicles were in merchantable condition and fit for the ordinary purposes for which they were sold or leased. This implied warranty included that the Vehicles (a) were manufactured, supplied, distributed, and sold by Defendants, (b) were safe and reliable for transportation, (c) complied with all federal, state, and industry motor vehicle regulations and safety standards, including FMVSS No. 114, (d) were not at an abnormally high risk of theft, and (e) were of a particular value and quality that complied with federal and industry safety standards.

2852. The Vehicles did not comply with the implied warranty of merchantability because the Vehicles were defective and not in merchantable condition at the time of sale and/or lease, were not fit for their ordinary purpose of providing safe and reliable transportation at the time of sale or lease, and would not pass without objection in the trade as they deviated significantly from the industry standard and can be stolen in mere minutes without a key. Defendants knew at the time of manufacture that the Vehicles

contained the Theft-Prone Design and lacked any anti-theft equipment or design elements that effectively prevent theft or comply with FMVSS No. 114. Therefore, the Defendants knew at the time of manufacture that the Vehicles are at an abnormally high risk of theft and are unsafe and an unreliable form of transportation. The Theft-Prone Design renders the Vehicles highly vulnerable to theft and a prime target for thieves as they can be easily stolen in seconds. Defendants knew at the time of manufacture that because their Vehicles did not include any anti-theft measures that satisfied FMVSS No. 114, making their Vehicles more prone to theft and failing to comply with federal regulations, the Vehicles would require larger insurance premiums and would depreciate at a more rapid rate than a comparable vehicle with anti-theft measure that satisfied FMVSS No. 114. Consequently, at the time of sale and/or lease, the Vehicles were not fit for their ordinary purpose of providing safe and reliable transportation.

2853. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable. Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Kentucky Plaintiffs, of the safety defect. Any time limitations regarding the warranty period were also unconscionable and inadequate to protect Kentucky Plaintiffs. Kentucky Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants. A gross disadvantage in bargaining power existed between Kentucky Plaintiffs and Defendants, which unreasonably favored Defendants. Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left Kentucky Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

2854. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that Kentucky Plaintiffs may seek alternative remedies. Kentucky Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry

standards, and Vehicles that provide safe and reliable transportation.

2855. Kentucky Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure. Kentucky Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Kentucky Plaintiffs' breach of warranty claims. Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Kentucky Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Kentucky Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches. To date, Defendants failed to remedy their breaches.

2856. Alternatively, Kentucky Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches. Kentucky Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

2857. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Kentucky Plaintiffs' Vehicles were and are defective, the Theft-Prone Design in the Vehicles has not been remedied, and Kentucky Plaintiffs have

COMPLAINT

suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that Kentucky Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

### 2. Breach of Express Warranty Under Ky. Rev. Stat. Ann. §§ 355.2-313 and 355.2A-210.

2858. Kentucky Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

2859. During the relevant time periods, Defendants manufactured the Vehicles and Kentucky Plaintiffs purchased and/or leased the Vehicles from Defendants.

2860. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Ky. Rev. Stat. Ann. §§ 355.2-104(1) and 355.2A-103(3), "sellers" of motor vehicles under § 355.2-103(1)(d) and, with respect to leases, "lessors" of motor vehicles under Ky. Rev. Stat. Ann. § 355.2A-103(1)(p).

2861. At all relevant times, Kentucky Plaintiffs' Vehicles (whether purchased or leased) were and are "goods" within the meaning of Ky. Rev. Stat. Ann. §§ 355.2-105(1) and 355.2A-103(1)(h).

2862. By affixing a VIN plate to each Vehicle at the time of manufacture, Defendants expressly warranted each Vehicles' conformance to "all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture shown." These statements constitute a description, affirmation of fact, and promise made to Kentucky Plaintiffs as to the Vehicles' condition, quality, safety, and reliability. These statements, affirmations, and descriptions became the basis of the bargain between Kentucky Plaintiffs and Defendants, as Kentucky Plaintiffs relied on these statements when making their decisions to purchase and/or lease the Vehicles. As such, the statements are an express warranty under Kentucky law pursuant to Ky. Rev. Stat. Ann. §§ 355.2-313 and 355.2A-210, and the Vehicles did not conform to the affirmations of fact, promises made by Defendants, or Defendants' description of

the Vehicles.

2863. Kentucky Plaintiffs used the Vehicles in accordance with their normal operation and did not misuse or mishandle the Vehicles in any way material to the allegations set forth herein.

2864. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable.  Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Kentucky Plaintiffs, of the safety defect.  Any time limitations regarding the warranty period were also unconscionable and inadequate to protect Kentucky Plaintiffs.  Kentucky Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants.  A gross disadvantage in bargaining power existed between Kentucky Plaintiffs and Defendants, which unreasonably favored Defendants.  Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left Kentucky Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

2865. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that Kentucky Plaintiffs may seek alternative remedies. Kentucky Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

2866. Kentucky Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure.  Kentucky Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Kentucky Plaintiffs' breach of warranty claims.  Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Kentucky Plaintiffs' claims.  Defendants have long known of the Theft-

Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Kentucky Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches. To date, Defendants failed to remedy their breaches.

2867. Alternatively, Kentucky Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches. Kentucky Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

2868. The Vehicles did not perform as promised in accordance with Defendants' express warranty; instead, the Vehicles did not meet all applicable motor vehicle safety and theft prevention standards in effect on the date of manufacture. The Vehicles are capable of being stolen in a matter of seconds without a key and do not comply with the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles do not, in fact, conform to the applicable anti-theft standards.

2869. As a direct and proximate result of Defendants' breaches, Kentucky Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that Kentucky Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

COMPLAINT

### 3. Violation of Kentucky Consumer Protection Act Under Ky. Rev. Stat. Ann. § 367.110, et seq.

2870. Kentucky Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

2871. Defendants and Kentucky Plaintiffs are "persons" within the meaning of Ky. Rev. Stat. Ann. § 367.110(1).

2872. Defendants are engaged in "trade" and "commerce" within the meaning of Ky. Rev. Stat. Ann. § 367.110(2).

2873. Defendants engaged in unlawful and deceptive trade practices, including "[u]nfair, misleading, or deceptive acts or practices in the conduct of" selling and marketing the Vehicles without disclosing the Theft-Prone Design, as prohibited under the Kentucky Consumer Protect Action ("Kentucky CPA"), Ky. Rev. Stat. Ann. § 367.170 (a).

2874. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Kentucky CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Theft-Prone Design, as detailed above.  Defendants used deception and unfair practices, false pretense, false promise, misrepresentation, concealment, suppression, and omission of material facts with the intent that Kentucky Plaintiffs rely on such concealment, suppression, or omission in connection with the sale or advertisement of their Vehicles, in violation of Ky. Rev. Stat. Ann. § 367.170 (a).

2875. Under the Kentucky CPA, Defendants had an ongoing duty to Kentucky Plaintiffs to refrain from unfair or deceptive practices in the course of their business. Specifically, Defendants owed Kentucky Plaintiffs a duty to disclose all the material facts concerning the Theft-Prone Design in the Vehicles.

2876. Defendants had exclusive access to and far superior knowledge about facts regarding the Theft-Prone Design, and Defendants knew these facts were not known to

or reasonably discoverable by Kentucky Plaintiffs.

2877. Given the Theft-Prone Design's hidden and technical nature, Kentucky Plaintiffs lack the sophisticated expertise in vehicle components necessary to discover the Theft-Prone Design on their own.

2878. Defendants knew that the Theft-Prone Design gave rise to safety concerns for the consumers who use the Vehicles, and that the Theft-Prone Design would have been a material fact in the Kentucky Plaintiffs' decisions to buy or lease the Vehicles.

2879. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Theft-Prone Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

2880. As detailed above, the information concerning the Theft-Prone Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

2881. By misrepresenting the Vehicles as safe, reliable, and free from defects, and by failing to disclose and actively concealing the dangers and risks posed by the Theft-Prone Design, Defendants engaged in unfair or deceptive business practices in violation of Kentucky CPA.

2882. Defendants intended for Kentucky Plaintiffs to rely on them to provide adequately designed Vehicles and to honestly and accurately reveal the safety hazards described above.

2883. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Theft-Prone Design. Those misrepresentations, concealments,

omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Kentucky Plaintiffs, about the true safety and reliability of the Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

2884. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Theft-Prone Design and true characteristics of the Vehicles were material to the decisions of Kentucky Plaintiffs to purchase or lease the Vehicles, as Defendants intended. Kentucky Plaintiffs were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase or lease the Vehicles.

2885. Kentucky Plaintiffs' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, and/or otherwise learning that the Vehicles contained the Theft-Prone Design, as alleged above. Kentucky Plaintiffs did not, and could not, unravel Defendants' deception on their own.

2886. Had they known the truth about the Theft-Prone Design, Kentucky Plaintiffs would not have purchased or leased the Vehicles or would have paid significantly less for them.

2887. Kentucky Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2888. Defendants' violations present a continuing risk to Kentucky Plaintiffs and the general public because the Vehicles remain unsafe due to the Theft-Prone Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

2889. Defendants had ample notice provided by the numerous complaints filed against them, internet videos, and news reports. Furthermore, on September 17, 2025, Kentucky Plaintiffs sent Defendants written notice letters of Defendants' violations, Plaintiffs' claims, and a proposed cure to the violations. To date, Defendants failed to remedy their violations. Because Defendants failed to remedy their unlawful conduct,

COMPLAINT

Kentucky Plaintiffs seek all damages and relief to which Kentucky Plaintiffs are entitled.

2890. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile.  As alleged above, Defendants have long known that the Vehicles contained the Theft-Prone Design yet did nothing to remedy the Theft-Prone Design.

2891. Pursuant to Ky. Rev. Stat. Ann. § 367.220, Kentucky Plaintiffs seek an order (1) enjoining Defendants' unfair and/or deceptive acts, methods, or practices alleged herein, and (2) awarding damages, punitive damages, attorney's fees, costs, and/or any other just and proper relief available under the Kentucky CPA.

### 4.     Fraud by Omission and Concealment.

2892. Kentucky Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

2893. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards and are therefore of a particular value and quality.  In reality, however, the Vehicles do not comply with such standards and are of a lesser value and quality accordingly.

2894. Defendants were aware of the Theft-Prone Design when they manufactured, marketed, and sold the Vehicles to Kentucky Plaintiffs.  Defendants further knew that the Theft-Prone Design gave rise to serious safety risks for the consumers that would use the Vehicles and naturally give rise to higher insurance premiums and accelerated depreciation.  At the same time, Defendants were aware of the Federal Motor Vehicle Safety Standards and of the effectiveness of engine immobilizer technology in reducing safety hazards.  Defendants were also aware that noncompliance with federal and industry standards lowered the value of the Vehicles and would render the Vehicles difficult to insure.

2895. Defendants knew that the Theft-Prone Design, the safety hazards it posed, and the reduction in the Vehicles' value would have been material facts to the Kentucky

Plaintiffs' decisions to buy or lease the Vehicles.

2896. A reasonable person would find the Vehicles' lack of industry-standard anti-theft measures and noncompliance with applicable safety standards material to their decision to purchase, lease, and maintain the Vehicles because these deficiencies impact safety, availability, the Vehicles' value, and the cost to insure the Vehicles.

2897. Defendants knowingly made affirmatively false or incomplete statements of material facts as to the Vehicles' safety, reliability, quality, value, and compliance with applicable motor vehicle safety and theft prevention standards, while they intentionally withheld, concealed, omitted, suppressed, and failed to disclose material facts about the Theft-Prone Design, including the lack of effective anti-theft measures, significant safety risks, noncompliance with federal motor vehicle safety standards, and the Vehicles' true value.

2898. Defendants volunteered incomplete information about the Vehicles they offered for sale and/or lease to consumers, including false statements as to the Vehicles' safety, compliance with applicable safety and anti-theft standards, and value while at the same time withholding the existence of the Theft-Prone Design.  Defendants further knew and failed to disclose that the Theft-Prone Design and lack of standard anti-theft measures left the Vehicles at substantially lower value than the price for which they were advertised, marketed, sold, and/or leased.

2899. Alternatively, Defendants made false misrepresentations about the Theft-Prone Design with such utter disregard and recklessness that their knowledge regarding the Theft-Prone Design, its unsafe and unreliable nature, and its substantially lower value may be inferred.

2900. Defendants intended for the Kentucky Plaintiffs to rely on their omissions and concealment—which Kentucky Plaintiffs did in the manner reasonably contemplated by Defendants when they purchased or leased the Vehicles at the prices they paid believing that their vehicles would not have a Theft-Prone Design that would affect the quality, reliability, and safety of the Vehicles.

2901. Kentucky Plaintiffs' reliance on Defendants' misrepresentations and concealment was reasonable and justifiable, as Kentucky Plaintiffs had no way of learning the facts that Defendants had concealed or failed to disclose. Kentucky Plaintiffs did not, and could not, unravel Defendants' deception on their own.

2902. Having been aware of the Theft-Prone Design within the Vehicles and having known that Kentucky Plaintiffs could not have reasonably been expected to know of the Theft-Prone Design, Defendants had a duty to disclose the Theft-Prone Design to Kentucky Plaintiffs in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Theft-Prone Design and the true value of the Vehicles.

2903. Instead, Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Kentucky Plaintiffs.

2904. If Defendants had fully and adequately disclosed the Theft-Prone Design to consumers, Kentucky Plaintiffs would have seen such a disclosure.

2905. Had Kentucky Plaintiffs known of the Theft-Prone Design within the Vehicles, they would not have purchased the Vehicles or would have paid less for them. Through their omissions and concealment with respect to the Theft-Prone Design within the Vehicles, Defendants intended to induce, and did in fact induce, Kentucky Plaintiffs to either purchase a Vehicle that they otherwise would not have purchased or pay more for a Vehicle than they otherwise would have paid.

2906. As a direct and proximate result of Defendants' omissions, Kentucky Plaintiffs overpaid for the Vehicles because Kentucky Plaintiffs would either have paid less for the Vehicles or would not have purchased the Vehicles at all if the Theft-Prone Design had been disclosed to them.

2907. As a direct and proximate result of Defendants' omissions, Kentucky Plaintiffs purchased Vehicles highly susceptible to theft and were forced to pay higher

insurance premiums to account for the susceptibility that they did not knowingly accept, purchase, or lease.

2908. As a direct and proximate result of Defendants' omissions, the Kentucky Plaintiffs paid higher insurance premiums and are now left with Vehicles with significantly diminished values.

2909. Accordingly, Defendants are liable to Kentucky Plaintiffs for their damages, including but not limited to the difference in value, increased insurance premiums that Kentucky Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

2910. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, in reckless disregard of the Kentucky Plaintiffs' rights and well-being, and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

2911. Kentucky Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

**5.    Negligent Misrepresentation.**

2912. Kentucky Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

2913. Defendants, in the course of their business selling and promoting motor vehicles, supplied false information, including that the Vehicles were safe, reliable, and of a particular value, to guide motor vehicle buyers, including Kentucky Plaintiffs, in their choice of transaction.

2914. Defendants made misrepresentations of material facts concerning the safety, reliability, and value of the Vehicles that they knew or should have known were false. Specifically, Defendants misrepresented that the Vehicles had effective anti-theft equipment or design elements; misrepresented that the Vehicles were safe and reliable

- 672 -
COMPLAINT

forms of transportation; misrepresented that the Vehicles complied with all federal and industry safety and theft prevention standards; and misrepresented the true value of the Vehicles. Defendants supplied this information in the course of their business to guide Kentucky Plaintiffs in their Vehicle selection and intended to induce Kentucky Plaintiffs to purchase one of Defendants' Vehicles.

2915. Kentucky Plaintiffs justifiably relied upon Defendants' representations because, as the entities responsible for designing and manufacturing the Vehicles, Defendants held themselves out to be knowledgeable about the Vehicles' components and honest in their promotion of the Vehicles. Kentucky Plaintiffs' reliance was further reasonable given the hidden and technical nature of the Theft-Prone Design and practical inability of Kentucky Plaintiffs to discover the Theft-Prone Design on their own. Because Defendants held the Vehicles out to be in line with industry standards, the representation was not unreasonable on its face and Kentucky Plaintiffs had no apparent reason to doubt the veracity of Defendants' representations.

2916. Defendants had a duty to disclose all relevant information regarding the Vehicles' safety, reliability, quality, and characteristics that would affect the Kentucky Plaintiffs' choice of purchase as consumers.

2917. Defendants failed to exercise reasonable care or competence in communicating the standards of safety, reliability, quality, and characteristics of the Vehicles to the consumers, including Kentucky Plaintiffs, when they failed to disclose the lack of anti-theft prevention technology in the Vehicles. Rather, Defendants published materials and marketed the Vehicles for years as safe, reliable, and of a quality consistent with the industry standard.

2918. Kentucky Plaintiffs would not have purchased, or would have purchased for a lower price, the Vehicles which Defendants negligently misrepresented as safe, of standard quality, and containing standard trade characteristics, such as anti-theft prevention technology. Additionally, as a direct and proximate result, Kentucky Plaintiffs have had to pay higher insurance premiums to account for the Vehicles' high

susceptibility to theft and are now left with Vehicles that have a lower value than they would have had without the defect.

2919. As a direct and proximate result of Kentucky Plaintiffs' reasonable reliance on Defendants' negligent misrepresentations, Kentucky Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that Kentucky Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

2920. Kentucky Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

**6.    Negligence.**

2921. Kentucky Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

2922. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

2923. Defendants owed a duty of care to Kentucky Plaintiffs. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves, higher insurance premiums, and accelerated depreciation.

2924. Defendants failed to exercise reasonable care in connection with their manufacture, distribution, sale, and/or leasing of the Vehicles.

2925. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into

COMPLAINT

with Kentucky Plaintiffs.

2926. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS No. 114.

2927. As a direct and proximate result of Defendants' failure to exercise reasonable care, Kentucky Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that Kentucky Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

2928. Kentucky Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 7.     Unjust Enrichment.

2929. Kentucky Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

2930. When they purchased and leased the Vehicles, Kentucky Plaintiffs conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

2931. In exchange, Defendants did not confer the benefit that was promised to Plaintiffs when Defendants provided Vehicles of a lesser value and poorer quality than agreed.  Rather, Defendants kept the monetary amounts Plaintiffs paid for Vehicles of a particular value and nature that conformed with federal and industry safety standards, but Defendants did not provide Vehicles of that particular value or nature that conformed with federal and industry safety standards.

2932. Kentucky Plaintiffs have a reasonable expectation of compensation because they conferred an economic benefit on the Defendants with the expectation that they were receiving a different product—one of the particular design, nature, quality,

and value that contained an anti-theft system and was compliant with federal safety and industry standards—in exchange.

2933. Kentucky Plaintiffs would not have purchased or leased their Vehicles, or would have paid less for them, had they known of the Theft-Prone Design at the time of purchase or lease. Therefore, Defendants profited from the sale and lease of the Vehicles to the detriment and expense of Kentucky Plaintiffs by misrepresenting the Vehicles' true design, nature, quality, and value.

2934. Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft-Prone Design, the Vehicles' noncompliant nature and poorer quality, and the Vehicles' reduced value, yet they failed to disclose this knowledge and misled the Kentucky Plaintiffs regarding the design, nature, quality, and value of the Vehicles while profiting from this deception.

2935. Accordingly, Kentucky Plaintiffs have been impoverished due to Defendants' enrichment without justification.

2936. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, in part because they were procured as a result of their wrongful conduct alleged above.

2937. Kentucky Plaintiffs are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Kentucky Plaintiffs to the position they occupied prior to dealing with these Defendants, with such amounts to be determined at trial.

2938. Kentucky Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages, because if Kentucky Plaintiffs' claims for damages are dismissed or judgment is entered in favor of Defendants, Kentucky Plaintiffs will have no adequate legal remedy.

**R. Louisiana State Law Claims for Relief**

**(Alleged by Louisiana Plaintiffs Against All Defendants)**

**1.    Breach of Implied Warranty of Merchantability/Warranty Against Redhibitory Theft-Prone Defect (La. Civ. Code Art. 2520, 2524).**

2939. Louisiana Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

2940. A warranty that the Vehicles were in merchantable condition is implied by law in the instant transactions.

2941. Defendants are and were at all relevant times "merchants" with respect to motor vehicles.

2942. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased.  Defendants provided Louisiana Plaintiffs with an implied warranty that the purchased and leased Vehicles were in merchantable condition and fit for the ordinary purposes for which they were sold or leased.  This implied warranty included that the Vehicles (a) were manufactured, supplied, distributed, and sold by Defendants, (b) were safe and reliable for transportation, (c) complied with all federal, state, and industry motor vehicle regulations and safety standards, including FMVSS No. 114, (d) were not at an abnormally high risk of theft, and (e) were of a particular value and quality that complied with federal and industry safety standards.

2943. The Vehicles did not comply with the implied warranty of merchantability because the Vehicles were defective and not in merchantable condition at the time of sale and/or lease, were not fit for their ordinary purpose of providing safe and reliable transportation at the time of sale or lease, and would not pass without objection in the trade as they deviated significantly from the industry standard and can be stolen in mere minutes without a key.  Defendants knew at the time of manufacture that the Vehicles contained the Theft-Prone Design and lacked any anti-theft equipment or design elements that effectively prevent theft or comply with FMVSS No. 114.  Therefore, the

- 677 -
COMPLAINT

Defendants knew at the time of manufacture that the Vehicles are at an abnormally high risk of theft and are unsafe and an unreliable form of transportation. The Theft-Prone Design renders the Vehicles highly vulnerable to theft and a prime target for thieves as they can be easily stolen in seconds. Defendants knew at the time of manufacture that because their Vehicles did not include any anti-theft measures that satisfied FMVSS No. 114, making their Vehicles more prone to theft and failing to comply with federal regulations, the Vehicles would require larger insurance premiums and would depreciate at a more rapid rate than a comparable vehicle with anti-theft measure that satisfied FMVSS No. 114. Consequently, at the time of sale and/or lease, the Vehicles were not fit for their ordinary purpose of providing safe and reliable transportation.

2944. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable. Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Louisiana Plaintiffs, of the safety defect. Any time limitations regarding the warranty period were also unconscionable and inadequate to protect Louisiana Plaintiffs. Louisiana Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants. A gross disadvantage in bargaining power existed between Louisiana Plaintiffs and Defendants, which unreasonably favored Defendants. Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left Louisiana Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

2945. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that Louisiana Plaintiffs may seek alternative remedies. Louisiana Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

2946. Louisiana Plaintiffs provided Defendants with reasonable notice of their

COMPLAINT

breaches of warranties and an opportunity to cure.  Louisiana Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Louisiana Plaintiffs' breach of warranty claims.  Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Louisiana Plaintiffs' claims.  Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles.  Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count.  Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Louisiana Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches.  To date, Defendants failed to remedy their breaches.

2947. Alternatively, Louisiana Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile.  Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design.  Defendants have not cured, remedied, or repaired their breaches. Louisiana Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

2948. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Louisiana Plaintiffs' Vehicles were and are defective, the Theft-Prone Design in the Vehicles has not been remedied, and Louisiana Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs,

COMPLAINT

and fees, including but not limited to the difference in value, increased insurance premiums that Louisiana Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

## 2. Breach of Express Warranty Under La. C.C. § 2529.

2949. Louisiana Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

2950. During the relevant time periods, Defendants manufactured the Vehicles and Louisiana Plaintiffs purchased and/or leased the Vehicles from Defendants.

2951. "Under Louisiana law, an express warranty exists where the manufacturer of a good voluntarily undertakes and extends a guarantee to customers." *Purvis v. Teva Pharm., USA, Inc*., 901 F.Supp.2d 716 (M.D. La.2012).

2952. Louisiana's Civil Code also states, "[w]hen the thing the seller has delivered, though in itself free from redhibitory defects, is not of the kind or quality specified in the contract or represented by the seller, the rights of the buyer are governed by other rules of sale and conventional obligations." La. C.C. § 2529. For example, when a defect is material to a plaintiffs' decision to purchase a product or thing, it constitutes a breach of contract pursuant to La. C.C. § 2529. *Swoboda v. SMT Properties, L.L.C*., 975 So.2d 691, 694 (La. Ct. App. 2008).

2953. By affixing a VIN plate to each Vehicle at the time of manufacture, Defendants expressly warranted each Vehicles' conformance to "all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture shown." These statements constitute a description, affirmation of fact, and promise made to Maine Plaintiffs as to the Vehicles' condition, quality, safety, and reliability. These statements, affirmations, and descriptions became the basis of the bargain between Maine Plaintiffs and Defendants, as Maine Plaintiffs relied on these statements when making their decisions to purchase and/or lease the Vehicles. As such, the statements are an express warranty, and the Vehicles did not conform to the affirmations of fact, promises made by Defendants, or Defendants' description of the

Vehicles.

2954. Louisiana Plaintiffs used the Vehicles in accordance with their normal operation and did not misuse or mishandle the Vehicles in any way material to the allegations set forth herein.

2955. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable.  Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Louisiana Plaintiffs, of the safety defect.  Any time limitations regarding the warranty period were also unconscionable and inadequate to protect Louisiana Plaintiffs.  Louisiana Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants.  A gross disadvantage in bargaining power existed between Louisiana Plaintiffs and Defendants, which unreasonably favored Defendants.  Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left Louisiana Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

2956. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that Louisiana Plaintiffs may seek alternative remedies.  Louisiana Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

2957. Louisiana Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure.  Louisiana Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Louisiana Plaintiffs' breach of warranty claims.  Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Louisiana Plaintiffs' claims.  Defendants have long known of the Theft-

Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Louisiana Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches. To date, Defendants failed to remedy their breaches.

2958. Alternatively, Louisiana Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches. Louisiana Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

2959. The Vehicles did not perform as promised in accordance with Defendants' express warranty; instead, the Vehicles did not meet all applicable motor vehicle safety and theft prevention standards in effect on the date of manufacture. The Vehicles are capable of being stolen in a matter of seconds without a key and do not comply with the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles do not, in fact, conform to the applicable anti-theft standards.

2960. As a direct and proximate result of Defendants' breaches, Louisiana Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that Louisiana Plaintiffs have paid and will continue to pay, and

COMPLAINT

accelerated depreciation, in an amount to be proven at trial.

**3.  Violation of Louisiana Unfair Trade Practices Act Under La. Rev. Stat. § 51:1401, et seq.**

2961. Louisiana Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

2962. Defendants and Louisiana Plaintiffs are "persons" within the meaning of La. Rev. Stat. § 51:1402(8).

2963. Louisiana Plaintiffs are "consumers" within the meaning of La. Rev. Stat. § 51:1402(1).

2964. Defendants are engaged in "trade" or "commerce" within the meaning of La. Rev. Stat. § 51:1402(10).

2965. The sale or lease of the Vehicles by Defendants are "consumer transactions" within the meaning of La. Rev. Stat. § 51:1402(3).

2966. Defendants engaged in unlawful and deceptive trade practices as prohibited under the Louisiana Unfair Trade Practices and Consumer Protection Law ("Louisiana CPL"), La. Rev. Stat. § 51:1405(A).

2967. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Louisiana CPL by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Theft-Prone Design, as detailed above.  Defendants used deception and unfair practices, false pretense, false promise, misrepresentation, concealment, suppression, and omission of material facts with the intent that Louisiana Plaintiffs rely on such concealment, suppression, or omission in connection with the sale or advertisement of their Vehicles, in violation of La. Rev. Stat. § 51:1405(A).

2968. Under the Louisiana CPL, Defendants had an ongoing duty to Louisiana Plaintiffs to refrain from unfair or deceptive practices in the course of their business. Specifically, Defendants owed Louisiana Plaintiffs a duty to disclose all the material

COMPLAINT

facts concerning the Theft-Prone Design in the Vehicles.

2969. Defendants had exclusive access to and far superior knowledge about facts regarding the Theft-Prone Design, and Defendants knew these facts were not known to or reasonably discoverable by Louisiana Plaintiffs.

2970. Given the Theft-Prone Design's hidden and technical nature, Louisiana Plaintiffs lack the sophisticated expertise in vehicle components necessary to discover the Theft-Prone Design on their own.

2971. Defendants knew that the Theft-Prone Design gave rise to safety concerns for the consumers who use the Vehicles, and that the Theft-Prone Design would have been a material fact in the Louisiana Plaintiffs' decisions to buy or lease the Vehicles.

2972. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Theft-Prone Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

2973. As detailed above, the information concerning the Theft-Prone Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

2974. By misrepresenting the Vehicles as safe, reliable, and free from defects, and by failing to disclose and actively concealing the dangers and risks posed by the Theft-Prone Design, Defendants engaged in unfair or deceptive business practices in violation of Louisiana CPL.

2975. Defendants intended for Louisiana Plaintiffs to rely on them to provide adequately designed Vehicles and to honestly and accurately reveal the safety hazards described above.

2976. Defendants' unfair or deceptive acts or practices were designed to mislead

- 684 -
COMPLAINT

and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Theft-Prone Design.  Those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Louisiana Plaintiffs, about the true safety and reliability of the Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

2977. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Theft-Prone Design and true characteristics of the Vehicles were material to the decisions of Louisiana Plaintiffs to purchase or lease the Vehicles, as Defendants intended.  Louisiana Plaintiffs were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase or lease the Vehicles.

2978. Louisiana Plaintiffs' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, and/or otherwise learning that the Vehicles contained the Theft-Prone Design, as alleged above. Louisiana Plaintiffs did not, and could not, unravel Defendants' deception on their own.

2979. Had they known the truth about the Theft-Prone Design, Louisiana Plaintiffs would not have purchased or leased the Vehicles or would have paid significantly less for them.

2980. Louisiana Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2981. Defendants' violations present a continuing risk to Louisiana Plaintiffs and the general public because the Vehicles remain unsafe due to the Theft-Prone Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

2982. Defendants had ample notice provided by the numerous complaints filed against them, internet videos, and news reports.  Furthermore, on September 17, 2025,

Louisiana Plaintiffs sent Defendants written notice letters of Defendants' violations, Plaintiffs' claims, and a proposed cure to the violations. To date, Defendants failed to remedy their violations. Because Defendants failed to remedy their unlawful conduct, Louisiana Plaintiffs seek all damages and relief to which Louisiana Plaintiffs are entitled.

2983. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile. As alleged above, Defendants have long known that the Vehicles contained the Theft-Prone Design yet did nothing to remedy the Theft-Prone Design.

2984. Pursuant to Pursuant to La. Rev. Stat. § 51:1409(A), Louisiana Plaintiffs seek an order (1) enjoining Defendants' unfair and/or deceptive acts, methods, or practices alleged herein, and (2) awarding damages, punitive damages, attorney's fees, costs, and/or any other just and proper relief available under the Louisiana CPL.

**4.      Fraud by Omission, Suppression, or Concealment Under La. Civ. C. § 1953 et seq.**

2985. Louisiana Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

2986. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards and are therefore of a particular value and quality. In reality, however, the Vehicles do not comply with such standards and are of a lesser value and quality accordingly.

2987. Defendants were aware of the Theft-Prone Design when they manufactured, marketed, and sold the Vehicles to Louisiana Plaintiffs. Defendants further knew that the Theft-Prone Design gave rise to serious safety risks for the consumers that would use the Vehicles and naturally give rise to higher insurance premiums and accelerated depreciation. At the same time, Defendants were aware of the Federal Motor Vehicle Safety Standards and of the effectiveness of engine immobilizer technology in reducing safety hazards. Defendants were also aware that

- 686 -
COMPLAINT

noncompliance with federal and industry standards lowered the value of the Vehicles and would render the Vehicles difficult to insure.

2988. Defendants knew that the Theft-Prone Design, the safety hazards it posed, and the reduction in the Vehicles' value would have been material facts to the Louisiana Plaintiffs' decisions to buy or lease the Vehicles.

2989. A reasonable person would find the Vehicles' lack of industry-standard anti-theft measures and noncompliance with applicable safety standards material to their decision to purchase, lease, and maintain the Vehicles because these deficiencies impact safety, availability, the Vehicles' value, and the cost to insure the Vehicles.

2990. Defendants knowingly made affirmatively false or incomplete statements of material facts as to the Vehicles' safety, reliability, quality, value, and compliance with applicable motor vehicle safety and theft prevention standards, while they intentionally withheld, concealed, omitted, suppressed, and failed to disclose material facts about the Theft-Prone Design, including the lack of effective anti-theft measures, significant safety risks, noncompliance with federal motor vehicle safety standards, and the Vehicles' true value.

2991. Defendants volunteered incomplete information about the Vehicles they offered for sale and/or lease to consumers, including false statements as to the Vehicles' safety, compliance with applicable safety and anti-theft standards, and value while at the same time withholding the existence of the Theft-Prone Design. Defendants further knew and failed to disclose that the Theft-Prone Design and lack of standard anti-theft measures left the Vehicles at substantially lower value than the price for which they were advertised, marketed, sold, and/or leased.

2992. Alternatively, Defendants made false misrepresentations about the Theft-Prone Design with such utter disregard and recklessness that their knowledge regarding the Theft-Prone Design, its unsafe and unreliable nature, and its substantially lower value may be inferred.

2993. Defendants intended for the Louisiana Plaintiffs to rely on their omissions

COMPLAINT

and concealment—which Louisiana Plaintiffs did in the manner reasonably contemplated by Defendants when they purchased or leased the Vehicles at the prices they paid believing that their vehicles would not have a Theft-Prone Design that would affect the quality, reliability, and safety of the Vehicles.

2994. Louisiana Plaintiffs' reliance on Defendants' misrepresentations and concealment was reasonable and justifiable, as Louisiana Plaintiffs had no way of learning the facts that Defendants had concealed or failed to disclose. Maine Plaintiffs did not, and could not, unravel Defendants' deception on their own.

2995. Having been aware of the Theft-Prone Design within the Vehicles and having known that Louisiana Plaintiffs could not have reasonably been expected to know of the Theft-Prone Design, Defendants had a duty to disclose the Theft-Prone Design to Louisiana Plaintiffs in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Theft-Prone Design and the true value of the Vehicles.

2996. Instead, Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Louisiana Plaintiffs.

2997. If Defendants had fully and adequately disclosed the Theft-Prone Design to consumers, Louisiana Plaintiffs would have seen such a disclosure.

2998. Had Louisiana Plaintiffs known of the Theft-Prone Design within the Vehicles, they would not have purchased the Vehicles or would have paid less for them. Through their omissions and concealment with respect to the Theft-Prone Design within the Vehicles, Defendants intended to induce, and did in fact induce, Louisiana Plaintiffs to either purchase a Vehicle that they otherwise would not have purchased or pay more for a Vehicle than they otherwise would have paid.

2999. As a direct and proximate result of Defendants' omissions, Louisiana Plaintiffs overpaid for the Vehicles because Louisiana Plaintiffs would either have paid

less for the Vehicles or would not have purchased the Vehicles at all if the Theft-Prone Design had been disclosed to them.

3000. As a direct and proximate result of Defendants' omissions, Louisiana Plaintiffs purchased Vehicles highly susceptible to theft and were forced to pay higher insurance premiums to account for the susceptibility that they did not knowingly accept, purchase, or lease.

3001. As a direct and proximate result of Defendants' omissions, the Louisiana Plaintiffs paid higher insurance premiums and are now left with Vehicles with significantly diminished values.

3002. Accordingly, Defendants are liable to Louisiana Plaintiffs for their damages, including but not limited to the difference in value, increased insurance premiums that Louisiana Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

3003. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, in reckless disregard of the Louisiana Plaintiffs' rights and well-being, and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

3004. Louisiana Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

**5.      Negligent Misrepresentation.**

3005. Louisiana Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

3006. Defendants, in the course of their business selling and promoting motor vehicles, supplied false information, including that the Vehicles were safe, reliable, and of a particular value, to guide motor vehicle buyers, including Louisiana Plaintiffs, in their choice of transaction.

COMPLAINT

3007. Defendants made misrepresentations of material facts concerning the safety, reliability, and value of the Vehicles that they knew or should have known were false. Specifically, Defendants misrepresented that the Vehicles had effective anti-theft equipment or design elements; misrepresented that the Vehicles were safe and reliable forms of transportation; misrepresented that the Vehicles complied with all federal and industry safety and theft prevention standards; and misrepresented the true value of the Vehicles. Defendants supplied this information in the course of their business to guide Louisiana Plaintiffs in their Vehicle selection and intended to induce Louisiana Plaintiffs to purchase one of Defendants' Vehicles.

3008. Louisiana Plaintiffs justifiably relied upon Defendants' representations because, as the entities responsible for designing and manufacturing the Vehicles, Defendants held themselves out to be knowledgeable about the Vehicles' components and honest in their promotion of the Vehicles. Louisiana Plaintiffs' reliance was further reasonable given the hidden and technical nature of the Theft-Prone Design and practical inability of Louisiana Plaintiffs to discover the Theft-Prone Design on their own. Because Defendants held the Vehicles out to be in line with industry standards, the representation was not unreasonable on its face and Louisiana Plaintiffs had no apparent reason to doubt the veracity of Defendants' representations.

3009. Defendants had a duty to disclose all relevant information regarding the Vehicles' safety, reliability, quality, and characteristics that would affect the Louisiana Plaintiffs' choice of purchase as consumers.

3010. Defendants failed to exercise reasonable care or competence in communicating the standards of safety, reliability, quality, and characteristics of the Vehicles to the consumers, including Louisiana Plaintiffs, when they failed to disclose the lack of anti-theft prevention technology in the Vehicles. Rather, Defendants published materials and marketed the Vehicles for years as safe, reliable, and of a quality consistent with the industry standard.

3011. Louisiana Plaintiffs would not have purchased, or would have purchased

COMPLAINT

for a lower price, the Vehicles which Defendants negligently misrepresented as safe, of standard quality, and containing standard trade characteristics, such as anti-theft prevention technology. Additionally, as a direct and proximate result, Louisiana Plaintiffs have had to pay higher insurance premiums to account for the Vehicles' high susceptibility to theft and are now left with Vehicles that have a lower value than they would have had without the defect.

3012. As a direct and proximate result of Louisiana Plaintiffs' reasonable reliance on Defendants' negligent misrepresentations, Louisiana Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that Louisiana Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

3013. Louisiana Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 6. Negligence.

3014. Louisiana Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

3015. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

3016. Defendants owed a duty of care to Louisiana Plaintiffs. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves, higher insurance premiums, and accelerated depreciation.

3017. Defendants failed to exercise reasonable care in connection with their manufacture, distribution, sale, and/or leasing of the Vehicles.

3018. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to

ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Louisiana Plaintiffs.

3019. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS No. 114.

3020. As a direct and proximate result of Defendants' failure to exercise reasonable care, Louisiana Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that Louisiana Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

3021. Louisiana Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

**7.    Unjust Enrichment.**

3022. Louisiana Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

3023. When they purchased and leased the Vehicles, Louisiana Plaintiffs conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

3024. In exchange, Defendants did not confer the benefit that was promised to Louisiana Plaintiffs when Defendants provided Vehicles of a lesser value and poorer quality than agreed.  Rather, Defendants kept the monetary amounts Louisiana Plaintiffs paid for Vehicles of a particular value and nature that conformed with federal and industry safety standards, but Defendants did not provide Vehicles of that particular

COMPLAINT

value or nature that conformed with federal and industry safety standards.

3025. Louisiana Plaintiffs have a reasonable expectation of compensation because they conferred an economic benefit on the Defendants with the expectation that they were receiving a different product—one of the particular design, nature, quality, and value that contained an anti-theft system and was compliant with federal safety and industry standards—in exchange.

3026. Louisiana Plaintiffs would not have purchased or leased their Vehicles, or would have paid less for them, had they known of the Theft-Prone Design at the time of purchase or lease. Therefore, Defendants profited from the sale and lease of the Vehicles to the detriment and expense of Louisiana Plaintiffs by misrepresenting the Vehicles' true design, nature, quality, and value.

3027. Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft-Prone Design, the Vehicles' noncompliant nature and poorer quality, and the Vehicles' reduced value, yet they failed to disclose this knowledge and misled the Louisiana Plaintiffs regarding the design, nature, quality, and value of the Vehicles while profiting from this deception.

3028. Accordingly, Louisiana Plaintiffs have been impoverished due to Defendants' enrichment without justification.

3029. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, in part because they were procured as a result of their wrongful conduct alleged above.

3030. Louisiana Plaintiffs are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Louisiana Plaintiffs to the position they occupied prior to dealing with these Defendants, with such amounts to be determined at trial.

3031. Louisiana Plaintiffs plead this claim separately, as well as in the alternative

COMPLAINT

to their claims for damages, because if Louisiana Plaintiffs' claims for damages are dismissed or judgment is entered in favor of Defendants, Louisiana Plaintiffs will have no adequate legal remedy.

**S.      Maine State Law Claims for Relief**

**(Alleged by Maine Plaintiffs Against All Defendants)**

**1.      Breach of Implied Warranty Under Me. Rev. Stat. Tit. 11 §§ 2-314 and 2-1212.**

3032. Maine Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

3033. A warranty that the Vehicles were in merchantable condition is implied by law pursuant to Me. Rev. Stat. Ann. Tit. 11 §§ 2-314, and 2-1212.

3034. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Me. Rev. Stat. Ann. Tit. 11 §§ 2-104(1) and 2-1103(3), and "sellers" of motor vehicles under § 2-103(1)(d) and, with respect to leases, "lessors" of motor vehicles under Me. Rev. Stat. Ann. Tit. 11 § 2-1103(1)(p).

3035. At all relevant times, Maine Plaintiffs' Vehicles (whether purchased or leased) were and are "goods" within the meaning of Me. Rev. Stat. Ann. Tit. 11 §§ 2-105(1), and 2-1103(1)(h).

3036. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased.  Defendants provided Maine Plaintiffs with an implied warranty that the purchased and leased Vehicles were in merchantable condition and fit for the ordinary purposes for which they were sold or leased.  This implied warranty included that the Vehicles (a) were manufactured, supplied, distributed, and sold by Defendants, (b) were safe and reliable for transportation, (c) complied with all federal, state, and industry motor vehicle regulations and safety standards, including FMVSS No. 114, (d) were not at an abnormally high risk of theft, and (e) were of a particular value and quality that complied with federal and industry safety standards.

3037. The Vehicles did not comply with the implied warranty of merchantability because the Vehicles were defective and not in merchantable condition at the time of sale and/or lease, were not fit for their ordinary purpose of providing safe and reliable transportation at the time of sale or lease, and would not pass without objection in the trade as they deviated significantly from the industry standard and can be stolen in mere minutes without a key. Defendants knew at the time of manufacture that the Vehicles contained the Theft-Prone Design and lacked any anti-theft equipment or design elements that effectively prevent theft or comply with FMVSS No. 114. Therefore, the Defendants knew at the time of manufacture that the Vehicles are at an abnormally high risk of theft and are unsafe and an unreliable form of transportation. The Theft-Prone Design renders the Vehicles highly vulnerable to theft and a prime target for thieves as they can be easily stolen in seconds. Defendants knew at the time of manufacture that because their Vehicles did not include any anti-theft measures that satisfied FMVSS No. 114, making their Vehicles more prone to theft and failing to comply with federal regulations, the Vehicles would require larger insurance premiums and would depreciate at a more rapid rate than a comparable vehicle with anti-theft measure that satisfied FMVSS No. 114. Consequently, at the time of sale and/or lease, the Vehicles were not fit for their ordinary purpose of providing safe and reliable transportation.

3038. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable. Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Maine Plaintiffs, of the safety defect. Any time limitations regarding the warranty period were also unconscionable and inadequate to protect Maine Plaintiffs. Maine Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants. A gross disadvantage in bargaining power existed between Maine Plaintiffs and Defendants, which unreasonably favored Defendants. Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and

technical nature of the Theft-Prone Design left Maine Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

3039. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that Maine Plaintiffs may seek alternative remedies. Maine Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

3040. Maine Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure. Maine Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Maine Plaintiffs' breach of warranty claims. Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Maine Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Maine Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches. To date, Defendants failed to remedy their breaches.

3041. Alternatively, Maine Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design.

COMPLAINT

Defendants have not cured, remedied, or repaired their breaches. Maine Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

3042. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Maine Plaintiffs' Vehicles were and are defective, the Theft-Prone Design in the Vehicles has not been remedied, and Maine Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that Maine Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

**2.     Breach of Express Warranty Under Me. Rev. Stat. Tit. 11 §§ 2-313 and 2-1210.**

3043. Maine Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

3044. During the relevant time periods, Defendants manufactured the Vehicles and Maine Plaintiffs purchased and/or leased the Vehicles from Defendants.

3045. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Me. Rev. Stat. Ann. Tit. 11 §§ 2-104(1) and 2-1103(3), and "sellers" of motor vehicles under § 2-103(1)(d) and, with respect to leases, "lessors" of motor vehicles under Me. Rev. Stat. Ann. Tit. 11 § 2-1103(1)(p).

3046. At all relevant times, Maine Plaintiffs' Vehicles (whether purchased or leased) were and are "goods" within the meaning of Me. Rev. Stat. Ann. Tit. 11 §§ 2-105(1), and 2-1103(1)(h).

3047. By affixing a VIN plate to each Vehicle at the time of manufacture, Defendants expressly warranted each Vehicles' conformance to "all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture shown." These statements constitute a description, affirmation of fact, and promise made to Maine Plaintiffs as to the Vehicles' condition, quality, safety,

and reliability.  These statements, affirmations, and descriptions became the basis of the bargain between Maine Plaintiffs and Defendants, as Maine Plaintiffs relied on these statements when making their decisions to purchase and/or lease the Vehicles.  As such, the statements are an express warranty under Maine law pursuant to Me. Rev. Stat. Tit. 11 §§ 2-313 and 2-1210, and the Vehicles did not conform to the affirmations of fact, promises made by Defendants, or Defendants' description of the Vehicles.

3048. Maine Plaintiffs used the Vehicles in accordance with their normal operation and did not misuse or mishandle the Vehicles in any way material to the allegations set forth herein.

3049. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable.  Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Maine Plaintiffs, of the safety defect.  Any time limitations regarding the warranty period were also unconscionable and inadequate to protect Maine Plaintiffs.  Maine Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants.  A gross disadvantage in bargaining power existed between Maine Plaintiffs and Defendants, which unreasonably favored Defendants.  Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left Maine Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

3050. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that Maine Plaintiffs may seek alternative remedies.  Maine Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

3051. Maine Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure.  Maine Plaintiffs have opted out of a

COMPLAINT

consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Maine Plaintiffs' breach of warranty claims. Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Maine Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Maine Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches. To date, Defendants failed to remedy their breaches.

3052. Alternatively, Maine Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches. Maine Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

3053. The Vehicles did not perform as promised in accordance with Defendants' express warranty; instead, the Vehicles did not meet all applicable motor vehicle safety and theft prevention standards in effect on the date of manufacture. The Vehicles are capable of being stolen in a matter of seconds without a key and do not comply with the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles do not, in fact, conform to the applicable anti-theft standards.

COMPLAINT

3054. As a direct and proximate result of Defendants' breaches, Maine Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that Maine Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

### 3. Violation of Maine Unfair Trade Practices Act Under Me. Rev. Stat. Ann. Tit. 5 § 205-a, et seq.

3055. Maine Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

3056. Defendants and Maine Plaintiffs are "persons" within the meaning of Me. Stat. tit. 5, § 206(2).

3057. Defendants are engaged in "trade" or "commerce" within the meaning of Me. Stat. tit. 5, § 206(3).

3058. Defendants engaged in unlawful and deceptive trade practices as prohibited under the Maine Unfair Trade Practices Act ("Maine UTPA"), Me. Stat. tit. 5, 21 § 207.

3059. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Maine UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Theft-Prone Design, as detailed above. Defendants used deception and unfair practices, false pretense, false promise, misrepresentation, concealment, suppression, and omission of material facts with the intent that Maine Plaintiffs rely on such concealment, suppression, or omission in connection with the sale or advertisement of their Vehicles, in violation of Me. Stat. tit. 5, § 207.

3060. Under the Maine UTPA, Defendants had an ongoing duty to Maine Plaintiffs to refrain from unfair or deceptive practices in the course of their business. Specifically, Defendants owed Maine Plaintiffs a duty to disclose all the material facts

COMPLAINT

concerning the Theft-Prone Design in the Vehicles.

3061. Defendants had exclusive access to and far superior knowledge about facts regarding the Theft-Prone Design, and Defendants knew these facts were not known to or reasonably discoverable by Maine Plaintiffs.

3062. Given the Theft-Prone Design's hidden and technical nature, Maine Plaintiffs lack the sophisticated expertise in vehicle components necessary to discover the Theft-Prone Design on their own.

3063. Defendants knew that the Theft-Prone Design gave rise to safety concerns for the consumers who use the Vehicles, and that the Theft-Prone Design would have been a material fact in the Maine Plaintiffs' decisions to buy or lease the Vehicles.

3064. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Theft-Prone Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

3065. As detailed above, the information concerning the Theft-Prone Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

3066. By misrepresenting the Vehicles as safe, reliable, and free from defects, and by failing to disclose and actively concealing the dangers and risks posed by the Theft-Prone Design, Defendants engaged in unfair or deceptive business practices in violation of Maine UTPA.

3067. Defendants intended for Maine Plaintiffs to rely on them to provide adequately designed Vehicles and to honestly and accurately reveal the safety hazards described above.

3068. Defendants' unfair or deceptive acts or practices were designed to mislead

and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Theft-Prone Design.   Those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Maine Plaintiffs, about the true safety and reliability of the Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

3069. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Theft-Prone Design and true characteristics of the Vehicles were material to the decisions of Maine Plaintiffs to purchase or lease the Vehicles, as Defendants intended.   Maine Plaintiffs were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase or lease the Vehicles.

3070. Maine Plaintiffs' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, and/or otherwise learning that the Vehicles contained the Theft-Prone Design, as alleged above.  Maine Plaintiffs did not, and could not, unravel Defendants' deception on their own.

3071. Had they known the truth about the Theft-Prone Design, Maine Plaintiffs would not have purchased or leased the Vehicles or would have paid significantly less for them.

3072. Maine Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

3073. Defendants' violations present a continuing risk to Maine Plaintiffs and the general public because the Vehicles remain unsafe due to the Theft-Prone Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

3074. Defendants had ample notice provided by the numerous complaints filed against them, internet videos, and news reports.  Furthermore, on September 17, 2025,

- 702 -
COMPLAINT

Maine Plaintiffs sent Defendants written notice letters of Defendants' violations, Plaintiffs' claims, and a proposed cure to the violations. To date, Defendants failed to remedy their violations. Because Defendants failed to remedy their unlawful conduct, Maine Plaintiffs seek all damages and relief to which Maine Plaintiffs are entitled.

3075. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile. As alleged above, Defendants have long known that the Vehicles contained the Theft-Prone Design yet did nothing to remedy the Theft-Prone Design.

3076. Pursuant to Me. Rev. Stat. Tit. 5 § 213, Maine Plaintiffs seek an order (1) enjoining Defendants' unfair and/or deceptive acts, methods, or practices alleged herein, and (2) awarding damages, punitive damages, attorney's fees, costs, and/or any other just and proper relief available under the Maine UTPA.

**4.    Fraud by Omission and Concealment.**

3077. Maine Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

3078. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards and are therefore of a particular value and quality. In reality, however, the Vehicles do not comply with such standards and are of a lesser value and quality accordingly.

3079. Defendants were aware of the Theft-Prone Design when they manufactured, marketed, and sold the Vehicles to Maine Plaintiffs. Defendants further knew that the Theft-Prone Design gave rise to serious safety risks for the consumers that would use the Vehicles and naturally give rise to higher insurance premiums and accelerated depreciation. At the same time, Defendants were aware of the Federal Motor Vehicle Safety Standards and of the effectiveness of engine immobilizer technology in reducing safety hazards. Defendants were also aware that noncompliance with federal and industry standards lowered the value of the Vehicles and would render the Vehicles difficult to insure.

COMPLAINT

3080. Defendants knew that the Theft-Prone Design, the safety hazards it posed, and the reduction in the Vehicles' value would have been material facts to the Maine Plaintiffs' decisions to buy or lease the Vehicles.

3081. A reasonable person would find the Vehicles' lack of industry-standard anti-theft measures and noncompliance with applicable safety standards material to their decision to purchase, lease, and maintain the Vehicles because these deficiencies impact safety, availability, the Vehicles' value, and the cost to insure the Vehicles.

3082. Defendants knowingly made affirmatively false or incomplete statements of material facts as to the Vehicles' safety, reliability, quality, value, and compliance with applicable motor vehicle safety and theft prevention standards, while they intentionally withheld, concealed, omitted, suppressed, and failed to disclose material facts about the Theft-Prone Design, including the lack of effective anti-theft measures, significant safety risks, noncompliance with federal motor vehicle safety standards, and the Vehicles' true value.

3083. Defendants volunteered incomplete information about the Vehicles they offered for sale and/or lease to consumers, including false statements as to the Vehicles' safety, compliance with applicable safety and anti-theft standards, and value while at the same time withholding the existence of the Theft-Prone Design.  Defendants further knew and failed to disclose that the Theft-Prone Design and lack of standard anti-theft measures left the Vehicles at substantially lower value than the price for which they were advertised, marketed, sold, and/or leased.

3084. Alternatively, Defendants made false misrepresentations about the Theft-Prone Design with such utter disregard and recklessness that their knowledge regarding the Theft-Prone Design, its unsafe and unreliable nature, and its substantially lower value may be inferred.

3085. Defendants intended for the Maine Plaintiffs to rely on their omissions and concealment—which Maine Plaintiffs did in the manner reasonably contemplated by Defendants when they purchased or leased the Vehicles at the prices they paid believing

COMPLAINT

that their vehicles would not have a Theft-Prone Design that would affect the quality, reliability, and safety of the Vehicles.

3086. Maine Plaintiffs' reliance on Defendants' misrepresentations and concealment was reasonable and justifiable, as Maine Plaintiffs had no way of learning the facts that Defendants had concealed or failed to disclose. Maine Plaintiffs did not, and could not, unravel Defendants' deception on their own.

3087. Having been aware of the Theft-Prone Design within the Vehicles and having known that Maine Plaintiffs could not have reasonably been expected to know of the Theft-Prone Design, Defendants had a duty to disclose the Theft-Prone Design to Maine Plaintiffs in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Theft-Prone Design and the true value of the Vehicles.

3088. Instead, Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Maine Plaintiffs.

3089. If Defendants had fully and adequately disclosed the Theft-Prone Design to consumers, Maine Plaintiffs would have seen such a disclosure.

3090. Had Maine Plaintiffs known of the Theft-Prone Design within the Vehicles, they would not have purchased the Vehicles or would have paid less for them. Through their omissions and concealment with respect to the Theft-Prone Design within the Vehicles, Defendants intended to induce, and did in fact induce, Maine Plaintiffs to either purchase a Vehicle that they otherwise would not have purchased or pay more for a Vehicle than they otherwise would have paid.

3091. As a direct and proximate result of Defendants' omissions, Maine Plaintiffs overpaid for the Vehicles because Maine Plaintiffs would either have paid less for the Vehicles or would not have purchased the Vehicles at all if the Theft-Prone Design had been disclosed to them.

COMPLAINT

3092. As a direct and proximate result of Defendants' omissions, Maine Plaintiffs purchased Vehicles highly susceptible to theft and were forced to pay higher insurance premiums to account for the susceptibility that they did not knowingly accept, purchase, or lease.

3093. As a direct and proximate result of Defendants' omissions, the Maine Plaintiffs paid higher insurance premiums and are now left with Vehicles with significantly diminished values.

3094. Accordingly, Defendants are liable to Maine Plaintiffs for their damages, including but not limited to the difference in value, increased insurance premiums that Maine Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

3095. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, in reckless disregard of the Maine Plaintiffs' rights and well-being, and to enrich themselves.  Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

3096. Maine Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 5.    Negligent Misrepresentation.

3097. Maine Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

3098. Defendants, in the course of their business selling and promoting motor vehicles, supplied false information, including that the Vehicles were safe, reliable, and of a particular value, to guide motor vehicle buyers, including Maine Plaintiffs, in their choice of transaction.

3099. Defendants made misrepresentations of material facts concerning the safety, reliability, and value of the Vehicles that they knew or should have known were

COMPLAINT

false. Specifically, Defendants misrepresented that the Vehicles had effective anti-theft equipment or design elements; misrepresented that the Vehicles were safe and reliable forms of transportation; misrepresented that the Vehicles complied with all federal and industry safety and theft prevention standards; and misrepresented the true value of the Vehicles. Defendants supplied this information in the course of their business to guide Maine Plaintiffs in their Vehicle selection and intended to induce Maine Plaintiffs to purchase one of Defendants' Vehicles.

3100. Maine Plaintiffs justifiably relied upon Defendants' representations because, as the entities responsible for designing and manufacturing the Vehicles, Defendants held themselves out to be knowledgeable about the Vehicles' components and honest in their promotion of the Vehicles. Maine Plaintiffs' reliance was further reasonable given the hidden and technical nature of the Theft-Prone Design and practical inability of Maine Plaintiffs to discover the Theft-Prone Design on their own. Because Defendants held the Vehicles out to be in line with industry standards, the representation was not unreasonable on its face and Maine Plaintiffs had no apparent reason to doubt the veracity of Defendants' representations.

3101. Defendants had a duty to disclose all relevant information regarding the Vehicles' safety, reliability, quality, and characteristics that would affect the Maine Plaintiffs' choice of purchase as consumers.

3102. Defendants failed to exercise reasonable care or competence in communicating the standards of safety, reliability, quality, and characteristics of the Vehicles to the consumers, including Maine Plaintiffs, when they failed to disclose the lack of anti-theft prevention technology in the Vehicles. Rather, Defendants published materials and marketed the Vehicles for years as safe, reliable, and of a quality consistent with the industry standard.

3103. Maine Plaintiffs would not have purchased, or would have purchased for a lower price, the Vehicles which Defendants negligently misrepresented as safe, of standard quality, and containing standard trade characteristics, such as anti-theft

prevention technology. Additionally, as a direct and proximate result, Maine Plaintiffs have had to pay higher insurance premiums to account for the Vehicles' high susceptibility to theft and are now left with Vehicles that have a lower value than they would have had without the defect.

3104. As a direct and proximate result of Maine Plaintiffs' reasonable reliance on Defendants' negligent misrepresentations, Maine Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that Maine Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

3105. Maine Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

**6.    Negligence.**

3106. Maine Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

3107. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

3108. Defendants owed a duty of care to Maine Plaintiffs. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves, higher insurance premiums, and accelerated depreciation.

3109. Defendants failed to exercise reasonable care in connection with their manufacture, distribution, sale, and/or leasing of the Vehicles.

3110. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States

- 708 -
COMPLAINT

and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Maine Plaintiffs.

3111. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS No. 114.

3112. As a direct and proximate result of Defendants' failure to exercise reasonable care, Maine Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that Maine Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

3113. Maine Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 7. Unjust Enrichment.

3114. Maine Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

3115. When they purchased and leased the Vehicles, Maine Plaintiffs conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

3116. In exchange, Defendants did not confer the benefit that was promised to Plaintiffs when Defendants provided Vehicles of a lesser value and poorer quality than agreed. Rather, Defendants kept the monetary amounts Plaintiffs paid for Vehicles of a particular value and nature that conformed with federal and industry safety standards, but Defendants did not provide Vehicles of that particular value or nature that conformed with federal and industry safety standards.

3117. Maine Plaintiffs have a reasonable expectation of compensation because

COMPLAINT

they conferred an economic benefit on the Defendants with the expectation that they were receiving a different product—one of the particular design, nature, quality, and value that contained an anti-theft system and was compliant with federal safety and industry standards—in exchange.

3118. Maine Plaintiffs would not have purchased or leased their Vehicles, or would have paid less for them, had they known of the Theft-Prone Design at the time of purchase or lease. Therefore, Defendants profited from the sale and lease of the Vehicles to the detriment and expense of Maine Plaintiffs by misrepresenting the Vehicles' true design, nature, quality, and value.

3119. Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft-Prone Design, the Vehicles' noncompliant nature and poorer quality, and the Vehicles' reduced value, yet they failed to disclose this knowledge and misled the Maine Plaintiffs regarding the design, nature, quality, and value of the Vehicles while profiting from this deception.

3120. Accordingly, Maine Plaintiffs have been impoverished due to Defendants' enrichment without justification.

3121. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, in part because they were procured as a result of their wrongful conduct alleged above.

3122. Maine Plaintiffs are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Maine Plaintiffs to the position they occupied prior to dealing with these Defendants, with such amounts to be determined at trial.

3123. Maine Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages, because if Maine Plaintiffs' claims for damages are dismissed or judgment is entered in favor of Defendants, Maine Plaintiffs will have no adequate

COMPLAINT

legal remedy.

**T.    Maryland State Law Claims for Relief**

**(Alleged by Maryland Plaintiffs Against All Defendants)**

**1.    Breach of Implied Warranty Under Md. Code Ann. §§ 2-314 and 2A-212.**

3124. Maryland Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

3125. A warranty that the Vehicles were in merchantable condition is implied by law pursuant to Md. Code Ann. §§ 2-314 and 2A-212.

3126. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Md. Code Ann. §§ 2-104(1) and 2A-103(3), and "sellers" of motor vehicles under § 2-103(1)(d) and, with respect to leases, "lessors" of motor vehicles under § 2A-103(1)(p).

3127. At all relevant times, Maryland Plaintiffs who purchased Vehicles in Maryland were and are "buyers" within the meaning of Md. Code Ann. § 2-103(1)(a).

3128. At all relevant times, Maryland Plaintiffs who leased Vehicles in Maryland were and are "lessees" within the meaning of Md. Code Ann. § 2A-103(1)(n).

3129. At all relevant times, Maryland Plaintiffs' Vehicles (whether purchased or leased) were and are "goods" within the meaning of Md. Code Ann. §§ 2-105(1) and 2A-103(1)(h).

3130. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased.  Defendants provided Maryland Plaintiffs with an implied warranty that the purchased and leased Vehicles were in merchantable condition and fit for the ordinary purposes for which they were sold or leased.  This implied warranty included that the Vehicles (a) were manufactured, supplied, distributed, and sold by Defendants, (b) were safe and reliable for transportation, (c) complied with all federal, state, and industry motor vehicle regulations and safety standards, including FMVSS No. 114, (d) were not at an abnormally high risk of theft,

and (e) were of a particular value and quality that complied with federal and industry safety standards.

3131. The Vehicles did not comply with the implied warranty of merchantability because the Vehicles were defective and not in merchantable condition at the time of sale and/or lease, were not fit for their ordinary purpose of providing safe and reliable transportation at the time of sale or lease, and would not pass without objection in the trade as they deviated significantly from the industry standard and can be stolen in mere minutes without a key. Defendants knew at the time of manufacture that the Vehicles contained the Theft-Prone Design and lacked any anti-theft equipment or design elements that effectively prevent theft or comply with FMVSS No. 114. Therefore, the Defendants knew at the time of manufacture that the Vehicles are at an abnormally high risk of theft and are unsafe and an unreliable form of transportation. The Theft-Prone Design renders the Vehicles highly vulnerable to theft and a prime target for thieves as they can be easily stolen in seconds. Defendants knew at the time of manufacture that because their Vehicles did not include any anti-theft measures that satisfied FMVSS No. 114, making their Vehicles more prone to theft and failing to comply with federal regulations, the Vehicles would require larger insurance premiums and would depreciate at a more rapid rate than a comparable vehicle with anti-theft measure that satisfied FMVSS No. 114. Consequently, at the time of sale and/or lease, the Vehicles were not fit for their ordinary purpose of providing safe and reliable transportation.

3132. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable. Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Maryland Plaintiffs, of the safety defect. Any time limitations regarding the warranty period were also unconscionable and inadequate to protect Maryland Plaintiffs. Maryland Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants. A gross disadvantage in bargaining power existed between Maryland

COMPLAINT

Plaintiffs and Defendants, which unreasonably favored Defendants. Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left Maryland Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

3133. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that Maryland Plaintiffs may seek alternative remedies. Maryland Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

3134. Maryland Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure. Maryland Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Maryland Plaintiffs' breach of warranty claims. Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Maryland Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Maryland Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches. To date, Defendants failed to remedy their breaches.

3135. Alternatively, Maryland Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile.

Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches. Maryland Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

3136. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Maryland Plaintiffs' Vehicles were and are defective, the Theft-Prone Design in the Vehicles has not been remedied, and Maryland Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that Maryland Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

**2.    Breach of Express Warranty Under Md. Code Ann. §§ 2-313 and 2A 210.**

3137. Maryland Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

3138. During the relevant time periods, Defendants manufactured the Vehicles and Maryland Plaintiffs purchased and/or leased the Vehicles from Defendants.

3139. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Md. Code Ann. §§ 2-104(1) and 2A-103(3), and "sellers" of motor vehicles under § 2-103(1)(d) and, with respect to leases, "lessors" of motor vehicles under § 2A-103(1)(p).

3140. At all relevant times, Maryland Plaintiffs who purchased Vehicles in Maryland were and are "buyers" within the meaning of Md. Code Ann. § 2-103(1)(a).

3141. At all relevant times, Maryland Plaintiffs who leased Vehicles in Maryland were and are "lessees" within the meaning of Md. Code Ann. § 2A-103(1)(n).

3142. At all relevant times, Maryland Plaintiffs' Vehicles (whether purchased or leased) were and are "goods" within the meaning of Md. Code Ann. §§ 2-105(1) and

2A-103(1)(h).

3143. By affixing a VIN plate to each Vehicle at the time of manufacture, Defendants expressly warranted each Vehicles' conformance to "all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture shown." These statements constitute a description, affirmation of fact, and promise made to Maryland Plaintiffs as to the Vehicles' condition, quality, safety, and reliability. These statements, affirmations, and descriptions became the basis of the bargain between Maryland Plaintiffs and Defendants, as Maryland Plaintiffs relied on these statements when making their decisions to purchase and/or lease the Vehicles. As such, the statements are an express warranty under Maryland law pursuant to Md. Code Ann. §§ 2-313 and 2A 210, and the Vehicles did not conform to the affirmations of fact, promises made by Defendants, or Defendants' description of the Vehicles.

3144. Maryland Plaintiffs used the Vehicles in accordance with their normal operation and did not misuse or mishandle the Vehicles in any way material to the allegations set forth herein.

3145. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable. Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Maryland Plaintiffs, of the safety defect. Any time limitations regarding the warranty period were also unconscionable and inadequate to protect Maryland Plaintiffs. Maryland Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants. A gross disadvantage in bargaining power existed between Maryland Plaintiffs and Defendants, which unreasonably favored Defendants. Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left Maryland Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

COMPLAINT

3146. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that Maryland Plaintiffs may seek alternative remedies. Maryland Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

3147. Maryland Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure.  Maryland Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Maryland Plaintiffs' breach of warranty claims.  Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Maryland Plaintiffs' claims.  Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles.  Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count.  Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Maryland Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches.  To date, Defendants failed to remedy their breaches.

3148. Alternatively, Maryland Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches.  Maryland Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches

COMPLAINT

or the Theft-Prone Design if they presented their Vehicles for repair.

3149. The Vehicles did not perform as promised in accordance with Defendants' express warranty; instead, the Vehicles did not meet all applicable motor vehicle safety and theft prevention standards in effect on the date of manufacture. The Vehicles are capable of being stolen in a matter of seconds without a key and do not comply with the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles do not, in fact, conform to the applicable anti-theft standards.

3150. As a direct and proximate result of Defendants' breaches, Maryland Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that Maryland Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

**3.  Violation of Maryland Consumer Protection Act Under Md. Code Ann. § 13-101, et seq.**

3151. Maryland Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

3152. Defendants and Maryland Plaintiffs are "persons" within the meaning of Md. Code Ann. § 13-101(h).

3153. Maryland Plaintiffs are "consumers" within the meaning of Md. Code Ann. § 13-101(c).

3154. The Vehicles are "merchandise" within the meaning of Md. Code Ann. § 13-101(f).

3155. Defendants engaged in unlawful and deceptive trade practices as prohibited under the Maryland Consumer Protection Act ("Maryland CPA"), which declares that "[a] person may not engage in any unfair, abusive, or deceptive trade practice, as defined in this subtitle or as further defined by the Division." Md. Code Ann. § 13-303. Section 13-301 defines "unfair, abusive or deceptive trade practices." *Id*. at § 13-301.

COMPLAINT

3156. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Maryland CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Theft-Prone Design, as detailed above.  Defendants used deception and unfair practices, false pretense, false promise, misrepresentation, concealment, suppression, and omission of material facts with intent that the Maryland Plaintiffs rely on such concealment, suppression, or omission in connection with the sale or advertisement of their Vehicles, in violation of Md. Code Ann. §§ 13-301.

3157. Under the Maryland CPA, Defendants had an ongoing duty to Maryland Plaintiffs to refrain from unfair or deceptive practices in the course of their business. Specifically, Defendants owed Maryland Plaintiffs a duty to disclose all the material facts concerning the Theft-Prone Design in the Vehicles.

3158. Defendants had exclusive access to and far superior knowledge about facts regarding the Theft-Prone Design, and Defendants knew these facts were not known to or reasonably discoverable by Maryland Plaintiffs.

3159. Given the Theft-Prone Design's hidden and technical nature, Maryland Plaintiffs lack the sophisticated expertise in vehicle components necessary to discover the Theft-Prone Design on their own.

3160. Defendants knew that the Theft-Prone Design gave rise to safety concerns for the consumers who use the Vehicles, and that the Theft-Prone Design would have been a material fact in the Maryland Plaintiffs' decisions to buy or lease the Vehicles.

3161. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect.  In advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Theft-Prone Design.  Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to

consumers, Defendants had the duty to disclose the whole truth.

3162. As detailed above, the information concerning the Theft-Prone Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

3163. By misrepresenting the Vehicles as safe, reliable, and free from defects, and by failing to disclose and actively concealing the dangers and risks posed by the Theft-Prone Design, Defendants engaged in the following unfair or deceptive business practices in violation of Maryland CPA: (a) making false or misleading oral or written statements, visual descriptions, or other representations of any kind which had the tendency or effect of deceiving or misleading consumers about the Vehicles; (b) representing that the Vehicles have approval, accessories, characteristics, uses, and benefits that they do not have; (c) representing that the Vehicles are of a particular standard, quality, or grade when they are not; (d) failure to state material facts about the Vehicles that deceives or tends to deceive; (e) advertising the Vehicles with the intent not to sell or lease them as advertised; and (f) engaging in deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of material facts regarding the safety of the Vehicles.  Md. Code Ann. §§ 13-301(1), (2)(i), (2)(iv), (3), (5)(i), and (9)(i).

3164. Defendants intended for Maryland Plaintiffs to rely on them to provide adequately designed Vehicles and to honestly and accurately reveal the safety hazards described above.

3165. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Theft-Prone Design.  Those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Maryland Plaintiffs, about the true safety and reliability of the Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

COMPLAINT

3166. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Theft-Prone Design and true characteristics of the Vehicles were material to the decisions of Maryland Plaintiffs to purchase or lease the Vehicles, as Defendants intended. Maryland Plaintiffs were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase or lease the Vehicles.

3167. Maryland Plaintiffs' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, and/or otherwise learning that the Vehicles contained the Theft-Prone Design, as alleged above. Maryland Plaintiffs did not, and could not, unravel Defendants' deception on their own.

3168. Had they known the truth about the Theft-Prone Design, Maryland Plaintiffs would not have purchased or leased the Vehicles or would have paid significantly less for them.

3169. Maryland Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

3170. Defendants' violations present a continuing risk to Maryland Plaintiffs and the general public because the Vehicles remain unsafe due to the Theft-Prone Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

3171. Defendants had ample notice provided by the numerous complaints filed against them, internet videos, and news reports. Furthermore, on September 17, 2025, Maryland Plaintiffs sent Defendants written notice letters of Defendants' violations, Plaintiffs' claims, and a proposed cure to the violations. To date, Defendants failed to remedy their violations. Because Defendants failed to remedy their unlawful conduct, Maryland Plaintiffs seek all damages and relief to which Maryland Plaintiffs are entitled.

3172. Alternatively, providing notice to Defendants and an opportunity to cure

COMPLAINT

the breach prior to filing suit would have been futile.  As alleged above, Defendants have long known that the Vehicles contained the Theft-Prone Design yet did nothing to remedy the Theft-Prone Design.

3173. Pursuant to Md. Code Ann. § 13-101, et seq., Maryland Plaintiffs seek an order (1) enjoining Defendants' unfair and/or deceptive acts, methods, or practices alleged herein, and (2) awarding damages, punitive damages, attorney's fees, costs, and/or any other just and proper relief available under the Maryland CPA.

### 4.      Fraud by Omission, Suppression, or Concealment.

3174. Maryland Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

3175. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards and are therefore of a particular value and quality.  In reality, however, the Vehicles do not comply with such standards and are of a lesser value and quality accordingly.

3176. Defendants were aware of the Theft-Prone Design when they manufactured, marketed, and sold the Vehicles to Maryland Plaintiffs.  Defendants further knew that the Theft-Prone Design gave rise to serious safety risks for the consumers that would use the Vehicles and naturally give rise to higher insurance premiums and accelerated depreciation.  At the same time, Defendants were aware of the Federal Motor Vehicle Safety Standards and of the effectiveness of engine immobilizer technology in reducing safety hazards.  Defendants were also aware that noncompliance with federal and industry standards lowered the value of the Vehicles and would render the Vehicles difficult to insure.

3177. Defendants knew that the Theft-Prone Design, the safety hazards it posed, and the reduction in the Vehicles' value would have been material facts to the Maryland Plaintiffs' decisions to buy or lease the Vehicles.

3178. A reasonable person would find the Vehicles' lack of industry-standard anti-theft measures and noncompliance with applicable safety standards material to

COMPLAINT

their decision to purchase, lease, and maintain the Vehicles because these deficiencies impact safety, availability, the Vehicles' value, and the cost to insure the Vehicles.

3179. Defendants knowingly made affirmatively false or incomplete statements of material facts as to the Vehicles' safety, reliability, quality, value, and compliance with applicable motor vehicle safety and theft prevention standards, while they intentionally withheld, concealed, omitted, suppressed, and failed to disclose material facts about the Theft-Prone Design, including the lack of effective anti-theft measures, significant safety risks, noncompliance with federal motor vehicle safety standards, and the Vehicles' true value.

3180. Defendants volunteered incomplete information about the Vehicles they offered for sale and/or lease to consumers, including false statements as to the Vehicles' safety, compliance with applicable safety and anti-theft standards, and value while at the same time withholding the existence of the Theft-Prone Design. Defendants further knew and failed to disclose that the Theft-Prone Design and lack of standard anti-theft measures left the Vehicles at substantially lower value than the price for which they were advertised, marketed, sold, and/or leased.

3181. Alternatively, Defendants made false misrepresentations about the Theft-Prone Design with such utter disregard and recklessness that their knowledge regarding the Theft-Prone Design, its unsafe and unreliable nature, and its substantially lower value may be inferred.

3182. Defendants intended for the Maryland Plaintiffs to rely on their omissions and concealment—which Maryland Plaintiffs did in the manner reasonably contemplated by Defendants when they purchased or leased the Vehicles at the prices they paid believing that their vehicles would not have a Theft-Prone Design that would affect the quality, reliability, and safety of the Vehicles.

3183. Maryland Plaintiffs' reliance on Defendants' misrepresentations and concealment was reasonable and justifiable, as Maryland Plaintiffs had no way of learning the facts that Defendants had concealed or failed to disclose. Maryland

Plaintiffs did not, and could not, unravel Defendants' deception on their own.

3184. Having been aware of the Theft-Prone Design within the Vehicles and having known that Maryland Plaintiffs could not have reasonably been expected to know of the Theft-Prone Design, Defendants had a duty to disclose the Theft-Prone Design to Maryland Plaintiffs in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Theft-Prone Design and the true value of the Vehicles.

3185. Instead, Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Maryland Plaintiffs.

3186. If Defendants had fully and adequately disclosed the Theft-Prone Design to consumers, Maryland Plaintiffs would have seen such a disclosure.

3187. Had Maryland Plaintiffs known of the Theft-Prone Design within the Vehicles, they would not have purchased the Vehicles or would have paid less for them. Through their omissions and concealment with respect to the Theft-Prone Design within the Vehicles, Defendants intended to induce, and did in fact induce, Maryland Plaintiffs to either purchase a Vehicle that they otherwise would not have purchased or pay more for a Vehicle than they otherwise would have paid.

3188. As a direct and proximate result of Defendants' omissions, Maryland Plaintiffs overpaid for the Vehicles because Maryland Plaintiffs would either have paid less for the Vehicles or would not have purchased the Vehicles at all if the Theft-Prone Design had been disclosed to them.

3189. As a direct and proximate result of Defendants' omissions, Maryland Plaintiffs purchased Vehicles highly susceptible to theft and were forced to pay higher insurance premiums to account for the susceptibility that they did not knowingly accept, purchase, or lease.

3190. As a direct and proximate result of Defendants' omissions, the Maryland

Plaintiffs paid higher insurance premiums and are now left with Vehicles with significantly diminished values.

3191. Accordingly, Defendants are liable to Maryland Plaintiffs for their damages, including but not limited to the difference in value, increased insurance premiums that Maryland Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

3192. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, in reckless disregard of the Maryland Plaintiffs' rights and well-being, and to enrich themselves.  Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

3193. Maryland Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 5.    Negligent Misrepresentation.

3194. Maryland Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

3195. Defendants, in the course of their business selling and promoting motor vehicles, supplied false information, including that the Vehicles were safe, reliable, and of a particular value, to guide motor vehicle buyers, including Maryland Plaintiffs, in their choice of transaction.

3196. Defendants made misrepresentations of material facts concerning the safety, reliability, and value of the Vehicles that they knew or should have known were false.  Specifically, Defendants misrepresented that the Vehicles had effective anti-theft equipment or design elements; misrepresented that the Vehicles were safe and reliable forms of transportation; misrepresented that the Vehicles complied with all federal and industry safety and theft prevention standards; and misrepresented the true value of the Vehicles.  Defendants supplied this information in the course of their business to guide

COMPLAINT

Maryland Plaintiffs in their Vehicle selection and intended to induce Maryland Plaintiffs to purchase one of Defendants' Vehicles.

3197. Maryland Plaintiffs justifiably relied upon Defendants' representations because, as the entities responsible for designing and manufacturing the Vehicles, Defendants held themselves out to be knowledgeable about the Vehicles' components and honest in their promotion of the Vehicles. Maryland Plaintiffs' reliance was further reasonable given the hidden and technical nature of the Theft-Prone Design and practical inability of Maryland Plaintiffs to discover the Theft-Prone Design on their own. Because Defendants held the Vehicles out to be in line with industry standards, the representation was not unreasonable on its face and Maryland Plaintiffs had no apparent reason to doubt the veracity of Defendants' representations.

3198. Defendants had a duty to disclose all relevant information regarding the Vehicles' safety, reliability, quality, and characteristics that would affect the Maryland Plaintiffs' choice of purchase as consumers.

3199. Defendants failed to exercise reasonable care or competence in communicating the standards of safety, reliability, quality, and characteristics of the Vehicles to the consumers, including Maryland Plaintiffs, when they failed to disclose the lack of anti-theft prevention technology in the Vehicles. Rather, Defendants published materials and marketed the Vehicles for years as safe, reliable, and of a quality consistent with the industry standard.

3200. Maryland Plaintiffs would not have purchased, or would have purchased for a lower price, the Vehicles which Defendants negligently misrepresented as safe, of standard quality, and containing standard trade characteristics, such as anti-theft prevention technology. Additionally, as a direct and proximate result, Maryland Plaintiffs have had to pay higher insurance premiums to account for the Vehicles' high susceptibility to theft and are now left with Vehicles that have a lower value than they would have had without the defect.

3201. As a direct and proximate result of Maryland Plaintiffs' reasonable reliance

on Defendants' negligent misrepresentations, Maryland Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that Maryland Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

3202. Maryland Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 6. Negligence.

3203. Maryland Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

3204. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

3205. Defendants owed a duty of care to Maryland Plaintiffs. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves, higher insurance premiums, and accelerated depreciation.

3206. Defendants failed to exercise reasonable care in connection with their manufacture, distribution, sale, and/or leasing of the Vehicles.

3207. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Maryland Plaintiffs.

3208. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory

COMPLAINT

requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS No. 114.

3209. As a direct and proximate result of Defendants' failure to exercise reasonable care, Maryland Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that Maryland Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

3210. Maryland Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 7. Unjust Enrichment.

3211. Maryland Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

3212. When they purchased and leased the Vehicles, Maryland Plaintiffs conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

3213. In exchange, Defendants did not confer the benefit that was promised to Plaintiffs when Defendants provided Vehicles of a lesser value and poorer quality than agreed.  Rather, Defendants kept the monetary amounts Plaintiffs paid for Vehicles of a particular value and nature that conformed with federal and industry safety standards, but Defendants did not provide Vehicles of that particular value or nature that conformed with federal and industry safety standards.

3214. Maryland Plaintiffs have a reasonable expectation of compensation because they conferred an economic benefit on the Defendants with the expectation that they were receiving a different product—one of the particular design, nature, quality, and value that contained an anti-theft system and was compliant with federal safety and industry standards—in exchange.

3215. Maryland Plaintiffs would not have purchased or leased their Vehicles, or

COMPLAINT

would have paid less for them, had they known of the Theft-Prone Design at the time of purchase or lease.  Therefore, Defendants profited from the sale and lease of the Vehicles to the detriment and expense of Maryland Plaintiffs by misrepresenting the Vehicles' true design, nature, quality, and value.

3216. Defendants appreciated these economic benefits.  These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers.  They knew of these benefits because they were aware of the Theft-Prone Design, the Vehicles' noncompliant nature and poorer quality, and the Vehicles' reduced value, yet they failed to disclose this knowledge and misled the Maryland Plaintiffs regarding the design, nature, quality, and value of the Vehicles while profiting from this deception.

3217. Accordingly, Maryland Plaintiffs have been impoverished due to Defendants' enrichment without justification.

3218. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, in part because they were procured as a result of their wrongful conduct alleged above.

3219. Maryland Plaintiffs are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Maryland Plaintiffs to the position they occupied prior to dealing with these Defendants, with such amounts to be determined at trial.

3220. Maryland Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages, because if Maryland Plaintiffs' claims for damages are dismissed or judgment is entered in favor of Defendants, Maryland Plaintiffs will have no adequate legal remedy.

**U.      Massachusetts State Law Claims for Relief**

**(Alleged by Massachusetts Plaintiffs Against All Defendants)**

**1.      Breach of Implied Warranty Under Mass. Gen. Laws Ch. 106, §§ 2-314 and 2A-212.**

COMPLAINT

3221. Massachusetts Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

3222. A warranty that the Vehicles were in merchantable condition is implied by law pursuant to Mass. Gen. Laws Ch. 106 §§ 2-314 and 2A-212.

3223. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Mass. Gen. Laws Ch. 106 §§ 2-104(a) and 2A-103(3), "sellers" of motor vehicles under § 2-103(a)(d) and, with respect to leases, "lessors" of motor vehicles under § 2A-103(a)(p).

3224. At all relevant times, Massachusetts Plaintiffs who purchased Vehicles in Massachusetts were and are "buyers" within the meaning of Mass. Gen. Laws Ch. 106 § 2-103(1)(a).

3225. At all relevant times, Massachusetts Plaintiffs who leased Vehicles in Massachusetts were and are "lessees" within the meaning of Mass. Gen. Laws Ch. 106 § 2A-103(1)(n).

3226. At all relevant times, Massachusetts Plaintiffs' Vehicles (whether purchased or leased) were and are "goods" within the meaning of Mass. Gen. Laws. Ch. 106 §§ 2-105(1) and 2A-103(1)(h).

3227. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased.  Defendants provided Massachusetts Plaintiffs with an implied warranty that the purchased and leased Vehicles were in merchantable condition and fit for the ordinary purposes for which they were sold or leased.  This implied warranty included that the Vehicles (a) were manufactured, supplied, distributed, and sold by Defendants, (b) were safe and reliable for transportation, (c) complied with all federal, state, and industry motor vehicle regulations and safety standards, including FMVSS No. 114, (d) were not at an abnormally high risk of theft, and (e) were of a particular value and quality that complied with federal and industry safety standards.

3228. The Vehicles did not comply with the implied warranty of merchantability

COMPLAINT

because the Vehicles were defective and not in merchantable condition at the time of sale and/or lease, were not fit for their ordinary purpose of providing safe and reliable transportation at the time of sale or lease, and would not pass without objection in the trade as they deviated significantly from the industry standard and can be stolen in mere minutes without a key.  Defendants knew at the time of manufacture that the Vehicles contained the Theft-Prone Design and lacked any anti-theft equipment or design elements that effectively prevent theft or comply with FMVSS No. 114.  Therefore, the Defendants knew at the time of manufacture that the Vehicles are at an abnormally high risk of theft and are unsafe and an unreliable form of transportation.  The Theft-Prone Design renders the Vehicles highly vulnerable to theft and a prime target for thieves as they can be easily stolen in seconds.  Defendants knew at the time of manufacture that because their Vehicles did not include any anti-theft measures that satisfied FMVSS No. 114, making their Vehicles more prone to theft and failing to comply with federal regulations, the Vehicles would require larger insurance premiums and would depreciate at a more rapid rate than a comparable vehicle with anti-theft measure that satisfied FMVSS No. 114. Consequently, at the time of sale and/or lease, the Vehicles were not fit for their ordinary purpose of providing safe and reliable transportation.

3229. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable.  Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Massachusetts Plaintiffs, of the safety defect.  Any time limitations regarding the warranty period were also unconscionable and inadequate to protect Massachusetts Plaintiffs.  Massachusetts Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants.  A gross disadvantage in bargaining power existed between Massachusetts Plaintiffs and Defendants, which unreasonably favored Defendants.  Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left Massachusetts Plaintiffs

COMPLAINT

unable to reasonably discover the defects and lack of anti-theft protection.

3230. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that Massachusetts Plaintiffs may seek alternative remedies. Massachusetts Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

3231. Massachusetts Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure. Massachusetts Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Massachusetts Plaintiffs' breach of warranty claims. Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Massachusetts Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Massachusetts Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches. To date, Defendants failed to remedy their breaches.

3232. Alternatively, Massachusetts Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-

Prone Design. Defendants have not cured, remedied, or repaired their breaches. Massachusetts Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

3233. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Massachusetts Plaintiffs' Vehicles were and are defective, the Theft-Prone Design in the Vehicles has not been remedied, and Massachusetts Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that Massachusetts Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

**2.  Breach of Express Warranty Under Mass. Gen. Laws Ch. 106, § 2-313.[134]**

3234. Massachusetts Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

3235. During the relevant time periods, Defendants manufactured the Vehicles and Massachusetts Plaintiffs purchased and/or leased the Vehicles from Defendants.

3236. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Mass. Gen. Laws Ch. 106 §§ 2-104(a) and 2A-103(3), "sellers" of motor vehicles under § 2-103(a)(d) and, with respect to leases, "lessors" of motor vehicles under § 2A-103(a)(p).

3237. At all relevant times, Massachusetts Plaintiffs who purchased Vehicles in Massachusetts were and are "buyers" within the meaning of Mass. Gen. Laws Ch. 106 § 2-103(1)(a).

3238. At all relevant times, Massachusetts Plaintiffs who leased Vehicles in Massachusetts were and are "lessees" within the meaning of Mass. Gen. Laws Ch. 106

---

[134] For the names of the Massachusetts Plaintiffs who do not allege a claim for Breach of Express Warranty Under Mass. Gen. Laws Ch. 106, § 2-313, see Exhibit E.

COMPLAINT

§ 2A-103(1)(n).

3239. At all relevant times, Massachusetts Plaintiffs' Vehicles (whether purchased or leased) were and are "goods" within the meaning of Mass. Gen. Laws. Ch. 106 §§ 2-105(1) and 2A-103(1)(h).

3240. By affixing a VIN plate to each Vehicle at the time of manufacture, Defendants expressly warranted each Vehicles' conformance to "all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture shown." These statements constitute a description, affirmation of fact, and promise made to Massachusetts Plaintiffs as to the Vehicles' condition, quality, safety, and reliability. These statements, affirmations, and descriptions became the basis of the bargain between Massachusetts Plaintiffs and Defendants, as Massachusetts Plaintiffs relied on these statements when making their decisions to purchase and/or lease the Vehicles. As such, the statements are an express warranty under Massachusetts law pursuant to Mass. Gen. Laws Ch. 106, § 2-313, and the Vehicles did not conform to the affirmations of fact, promises made by Defendants, or Defendants' description of the Vehicles.

3241. Massachusetts Plaintiffs used the Vehicles in accordance with their normal operation and did not misuse or mishandle the Vehicles in any way material to the allegations set forth herein.

3242. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable. Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Massachusetts Plaintiffs, of the safety defect. Any time limitations regarding the warranty period were also unconscionable and inadequate to protect Massachusetts Plaintiffs. Massachusetts Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants. A gross disadvantage in bargaining power existed between Massachusetts Plaintiffs and Defendants, which unreasonably favored Defendants. Moreover,

COMPLAINT

Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left Massachusetts Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

3243. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that Massachusetts Plaintiffs may seek alternative remedies. Massachusetts Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

3244. Massachusetts Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure.  Massachusetts Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Massachusetts Plaintiffs' breach of warranty claims. Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Massachusetts Plaintiffs' claims.  Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles.  Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count.  Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Massachusetts Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches.  To date, Defendants failed to remedy their breaches.

3245. Alternatively, Massachusetts Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have

been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches. Massachusetts Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

3246. The Vehicles did not perform as promised in accordance with Defendants' express warranty; instead, the Vehicles did not meet all applicable motor vehicle safety and theft prevention standards in effect on the date of manufacture. The Vehicles are capable of being stolen in a matter of seconds without a key and do not comply with the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles do not, in fact, conform to the applicable anti-theft standards.

3247. As a direct and proximate result of Defendants' breaches, Massachusetts Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that Massachusetts Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

### 3. Violation of Massachusetts Deceptive Acts or Practices Prohibited by Mass. Gen. Laws Ch. 93a § 1, et seq.[135]

3248. Massachusetts Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

3249. Defendants and Massachusetts Plaintiffs are "persons" within the meaning of Mass. Gen. Laws Ch. 93A, § 1(a).

3250. Defendants were and are engaged in "trade" or "commerce" within the meaning of Mass. Gen. Laws Ch. 93A, § 1(b).

---

[135] For the names of the Massachusetts Plaintiffs who do not allege a claim for Violation of Massachusetts Deceptive Acts or Practices Prohibited by Mass. Gen. Laws Ch. 93a § 1, et seq., see Exhibit E.

COMPLAINT

3251. Defendants engaged in unlawful and deceptive trade practices as prohibited under the Massachusetts Consumer Protection Law ("Massachusetts Act"), which specifically prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" Mass. Gen. Laws Ch. 93A, § 2.

3252. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Massachusetts Act by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Theft-Prone Design, as detailed above. Defendants used deception and unfair practices, false pretense, false promise, misrepresentation, concealment, suppression, and omission of material facts with the intent that Massachusetts Plaintiffs rely on such concealment, suppression, or omission in connection with the sale or advertisement of their Vehicles, in violation of Mass. Gen. Laws Ch. 93A, § 2.

3253. Under the Massachusetts Act, Defendants had an ongoing duty to Massachusetts Plaintiffs to refrain from unfair or deceptive practices in the course of their business. Specifically, Defendants owed Massachusetts Plaintiffs a duty to disclose all the material facts concerning the Theft-Prone Design in the Vehicles.

3254. Defendants had exclusive access to and far superior knowledge about facts regarding the Theft-Prone Design, and Defendants knew these facts were not known to or reasonably discoverable by Massachusetts Plaintiffs.

3255. Given the Theft-Prone Design's hidden and technical nature, Massachusetts Plaintiffs lack the sophisticated expertise in vehicle components necessary to discover the Theft-Prone Design on their own.

3256. Defendants knew that the Theft-Prone Design gave rise to safety concerns for the consumers who use the Vehicles, and that the Theft-Prone Design would have been a material fact in the Massachusetts Plaintiffs' decisions to buy or lease the Vehicles.

3257. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Theft-Prone Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

3258. As detailed above, the information concerning the Theft-Prone Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

3259. By misrepresenting the Vehicles as safe, reliable, and free from defects, and by failing to disclose and actively concealing the dangers and risks posed by the Theft-Prone Design, Defendants engaged in the unfair or deceptive business practices in violation of Massachusetts Act. Mass. Gen. Laws Ch. 93A, § 2.

3260. Defendants intended for Massachusetts Plaintiffs to rely on them to provide adequately designed Vehicles and to honestly and accurately reveal the safety hazards described above.

3261. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Theft-Prone Design. Those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Massachusetts Plaintiffs, about the true safety and reliability of the Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

3262. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Theft-Prone Design and true characteristics of the Vehicles were material to the decisions of Massachusetts Plaintiffs to purchase or lease the Vehicles, as Defendants intended. Massachusetts Plaintiffs were exposed

to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase or lease the Vehicles.

3263. Massachusetts Plaintiffs' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, and/or otherwise learning that the Vehicles contained the Theft-Prone Design, as alleged above. Massachusetts Plaintiffs did not, and could not, unravel Defendants' deception on their own.

3264. Had they known the truth about the Theft-Prone Design, Massachusetts Plaintiffs would not have purchased or leased the Vehicles or would have paid significantly less for them.

3265. Massachusetts Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

3266. Defendants' violations present a continuing risk to Massachusetts Plaintiffs and the general public because the Vehicles remain unsafe due to the Theft-Prone Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

3267. Defendants had ample notice provided by the numerous complaints filed against them, internet videos, and news reports. Furthermore, on September 17, 2025, Massachusetts Plaintiffs sent Defendants written notice letters of Defendants' violations, Plaintiffs' claims, and a proposed cure to the violations. To date, Defendants failed to remedy their violations. Because Defendants failed to remedy their unlawful conduct, Massachusetts Plaintiffs seek all damages and relief to which Massachusetts Plaintiffs are entitled.

3268. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile. As alleged above, Defendants have long known that the Vehicles contained the Theft-Prone Design yet did nothing to

COMPLAINT

remedy the Theft-Prone Design.

3269. Pursuant to Mass. Gen. Laws Ch. 93A, § 9, Massachusetts Plaintiffs seek an order (1) enjoining Defendants' unfair and/or deceptive acts, methods, or practices alleged herein, and (2) awarding damages, punitive damages, attorney's fees, costs, and/or any other just and proper relief available under the Massachusetts Act.

### 4. Fraud by Omission and Concealment.[136]

3270. Massachusetts Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

3271. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards and are therefore of a particular value and quality. In reality, however, the Vehicles do not comply with such standards and are of a lesser value and quality accordingly.

3272. Defendants were aware of the Theft-Prone Design when they manufactured, marketed, and sold the Vehicles to Massachusetts Plaintiffs. Defendants further knew that the Theft-Prone Design gave rise to serious safety risks for the consumers that would use the Vehicles and naturally give rise to higher insurance premiums and accelerated depreciation. At the same time, Defendants were aware of the Federal Motor Vehicle Safety Standards and of the effectiveness of engine immobilizer technology in reducing safety hazards. Defendants were also aware that noncompliance with federal and industry standards lowered the value of the Vehicles and would render the Vehicles difficult to insure.

3273. Defendants knew that the Theft-Prone Design, the safety hazards it posed, and the reduction in the Vehicles' value would have been material facts to the Massachusetts Plaintiffs' decisions to buy or lease the Vehicles.

3274. A reasonable person would find the Vehicles' lack of industry-standard anti-theft measures and noncompliance with applicable safety standards material to

---

[136] For the names of the Massachusetts Plaintiffs who do not allege a claim for Fraud by Omission and Concealment, see Exhibit E.

COMPLAINT

their decision to purchase, lease, and maintain the Vehicles because these deficiencies impact safety, availability, the Vehicles' value, and the cost to insure the Vehicles.

3275. Defendants knowingly made affirmatively false or incomplete statements of material facts as to the Vehicles' safety, reliability, quality, value, and compliance with applicable motor vehicle safety and theft prevention standards, while they intentionally withheld, concealed, omitted, suppressed, and failed to disclose material facts about the Theft-Prone Design, including the lack of effective anti-theft measures, significant safety risks, noncompliance with federal motor vehicle safety standards, and the Vehicles' true value.

3276. Defendants volunteered incomplete information about the Vehicles they offered for sale and/or lease to consumers, including false statements as to the Vehicles' safety, compliance with applicable safety and anti-theft standards, and value while at the same time withholding the existence of the Theft-Prone Design. Defendants further knew and failed to disclose that the Theft-Prone Design and lack of standard anti-theft measures left the Vehicles at substantially lower value than the price for which they were advertised, marketed, sold, and/or leased.

3277. Alternatively, Defendants made false misrepresentations about the Theft-Prone Design with such utter disregard and recklessness that their knowledge regarding the Theft-Prone Design, its unsafe and unreliable nature, and its substantially lower value may be inferred.

3278. Defendants intended for the Massachusetts Plaintiffs to rely on their omissions and concealment—which Massachusetts Plaintiffs did in the manner reasonably contemplated by Defendants when they purchased or leased the Vehicles at the prices they paid believing that their vehicles would not have a Theft-Prone Design that would affect the quality, reliability, and safety of the Vehicles.

3279. Massachusetts Plaintiffs' reliance on Defendants' misrepresentations and concealment was reasonable and justifiable, as Massachusetts Plaintiffs had no way of learning the facts that Defendants had concealed or failed to disclose. Massachusetts

Plaintiffs did not, and could not, unravel Defendants' deception on their own.

3280. Having been aware of the Theft-Prone Design within the Vehicles and having known that Massachusetts Plaintiffs could not have reasonably been expected to know of the Theft-Prone Design, Defendants had a duty to disclose the Theft-Prone Design to Massachusetts Plaintiffs in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Theft-Prone Design and the true value of the Vehicles.

3281. Instead, Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Massachusetts Plaintiffs.

3282. If Defendants had fully and adequately disclosed the Theft-Prone Design to consumers, Massachusetts Plaintiffs would have seen such a disclosure.

3283. Had Massachusetts Plaintiffs known of the Theft-Prone Design within the Vehicles, they would not have purchased the Vehicles or would have paid less for them. Through their omissions and concealment with respect to the Theft-Prone Design within the Vehicles, Defendants intended to induce, and did in fact induce, Massachusetts Plaintiffs to either purchase a Vehicle that they otherwise would not have purchased or pay more for a Vehicle than they otherwise would have paid.

3284. As a direct and proximate result of Defendants' omissions, Massachusetts Plaintiffs overpaid for the Vehicles because Massachusetts Plaintiffs would either have paid less for the Vehicles or would not have purchased the Vehicles at all if the Theft-Prone Design had been disclosed to them.

3285. As a direct and proximate result of Defendants' omissions, Massachusetts Plaintiffs purchased Vehicles highly susceptible to theft and were forced to pay higher insurance premiums to account for the susceptibility that they did not knowingly accept, purchase, or lease.

COMPLAINT

3286. As a direct and proximate result of Defendants' omissions, the Massachusetts Plaintiffs paid higher insurance premiums and are now left with Vehicles with significantly diminished values.

3287. Accordingly, Defendants are liable to Massachusetts Plaintiffs for their damages, including but not limited to the difference in value, increased insurance premiums that Massachusetts Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

3288. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, in reckless disregard of the Massachusetts Plaintiffs' rights and well-being, and to enrich themselves.  Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

3289. Massachusetts Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 5.    Negligent Misrepresentation.[137]

3290. Massachusetts Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

3291. Defendants, in the course of their business selling and promoting motor vehicles, supplied false information, including that the Vehicles were safe, reliable, and of a particular value, to guide motor vehicle buyers, including Massachusetts Plaintiffs, in their choice of transaction.

3292. Defendants made misrepresentations of material facts concerning the safety, reliability, and value of the Vehicles that they knew or should have known were false.  Specifically, Defendants misrepresented that the Vehicles had effective anti-theft equipment or design elements; misrepresented that the Vehicles were safe and reliable

---

[137] For the names of the Massachusetts Plaintiffs who do not allege a claim for Negligent Misrepresentation, see Exhibit E.

COMPLAINT

forms of transportation; misrepresented that the Vehicles complied with all federal and industry safety and theft prevention standards; and misrepresented the true value of the Vehicles. Defendants supplied this information in the course of their business to guide Massachusetts Plaintiffs in their Vehicle selection and intended to induce Massachusetts Plaintiffs to purchase one of Defendants' Vehicles.

3293. Massachusetts Plaintiffs justifiably relied upon Defendants' representations because, as the entities responsible for designing and manufacturing the Vehicles, Defendants held themselves out to be knowledgeable about the Vehicles' components and honest in their promotion of the Vehicles. Massachusetts Plaintiffs' reliance was further reasonable given the hidden and technical nature of the Theft-Prone Design and practical inability of Massachusetts Plaintiffs to discover the Theft-Prone Design on their own. Because Defendants held the Vehicles out to be in line with industry standards, the representation was not unreasonable on its face and Massachusetts Plaintiffs had no apparent reason to doubt the veracity of Defendants' representations.

3294. Defendants had a duty to disclose all relevant information regarding the Vehicles' safety, reliability, quality, and characteristics that would affect the Massachusetts Plaintiffs' choice of purchase as consumers.

3295. Defendants failed to exercise reasonable care or competence in communicating the standards of safety, reliability, quality, and characteristics of the Vehicles to the consumers, including Massachusetts Plaintiffs, when they failed to disclose the lack of anti-theft prevention technology in the Vehicles. Rather, Defendants published materials and marketed the Vehicles for years as safe, reliable, and of a quality consistent with the industry standard.

3296. Massachusetts Plaintiffs would not have purchased, or would have purchased for a lower price, the Vehicles which Defendants negligently misrepresented as safe, of standard quality, and containing standard trade characteristics, such as anti-theft prevention technology. Additionally, as a direct and proximate result,

COMPLAINT

Massachusetts Plaintiffs have had to pay higher insurance premiums to account for the Vehicles' high susceptibility to theft and are now left with Vehicles that have a lower value than they would have had without the defect.

3297. As a direct and proximate result of Massachusetts Plaintiffs' reasonable reliance on Defendants' negligent misrepresentations, Massachusetts Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that Massachusetts Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

3298. Massachusetts Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

**6.     Negligence.**

3299. Massachusetts Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

3300. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

3301. Defendants owed a duty of care to Massachusetts Plaintiffs. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves, higher insurance premiums, and accelerated depreciation.

3302. Defendants failed to exercise reasonable care in connection with their manufacture, distribution, sale, and/or leasing of the Vehicles.

3303. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States

COMPLAINT

and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Massachusetts Plaintiffs.

3304. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS No 114.

3305. As a direct and proximate result of Defendants' failure to exercise reasonable care, Massachusetts Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that Massachusetts Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

3306. Massachusetts Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 7. Unjust Enrichment.[138]

3307. Massachusetts Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

3308. When they purchased and leased the Vehicles, Massachusetts Plaintiffs conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

3309. In exchange, Defendants did not confer the benefit that was promised to Plaintiffs when Defendants provided Vehicles of a lesser value and poorer quality than agreed. Rather, Defendants kept the monetary amounts Plaintiffs paid for Vehicles of a particular value and nature that conformed with federal and industry safety standards, but Defendants did not provide Vehicles of that particular value or nature that

---

[138] For the names of the Massachusetts Plaintiffs who do not allege a claim for Unjust Enrichment, see Exhibit E.

- 745 -

COMPLAINT

conformed with federal and industry safety standards.

3310. Massachusetts Plaintiffs have a reasonable expectation of compensation because they conferred an economic benefit on the Defendants with the expectation that they were receiving a different product—one of the particular design, nature, quality, and value that contained an anti-theft system and was compliant with federal safety and industry standards—in exchange.

3311. Massachusetts Plaintiffs would not have purchased or leased their Vehicles, or would have paid less for them, had they known of the Theft-Prone Design at the time of purchase or lease.  Therefore, Defendants profited from the sale and lease of the Vehicles to the detriment and expense of Massachusetts Plaintiffs by misrepresenting the Vehicles' true design, nature, quality, and value.

3312. Defendants appreciated these economic benefits.  These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers.  They knew of these benefits because they were aware of the Theft-Prone Design, the Vehicles' noncompliant nature and poorer quality, and the Vehicles' reduced value, yet they failed to disclose this knowledge and misled the Massachusetts Plaintiffs regarding the design, nature, quality, and value of the Vehicles while profiting from this deception.

3313. Accordingly, Massachusetts Plaintiffs have been impoverished due to Defendants' enrichment without justification.

3314. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, in part because they were procured as a result of their wrongful conduct alleged above.

3315. Massachusetts Plaintiffs are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Massachusetts Plaintiffs to the position they occupied prior to dealing with these Defendants, with such amounts to be determined at trial.

3316. Massachusetts Plaintiffs plead this claim separately, as well as in the

COMPLAINT

alternative to their claims for damages, because if Massachusetts Plaintiffs' claims for damages are dismissed or judgment is entered in favor of Defendants, Massachusetts Plaintiffs will have no adequate legal remedy.

**V.    Michigan State Law Claims for Relief**

**(Alleged by Michigan Plaintiffs Against All Defendants)**

**1.    Breach of Implied Warranty Under Mich. Comp. Laws §§ 440.214 and 440.2862.**

3317. Michigan Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

3318. A warranty that the Vehicles were in merchantable condition is implied by law pursuant to Mich. Comp. Laws §§ 440.214 and 440.2862.

3319. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Mich. Comp. Laws §§ 440.2104(1) and 440.2803(3), "sellers" of motor vehicles under § 440.2103(1)(c) and, with respect to leases, "lessors" of motor vehicles under § 440.2803(1)(p).

3320. At all relevant times, Michigan Plaintiffs who purchased Vehicles in Michigan were and are "buyers" within the meaning of Mich. Comp. Laws § 440.2803(1)(a).

3321. At all relevant times, Michigan Plaintiffs who leased Vehicles in Michigan were and are "lessees" within the meaning of Mich. Comp. Laws § 440.2803(1)(n).

3322. At all relevant times, Michigan Plaintiffs' Vehicles (whether purchased or leased) were and are "goods" within the meaning of Mich. Comp. Laws §§ 440.2105(1) and 4400.2803(1)(h).

3323. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased.  Defendants provided Michigan Plaintiffs with an implied warranty that the purchased and leased Vehicles were in merchantable condition and fit for the ordinary purposes for which they were sold or leased.  This implied warranty included that the Vehicles (a) were manufactured, supplied,

distributed, and sold by Defendants, (b) were safe and reliable for transportation, (c) complied with all federal, state, and industry motor vehicle regulations and safety standards, including FMVSS No. 114, (d) were not at an abnormally high risk of theft, and (e) were of a particular value and quality that complied with federal and industry safety standards.

3324. The Vehicles did not comply with the implied warranty of merchantability because the Vehicles were defective and not in merchantable condition at the time of sale and/or lease, were not fit for their ordinary purpose of providing safe and reliable transportation at the time of sale or lease, and would not pass without objection in the trade as they deviated significantly from the industry standard and can be stolen in mere minutes without a key. Defendants knew at the time of manufacture that the Vehicles contained the Theft-Prone Design and lacked any anti-theft equipment or design elements that effectively prevent theft or comply with FMVSS No. 114. Therefore, the Defendants knew at the time of manufacture that the Vehicles are at an abnormally high risk of theft and are unsafe and an unreliable form of transportation. The Theft-Prone Design renders the Vehicles highly vulnerable to theft and a prime target for thieves as they can be easily stolen in seconds. Defendants knew at the time of manufacture that because their Vehicles did not include any anti-theft measures that satisfied FMVSS No. 114, making their Vehicles more prone to theft and failing to comply with federal regulations, the Vehicles would require larger insurance premiums and would depreciate at a more rapid rate than a comparable vehicle with anti-theft measure that satisfied FMVSS No. 114. Consequently, at the time of sale and/or lease, the Vehicles were not fit for their ordinary purpose of providing safe and reliable transportation.

3325. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable. Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Michigan Plaintiffs, of the safety defect. Any time limitations regarding the warranty period were also unconscionable and inadequate to

protect Michigan Plaintiffs.  Michigan Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants.  A gross disadvantage in bargaining power existed between Michigan Plaintiffs and Defendants, which unreasonably favored Defendants.  Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left Michigan Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

3326. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that Michigan Plaintiffs may seek alternative remedies. Michigan Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

3327. Michigan Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure.  Michigan Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Michigan Plaintiffs' breach of warranty claims.  Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Michigan Plaintiffs' claims.  Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles.  Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count.  Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Michigan Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a

COMPLAINT

proposed cure to the breaches.  To date, Defendants failed to remedy their breaches.

3328. Alternatively, Michigan Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches.  Michigan Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

3329. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Michigan Plaintiffs' Vehicles were and are defective, the Theft-Prone Design in the Vehicles has not been remedied, and Michigan Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that Michigan Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

### 2. Breach of Express Warranty Under Mich. Comp. Laws § 440.2313.

3330. Michigan Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

3331. During the relevant time periods, Defendants manufactured the Vehicles and Michigan Plaintiffs purchased and/or leased the Vehicles from Defendants.

3332. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Mich. Comp. Laws §§ 440.2104(1) and 440.2803(3), "sellers" of motor vehicles under § 440.2103(1)(c) and, with respect to leases, "lessors" of motor vehicles under § 440.2803(1)(p).

3333. At all relevant times, Michigan Plaintiffs who purchased Vehicles in Michigan were and are "buyers" within the meaning of Mich. Comp. Laws § 440.2803(1)(a).

COMPLAINT

3334. At all relevant times, Michigan Plaintiffs who leased Vehicles in Michigan were and are "lessees" within the meaning of Mich. Comp. Laws § 440.2803(1)(n).

3335. At all relevant times, Michigan Plaintiffs' Vehicles (whether purchased or leased) were and are "goods" within the meaning of Mich. Comp. Laws §§ 440.2105(1) and 4400.2803(1)(h).

3336. By affixing a VIN plate to each Vehicle at the time of manufacture, Defendants expressly warranted each Vehicles' conformance to "all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture shown." These statements constitute a description, affirmation of fact, and promise made to Michigan Plaintiffs as to the Vehicles' condition, quality, safety, and reliability. These statements, affirmations, and descriptions became the basis of the bargain between Michigan Plaintiffs and Defendants, as Michigan Plaintiffs relied on these statements when making their decisions to purchase and/or lease the Vehicles. As such, the statements are an express warranty under Michigan law pursuant to Mich. Comp. Laws § 440.2313, and the Vehicles did not conform to the affirmations of fact, promises made by Defendants, or Defendants' description of the Vehicles.

3337. Michigan Plaintiffs used the Vehicles in accordance with their normal operation and did not misuse or mishandle the Vehicles in any way material to the allegations set forth herein.

3338. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable. Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Michigan Plaintiffs, of the safety defect. Any time limitations regarding the warranty period were also unconscionable and inadequate to protect Michigan Plaintiffs. Michigan Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants. A gross disadvantage in bargaining power existed between Michigan Plaintiffs and Defendants, which unreasonably favored Defendants. Moreover,

Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left Michigan Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

3339. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that Michigan Plaintiffs may seek alternative remedies. Michigan Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

3340. Michigan Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure. Michigan Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Michigan Plaintiffs' breach of warranty claims. Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Michigan Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Michigan Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches. To date, Defendants failed to remedy their breaches.

3341. Alternatively, Michigan Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured,

COMPLAINT

distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches. Michigan Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

3342. The Vehicles did not perform as promised in accordance with Defendants' express warranty; instead, the Vehicles did not meet all applicable motor vehicle safety and theft prevention standards in effect on the date of manufacture. The Vehicles are capable of being stolen in a matter of seconds without a key and do not comply with the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles do not, in fact, conform to the applicable anti-theft standards.

3343. As a direct and proximate result of Defendants' breaches, Michigan Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that Michigan Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

### 3. Violation of Michigan Consumer Protection Act Under Mich. Comp. Laws § 445.901, et seq.

3344. Michigan Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

3345. Defendants and Michigan Plaintiffs are "persons" within the meaning of Mich. Comp. Laws § 445.902(1)(d).

3346. Defendants were and are engaged in "trade" or "commerce" within the meaning of Mich. Comp. Laws § 445.902(1)(g).

3347. Defendants engaged in unlawful and deceptive trade practices as prohibited under the Michigan Consumer Protection Act ("Michigan CPA"), which specifically prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" Mich. Comp. Laws § 445.903(1).

3348. In the course of their business, Defendants, through their agents,

COMPLAINT

employees, and/or subsidiaries, violated the Michigan CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Theft-Prone Design, as detailed above. Defendants used deception and unfair practices, false pretense, false promise, misrepresentation, concealment, suppression, and omission of material facts with the intent that Michigan Plaintiffs rely on such concealment, suppression, or omission in connection with the sale or advertisement of their Vehicles, in violation of Mich. Comp. Laws § 445.903.

3349. Under the Michigan CPA, Defendants had an ongoing duty to Michigan Plaintiffs to refrain from unfair or deceptive practices in the course of their business. Specifically, Defendants owed Michigan Plaintiffs a duty to disclose all the material facts concerning the Theft-Prone Design in the Vehicles.

3350. Defendants had exclusive access to and far superior knowledge about facts regarding the Theft-Prone Design, and Defendants knew these facts were not known to or reasonably discoverable by Michigan Plaintiffs.

3351. Given the Theft-Prone Design's hidden and technical nature, Michigan Plaintiffs lack the sophisticated expertise in vehicle components necessary to discover the Theft-Prone Design on their own.

3352. Defendants knew that the Theft-Prone Design gave rise to safety concerns for the consumers who use the Vehicles, and that the Theft-Prone Design would have been a material fact in the Michigan Plaintiffs' decisions to buy or lease the Vehicles.

3353. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Theft-Prone Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

3354. As detailed above, the information concerning the Theft-Prone Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

3355. By misrepresenting the Vehicles as safe, reliable, and free from defects, and by failing to disclose and actively concealing the dangers and risks posed by the Theft-Prone Design, Defendants engaged in the following unfair or deceptive business practices in violation of Michigan CPA: (a) causing a probability of confusion or misleading as to the approval or certification of the Vehicles; (b) representing that the Vehicles have approval, characteristics, uses, or benefits which they do not have; (c) representing that the Vehicles are of a particular standard, quality, and grade when they are not; (d) advertising the Vehicles with the intent not to sell or lease them as advertised; (e) failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; and (f) failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner. Mich. Comp. Laws §§ 445.903(1)(a), (c), (e), (g), (s), and (cc).

3356. Defendants intended for Michigan Plaintiffs to rely on them to provide adequately designed Vehicles and to honestly and accurately reveal the safety hazards described above.

3357. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Theft-Prone Design. Those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Michigan Plaintiffs, about the true safety and reliability of the Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

3358. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Theft-Prone Design and true characteristics

COMPLAINT

of the Vehicles were material to the decisions of Michigan Plaintiffs to purchase or lease the Vehicles, as Defendants intended.  Michigan Plaintiffs were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase or lease the Vehicles.

3359. Michigan Plaintiffs' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, and/or otherwise learning that the Vehicles contained the Theft-Prone Design, as alleged above. Michigan Plaintiffs did not, and could not, unravel Defendants' deception on their own.

3360. Had they known the truth about the Theft-Prone Design, Michigan Plaintiffs would not have purchased or leased the Vehicles or would have paid significantly less for them.

3361. Michigan Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

3362. Defendants' violations present a continuing risk to Michigan Plaintiffs and the general public because the Vehicles remain unsafe due to the Theft-Prone Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

3363. Defendants had ample notice provided by the numerous complaints filed against them, internet videos, and news reports.  Furthermore, on September 17, 2025, Michigan Plaintiffs sent Defendants written notice letters of Defendants' violations, Plaintiffs' claims, and a proposed cure to the violations.  To date, Defendants failed to remedy their violations.  Because Defendants failed to remedy their unlawful conduct, Michigan Plaintiffs seek all damages and relief to which Michigan Plaintiffs are entitled.

3364. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile.  As alleged above, Defendants have long known that the Vehicles contained the Theft-Prone Design yet did nothing to

remedy the Theft-Prone Design.

3365. Pursuant to Mich. Comp. Laws § 445.911, Michigan Plaintiffs seek an order (1) enjoining Defendants' unfair and/or deceptive acts, methods, or practices alleged herein, and (2) awarding damages, punitive damages, attorney's fees, costs, and/or any other just and proper relief available under the Michigan CPA.

### 4.     Fraud by Omission and Concealment.

3366. Michigan Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

3367. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards and are therefore of a particular value and quality.  In reality, however, the Vehicles do not comply with such standards and are of a lesser value and quality accordingly.

3368. Defendants were aware of the Theft-Prone Design when they manufactured, marketed, and sold the Vehicles to Michigan Plaintiffs.  Defendants further knew that the Theft-Prone Design gave rise to serious safety risks for the consumers that would use the Vehicles and naturally give rise to higher insurance premiums and accelerated depreciation.  At the same time, Defendants were aware of the Federal Motor Vehicle Safety Standards and of the effectiveness of engine immobilizer technology in reducing safety hazards.  Defendants were also aware that noncompliance with federal and industry standards lowered the value of the Vehicles and would render the Vehicles difficult to insure.

3369. Defendants knew that the Theft-Prone Design, the safety hazards it posed, and the reduction in the Vehicles' value would have been material facts to the Michigan Plaintiffs' decisions to buy or lease the Vehicles.

3370. A reasonable person would find the Vehicles' lack of industry-standard anti-theft measures and noncompliance with applicable safety standards material to their decision to purchase, lease, and maintain the Vehicles because these deficiencies impact safety, availability, the Vehicles' value, and the cost to insure the Vehicles.

COMPLAINT

3371. Defendants knowingly made affirmatively false or incomplete statements of material facts as to the Vehicles' safety, reliability, quality, value, and compliance with applicable motor vehicle safety and theft prevention standards, while they intentionally withheld, concealed, omitted, suppressed, and failed to disclose material facts about the Theft-Prone Design, including the lack of effective anti-theft measures, significant safety risks, noncompliance with federal motor vehicle safety standards, and the Vehicles' true value.

3372. Defendants volunteered incomplete information about the Vehicles they offered for sale and/or lease to consumers, including false statements as to the Vehicles' safety, compliance with applicable safety and anti-theft standards, and value while at the same time withholding the existence of the Theft-Prone Design.  Defendants further knew and failed to disclose that the Theft-Prone Design and lack of standard anti-theft measures left the Vehicles at substantially lower value than the price for which they were advertised, marketed, sold, and/or leased.

3373. Alternatively, Defendants made false misrepresentations about the Theft-Prone Design with such utter disregard and recklessness that their knowledge regarding the Theft-Prone Design, its unsafe and unreliable nature, and its substantially lower value may be inferred.

3374. Defendants intended for the Michigan Plaintiffs to rely on their omissions and concealment—which Michigan Plaintiffs did in the manner reasonably contemplated by Defendants when they purchased or leased the Vehicles at the prices they paid believing that their vehicles would not have a Theft-Prone Design that would affect the quality, reliability, and safety of the Vehicles.

3375. Michigan Plaintiffs' reliance on Defendants' misrepresentations and concealment was reasonable and justifiable, as Michigan Plaintiffs had no way of learning the facts that Defendants had concealed or failed to disclose.  Michigan Plaintiffs did not, and could not, unravel Defendants' deception on their own.

3376. Having been aware of the Theft-Prone Design within the Vehicles and

COMPLAINT

having known that Michigan Plaintiffs could not have reasonably been expected to know of the Theft-Prone Design, Defendants had a duty to disclose the Theft-Prone Design to Michigan Plaintiffs in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Theft-Prone Design and the true value of the Vehicles.

3377. Instead, Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Michigan Plaintiffs.

3378. If Defendants had fully and adequately disclosed the Theft-Prone Design to consumers, Michigan Plaintiffs would have seen such a disclosure.

3379. Had Michigan Plaintiffs known of the Theft-Prone Design within the Vehicles, they would not have purchased the Vehicles or would have paid less for them. Through their omissions and concealment with respect to the Theft-Prone Design within the Vehicles, Defendants intended to induce, and did in fact induce, Michigan Plaintiffs to either purchase a Vehicle that they otherwise would not have purchased or pay more for a Vehicle than they otherwise would have paid.

3380. As a direct and proximate result of Defendants' omissions, Michigan Plaintiffs overpaid for the Vehicles because Michigan Plaintiffs would either have paid less for the Vehicles or would not have purchased the Vehicles at all if the Theft-Prone Design had been disclosed to them.

3381. As a direct and proximate result of Defendants' omissions, Michigan Plaintiffs purchased Vehicles highly susceptible to theft and were forced to pay higher insurance premiums to account for the susceptibility that they did not knowingly accept, purchase, or lease.

3382. As a direct and proximate result of Defendants' omissions, the Michigan Plaintiffs paid higher insurance premiums and are now left with Vehicles with significantly diminished values.

COMPLAINT

3383. Accordingly, Defendants are liable to Michigan Plaintiffs for their damages, including but not limited to the difference in value, increased insurance premiums that Michigan Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

3384. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, in reckless disregard of the Michigan Plaintiffs' rights and well-being, and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

3385. Michigan Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 5. Negligent Misrepresentation.

3386. Michigan Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein. `

3387. Defendants, in the course of their business selling and promoting motor vehicles, supplied false information, including that the Vehicles were safe, reliable, and of a particular value, to guide motor vehicle buyers, including Michigan Plaintiffs, in their choice of transaction.

3388. Defendants made misrepresentations of material facts concerning the safety, reliability, and value of the Vehicles that they knew or should have known were false. Specifically, Defendants misrepresented that the Vehicles had effective anti-theft equipment or design elements; misrepresented that the Vehicles were safe and reliable forms of transportation; misrepresented that the Vehicles complied with all federal and industry safety and theft prevention standards; and misrepresented the true value of the Vehicles. Defendants supplied this information in the course of their business to guide Michigan Plaintiffs in their Vehicle selection and intended to induce Michigan Plaintiffs to purchase one of Defendants' Vehicles.

3389. Michigan Plaintiffs justifiably relied upon Defendants' representations because, as the entities responsible for designing and manufacturing the Vehicles, Defendants held themselves out to be knowledgeable about the Vehicles' components and honest in their promotion of the Vehicles. Michigan Plaintiffs' reliance was further reasonable given the hidden and technical nature of the Theft-Prone Design and practical inability of Michigan Plaintiffs to discover the Theft-Prone Design on their own. Because Defendants held the Vehicles out to be in line with industry standards, the representation was not unreasonable on its face and Michigan Plaintiffs had no apparent reason to doubt the veracity of Defendants' representations.

3390. Defendants had a duty to disclose all relevant information regarding the Vehicles' safety, reliability, quality, and characteristics that would affect the Michigan Plaintiffs' choice of purchase as consumers.

3391. Defendants failed to exercise reasonable care or competence in communicating the standards of safety, reliability, quality, and characteristics of the Vehicles to the consumers, including Michigan Plaintiffs, when they failed to disclose the lack of anti-theft prevention technology in the Vehicles. Rather, Defendants published materials and marketed the Vehicles for years as safe, reliable, and of a quality consistent with the industry standard.

3392. Michigan Plaintiffs would not have purchased, or would have purchased for a lower price, the Vehicles which Defendants negligently misrepresented as safe, of standard quality, and containing standard trade characteristics, such as anti-theft prevention technology. Additionally, as a direct and proximate result, Michigan Plaintiffs have had to pay higher insurance premiums to account for the Vehicles' high susceptibility to theft and are now left with Vehicles that have a lower value than they would have had without the defect.

3393. As a direct and proximate result of Michigan Plaintiffs' reasonable reliance on Defendants' negligent misrepresentations, Michigan Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not

COMPLAINT

limited to the difference in value, increased insurance premiums that Michigan Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

3394. Michigan Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 6. Negligence.

3395. Michigan Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

3396. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

3397. Defendants owed a duty of care to Michigan Plaintiffs. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves, higher insurance premiums, and accelerated depreciation.

3398. Defendants failed to exercise reasonable care in connection with their manufacture, distribution, sale, and/or leasing of the Vehicles.

3399. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Michigan Plaintiffs.

3400. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS No. 114.

COMPLAINT

3401. As a direct and proximate result of Defendants' failure to exercise reasonable care, Michigan Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that Michigan Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

3402. Michigan Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 7. Unjust Enrichment.

3403. Michigan Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

3404. When they purchased and leased the Vehicles, Michigan Plaintiffs conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

3405. In exchange, Defendants did not confer the benefit that was promised to Plaintiffs when Defendants provided Vehicles of a lesser value and poorer quality than agreed. Rather, Defendants kept the monetary amounts Plaintiffs paid for Vehicles of a particular value and nature that conformed with federal and industry safety standards, but Defendants did not provide Vehicles of that particular value or nature that conformed with federal and industry safety standards.

3406. Michigan Plaintiffs have a reasonable expectation of compensation because they conferred an economic benefit on the Defendants with the expectation that they were receiving a different product—one of the particular design, nature, quality, and value that contained an anti-theft system and was compliant with federal safety and industry standards—in exchange.

3407. Michigan Plaintiffs would not have purchased or leased their Vehicles, or would have paid less for them, had they known of the Theft-Prone Design at the time of purchase or lease. Therefore, Defendants profited from the sale and lease of the

Vehicles to the detriment and expense of Michigan Plaintiffs by misrepresenting the Vehicles' true design, nature, quality, and value.

3408. Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft-Prone Design, the Vehicles' noncompliant nature and poorer quality, and the Vehicles' reduced value, yet they failed to disclose this knowledge and misled the Michigan Plaintiffs regarding the design, nature, quality, and value of the Vehicles while profiting from this deception.

3409. Accordingly, Michigan Plaintiffs have been impoverished due to Defendants' enrichment without justification.

3410. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, in part because they were procured as a result of their wrongful conduct alleged above.

3411. Michigan Plaintiffs are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Michigan Plaintiffs to the position they occupied prior to dealing with these Defendants, with such amounts to be determined at trial.

3412. Michigan Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages, because if Michigan Plaintiffs' claims for damages are dismissed or judgment is entered in favor of Defendants, Michigan Plaintiffs will have no adequate legal remedy.

**W.** **Minnesota State Law Claims for Relief**

**(Alleged by Minnesota Plaintiffs Against All Defendants)**

**1.** **Breach of Implied Warranty Under Minn. Stat. §§ 336.2-314 and 336.2A-212.**

3413. Minnesota Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

COMPLAINT

3414. A warranty that the Vehicles were in merchantable condition is implied by law pursuant to Minn. Stat. §§ 336.2-314 and 336.2A-212.

3415. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Minn. Stat. §§ 336.2-104(1) and 336.2A-103(3), "sellers" of motor vehicles under § 336.2-103(1)(d) and, with respect to leases, "lessors" of motor vehicles under Minn. Stat. § 336.2A-103(1)(p).

3416. At all relevant times, Minnesota Plaintiffs who purchased Vehicles in Minnesota were and are "buyers" within the meaning of Minn. Stat. § 336.2-103(1)(a).

3417. At all relevant times, Minnesota Plaintiffs who leased Vehicles in Minnesota were and are "lessees" within the meaning of Minn. Stat. § 336.2A-103(1)(n).

3418. At all relevant times, Minnesota Plaintiffs' Vehicles (whether purchased or leased) were and are "goods" within the meaning of Minn. Stat. §§ 336.2-105(1) and 336.2A-103(1)(h).

3419. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased.  Defendants provided Minnesota Plaintiffs with an implied warranty that the purchased and leased Vehicles were in merchantable condition and fit for the ordinary purposes for which they were sold or leased.  This implied warranty included that the Vehicles (a) were manufactured, supplied, distributed, and sold by Defendants, (b) were safe and reliable for transportation, (c) complied with all federal, state, and industry motor vehicle regulations and safety standards, including FMVSS No. 114, (d) were not at an abnormally high risk of theft, and (e) were of a particular value and quality that complied with federal and industry safety standards.

3420. The Vehicles did not comply with the implied warranty of merchantability because the Vehicles were defective and not in merchantable condition at the time of sale and/or lease, were not fit for their ordinary purpose of providing safe and reliable transportation at the time of sale or lease, and would not pass without objection in the

trade as they deviated significantly from the industry standard and can be stolen in mere minutes without a key.  Defendants knew at the time of manufacture that the Vehicles contained the Theft-Prone Design and lacked any anti-theft equipment or design elements that effectively prevent theft or comply with FMVSS No. 114.  Therefore, the Defendants knew at the time of manufacture that the Vehicles are at an abnormally high risk of theft and are unsafe and an unreliable form of transportation.  The Theft-Prone Design renders the Vehicles highly vulnerable to theft and a prime target for thieves as they can be easily stolen in seconds.  Defendants knew at the time of manufacture that because their Vehicles did not include any anti-theft measures that satisfied FMVSS No. 114, making their Vehicles more prone to theft and failing to comply with federal regulations, the Vehicles would require larger insurance premiums and would depreciate at a more rapid rate than a comparable vehicle with anti-theft measure that satisfied FMVSS No. 114. Consequently, at the time of sale and/or lease, the Vehicles were not fit for their ordinary purpose of providing safe and reliable transportation.

3421. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable.  Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Minnesota Plaintiffs, of the safety defect.  Any time limitations regarding the warranty period were also unconscionable and inadequate to protect Minnesota Plaintiffs.  Minnesota Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants.  A gross disadvantage in bargaining power existed between Minnesota Plaintiffs and Defendants, which unreasonably favored Defendants.  Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left Minnesota Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

3422. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that Minnesota Plaintiffs may seek alternative remedies.

COMPLAINT

Minnesota Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

3423. Minnesota Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure.  Minnesota Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Minnesota Plaintiffs' breach of warranty claims.  Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Minnesota Plaintiffs' claims.  Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles.  Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count.  Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Minnesota Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches.  To date, Defendants failed to remedy their breaches.

3424. Alternatively, Minnesota Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile.  Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design.  Defendants have not cured, remedied, or repaired their breaches. Minnesota Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

- 767 -
COMPLAINT

3425. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Minnesota Plaintiffs' Vehicles were and are defective, the Theft-Prone Design in the Vehicles has not been remedied, and Minnesota Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that Minnesota Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

**2.      Breach of Express Warranty Under Minn. Stat. § 336.2-313.**

3426. Minnesota Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

3427. During the relevant time periods, Defendants manufactured the Vehicles and Minnesota Plaintiffs purchased and/or leased the Vehicles from Defendants.

3428. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Minn. Stat. §§ 336.2-104(1) and 336.2A-103(3), "sellers" of motor vehicles under § 336.2-103(1)(d) and, with respect to leases, "lessors" of motor vehicles under Minn. Stat. § 336.2A-103(1)(p).

3429. At all relevant times, Minnesota Plaintiffs who purchased Vehicles in Minnesota were and are "buyers" within the meaning of Minn. Stat. § 336.2-103(1)(a).

3430. At all relevant times, Minnesota Plaintiffs who leased Vehicles in Minnesota were and are "lessees" within the meaning of Minn. Stat. § 336.2A-103(1)(n).

3431. At all relevant times, Minnesota Plaintiffs' Vehicles (whether purchased or leased) were and are "goods" within the meaning of Minn. Stat. §§ 336.2-105(1) and 336.2A-103(1)(h).

3432. By affixing a VIN plate to each Vehicle at the time of manufacture, Defendants expressly warranted each Vehicles' conformance to "all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture shown." These statements constitute a description, affirmation of

fact, and promise made to Minnesota Plaintiffs as to the Vehicles' condition, quality, safety, and reliability. These statements, affirmations, and descriptions became the basis of the bargain between Minnesota Plaintiffs and Defendants, as Minnesota Plaintiffs relied on these statements when making their decisions to purchase and/or lease the Vehicles. As such, the statements are an express warranty under Minnesota law pursuant to Minn. Stat. § 336.2-313, and the Vehicles did not conform to the affirmations of fact, promises made by Defendants, or Defendants' description of the Vehicles.

3433. Minnesota Plaintiffs used the Vehicles in accordance with their normal operation and did not misuse or mishandle the Vehicles in any way material to the allegations set forth herein.

3434. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable. Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Minnesota Plaintiffs, of the safety defect. Any time limitations regarding the warranty period were also unconscionable and inadequate to protect Minnesota Plaintiffs. Minnesota Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants. A gross disadvantage in bargaining power existed between Minnesota Plaintiffs and Defendants, which unreasonably favored Defendants. Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left Minnesota Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

3435. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that Minnesota Plaintiffs may seek alternative remedies. Minnesota Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

COMPLAINT

3436. Minnesota Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure. Minnesota Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Minnesota Plaintiffs' breach of warranty claims. Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Minnesota Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Minnesota Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches. To date, Defendants failed to remedy their breaches.

3437. Alternatively, Minnesota Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches. Minnesota Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

3438. The Vehicles did not perform as promised in accordance with Defendants' express warranty; instead, the Vehicles did not meet all applicable motor vehicle safety and theft prevention standards in effect on the date of manufacture. The Vehicles are

capable of being stolen in a matter of seconds without a key and do not comply with the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles do not, in fact, conform to the applicable anti-theft standards.

3439. As a direct and proximate result of Defendants' breaches, Minnesota Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that Minnesota Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

### 3. Violation of Minnesota Prevention of Consumer Fraud Act pursuant to Minn. Stat. § 325F.68, et seq. and Minn. Stat. § 8.31, subd. 3a.

3440. Minnesota Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

3441. Defendants and Minnesota Plaintiffs are "persons" within the meaning of Minn. Stat. § 325F.68(3).

3442. The Vehicles are "merchandise" within the meaning of Minn. Stat. § 325F.68(2).

3443. Defendants engaged in unlawful and deceptive trade practices as prohibited under the Minnesota Prevention Consumer Fraud Act ("Minnesota CFA"), which specifically prohibits "act, use, or employment by any person of any fraud, unfair or unconscionable practice, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged[.]" Minn. Stat. § 325F.69(1).

3444. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Minnesota CFA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Theft-Prone

Design, as detailed above. Defendants used deception and unfair practices, false pretense, false promise, misrepresentation, concealment, suppression, and omission of material facts with the intent that Minnesota Plaintiffs rely on such concealment, suppression, or omission in connection with the sale or advertisement of their Vehicles, in violation of Minn. Stat. § 325F.69(1).

3445. Under the Minnesota CFA, Defendants had an ongoing duty to Minnesota Plaintiffs to refrain from unfair or deceptive practices in the course of their business. Specifically, Defendants owed Minnesota Plaintiffs a duty to disclose all the material facts concerning the Theft-Prone Design in the Vehicles.

3446. Defendants had exclusive access to and far superior knowledge about facts regarding the Theft-Prone Design, and Defendants knew these facts were not known to or reasonably discoverable by Minnesota Plaintiffs.

3447. Given the Theft-Prone Design's hidden and technical nature, Minnesota Plaintiffs lack the sophisticated expertise in vehicle components necessary to discover the Theft-Prone Design on their own.

3448. Defendants knew that the Theft-Prone Design gave rise to safety concerns for the consumers who use the Vehicles, and that the Theft-Prone Design would have been a material fact in the Minnesota Plaintiffs' decisions to buy or lease the Vehicles.

3449. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Theft-Prone Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

3450. As detailed above, the information concerning the Theft-Prone Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

3451. By misrepresenting the Vehicles as safe, reliable, of a particular value and quality, and free from defects, and by failing to disclose and actively concealing the dangers and risks posed by the Theft-Prone Design, Defendants engaged in unfair methods of competition and unfair or deceptive acts or practices prohibited by Minn. Stat. § 325F.69, including use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise

3452. Defendants intended for Minnesota Plaintiffs to rely on them to provide adequately designed Vehicles and to honestly and accurately reveal the safety hazards described above.

3453. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Theft-Prone Design.  Those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Minnesota Plaintiffs, about the true safety and reliability of the Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

3454. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Theft-Prone Design and true characteristics of the Vehicles were material to the decisions of Minnesota Plaintiffs to purchase or lease the Vehicles, as Defendants intended.  Minnesota Plaintiffs were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase or lease the Vehicles.

3455. Minnesota Plaintiffs' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, and/or otherwise learning that the Vehicles contained the Theft-Prone Design, as alleged above. Minnesota Plaintiffs did not, and could not, unravel Defendants' deception on their

own.

3456. Had they known the truth about the Theft-Prone Design, Minnesota Plaintiffs would not have purchased or leased the Vehicles or would have paid significantly less for them.

3457. Minnesota Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

3458. Defendants' violations present a continuing risk to Minnesota Plaintiffs and the general public because the Vehicles remain unsafe due to the Theft-Prone Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

3459. Defendants had ample notice provided by the numerous complaints filed against them, internet videos, and news reports. Furthermore, on September 17, 2025, Minnesota Plaintiffs sent Defendants written notice letters of Defendants' violations, Plaintiffs' claims, and a proposed cure to the violations. To date, Defendants failed to remedy their violations. Because Defendants failed to remedy their unlawful conduct, Minnesota Plaintiffs seek all damages and relief to which Minnesota Plaintiffs are entitled.

3460. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile. As alleged above, Defendants have long known that the Vehicles contained the Theft-Prone Design yet did nothing to remedy the Theft-Prone Design.

3461. Pursuant to Minn. Stat. §§ 8.31(3a) and 549.20(1)(a), Minnesota Plaintiffs seek an order (1) enjoining Defendants' unfair and/or deceptive acts, methods, or practices alleged herein, and (2) awarding damages, punitive damages, attorney's fees, costs, and/or any other just and proper relief available under the Minnesota CFA.

**4.      Violation of Minnesota Deceptive Trade Practices Act Under Minn. Stat. § 325D.44.**

3462. Minnesota Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

3463. The Minnesota Deceptive Trade Practices Act ("Minnesota DTPA") prohibits deceptive and unconscionable trade practices in the course of a business, vocation, or occupation.  Minn. Stat. § 325D.44, Subd. 1.

3464. Defendants and Minnesota Plaintiffs are "persons" within the meaning of Minn. Stat. §§ 325D.43, 325D.44, Subd. 1..

3465. Through their misrepresentations, concealment, omissions, and withholding of these material facts, Defendants engaged in unfair and deceptive acts or practices in the course of their business, as prohibited by Minn. Stat. § 325D.44.

3466. In the course of their business, Defendants, through their agents, representatives, and subsidiaries, engaged in unfair and unconscionable deceptive acts or practices by misrepresenting the Vehicles as safe, reliable, free from defects, designed according to federal and industry standards, insurable, and priced accurately, by failing to disclose and actively concealing the dangers and risk posed by the Theft-Prone Design, and by knowingly and intentionally concealing, misrepresenting, omitting, and withholding material facts. These material facts include that (a) the Vehicles had a hidden Theft-Prone Design which left the Vehicles without standard anti-theft measures and was not reasonably discoverable to consumers, (b) the Vehicles did not comply with federal or industry motor vehicle safety and theft prevention standards, including FMVSS No. 114, (c) the Vehicles were at an abnormally high risk of theft and therefore would be costly to insure, and (d) the Vehicles had a lower value and were of a lower standard and quality than Defendants knowingly misrepresented.

3467. Specifically, Defendants engaged in the following unfair or deceptive business practices in violation of Minnesota DTPA: (a) causing likelihood of confusion or misunderstanding as the approval or certification of the Vehicles; (b) representing that the Vehicles have characteristics, uses, and benefits which they do not have; (c) representing that the Vehicles are of a particular standard, quality, and grade when they

COMPLAINT

are not; (d) advertising the Vehicles with the intent not to sell or lease them as advertised; and (e) engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding. Minn. Stat. §§ 325D.44, Subd. 1(1) (5), (7), (9), and (13).

3468. Under Minnesota DTPA, Defendants had an ongoing duty to Minnesota Plaintiffs as consumers to refrain from unfair or deceptive acts, practices, and representations in the course of their business. Specifically, Defendants owed the Minnesota Plaintiffs a duty to disclose all the material facts concerning the Theft-Prone Design in the Vehicles and to refrain from representing their Vehicles were of a particular standard or quality when they were of another.

3469. As detailed above, the information concerning the Theft-Prone Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles. Defendants knew that, because of the Theft-Prone Design, the Vehicles posed a significant safety risk to consumers that used the Vehicles. Defendants knew that the Theft-Prone Design and lack of standard anti-theft measures priced the Vehicles at a substantially lower value than the price for which they were advertised, marketed, sold, and/or leased and required higher insurance rates.

3470. Defendants knew these material facts would have been material to consumers', including Minnesota Plaintiffs', decision to purchase and/or lease the Vehicles.

3471. Defendants nevertheless made intentionally misleading and incomplete affirmative statements and representations about the Vehicles' safety, reliability, value, insurability, and conformance with all applicable safety and theft prevention standards, while also concealing, omitting, and withholding material facts from consumers, including Minnesota Plaintiffs, at the time the Vehicles were advertised, sold, and/or leased. Defendants marketed and sold the Vehicles as safe despite their knowledge that the Theft-Prone Design posed a significant safety risk to consumers and the general

public.  Through advertisements, marketing materials, and their websites, Defendants made incomplete representations and/or concealed the Vehicles' defective condition. Defendants further misrepresented that the Vehicles were compliant with all applicable motor vehicle safety and theft prevention standards, when in reality they were not. Defendants further marketed and sold/leased the Vehicles at an inflated and misleading price, given the Vehicles' Theft-Prone Design and lack of standard anti-theft equipment and design elements.

3472. Minnesota Plaintiffs were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe, reliable, free from defects, designed according to federal and industry standards, insurable, and priced accurately when deciding to purchase or lease the Vehicles.

3473. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection and that the Vehicles were not affected by the Theft-Prone Design.

3474. Defendants intended for Minnesota Plaintiffs to rely on them to provide adequately designed Vehicles and to honestly and accurately reveal the safety hazards described above.

3475. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Minnesota Plaintiffs, about the true safety and reliability of Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

3476. Given the Theft-Prone Design's hidden and technical nature, Minnesota Plaintiffs' reliance was reasonable, as they had no way of discerning if Defendants' representations were false and misleading or otherwise learning that the Vehicles contained the Theft-Prone Design, as alleged above.  Minnesota Plaintiffs did not, and could not, unravel Defendants' deception on their own.

COMPLAINT

3477. Instead, Defendants had exclusive and superior knowledge of the Theft-Prone Design, related facts, and the Vehicles' noncompliance with federal and industry safety and theft prevention standards. Defendants knew these facts were hidden and not reasonably discoverable by consumers, including Minnesota Plaintiffs. Minnesota Plaintiffs lack the sophisticated expertise in vehicle components that would have been necessary to discover the Theft-Prone Design on their own.

3478. Had they known the truth about the Theft-Prone Design, Minnesota Plaintiffs would not have purchased or leased the Vehicles, or Minnesota Plaintiffs would have paid significantly less for the Vehicles.

3479. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Theft-Prone Design and true characteristics of the Vehicles were material to the decisions of Minnesota Plaintiffs to purchase and lease the Vehicles, as Defendants intended.

3480. Minnesota Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

3481. Defendants' violations present a continuing risk to Minnesota Plaintiffs, as well as to the general public, because the Vehicles remain unsafe due to the Theft-Prone Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

3482. Defendants had ample notice provided by the numerous complaints filed against them, internet videos, and news reports. Furthermore, on September 17, 2025, Minnesota Plaintiffs sent Defendants written notice letters of Defendants' violations, Plaintiffs' claims, and a proposed cure to the violations. To date, Defendants failed to remedy their violations. Because Defendants failed to remedy their unlawful conduct, Minnesota Plaintiffs seek all damages and relief to which Minnesota Plaintiffs are entitled.

3483. Alternatively, providing notice to Defendants and an opportunity to cure

the breach prior to filing suit would have been futile.  As alleged above, Defendants have long known that the Vehicles contained the Theft-Prone Design yet did nothing to remedy the Theft-Prone Design.

3484. Pursuant to Minn. Stat. §§ 8.31(3a), 325D.45, and 549.20(1)(a), Minnesota Plaintiffs seek an order (1) enjoining Defendants' unfair and/or deceptive acts or practices and (2) awarding damages, punitive damages, and any other just and proper relief available under Minnesota DTPA.

### 5.      Fraud by Omission and Concealment.

3485. Minnesota Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

3486. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards and are therefore of a particular value and quality.  In reality, however, the Vehicles do not comply with such standards and are of a lesser value and quality accordingly.

3487. Defendants were aware of the Theft-Prone Design when they manufactured, marketed, and sold the Vehicles to Minnesota Plaintiffs.  Defendants further knew that the Theft-Prone Design gave rise to serious safety risks for the consumers that would use the Vehicles and naturally give rise to higher insurance premiums and accelerated depreciation.  At the same time, Defendants were aware of the Federal Motor Vehicle Safety Standards and of the effectiveness of engine immobilizer technology in reducing safety hazards.  Defendants were also aware that noncompliance with federal and industry standards lowered the value of the Vehicles and would render the Vehicles difficult to insure.

3488. Defendants knew that the Theft-Prone Design, the safety hazards it posed, and the reduction in the Vehicles' value would have been material facts to the Minnesota Plaintiffs' decisions to buy or lease the Vehicles.

3489. A reasonable person would find the Vehicles' lack of industry-standard anti-theft measures and noncompliance with applicable safety standards material to

COMPLAINT

their decision to purchase, lease, and maintain the Vehicles because these deficiencies impact safety, availability, the Vehicles' value, and the cost to insure the Vehicles.

3490. Defendants knowingly made affirmatively false or incomplete statements of material facts as to the Vehicles' safety, reliability, quality, value, and compliance with applicable motor vehicle safety and theft prevention standards, while they intentionally withheld, concealed, omitted, suppressed, and failed to disclose material facts about the Theft-Prone Design, including the lack of effective anti-theft measures, significant safety risks, noncompliance with federal motor vehicle safety standards, and the Vehicles' true value.

3491. Defendants volunteered incomplete information about the Vehicles they offered for sale and/or lease to consumers, including false statements as to the Vehicles' safety, compliance with applicable safety and anti-theft standards, and value while at the same time withholding the existence of the Theft-Prone Design. Defendants further knew and failed to disclose that the Theft-Prone Design and lack of standard anti-theft measures left the Vehicles at substantially lower value than the price for which they were advertised, marketed, sold, and/or leased.

3492. Alternatively, Defendants made false misrepresentations about the Theft-Prone Design with such utter disregard and recklessness that their knowledge regarding the Theft-Prone Design, its unsafe and unreliable nature, and its substantially lower value may be inferred.

3493. Defendants intended for the Minnesota Plaintiffs to rely on their omissions and concealment—which Minnesota Plaintiffs did in the manner reasonably contemplated by Defendants when they purchased or leased the Vehicles at the prices they paid believing that their vehicles would not have a Theft-Prone Design that would affect the quality, reliability, and safety of the Vehicles.

3494. Minnesota Plaintiffs' reliance on Defendants' misrepresentations and concealment was reasonable and justifiable, as Minnesota Plaintiffs had no way of learning the facts that Defendants had concealed or failed to disclose. Minnesota

COMPLAINT

Plaintiffs did not, and could not, unravel Defendants' deception on their own.

3495. Having been aware of the Theft-Prone Design within the Vehicles and having known that Minnesota Plaintiffs could not have reasonably been expected to know of the Theft-Prone Design, Defendants had a duty to disclose the Theft-Prone Design to Minnesota Plaintiffs in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Theft-Prone Design and the true value of the Vehicles.

3496. Instead, Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Minnesota Plaintiffs.

3497. If Defendants had fully and adequately disclosed the Theft-Prone Design to consumers, Minnesota Plaintiffs would have seen such a disclosure.

3498. Had Minnesota Plaintiffs known of the Theft-Prone Design within the Vehicles, they would not have purchased the Vehicles or would have paid less for them. Through their omissions and concealment with respect to the Theft-Prone Design within the Vehicles, Defendants intended to induce, and did in fact induce, Minnesota Plaintiffs to either purchase a Vehicle that they otherwise would not have purchased or pay more for a Vehicle than they otherwise would have paid.

3499. As a direct and proximate result of Defendants' omissions, Minnesota Plaintiffs overpaid for the Vehicles because Minnesota Plaintiffs would either have paid less for the Vehicles or would not have purchased the Vehicles at all if the Theft-Prone Design had been disclosed to them.

3500. As a direct and proximate result of Defendants' omissions, Minnesota Plaintiffs purchased Vehicles highly susceptible to theft and were forced to pay higher insurance premiums to account for the susceptibility that they did not knowingly accept, purchase, or lease.

3501. As a direct and proximate result of Defendants' omissions, the Minnesota

Plaintiffs paid higher insurance premiums and are now left with Vehicles with significantly diminished values.

3502. Accordingly, Defendants are liable to Minnesota Plaintiffs for their damages, including but not limited to the difference in value, increased insurance premiums that Minnesota Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

3503. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, in reckless disregard of the Minnesota Plaintiffs' rights and well-being, and to enrich themselves.  Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

3504. Minnesota Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

**6.      Negligent Misrepresentation.**

3505. Minnesota Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

3506. Defendants, in the course of their business selling and promoting motor vehicles, supplied false information, including that the Vehicles were safe, reliable, and of a particular value, to guide motor vehicle buyers, including Minnesota Plaintiffs, in their choice of transaction.

3507. Defendants made misrepresentations of material facts concerning the safety, reliability, and value of the Vehicles that they knew or should have known were false.  Specifically, Defendants misrepresented that the Vehicles had effective anti-theft equipment or design elements; misrepresented that the Vehicles were safe and reliable forms of transportation; misrepresented that the Vehicles complied with all federal and industry safety and theft prevention standards; and misrepresented the true value of the Vehicles.  Defendants supplied this information in the course of their business to guide

COMPLAINT

Minnesota Plaintiffs in their Vehicle selection and intended to induce Minnesota Plaintiffs to purchase one of Defendants' Vehicles.

3508. Minnesota Plaintiffs justifiably relied upon Defendants' representations because, as the entities responsible for designing and manufacturing the Vehicles, Defendants held themselves out to be knowledgeable about the Vehicles' components and honest in their promotion of the Vehicles. Minnesota Plaintiffs' reliance was further reasonable given the hidden and technical nature of the Theft-Prone Design and practical inability of Minnesota Plaintiffs to discover the Theft-Prone Design on their own. Because Defendants held the Vehicles out to be in line with industry standards, the representation was not unreasonable on its face and Minnesota Plaintiffs had no apparent reason to doubt the veracity of Defendants' representations.

3509. Defendants had a duty to disclose all relevant information regarding the Vehicles' safety, reliability, quality, and characteristics that would affect the Minnesota Plaintiffs' choice of purchase as consumers.

3510. Defendants failed to exercise reasonable care or competence in communicating the standards of safety, reliability, quality, and characteristics of the Vehicles to the consumers, including Minnesota Plaintiffs, when they failed to disclose the lack of anti-theft prevention technology in the Vehicles. Rather, Defendants published materials and marketed the Vehicles for years as safe, reliable, and of a quality consistent with the industry standard.

3511. Minnesota Plaintiffs would not have purchased, or would have purchased for a lower price, the Vehicles which Defendants negligently misrepresented as safe, of standard quality, and containing standard trade characteristics, such as anti-theft prevention technology. Additionally, as a direct and proximate result, Minnesota Plaintiffs have had to pay higher insurance premiums to account for the Vehicles' high susceptibility to theft and are now left with Vehicles that have a lower value than they would have had without the defect.

3512. As a direct and proximate result of Minnesota Plaintiffs' reasonable

COMPLAINT

reliance on Defendants' negligent misrepresentations, Minnesota Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that Minnesota Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

3513. Minnesota Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

**7.     Negligence.**

3514. Minnesota Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

3515. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

3516. Defendants owed a duty of care to Minnesota Plaintiffs. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves, higher insurance premiums, and accelerated depreciation.

3517. Defendants failed to exercise reasonable care in connection with their manufacture, distribution, sale, and/or leasing of the Vehicles.

3518. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Minnesota Plaintiffs.

3519. Defendants' violation of their duties under applicable law and/or the

COMPLAINT

applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS No. 114.

3520. As a direct and proximate result of Defendants' failure to exercise reasonable care, Minnesota Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that Minnesota Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

3521. Minnesota Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

**8.    Unjust Enrichment.**

3522. Minnesota Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

3523. When they purchased and leased the Vehicles, Minnesota Plaintiffs conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

3524. In exchange, Defendants did not confer the benefit that was promised to Plaintiffs when Defendants provided Vehicles of a lesser value and poorer quality than agreed.  Rather, Defendants kept the monetary amounts Plaintiffs paid for Vehicles of a particular value and nature that conformed with federal and industry safety standards, but Defendants did not provide Vehicles of that particular value or nature that conformed with federal and industry safety standards.

3525. Minnesota Plaintiffs have a reasonable expectation of compensation because they conferred an economic benefit on the Defendants with the expectation that they were receiving a different product—one of the particular design, nature, quality, and value that contained an anti-theft system and was compliant with federal safety and industry standards—in exchange.

- 785 -
COMPLAINT

3526. Minnesota Plaintiffs would not have purchased or leased their Vehicles, or would have paid less for them, had they known of the Theft-Prone Design at the time of purchase or lease.  Therefore, Defendants profited from the sale and lease of the Vehicles to the detriment and expense of Minnesota Plaintiffs by misrepresenting the Vehicles' true design, nature, quality, and value.

3527. Defendants appreciated these economic benefits.  These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers.  They knew of these benefits because they were aware of the Theft-Prone Design, the Vehicles' noncompliant nature and poorer quality, and the Vehicles' reduced value, yet they failed to disclose this knowledge and misled the Minnesota Plaintiffs regarding the design, nature, quality, and value of the Vehicles while profiting from this deception.

3528. Accordingly, Minnesota Plaintiffs have been impoverished due to Defendants' enrichment without justification.

3529. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, in part because they were procured as a result of their wrongful conduct alleged above.

3530. Minnesota Plaintiffs are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Minnesota Plaintiffs to the position they occupied prior to dealing with these Defendants, with such amounts to be determined at trial.

3531. Minnesota Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages, because if Minnesota Plaintiffs' claims for damages are dismissed or judgment is entered in favor of Defendants, Minnesota Plaintiffs will have no adequate legal remedy.

**X.    Mississippi State Law Claims for Relief**

**(Alleged by Mississippi Plaintiffs Against All Defendants)**

**1.    Breach of Implied Warranty Under Miss. Code §§ 75-2-314 and**

**75-2A-212.**

3532. Mississippi Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

3533. A warranty that the Vehicles were in merchantable condition is implied by law pursuant to Miss. Code §§ 75-2-314 and 75-2A-212.

3534. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Miss. Code § 75-2-104(1), "sellers" of motor vehicles under § 75-2-103(1)(d) and, with respect to leases, "lessors" of motor vehicles under § 75-2A-103(1)(p).

3535. At all relevant times, Mississippi Plaintiffs' Vehicles (whether purchased or leased) were and are "goods" within the meaning of Miss. Code §§ 75-2-105(1) and 75-2A-103(1)(h).

3536. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased.  Defendants provided Mississippi Plaintiffs with an implied warranty that the purchased and leased Vehicles were in merchantable condition and fit for the ordinary purposes for which they were sold or leased.  This implied warranty included that the Vehicles (a) were manufactured, supplied, distributed, and sold by Defendants, (b) were safe and reliable for transportation, (c) complied with all federal, state, and industry motor vehicle regulations and safety standards, including FMVSS No. 114, (d) were not at an abnormally high risk of theft, and (e) were of a particular value and quality that complied with federal and industry safety standards.

3537. The Vehicles did not comply with the implied warranty of merchantability because the Vehicles were defective and not in merchantable condition at the time of sale and/or lease, were not fit for their ordinary purpose of providing safe and reliable transportation at the time of sale or lease, and would not pass without objection in the trade as they deviated significantly from the industry standard and can be stolen in mere minutes without a key.  Defendants knew at the time of manufacture that the Vehicles

contained the Theft-Prone Design and lacked any anti-theft equipment or design elements that effectively prevent theft or comply with FMVSS No. 114.  Therefore, the Defendants knew at the time of manufacture that the Vehicles are at an abnormally high risk of theft and are unsafe and an unreliable form of transportation.  The Theft-Prone Design renders the Vehicles highly vulnerable to theft and a prime target for thieves as they can be easily stolen in seconds.  Defendants knew at the time of manufacture that because their Vehicles did not include any anti-theft measures that satisfied FMVSS No. 114, making their Vehicles more prone to theft and failing to comply with federal regulations, the Vehicles would require larger insurance premiums and would depreciate at a more rapid rate than a comparable vehicle with anti-theft measure that satisfied FMVSS No. 114. Consequently, at the time of sale and/or lease, the Vehicles were not fit for their ordinary purpose of providing safe and reliable transportation.

3538. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable.  Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Mississippi Plaintiffs, of the safety defect.  Any time limitations regarding the warranty period were also unconscionable and inadequate to protect Mississippi Plaintiffs.  Mississippi Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants.  A gross disadvantage in bargaining power existed between Mississippi Plaintiffs and Defendants, which unreasonably favored Defendants.  Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left Mississippi Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

3539. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that Mississippi Plaintiffs may seek alternative remedies. Mississippi Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry

COMPLAINT

standards, and Vehicles that provide safe and reliable transportation.

3540. Mississippi Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure. Mississippi Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Mississippi Plaintiffs' breach of warranty claims. Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Mississippi Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Mississippi Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches. To date, Defendants failed to remedy their breaches.

3541. Alternatively, Mississippi Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches. Mississippi Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

3542. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Mississippi Plaintiffs' Vehicles were and are defective, the

COMPLAINT

Theft-Prone Design in the Vehicles has not been remedied, and Mississippi Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that Mississippi Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

**2.      Breach of Express Warranty Under Miss. Code § 75-2-313.**

3543. Mississippi Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

3544. During the relevant time periods, Defendants manufactured the Vehicles and Mississippi Plaintiffs purchased and/or leased the Vehicles from Defendants.

3545. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Miss. Code § 75-2-104(1), "sellers" of motor vehicles under § 75-2-103(1)(d) and, with respect to leases, "lessors" of motor vehicles under § 75-2A-103(1)(p).

3546. At all relevant times, Mississippi Plaintiffs' Vehicles (whether purchased or leased) were and are "goods" within the meaning of Miss. Code §§ 75-2-105(1) and 75-2A-103(1)(h).

3547. By affixing a VIN plate to each Vehicle at the time of manufacture, Defendants expressly warranted each Vehicles' conformance to "all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture shown." These statements constitute a description, affirmation of fact, and promise made to Mississippi Plaintiffs as to the Vehicles' condition, quality, safety, and reliability. These statements, affirmations, and descriptions became the basis of the bargain between Mississippi Plaintiffs and Defendants, as Mississippi Plaintiffs relied on these statements when making their decisions to purchase and/or lease the Vehicles. As such, the statements are an express warranty under Mississippi law pursuant to Miss. Code § 75-2-313, and the Vehicles did not conform to the affirmations of fact, promises made by Defendants, or Defendants' description of the

Vehicles.

3548. Mississippi Plaintiffs used the Vehicles in accordance with their normal operation and did not misuse or mishandle the Vehicles in any way material to the allegations set forth herein.

3549. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable.  Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Mississippi Plaintiffs, of the safety defect.  Any time limitations regarding the warranty period were also unconscionable and inadequate to protect Mississippi Plaintiffs.  Mississippi Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants.  A gross disadvantage in bargaining power existed between Mississippi Plaintiffs and Defendants, which unreasonably favored Defendants.  Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left Mississippi Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

3550. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that Mississippi Plaintiffs may seek alternative remedies. Mississippi Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

3551. Mississippi Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure.  Mississippi Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Mississippi Plaintiffs' breach of warranty claims.  Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Mississippi Plaintiffs' claims.  Defendants have long known of the Theft-

COMPLAINT

Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Mississippi Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches. To date, Defendants failed to remedy their breaches.

3552. Alternatively, Mississippi Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches. Mississippi Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

3553. The Vehicles did not perform as promised in accordance with Defendants' express warranty; instead, the Vehicles did not meet all applicable motor vehicle safety and theft prevention standards in effect on the date of manufacture. The Vehicles are capable of being stolen in a matter of seconds without a key and do not comply with the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles do not, in fact, conform to the applicable anti-theft standards.

3554. As a direct and proximate result of Defendants' breaches, Mississippi Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that Mississippi Plaintiffs have paid and will continue to pay, and

COMPLAINT

accelerated depreciation, in an amount to be proven at trial.

### 3. Violation of Mississippi Consumer Protection Act Under Miss. Code. Ann. § 75-24-1, et seq.

3555. Mississippi Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

3556. Defendants and Mississippi Plaintiffs are "persons" within the meaning of Miss. Code Ann. § 75-24-3(a).

3557. Defendants were and are engaged in "trade" or "commerce" within the meaning of Miss. Code Ann. § 75-24-3(b).

3558. Defendants engaged in unlawful and deceptive trade practices as prohibited under the Mississippi Consumer Protection Act ("Mississippi CPA") which states that "[u]nfair methods of competition affecting commerce and unfair or deceptive trade practices in or affecting commerce are prohibited." Miss. Code Ann. § 75-24-5(1).

3559. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Mississippi CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Theft-Prone Design, as detailed above. Defendants used deception and unfair practices, false pretense, false promise, misrepresentation, concealment, suppression, and omission of material facts with the intent that Mississippi Plaintiffs rely on such concealment, suppression, or omission in connection with the sale or advertisement of their Vehicles, in violation of Miss. Code Ann. § 75-24-5.

3560. Under the Mississippi CPA, Defendants had an ongoing duty to Mississippi Plaintiffs to refrain from unfair or deceptive practices in the course of their business. Specifically, Defendants owed Mississippi Plaintiffs a duty to disclose all the material facts concerning the Theft-Prone Design in the Vehicles.

3561. Defendants had exclusive access to and far superior knowledge about facts regarding the Theft-Prone Design, and Defendants knew these facts were not known to

or reasonably discoverable by Mississippi Plaintiffs.

3562. Given the Theft-Prone Design's hidden and technical nature, Mississippi Plaintiffs lack the sophisticated expertise in vehicle components necessary to discover the Theft-Prone Design on their own.

3563. Defendants knew that the Theft-Prone Design gave rise to safety concerns for the consumers who use the Vehicles, and that the Theft-Prone Design would have been a material fact in the Mississippi Plaintiffs' decisions to buy or lease the Vehicles.

3564. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Theft-Prone Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

3565. As detailed above, the information concerning the Theft-Prone Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

3566. By misrepresenting the Vehicles as safe, reliable, of a particular value and quality, and free from defects, and by failing to disclose and actively concealing the dangers and risks posed by the Theft-Prone Design, Defendants engaged in the following unfair methods of competition and unfair or deceptive acts or practices prohibited by the Mississippi CPA: (a) misrepresenting the approval or certification of the Vehicles; (b) representing that the Vehicles have approval, characteristics, uses, or benefits that they do not have; (c) representing that the Vehicles are of a particular standard, quality, and grade when they are not; and (d) advertising the Vehicles with the intent not to sell or lease them as advertised. Miss. Code Ann. § 75-24-5(2)(b), (e), (g), and (i).

3567. Defendants intended for Mississippi Plaintiffs to rely on them to provide

COMPLAINT

adequately designed Vehicles and to honestly and accurately reveal the safety hazards described above.

3568. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Theft-Prone Design. Those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Mississippi Plaintiffs, about the true safety and reliability of the Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

3569. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Theft-Prone Design and true characteristics of the Vehicles were material to the decisions of Mississippi Plaintiffs to purchase or lease the Vehicles, as Defendants intended. Mississippi Plaintiffs were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase or lease the Vehicles.

3570. Mississippi Plaintiffs' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, and/or otherwise learning that the Vehicles contained the Theft-Prone Design, as alleged above. Mississippi Plaintiffs did not, and could not, unravel Defendants' deception on their own.

3571. Had they known the truth about the Theft-Prone Design, Mississippi Plaintiffs would not have purchased or leased the Vehicles or would have paid significantly less for them.

3572. Mississippi Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

3573. Defendants' violations present a continuing risk to Mississippi Plaintiffs

and the general public because the Vehicles remain unsafe due to the Theft-Prone Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

3574. Defendants had ample notice provided by the numerous complaints filed against them, internet videos, and news reports. Furthermore, on September 17, 2025, Mississippi Plaintiffs sent Defendants written notice letters of Defendants' violations, Plaintiffs' claims, and a proposed cure to the violations. To date, Defendants failed to remedy their violations. Because Defendants failed to remedy their unlawful conduct, Mississippi Plaintiffs seek all damages and relief to which Mississippi Plaintiffs are entitled.

3575. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile. As alleged above, Defendants have long known that the Vehicles contained the Theft-Prone Design yet did nothing to remedy the Theft-Prone Design.

3576. Pursuant to Miss Code Ann. §§ 75-24-9, -11, and -15, Mississippi Plaintiffs seek an order (1) enjoining Defendants' unfair and/or deceptive acts, methods, or practices alleged herein, and (2) awarding damages, punitive damages, attorney's fees, costs, and/or any other just and proper relief available under Miss. Code Ann. § 75-24-11.

### 4.    Fraud by Omission and Concealment.

3577. Mississippi Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

3578. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards and are therefore of a particular value and quality. In reality, however, the Vehicles do not comply with such standards and are of a lesser value and quality accordingly.

3579. Defendants were aware of the Theft-Prone Design when they manufactured, marketed, and sold the Vehicles to Mississippi Plaintiffs. Defendants

COMPLAINT

further knew that the Theft-Prone Design gave rise to serious safety risks for the consumers that would use the Vehicles and naturally give rise to higher insurance premiums and accelerated depreciation.  At the same time, Defendants were aware of the Federal Motor Vehicle Safety Standards and of the effectiveness of engine immobilizer technology in reducing safety hazards.  Defendants were also aware that noncompliance with federal and industry standards lowered the value of the Vehicles and would render the Vehicles difficult to insure.

3580. Defendants knew that the Theft-Prone Design, the safety hazards it posed, and the reduction in the Vehicles' value would have been material facts to the Mississippi Plaintiffs' decisions to buy or lease the Vehicles.

3581. A reasonable person would find the Vehicles' lack of industry-standard anti-theft measures and noncompliance with applicable safety standards material to their decision to purchase, lease, and maintain the Vehicles because these deficiencies impact safety, availability, the Vehicles' value, and the cost to insure the Vehicles.

3582. Defendants knowingly made affirmatively false or incomplete statements of material facts as to the Vehicles' safety, reliability, quality, value, and compliance with applicable motor vehicle safety and theft prevention standards, while they intentionally withheld, concealed, omitted, suppressed, and failed to disclose material facts about the Theft-Prone Design, including the lack of effective anti-theft measures, significant safety risks, noncompliance with federal motor vehicle safety standards, and the Vehicles' true value.

3583. Defendants volunteered incomplete information about the Vehicles they offered for sale and/or lease to consumers, including false statements as to the Vehicles' safety, compliance with applicable safety and anti-theft standards, and value while at the same time withholding the existence of the Theft-Prone Design.  Defendants further knew and failed to disclose that the Theft-Prone Design and lack of standard anti-theft measures left the Vehicles at substantially lower value than the price for which they were advertised, marketed, sold, and/or leased.

3584. Alternatively, Defendants made false misrepresentations about the Theft-Prone Design with such utter disregard and recklessness that their knowledge regarding the Theft-Prone Design, its unsafe and unreliable nature, and its substantially lower value may be inferred.

3585. Defendants intended for the Mississippi Plaintiffs to rely on their omissions and concealment—which Mississippi Plaintiffs did in the manner reasonably contemplated by Defendants when they purchased or leased the Vehicles at the prices they paid believing that their vehicles would not have a Theft-Prone Design that would affect the quality, reliability, and safety of the Vehicles.

3586. Mississippi Plaintiffs' reliance on Defendants' misrepresentations and concealment was reasonable and justifiable, as Mississippi Plaintiffs had no way of learning the facts that Defendants had concealed or failed to disclose. Mississippi Plaintiffs did not, and could not, unravel Defendants' deception on their own.

3587. Having been aware of the Theft-Prone Design within the Vehicles and having known that Mississippi Plaintiffs could not have reasonably been expected to know of the Theft-Prone Design, Defendants had a duty to disclose the Theft-Prone Design to Mississippi Plaintiffs in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Theft-Prone Design and the true value of the Vehicles.

3588. Instead, Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Mississippi Plaintiffs.

3589. If Defendants had fully and adequately disclosed the Theft-Prone Design to consumers, Mississippi Plaintiffs would have seen such a disclosure.

3590. Had Mississippi Plaintiffs known of the Theft-Prone Design within the Vehicles, they would not have purchased the Vehicles or would have paid less for them. Through their omissions and concealment with respect to the Theft-Prone Design within

- 798 -
COMPLAINT

the Vehicles, Defendants intended to induce, and did in fact induce, Mississippi Plaintiffs to either purchase a Vehicle that they otherwise would not have purchased or pay more for a Vehicle than they otherwise would have paid.

3591. As a direct and proximate result of Defendants' omissions, Mississippi Plaintiffs overpaid for the Vehicles because Mississippi Plaintiffs would either have paid less for the Vehicles or would not have purchased the Vehicles at all if the Theft-Prone Design had been disclosed to them.

3592. As a direct and proximate result of Defendants' omissions, Mississippi Plaintiffs purchased Vehicles highly susceptible to theft and were forced to pay higher insurance premiums to account for the susceptibility that they did not knowingly accept, purchase, or lease.

3593. As a direct and proximate result of Defendants' omissions, the Mississippi Plaintiffs paid higher insurance premiums and are now left with Vehicles with significantly diminished values.

3594. Accordingly, Defendants are liable to Mississippi Plaintiffs for their damages, including but not limited to the difference in value, increased insurance premiums that Mississippi Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

3595. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, in reckless disregard of the Mississippi Plaintiffs' rights and well-being, and to enrich themselves.  Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

3596. Mississippi Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 5.    Negligent Misrepresentation.

3597. Mississippi Plaintiffs incorporate by reference and reallege each preceding

paragraph as though fully set forth herein.

3598. Defendants, in the course of their business selling and promoting motor vehicles, supplied false information, including that the Vehicles were safe, reliable, and of a particular value, to guide motor vehicle buyers, including Mississippi Plaintiffs, in their choice of transaction.

3599. Defendants made misrepresentations of material facts concerning the safety, reliability, and value of the Vehicles that they knew or should have known were false. Specifically, Defendants misrepresented that the Vehicles had effective anti-theft equipment or design elements; misrepresented that the Vehicles were safe and reliable forms of transportation; misrepresented that the Vehicles complied with all federal and industry safety and theft prevention standards; and misrepresented the true value of the Vehicles. Defendants supplied this information in the course of their business to guide Mississippi Plaintiffs in their Vehicle selection and intended to induce Mississippi Plaintiffs to purchase one of Defendants' Vehicles.

3600. Mississippi Plaintiffs justifiably relied upon Defendants' representations because, as the entities responsible for designing and manufacturing the Vehicles, Defendants held themselves out to be knowledgeable about the Vehicles' components and honest in their promotion of the Vehicles. Mississippi Plaintiffs' reliance was further reasonable given the hidden and technical nature of the Theft-Prone Design and practical inability of Mississippi Plaintiffs to discover the Theft-Prone Design on their own. Because Defendants held the Vehicles out to be in line with industry standards, the representation was not unreasonable on its face and Mississippi Plaintiffs had no apparent reason to doubt the veracity of Defendants' representations.

3601. Defendants had a duty to disclose all relevant information regarding the Vehicles' safety, reliability, quality, and characteristics that would affect the Mississippi Plaintiffs' choice of purchase as consumers.

3602. Defendants failed to exercise reasonable care or competence in communicating the standards of safety, reliability, quality, and characteristics of the

Vehicles to the consumers, including Mississippi Plaintiffs, when they failed to disclose the lack of anti-theft prevention technology in the Vehicles.  Rather, Defendants published materials and marketed the Vehicles for years as safe, reliable, and of a quality consistent with the industry standard.

3603. Mississippi Plaintiffs would not have purchased, or would have purchased for a lower price, the Vehicles which Defendants negligently misrepresented as safe, of standard quality, and containing standard trade characteristics, such as anti-theft prevention technology.  Additionally, as a direct and proximate result, Mississippi Plaintiffs have had to pay higher insurance premiums to account for the Vehicles' high susceptibility to theft and are now left with Vehicles that have a lower value than they would have had without the defect.

3604. As a direct and proximate result of Mississippi Plaintiffs' reasonable reliance on Defendants' negligent misrepresentations, Mississippi Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that Mississippi Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

3605. Mississippi Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

**6.      Negligence.**

3606. Mississippi Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

3607. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

3608. Defendants owed a duty of care to Mississippi Plaintiffs. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by

- 801 -

COMPLAINT

casual car thieves, higher insurance premiums, and accelerated depreciation.

3609. Defendants failed to exercise reasonable care in connection with their manufacture, distribution, sale, and/or leasing of the Vehicles.

3610. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Mississippi Plaintiffs.

3611. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS No. 114.

3612. As a direct and proximate result of Defendants' failure to exercise reasonable care, Mississippi Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that Mississippi Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

3613. Mississippi Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 7.    Unjust Enrichment.

3614. Mississippi Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

3615. When they purchased and leased the Vehicles, Mississippi Plaintiffs conferred tangible and material economic benefits upon Defendants, who readily

COMPLAINT

accepted and retained these benefits.

3616. In exchange, Defendants did not confer the benefit that was promised to Plaintiffs when Defendants provided Vehicles of a lesser value and poorer quality than agreed. Rather, Defendants kept the monetary amounts Plaintiffs paid for Vehicles of a particular value and nature that conformed with federal and industry safety standards, but Defendants did not provide Vehicles of that particular value or nature that conformed with federal and industry safety standards.

3617. Mississippi Plaintiffs have a reasonable expectation of compensation because they conferred an economic benefit on the Defendants with the expectation that they were receiving a different product—one of the particular design, nature, quality, and value that contained an anti-theft system and was compliant with federal safety and industry standards—in exchange.

3618. Mississippi Plaintiffs would not have purchased or leased their Vehicles, or would have paid less for them, had they known of the Theft-Prone Design at the time of purchase or lease. Therefore, Defendants profited from the sale and lease of the Vehicles to the detriment and expense of Mississippi Plaintiffs by misrepresenting the Vehicles' true design, nature, quality, and value.

3619. Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft-Prone Design, the Vehicles' noncompliant nature and poorer quality, and the Vehicles' reduced value, yet they failed to disclose this knowledge and misled the Mississippi Plaintiffs regarding the design, nature, quality, and value of the Vehicles while profiting from this deception.

3620. Accordingly, Mississippi Plaintiffs have been impoverished due to Defendants' enrichment without justification.

3621. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, in part because they were procured as a result of their wrongful

conduct alleged above.

3622. Mississippi Plaintiffs are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Mississippi Plaintiffs to the position they occupied prior to dealing with these Defendants, with such amounts to be determined at trial.

3623. Mississippi Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages, because if Mississippi Plaintiffs' claims for damages are dismissed or judgment is entered in favor of Defendants, Mississippi Plaintiffs will have no adequate legal remedy.

**Y.      Missouri State Law Claims for Relief.**

**(Alleged by Missouri Plaintiffs Against All Defendants)**

**1.      Breach of Implied Warranty Under Mo. Rev. Stat. §§ 400.2-314 and 400.2A-212.**

3624. Missouri Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

3625. A warranty that the Vehicles were in merchantable condition is implied by law pursuant to Mo. Rev. Stat. §§ 400.2-314 and 400.2A-212.

3626. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Mo. Rev. Stat. §§ 400.2-104(1) and 400.2A-103(3), "sellers" of motor vehicles under § 400.2-103(1)(d) and, with respect to leases, "lessors" of motor vehicles under Mo. Rev. Stat. § 400.2A-103(1)(p).

3627. At all relevant times, Missouri Plaintiffs who purchased Vehicles in Missouri were and are "buyers" within the meaning of Mo. Rev. Stat. § 400.2-103(1)(a).

3628. At all relevant times, Missouri Plaintiffs who leased Vehicles in Missouri were and are "lessees" within the meaning of Mo. Rev. Stat. § 400.2A-103(1)(n).

3629. At all relevant times, Missouri Plaintiffs' Vehicles (whether purchased or leased) were and are "goods" within the meaning of Mo. Rev. Stat. §§ 400.2-105(1) and 400.2A-103(1)(h).

3630. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Missouri Plaintiffs with an implied warranty that the purchased and leased Vehicles were in merchantable condition and fit for the ordinary purposes for which they were sold or leased. This implied warranty included that the Vehicles (a) were manufactured, supplied, distributed, and sold by Defendants, (b) were safe and reliable for transportation, (c) complied with all federal, state, and industry motor vehicle regulations and safety standards, including FMVSS No. 114, (d) were not at an abnormally high risk of theft, and (e) were of a particular value and quality that complied with federal and industry safety standards.

3631. The Vehicles did not comply with the implied warranty of merchantability because the Vehicles were defective and not in merchantable condition at the time of sale and/or lease, were not fit for their ordinary purpose of providing safe and reliable transportation at the time of sale or lease, and would not pass without objection in the trade as they deviated significantly from the industry standard and can be stolen in mere minutes without a key. Defendants knew at the time of manufacture that the Vehicles contained the Theft-Prone Design and lacked any anti-theft equipment or design elements that effectively prevent theft or comply with FMVSS No. 114. Therefore, the Defendants knew at the time of manufacture that the Vehicles are at an abnormally high risk of theft and are unsafe and an unreliable form of transportation. The Theft-Prone Design renders the Vehicles highly vulnerable to theft and a prime target for thieves as they can be easily stolen in seconds. Defendants knew at the time of manufacture that because their Vehicles did not include any anti-theft measures that satisfied FMVSS No. 114, making their Vehicles more prone to theft and failing to comply with federal regulations, the Vehicles would require larger insurance premiums and would depreciate at a more rapid rate than a comparable vehicle with anti-theft measure that satisfied FMVSS No. 114. Consequently, at the time of sale and/or lease, the Vehicles were not fit for their ordinary purpose of providing safe and reliable transportation.

3632. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable.  Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Missouri Plaintiffs, of the safety defect.  Any time limitations regarding the warranty period were also unconscionable and inadequate to protect Missouri Plaintiffs.  Missouri Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants.  A gross disadvantage in bargaining power existed between Missouri Plaintiffs and Defendants, which unreasonably favored Defendants.  Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left Missouri Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

3633. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that Missouri Plaintiffs may seek alternative remedies. Missouri Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

3634. Missouri Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure.  Missouri Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Missouri Plaintiffs' breach of warranty claims.  Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Missouri Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news

COMPLAINT

reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count.   Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Missouri Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches.  To date, Defendants failed to remedy their breaches.

3635. Alternatively, Missouri Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches.  Missouri Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

3636. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Missouri Plaintiffs' Vehicles were and are defective, the Theft-Prone Design in the Vehicles has not been remedied, and Missouri Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that Missouri Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

**2.      Breach of Express Warranty Under Mo. Rev. Stat. §§ 400.2-313.**

3637. Missouri Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

3638. During the relevant time periods, Defendants manufactured the Vehicles and Missouri Plaintiffs purchased and/or leased the Vehicles from Defendants.

3639. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Mo. Rev. Stat. §§ 400.2-104(1) and 400.2A-103(3), "sellers" of motor vehicles under § 400.2-103(1)(d) and, with respect to leases, "lessors" of motor

COMPLAINT

vehicles under Mo. Rev. Stat. § 400.2A-103(1)(p).

3640. At all relevant times, Missouri Plaintiffs who purchased Vehicles in Missouri were and are "buyers" within the meaning of Mo. Rev. Stat. § 400.2-103(1)(a).

3641. At all relevant times, Missouri Plaintiffs who leased Vehicles in Missouri were and are "lessees" within the meaning of Mo. Rev. Stat. § 400.2A-103(1)(n).

3642. At all relevant times, Missouri Plaintiffs' Vehicles (whether purchased or leased) were and are "goods" within the meaning of Mo. Rev. Stat. §§ 400.2-105(1) and 400.2A-103(1)(h).

3643. By affixing a VIN plate to each Vehicle at the time of manufacture, Defendants expressly warranted each Vehicles' conformance to "all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture shown."  These statements constitute a description, affirmation of fact, and promise made to Missouri Plaintiffs as to the Vehicles' condition, quality, safety, and reliability.  These statements, affirmations, and descriptions became the basis of the bargain between Missouri Plaintiffs and Defendants, as Missouri Plaintiffs relied on these statements when making their decisions to purchase and/or lease the Vehicles.  As such, the statements are an express warranty under Missouri law pursuant to Mo. Rev. Stat. §§ 400.2-313, and the Vehicles did not conform to the affirmations of fact, promises made by Defendants, or Defendants' description of the Vehicles.

3644. Missouri Plaintiffs used the Vehicles in accordance with their normal operation and did not misuse or mishandle the Vehicles in any way material to the allegations set forth herein.

3645. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable.  Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Missouri Plaintiffs, of the safety defect.  Any time limitations regarding the warranty period were also unconscionable and inadequate to protect Missouri Plaintiffs.  Missouri Plaintiffs had no meaningful choice in

COMPLAINT

determining these time limitations and such time limitations unreasonably favored Defendants. A gross disadvantage in bargaining power existed between Missouri Plaintiffs and Defendants, which unreasonably favored Defendants. Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left Missouri Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

3646. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that Missouri Plaintiffs may seek alternative remedies. Missouri Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

3647. Missouri Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure. Missouri Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Missouri Plaintiffs' breach of warranty claims. Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Missouri Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Missouri Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches. To date, Defendants failed to remedy their breaches.

3648. Alternatively, Missouri Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches.  Missouri Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

3649. The Vehicles did not perform as promised in accordance with Defendants' express warranty; instead, the Vehicles did not meet all applicable motor vehicle safety and theft prevention standards in effect on the date of manufacture.  The Vehicles are capable of being stolen in a matter of seconds without a key and do not comply with the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles do not, in fact, conform to the applicable anti-theft standards.

3650. As a direct and proximate result of Defendants' breaches, Missouri Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that Missouri Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

### 3. Violation of Missouri Merchandising Practices Act Under Mo. Rev. Stat. § 4070.010, et seq.

3651. Missouri Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

3652. Defendants and Missouri Plaintiffs are "persons" within the meaning of Mo. Rev. Stat. § 407.010(5).

3653. Defendants were and are engaged in "trade" or "commerce" within the meaning of Mo. Rev. Stat. § 407.010(7).

3654. Vehicles are "merchandise" within the meaning of Mo. Rev. Stat. § 407.010(4).

3655. 2306. The sale or lease of the Vehicles is a "sale" within the meaning of Mo. Rev. Stat. § 407.010(6).

3656. Defendants engaged in unlawful and deceptive trade practices as prohibited under the Missouri Merchandising Practices Act ("Missouri MPA") which states that "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . is declared to be an unlawful practice." Mo. Rev. Stat. § 407.020(1).

3657. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Missouri MPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Theft-Prone Design, as detailed above. Defendants used deception and unfair practices, false pretense, false promise, misrepresentation, concealment, suppression, and omission of material facts with the intent that Missouri Plaintiffs rely on such concealment, suppression, or omission in connection with the sale or advertisement of their Vehicles, in violation of Mo. Rev. Stat. § 407.020(1).

3658. Under the Missouri MPA, Defendants had an ongoing duty to Missouri Plaintiffs to refrain from unfair or deceptive practices in the course of their business. Specifically, Defendants owed Missouri Plaintiffs a duty to disclose all the material facts concerning the Theft-Prone Design in the Vehicles.

3659. Defendants had exclusive access to and far superior knowledge about facts regarding the Theft-Prone Design, and Defendants knew these facts were not known to or reasonably discoverable by Missouri Plaintiffs.

3660. Given the Theft-Prone Design's hidden and technical nature, Missouri Plaintiffs lack the sophisticated expertise in vehicle components necessary to discover the Theft-Prone Design on their own.

COMPLAINT

3661. Defendants knew that the Theft-Prone Design gave rise to safety concerns for the consumers who use the Vehicles, and that the Theft-Prone Design would have been a material fact in the Missouri Plaintiffs' decisions to buy or lease the Vehicles.

3662. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Theft-Prone Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

3663. As detailed above, the information concerning the Theft-Prone Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

3664. By misrepresenting the Vehicles as safe, reliable, of a particular value and quality, and free from defects, and by failing to disclose and actively concealing the dangers and risks posed by the Theft-Prone Design, Defendants engaged in the following unfair methods of competition and unfair or deceptive acts or practices prohibited by the Missouri MPA: using or employing deception, fraud, false pretense, false promise or misrepresentation, unfair practice or the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of the Vehicles in trade or commerce. Mo. Rev. Stat. § 407.020(1).

3665. Defendants intended for Missouri Plaintiffs to rely on them to provide adequately designed Vehicles and to honestly and accurately reveal the safety hazards described above.

3666. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not

affected by the Theft-Prone Design. Those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Missouri Plaintiffs, about the true safety and reliability of the Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

3667. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Theft-Prone Design and true characteristics of the Vehicles were material to the decisions of Missouri Plaintiffs to purchase or lease the Vehicles, as Defendants intended. Missouri Plaintiffs were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase or lease the Vehicles.

3668. Missouri Plaintiffs' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, and/or otherwise learning that the Vehicles contained the Theft-Prone Design, as alleged above. Missouri Plaintiffs did not, and could not, unravel Defendants' deception on their own.

3669. Had they known the truth about the Theft-Prone Design, Missouri Plaintiffs would not have purchased or leased the Vehicles or would have paid significantly less for them.

3670. Missouri Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

3671. Defendants' violations present a continuing risk to Missouri Plaintiffs and the general public because the Vehicles remain unsafe due to the Theft-Prone Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

3672. Defendants had ample notice provided by the numerous complaints filed against them, internet videos, and news reports. Furthermore, on September 17, 2025, Missouri Plaintiffs sent Defendants written notice letters of Defendants' violations, Plaintiffs' claims, and a proposed cure to the violations. To date, Defendants failed to

COMPLAINT

remedy their violations.  Because Defendants failed to remedy their unlawful conduct, Missouri Plaintiffs seek all damages and relief to which Missouri Plaintiffs are entitled.

3673. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile.  As alleged above, Defendants have long known that the Vehicles contained the Theft-Prone Design yet did nothing to remedy the Theft-Prone Design.

3674. Pursuant to Mo. Rev. Stat. § 407.025, Missouri Plaintiffs seek an order (1) enjoining Defendants' unfair and/or deceptive acts, methods, or practices alleged herein, and (2) awarding damages, punitive damages, attorney's fees, costs, and/or any other just and proper relief available under the Missouri MPA.

### 4.    Fraud by Omission and Concealment.

3675. Missouri Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

3676. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards and are therefore of a particular value and quality.  In reality, however, the Vehicles do not comply with such standards and are of a lesser value and quality accordingly.

3677. Defendants were aware of the Theft-Prone Design when they manufactured, marketed, and sold the Vehicles to Missouri Plaintiffs.  Defendants further knew that the Theft-Prone Design gave rise to serious safety risks for the consumers that would use the Vehicles and naturally give rise to higher insurance premiums and accelerated depreciation.  At the same time, Defendants were aware of the Federal Motor Vehicle Safety Standards and of the effectiveness of engine immobilizer technology in reducing safety hazards.  Defendants were also aware that noncompliance with federal and industry standards lowered the value of the Vehicles and would render the Vehicles difficult to insure.

3678. Defendants knew that the Theft-Prone Design, the safety hazards it posed, and the reduction in the Vehicles' value would have been material facts to the Missouri

Plaintiffs' decisions to buy or lease the Vehicles.

3679. A reasonable person would find the Vehicles' lack of industry-standard anti-theft measures and noncompliance with applicable safety standards material to their decision to purchase, lease, and maintain the Vehicles because these deficiencies impact safety, availability, the Vehicles' value, and the cost to insure the Vehicles.

3680. Defendants knowingly made affirmatively false or incomplete statements of material facts as to the Vehicles' safety, reliability, quality, value, and compliance with applicable motor vehicle safety and theft prevention standards, while they intentionally withheld, concealed, omitted, suppressed, and failed to disclose material facts about the Theft-Prone Design, including the lack of effective anti-theft measures, significant safety risks, noncompliance with federal motor vehicle safety standards, and the Vehicles' true value.

3681. Defendants volunteered incomplete information about the Vehicles they offered for sale and/or lease to consumers, including false statements as to the Vehicles' safety, compliance with applicable safety and anti-theft standards, and value while at the same time withholding the existence of the Theft-Prone Design. Defendants further knew and failed to disclose that the Theft-Prone Design and lack of standard anti-theft measures left the Vehicles at substantially lower value than the price for which they were advertised, marketed, sold, and/or leased.

3682. Alternatively, Defendants made false misrepresentations about the Theft-Prone Design with such utter disregard and recklessness that their knowledge regarding the Theft-Prone Design, its unsafe and unreliable nature, and its substantially lower value may be inferred.

3683. Defendants intended for the Missouri Plaintiffs to rely on their omissions and concealment—which Missouri Plaintiffs did in the manner reasonably contemplated by Defendants when they purchased or leased the Vehicles at the prices they paid believing that their vehicles would not have a Theft-Prone Design that would affect the quality, reliability, and safety of the Vehicles.

COMPLAINT

3684. Missouri Plaintiffs' reliance on Defendants' misrepresentations and concealment was reasonable and justifiable, as Missouri Plaintiffs had no way of learning the facts that Defendants had concealed or failed to disclose. Missouri Plaintiffs did not, and could not, unravel Defendants' deception on their own.

3685. Having been aware of the Theft-Prone Design within the Vehicles and having known that Missouri Plaintiffs could not have reasonably been expected to know of the Theft-Prone Design, Defendants had a duty to disclose the Theft-Prone Design to Missouri Plaintiffs in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Theft-Prone Design and the true value of the Vehicles.

3686. Instead, Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Missouri Plaintiffs.

3687. If Defendants had fully and adequately disclosed the Theft-Prone Design to consumers, Missouri Plaintiffs would have seen such a disclosure.

3688. Had Missouri Plaintiffs known of the Theft-Prone Design within the Vehicles, they would not have purchased the Vehicles or would have paid less for them. Through their omissions and concealment with respect to the Theft-Prone Design within the Vehicles, Defendants intended to induce, and did in fact induce, Missouri Plaintiffs to either purchase a Vehicle that they otherwise would not have purchased or pay more for a Vehicle than they otherwise would have paid.

3689. As a direct and proximate result of Defendants' omissions, Missouri Plaintiffs overpaid for the Vehicles because Missouri Plaintiffs would either have paid less for the Vehicles or would not have purchased the Vehicles at all if the Theft-Prone Design had been disclosed to them.

3690. As a direct and proximate result of Defendants' omissions, Missouri Plaintiffs purchased Vehicles highly susceptible to theft and were forced to pay higher

insurance premiums to account for the susceptibility that they did not knowingly accept, purchase, or lease.

3691. As a direct and proximate result of Defendants' omissions, the Missouri Plaintiffs paid higher insurance premiums and are now left with Vehicles with significantly diminished values.

3692. Accordingly, Defendants are liable to Missouri Plaintiffs for their damages, including but not limited to the difference in value, increased insurance premiums that Missouri Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

3693. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, in reckless disregard of the Missouri Plaintiffs' rights and well-being, and to enrich themselves.  Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

3694. Missouri Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 5.    Negligent Misrepresentation.

3695. Missouri Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

3696. Defendants, in the course of their business selling and promoting motor vehicles, supplied false information, including that the Vehicles were safe, reliable, and of a particular value, to guide motor vehicle buyers, including Missouri Plaintiffs, in their choice of transaction.

3697. Defendants made misrepresentations of material facts concerning the safety, reliability, and value of the Vehicles that they knew or should have known were false. Specifically, Defendants misrepresented that the Vehicles had effective anti-theft equipment or design elements; misrepresented that the Vehicles were safe and reliable

forms of transportation; misrepresented that the Vehicles complied with all federal and industry safety and theft prevention standards; and misrepresented the true value of the Vehicles.  Defendants supplied this information in the course of their business to guide Missouri Plaintiffs in their Vehicle selection and intended to induce Missouri Plaintiffs to purchase one of Defendants' Vehicles.

3698. Missouri Plaintiffs justifiably relied upon Defendants' representations because, as the entities responsible for designing and manufacturing the Vehicles, Defendants held themselves out to be knowledgeable about the Vehicles' components and honest in their promotion of the Vehicles. Missouri Plaintiffs' reliance was further reasonable given the hidden and technical nature of the Theft-Prone Design and practical inability of Missouri Plaintiffs to discover the Theft-Prone Design on their own.  Because Defendants held the Vehicles out to be in line with industry standards, the representation was not unreasonable on its face and Missouri Plaintiffs had no apparent reason to doubt the veracity of Defendants' representations.

3699. Defendants had a duty to disclose all relevant information regarding the Vehicles' safety, reliability, quality, and characteristics that would affect the Missouri Plaintiffs' choice of purchase as consumers.

3700. Defendants failed to exercise reasonable care or competence in communicating the standards of safety, reliability, quality, and characteristics of the Vehicles to the consumers, including Missouri Plaintiffs, when they failed to disclose the lack of anti-theft prevention technology in the Vehicles.  Rather, Defendants published materials and marketed the Vehicles for years as safe, reliable, and of a quality consistent with the industry standard.

3701. Missouri Plaintiffs would not have purchased, or would have purchased for a lower price, the Vehicles which Defendants negligently misrepresented as safe, of standard quality, and containing standard trade characteristics, such as anti-theft prevention technology.  Additionally, as a direct and proximate result, Missouri Plaintiffs have had to pay higher insurance premiums to account for the Vehicles' high

COMPLAINT

susceptibility to theft and are now left with Vehicles that have a lower value than they would have had without the defect.

3702. As a direct and proximate result of Missouri Plaintiffs' reasonable reliance on Defendants' negligent misrepresentations, Missouri Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that Missouri Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

3703. Missouri Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 6.    Negligence.

3704. Missouri Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

3705. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

3706. Defendants owed a duty of care to Missouri Plaintiffs. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves, higher insurance premiums, and accelerated depreciation.

3707. Defendants failed to exercise reasonable care in connection with their manufacture, distribution, sale, and/or leasing of the Vehicles.

3708. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into

COMPLAINT

with Missouri Plaintiffs.

3709. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS.

3710. As a direct and proximate result of Defendants' failure to exercise reasonable care, Missouri Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that Missouri Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

3711. Missouri Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 7.    Unjust Enrichment.

3712. Missouri Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

3713. When they purchased and leased the Vehicles, Missouri Plaintiffs conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

3714. In exchange, Defendants did not confer the benefit that was promised to Plaintiffs when Defendants provided Vehicles of a lesser value and poorer quality than agreed.  Rather, Defendants kept the monetary amounts Plaintiffs paid for Vehicles of a particular value and nature that conformed with federal and industry safety standards, but Defendants did not provide Vehicles of that particular value or nature that conformed with federal and industry safety standards.

3715. Missouri Plaintiffs have a reasonable expectation of compensation because they conferred an economic benefit on the Defendants with the expectation that they were receiving a different product—one of the particular design, nature, quality, and

- 820 -
COMPLAINT

value that contained an anti-theft system and was compliant with federal safety and industry standards—in exchange.

3716. Missouri Plaintiffs would not have purchased or leased their Vehicles, or would have paid less for them, had they known of the Theft-Prone Design at the time of purchase or lease.  Therefore, Defendants profited from the sale and lease of the Vehicles to the detriment and expense of Missouri Plaintiffs by misrepresenting the Vehicles' true design, nature, quality, and value.

3717. Defendants appreciated these economic benefits.  These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers.  They knew of these benefits because they were aware of the Theft-Prone Design, the Vehicles' noncompliant nature and poorer quality, and the Vehicles' reduced value, yet they failed to disclose this knowledge and misled the Missouri Plaintiffs regarding the design, nature, quality, and value of the Vehicles while profiting from this deception.

3718. Accordingly, Missouri Plaintiffs have been impoverished due to Defendants' enrichment without justification.

3719. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, in part because they were procured as a result of their wrongful conduct alleged above.

3720. Missouri Plaintiffs are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Missouri Plaintiffs to the position they occupied prior to dealing with these Defendants, with such amounts to be determined at trial.

3721. Missouri Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages, because if Missouri Plaintiffs' claims for damages are dismissed or judgment is entered in favor of Defendants, Missouri Plaintiffs will have no adequate legal remedy.

## Z.    Montana State Law Claims for Relief

COMPLAINT

**(Alleged by Montana Plaintiffs Against All Defendants)**

**1.      Breach of Implied Warranty Under Mont. Code Ann. §§ 2-314 and 30-2A-212.**

3722. Montana Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

3723. A warranty that the Vehicles were in merchantable condition is implied by law pursuant to Mont. Code Ann. §§ 2-314 and 30-2A-212.

3724. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Mont. Code Ann. §§ 30-2-104(1) and 30-2-104(3), "sellers" of motor vehicles under § 30-2-103(1)(d) and, with respect to leases, "lessors" of motor vehicles under Mont. Code Ann. § 30-2A-103(1)(q).

3725. At all relevant times, Montana Plaintiffs who purchased Vehicles in Montana were and are "buyers" within the meaning of Mont. Code Ann. § 30-2-103(1)(a).

3726. At all relevant times, Montana Plaintiffs who leased Vehicles in Montana were and are "lessees" within the meaning of Mont. Code Ann. § 30-2A-103(1)(o).

3727. At all relevant times, Montana Plaintiffs' Vehicles (whether purchased or leased) were and are "goods" within the meaning of Mont. Code Ann. §§ 30-2-105(1) and 30-2A-103(1)(h).

3728. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased.  Defendants provided Montana Plaintiffs with an implied warranty that the purchased and leased Vehicles were in merchantable condition and fit for the ordinary purposes for which they were sold or leased.  This implied warranty included that the Vehicles (a) were manufactured, supplied, distributed, and sold by Defendants, (b) were safe and reliable for transportation, (c) complied with all federal, state, and industry motor vehicle regulations and safety standards, including FMVSS No. 114, (d) were not at an abnormally high risk of theft, and (e) were of a particular value and quality that complied with federal and industry

COMPLAINT

safety standards.

3729. The Vehicles did not comply with the implied warranty of merchantability because the Vehicles were defective and not in merchantable condition at the time of sale and/or lease, were not fit for their ordinary purpose of providing safe and reliable transportation at the time of sale or lease, and would not pass without objection in the trade as they deviated significantly from the industry standard and can be stolen in mere minutes without a key. Defendants knew at the time of manufacture that the Vehicles contained the Theft-Prone Design and lacked any anti-theft equipment or design elements that effectively prevent theft or comply with FMVSS No. 114. Therefore, the Defendants knew at the time of manufacture that the Vehicles are at an abnormally high risk of theft and are unsafe and an unreliable form of transportation. The Theft-Prone Design renders the Vehicles highly vulnerable to theft and a prime target for thieves as they can be easily stolen in seconds. Defendants knew at the time of manufacture that because their Vehicles did not include any anti-theft measures that satisfied FMVSS No. 114, making their Vehicles more prone to theft and failing to comply with federal regulations, the Vehicles would require larger insurance premiums and would depreciate at a more rapid rate than a comparable vehicle with anti-theft measure that satisfied FMVSS No. 114. Consequently, at the time of sale and/or lease, the Vehicles were not fit for their ordinary purpose of providing safe and reliable transportation.

3730. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable. Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Montana Plaintiffs, of the safety defect. Any time limitations regarding the warranty period were also unconscionable and inadequate to protect Montana Plaintiffs. Montana Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants. A gross disadvantage in bargaining power existed between Montana Plaintiffs and Defendants, which unreasonably favored Defendants. Moreover,

COMPLAINT

Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left Montana Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

3731. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that Montana Plaintiffs may seek alternative remedies. Montana Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

3732. Montana Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure. Montana Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Montana Plaintiffs' breach of warranty claims. Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Montana Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Montana Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches. To date, Defendants failed to remedy their breaches.

3733. Alternatively, Montana Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured,

COMPLAINT

distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches. Montana Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

3734. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Montana Plaintiffs' Vehicles were and are defective, the Theft-Prone Design in the Vehicles has not been remedied, and Montana Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that Montana Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

### 2. Breach of Express Warranty Under Mont. Code § 30-2-313.

3735. Montana Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

3736. During the relevant time periods, Defendants manufactured the Vehicles and Montana Plaintiffs purchased and/or leased the Vehicles from Defendants.

3737. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Mont. Code Ann. §§ 30-2-104(1) and 30-2-104(3), "sellers" of motor vehicles under § 30-2-103(1)(d) and, with respect to leases, "lessors" of motor vehicles under Mont. Code Ann. § 30-2A-103(1)(q).

3738. At all relevant times, Montana Plaintiffs who purchased Vehicles in Montana were and are "buyers" within the meaning of Mont. Code Ann. § 30-2-103(1)(a).

3739. At all relevant times, Montana Plaintiffs who leased Vehicles in Montana were and are "lessees" within the meaning of Mont. Code Ann. § 30-2A-103(1)(o).

3740. At all relevant times, Montana Plaintiffs' Vehicles (whether purchased or leased) were and are "goods" within the meaning of Mont. Code Ann. §§ 30-2-105(1) and 30-2A-103(1)(h).

COMPLAINT

3741. By affixing a VIN plate to each Vehicle at the time of manufacture, Defendants expressly warranted each Vehicles' conformance to "all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture shown." These statements constitute a description, affirmation of fact, and promise made to Montana Plaintiffs as to the Vehicles' condition, quality, safety, and reliability. These statements, affirmations, and descriptions became the basis of the bargain between Montana Plaintiffs and Defendants, as Montana Plaintiffs relied on these statements when making their decisions to purchase and/or lease the Vehicles. As such, the statements are an express warranty under Montana law pursuant to Mont. Code Ann. § 30-2-313, and the Vehicles did not conform to the affirmations of fact, promises made by Defendants, or Defendants' description of the Vehicles.

3742. Montana Plaintiffs used the Vehicles in accordance with their normal operation and did not misuse or mishandle the Vehicles in any way material to the allegations set forth herein.

3743. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable. Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Montana Plaintiffs, of the safety defect. Any time limitations regarding the warranty period were also unconscionable and inadequate to protect Montana Plaintiffs. Montana Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants. A gross disadvantage in bargaining power existed between Montana Plaintiffs and Defendants, which unreasonably favored Defendants. Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left Montana Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

3744. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that Montana Plaintiffs may seek alternative remedies. Montana

Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

3745. Montana Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure. Montana Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Montana Plaintiffs' breach of warranty claims. Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Montana Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Montana Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches. To date, Defendants failed to remedy their breaches.

3746. Alternatively, Montana Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches. Montana Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

3747. The Vehicles did not perform as promised in accordance with Defendants'

express warranty; instead, the Vehicles did not meet all applicable motor vehicle safety and theft prevention standards in effect on the date of manufacture. The Vehicles are capable of being stolen in a matter of seconds without a key and do not comply with the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles do not, in fact, conform to the applicable anti-theft standards.

3748. As a direct and proximate result of Defendants' breaches, Montana Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that Montana Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

**3. Violation of Montana Unfair Trade Practices and Consumer Protection Act Under Mont. Code Ann. § 30-14-101, et seq.**

3749. Montana Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

3750. Defendants and Montana Plaintiffs are "persons" within the meaning of Mont. Code Ann. § 30-14-102(6).

3751. Montana Plaintiffs are "consumers" within the meaning of Mont. Code Ann. § 30-14-102(1).

3752. Defendants were and are engaged in "trade" or "commerce" within the meaning of Mont. Code Ann. § 30-14-102(8)(a).

3753. Defendants engaged in unlawful and deceptive trade practices as prohibited under the Montana Unfair Trade Practices and Consumer Protection Act ("Montana CPA") which states that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." Mont. Code Ann. § 30-14-103.

3754. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Montana CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material

facts regarding the quality, reliability, and safety of the Vehicles and the Theft-Prone Design, as detailed above. Defendants used deception and unfair practices, false pretense, false promise, misrepresentation, concealment, suppression, and omission of material facts with the intent that Montana Plaintiffs rely on such concealment, suppression, or omission in connection with the sale or advertisement of their Vehicles, in violation of Mont. Code Ann. § 30-14-103.

3755. Under the Montana CPA, Defendants had an ongoing duty to Montana Plaintiffs to refrain from unfair or deceptive practices in the course of their business. Specifically, Defendants owed Montana Plaintiffs a duty to disclose all the material facts concerning the Theft-Prone Design in the Vehicles.

3756. Defendants had exclusive access to and far superior knowledge about facts regarding the Theft-Prone Design, and Defendants knew these facts were not known to or reasonably discoverable by Montana Plaintiffs.

3757. Given the Theft-Prone Design's hidden and technical nature, Montana Plaintiffs lack the sophisticated expertise in vehicle components necessary to discover the Theft-Prone Design on their own.

3758. Defendants knew that the Theft-Prone Design gave rise to safety concerns for the consumers who use the Vehicles, and that the Theft-Prone Design would have been a material fact in the Montana Plaintiffs' decisions to buy or lease the Vehicles.

3759. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Theft-Prone Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

3760. As detailed above, the information concerning the Theft-Prone Design was known to Defendants at the time of advertising and selling the Vehicles, all of which

was intended to induce consumers to purchase the Vehicles.

3761. By misrepresenting the Vehicles as safe, reliable, and free from defects and by failing to disclose and actively concealing the dangers and risk posed by the Theft-Prone Design, Defendants engaged in unfair methods of competition and unfair or deceptive acts or practices prohibited by Mont. Code Ann. § 30-14-103.

3762. Defendants intended for Montana Plaintiffs to rely on them to provide adequately designed Vehicles and to honestly and accurately reveal the safety hazards described above.

3763. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Theft-Prone Design.   Those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Montana Plaintiffs, about the true safety and reliability of the Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

3764. Defendants'   misrepresentations,   concealments,   omissions,   and suppressions of material facts regarding the Theft-Prone Design and true characteristics of the Vehicles were material to the decisions of Montana Plaintiffs to purchase or lease the Vehicles, as Defendants intended.   Montana Plaintiffs were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase or lease the Vehicles.

3765. Montana Plaintiffs' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, and/or otherwise learning that the Vehicles contained the Theft-Prone Design, as alleged above. Montana Plaintiffs did not, and could not, unravel Defendants' deception on their own.

3766. Had they known the truth about the Theft-Prone Design, Montana Plaintiffs would not have purchased or leased the Vehicles or would have paid

COMPLAINT

significantly less for them.

3767. Montana Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

3768. Defendants' violations present a continuing risk to Montana Plaintiffs and the general public because the Vehicles remain unsafe due to the Theft-Prone Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

3769. Defendants had ample notice provided by the numerous complaints filed against them, internet videos, and news reports. Furthermore, on September 17, 2025, Montana Plaintiffs sent Defendants written notice letters of Defendants' violations, Plaintiffs' claims, and a proposed cure to the violations. To date, Defendants failed to remedy their violations. Because Defendants failed to remedy their unlawful conduct, Montana Plaintiffs seek all damages and relief to which Montana Plaintiffs are entitled.

3770. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile. As alleged above, Defendants have long known that the Vehicles contained the Theft-Prone Design yet did nothing to remedy the Theft-Prone Design.

3771. Pursuant to Mont. Code Ann. § 30-14-133, Montana Plaintiffs seek an order (1) enjoining Defendants' unfair and/or deceptive acts, methods, or practices alleged herein, and (2) awarding damages, punitive damages, attorney's fees, costs, and/or any other just and proper relief available under the Montana CPA.

### 4. Fraud by Omission and Concealment.

3772. Montana Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

3773. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards and are therefore of a particular value and quality. In reality, however, the Vehicles do not comply with such standards and are of a lesser value and quality accordingly.

COMPLAINT

3774. Defendants were aware of the Theft-Prone Design when they manufactured, marketed, and sold the Vehicles to Montana Plaintiffs. Defendants further knew that the Theft-Prone Design gave rise to serious safety risks for the consumers that would use the Vehicles and naturally give rise to higher insurance premiums and accelerated depreciation. At the same time, Defendants were aware of the Federal Motor Vehicle Safety Standards and of the effectiveness of engine immobilizer technology in reducing safety hazards. Defendants were also aware that noncompliance with federal and industry standards lowered the value of the Vehicles and would render the Vehicles difficult to insure.

3775. Defendants knew that the Theft-Prone Design, the safety hazards it posed, and the reduction in the Vehicles' value would have been material facts to the Montana Plaintiffs' decisions to buy or lease the Vehicles.

3776. A reasonable person would find the Vehicles' lack of industry-standard anti-theft measures and noncompliance with applicable safety standards material to their decision to purchase, lease, and maintain the Vehicles because these deficiencies impact safety, availability, the Vehicles' value, and the cost to insure the Vehicles.

3777. Defendants knowingly made affirmatively false or incomplete statements of material facts as to the Vehicles' safety, reliability, quality, value, and compliance with applicable motor vehicle safety and theft prevention standards, while they intentionally withheld, concealed, omitted, suppressed, and failed to disclose material facts about the Theft-Prone Design, including the lack of effective anti-theft measures, significant safety risks, noncompliance with federal motor vehicle safety standards, and the Vehicles' true value.

3778. Defendants volunteered incomplete information about the Vehicles they offered for sale and/or lease to consumers, including false statements as to the Vehicles' safety, compliance with applicable safety and anti-theft standards, and value while at the same time withholding the existence of the Theft-Prone Design. Defendants further knew and failed to disclose that the Theft-Prone Design and lack of standard anti-theft

COMPLAINT

measures left the Vehicles at substantially lower value than the price for which they were advertised, marketed, sold, and/or leased.

3779. Alternatively, Defendants made false misrepresentations about the Theft-Prone Design with such utter disregard and recklessness that their knowledge regarding the Theft-Prone Design, its unsafe and unreliable nature, and its substantially lower value may be inferred.

3780. Defendants intended for the Montana Plaintiffs to rely on their omissions and concealment—which Montana Plaintiffs did in the manner reasonably contemplated by Defendants when they purchased or leased the Vehicles at the prices they paid believing that their vehicles would not have a Theft-Prone Design that would affect the quality, reliability, and safety of the Vehicles.

3781. Montana Plaintiffs' reliance on Defendants' misrepresentations and concealment was reasonable and justifiable, as Montana Plaintiffs had no way of learning the facts that Defendants had concealed or failed to disclose. Montana Plaintiffs did not, and could not, unravel Defendants' deception on their own.

3782. Having been aware of the Theft-Prone Design within the Vehicles and having known that Montana Plaintiffs could not have reasonably been expected to know of the Theft-Prone Design, Defendants had a duty to disclose the Theft-Prone Design to Montana Plaintiffs in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Theft-Prone Design and the true value of the Vehicles.

3783. Instead, Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Montana Plaintiffs.

3784. If Defendants had fully and adequately disclosed the Theft-Prone Design to consumers, Montana Plaintiffs would have seen such a disclosure.

3785. Had Montana Plaintiffs known of the Theft-Prone Design within the

Vehicles, they would not have purchased the Vehicles or would have paid less for them. Through their omissions and concealment with respect to the Theft-Prone Design within the Vehicles, Defendants intended to induce, and did in fact induce, Montana Plaintiffs to either purchase a Vehicle that they otherwise would not have purchased or pay more for a Vehicle than they otherwise would have paid.

3786. As a direct and proximate result of Defendants' omissions, Montana Plaintiffs overpaid for the Vehicles because Montana Plaintiffs would either have paid less for the Vehicles or would not have purchased the Vehicles at all if the Theft-Prone Design had been disclosed to them.

3787. As a direct and proximate result of Defendants' omissions, Montana Plaintiffs purchased Vehicles highly susceptible to theft and were forced to pay higher insurance premiums to account for the susceptibility that they did not knowingly accept, purchase, or lease.

3788. As a direct and proximate result of Defendants' omissions, the Montana Plaintiffs paid higher insurance premiums and are now left with Vehicles with significantly diminished values.

3789. Accordingly, Defendants are liable to Montana Plaintiffs for their damages, including but not limited to the difference in value, increased insurance premiums that Montana Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

3790. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, in reckless disregard of the Montana Plaintiffs' rights and well-being, and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

3791. Montana Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

COMPLAINT

### 5. Negligent Misrepresentation.

3792. Montana Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

3793. Defendants, in the course of their business selling and promoting motor vehicles, supplied false information, including that the Vehicles were safe, reliable, and of a particular value, to guide motor vehicle buyers, including Montana Plaintiffs, in their choice of transaction.

3794. Defendants made misrepresentations of material facts concerning the safety, reliability, and value of the Vehicles that they knew or should have known were false. Specifically, Defendants misrepresented that the Vehicles had effective anti-theft equipment or design elements; misrepresented that the Vehicles were safe and reliable forms of transportation; misrepresented that the Vehicles complied with all federal and industry safety and theft prevention standards; and misrepresented the true value of the Vehicles. Defendants supplied this information in the course of their business to guide Montana Plaintiffs in their Vehicle selection and intended to induce Montana Plaintiffs to purchase one of Defendants' Vehicles.

3795. Montana Plaintiffs justifiably relied upon Defendants' representations because, as the entities responsible for designing and manufacturing the Vehicles, Defendants held themselves out to be knowledgeable about the Vehicles' components and honest in their promotion of the Vehicles. Montana Plaintiffs' reliance was further reasonable given the hidden and technical nature of the Theft-Prone Design and practical inability of Montana Plaintiffs to discover the Theft-Prone Design on their own. Because Defendants held the Vehicles out to be in line with industry standards, the representation was not unreasonable on its face and Montana Plaintiffs had no apparent reason to doubt the veracity of Defendants' representations.

3796. Defendants had a duty to disclose all relevant information regarding the Vehicles' safety, reliability, quality, and characteristics that would affect the Montana Plaintiffs' choice of purchase as consumers.

- 835 -
COMPLAINT

3797. Defendants failed to exercise reasonable care or competence in communicating the standards of safety, reliability, quality, and characteristics of the Vehicles to the consumers, including Montana Plaintiffs, when they failed to disclose the lack of anti-theft prevention technology in the Vehicles. Rather, Defendants published materials and marketed the Vehicles for years as safe, reliable, and of a quality consistent with the industry standard.

3798. Montana Plaintiffs would not have purchased, or would have purchased for a lower price, the Vehicles which Defendants negligently misrepresented as safe, of standard quality, and containing standard trade characteristics, such as anti-theft prevention technology. Additionally, as a direct and proximate result, Montana Plaintiffs have had to pay higher insurance premiums to account for the Vehicles' high susceptibility to theft and are now left with Vehicles that have a lower value than they would have had without the defect.

3799. As a direct and proximate result of Montana Plaintiffs' reasonable reliance on Defendants' negligent misrepresentations, Montana Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that Montana Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

3800. Montana Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

**6.    Negligence.**

3801. Montana Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

3802. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

3803. Defendants owed a duty of care to Montana Plaintiffs. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants

- 836 -
COMPLAINT

owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves, higher insurance premiums, and accelerated depreciation.

3804. Defendants failed to exercise reasonable care in connection with their manufacture, distribution, sale, and/or leasing of the Vehicles.

3805. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Montana Plaintiffs.

3806. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS.

3807. As a direct and proximate result of Defendants' failure to exercise reasonable care, Montana Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that Montana Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

3808. Montana Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 7.     Unjust Enrichment.

3809. Montana Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

3810. When they purchased and leased the Vehicles, Montana Plaintiffs

- 837 -
COMPLAINT

conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

3811. In exchange, Defendants did not confer the benefit that was promised to Montana Plaintiffs when Defendants provided Vehicles of a lesser value and poorer quality than agreed.  Rather, Defendants kept the monetary amounts Montana Plaintiffs paid for Vehicles of a particular value and nature that conformed with federal and industry safety standards, but Defendants did not provide Vehicles of that particular value or nature that conformed with federal and industry safety standards.

3812. Montana Plaintiffs have a reasonable expectation of compensation because they conferred an economic benefit on the Defendants with the expectation that they were receiving a different product—one of the particular design, nature, quality, and value that contained an anti-theft system and was compliant with federal safety and industry standards—in exchange.

3813. Montana Plaintiffs would not have purchased or leased their Vehicles, or would have paid less for them, had they known of the Theft-Prone Design at the time of purchase or lease.  Therefore, Defendants profited from the sale and lease of the Vehicles to the detriment and expense of Montana Plaintiffs by misrepresenting the Vehicles' true design, nature, quality, and value.

3814. Defendants appreciated these economic benefits.  These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers.  They knew of these benefits because they were aware of the Theft-Prone Design, the Vehicles' noncompliant nature and poorer quality, and the Vehicles' reduced value, yet they failed to disclose this knowledge and misled the Montana Plaintiffs regarding the design, nature, quality, and value of the Vehicles while profiting from this deception.

3815. Accordingly, Montana Plaintiffs have been impoverished due to Defendants' enrichment without justification.

3816. It would be unjust, inequitable, and unconscionable for Defendants to

COMPLAINT

retain these benefits, in part because they were procured as a result of their wrongful conduct alleged above.

3817. Montana Plaintiffs are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Montana Plaintiffs to the position they occupied prior to dealing with these Defendants, with such amounts to be determined at trial.

3818. Montana Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages, because if Montana Plaintiffs' claims for damages are dismissed or judgment is entered in favor of Defendants, Montana Plaintiffs will have no adequate legal remedy.

**AA.  Nebraska State Law Claims for Relief**

**(Alleged by Nebraska Plaintiffs Against All Defendants)**

**1.    Breach of Implied Warranty of Merchantability Under Neb. Rev. Stat. U.C.C. §§ 2-314 and 2A-212.**

3819. Nebraska Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3820. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Neb. Rev. Stat. U.C.C. §§ 2-314 and 2A-212.

3821. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Neb. Rev. Stat. U.C.C. § 2-104(1) and "sellers" of motor vehicles under § 2-103(1)(d).

3822. Defendants are and were at all relevant times "lessors" of motor vehicles under Neb. Rev. Stat. U.C.C. § 2A-103(1)(p).

3823. At all relevant times, Nebraska Plaintiffs who purchased Vehicles in Nebraska were and are "buyers" within the meaning of Neb. Rev. Stat. U.C.C. § 2-103(1)(a).

3824. At all relevant times, Nebraska Plaintiffs who leased Vehicles in Nebraska

were and are "lessees" within the meaning of Neb. Rev. Stat. U.C.C. § 2A-103(1)(n).

3825. The Vehicles are and were at all relevant times "goods" within the meaning of Neb. Rev. Stat. U.C.C. §§ 2-105(1) and 2A-103(1)(h).

3826. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Nebraska Plaintiffs with an implied warranty that the purchased and leased Vehicles and any parts thereof were in merchantable condition and fit for the ordinary purposes for which they were sold or leased. This implied warranty included, among other things, that the Vehicles (a) were manufactured, supplied, distributed, and sold by Defendants, (b) were safe and reliable for transportation, (c) complied with all federal, state, and industry motor vehicle regulations and safety standards, including FMVSS No. 114, and (d) were not at an abnormally high risk of theft.

3827. The Vehicles did not comply with the implied warranty of merchantability because the Vehicles were defective and not in merchantable condition at the time of sale and/or lease, were not fit for their ordinary purpose of providing safe and reliable transportation at the time of sale or lease, and would not pass without objection in the trade as they deviated significantly from the industry standard and can be stolen in mere minutes without a key. Defendants knew at the time of manufacture that the Vehicles contained the Theft-Prone Design and lacked any anti-theft equipment or design elements that effectively prevent theft or comply with FMVSS No. 114. Therefore, the Defendants knew at the time of manufacture that the Vehicles are at an abnormally high risk of theft and are unsafe and an unreliable form of transportation. The Theft-Prone Design renders the Vehicles highly vulnerable to theft and a prime target for thieves as they can be easily stolen in seconds. Defendants knew at the time of manufacture that because their Vehicles did not include any anti-theft measures that satisfied FMVSS No. 114, making their Vehicles more prone to theft and failing to comply with federal regulations, the Vehicles would require larger insurance premiums and would depreciate at a more rapid rate than a comparable vehicle with anti-theft measure that

COMPLAINT

satisfied FMVSS No. 114. Consequently, at the time of sale and/or lease, the Vehicles were not fit for their ordinary purpose of providing safe and reliable transportation.

3828. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable. Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Nebraska Plaintiffs, of the safety defect. Any time limitations regarding the warranty period were also unconscionable and inadequate to protect Nebraska Plaintiffs. Nebraska Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants. A gross disadvantage in bargaining power existed between Nebraska Plaintiffs and Defendants, which unreasonably favored Defendants. Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left Nebraska Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

3829. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that Nebraska Plaintiffs may seek alternative remedies. Nebraska Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

3830. Nebraska Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure. Nebraska Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Nebraska Plaintiffs' breach of warranty claims. Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Nebraska Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance

with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Nebraska Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches. To date, Defendants failed to remedy their breaches.

3831. Alternatively, Nebraska Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches. Nebraska Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

3832. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Nebraska Plaintiffs' Vehicles were and are defective, the Theft-Prone Design in the Vehicles has not been remedied, and Nebraska Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that Nebraska Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

**2. Breach of Express Warranty Under Neb. Rev. Stat. U.C.C. § 2-313.**

3833. Nebraska Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

3834. During the relevant time periods, Defendants manufactured the Vehicles and Nebraska Plaintiffs purchased and/or leased the Vehicles from Defendants.

COMPLAINT

3835. By affixing a VIN plate to each Vehicle at the time of manufacture, Defendants expressly warranted each Vehicles' conformance to "all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture shown." These statements are an affirmation of fact or promise made to Nebraska Plaintiffs as to the Vehicles' condition, quality, safety, and reliability. These statements became the basis of the bargain between Nebraska Plaintiffs and Defendants, as Nebraska Plaintiffs relied on these statements when making their decisions to purchase and/or lease the Vehicles. As such, the statements are an express warranty under Nebraska law pursuant to Neb. Rev. Stat. U.C.C. § 2-313

3836. After Nebraska Plaintiffs purchased or leased the Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

3837. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable. Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Nebraska Plaintiffs, of the safety defect. Any time limitations regarding the warranty period were also unconscionable and inadequate to protect Nebraska Plaintiffs. Nebraska Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants. A gross disadvantage in bargaining power existed between Nebraska Plaintiffs and Defendants, which unreasonably favored Defendants. Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left Nebraska Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

3838. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that Nebraska Plaintiffs may seek alternative remedies. Nebraska Plaintiffs were denied the benefit of their bargains, including Vehicles with

sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

3839. Nebraska Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure. Nebraska Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Nebraska Plaintiffs' breach of warranty claims. Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Nebraska Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Nebraska Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches. To date, Defendants failed to remedy their breaches.

3840. Alternatively, Nebraska Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches. Nebraska Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

3841. The Vehicles did not perform as promised in accordance with Defendants' express warranty; instead, the Vehicles did not meet all applicable motor vehicle safety

- 844 -

COMPLAINT

and theft prevention standards in effect on the date of manufacture.  The Vehicles are capable of being stolen in a matter of seconds without a key and do not comply with the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles do not, in fact, conform to the applicable anti-theft standards.

3842. As a direct and proximate result of Defendants' breaches, Nebraska Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that Nebraska Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

**3.     Violation of the Nebraska Consumer Protection Act (Neb. Rev. Stat. § 59-1601, et seq.).**

3843. Nebraska Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3844. The Vehicles are "assets" within the meaning of Neb. Rev. Stat. § 59-1601(1).

3845. Defendants and Nebraska Plaintiffs are "persons" within the meaning of Neb. Rev. Stat. § 59-1601(1).

3846. Defendants were and are engaged in "trade" or "commerce" within the meaning of Neb. Rev. Stat. § 59-1501(2).

3847. The Nebraska Consumer Protection Act ("Nebraska CPA") declares that "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful."  Neb Rev. Stat. § 59-1602.

3848. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Nebraska CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Theft-Prone Design, as detailed above.

3849. Defendants had an ongoing duty to Nebraska Plaintiffs to refrain from

unfair or deceptive practices under the Nebraska CPA in the course of their business. Specifically, Defendants owed Plaintiffs a duty to disclose all the material facts concerning the Theft-Prone Design of the Vehicles.

3850. Defendants had exclusive access to and far superior knowledge about facts regarding the Theft-Prone Design and Defendants knew these facts were not known to or reasonably discoverable by Nebraska Plaintiffs.

3851. Given the Theft-Prone Design's hidden and technical nature, Nebraska Plaintiffs lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft-Prone Design on their own.

3852. Defendants knew that the Theft-Prone Design gave rise to safety concerns for the consumers who use the Vehicles, and that the Theft-Prone Design would have been a material fact in the Nebraska Plaintiffs' decisions to buy or lease Vehicles.

3853. Defendants made incomplete representations about the safety and reliability of Vehicles while purposefully withholding material facts about a known safety defect.  In advertising and materials provided with the Vehicles, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Theft-Prone Design.  Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

3854. As detailed above, the information concerning the Theft-Prone Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

3855. By misrepresenting the Vehicles as safe, reliable, and free from defects and by failing to disclose and actively concealing the dangers and risk posed by the Theft-Prone Design, Defendants engaged in unfair methods of competition and unfair or deceptive acts or practices prohibited by Neb. Rev. Stat. § 59-1602.

3856. Defendants intended for Nebraska Plaintiffs to rely on them to provide adequately designed Vehicles and to honestly and accurately reveal the safety hazards

described above.

3857. Defendants' unfair or deceptive acts or practices were designed to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Theft-Prone Design. Those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Nebraska Plaintiffs, about the true safety and reliability of the Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

3858. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Theft-Prone Design and true characteristics of the Vehicles were material to the decisions of Nebraska Plaintiffs to purchase or lease the Vehicles, as Defendants intended. Plaintiffs were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase or lease the Vehicles.

3859. Nebraska Plaintiffs' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, and/or otherwise learning that the Vehicles contained the Theft-Prone Design, as alleged above. Nebraska Plaintiffs did not, and could not, unravel Defendants' deception on their own.

3860. Had they known the truth about the Theft-Prone Design, Nebraska Plaintiffs would not have purchased or leased the Vehicles or would have paid significantly less for them.

3861. Nebraska Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

3862. Defendants' violations present a continuing risk to Plaintiffs and the general public because the Vehicles remain unsafe due to the Theft-Prone Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

COMPLAINT

3863. Nebraska Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action. As such, Defendants are and have been well aware of the Theft-Prone Design and Nebraska Plaintiffs' claims. Additionally, Defendants had ample notice provided by the numerous complaints filed against them, internet videos, and news reports. Furthermore, on September 17, 2025, Nebraska Plaintiffs sent Defendants written notice letters of Defendants' violations, Plaintiffs' claims, and a proposed cure to the violations. To date, Defendants failed to remedy their violations. Because Defendants failed to remedy their unlawful conduct, Nebraska Plaintiffs seek all damages and relief to which Nebraska Plaintiffs are entitled.

3864. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile. As alleged above, Defendants have long known that the Vehicles contained the Theft-Prone Design yet did nothing to remedy the Theft-Prone Design.

3865. Pursuant to Neb. Rev. Stat. § 59-1609, the Nebraska Plaintiffs seek an order (1) enjoining Defendants' unfair and/or deceptive acts, methods, or practices alleged herein, and (2) awarding damages, punitive damages, attorney's fees, costs, and/or any other just and proper relief available under the Nebraska CPA.

### 4. Fraud by Omission and Concealment.

3866. Nebraska Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

3867. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards. In reality, however, the Vehicles do not comply with such standards.

3868. Defendants were aware of the Theft-Prone Design when they manufactured, marketed, and sold the Vehicles to Nebraska Plaintiffs. Defendants further knew that the Theft-Prone Design gave rise to serious safety risks for the consumers that would use the Vehicles and naturally give rise to higher insurance

premiums and accelerated depreciation.  At the same time, Defendants were aware of the Federal Motor Vehicle Safety Standards and of the effectiveness of engine immobilizer technology in reducing safety hazards.  Defendants were also aware that noncompliance with federal and industry standards lowered the value of the Vehicles and would render the Vehicles difficult to insure.

3869. Having been aware of the Theft-Prone Design within the Vehicles and having known that Nebraska Plaintiffs could not have reasonably been expected to know of the Theft-Prone Design, Defendants had a duty to disclose the Theft-Prone Design to Nebraska Plaintiffs in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Theft-Prone Design because:

3870. Defendants knowingly made affirmatively false or incomplete statements of material facts as to the Vehicles' safety, reliability, quality, value, and compliance with applicable motor vehicle safety and theft prevention standards, while they intentionally withheld, concealed, omitted, suppressed, and failed to disclose material facts about the Theft-Prone Design, lack of effective anti-theft measures, significant safety risks, and the Vehicles' true value. Defendants volunteered incomplete information about the Vehicles they offered for sale and/or lease to consumers, including false statements as to the Vehicles' safety and compliance with applicable safety and anti-theft standards, while at the same time withholding the existence of the Theft-Prone Design.

3871. Defendants intentionally concealed, omitted, and failed to disclose the Theft-Prone Design and noncompliance with applicable safety and anti-theft standards to Nebraska Plaintiffs in connection with the sale and/or lease of the Vehicles. Defendants did not inform consumers, including Nebraska Plaintiffs, that the Vehicles Theft-Prone Design left the Vehicles without any effective anti-theft protection which rendered the Vehicles a significant safety risk and non-compliant with federal motor vehicle safety standards.  Defendants further knew and failed to disclose that the Theft-Prone Design and lack of standard anti-theft measures left the Vehicles at substantially

lower value than the price for which they were advertised, marketed, sold, and/or leased.

3872. Alternatively, Defendants made false misrepresentations about the Theft-Prone Design with such utter disregard and recklessness that their knowledge regarding the Theft-Prone Design and its unsafe and unreliable nature may be inferred.

3873. Defendants had exclusive access to and far superior knowledge regarding the facts of the Theft-Prone Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs.

3874. Given the Theft-Prone Design's hidden and technical nature, Plaintiffs lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft-Prone Design on their own.

3875. Given the Theft-Prone Design's hidden and technical nature, Plaintiffs lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft-Prone Design on their own.

3876. In breach of their duties, Defendants failed to disclose the Theft-Prone Design to Plaintiffs in connection with the sale or lease of the Vehicles.

3877. The Vehicles' Theft-Prone Design and noncompliance with applicable anti-theft standards were material facts about the safety, reliability, and value of the Vehicles. A reasonable person would find the Vehicles' lack of industry-standard anti-theft measures and noncompliance with applicable safety standards important in their decision to purchase, lease, and maintain the Vehicles because it would impact safety, availability, the Vehicles' value, and the cost to insure the Vehicles.

3878. Defendants intended for the Nebraska Plaintiffs to rely on their omissions and concealment—which Nebraska Plaintiffs did by purchasing and leasing the Vehicles at the prices they paid believing that their vehicles would not have a Theft-Prone Design that would affect the quality, reliability, and safety of the Vehicles.

3879. Nebraska Plaintiffs' reliance was reasonable and justifiable, as they had no way of learning the facts that Defendants had concealed or failed to disclose. Nebraska Plaintiffs did not, and could not, unravel Defendants' deception on their own.

COMPLAINT

3880. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Nebraska Plaintiffs.

3881. If Defendants had fully and adequately disclosed the Theft-Prone Design to consumers, Nebraska Plaintiffs would have seen such a disclosure.

3882. Through their omissions and concealment with respect to the Theft-Prone Design within the Vehicles, Defendants intended to induce, and did in fact induce, Nebraska Plaintiffs to either purchase a Vehicle that they otherwise would not have purchased or pay more for a Vehicle than they otherwise would have paid.

3883. Had Nebraska Plaintiffs known of the Theft-Prone Design within the Vehicles, they would not have purchased the Vehicles or would have paid less for them.

3884. As a direct and proximate result of Defendants' omissions, Nebraska Plaintiffs overpaid for the Vehicles because Nebraska Plaintiffs would either have paid less for the Vehicles or would not have purchased the Vehicles at all if the Theft-Prone Design had been disclosed to them.

3885. As a direct and proximate result of Defendants' omissions, Nebraska Plaintiffs purchased Vehicles highly susceptible to theft and were forced to pay higher insurance premiums to account for the susceptibility that they did not knowingly accept, purchase, or lease.

3886. As a direct and proximate result of Defendants' omissions, the Nebraska Plaintiffs paid higher insurance premiums and are now left with Vehicles with significantly diminished values.

3887. Accordingly, Defendants are liable to Nebraska Plaintiffs for their damages, including but not limited to the difference in value, increased insurance premiums that Nebraska Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an

- 851 -
COMPLAINT

amount to be proven at trial.

3888. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, in reckless disregard of the Nebraska Plaintiffs' rights and well-being, and to enrich themselves.  Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

3889. Nebraska Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 5.      Negligent Misrepresentation.

3890. Nebraska Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

3891. Defendants, in the course of their business selling and promoting motor vehicles, supplied false information, including that the Vehicles were safe and reliable, to guide motor vehicle buyers, including Nebraska Plaintiffs, in their choice of transaction.

3892. Defendants made misrepresentations of material facts concerning the safety and reliability of the Vehicles that they knew or should have known were false. Specifically, Defendants misrepresented that the Vehicles had effective anti-theft equipment or design elements; misrepresented that the Vehicles were safe and reliable forms of transportation; misrepresented that the Vehicles complied with all federal and industry safety and theft prevention standards; and misrepresented the true value of the Vehicles.  Defendants supplied this information in the course of their business to guide Nebraska Plaintiffs in their Vehicle selection and induce Nebraska Plaintiffs to purchase one of Defendants' Vehicles.

3893. Nebraska Plaintiffs justifiably relied upon Defendants' representations because, as the entities responsible for designing and manufacturing the Vehicles, Defendants held themselves out to be knowledgeable about the Vehicles' components and honest in their promotion of the Vehicles.  Nebraska Plaintiffs' reliance was further

reasonable given the hidden and technical nature of the Theft-Prone Design and practical inability of Nebraska Plaintiffs to discover the Theft-Prone Design on their own.  Because Defendants held the Vehicles out to be in line with industry standards, the representation was not unreasonable on its face and Nebraska Plaintiffs had no apparent reason to doubt the veracity of Defendants' representations.

3894. Defendants had a duty to disclose all relevant information regarding the Vehicles' safety, reliability, quality, and characteristics that would affect the Nebraska Plaintiffs' choice of purchase as consumers.

3895. Defendants failed to exercise reasonable care or competence in communicating the standards of safety, reliability, quality, and characteristics of the Vehicles to the consumers, including Nebraska Plaintiffs, when they failed to disclose the lack of anti-theft prevention technology in the Vehicles.  Rather, Defendants published materials and marketed the Vehicles for years as safe, reliable, and of a quality consistent with the industry standard.

3896. Nebraska Plaintiffs would not have purchased, or would have purchased for a lower price, the Vehicles which Defendants negligently misrepresented as safe, of standard quality, and containing standard trade characteristics, such as anti-theft prevention technology.  Additionally, as a direct and proximate result, Nebraska Plaintiffs have had to pay higher insurance premiums to account for the Vehicles' high susceptibility to theft and are now left with Vehicles that have a lower value than they would have had without the defect.

3897. As a direct and proximate result of Nebraska Plaintiffs' reasonable reliance on Defendants' negligent misrepresentations, Nebraska Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that Nebraska Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

3898. Nebraska Plaintiffs plead this claim separately, as well as in the alternative

COMPLAINT

to their claims for damages.

### 6. Negligence.

3899. Nebraska Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

3900. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

3901. Defendants owed a duty of care to Nebraska Plaintiffs. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves, higher insurance premiums, and accelerated depreciation.

3902. Defendants failed to exercise reasonable care in connection with their manufacture, distribution, sale, and/or leasing of the Vehicles.

3903. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant with all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Nebraska Plaintiffs.

3904. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS No. 114.

3905. As a direct and proximate result of Defendants' failure to exercise reasonable care, Nebraska Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that Nebraska Plaintiffs have paid and will

COMPLAINT

continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

3906. Nebraska Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 7.    Unjust Enrichment.

3907. When they purchased and leased the Vehicles, Nebraska Plaintiffs conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

3908. Nebraska Plaintiffs would not have purchased or leased their Vehicles, or would have paid less for them, had they known of the Theft-Prone Design at the time of purchase or lease.  Therefore, Defendants profited from the sale and lease of the Vehicles to the detriment and expense of Nebraska Plaintiffs.

3909. Defendants appreciated these economic benefits.  These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers.  They knew of these benefits because they were aware of the Theft-Prone Design, yet they failed to disclose this knowledge and misled the Nebraska Plaintiffs regarding the nature and quality of the Vehicles while profiting from this deception.

3910. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

3911. Nebraska Plaintiffs are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Nebraska Plaintiffs to the position they occupied prior to dealing with these Defendants, with such amounts to be determined at trial.

3912. Nebraska Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Nebraska Plaintiffs' claims for damages are dismissed or judgment is entered in favor of Defendants, Nebraska Plaintiffs will have no adequate legal remedy.

COMPLAINT

**BB.    Nevada State Law Claims for Relief**

**(Alleged by Nevada Plaintiffs Against All Defendants)**

**1.    Breach of Implied Warranty of Merchantability Under Nev. Rev. Stat. §§ 104.2314 and 104A.2212.**

3913. Nevada Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

3914. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Nev. Rev. Stat. §§ 104.2314 and 104A.2212.

3915. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Nev. Rev. Stat. §§ 104.2104(1) and 104A.2103(3), and "sellers" of motor vehicles under § 104.2103(1)(c).

3916. Defendants are and were at all relevant times "lessors" of motor vehicles under Nev. Rev. Stat. § 104A.2103(1)(p).

3917. Nevada Plaintiffs who purchased Vehicles in Nevada are "buyers" within the meaning of Nev. Rev. Stat. § 104.2103(1)(a).

3918. Nevada Plaintiffs who leased Vehicles in Nevada are "lessees" within the meaning of Nev. Rev. Stat. § 104.2103(1)(a).

3919. The Vehicles are and were at all relevant times "goods" within the meaning of Nev. Rev. Stat. §§ 104.2105(1) and 104A.2103(1)(h).

3920. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased.  Defendants provided Plaintiffs with an implied warranty that the purchased and leased Vehicles were in merchantable condition and fit for the ordinary purposes for which they were sold or leased.  This implied warranty included, among other things, that the Vehicles (a) were manufactured, supplied, distributed, and sold by Defendants, (b) were safe and reliable for transportation, (c) complied with all federal, state, and industry motor vehicle regulations and safety standards, including FMVSS No. 114, and (d) were not at an abnormally high risk of

- 856 -
COMPLAINT

theft.

3921. The Vehicles did not comply with the implied warranty of merchantability because the Vehicles were defective and not in merchantable condition at the time of sale and/or lease, were not fit for their ordinary purpose of providing safe and reliable transportation at the time of sale or lease, and would not pass without objection in the trade as they deviated significantly from the industry standard and can be stolen in mere minutes without a key. Defendants knew at the time of manufacture that the Vehicles contained the Theft-Prone Design and lacked any anti-theft equipment or design elements that effectively prevent theft or comply with FMVSS No. 114. Therefore, the Defendants knew at the time of manufacture that the Vehicles are at an abnormally high risk of theft and are unsafe and an unreliable form of transportation. The Theft-Prone Design renders the Vehicles highly vulnerable to theft and a prime target for thieves as they can be easily stolen in seconds. Defendants knew at the time of manufacture that because their Vehicles did not include any anti-theft measures that satisfied FMVSS No. 114, making their Vehicles more prone to theft and failing to comply with federal regulations, the Vehicles would require larger insurance premiums and would depreciate at a more rapid rate than a comparable vehicle with anti-theft measure that satisfied FMVSS No. 114. Consequently, at the time of sale and/or lease, the Vehicles were not fit for their ordinary purpose of providing safe and reliable transportation.

3922. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable. Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Nevada Plaintiffs, of the safety defect. Any time limitations regarding the warranty period were also unconscionable and inadequate to protect Nevada Plaintiffs. Nevada Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants. A gross disadvantage in bargaining power existed between Nevada Plaintiffs and Defendants, which unreasonably favored Defendants. Moreover, Defendants'

knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left Nevada Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

3923. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that Nevada Plaintiffs may seek alternative remedies. Nevada Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

3924. Nevada Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure. Nevada Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Nevada Plaintiffs' breach of warranty claims. Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Nevada Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Nevada Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches. To date, Defendants failed to remedy their breaches.

3925. Alternatively, Nevada Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured,

COMPLAINT

distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches. Nevada Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

3926. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Nevada Plaintiffs' Vehicles were and are defective, the Theft-Prone Design in the Vehicles has not been remedied, and Nevada Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that Nevada Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

**2.      Breach of Express Warranty Under Nev. Rev. Stat. § 104.2313.**

3927. Nevada Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

3928. During the relevant time periods, Defendants manufactured the Vehicles and Nevada Plaintiffs purchased and/or leased the Vehicles from Defendants.

3929. By affixing a VIN plate to each Vehicle at the time of manufacture, Defendants expressly warranted each Vehicles' conformance to "all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture shown." These statements are an affirmation of fact or promise made to Nevada Plaintiffs as to the Vehicles' condition, quality, safety, and reliability. These statements became the basis of the bargain between Nevada Plaintiffs and Defendants, as Nevada Plaintiffs relied on these statements when making their decisions to purchase and/or lease the Vehicles. As such, the statements are an express warranty under Nev. Rev. Stat. § 104.2313.

3930. After Nevada Plaintiffs purchased or leased the Vehicles, they used the Vehicles in accordance with their normal operation and did not misuse or mishandle the Vehicles in any way material to the allegations set forth herein.

3931. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable. Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Nevada Plaintiffs, of the safety defect. Any time limitations regarding the warranty period were also unconscionable and inadequate to protect Nevada Plaintiffs. Nevada Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants. A gross disadvantage in bargaining power existed between Plaintiffs and Defendants, which unreasonably favored Defendants. Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left Nevada Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

3932. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that Nevada Plaintiffs may seek alternative remedies. Nevada Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

3933. Nevada Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure. Nevada Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Nevada Plaintiffs' breach of warranty claims. Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Nevada Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news

COMPLAINT

reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Nevada Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches. To date, Defendants failed to remedy their breaches.

3934. Alternatively, Nevada Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches. Nevada Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

3935. The Vehicles did not perform as promised in accordance with Defendants' express warranty; instead, the Vehicles did not meet all applicable motor vehicle safety and theft prevention standards in effect on the date of manufacture. The Vehicles are capable of being stolen in a matter of seconds without a key and do not comply with the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles do not, in fact, conform to the applicable anti-theft standards.

3936. As a direct and proximate result of Defendants' breaches, Nevada Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that Nevada Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

**3. Violation of the Deceptive Trade Practices Act Under Nev. Rev. Stat. § 598.0903, et seq.**

3937. Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

3938. The Nevada Deceptive Trade Practices Act ("Nevada DTPA"), Nev. Rev. Stat. § 598.0903, et seq. prohibits the use of deceptive trade practices in the course of business and occupation.

3939. In the course of their business, Defendants, through their agents, representatives, and subsidiaries, engaged in unfair and unconscionable deceptive acts or practices by knowingly and intentionally concealing, misrepresenting, omitting, and withholding material facts about the Vehicles' quality, reliability, value, and safety. These material facts include that (a) the Vehicles had a hidden Theft-Prone Design which left the Vehicles without standard anti-theft measures and was not reasonably discoverable to consumers, (b) the Vehicles did not comply with federal or industry motor vehicle safety and theft prevention standards, including FMVSS No. 114, (c) the Vehicles were at an abnormally high risk of theft, and (d) the Vehicles have a value which Defendants knowingly misrepresented. Defendants represented that the Vehicles were of a particular standard and quality but sold them at another standard and quality. These unfair and unconscionable deceptive acts or practices violated the Nevada DTPA.

3940. Under the Nevada DTPA, Defendants had an ongoing duty to Nevada Plaintiffs as consumers to refrain from unfair or deceptive acts, practices, and representations in the course of their business. Specifically, Defendants owed the Nevada Plaintiffs a duty to disclose all the material facts concerning the Theft-Prone Design in the Vehicles and to refrain from representing their Vehicles were of a particular standard or quality when they were of another.

3941. Defendants further knew that, because of the Theft-Prone Design, the Vehicles posed a significant safety risk to consumers that used the Vehicles. Defendants knew that the Theft-Prone Design and lack of standard anti-theft measures left the Vehicles at substantially lower value than the price for which they were advertised, marketed, sold, and/or leased. Defendants knew these material facts would have been material to consumers', including Nevada Plaintiffs', decision to purchase and/or lease the Vehicles.

- 862 -
COMPLAINT

3942. Defendants nevertheless made intentionally misleading and incomplete affirmative statements and representations about the Vehicles' safety, reliability, value, and conformance with all applicable safety and theft prevention standards, while also concealing, omitting, and withholding material facts from consumers, including Nevada Plaintiffs, at the time the Vehicles were advertised, sold, and/or leased. Defendants marketed and sold the Vehicles as safe despite their knowledge that the Theft-Prone Design posed a significant safety risk to consumers and the general public. Through advertisements, marketing materials, and their websites, Defendants made incomplete representations and/or concealed the Vehicles' defective condition. Defendants further misrepresented that the Vehicles were compliant with all applicable motor vehicle safety and theft prevention standards, when in reality they were not. Defendants further marketed and sold/leased the Vehicles at an inflated and misleading price, given the Vehicles' Theft-Prone Design and lack of standard anti-theft equipment and design elements.

3943. Through their misrepresentations, concealment, omissions, and withholding of these material facts, Defendants engaged in unfair and deceptive acts or practices in the course of their business, as prohibited by Nev. Rev. Stat. § 598.0903, et seq.

3944. Defendants knew that the Theft-Prone Design gave rise to safety concerns for the consumers who use the Vehicles, and that the Theft-Prone Design would have been a material fact in the Plaintiffs' decisions to buy or lease Vehicles.

3945. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Theft-Prone Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

COMPLAINT

3946. As detailed above, the information concerning the Theft-Prone Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

3947. By misrepresenting the Vehicles as safe, reliable, and free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Theft-Prone Design, Defendants engaged in the following unfair or deceptive business practices in violation of the Nevada DTPA: (a) representing that the Vehicles have characteristics, uses, benefits, and qualities which they do not have; (b) representing that the Vehicles are of a particular standard, quality, and grade when they are not; (c) advertising the Vehicles with the intent not to sell or lease them as advertised; (d) failing to disclose the Theft-Prone Design in connection with the sale of the Vehicles; and (e) making an assertion of a scientific fact in an advertisement which would cause a reasonable person to believe that the assertion is true. Nev. Rev. Stat. §§ 598.0915(5), (7), (9), (15), 598.0923(2), and 598.0925.

3948. Defendants intended for Nevada Plaintiffs to rely on them to provide adequately designed Vehicles and to honestly and accurately reveal the safety hazards described above.

3949. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection and that the Vehicles were not affected by the Theft-Prone Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Nevada Plaintiffs, about the true safety and reliability of Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

3950. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Theft-Prone Design and true characteristics of the Vehicles were material to the decisions of Nevada Plaintiffs to purchase and lease the Vehicles, as Defendants intended. Nevada Plaintiffs were exposed to those misrepresentations,

concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase and lease the Vehicles.

3951. Nevada Plaintiffs' reliance was reasonable, as they had no way of discerning if Defendants' representations were false and misleading or otherwise learning that the Vehicles contained the Theft-Prone Design, as alleged above. Nevada Plaintiffs did not, and could not, unravel Defendants' deception on their own.

3952. Had they known the truth about the Theft-Prone Design, Nevada Plaintiffs would not have purchased or leased the Vehicles, or Nevada Plaintiffs would have paid significantly less for the Vehicles.

3953. Nevada Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

3954. Defendants' violations present a continuing risk to Nevada Plaintiffs, as well as to the general public, because the Vehicles remain unsafe due to the Theft-Prone Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

3955. Nevada Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action. As such, Defendants are and have been well aware of the Theft-Prone Design and Nevada Plaintiffs' claims. Additionally, Defendants had ample notice provided by the numerous complaints filed against them, internet videos, and news reports. Furthermore, on September 17, 2025, Nevada Plaintiffs sent Defendants written notice letters of Defendants' violations, Plaintiffs' claims, and a proposed cure to the violations. To date, Defendants failed to remedy their violations. Because Defendants failed to remedy their unlawful conduct, Nevada Plaintiffs seek all damages and relief to which Nevada Plaintiffs are entitled.

3956. Alternatively, providing notice to Defendants and an opportunity to cure

COMPLAINT

the breach prior to filing suit would have been futile. As alleged above, Defendants have long known that the Vehicles contained the Theft-Prone Design yet did nothing to remedy the Theft-Prone Design.

3957. Pursuant to Nev. Rev. Stat. §§ 41.600, the Nevada Plaintiffs seek an order (1) enjoining Defendants' unfair and/or deceptive acts, methods, or practices alleged herein, and (2) awarding damages, punitive damages, attorney's fees, costs, and/or any other just and proper relief available under the Nevada DPA.

### 4. Fraud by Omission and Concealment.

3958. Nevada Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

3959. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards. In reality, however, the Vehicles do not comply with such standards.

3960. Defendants were aware of the Theft-Prone Design when they manufactured, marketed, and sold the Vehicles to Nevada Plaintiffs. Defendants further knew that the Theft-Prone Design gave rise to serious safety risks for the consumers that would use the Vehicles and naturally give rise to higher insurance premiums and accelerated depreciation. At the same time, Defendants were aware of the Federal Motor Vehicle Safety Standards and of the effectiveness of engine immobilizer technology in reducing safety hazards. Defendants were also aware that noncompliance with federal and industry standards lowered the value of the Vehicles and would render the Vehicles difficult to insure.

3961. Defendants knew that the Theft-Prone Design and the safety hazards it posed would have been a material fact in the Nevada Plaintiffs' decisions to buy or lease the Vehicles.

3962. Having been aware of the Theft-Prone Design within the Vehicles and having known that Nevada Plaintiffs could not have reasonably been expected to know of the Theft-Prone Design, Defendants had a duty to disclose the Theft-Prone Design

to Nevada Plaintiffs in connection with the sale of the Vehicles.  Defendants further had a duty to disclose the Theft-Prone Design

3963. Defendants intentionally concealed, omitted, and failed to disclose the Theft-Prone Design and noncompliance with applicable safety and anti-theft standards to Nevada Plaintiffs in connection with the sale and/or lease of the Vehicles. Defendants did not inform consumers, including Nevada Plaintiffs, that the Vehicles Theft-Prone Design left the Vehicles without any effective anti-theft protection which rendered the Vehicles a significant safety risk and non-compliant with federal motor vehicle safety standards.  Defendants further knew and failed to disclose that the Theft-Prone Design and lack of standard anti-theft measures left the Vehicles at substantially lower value than the price for which they were advertised, marketed, sold, and/or leased.

3964. Alternatively, Defendants made false misrepresentations about the Theft-Prone Design with such utter disregard and recklessness that their knowledge regarding the Theft-Prone Design and its unsafe and unreliable nature may be inferred.

3965. Defendants had exclusive access to and far superior knowledge about facts regarding the Theft-Prone Design and Defendants knew these facts were not known to or reasonably discoverable by Nevada Plaintiffs.

3966. Given the Theft-Prone Design's hidden and technical nature, Nevada Plaintiffs lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft-Prone Design on their own.

3967. Defendants knew that the Theft-Prone Design gave rise to safety concerns for the consumers who use the Vehicles, and that the Theft-Prone Design would have been a material fact in the Nevada Plaintiffs' decisions to buy or lease the Vehicles.

3968. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect.  In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Theft-Prone Design.  Because they volunteered to

provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

3969. In breach of their duties, Defendants failed to disclose the Theft-Prone Design to Nevada Plaintiffs in connection with the sale or lease of the Vehicles.

3970. The Vehicles' Theft-Prone Design and noncompliance with applicable anti-theft standards were material facts about the safety, reliability, and value of the Vehicles. A reasonable person would find the Vehicles' lack of industry-standard anti-theft measures and noncompliance with applicable safety standards important in their decision to purchase, lease, and maintain the Vehicles because it would impact safety, availability, the Vehicles' value, and the cost to insure the Vehicles.

3971. Defendants intended for the Nevada Plaintiffs to rely on their omissions and concealment—which Nevada Plaintiffs did by purchasing and leasing the Vehicles at the prices they paid believing that their vehicles would not have a Theft-Prone Design that would affect the quality, reliability, and safety of the Vehicles.

3972. Nevada Plaintiffs' reliance was reasonable, as they had no way of learning the facts that Defendants had concealed or failed to disclose. Nevada Plaintiffs did not, and could not, unravel Defendants' deception on their own.

3973. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Nevada Plaintiffs.

3974. If Defendants had fully and adequately disclosed the Theft-Prone Design to consumers, Nevada Plaintiffs would have seen such a disclosure.

3975. Through their omissions and concealment with respect to the Theft-Prone Design within the Vehicles, Defendants intended to induce, and did in fact induce, Nevada Plaintiffs to either purchase a Vehicle that they otherwise would not have purchased or pay more for a Vehicle than they otherwise would have paid.

COMPLAINT

3976. Had Nevada Plaintiffs known of the Theft-Prone Design within the Vehicles, they would not have purchased the Vehicles or would have paid less for them.

3977. As a direct and proximate result of Defendants' omissions, Nevada Plaintiffs overpaid for the Vehicles because Nevada Plaintiffs would either have paid less for the Vehicles or would not have purchased the Vehicles at all if the Theft-Prone Design had been disclosed to them.

3978. As a direct and proximate result of Defendants' omissions, Nevada Plaintiffs purchased Vehicles highly susceptible to theft and were forced to pay higher insurance premiums to account for the susceptibility that they did not knowingly accept, purchase, or lease.

3979. As a direct and proximate result of Defendants' omissions, the Nevada Plaintiffs paid higher insurance premiums and are now left with Vehicles with significantly diminished values.

3980. Accordingly, Defendants are liable to Nevada Plaintiffs for their damages, including but not limited to the difference in value, increased insurance premiums that Nevada Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

3981. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, in reckless disregard of the Nevada Plaintiffs' rights and well-being, and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

3982. Nevada Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 5.      Negligent Misrepresentation.

3983. Nevada Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

COMPLAINT

3984. Defendants, in the course of their business selling and promoting motor vehicles, supplied false information, including that the Vehicles were safe and reliable, to guide motor vehicle buyers, including Nevada Plaintiffs, in their choice of transaction.

3985. Defendants made misrepresentations of material facts concerning the safety and reliability of the Vehicles that they knew or should have known were false. Specifically, Defendants misrepresented that the Vehicles had effective anti-theft equipment or design elements; misrepresented that the Vehicles were safe and reliable forms of transportation; misrepresented that the Vehicles complied with all federal and industry safety and theft prevention standards; and misrepresented the true value of the Vehicles. Defendants supplied this information in the course of their business to guide Nevada Plaintiffs in their Vehicle selection and induce Nevada Plaintiffs to purchase one of Defendants' Vehicles.

3986. Nevada Plaintiffs justifiably relied upon Defendants' representations because, as the entities responsible for designing and manufacturing the Vehicles, Defendants held themselves out to be knowledgeable about the Vehicles' components and honest in their promotion of the Vehicles. Nevada Plaintiffs' reliance was further reasonable given the hidden and technical nature of the Theft-Prone Design and practical inability of Plaintiffs to discover the Theft-Prone Design on their own. Because Defendants held the Vehicles out to be in line with industry standards, the representation was not unreasonable on its face and Nevada Plaintiffs had no apparent reason to doubt the veracity of Defendants' representations.

3987. Defendants had a duty to disclose all relevant information regarding the Vehicles' safety, reliability, quality, and characteristics that would affect the Nevada Plaintiffs' choice of purchase as consumers.

3988. Defendants failed to exercise reasonable care or competence in communicating the standards of safety, reliability, quality, and characteristics of the Vehicles to the consumers, including Nevada Plaintiffs, when they failed to disclose the

lack of anti-theft prevention technology in the Vehicles.  Rather, Defendants published materials and marketed the Vehicles for years as safe, reliable, and of a quality consistent with the industry standard.

3989. Nevada Plaintiffs would not have purchased, or would have purchased for a lower price, the Vehicles which Defendants negligently misrepresented as safe, of standard quality, and containing standard trade characteristics, such as anti-theft prevention technology.  Additionally, as a direct and proximate result, Nevada Plaintiffs have had to pay higher insurance premiums to account for the Vehicles' high susceptibility to theft and are now left with Vehicles that have a lower value than they would have had without the defect.

3990.  As a direct and proximate result of Nevada Plaintiffs' reasonable reliance on Defendants' negligent misrepresentations, Nevada Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that Nevada Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

3991. Nevada Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 6.   Negligence.

3992. Nevada Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

3993. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

3994. Defendants owed a duty of care to Nevada Plaintiffs.  That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves, higher insurance premiums, and accelerated depreciation.

3995. Defendants failed to exercise reasonable care in connection with their

COMPLAINT

manufacture, distribution, sale, and/or leasing of the Vehicles.

3996. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards.  Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant with all applicable federal standards.  This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Nevada Plaintiffs.

3997. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS No. 114.

3998. As a direct and proximate result of Defendants' failure to exercise reasonable care, Nevada Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that Nevada Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

3999. Nevada Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

**7.    Unjust Enrichment.**

4000. Nevada Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

4001. When they purchased and leased the Vehicles, Nevada Plaintiffs conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

4002. Nevada Plaintiffs would not have purchased or leased their Vehicles, or

would have paid less for them, had they known of the Theft-Prone Design at the time of purchase or lease. Therefore, Defendants profited from the sale and lease of the Vehicles to the detriment and expense of Nevada Plaintiffs.

4003. Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft-Prone Design, yet they failed to disclose this knowledge and misled the Nevada Plaintiffs regarding the nature and quality of the Vehicles while profiting from this deception.

4004. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, in part because they were procured as a result of their wrongful conduct alleged above.

4005. Nevada Plaintiffs are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Nevada Plaintiffs to the position they occupied prior to dealing with these Defendants, with such amounts to be determined at trial.

4006. Nevada Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Nevada Plaintiffs' claims for damages are dismissed or judgment is entered in favor of Defendants, Nevada Plaintiffs will have no adequate legal remedy.

**CC. New Hampshire State Law Claims for Relief**

**(Alleged by New Hampshire Plaintiffs Against All Defendants)**

**1. Breach of Implied Warranty of Merchantability Under N.H. Rev. Stat. §§ 382-A:2-314 and 2A-212.**

4007. New Hampshire Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4008. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to N.H. Rev. Stat. §§ 382-A:2-314 and 382-A:2A-212.

4009. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under N.H. Rev. Stat. § 382-A:2-104(1) and "sellers" of motor vehicles under § 382-A:2- 103(1)(d).

4010. Defendants are and were at all relevant times "lessors" of motor vehicles under N.H. Rev. Stat. § 382-A:2A-103(1)(p).

4011. The Vehicles are and were at all relevant times "goods" within the meaning of N.H. Rev. Stat. §§ 382-A:2-105(1) and 382-A:2A-103(1)(h).

4012. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided New Hampshire Plaintiffs with an implied warranty that the purchased and leased Vehicles were in merchantable condition and fit for the ordinary purposes for which they were sold or leased. This implied warranty included that the Vehicles (a) were manufactured, supplied, distributed, and sold by Defendants, (b) were safe and reliable for transportation, (c) complied with all federal, state, and industry motor vehicle regulations and safety standards, including FMVSS No. 114, and (d) were not at an abnormally high risk of theft.

4013. The Vehicles did not comply with the implied warranty of merchantability because the Vehicles were defective and not in merchantable condition at the time of sale and/or lease, were not fit for their ordinary purpose of providing safe and reliable transportation at the time of sale or lease, and would not pass without objection in the trade as they deviated significantly from the industry standard and can be stolen in mere minutes without a key. Defendants knew at the time of manufacture that the Vehicles contained the Theft-Prone Design and lacked any anti-theft equipment or design elements that effectively prevent theft or comply with FMVSS No. 114. Therefore, the Defendants knew at the time of manufacture that the Vehicles are at an abnormally high risk of theft and are unsafe and an unreliable form of transportation. The Theft-Prone Design renders the Vehicles highly vulnerable to theft and a prime target for thieves as they can be easily stolen in seconds. Defendants knew at the time of manufacture that

COMPLAINT

because their Vehicles did not include any anti-theft measures that satisfied FMVSS No. 114, making their Vehicles more prone to theft and failing to comply with federal regulations, the Vehicles would require larger insurance premiums and would depreciate at a more rapid rate than a comparable vehicle with anti-theft measure that satisfied FMVSS No. 114. Consequently, at the time of sale and/or lease, the Vehicles were not fit for their ordinary purpose of providing safe and reliable transportation.

4014. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable.  Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including New Hampshire Plaintiffs, of the safety defect.  Any time limitations regarding the warranty period were also unconscionable and inadequate to protect New Hampshire Plaintiffs.  New Hampshire Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants.  A gross disadvantage in bargaining power existed between New Hampshire Plaintiffs and Defendants, which unreasonably favored Defendants. Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left New Hampshire Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

4015. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that New Hampshire Plaintiffs may seek alternative remedies. New Hampshire Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

4016. New Hampshire Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure.  New Hampshire Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of New Hampshire Plaintiffs' breach of warranty claims.

COMPLAINT

Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and New Hampshire Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, New Hampshire Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches. To date, Defendants failed to remedy their breaches.

4017. Alternatively, New Hampshire Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches. New Hampshire Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

4018. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, New Hampshire Plaintiffs' Vehicles were and are defective, the Theft-Prone Design in the Vehicles has not been remedied, and New Hampshire Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that New Hampshire Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

COMPLAINT

## 2. Breach of Express Warranty Under N.H. Rev. Stat. § 382-A:2-313.

4019. New Hampshire Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

4020. During the relevant time periods, Defendants manufactured the Vehicles and Plaintiffs purchased and/or leased the Vehicles from Defendants.

4021. By affixing a VIN plate to each Vehicle at the time of manufacture, Defendants expressly warranted each Vehicles' conformance to "all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture shown."  These statements are an affirmation of fact or promise made to Plaintiffs as to the Vehicles' condition, quality, safety, and reliability.  These statements became the basis of the bargain between New Hampshire Plaintiffs and Defendants, as New Hampshire Plaintiffs relied on these statements when making their decisions to purchase and/or lease the Vehicles.  As such, the statements are an express warranty under New Hampshire law pursuant to Rev. Stat. § 382-A:2-313.

4022. After New Hampshire Plaintiffs purchased or leased the Vehicles, they used the Vehicles in accordance with their normal operation and did not misuse or mishandle the Vehicles in any way material to the allegations set forth herein.

4023. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable.  Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including New Hampshire Plaintiffs, of the safety defect.  Any time limitations regarding the warranty period were also unconscionable and inadequate to protect New Hampshire Plaintiffs.  New Hampshire Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants.  A gross disadvantage in bargaining power existed between New Hampshire Plaintiffs and Defendants, which unreasonably favored Defendants.  Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease

and the hidden and technical nature of the Theft-Prone Design left New Hampshire Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

4024. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that New Hampshire Plaintiffs may seek alternative remedies. New Hampshire Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

4025. New Hampshire Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure. New Hampshire Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of New Hampshire Plaintiffs' breach of warranty claims. Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and New Hampshire Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, New Hampshire Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches. To date, Defendants failed to remedy their breaches.

4026. Alternatively, New Hampshire Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly

COMPLAINT

manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design.  Defendants have not cured, remedied, or repaired their breaches.  New Hampshire Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

4027. The Vehicles did not perform as promised in accordance with Defendants' express warranty; instead, the Vehicles did not meet all applicable motor vehicle safety and theft prevention standards in effect on the date of manufacture.  The Vehicles are capable of being stolen in a matter of seconds without a key and do not comply with the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles do not, in fact, conform to the applicable anti-theft standards.

4028. As a direct and proximate result of Defendants' breaches, New Hampshire Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that New Hampshire Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

### 3. Violation of the New Hampshire Consumer Protection Act Under N.H. Rev. Stat. Ann. § 358-a:1, et seq.

4029. New Hampshire Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4030. Defendants and New Hampshire Plaintiffs are "persons" within the meaning of N.H. Rev. Stat.§ 358-A:1.

4031. Defendants engaged in "trade" and "commerce" within the meaning of N.H. Rev. Stat.§ 358-A:1.

4032. The New Hampshire Consumer Protection Act ("New Hampshire CPA") declares it unlawful "for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this state." N.H. Rev. Stat.§ 358-A:2.

COMPLAINT

4033. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the New Hampshire CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Theft-Prone Design, as detailed above.

4034. Defendants had an ongoing duty to New Hampshire Plaintiffs to refrain from unfair or deceptive practices under the New Hampshire CPA in the course of their business.  Specifically, Defendants owed New Hampshire Plaintiffs a duty to disclose all the material facts concerning the Theft-Prone Design of the Vehicles.

4035. Defendants had exclusive access to and far superior knowledge about facts regarding the Theft-Prone Design and Defendants knew these facts were not known to or reasonably discoverable by New Hampshire Plaintiffs.

4036. Given the Theft-Prone Design's hidden and technical nature, New Hampshire Plaintiffs lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft-Prone Design on their own.

4037. Defendants knew that the Theft-Prone Design gave rise to safety concerns for the consumers who use the Vehicles, and that the Theft-Prone Design would have been a material fact in New Hampshire Plaintiffs' decisions to buy or lease Vehicles.

4038. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Theft-Prone Design.  Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to New Hampshire Plaintiffs, Defendants had the duty to disclose the whole truth

4039. By misrepresenting the Vehicles as safe and reliable and by failing to disclose and actively concealing the dangers and risk posed by the Theft-Prone Design, Defendants engaged in unfair methods of competition and unfair or deceptive acts or

COMPLAINT

practices prohibited by N.H. Rev. Stat. 358-A:2 by:

    a. representing that the Vehicles have characteristics, uses, benefits, and qualities which they do not have;

    b. representing that the Vehicles are of a particular standard, quality and grade when they are not;

    c. advertising the Vehicles with the intent not to sell or lease them as advertised;

    d. failing to disclose the Theft-Prone Design in connection with the sale of the Vehicles; and

    e. making an assertion of a scientific fact in an advertisement which would cause a reasonable person to believe that the assertion is true.  N.H. Rev. Stat. § 358-A:2(III), (VII), (IX).

4040. Defendants intended for New Hampshire Plaintiffs to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

4041. Defendants' unfair or deceptive acts or practices were designed to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Theft-Prone Design.  Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including the New Hampshire Plaintiffs, about the true safety and reliability of Vehicles, the quality of Vehicles, and the true value of Vehicles.

4042. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Theft-Prone Design and true characteristics of the Vehicles were material to the decisions of New Hampshire Plaintiffs to purchase and lease those vehicles, as Defendants intended.  New Hampshire Plaintiffs were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe

COMPLAINT

and reliable in deciding to purchase and lease the Vehicles.  Any consumer would view the Vehicles' non-compliance with basic anti-theft and safety standards as a material fact that would influence their decision to purchase a Vehicle.

4043. New Hampshire Plaintiffs' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading and/or otherwise learning that the Vehicles had the Theft-Prone Design, as alleged above.  New Hampshire Plaintiffs did not, and could not, unravel Defendants' deception on their own.

4044. Had they known the truth about the Theft-Prone Design, New Hampshire Plaintiffs would not have purchased or leased the Vehicles or would have paid significantly less for them.

4045. New Hampshire Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

4046. Defendants' violations present a continuing risk to New Hampshire Plaintiffs as well as to the general public, because the Vehicles remain unsafe due to the Theft-Prone Design.  Defendants' unlawful acts and practices complained of herein affect the public interest.

4047. New Hampshire Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action.  As such, Defendants are and have been well aware of the Theft-Prone Design and New Hampshire Plaintiffs' claims.  Additionally, Defendants had ample notice provided by the numerous complaints filed against them, internet videos, and news reports.  Furthermore, on September 17, 2025, New Hampshire Plaintiffs sent Defendants written notice letters of Defendants' violations, Plaintiffs' claims, and a proposed cure to the violations.  To date, Defendants failed to remedy their violations.  Because Defendants failed to remedy their unlawful conduct, New Hampshire Plaintiffs seek all damages and relief to which New Hampshire Plaintiffs are entitled.

COMPLAINT

4048. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile. As alleged above, Defendants have long known that the Vehicles contained the Theft-Prone Design yet did nothing to remedy the Theft-Prone Design.

4049. Pursuant to N.H. Rev. Stat.§ 358-A:10, New Hampshire Plaintiffs seek an order (1) enjoining Defendants' unfair and/or deceptive acts, methods, or practices alleged herein, and (2) awarding damages, punitive damages, attorney's fees, costs, and/or any other just and proper relief available under the New Hampshire CPA.

**4. Fraud by Omission and Concealment.**

4050. New Hampshire Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4051. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards. In reality, however, the Vehicles do not comply with such standards.

4052. Defendants were aware of the Theft-Prone Design when they manufactured, marketed, and sold the Vehicles to New Hampshire Plaintiffs. Defendants further knew that the Theft-Prone Design gave rise to serious safety risks for the consumers that would use the Vehicles and naturally give rise to higher insurance premiums and accelerated depreciation. At the same time, Defendants were aware of the Federal Motor Vehicle Safety Standards and of the effectiveness of engine immobilizer technology in reducing safety hazards. Defendants were also aware that noncompliance with federal and industry standards lowered the value of the Vehicles and would render the Vehicles difficult to insure.

4053. Having been aware of the Theft-Prone Design within the Vehicles and having known that New Hampshire Plaintiffs could not have reasonably been expected to know of the Theft-Prone Design, Defendants had a duty to disclose the Theft-Prone Design to New Hampshire Plaintiffs in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Theft-Prone Design because:

a. Defendants had exclusive access to and far superior knowledge about facts regarding the Theft-Prone Design and Defendants knew these facts were not known to or reasonably discoverable by New Hampshire Plaintiffs;

b. Given the Theft-Prone Design's hidden and technical nature, New Hampshire Plaintiffs lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft-Prone Design on their own;

c. Defendants knew that the Theft-Prone Design gave rise to safety concerns for the consumers who use the Vehicles, and that the Theft-Prone Design would have been a material fact in the New Hampshire Plaintiffs' decisions to buy or lease the Vehicles; and

d. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect.  In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Theft-Prone Design.  Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

4054. In breach of their duties, Defendants failed to disclose the Theft-Prone Design to New Hampshire Plaintiffs in connection with the sale of the Vehicles.

4055. For the reasons set forth above, the Theft-Prone Design within the Vehicles is material to the sale of the Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Vehicles purchased or leased by the New Hampshire Plaintiffs.  Any consumer would view the Vehicles' non-compliance with basic anti-theft and safety standards as a material fact that would influence their decision to purchase a Vehicle.

COMPLAINT

4056. Defendants intended for the New Hampshire Plaintiffs to rely on their omissions and concealment—which they did by purchasing and leasing the Vehicles at the prices they paid believing that their vehicles would not have a Theft-Prone Design that would affect the quality, reliability, and safety of the Vehicles.

4057. New Hampshire Plaintiffs' reliance was reasonable, as they had no way of learning the facts that Defendants had concealed or failed to disclose. New Hampshire Plaintiffs did not, and could not, unravel Defendants' deception on their own.

4058. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of New Hampshire Plaintiffs.

4059. If Defendants had fully and adequately disclosed the Theft-Prone Design to consumers, New Hampshire Plaintiffs would have seen such a disclosure.

4060. As a direct and proximate result of Defendants' omissions, New Hampshire Plaintiffs purchased Vehicles highly susceptible to theft and were forced to pay higher insurance premiums to account for the susceptibility that they did not knowingly accept, purchase, or lease.

4061. As a direct and proximate result of Defendants' omissions, the New Hampshire Plaintiffs paid higher insurance premiums and are now left with Vehicles with significantly diminished values.

4062. Accordingly, Defendants are liable to New Hampshire Plaintiffs for their damages, including but not limited to the difference in value, increased insurance premiums that New Hampshire Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

4063. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, in reckless disregard of the New Hampshire Plaintiffs' rights and well-

COMPLAINT

being, and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

4064. New Hampshire Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 5.    Negligent Misrepresentation.

4065. New Hampshire Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

4066. Defendants, in the course of their business selling and promoting motor vehicles, supplied false information, including that the Vehicles were safe, reliable, and of a particular value, to guide motor vehicle buyers, including New Hampshire Plaintiffs, in their choice of transaction.

4067. Defendants made misrepresentations of material facts concerning the safety, reliability, and value of the Vehicles that they knew or should have known were false. Specifically, Defendants misrepresented that the Vehicles had effective anti-theft equipment or design elements; misrepresented that the Vehicles were safe and reliable forms of transportation; misrepresented that the Vehicles complied with all federal and industry safety and theft prevention standards; and misrepresented the true value of the Vehicles. Defendants supplied this information in the course of their business to guide New Hampshire Plaintiffs in their Vehicle selection and intended to induce New Hampshire Plaintiffs to purchase one of Defendants' Vehicles.

4068. New Hampshire Plaintiffs justifiably relied upon Defendants' representations because, as the entities responsible for designing and manufacturing the Vehicles, Defendants held themselves out to be knowledgeable about the Vehicles' components and honest in their promotion of the Vehicles. New Hampshire Plaintiffs' reliance was further reasonable given the hidden and technical nature of the Theft-Prone Design and practical inability of New Hampshire Plaintiffs to discover the Theft-Prone Design on their own. Because Defendants held the Vehicles out to be in line with

COMPLAINT

industry standards, the representation was not unreasonable on its face and New Hampshire Plaintiffs had no apparent reason to doubt the veracity of Defendants' representations.

4069. Defendants had a duty to disclose all relevant information regarding the Vehicles' safety, reliability, quality, and characteristics that would affect the New Hampshire Plaintiffs' choice of purchase as consumers.

4070. Defendants failed to exercise reasonable care or competence in communicating the standards of safety, reliability, quality, and characteristics of the Vehicles to the consumers, including New Hampshire Plaintiffs, when they failed to disclose the lack of anti-theft prevention technology in the Vehicles.  Rather, Defendants published materials and marketed the Vehicles for years as safe, reliable, and of a quality consistent with the industry standard.

4071. New Hampshire Plaintiffs would not have purchased, or would have purchased for a lower price, the Vehicles which Defendants negligently misrepresented as safe, of standard quality, and containing standard trade characteristics, such as anti-theft prevention technology.  Additionally, as a direct and proximate result, New Hampshire Plaintiffs have had to pay higher insurance premiums to account for the Vehicles' high susceptibility to theft and are now left with Vehicles that have a lower value than they would have had without the defect.

4072. As a direct and proximate result of New Hampshire Plaintiffs' reasonable reliance on Defendants' negligent misrepresentations, New Hampshire Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that New Hampshire Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

4073. New Hampshire Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

COMPLAINT

### 6. Negligence.

4074. New Hampshire Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

4075. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

4076. Defendants owed a duty of care to New Hampshire Plaintiffs. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves, higher insurance premiums, and accelerated depreciation.

4077. Defendants failed to exercise reasonable care in connection with their manufacture, distribution, sale, and/or leasing of the Vehicles.

4078. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant with all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with New Hampshire Plaintiffs.

4079. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS No. 114.

4080. As a direct and proximate result of Defendants' failure to exercise reasonable care, New Hampshire Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that New Hampshire Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs

COMPLAINT

for which Defendants are liable, in an amount to be proven at trial.

4081. New Hampshire Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 7.    Unjust Enrichment.

4082. New Hampshire Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

4083. When they purchased and leased the Vehicles, New Hampshire Plaintiffs conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

4084. New Hampshire Plaintiffs would not have purchased or leased their Vehicles, or would have paid less for them, had they known of the Theft-Prone Design at the time of purchase or lease.   Therefore, Defendants profited from the sale and lease of the Vehicles to the detriment and expense of New Hampshire Plaintiffs.

4085. Defendants appreciated these economic benefits.  These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers.  They knew of these benefits because they were aware of the Theft-Prone Design, yet they failed to disclose this knowledge and misled the New Hampshire Plaintiffs regarding the nature and quality of the Vehicles while profiting from this deception.

4086. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, in part because they were procured as a result of their wrongful conduct alleged above.

4087. New Hampshire Plaintiffs are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return New Hampshire Plaintiffs to the position they occupied prior to dealing with these Defendants, with such amounts to be determined at trial.

4088. New Hampshire Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if New

COMPLAINT

Hampshire Plaintiffs' claims for damages are dismissed or judgment is entered in favor of Defendants, New Hampshire Plaintiffs will have no adequate legal remedy.

**DD.  New Jersey State Law Claims for Relief**

**(Alleged by New Jersey Plaintiffs Against All Defendants)**

**1.     Breach of Implied Warranty of Merchantability Under N.J. Stat. Ann. §§ 12A:2-314 and 12A:2A-212).**

4089. New Jersey Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4090. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to N.J. Stat. Ann. §§ 12A:2-314 and 12A:2A-212.

4091. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under N.J. Stat. Ann. §§ 12A:2-104(1) and 12A:2A-103(3), and "sellers" of motor vehicles under § 12A:2-103(1)(d).

4092. Defendants are and were at all relevant times "lessors" of motor vehicles under N.J. Stat. Ann. § 12A:2A-103(1)(n).

4093. New Jersey Plaintiffs who purchased Vehicles in New Jersey are "buyers" within the meaning of N.J. Stat. Ann. § 12A:2-103(1)(a).

4094. New Jersey Plaintiffs who leased Vehicles in New Jersey are "lessees" within the meaning of N.J. Stat. Ann. § 12A:2A-103(1)(n).

4095. The Vehicles (whether purchased or leased) are and were at all relevant times "goods" within the meaning of N.J. Stat. Ann. §§ 12A:2-105(1) and 2A-103(1)(h).

4096. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided New Jersey Plaintiffs with an implied warranty that the purchased and leased Vehicles were in merchantable condition and fit for the ordinary purposes for which they were sold or leased. This implied warranty included that the Vehicles (a) were manufactured, supplied,

COMPLAINT

distributed, and sold by Defendants, (b) were safe and reliable for transportation, (c) complied with all federal, state, and industry motor vehicle regulations and safety standards, including FMVSS No. 114, and (d) were not at an abnormally high risk of theft.

4097. The Vehicles did not comply with the implied warranty of merchantability because the Vehicles were defective and not in merchantable condition at the time of sale and/or lease, were not fit for their ordinary purpose of providing safe and reliable transportation at the time of sale or lease, and would not pass without objection in the trade as they deviated significantly from the industry standard and can be stolen in mere minutes without a key.  Defendants knew at the time of manufacture that the Vehicles contained the Theft-Prone Design and lacked any anti-theft equipment or design elements that effectively prevent theft or comply with FMVSS No. 114.  Therefore, the Defendants knew at the time of manufacture that the Vehicles are at an abnormally high risk of theft and are unsafe and an unreliable form of transportation.  The Theft-Prone Design renders the Vehicles highly vulnerable to theft and a prime target for thieves as they can be easily stolen in seconds.  Defendants knew at the time of manufacture that because their Vehicles did not include any anti-theft measures that satisfied FMVSS No. 114, making their Vehicles more prone to theft and failing to comply with federal regulations, the Vehicles would require larger insurance premiums and would depreciate at a more rapid rate than a comparable vehicle with anti-theft measure that satisfied FMVSS No. 114. Consequently, at the time of sale and/or lease, the Vehicles were not fit for their ordinary purpose of providing safe and reliable transportation.

4098. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable.  Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including New Jersey Plaintiffs, of the safety defect.  Any time limitations regarding the warranty period were also unconscionable and inadequate to protect New Jersey Plaintiffs.  New Jersey Plaintiffs had no meaningful choice in

determining these time limitations and such time limitations unreasonably favored Defendants. A gross disadvantage in bargaining power existed between New Jersey Plaintiffs and Defendants, which unreasonably favored Defendants. Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left New Jersey Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

4099. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that New Jersey Plaintiffs may seek alternative remedies. New Jersey Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

4100. New Jersey Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure. New Jersey Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of New Jersey Plaintiffs' breach of warranty claims. Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and New Jersey Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, New Jersey Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches. To date, Defendants failed to remedy their breaches.

COMPLAINT

4101. Alternatively, New Jersey Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches. New Jersey Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

4102. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, New Jersey Plaintiffs' Vehicles were and are defective, the Theft-Prone Design in the Vehicles has not been remedied, and New Jersey Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that New Jersey Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

**2.      Breach of Express Warranty Under N.J. Stat. Ann. § 12A:2-313.**

4103. New Jersey Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

4104. During the relevant time periods, Defendants manufactured the Vehicles and Plaintiffs purchased and/or leased the Vehicles from Defendants.

4105. By affixing a VIN plate to each Vehicle at the time of manufacture, Defendants expressly warranted each Vehicles' conformance to "all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture shown." These statements are an affirmation of fact or promise made to New Jersey Plaintiffs as to the Vehicles' condition, quality, safety, and reliability. These statements became the basis of the bargain between New Jersey Plaintiffs and Defendants, as New Jersey Plaintiffs relied on these statements when making their decisions to purchase and/or lease the Vehicles. As such, the statements

COMPLAINT

are an express warranty under New Jersey law pursuant to N.J. Stat. Ann. § 12A:2-313.

4106. After New Jersey Plaintiffs purchased or leased the Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

4107. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable.  Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including New Jersey Plaintiffs, of the safety defect.  Any time limitations regarding the warranty period were also unconscionable and inadequate to protect New Jersey Plaintiffs.  New Jersey Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants.  A gross disadvantage in bargaining power existed between Plaintiffs and Defendants, which unreasonably favored Defendants.  Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left New Jersey Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

4108. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that New Jersey Plaintiffs may seek alternative remedies.  New Jersey Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

4109. New Jersey Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure.  New Jersey Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of New Jersey Plaintiffs' breach of warranty claims.  Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone

COMPLAINT

Design and New Jersey Plaintiffs' claims.  Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles.  Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count.  Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, New Jersey Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches.  To date, Defendants failed to remedy their breaches.

4110. Alternatively, New Jersey Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile.  Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design.  Defendants have not cured, remedied, or repaired their breaches.  New Jersey Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

4111. The Vehicles did not perform as promised in accordance with Defendants' express warranty; instead, the Vehicles did not meet all applicable motor vehicle safety and theft prevention standards in effect on the date of manufacture.  The Vehicles are capable of being stolen in a matter of seconds without a key and do not comply with the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles do not, in fact, conform to the applicable anti-theft standards.

4112. As a direct and proximate result of Defendants' breaches, New Jersey Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased

COMPLAINT

insurance premiums that New Jersey Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

### 3. Violation of New Jersey Consumer Fraud Act Under N.J. Stat. Ann. § 56:8-1, et seq.

4113. New Jersey Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

4114. Defendants and New Jersey Plaintiffs are "persons" within the meaning of N.J. Stat. Ann. § 56:8-1(d).

4115. Vehicles are "merchandise" within the meaning of N.J. Stat. Ann. § 56:8-1(c).

4116. The New Jersey Consumer Fraud Act ("New Jersey CFA") prohibits unlawful practices, such as misrepresentation, or the knowing, concealment, suppression, or omission of any material fact. N.J. Stat. Ann. § 56:8-2.

4117. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the New Jersey CFA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Theft-Prone Design, as detailed above.

4118. Defendants had an ongoing duty to New Jersey Plaintiffs to refrain from unfair or deceptive practices under the New Jersey CFA in the course of their business. Specifically, Defendants owed New Jersey Plaintiffs a duty to disclose all the material facts concerning the Theft-Prone Design of the Vehicles.

4119. Defendants had exclusive access to and far superior knowledge about facts regarding the Theft-Prone Design and Defendants knew these facts were not known to or reasonably discoverable by New Jersey Plaintiffs.

4120. Given the Theft-Prone Design's hidden and technical nature, New Jersey Plaintiffs lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft-Prone Design on their own.

COMPLAINT

4121. Defendants knew that the Theft-Prone Design gave rise to safety concerns for the consumers who use the Vehicles, and that the Theft-Prone Design would have been a material fact in the New Jersey Plaintiffs' decisions to buy or lease Vehicles.

4122. Defendants made incomplete representations about the safety and reliability of Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with the Vehicles, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Theft-Prone Design.  Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

4123. As detailed above, the information concerning the Theft-Prone Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

4124. By misrepresenting the Vehicles as safe and reliable and by failing to disclose and actively concealing the dangers and risk posed by the Theft-Prone Design, Defendants engaged in unfair methods of competition and unfair or deceptive acts or practices prohibited by N.J. Stat. Ann. § 56:8-2: using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale/lease of the Vehicles, whether or not any person has in fact been misled, deceived or damaged thereby.

4125. Defendants intended for New Jersey Plaintiffs to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

4126. Defendants' unlawful acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers

COMPLAINT

that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Theft-Prone Design.  Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including the New Jersey Plaintiffs, about the true safety and reliability of Vehicles, the quality of Vehicles, and the true value of Vehicles.

4127. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Theft-Prone Design and true characteristics of the Vehicles were material to the decisions of New Jersey Plaintiffs to purchase and lease those vehicles, as Defendants intended.  New Jersey Plaintiffs were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase and lease the Vehicles.

4128. New Jersey Plaintiffs' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading and/or otherwise learning that the Vehicles had the Theft-Prone Design, as alleged above.  New Jersey Plaintiffs did not, and could not, unravel Defendants' deception on their own.

4129. Had they known the truth about the Theft-Prone Design, New Jersey Plaintiffs would not have purchased or leased the Vehicles, or would have paid significantly less for them.

4130. New Jersey Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

4131. Defendants' violations present a continuing risk to New Jersey Plaintiffs as well as to the general public, because the Vehicles remain unsafe due to the Theft-Prone Design.  Defendants' unlawful acts and practices complained of herein affect the public interest.

4132. New Jersey Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of

COMPLAINT

action.  As such, Defendants are and have been well aware of the Theft-Prone Design and New Jersey Plaintiffs' claims.  Additionally, Defendants had ample notice provided by the numerous complaints filed against them, internet videos, and news reports.  Furthermore, on September 17, 2025, New Jersey Plaintiffs sent Defendants written notice letters of Defendants' violations, Plaintiffs' claims, and a proposed cure to the violations.  To date, Defendants failed to remedy their violations.  Because Defendants failed to remedy their unlawful conduct, New Jersey Plaintiffs seek all damages and relief to which New Jersey Plaintiffs are entitled.

4133. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile.  As alleged above, Defendants have long known that the Vehicles contained the Theft-Prone Design yet did nothing to remedy the Theft-Prone Design.

4134. Pursuant to N.J. Stat. Ann. § 56:8-19, the New Jersey Plaintiffs seek an order (1) enjoining Defendants' unfair and/or deceptive acts, methods, or practices alleged herein, and (2) awarding damages, punitive damages, attorney's fees, costs, and/or any other just and proper relief available under the New Jersey CFA.

### 4.    Fraud by Omission and Concealment.

4135. New Jersey Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

4136. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards.  In reality, however, the Vehicles do not comply with such standards.

4137. Defendants were aware of the Theft-Prone Design when they manufactured, marketed, and sold the Vehicles to New Jersey Plaintiffs.  Defendants further knew that the Theft-Prone Design gave rise to serious safety risks for the consumers that would use the Vehicles and naturally give rise to higher insurance premiums and accelerated depreciation.  At the same time, Defendants were aware of the Federal Motor Vehicle Safety Standards and of the effectiveness of engine

COMPLAINT

immobilizer technology in reducing safety hazards. Defendants were also aware that noncompliance with federal and industry standards lowered the value of the Vehicles and would render the Vehicles difficult to insure.

4138. Defendants knew that the Theft-Prone Design and the safety hazards it posed would have been a material fact in the New Jersey Plaintiffs' decisions to buy or lease the Vehicles.

4139. Having been aware of the Theft-Prone Design within the Vehicles and having known that New Jersey Plaintiffs could not have reasonably been expected to know of the Theft-Prone Design, Defendants had a duty to disclose the Theft-Prone Design to New Jersey Plaintiffs in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Theft-Prone Design because:

a. Defendants knowingly made affirmatively false or incomplete statements of material facts as to the Vehicles' safety, reliability, quality, value, and compliance with applicable motor vehicle safety and theft prevention standards, while they intentionally withheld, concealed, omitted, suppressed, and failed to disclose material facts about the Theft-Prone Design, lack of effective anti-theft measures, significant safety risks, and the Vehicles' true value. Defendants volunteered incomplete information about the Vehicles they offered for sale and/or lease to consumers, including false statements as to the Vehicles' safety and compliance with applicable safety and anti-theft standards, while at the same time withholding the existence of the Theft-Prone Design.

b. Defendants intentionally concealed, omitted, and failed to disclose the Theft-Prone Design and noncompliance with applicable safety and anti-theft standards to New Jersey Plaintiffs in connection with the sale and/or lease of the Vehicles. Defendants did not inform consumers, including New Jersey Plaintiffs, that the Vehicles Theft-Prone Design left the Vehicles without any effective anti-theft protection which rendered the

COMPLAINT

Vehicles a significant safety risk and non-compliant with federal motor vehicle safety standards.  Defendants further knew and failed to disclose that the Theft-Prone Design and lack of standard anti-theft measures left the Vehicles at substantially lower value than the price for which they were advertised, marketed, sold, and/or leased.

c. Alternatively, Defendants made false misrepresentations about the Theft-Prone Design with such utter disregard and recklessness that their knowledge regarding the Theft-Prone Design and its unsafe and unreliable nature may be inferred.

d. Defendants had exclusive access to and far superior knowledge regarding the facts of the Theft-Prone Design and Defendants knew these facts were not known to or reasonably discoverable by New Jersey Plaintiffs.

e. Given the Theft-Prone Design's hidden and technical nature, New Jersey Plaintiffs lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft-Prone Design on their own.

f. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect.  In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Theft-Prone Design.  Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

4140. In breach of their duties, Defendants failed to disclose the Theft-Prone Design to New Jersey Plaintiffs in connection with the sale or lease of the Vehicles.

4141. The Vehicles' Theft-Prone Design and noncompliance with applicable anti-theft standards were material facts about the safety, reliability, and value of the Vehicles.  A reasonable person would find the Vehicles' lack of industry-standard anti-

theft measures and noncompliance with applicable safety standards important in their decision to purchase, lease, and maintain the Vehicles because it would impact safety, availability, the Vehicles' value, and the cost to insure the Vehicles.

4142. Defendants intended for the New Jersey Plaintiffs to rely on their omissions and concealment—which New Jersey Plaintiffs did by purchasing and leasing the Vehicles at the prices they paid believing that their vehicles would not have a Theft-Prone Design that would affect the quality, reliability, and safety of the Vehicles.

4143. New Jersey Plaintiffs' reliance on Defendants' misrepresentations and concealment was reasonable and justifiable, as New Jersey Plaintiffs had no way of learning the facts that Defendants had concealed or failed to disclose.  New Jersey Plaintiffs did not, and could not, unravel Defendants' deception on their own.

4144. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products.  They did so at the expense of New Jersey Plaintiffs.

4145. If Defendants had fully and adequately disclosed the Theft-Prone Design to consumers, New Jersey Plaintiffs would have seen such a disclosure.

4146. Through their omissions and concealment with respect to the Theft-Prone Design within the Vehicles, Defendants intended to induce, and did in fact induce, New Jersey Plaintiffs to either purchase a Vehicle that they otherwise would not have purchased or pay more for a Vehicle than they otherwise would have paid.

4147. Had New Jersey Plaintiffs known of the Theft-Prone Design within the Vehicles, they would not have purchased the Vehicles or would have paid less for them.

4148. As a direct and proximate result of Defendants' omissions, New Jersey Plaintiffs overpaid for the Vehicles because New Jersey Plaintiffs would either have paid less for the Vehicles or would not have purchased the Vehicles at all if the Theft-

Prone Design had been disclosed to them.

4149. As a direct and proximate result of Defendants' omissions, New Jersey Plaintiffs purchased Vehicles highly susceptible to theft and were forced to pay higher insurance premiums to account for the susceptibility that they did not knowingly accept, purchase, or lease.

4150. As a direct and proximate result of Defendants' omissions, the New Jersey Plaintiffs paid higher insurance premiums and are now left with Vehicles with significantly diminished values.

4151. Accordingly, Defendants are liable to New Jersey Plaintiffs for their damages, including but not limited to the difference in value, increased insurance premiums that New Jersey Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

4152. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, in reckless disregard of the New Jersey Plaintiffs' rights and well-being, and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

4153. New Jersey Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 5.    Negligent Misrepresentation.

4154. New Jersey Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

4155. Defendants, in the course of their business selling and promoting motor vehicles, supplied false information, including that the Vehicles were safe and reliable, to guide motor vehicle buyers, including New Jersey Plaintiffs, in their choice of transaction.

4156. Defendants made misrepresentations of material facts concerning the

- 903 -
COMPLAINT

safety and reliability of the Vehicles that they knew or should have known were false. Specifically, Defendants misrepresented that the Vehicles had effective anti-theft equipment or design elements; misrepresented that the Vehicles were safe and reliable forms of transportation; misrepresented that the Vehicles complied with all federal and industry safety and theft prevention standards; and misrepresented the true value of the Vehicles. Defendants supplied this information in the course of their business to guide New Jersey Plaintiffs in their Vehicle selection and induce New Jersey Plaintiffs to purchase one of Defendants' Vehicles.

4157. New Jersey Plaintiffs justifiably relied upon Defendants' representations because, as the entities responsible for designing and manufacturing the Vehicles, Defendants held themselves out to be knowledgeable about the Vehicles' components and honest in their promotion of the Vehicles. New Jersey Plaintiffs' reliance was further reasonable given the hidden and technical nature of the Theft-Prone Design and practical inability of New Jersey Plaintiffs to discover the Theft-Prone Design on their own. Because Defendants held the Vehicles out to be in line with industry standards, the representation was not unreasonable on its face and New Jersey Plaintiffs had no apparent reason to doubt the veracity of Defendants' representations.

4158. Defendants had a duty to disclose all relevant information regarding the Vehicles' safety, reliability, quality, and characteristics that would affect the New Jersey Plaintiffs' choice of purchase as consumers.

4159. Defendants failed to exercise reasonable care or competence in communicating the standards of safety, reliability, quality, and characteristics of the Vehicles to the consumers, including New Jersey Plaintiffs, when they failed to disclose the lack of anti-theft prevention technology in the Vehicles. Rather, Defendants published materials and marketed the Vehicles for years as safe, reliable, and of a quality consistent with the industry standard.

4160. New Jersey Plaintiffs would not have purchased, or would have purchased for a lower price, the Vehicles which Defendants negligently misrepresented as safe, of

COMPLAINT

standard quality, and containing standard trade characteristics, such as anti-theft prevention technology. Additionally, as a direct and proximate result, New Jersey Plaintiffs have had to pay higher insurance premiums to account for the Vehicles' high susceptibility to theft and are now left with Vehicles that have a lower value than they would have had without the defect.

4161. As a direct and proximate result of New Jersey Plaintiffs' reasonable reliance on Defendants' negligent misrepresentations, New Jersey Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that New Jersey Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

4162. New Jersey Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 6. Negligence.

4163. New Jersey Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

4164. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

4165. Defendants owed a duty of care to New Jersey Plaintiffs. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves, higher insurance premiums, and accelerated depreciation.

4166. Defendants failed to exercise reasonable care in connection with their manufacture, distribution, sale, and/or leasing of the Vehicles.

4167. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to

COMPLAINT

ensure that all vehicles offered for sale were compliant with all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with New Jersey Plaintiffs.

4168. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS No. 114.

4169. As a direct and proximate result of Defendants' failure to exercise reasonable care, New Jersey Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that New Jersey Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

4170. New Jersey Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

**7.     Unjust Enrichment.**

4171. New Jersey Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

4172. When they purchased and leased the Vehicles, New Jersey Plaintiffs conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

4173. New Jersey Plaintiffs would not have purchased or leased their Vehicles, or would have paid less for them, had they known of the Theft-Prone Design at the time of purchase or lease. Therefore, Defendants profited from the sale and lease of the Vehicles to the detriment and expense of New Jersey Plaintiffs.

4174. Defendants appreciated these economic benefits. These benefits were the

COMPLAINT

expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft-Prone Design, yet they failed to disclose this knowledge and misled the New Jersey Plaintiffs regarding the nature and quality of the Vehicles while profiting from this deception.

4175. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

4176. New Jersey Plaintiffs are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return New Jersey Plaintiffs to the position they occupied prior to dealing with these Defendants, with such amounts to be determined at trial.

4177. New Jersey Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if New Jersey Plaintiffs' claims for damages are dismissed or judgment is entered in favor of Defendants, New Jersey Plaintiffs will have no adequate legal remedy.

**EE.    New Mexico State Law Claims for Relief**

**(Alleged by New Mexico Plaintiffs Against All Defendants)**

**1.    Breach of Implied Warranty (N.M. Stat. §§ 55-2-314 and 55-2A-212).**

4178. New Mexico Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4179. 2642. Defendants were at all relevant times "merchants" with respect to motor vehicles under N.M. Stat. § 55-2-104(1) and "sellers" of motor vehicles under § 55-2-103(1)(d).

4180. 2643. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under N.M. Stat. § 55-2A-103(1)(p).

4181. 2644. The Vehicles are and were at all relevant times "goods" within the meaning of N.M. Stat. §§ 55-2-105(1) and 55-2A-103(1)(h).

4182. 2645. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to N.M. Stat. §§ 55-2- 314 and 55-2A-212.

4183. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased.  Defendants provided New Mexico Plaintiffs with an implied warranty that the purchased and leased Vehicles were in merchantable condition and fit for the ordinary purposes for which they were sold or leased.  This implied warranty included that the Vehicles (a) were manufactured, supplied, distributed, and sold by Defendants, (b) were safe and reliable for transportation, (c) complied with all federal, state, and industry motor vehicle regulations and safety standards, including FMVSS No. 114, and (d) were not at an abnormally high risk of theft.

4184. The Vehicles did not comply with the implied warranty of merchantability because the Vehicles were defective and not in merchantable condition at the time of sale and/or lease, were not fit for their ordinary purpose of providing safe and reliable transportation at the time of sale or lease, and would not pass without objection in the trade as they deviated significantly from the industry standard and can be stolen in mere minutes without a key.  Defendants knew at the time of manufacture that the Vehicles contained the Theft-Prone Design and lacked any anti-theft equipment or design elements that effectively prevent theft or comply with FMVSS No. 114.  Therefore, the Defendants knew at the time of manufacture that the Vehicles are at an abnormally high risk of theft and are unsafe and an unreliable form of transportation.  The Theft-Prone Design renders the Vehicles highly vulnerable to theft and a prime target for thieves as they can be easily stolen in seconds.  Defendants knew at the time of manufacture that because their Vehicles did not include any anti-theft measures that satisfied FMVSS No. 114, making their Vehicles more prone to theft and failing to comply with federal regulations, the Vehicles would require larger insurance premiums and would depreciate at a more rapid rate than a comparable vehicle with anti-theft measure that

COMPLAINT

satisfied FMVSS No. 114. Consequently, at the time of sale and/or lease, the Vehicles were not fit for their ordinary purpose of providing safe and reliable transportation.

4185. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable.  Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including New Mexico Plaintiffs, of the safety defect.  Any time limitations regarding the warranty period were also unconscionable and inadequate to protect New Mexico Plaintiffs.  New Mexico Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants.  A gross disadvantage in bargaining power existed between Plaintiffs and Defendants, which unreasonably favored Defendants.   Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left New Mexico Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

4186. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that New Mexico Plaintiffs may seek alternative remedies.  New Mexico Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

4187. New Mexico Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure.  New Mexico Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of New Mexico Plaintiffs' breach of warranty claims.  Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and New Mexico Plaintiffs' claims.  Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles.  Defendants were also on notice of the Theft-Prone Design and noncompliance

COMPLAINT

with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, New Mexico Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches. To date, Defendants failed to remedy their breaches.

4188. Alternatively, New Mexico Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches. New Mexico Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

4189. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, New Mexico Plaintiffs' Vehicles were and are defective, the Theft-Prone Design in the Vehicles has not been remedied, and New Mexico Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that New Mexico Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

### 2. Breach of Express Warranty (N.M.S.A. § 55-2-313).

4190. New Mexico Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

4191. During the relevant time periods, Defendants manufactured the Vehicles

and New Mexico Plaintiffs purchased and/or leased the Vehicles from Defendants.

4192. By affixing a VIN plate to each Vehicle at the time of manufacture, Defendants expressly warranted each Vehicles' conformance to "all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture shown." These statements are an affirmation of fact or promise made to New Mexico Plaintiffs as to the Vehicles' condition, quality, safety, and reliability. These statements became the basis of the bargain between New Mexico Plaintiffs and Defendants, as New Mexico Plaintiffs relied on these statements when making their decisions to purchase and/or lease the Vehicles. As such, the statements are an express warranty under New Mexico law pursuant to N.M.S.A. § 55-2-313.

4193. New Mexico Plaintiffs purchased or leased the Vehicles and used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

4194. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable. Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including New Mexico Plaintiffs, of the safety defect. Any time limitations regarding the warranty period were also unconscionable and inadequate to protect New Mexico Plaintiffs. New Mexico Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants. A gross disadvantage in bargaining power existed between New Mexico Plaintiffs and Defendants, which unreasonably favored Defendants. Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left New Mexico Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

4195. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that New Mexico Plaintiffs may seek alternative remedies. New

COMPLAINT

Mexico Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

4196. New Mexico Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure.  New Mexico Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of New Mexico Plaintiffs' breach of warranty claims.  Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and New Mexico Plaintiffs' claims.  Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles.  Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count.  Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, New Mexico Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches.  To date, Defendants failed to remedy their breaches.

4197. Alternatively, New Mexico Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile.  Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design.  Defendants have not cured, remedied, or repaired their breaches.  New Mexico Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for

COMPLAINT

repair.

4198. The Vehicles did not perform as promised in accordance with Defendants' express warranty; instead, the Vehicles did not meet all applicable motor vehicle safety and theft prevention standards in effect on the date of manufacture. The Vehicles are capable of being stolen in a matter of seconds without a key and do not comply with the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles do not, in fact, conform to the applicable anti-theft standards.

4199. As a direct and proximate result of Defendants' breaches, New Mexico Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that New Mexico Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

**3. Violation of the New Mexico Unfair Practices Act (N.M. Stat. Ann. § 57-12-1, et seq.).**

4200. New Mexico Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4201. Defendants and New Mexico Plaintiffs are "persons" within the meaning of N.M. Stat. Ann. § 57-12-2.

4202. Defendants are engaged in "trade" or "commerce" within the meaning of N.M. Stat. Ann. § 57-12-2.

4203. The New Mexico Unfair Trade Practices Act ("NM UTPA") makes unlawful any [u]nfair methods or deceptive trade practices and unconscionable trade practices [.]" N.M. Stat. Ann. § 57-12-3.

4204. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the NM UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Theft-Prone Design, as detailed above.

COMPLAINT

4205. Under the NM UTPA, Defendants had an ongoing duty to New Mexico Plaintiffs to refrain from unfair or deceptive practices in the course of their business. Specifically, Defendants owed New Mexico Plaintiffs a duty to disclose all the material facts concerning the Theft-Prone Design in the Vehicles.

4206. Defendants had exclusive access to and far superior knowledge about facts regarding the Theft-Prone Design, and Defendants knew these facts were not known to or reasonably discoverable by New Mexico Plaintiffs.

4207. Given the Theft-Prone Design's hidden and technical nature, New Mexico Plaintiffs lack the sophisticated expertise in vehicle components necessary to discover the Theft-Prone Design on their own.

4208. Defendants knew that the Theft-Prone Design gave rise to safety concerns for the consumers who use the Vehicles, and that the Theft-Prone Design would have been a material fact in the New Mexico Plaintiffs' decisions to buy or lease the Vehicles.

4209. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect.  In advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Theft-Prone Design.  Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

4210. As detailed above, the information concerning the Theft-Prone Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

4211. By misrepresenting the Vehicles as safe and reliable and free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Theft-Prone Design, Defendants engaged in one or more of the following unfair or deceptive business practices or unconscionable trade practices prohibited by N.M. Stat. Ann. §§ 57-12-2(D)(2), (5), (7) and N.M. Stat. Ann. § 570-12-2(E)(1)-(2) by:

COMPLAINT

a. causing likelihood of confusion or of misunderstanding as to the approval or certification of the Vehicles;

b. representing that the Vehicles have approval, characteristics, uses, or benefits that they do not have;

c. representing that the Vehicles are of a particular standard, quality, and grade when they are not;

d. taking advantage of the lack of knowledge, ability, experience, or capacity of a person to grossly unfair degree; and

e. resulting in a gross disparity between the value received by a person and the price paid.

4212. Defendants intended for New Mexico Plaintiffs to rely on them to provide adequately designed Vehicles and to honestly and accurately reveal the safety hazards described above.

4213. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Theft-Prone Design. Those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including New Mexico Plaintiffs, about the true safety and reliability of the Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

4214. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Theft-Prone Design and true characteristics of the Vehicles were material to the decisions of Plaintiffs to purchase or lease the Vehicles, as Defendants intended. New Mexico Plaintiffs were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase or lease the Vehicles.

4215. New Mexico Plaintiffs' reliance was reasonable, as they had no way of

discerning that Defendants' representations were false and misleading, and/or otherwise learning that the Vehicles contained the Theft-Prone Design, as alleged above. New Mexico Plaintiffs did not, and could not, unravel Defendants' deception on their own.

4216. Had they known the truth about the Theft-Prone Design, New Mexico Plaintiffs would not have purchased or leased the Vehicles or would have paid significantly less for them.

4217. New Mexico Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

4218. Defendants' violations present a continuing risk to New Mexico Plaintiffs and the general public because the Vehicles remain unsafe due to the Theft-Prone Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

4219. New Mexico Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action. As such, Defendants are and have been well aware of the Theft-Prone Design and New Mexico Plaintiffs' claims. Additionally, Defendants had ample notice provided by the numerous complaints filed against them, internet videos, and news reports. Furthermore, on September 17, 2025, New Mexico Plaintiffs sent Defendants written notice letters of Defendants' violations, Plaintiffs' claims, and a proposed cure to the violations. To date, Defendants failed to remedy their violations. Because Defendants failed to remedy their unlawful conduct, New Mexico Plaintiffs seek all damages and relief to which New Mexico Plaintiffs are entitled.

4220. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile. As alleged above, Defendants have long known that the Vehicles contained the Theft-Prone Design yet did nothing to remedy the Theft-Prone Design.

4221. Pursuant to N.M. Stat. Ann. § 57-12-10, New Mexico Plaintiffs seek an

COMPLAINT

order (1) enjoining Defendants' unfair and/or deceptive acts, methods, or practices alleged herein, and (2) awarding damages, punitive damages, attorney's fees, costs, and/or any other just and proper relief available under the NM UTPA.

#### 4. Fraud by Omission, Suppression, and Concealment.

4222. New Mexico Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

4223. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards. In reality, however, the Vehicles do not comply with such standards.

4224. Defendants were aware of the Theft-Prone Design when they manufactured, marketed, and sold the Vehicles to New Mexico Plaintiffs. Defendants further knew that the Theft-Prone Design gave rise to serious safety risks for the consumers that would use the Vehicles and naturally give rise to higher insurance premiums and accelerated depreciation. At the same time, Defendants were aware of the Federal Motor Vehicle Safety Standards and of the effectiveness of engine immobilizer technology in reducing safety hazards. Defendants were also aware that noncompliance with federal and industry standards lowered the value of the Vehicles and would render the Vehicles difficult to insure.

4225. Defendants knew that the Theft-Prone Design and the safety hazards it posed would have been a material fact in the New Mexico Plaintiffs' decisions to buy or lease the Vehicles.

4226. Having been aware of the Theft-Prone Design within the Vehicles and having known that New Mexico Plaintiffs could not have reasonably been expected to know of the Theft-Prone Design, Defendants had a duty to disclose the Theft-Prone Design to New Mexico Plaintiffs in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Theft-Prone Design because:

    a. Defendants knowingly made affirmatively false or incomplete statements of material facts as to the Vehicles' safety, reliability, quality, value, and

compliance with applicable motor vehicle safety and theft prevention standards, while they intentionally withheld, concealed, omitted, suppressed, and failed to disclose material facts about the Theft-Prone Design, lack of effective anti-theft measures, significant safety risks, and the Vehicles' true value. Defendants volunteered incomplete information about the Vehicles they offered for sale and/or lease to consumers, including false statements as to the Vehicles' safety and compliance with applicable safety and anti-theft standards, while at the same time withholding the existence of the Theft-Prone Design.

b. Defendants intentionally concealed, omitted, and failed to disclose the Theft-Prone Design and noncompliance with applicable safety and anti-theft standards to New Mexico Plaintiffs in connection with the sale and/or lease of the Vehicles. Defendants did not inform consumers, including New Mexico Plaintiffs, that the Vehicles Theft-Prone Design left the Vehicles without any effective anti-theft protection which rendered the Vehicles a significant safety risk and non-compliant with federal motor vehicle safety standards. Defendants further knew and failed to disclose that the Theft-Prone Design and lack of standard anti-theft measures left the Vehicles at substantially lower value than the price for which they were advertised, marketed, sold, and/or leased.

c, Alternatively, Defendants made false misrepresentations about the Theft-Prone Design with such utter disregard and recklessness that their knowledge regarding the Theft-Prone Design and its unsafe and unreliable nature may be inferred.

d. Defendants had exclusive access to and far superior knowledge regarding the facts of the Theft-Prone Design and Defendants knew these facts were not known to or reasonably discoverable by New Mexico Plaintiffs.

e. Given the Theft-Prone Design's hidden and technical nature, New Mexico

COMPLAINT

Plaintiffs lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft-Prone Design on their own.

f. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Theft-Prone Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

4227. In breach of their duties, Defendants failed to disclose the Theft-Prone Design to New Mexico Plaintiffs in connection with the sale or lease of the Vehicles.

4228. The Vehicles' Theft-Prone Design and noncompliance with applicable anti-theft standards were material facts about the safety, reliability, and value of the Vehicles. A reasonable person would find the Vehicles' lack of industry-standard anti-theft measures and noncompliance with applicable safety standards important in their decision to purchase, lease, and maintain the Vehicles because it would impact safety, availability, the Vehicles' value, and the cost to insure the Vehicles.

4229. Defendants intended for the New Mexico Plaintiffs to rely on their omissions and concealment—which New Mexico Plaintiffs did by purchasing and leasing the Vehicles at the prices they paid believing that their vehicles would not have a Theft-Prone Design that would affect the quality, reliability, and safety of the Vehicles.

4230. New Mexico Plaintiffs' reliance on Defendants' misrepresentations and concealment was reasonable and justifiable, as New Mexico Plaintiffs had no way of learning the facts that Defendants had concealed or failed to disclose. New Mexico Plaintiffs did not, and could not, unravel Defendants' deception on their own.

4231. Defendants actively concealed and suppressed these material facts, in

- 919 -
COMPLAINT

whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of New Mexico Plaintiffs.

4232. If Defendants had fully and adequately disclosed the Theft-Prone Design to consumers, New Mexico Plaintiffs would have seen such a disclosure.

4233. Through their omissions and concealment with respect to the Theft-Prone Design within the Vehicles, Defendants intended to induce, and did in fact induce, New Mexico Plaintiffs to either purchase a Vehicle that they otherwise would not have purchased or pay more for a Vehicle than they otherwise would have paid.

4234. Had New Mexico Plaintiffs known of the Theft-Prone Design within the Vehicles, they would not have purchased the Vehicles or would have paid less for them.

4235. As a direct and proximate result of Defendants' omissions, New Mexico Plaintiffs overpaid for the Vehicles because New Mexico Plaintiffs would either have paid less for the Vehicles or would not have purchased the Vehicles at all if the Theft-Prone Design had been disclosed to them.

4236. As a direct and proximate result of Defendants' omissions, New Mexico Plaintiffs purchased Vehicles highly susceptible to theft and were forced to pay higher insurance premiums to account for the susceptibility that they did not knowingly accept, purchase, or lease.

4237. As a direct and proximate result of Defendants' omissions, the New Mexico Plaintiffs paid higher insurance premiums and are now left with Vehicles with significantly diminished values.

4238. Accordingly, Defendants are liable to New Mexico Plaintiffs for their damages, including but not limited to the difference in value, increased insurance premiums that New Mexico Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

COMPLAINT

4239. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, in reckless disregard of the New Mexico Plaintiffs' rights and well-being, and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

4240. New Mexico Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 5. Negligence by Words.

4241. New Mexico Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4242. Defendants, in the course of their business selling and promoting motor vehicles, supplied false information, including that the Vehicles were safe and reliable, to guide motor vehicle buyers, including Plaintiffs, in their choice of transaction.

4243. Defendants made misrepresentations of material facts concerning the safety and reliability of the Vehicles that they knew or should have known were false. Specifically, Defendants misrepresented that the Vehicles had effective anti-theft equipment or design elements; misrepresented that the Vehicles were safe and reliable forms of transportation; misrepresented that the Vehicles complied with all federal and industry safety and theft prevention standards; and misrepresented the true value of the Vehicles. Defendants supplied this information in the course of their business to guide Plaintiffs in their Vehicle selection and induce Plaintiffs to purchase one of Defendants' Vehicles.

4244. New Mexico Plaintiffs justifiably relied upon Defendants' representations because, as the entities responsible for designing and manufacturing the Vehicles, Defendants held themselves out to be knowledgeable about the Vehicles' components and honest in their promotion of the Vehicles. New Mexico Plaintiffs' reliance was further reasonable given the hidden and technical nature of the Theft-Prone Design and practical inability of New Mexico Plaintiffs to discover the Theft-Prone Design on their

COMPLAINT

own. Because Defendants held the Vehicles out to be in line with industry standards, the representation was not unreasonable on its face and New Mexico Plaintiffs had no apparent reason to doubt the veracity of Defendants' representations.

4245. Defendants had a duty to disclose all relevant information regarding the Vehicles' safety, reliability, quality, and characteristics that would affect the Plaintiffs' choice of purchase as consumers.

4246. New Mexico Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

4247. Defendants, in the course of their business selling and promoting motor vehicles, supplied false information, including that the Vehicles were safe and reliable, to guide motor vehicle buyers, including Plaintiffs, in their choice of transaction.

4248. Defendants made misrepresentations of material facts concerning the safety and reliability of the Vehicles that they knew or should have known were false. Specifically, Defendants misrepresented that the Vehicles had effective anti-theft equipment or design elements; misrepresented that the Vehicles were safe and reliable forms of transportation; misrepresented that the Vehicles complied with all federal and industry safety and theft prevention standards; and misrepresented the true value of the Vehicles. Defendants supplied this information in the course of their business to guide Plaintiffs in their Vehicle selection and induce Plaintiffs to purchase one of Defendants' Vehicles.

4249. New Mexico Plaintiffs justifiably relied upon Defendants' representations because, as the entities responsible for designing and manufacturing the Vehicles, Defendants held themselves out to be knowledgeable about the Vehicles' components and honest in their promotion of the Vehicles. Plaintiffs' reliance was further reasonable given the hidden and technical nature of the Theft-Prone Design and practical inability of New Mexico Plaintiffs to discover the Theft-Prone Design on their own. Because Defendants held the Vehicles out to be in line with industry standards, the representation was not unreasonable on its face and New Mexico Plaintiffs had no

COMPLAINT

apparent reason to doubt the veracity of Defendants' representations.

4250. Defendants had a duty to disclose all relevant information regarding the Vehicles' safety, reliability, quality, and characteristics that would affect the New Mexico Plaintiffs' choice of purchase as consumers.

4251. Defendants failed to exercise reasonable care or competence in communicating the standards of safety, reliability, quality, and characteristics of the Vehicles to the consumers, including New Mexico Plaintiffs, when they failed to disclose the lack of anti-theft prevention technology in the Vehicles.  Rather, Defendants published materials and marketed the Vehicles for years as safe, reliable, and of a quality consistent with the industry standard.

4252. New Mexico Plaintiffs would not have purchased, or would have purchased for a lower price, the Vehicles which Defendants negligently misrepresented as safe, of standard quality, and containing standard trade characteristics, such as anti-theft prevention technology. Additionally, as a direct and proximate result, New Mexico Plaintiffs have had to pay higher insurance premiums to account for the Vehicles' high susceptibility to theft and are now left with Vehicles that have a lower value than they would have had without the defect.

4253. As a direct and proximate result of Defendants' failure to exercise reasonable care, New Mexico Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that New Mexico Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

4254. New Mexico Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

**6.    Negligence.**

4255. New Mexico Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

COMPLAINT

4256. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

4257. Defendants owed a duty of care to New Mexico Plaintiffs. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves, higher insurance premiums, and accelerated depreciation.

4258. Defendants failed to exercise reasonable care in connection with their manufacture, distribution, sale, and/or leasing of the Vehicles.

4259. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant with all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with New Mexico Plaintiffs.

4260. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS No. 114.

4261. As a direct and proximate result of Defendants' failure to exercise reasonable care, New Mexico Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that New Mexico Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

4262. New Mexico Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

COMPLAINT

**7.    Unjust Enrichment.**

4263. New Mexico Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

4264. When they purchased and leased the Vehicles, New Mexico Plaintiffs conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

4265. New Mexico Plaintiffs would not have purchased or leased their Vehicles, or would have paid less for them, had they known of the Theft-Prone Design at the time of purchase or lease.  Therefore, Defendants profited from the sale and lease of the Vehicles to the detriment and expense of New Mexico Plaintiffs.

4266. Defendants appreciated these economic benefits.  These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers.  They knew of these benefits because they were aware of the Theft-Prone Design, yet they failed to disclose this knowledge and misled the New Mexico Plaintiffs regarding the nature and quality of the Vehicles while profiting from this deception.

4267. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

4268. New Mexico Plaintiffs are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return New Mexico Plaintiffs to the position they occupied prior to dealing with these Defendants, with such amounts to be determined at trial.

4269. New Mexico Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if New Mexico Plaintiffs' claims for damages are dismissed or judgment is entered in favor of Defendants, New Mexico Plaintiffs will have no adequate legal remedy.

**FF.    New York State Law Claims for Relief**

**(Alleged by New York Plaintiffs Against All Defendants)**

COMPLAINT

**1.     Breach of Implied Warranty (N.Y. U.C.C. Law §§ 2-314 and 2-315).**

4270. New York Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4271. Defendants were at all relevant times "sellers" and "merchants" with respect to motor vehicles under N.Y. U.C.C. Law §§ 2-103 and 2-104, and "Lessors" under N.Y. U.C.C. Law § 2-A-103(p).

4272. New York Plaintiffs were at all relevant times "Buyers" under N.Y. U.C.C. Law § 2-103(1)(a) and "Lessees" under N.Y. U.C.C. Law § 2-A-103(1)(n).

4273. The Vehicles are and were at all relevant times "goods" within the meaning of N.Y. U.C.C. Law§ 2-105.

4274. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to N.Y. U.C.C. Law § 2-314, and a warranty that the Vehicles were fit for the particular purpose for which they were sold to New York Plaintiffs is implied by law pursuant to N.Y. U.C.C. Law § 2-315.

4275. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased.  Defendants provided New York Plaintiffs with an implied warranty that the purchased and leased Vehicles were in merchantable condition and fit for the ordinary purposes for which they were sold or leased.  This implied warranty included that the Vehicles (a) were manufactured, supplied, distributed, and sold by Defendants, (b) were safe and reliable for transportation, (c) complied with all federal, state, and industry motor vehicle regulations and safety standards, including FMVSS No. 114, and (d) were not at an abnormally high risk of theft.

4276. The Vehicles did not comply with the implied warranty of merchantability because the Vehicles were defective and not in merchantable condition at the time of sale and/or lease, were not fit for their ordinary purpose of providing safe and reliable

transportation at the time of sale or lease, and would not pass without objection in the trade as they deviated significantly from the industry standard and can be stolen in mere minutes without a key. Defendants knew at the time of manufacture that the Vehicles contained the Theft-Prone Design and lacked any anti-theft equipment or design elements that effectively prevent theft or comply with FMVSS No. 114. Therefore, the Defendants knew at the time of manufacture that the Vehicles are at an abnormally high risk of theft and are unsafe and an unreliable form of transportation. The Theft-Prone Design renders the Vehicles highly vulnerable to theft and a prime target for thieves as they can be easily stolen in seconds. Defendants knew at the time of manufacture that because their Vehicles did not include any anti-theft measures that satisfied FMVSS No. 114, making their Vehicles more prone to theft and failing to comply with federal regulations, the Vehicles would require larger insurance premiums and would depreciate at a more rapid rate than a comparable vehicle with anti-theft measure that satisfied FMVSS No. 114. Consequently, at the time of sale and/or lease, the Vehicles were not fit for their ordinary purpose of providing safe and reliable transportation.

4277. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable. Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including New York Plaintiffs, of the safety defect. Any time limitations regarding the warranty period were also unconscionable and inadequate to protect New York Plaintiffs. New York Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants. A gross disadvantage in bargaining power existed between New York Plaintiffs and Defendants, which unreasonably favored Defendants. Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left New York Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

4278. These circumstances caused any exclusive or limited remedy to fail its

COMPLAINT

essential purpose such that New York Plaintiffs may seek alternative remedies. New York Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

4279. New York Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure. New York Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of New York Plaintiffs' breach of warranty claims. Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and New York Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, New York Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches. To date, Defendants failed to remedy their breaches.

4280. Alternatively, New York Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches. New York Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for

- 928 -
COMPLAINT

repair.

4281. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, New York Plaintiffs' Vehicles were and are defective, the Theft-Prone Design in the Vehicles has not been remedied, and New York Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that New York Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

**2.      Breach of Express Warranty (N.Y. U.C.C. Law § 2-313).**

4282. New York Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

4283. During the relevant time periods, Defendants manufactured the Vehicles and Plaintiffs purchased and/or leased the Vehicles from Defendants.

4284. By affixing a VIN plate to each Vehicle at the time of manufacture, Defendants expressly warranted each Vehicles' conformance to "all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture shown."  These statements are an affirmation of fact or promise made to New York Plaintiffs as to the Vehicles' condition, quality, safety, and reliability.  These statements became the basis of the bargain between New York Plaintiffs and Defendants, as New York Plaintiffs relied on these statements when making their decisions to purchase and/or lease the Vehicles.  As such, the statements are an express warranty under New York law pursuant to N.Y. U.C.C. Law § 2-313.

4285. The written statement that the Vehicles conform to all applicable federal standards, including those for anti-theft, was an affirmation of fact and a promise of a kind that naturally would induce a buyer to purchase the Vehicles, which they might not have done had they known the Vehicles did not meet the standards as warranted.

4286. New York Plaintiffs purchased or leased the Vehicles and used them in accordance with their normal operation and did not mishandle or misuse the Vehicles

COMPLAINT

in any way material to the allegations set forth herein.

4287. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable. Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including New York Plaintiffs, of the safety defect. Any time limitations regarding the warranty period were also unconscionable and inadequate to protect New York Plaintiffs. New York Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants. A gross disadvantage in bargaining power existed between New York Plaintiffs and Defendants, which unreasonably favored Defendants. Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left New York Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

4288. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that New York Plaintiffs may seek alternative remedies. New York Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

4289. New York Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure. New York Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of New York Plaintiffs' breach of warranty claims. Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and New York Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests,

COMPLAINT

including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count.  Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, New York Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches.  To date, Defendants failed to remedy their breaches.

4290. Alternatively, New York Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile.  Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design.  Defendants have not cured, remedied, or repaired their breaches.  New York Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

4291. The Vehicles did not perform as promised in accordance with Defendants' express warranty; instead, the Vehicles did not meet all applicable motor vehicle safety and theft prevention standards in effect on the date of manufacture.  The Vehicles are capable of being stolen in a matter of seconds without a key and do not comply with the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles do not, in fact, conform to the applicable anti-theft standards.

4292. As a direct and proximate result of Defendants' breaches, New York Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that New York Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

        **3.**       **Violation of New York General Business Law § 349 (N.Y. Gen. Bus. Law § 349).**

4293. New York Plaintiffs reallege and incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

4294. New York Plaintiffs are "persons" within the meaning of N.Y. Gen. Bus. Law § 349(h).

4295. Defendants are each a "person," "firm," "corporation," or "association" within the meaning of N.Y. Gen. Bus. Law § 349.

4296. The New York Deceptive Acts and Practices Act ("New York DAPA") prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce[.]" N.Y. Gen. Bus. Law § 349.

4297. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the New York DAPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Theft-Prone Design, as detailed above.

4298. Under the New York DAPA, Defendants had an ongoing duty to New York Plaintiffs to refrain from unfair or deceptive practices in the course of their business. Specifically, Defendants owed New York Plaintiffs a duty to disclose all the material facts concerning the Theft-Prone Design in the Vehicles.

4299. Defendants had exclusive access to and far superior knowledge about facts regarding the Theft-Prone Design, and Defendants knew these facts were not known to or reasonably discoverable by New York Plaintiffs.

4300. Given the Theft-Prone Design's hidden and technical nature, New York Plaintiffs lack the sophisticated expertise in vehicle components necessary to discover the Theft-Prone Design on their own.

4301. Defendants knew that the Theft-Prone Design gave rise to safety concerns for the consumers who use the Vehicles, and that the Theft-Prone Design would have been a material fact in the New York Plaintiffs' decisions to buy or lease the Vehicles.

4302. Defendants made general affirmative representations about the

COMPLAINT

technological and safety innovations included with the Vehicles without telling consumers that the Vehicles had the Theft-Prone Design that would affect the safety, quality, and performance of the Vehicles; and

4303. In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Theft-Prone Design.  Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

4304. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect.  By misrepresenting the Vehicles as safe and reliable and free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Theft-Prone Design to both consumers and NHTSA, Defendants engaged in deceptive acts or practices in the conduct of business, trade or commerce, and/or in the furnishing of any service, as prohibited by N.Y. Gen. Bus. Law § 349.

4305. Defendants intended for New York Plaintiffs to rely on them to provide adequately designed Vehicles and to honestly and accurately reveal the safety hazards described above.

4306. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Theft-Prone Design.  Those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including New York Plaintiffs, about the true safety and reliability of the Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

4307. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Theft-Prone Design and true characteristics of the Vehicles were material to the decisions of New York Plaintiffs to purchase or

lease the Vehicles, as Defendants intended.  New York Plaintiffs were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase or lease the Vehicles.

4308. New York Plaintiffs' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, and/or otherwise learning that the Vehicles contained the Theft-Prone Design, as alleged above.  New York Plaintiffs did not, and could not, unravel Defendants' deception on their own.

4309. Had they known the truth about the Theft-Prone Design, New York Plaintiffs would not have purchased or leased the Vehicles or would have paid significantly less for them.

4310. New York Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

4311. Defendants' violations present a continuing risk to New York Plaintiffs and the general public because the Vehicles remain unsafe due to the Theft-Prone Design.  Defendants' unlawful acts and practices complained of herein affect the public interest.

4312. New York Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action.  As such, Defendants are and have been well aware of the Theft-Prone Design and New York Plaintiffs' claims.  Additionally, Defendants had ample notice provided by the numerous complaints filed against them, internet videos, and news reports.  Furthermore, on September 17, 2025, New York Plaintiffs sent Defendants written notice letters of Defendants' violations, Plaintiffs' claims, and a proposed cure to the violations.  To date, Defendants failed to remedy their violations.  Because Defendants failed to remedy their unlawful conduct, New York Plaintiffs seek all damages and relief to which New York Plaintiffs are entitled.

COMPLAINT

4313. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile.  As alleged above, Defendants have long known that the Vehicles contained the Theft-Prone Design yet did nothing to remedy the Theft-Prone Design.

4314. Pursuant to N.Y. Gen. Bus. Law § 349, New York Plaintiffs seek an order (1) enjoining Defendants' unfair and/or deceptive acts, methods, or practices alleged herein, and (2) awarding damages, punitive damages, attorney's fees, costs, and/or any other just and proper relief available under the New York DAPA.

**4. Violation of New York General Business Law § 350 (N.Y. Gen. Bus. Law § 350).**

4315. New York Plaintiffs reallege and incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

4316. Defendants were and are engaged in "conduct of business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law § 350.

4317. The New York False Advertising Act ("New York FAA") prohibits "[f]alse advertising in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 350.

4318. Defendants caused to be made or disseminated through New York, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by exercise of reasonable care should have been known by them to be untrue and misleading to consumers, including New York Plaintiffs.

4319. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the New York FAA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Theft-Prone Design, as detailed above.

4320. Defendants had an ongoing duty to New York Plaintiffs to refrain from

COMPLAINT

unfair or deceptive practices under the New York FAA in the course of their business. Specifically, they owed New York Plaintiffs a duty to disclose all the material facts concerning the Theft-Prone Design in the Vehicles because material facts concerning the Theft-Prone Design in the Vehicles because:

    a. Defendants had exclusive access to and far superior knowledge about facts regarding the Theft-Prone Design and Defendants knew these facts were not known to or reasonably discoverable by New York Plaintiffs;

    b. Given the Theft-Prone Design's hidden and technical nature, New York Plaintiffs lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft-Prone Design on their own;

    c. Defendants knew that the Theft-Prone Design gave rise to safety concerns for the consumers who use the Vehicles, and that the Theft-Prone Design would have been a material fact in the New York Plaintiffs' decisions to buy or lease Vehicles;

    d. In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Theft-Prone Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

4321. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. By misrepresenting the Vehicles as safe and reliable and free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Theft-Prone Design to both consumers and NHTSA, Defendants engaged in the false and misleading advertising practices prohibited by N.Y. Gen. Bus. Law § 350.

4322. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers

COMPLAINT

that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Theft-Prone Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including New York Plaintiffs, about the true safety and reliability of Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

4323. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Theft-Prone Design and true characteristics of the Vehicles were material to the decisions of New York Plaintiffs to purchase and lease those vehicles, as Defendants intended. New York Plaintiffs were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase and lease Vehicles.

4324. New York Plaintiffs' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Vehicles contained the Theft-Prone Design, as alleged above. New York Plaintiffs did not, and could not, unravel Defendants' deception on their own.

4325. Had they known the truth about the Theft-Prone Design, New York Plaintiffs would not have purchased or leased the Vehicles or would have paid significantly less for them.

4326. New York Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

4327. Defendants' violations present a continuing risk to New York Plaintiffs, as well as to the general public, because the Vehicles remain unsafe due to the Theft-Prone Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

4328. New York Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of

COMPLAINT

action. As such, Defendants are and have been well aware of the Theft-Prone Design and New York Plaintiffs' claims. Additionally, Defendants had ample notice provided by the numerous complaints filed against them, internet videos, and news reports. Furthermore, on September 17, 2025, New York Plaintiffs sent Defendants written notice letters of Defendants' violations, Plaintiffs' claims, and a proposed cure to the violations. To date, Defendants failed to remedy their violations. Because Defendants failed to remedy their unlawful conduct, New York Plaintiffs seek all damages and relief to which New York Plaintiffs are entitled.

4329. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile. As alleged above, Defendants have long known that the Vehicles contained the Theft-Prone Design yet did nothing to remedy the Theft-Prone Design.

4330. Pursuant to New York FAA, New York Plaintiffs seek an order (1) enjoining Defendants' unfair and/or deceptive acts, methods, or practices alleged herein, and (2) awarding damages, punitive damages, attorney's fees, costs, and/or any other just and proper relief available under the New York FAA.

### 5. Fraud by Omission and Concealment.

4331. New York Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

4332. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards. In reality, however, the Vehicles do not comply with such standards.

4333. Defendants were aware of the Theft-Prone Design when they manufactured, marketed, and sold the Vehicles to New York Plaintiffs. Defendants further knew that the Theft-Prone Design gave rise to serious safety risks for the consumers that would use the Vehicles and naturally give rise to higher insurance premiums and accelerated depreciation. At the same time, Defendants were aware of the Federal Motor Vehicle Safety Standards and of the effectiveness of engine

COMPLAINT

immobilizer technology in reducing safety hazards. Defendants were also aware that noncompliance with federal and industry standards lowered the value of the Vehicles and would render the Vehicles difficult to insure.

4334. Defendants knew that the Theft-Prone Design and the safety hazards it posed would have been a material fact in the New York Plaintiffs' decisions to buy or lease the Vehicles.

4335. Having been aware of the Theft-Prone Design within the Vehicles and having known that New York Plaintiffs could not have reasonably been expected to know of the Theft-Prone Design, Defendants had a duty to disclose the Theft-Prone Design to New York Plaintiffs in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Theft-Prone Design.

4336. Defendants knowingly made affirmatively false or incomplete statements of material facts as to the Vehicles' safety, reliability, quality, value, and compliance with applicable motor vehicle safety and theft prevention standards, while they intentionally withheld, concealed, omitted, suppressed, and failed to disclose material facts about the Theft-Prone Design, lack of effective anti-theft measures, significant safety risks, and the Vehicles' true value. Defendants volunteered incomplete information about the Vehicles they offered for sale and/or lease to consumers, including false statements as to the Vehicles' safety and compliance with applicable safety and anti-theft standards, while at the same time withholding the existence of the Theft-Prone Design.

4337. Defendants intentionally concealed, omitted, and failed to disclose the Theft-Prone Design and noncompliance with applicable safety and anti-theft standards to New York Plaintiffs in connection with the sale and/or lease of the Vehicles. Defendants did not inform consumers, including New York Plaintiffs, that the Vehicles Theft-Prone Design left the Vehicles without any effective anti-theft protection which rendered the Vehicles a significant safety risk and non-compliant with federal motor vehicle safety standards. Defendants further knew and failed to disclose that the Theft-

COMPLAINT

Prone Design and lack of standard anti-theft measures left the Vehicles at substantially lower value than the price for which they were advertised, marketed, sold, and/or leased.

4338. Alternatively, Defendants made false misrepresentations about the Theft-Prone Design with such utter disregard and recklessness that their knowledge regarding the Theft-Prone Design and its unsafe and unreliable nature may be inferred.

4339. Defendants had exclusive access to and far superior knowledge regarding the facts of the Theft-Prone Design and Defendants knew these facts were not known to or reasonably discoverable by New York Plaintiffs.

4340. Given the Theft-Prone Design's hidden and technical nature, Plaintiffs lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft-Prone Design on their own.

4341. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect.  In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Theft-Prone Design.  Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

4342. In breach of their duties, Defendants failed to disclose the Theft-Prone Design to New York Plaintiffs in connection with the sale or lease of the Vehicles.

4343. The Vehicles' Theft-Prone Design and noncompliance with applicable anti-theft standards were material facts about the safety, reliability, and value of the Vehicles.  A reasonable person would find the Vehicles' lack of industry-standard anti-theft measures and noncompliance with applicable safety standards important in their decision to purchase, lease, and maintain the Vehicles because it would impact safety, availability, the Vehicles' value, and the cost to insure the Vehicles.

4344. Defendants intended for the New York Plaintiffs to rely on their omissions and concealment—which New York Plaintiffs did by purchasing and leasing the

COMPLAINT

Vehicles at the prices they paid believing that their vehicles would not have a Theft-Prone Design that would affect the quality, reliability, and safety of the Vehicles.

4345. New York Plaintiffs' reliance on Defendants' omissions and concealment was reasonable and justifiable, as New York Plaintiffs had no way of learning the facts that Defendants had concealed or failed to disclose. New York Plaintiffs did not, and could not, unravel Defendants' deception on their own.

4346. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of New York Plaintiffs.

4347. If Defendants had fully and adequately disclosed the Theft-Prone Design to consumers, New York Plaintiffs would have seen such a disclosure.

4348. Through their omissions and concealment with respect to the Theft-Prone Design within the Vehicles, Defendants intended to induce, and did in fact induce, New York Plaintiffs to either purchase a Vehicle that they otherwise would not have purchased or pay more for a Vehicle than they otherwise would have paid.

4349. Had New York Plaintiffs known of the Theft-Prone Design within the Vehicles, they would not have purchased the Vehicles or would have paid less for them.

4350. As a direct and proximate result of Defendants' omissions, New York Plaintiffs overpaid for the Vehicles because New York Plaintiffs would either have paid less for the Vehicles or would not have purchased the Vehicles at all if the Theft-Prone Design had been disclosed to them.

4351. As a direct and proximate result of Defendants' omissions, New York Plaintiffs purchased Vehicles highly susceptible to theft and were forced to pay higher insurance premiums to account for the susceptibility that they did not knowingly accept, purchase, or lease.

4352. As a direct and proximate result of Defendants' omissions, the New York

COMPLAINT

Plaintiffs paid higher insurance premiums and are now left with Vehicles with significantly diminished values.

4353. Accordingly, Defendants are liable to New York Plaintiffs for their damages, including but not limited to the difference in value, increased insurance premiums that New York Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

4354. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, in reckless disregard of the New York Plaintiffs' rights and well-being, and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

4355. New York Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 6.    Negligent Misrepresentation.

4356. New York Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

4357. Defendants, in the course of their business selling and promoting motor vehicles, supplied false information, including that the Vehicles were safe and reliable, to guide motor vehicle buyers, including New York Plaintiffs, in their choice of transaction.

4358. Defendants made misrepresentations of material facts concerning the safety and reliability of the Vehicles that they knew or should have known were false. Specifically, Defendants misrepresented that the Vehicles had effective anti-theft equipment or design elements; misrepresented that the Vehicles were safe and reliable forms of transportation; misrepresented that the Vehicles complied with all federal and industry safety and theft prevention standards; and misrepresented the true value of the Vehicles. Defendants supplied this information in the course of their business to guide

COMPLAINT

New York Plaintiffs in their Vehicle selection and induce Plaintiffs to purchase one of Defendants' Vehicles.

4359. New York Plaintiffs justifiably relied upon Defendants' representations because, as the entities responsible for designing and manufacturing the Vehicles, Defendants held themselves out to be knowledgeable about the Vehicles' components and honest in their promotion of the Vehicles. New York Plaintiffs' reliance was further reasonable given the hidden and technical nature of the Theft-Prone Design and practical inability of New York Plaintiffs to discover the Theft-Prone Design on their own. Because Defendants held the Vehicles out to be in line with industry standards, the representation was not unreasonable on its face and New York Plaintiffs had no apparent reason to doubt the veracity of Defendants' representations.

4360. Defendants had a duty to disclose all relevant information regarding the Vehicles' safety, reliability, quality, and characteristics that would affect the New York Plaintiffs' choice of purchase as consumers.

4361. Defendants failed to exercise reasonable care or competence in communicating the standards of safety, reliability, quality, and characteristics of the Vehicles to the consumers, including New York Plaintiffs, when they failed to disclose the lack of anti-theft prevention technology in the Vehicles. Rather, Defendants published materials and marketed the Vehicles for years as safe, reliable, and of a quality consistent with the industry standard.

4362. New York Plaintiffs would not have purchased, or would have purchased for a lower price, the Vehicles which Defendants negligently misrepresented as safe, of standard quality, and containing standard trade characteristics, such as anti-theft prevention technology. Additionally, as a direct and proximate result, Plaintiffs have had to pay higher insurance premiums to account for the Vehicles' high susceptibility to theft and are now left with Vehicles that have a lower value than they would have had without the defect.

4363. As a direct and proximate result of New York Plaintiffs' reasonable

COMPLAINT

reliance on Defendants' negligent misrepresentations, New York Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that New York Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

4364. New York Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 7.    Negligence.

4365. New York Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

4366. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

4367. Defendants owed a duty of care to New York Plaintiffs.  That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves, higher insurance premiums, and accelerated depreciation.

4368. Defendants failed to exercise reasonable care in connection with their manufacture, distribution, sale, and/or leasing of the Vehicles.

4369. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards.  Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant with all applicable federal standards.  This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with New York Plaintiffs.

4370. Defendants' violation of their duties under applicable law and/or the

COMPLAINT

applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS No. 114.

4371. As a direct and proximate result of Defendants' failure to exercise reasonable care, New York Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that New York Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

4372. New York Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 8.    Unjust Enrichment.

4373. New York Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

4374. When they purchased and leased the Vehicles, New York Plaintiffs conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

4375. New York Plaintiffs would not have purchased or leased their Vehicles, or would have paid less for them, had they known of the Theft-Prone Design at the time of purchase or lease.  Therefore, Defendants profited from the sale and lease of the Vehicles to the detriment and expense of New York Plaintiffs.

4376. Defendants appreciated these economic benefits.  These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers.  They knew of these benefits because they were aware of the Theft-Prone Design, yet they failed to disclose this knowledge and misled the New York Plaintiffs regarding the nature and quality of the Vehicles while profiting from this deception.

4377. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, including because they were procured as a result of their wrongful

COMPLAINT

conduct alleged above.

4378. New York Plaintiffs are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return New York Plaintiffs to the position they occupied prior to dealing with these Defendants, with such amounts to be determined at trial.

4379. New York Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if New York Plaintiffs' claims for damages are dismissed or judgment is entered in favor of Defendants, New York Plaintiffs will have no adequate legal remedy.

**GG. North Carolina State Law Claims for Relief**

**(Alleged by North Carolina Plaintiffs Against All Defendants)**

**1. Breach of Implied Warranty (N.C. Gen. Stat. §§ 2-314 and 2-315).**

4380. North Carolina Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

4381. Defendants were at all relevant times "sellers" and "merchants" with respect to Vehicles under N.C. Gen. Stat. §§ 2-103 and 2-104, and "Lessors" under N.C. Gen. Stat. § 2-A-103(p).

4382. North Carolina Plaintiffs were at all relevant times "Buyers" under N.C. Gen. Stat. §§ 2-103(1)(a) and "Lessees" under N.C. Gen. Stat. § 2-A-103(1)(n).

4383. The Vehicles are and were at all relevant times "goods" within the meaning of N.C. Gen. Stat. § 2-105.

4384. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to N.C. Gen. Stat. § 2-314, and a warranty that the Vehicles were fit for the particular purpose for which they were sold to North Carolina Plaintiffs is implied by law pursuant to N.C. Gen. Stat. § 2-315.

4385. Defendants knew or had reason to know of the specific use for which the

COMPLAINT

Vehicles were purchased or leased.  Defendants provided to North Carolina Plaintiffs with an implied warranty that the purchased and leased Vehicles were in merchantable condition and fit for the ordinary purposes for which they were sold or leased.  This implied warranty included that the Vehicles (a) were manufactured, supplied, distributed, and sold by Defendants, (b) were safe and reliable for transportation, (c) complied with all federal, state, and industry motor vehicle regulations and safety standards, including FMVSS No. 114, and (d) were not at an abnormally high risk of theft.

4386. The Vehicles did not comply with the implied warranty of merchantability because the Vehicles were defective and not in merchantable condition at the time of sale and/or lease, were not fit for their ordinary purpose of providing safe and reliable transportation at the time of sale or lease, and would not pass without objection in the trade as they deviated significantly from the industry standard and can be stolen in mere minutes without a key.  Defendants knew at the time of manufacture that the Vehicles contained the Theft-Prone Design and lacked any anti-theft equipment or design elements that effectively prevent theft or comply with FMVSS No. 114.  Therefore, the Defendants knew at the time of manufacture that the Vehicles are at an abnormally high risk of theft and are unsafe and an unreliable form of transportation.  The Theft-Prone Design renders the Vehicles highly vulnerable to theft and a prime target for thieves as they can be easily stolen in seconds.  Defendants knew at the time of manufacture that because their Vehicles did not include any anti-theft measures that satisfied FMVSS No. 114, making their Vehicles more prone to theft and failing to comply with federal regulations, the Vehicles would require larger insurance premiums and would depreciate at a more rapid rate than a comparable vehicle with anti-theft measure that satisfied FMVSS No. 114. Consequently, at the time of sale and/or lease, the Vehicles were not fit for their ordinary purpose of providing safe and reliable transportation.

4387. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable.  Defendants knowingly

sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including North Carolina Plaintiffs, of the safety defect. Any time limitations regarding the warranty period were also unconscionable and inadequate to protect North Carolina Plaintiffs. North Carlina Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants. A gross disadvantage in bargaining power existed between North Carolina Plaintiffs and Defendants, which unreasonably favored Defendants. Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left North Carolina Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

4388. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that North Carolina Plaintiffs may seek alternative remedies. North Carolina Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

4389. North Carolina Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure. North Carolina Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of North Carolina Plaintiffs' breach of warranty claims. Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and North Carolina Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have

COMPLAINT

also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, North Carolina Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches. To date, Defendants failed to remedy their breaches.

4390. Alternatively, North Carolina Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches. North Carolina Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

4391. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, North Carolina Plaintiffs' Vehicles were and are defective, the Theft-Prone Design in the Vehicles has not been remedied, and North Carolina Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that North Carolina Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

### 2. Breach of Express Warranty N.C. Gen. Stat. § 25-2-313.[139]

4392. North Carolina Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

4393. During the relevant time periods, Defendants manufactured the Vehicles and Plaintiffs purchased and/or leased the Vehicles from Defendants.

4394. By affixing a VIN plate to each Vehicle at the time of manufacture,

---

[139] For the names of the North Carolina Plaintiffs who do not allege a claim for Breach of Express Warranty N.C. Gen. Stat. § 25-2-313, see Exhibit E.

COMPLAINT

Defendants expressly warranted each Vehicles' conformance to "all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture shown." These statements are an affirmation of fact or promise made to Plaintiffs as to the Vehicles' condition, quality, safety, and reliability. These statements became the basis of the bargain between North Carolina Plaintiffs and Defendants, as North Carolina Plaintiffs relied on these statements when making their decisions to purchase and/or lease the Vehicles. As such, the statements are an express warranty under North Carolina law pursuant to N.C. Gen. Stat. § 25-2-313.

4395. After North Carolina Plaintiffs purchased or leased the Vehicles, they used them in accordance with their normal operation and did not misuse or mishandle the Vehicles in any way material to the allegations set forth herein.

4396. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable. Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including North Carolina Plaintiffs, of the safety defect. Any time limitations regarding the warranty period were also unconscionable and inadequate to protect North Carolina Plaintiffs. North Carolina Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants. A gross disadvantage in bargaining power existed between North Carolina Plaintiffs and Defendants, which unreasonably favored Defendants. Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left North Carolina Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

4397. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that North Carolina Plaintiffs may seek alternative remedies. North Carolina Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

COMPLAINT

4398. North Carolina Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure.  North Carolina Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of North Carolina Plaintiffs' breach of warranty claims. Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and North Carolina Plaintiffs' claims.  Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles.  Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count.  Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, North Carolina Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches.  To date, Defendants failed to remedy their breaches.

4399. Alternatively, North Carolina Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile.  Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design.  Defendants have not cured, remedied, or repaired their breaches.  North Carolina Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

4400. The Vehicles did not perform as promised in accordance with Defendants' express warranty; instead, the Vehicles did not meet all applicable motor vehicle safety

COMPLAINT

and theft prevention standards in effect on the date of manufacture. The Vehicles are capable of being stolen in a matter of seconds without a key and do not comply with the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles do not, in fact, conform to the applicable anti-theft standards.

4401. As a direct and proximate result of Defendants' breaches, North Carolina Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that North Carolina Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

**3. Violation of the North Carolina Unfair and Deceptive Trade Practices Act (N.C. Gen. Stat. § 75-1.1, et seq.).[140]**

4402. North Carolina Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

4403. Defendants were and are engaged in "commerce" within the meaning of N.C. Gen. Stat. § 75-1.1(b).

4404. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the North Carolina Unfair and Deceptive Trade Practices Act ("North Carolina UDTPA") by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the Vehicles' quality, reliability, value, and safety. These material facts include that (a) the Vehicles had a hidden Theft-Prone Design which left the Vehicles without standard anti-theft measures and was not reasonably discoverable to consumers, (b) the Vehicles did not comply with federal or industry motor vehicle safety and theft prevention standards, including FMVSS No. 114, (c) the Vehicles were at an abnormally high risk of theft, and (d) the Vehicles have a value which Defendants

---

[140] For the names of the North Carolina Plaintiffs who do not allege a claim for Violation of the North Carolina Unfair and Deceptive Trade Practices Act (N.C. Gen. Stat. § 75-1.1, et seq., see Exhibit E.

COMPLAINT

knowingly misrepresented. Defendants represented that the Vehicles were of a particular standard and quality but sold them at another standard and quality. These unfair and unconscionable deceptive acts or practices violated the North Carolina UDTPA.

4405. Under the North Carolina UDTPA, Defendants had an ongoing duty to North Carolina Plaintiffs as consumers to refrain from unfair or deceptive acts, practices, and representations in the course of their business. Specifically, Defendants owed the North Carolina Plaintiffs a duty to disclose all the material facts concerning the Theft-Prone Design in the Vehicles and to refrain from representing their Vehicles were of a particular standard or quality when they were of another.

4406. Defendants had exclusive and superior knowledge of the Theft-Prone Design, related facts, and the Vehicles' noncompliance with federal and industry safety and theft prevention standard. Defendants knew these facts were hidden and not reasonably discoverable by consumers, including Plaintiffs. Given the Theft-Prone Design's hidden and technical nature, North Carolina Plaintiffs lack the sophisticated expertise in vehicle components that would have been necessary to discover the Theft-Prone Design on their own.

4407. Defendants further knew that, because of the Theft-Prone Design, the Vehicles posed a significant safety risk to consumers that used the Vehicles. Defendants knew that the Theft-Prone Design and lack of standard anti-theft measures left the Vehicles at substantially lower value than the price for which they were advertised, marketed, sold, and/or leased. Defendants knew these material facts would have been material to consumers', including North Carolina Plaintiffs', decision to purchase and/or lease the Vehicles.

4408. Defendants nevertheless made intentionally misleading and incomplete affirmative statements and representations about the Vehicles' safety, reliability, value, and conformance with all applicable safety and theft prevention standards, while also concealing, omitting, and withholding material facts from consumers, including North

COMPLAINT

Carolina Plaintiffs, at the time the Vehicles were advertised, sold, and/or leased. Defendants marketed and sold the Vehicles as safe despite their knowledge that the Theft-Prone Design posed a significant safety risk to consumers and the general public. Through advertisements, marketing materials, and their websites, Defendants made incomplete representations and/or concealed the Vehicles' defective condition. Defendants further misrepresented that the Vehicles were compliant with all applicable motor vehicle safety and theft prevention standards, when in reality they were not. Defendants further marketed and sold/leased the Vehicles at an inflated and misleading price, given the Vehicles' Theft-Prone Design and lack of standard anti-theft equipment and design elements.

4409. Through their misrepresentations, concealment, omissions, and withholding of these material facts, Defendants engaged in unfair and deceptive acts or practices in the course of their business, as prohibited by the North Carolina UDTPA.

4410. Defendants knew that the Theft-Prone Design gave rise to safety concerns for the consumers who use the Vehicles, and that the Theft-Prone Design would have been a material fact in the North Carolina Plaintiffs' decisions to buy or lease Vehicles.

4411. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect.  In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Theft-Prone Design.  Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

4412. As detailed above, the information concerning the Theft-Prone Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

4413. By misrepresenting the Vehicles as safe and reliable and free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the

- 954 -
COMPLAINT

Theft-Prone Design, Defendants engaged in unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce prohibited by N.C. Gen. Stat. § 75-16.

4414. Defendants intended for North Carolina Plaintiffs to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

4415. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection and that the Vehicles were not affected by the Theft-Prone Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including North Carolina Plaintiffs, about the true safety and reliability of Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

4416. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Theft-Prone Design and true characteristics of the Vehicles were material to the decisions of North Carolina Plaintiffs to purchase and lease the Vehicles, as Defendants intended. North Carolina Plaintiffs were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase and lease the Vehicles.

4417. North Carolina Plaintiffs' reliance was reasonable, as they had no way of discerning if Defendants' representations were false and misleading or otherwise learning that the Vehicles contained the Theft-Prone Design, as alleged above. North Carolina Plaintiffs did not, and could not, unravel Defendants' deception on their own.

4418. Had they known the truth about the Theft-Prone Design, North Carolina Plaintiffs would not have purchased or leased the Vehicles, or North Carolina Plaintiffs would have paid significantly less for the Vehicles.

4419. North Carolina Plaintiffs suffered ascertainable losses and actual damages

as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

4420. Defendants' violations present a continuing risk to North Carolina Plaintiffs, as well as to the general public, because the Vehicles remain unsafe due to the Theft-Prone Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

4421. North Carolina Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action. As such, Defendants are and have been well aware of the Theft-Prone Design and North Carolina Plaintiffs' claims. Additionally, Defendants had ample notice provided by the numerous complaints filed against them, internet videos, and news reports. Furthermore, on September 17, 2025, North Carolina Plaintiffs sent Defendants written notice letters of Defendants' violations, Plaintiffs' claims, and a proposed cure to the violations. To date, Defendants failed to remedy their violations. Because Defendants failed to remedy their unlawful conduct, North Carolina Plaintiffs seek all damages and relief to which North Carolina Plaintiffs are entitled.

4422. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile. As alleged above, Defendants have long known that the Vehicles contained the Theft-Prone Design yet did nothing to remedy the Theft-Prone Design.

4423. Pursuant to N.C. Gen. Stat. § 75-16, North Carolina Plaintiffs seek an order (1) enjoining Defendants' unfair and/or deceptive acts, methods, or practices alleged herein, and (2) awarding damages, punitive damages, attorney's fees, costs, and/or any other just and proper relief available under the North Carolina UDTPA.

**4.     Fraud by Omission and Concealment[141]**

---

[141] For the names of the North Carolina Plaintiffs who do not allege a claim for Fraud by Omission and Concealment, see Exhibit E.

COMPLAINT

4424. North Carolina Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

4425. Defendants were aware of the Theft-Prone Design when they manufactured, marketed, and sold the Vehicles to North Carolina Plaintiffs. Defendants further knew that the Theft-Prone Design gave rise to serious safety risks for the consumers that would use the Vehicles and naturally give rise to higher insurance premiums and accelerated depreciation. At the same time, Defendants were aware of the Federal Motor Vehicle Safety Standards and of the effectiveness of engine immobilizer technology in reducing safety hazards. Defendants were also aware that noncompliance with federal and industry standards lowered the value of the Vehicles and would render the Vehicles difficult to insure.

4426. Having been aware of the Theft-Prone Design within the Vehicles and having known that North Carolina Plaintiffs could not have reasonably been expected to know of the Theft-Prone Design, Defendants had a duty to disclose the Theft-Prone Design to North Carolina Plaintiffs in connection with the sale or lease of the Vehicles. Defendants further had a duty to disclose the Theft-Prone Design because:

4427. Defendants knowingly made affirmatively false or incomplete statements of material facts as to the Vehicles' safety, reliability, quality, value, and compliance with applicable motor vehicle safety and theft prevention standards, while they intentionally withheld, concealed, omitted, suppressed, and failed to disclose material facts about the Theft-Prone Design, lack of effective anti-theft measures, significant safety risks, and the Vehicles' true value. Defendants volunteered incomplete information about the Vehicles they offered for sale and/or lease to consumers, including false statements as to the Vehicles' safety and compliance with applicable safety and anti-theft standards, while at the same time withholding the existence of the Theft-Prone Design.

4428. Defendants intentionally concealed, omitted, and failed to disclose the Theft-Prone Design and noncompliance with applicable safety and anti-theft standards

to North Carolina Plaintiffs in connection with the sale and/or lease of the Vehicles. Defendants did not inform consumers, including Plaintiffs, that the Vehicles Theft-Prone Design left the Vehicles without any effective anti-theft protection which rendered the Vehicles a significant safety risk and non-compliant with federal motor vehicle safety standards. Defendants further knew and failed to disclose that the Theft-Prone Design and lack of standard anti-theft measures left the Vehicles at substantially lower value than the price for which they were advertised, marketed, sold, and/or leased.

4429. Alternatively, Defendants made false misrepresentations about the Theft-Prone Design with such utter disregard and recklessness that their knowledge regarding the Theft-Prone Design and its unsafe and unreliable nature may be inferred.

4430. Defendants had exclusive access to and far superior knowledge regarding the facts of the Theft-Prone Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs.

4431. Given the Theft-Prone Design's hidden and technical nature, North Carolina Plaintiffs lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft-Prone Design on their own.

4432. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Theft-Prone Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

4433. In breach of their duties, Defendants failed to disclose the Theft-Prone Design to North Carolina Plaintiffs in connection with the sale or lease of the Vehicles.

4434. The Vehicles' Theft-Prone Design and noncompliance with applicable anti-theft standards were material facts about the safety, reliability, and value of the Vehicles. A reasonable person would find the Vehicles' lack of industry-standard anti-

COMPLAINT

theft measures and noncompliance with applicable safety standards important in their decision to purchase, lease, and maintain the Vehicles because it would impact safety, availability, the Vehicles' value, and the cost to insure the Vehicles.

4435. Defendants intended for the North Carolina Plaintiffs to rely on their omissions and concealment—which Plaintiffs did by purchasing and leasing the Vehicles at the prices they paid believing that their vehicles would not have a Theft-Prone Design that would affect the quality, reliability, and safety of the Vehicles.

4436. North Carolina Plaintiffs' reliance on Defendants' misrepresentations and concealment was reasonable and justifiable, as North Carolina Plaintiffs had no way of learning the facts that Defendants had concealed or failed to disclose. North Carolina Plaintiffs did not, and could not, unravel Defendants' deception on their own.

4437. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of North Carolina Plaintiffs.

4438. If Defendants had fully and adequately disclosed the Theft-Prone Design to consumers, North Carolina Plaintiffs would have seen such a disclosure.

4439. Through their omissions and concealment with respect to the Theft-Prone Design within the Vehicles, Defendants intended to induce, and did in fact induce, North Carolina Plaintiffs to either purchase a Vehicle that they otherwise would not have purchased or pay more for a Vehicle than they otherwise would have paid.

4440. Had North Carolina Plaintiffs known of the Theft-Prone Design within the Vehicles, they would not have purchased the Vehicles or would have paid less for them.

4441. As a direct and proximate result of Defendants' omissions, North Carolina Plaintiffs overpaid for the Vehicles because North Carolina Plaintiffs would either have paid less for the Vehicles or would not have purchased the Vehicles at all if the Theft-Prone Design had been disclosed to them.

- 959 -
COMPLAINT

4442. As a direct and proximate result of Defendants' omissions, North Carolina Plaintiffs purchased Vehicles highly susceptible to theft and were forced to pay higher insurance premiums to account for the susceptibility that they did not knowingly accept, purchase, or lease.

4443. As a direct and proximate result of Defendants' omissions, the North Carolina Plaintiffs paid higher insurance premiums and are now left with Vehicles with significantly diminished values.

4444. Accordingly, Defendants are liable to North Carolina Plaintiffs for their damages, including but not limited to the difference in value, increased insurance premiums that North Carolina Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

4445. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, in reckless disregard of the North Carolina Plaintiffs' rights and well-being, and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

4446. North Carolina Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 5. Negligent Misrepresentation.[142]

4447. North Carolina Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

4448. North Carolina Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

4449. Defendants, in the course of their business selling and promoting motor

---

[142] For the names of the North Carolina Plaintiffs who do not allege a claim for Negligent Misrepresentation, see Exhibit E.

- 960 -
COMPLAINT

vehicles, supplied false information, including that the Vehicles were safe and reliable, to guide motor vehicle buyers, including North Carolina Plaintiffs, in their choice of transaction.

4450. Defendants made misrepresentations of material facts concerning the safety and reliability of the Vehicles that they knew or should have known were false. Specifically, Defendants misrepresented that the Vehicles had effective anti-theft equipment or design elements; misrepresented that the Vehicles were safe and reliable forms of transportation; misrepresented that the Vehicles complied with all federal and industry safety and theft prevention standards; and misrepresented the true value of the Vehicles. Defendants supplied this information in the course of their business to guide North Carolina Plaintiffs in their Vehicle selection and induce Plaintiffs to purchase one of Defendants' Vehicles.

4451. Plaintiffs justifiably relied upon Defendants' representations because, as the entities responsible for designing and manufacturing the Vehicles, Defendants held themselves out to be knowledgeable about the Vehicles' components and honest in their promotion of the Vehicles. North Carolina Plaintiffs' reliance was further reasonable given the hidden and technical nature of the Theft-Prone Design and practical inability of North Carolina Plaintiffs to discover the Theft-Prone Design on their own. Because Defendants held the Vehicles out to be in line with industry standards, the representation was not unreasonable on its face and North Carolina Plaintiffs had no apparent reason to doubt the veracity of Defendants' representations.

4452. Defendants had a duty to disclose all relevant information regarding the Vehicles' safety, reliability, quality, and characteristics that would affect the North Carolina Plaintiffs' choice of purchase as consumers.

4453. Defendants failed to exercise reasonable care or competence in communicating the standards of safety, reliability, quality, and characteristics of the Vehicles to the consumers, including North Carolina Plaintiffs, when they failed to disclose the lack of anti-theft prevention technology in the Vehicles. Rather,

Defendants published materials and marketed the Vehicles for years as safe, reliable, and of a quality consistent with the industry standard.

4454. North Carolina Plaintiffs would not have purchased, or would have purchased for a lower price, the Vehicles which Defendants negligently misrepresented as safe, of standard quality, and containing standard trade characteristics, such as anti-theft prevention technology. Additionally, as a direct and proximate result, Plaintiffs have had to pay higher insurance premiums to account for the Vehicles' high susceptibility to theft and are now left with Vehicles that have a lower value than they would have had without the defect.

4455. As a direct and proximate result of North Carolina Plaintiffs' reasonable reliance on Defendants' negligent misrepresentations, North Carolina Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that North Carolina Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

4456. North Carolina Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 6. Negligence.

4457. North Carolina Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

4458. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

4459. Defendants owed a duty of care to North Carolina Plaintiffs. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves, higher insurance premiums, and accelerated depreciation.

4460. Defendants failed to exercise reasonable care in connection with their

manufacture, distribution, sale, and/or leasing of the Vehicles.

4461. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards.  Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant with all applicable federal standards.  This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with North Carolina Plaintiffs.

4462. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS No. 114.

4463. As a direct and proximate result of Defendants' failure to exercise reasonable care, North Carolina Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that North Carolina Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

4464. North Carolina Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 7.    Unjust Enrichment.[143]

4465. North Carolina Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

4466. When they purchased and leased the Vehicles, North Carolina Plaintiffs

---

[143] For the names of the North Carolina Plaintiffs who do not allege a claim for Unjust Enrichment, see Exhibit E.

COMPLAINT

conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

4467. North Carolina Plaintiffs would not have purchased or leased their Vehicles, or would have paid less for them, had they known of the Theft-Prone Design at the time of purchase or lease.  Therefore, Defendants profited from the sale and lease of the Vehicles to the detriment and expense of North Carolina Plaintiffs.

4468. Defendants appreciated these economic benefits.  These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers.  They knew of these benefits because they were aware of the Theft-Prone Design, yet they failed to disclose this knowledge and misled the North Carolina Plaintiffs regarding the nature and quality of the Vehicles while profiting from this deception.

4469. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

4470. North Carolina Plaintiffs are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return North Carolina Plaintiffs to the position they occupied prior to dealing with these Defendants, with such amounts to be determined at trial.

4471. North Carolina Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if North Carolina Plaintiffs' claims for damages are dismissed or judgment is entered in favor of Defendants, North Carolina Plaintiffs will have no adequate legal remedy.

**HH.   Ohio State Law Claims for Relief**

**(Alleged by Ohio Plaintiffs Against All Defendants)**

**1.     Breach of Implied Warranty of Merchantability Under R.C. 1302.27 and 1310.19.**

4472. Ohio Plaintiffs incorporate by reference and reallege each preceding

COMPLAINT

paragraph as though fully set forth herein.

4473. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which motor vehicles are used is implied by law pursuant to R.C. 1302.27 and 1310.19.

4474. At all relevant times, Defendants were and are "merchants" with respect to motor vehicles under R.C. 1302.01(5) and 1310.01(A)(20), "sellers" of motor vehicles under R.C. 1302.01(4), and, with respect to leases, "lessors" of motor vehicles under R.C. 1310.01(A)(16).

4475. At all relevant times, Ohio Plaintiffs who purchased Vehicles in Ohio were and are "buyers" within the meaning of R.C. 1302.01(A)(1).

4476. At all relevant times, Ohio Plaintiffs who leased Vehicles in Ohio were and are "lessees" within the meaning of R.C. 1310.01(A)(14).

4477. At all relevant times, Ohio Plaintiffs' Vehicles (whether purchased or leased) were and are "goods" within the meaning of R.C. 1302.01(A)(8) and 1310.01(A)(8).

4478. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Ohio Plaintiffs with an implied warranty that the purchased and leased Vehicles were in merchantable condition and fit for the ordinary purposes for which they were sold or leased. This implied warranty included that the Vehicles (a) were manufactured, supplied, distributed, and sold by Defendants, (b) were safe and reliable for transportation, (c) complied with all federal, state, and industry motor vehicle regulations and safety standards, including FMVSS No. 114, and (d) were not at an abnormally high risk of theft.

4479. The Vehicles did not comply with the implied warranty of merchantability because the Vehicles were defective and not in merchantable condition at the time of sale and/or lease, were not fit for their ordinary purpose of providing safe and reliable transportation at the time of sale or lease, and would not pass without objection in the

COMPLAINT

trade as they deviated significantly from the industry standard and can be stolen in mere minutes without a key.  Defendants knew at the time of manufacture that the Vehicles contained the Theft-Prone Design and lacked any anti-theft equipment or design elements that effectively prevent theft or comply with FMVSS No. 114.  Therefore, the Defendants knew at the time of manufacture that the Vehicles are at an abnormally high risk of theft and are unsafe and an unreliable form of transportation.  The Theft-Prone Design renders the Vehicles highly vulnerable to theft and a prime target for thieves as they can be easily stolen in seconds.  Defendants knew at the time of manufacture that because their Vehicles did not include any anti-theft measures that satisfied FMVSS No. 114, making their Vehicles more prone to theft and failing to comply with federal regulations, the Vehicles would require larger insurance premiums and would depreciate at a more rapid rate than a comparable vehicle with anti-theft measure that satisfied FMVSS No. 114. Consequently, at the time of sale and/or lease, the Vehicles were not fit for their ordinary purpose of providing safe and reliable transportation.

4480. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable.  Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Ohio Plaintiffs, of the safety defect.  Any time limitations regarding the warranty period were also unconscionable and inadequate to protect Ohio Plaintiffs.  Ohio Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants.  A gross disadvantage in bargaining power existed between Plaintiffs and Defendants, which unreasonably favored Defendants.  Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left Ohio Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

4481. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that Ohio Plaintiffs may seek alternative remedies.  Ohio

Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

4482. Ohio Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure. Ohio Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Ohio Plaintiffs' breach of warranty claims. Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Ohio Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Ohio Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches. To date, Defendants failed to remedy their breaches.

4483. Alternatively, Ohio Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches. Ohio Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

4484. As a direct and proximate result of Defendants' breach of the implied

warranty of merchantability, Ohio Plaintiffs' Vehicles were and are defective, the Theft-Prone Design in the Vehicles has not been remedied, and Ohio Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that Ohio Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

### 2.    Breach of Express Warranty Under R.C. 1302.26.

4485. Ohio Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

4486. During the relevant time periods, Defendants manufactured the Vehicles and Plaintiffs purchased and/or leased the Vehicles from Defendants.

4487. By affixing a VIN plate to each Vehicle at the time of manufacture, Defendants expressly warranted each Vehicles' conformance to "all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture shown."  These statements are an affirmation of fact or promise made to Ohio Plaintiffs as to the Vehicles' condition, quality, safety, and reliability. These statements became the basis of the bargain between Ohio Plaintiffs and Defendants, as Ohio Plaintiffs relied on these statements when making their decisions to purchase and/or lease the Vehicles.  As such, the statements are an express warranty under Ohio law pursuant to R.C. 1302.26.

4488. Ohio Plaintiffs used the Vehicles in accordance with their normal operation and did not misuse or mishandle the Vehicles in any way material to the allegations set forth herein.

4489. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable.  Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Ohio Plaintiffs, of the safety defect.  Any time limitations regarding the warranty period were also unconscionable and inadequate to

COMPLAINT

protect Ohio Plaintiffs. Ohio Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants. A gross disadvantage in bargaining power existed between Plaintiffs and Defendants, which unreasonably favored Defendants. Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left Ohio Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

4490. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that Ohio Plaintiffs may seek alternative remedies. Ohio Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

4491. Ohio Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure. Ohio Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Ohio Plaintiffs' breach of warranty claims. Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Ohio Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Ohio Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a

COMPLAINT

proposed cure to the breaches. To date, Defendants failed to remedy their breaches.

4492. Alternatively, Ohio Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches. Ohio Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

4493. The Vehicles did not perform as promised in accordance with Defendants' express warranty; instead, the Vehicles did not meet all applicable motor vehicle safety and theft prevention standards in effect on the date of manufacture. The Vehicles are capable of being stolen in a matter of seconds without a key and do not comply with the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles do not, in fact, conform to the applicable anti-theft standards.

4494. As a direct and proximate result of Defendants' breaches, Ohio Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that Ohio Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

**3. Violation of Ohio Consumer Sales Practices Act Under R.C. § 1345.01, et seq.**

4495. Ohio Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

4496. Defendants and Ohio Plaintiffs are "persons" within the meaning of R.C. § 1345.01(B).

4497. At all times relevant, Defendants were and are "supplier[s]" within the meaning of R.C. § 1345.01(C).

4498. At all relevant times, Ohio Plaintiffs were and are "consumers" within the

meaning of R.C. § 1345.01(D), and their purchases and leases of the Vehicles were "consumer transactions" within the meaning of R.C. § 1345.01(A).

4499. The Ohio Consumer Sales Practices Act ("Ohio CSPA") prohibits unfair or deceptive acts or practices in connection with a consumer transaction. R.C. § 1345.02.

4500. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Ohio CSPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Theft-Prone Design, as detailed above.

4501. Under the Ohio CSPA, Defendants had an ongoing duty to Ohio Plaintiffs to refrain from unfair or deceptive practices in the course of their business. Specifically, Defendants owed Ohio Plaintiffs a duty to disclose all the material facts concerning the Theft-Prone Design in the Vehicles.

4502. Defendants had exclusive access to and far superior knowledge about facts regarding the Theft-Prone Design, and Defendants knew these facts were not known to or reasonably discoverable by Ohio Plaintiffs.

4503. Given the Theft-Prone Design's hidden and technical nature, Ohio Plaintiffs lack the sophisticated expertise in vehicle components necessary to discover the Theft-Prone Design on their own.

4504. Defendants knew that the Theft-Prone Design gave rise to safety concerns for the consumers who use the Vehicles, and that the Theft-Prone Design would have been a material fact in the Ohio Plaintiffs' decisions to buy or lease the Vehicles.

4505. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Theft-Prone Design. Because they volunteered to provide

information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

4506. As detailed above, the information concerning the Theft-Prone Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

4507. By misrepresenting the Vehicles as safe, reliable, and free from defects, and by failing to disclose and actively concealing the dangers and risks posed by the Theft-Prone Design, Defendants engaged in the following unfair or deceptive business practices in violation of the Ohio CSPA: (a) representing that the Vehicles have characteristics, uses, benefits, and qualities which they do not have and (b) representing that the Vehicles are of a particular standard, quality, and grade when they are not. R.C. § 1345.02(B).

4508. Defendants intended for Ohio Plaintiffs to rely on them to provide adequately designed Vehicles and to honestly and accurately reveal the safety hazards described above.

4509. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Theft-Prone Design. Those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Ohio Plaintiffs, about the true safety and reliability of the Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

4510. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Theft-Prone Design and true characteristics of the Vehicles were material to the decisions of Ohio Plaintiffs to purchase or lease the Vehicles, as Defendants intended. Ohio Plaintiffs were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in

deciding to purchase or lease the Vehicles.

4511. Ohio Plaintiffs' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, and/or otherwise learning that the Vehicles contained the Theft-Prone Design, as alleged above. Ohio Plaintiffs did not, and could not, unravel Defendants' deception on their own.

4512. Had they known the truth about the Theft-Prone Design, Ohio Plaintiffs would not have purchased or leased the Vehicles or would have paid significantly less for them.

4513. Ohio Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

4514. Defendants' violations present a continuing risk to Ohio Plaintiffs and the general public because the Vehicles remain unsafe due to the Theft-Prone Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

4515. Ohio Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action. As such, Defendants are and have been well aware of the Theft-Prone Design and Ohio Plaintiffs' claims. Additionally, Defendants had ample notice provided by the numerous complaints filed against them, internet videos, and news reports. Furthermore, on September 17, 2025, Ohio Plaintiffs sent Defendants written notice letters of Defendants' violations, Plaintiffs' claims, and a proposed cure to the violations. To date, Defendants failed to remedy their violations. Because Defendants failed to remedy their unlawful conduct, Ohio Plaintiffs seek all damages and relief to which Ohio Plaintiffs are entitled.

4516. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile. As alleged above, Defendants have long known that the Vehicles contained the Theft-Prone Design yet did nothing to remedy the Theft-Prone Design.

COMPLAINT

4517. Pursuant to R.C. § 1345.09, Ohio Plaintiffs seek an order (1) enjoining Defendants' unfair and/or deceptive acts, methods, or practices alleged herein, and (2) awarding damages, punitive damages, attorney's fees, costs, and/or any other just and proper relief available under the Ohio CSPA.

### 4. Violation of Ohio Deceptive Trade Practices Act Under R.C. § 4165.01, et seq.

4518. Ohio Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

4519. The Ohio Deceptive Trade Practices Act ("Ohio DTPA") prohibits deceptive trade practices. R.C. § 4165.02(A).

4520. Defendants and Ohio Plaintiffs are "persons" within the meaning of R.C. § 4165.01(D).

4521. Defendants are engaged in "the course of [their] business" within the meaning of R.C. § 4165.02(A).

4522. In the course of their business, Defendants, through their agents, representatives, and subsidiaries, engaged in unfair and unconscionable deceptive acts or practices by knowingly and intentionally concealing, misrepresenting, omitting, and withholding material facts about the Vehicles' quality, reliability, value, and safety. These material facts include that (a) the Vehicles had a hidden Theft-Prone Design which left the Vehicles without standard anti-theft measures and was not reasonably discoverable to consumers, (b) the Vehicles did not comply with federal or industry motor vehicle safety and theft prevention standards, including FMVSS No. 114, (c) the Vehicles were at an abnormally high risk of theft, and (d) the Vehicles have a value which Defendants knowingly misrepresented. Defendants represented that the Vehicles were of a particular standard and quality but sold them at another standard and quality. These unfair and unconscionable deceptive acts or practices violated the Ohio DTPA.

4523. Under the Ohio DTPA, Defendants had an ongoing duty to Plaintiffs as consumers to refrain from unfair or deceptive acts, practices, and representations in the

COMPLAINT

course of their business.  Specifically, Defendants owed the Ohio Plaintiffs a duty to disclose all the material facts concerning the Theft-Prone Design in the Vehicles and to refrain from representing their Vehicles were of a particular standard or quality when they were of another.

4524. Defendants had exclusive and superior knowledge of the Theft-Prone Design, related facts, and the Vehicles' noncompliance with federal and industry safety and theft prevention standard.  Defendants knew these facts were hidden and not reasonably discoverable by consumers, including Ohio Plaintiffs.  Given the Theft-Prone Design's hidden and technical nature, Ohio Plaintiffs lack the sophisticated expertise in vehicle components that would have been necessary to discover the Theft-Prone Design on their own.

4525. Defendants further knew that, because of the Theft-Prone Design, the Vehicles posed a significant safety risk to consumers that used the Vehicles. Defendants knew that the Theft-Prone Design and lack of standard anti-theft measures left the Vehicles at substantially lower value than the price for which they were advertised, marketed, sold, and/or leased.  Defendants knew these material facts would have been material to consumers', including Ohio Plaintiffs', decision to purchase and/or lease the Vehicles.

4526. Defendants nevertheless made intentionally misleading and incomplete affirmative statements and representations about the Vehicles' safety, reliability, value, and conformance with all applicable safety and theft prevention standards, while also concealing, omitting, and withholding material facts from consumers, including Ohio Plaintiffs, at the time the Vehicles were advertised, sold, and/or leased.  Defendants marketed and sold the Vehicles as safe despite their knowledge that the Theft-Prone Design posed a significant safety risk to consumers and the general public.  Through advertisements, marketing materials, and their websites, Defendants made incomplete representations and/or concealed the Vehicles' defective condition. Defendants further misrepresented that the Vehicles were compliant with all applicable motor vehicle

COMPLAINT

safety and theft prevention standards, when in reality they were not. Defendants further marketed and sold/leased the Vehicles at an inflated and misleading price, given the Vehicles' Theft-Prone Design and lack of standard anti-theft equipment and design elements.

4527. Through their misrepresentations, concealment, omissions, and withholding of these material facts, Defendants engaged in unfair and deceptive acts or practices in the course of their business, as prohibited by R.C. § 4165.02(A).

4528. Defendants knew that the Theft-Prone Design gave rise to safety concerns for the consumers who use the Vehicles, and that the Theft-Prone Design would have been a material fact in the Ohio Plaintiffs' decisions to buy or lease Vehicles.

4529. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Theft-Prone Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

4530. As detailed above, the information concerning the Theft-Prone Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

4531. By misrepresenting the Vehicles as safe, reliable, and free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Theft-Prone Design, Defendants engaged in the following unfair or deceptive business practices in violation of the Ohio DTPA: (a) causing likelihood of confusion or of misunderstanding as to the approval or certification of the Vehicles; (b) representing that the Vehicles have characteristics, uses, benefits, and qualities which they do not have; (c) representing that the Vehicles are of a particular standard, quality, and grade when they are not; and (d) advertising the Vehicles with the intent not to sell or lease

them as advertised.  R.C. § 4165.02(A).

4532. Defendants intended for Ohio Plaintiffs to rely on them to provide adequately designed Vehicles and to honestly and accurately reveal the safety hazards described above.

4533. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection and that the Vehicles were not affected by the Theft-Prone Design.  Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Ohio Plaintiffs, about the true safety and reliability of Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

4534. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Theft-Prone Design and true characteristics of the Vehicles were material to the decisions of Ohio Plaintiffs to purchase and lease the Vehicles, as Defendants intended.  Ohio Plaintiffs were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase and lease the Vehicles.

4535. Ohio Plaintiffs' reliance was reasonable, as they had no way of discerning if Defendants' representations were false and misleading or otherwise learning that the Vehicles contained the Theft-Prone Design, as alleged above.  Ohio Plaintiffs did not, and could not, unravel Defendants' deception on their own.

4536. Had they known the truth about the Theft-Prone Design, Ohio Plaintiffs would not have purchased or leased the Vehicles, or Plaintiffs would have paid significantly less for the Vehicles.

4537. Ohio Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

COMPLAINT

4538. Defendants' violations present a continuing risk to Ohio Plaintiffs, as well as to the general public, because the Vehicles remain unsafe due to the Theft-Prone Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

4539. Ohio Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action. As such, Defendants are and have been well aware of the Theft-Prone Design and Ohio Plaintiffs' claims. Additionally, Defendants had ample notice provided by the numerous complaints filed against them, internet videos, and news reports. Furthermore, on September 17, 2025, Ohio Plaintiffs sent Defendants written notice letters of Defendants' violations, Plaintiffs' claims, and a proposed cure to the violations. To date, Defendants failed to remedy their violations. Because Defendants failed to remedy their unlawful conduct, Ohio Plaintiffs seek all damages and relief to which Ohio Plaintiffs are entitled.

4540. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile. As alleged above, Defendants have long known that the Vehicles contained the Theft-Prone Design yet did nothing to remedy the Theft-Prone Design.

4541. Pursuant to R.C. §§ 2727.02 and 4165.03, Ohio Plaintiffs seek an order (1) enjoining Defendants' unfair and/or deceptive acts, methods, or practices alleged herein, and (2) awarding damages, punitive damages, attorney's fees, costs, and/or any other just and proper relief available under the Ohio DTPA.

**5.    Fraud by Misrepresentation, Omission, and Concealment.**

4542. Ohio Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

4543. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards. In reality, however, the Vehicles do not comply with such standards.

4544. Defendants were aware of the Theft-Prone Design when they manufactured, marketed, and sold the Vehicles to Ohio Plaintiffs. Defendants further knew that the Theft-Prone Design gave rise to serious safety risks for the consumers that would use the Vehicles and naturally give rise to higher insurance premiums and accelerated depreciation. At the same time, Defendants were aware of the Federal Motor Vehicle Safety Standards and of the effectiveness of engine immobilizer technology in reducing safety hazards. Defendants were also aware that noncompliance with federal and industry standards lowered the value of the Vehicles and would render the Vehicles difficult to insure.

4545. Defendants knew that the Theft-Prone Design and the safety hazards it posed would have been a material fact in the Ohio Plaintiffs' decisions to buy or lease the Vehicles.

4546. Having been aware of the Theft-Prone Design within the Vehicles and having known that Ohio Plaintiffs could not have reasonably been expected to know of the Theft-Prone Design, Defendants had a duty to disclose the Theft-Prone Design to Plaintiffs in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Theft-Prone Design.

4547. Defendants knowingly made affirmatively false or incomplete statements of material facts as to the Vehicles' safety, reliability, quality, value, and compliance with applicable motor vehicle safety and theft prevention standards, while they intentionally withheld, concealed, omitted, suppressed, and failed to disclose material facts about the Theft-Prone Design, lack of effective anti-theft measures, significant safety risks, and the Vehicles' true value. Defendants volunteered incomplete information about the Vehicles they offered for sale and/or lease to consumers, including false statements as to the Vehicles' safety and compliance with applicable safety and anti-theft standards, while at the same time withholding the existence of the Theft-Prone Design.

4548. Defendants intentionally concealed, omitted, and failed to disclose the

COMPLAINT

Theft-Prone Design and noncompliance with applicable safety and anti-theft standards to Ohio Plaintiffs in connection with the sale and/or lease of the Vehicles. Defendants did not inform consumers, including Ohio Plaintiffs, that the Vehicles Theft-Prone Design left the Vehicles without any effective anti-theft protection which rendered the Vehicles a significant safety risk and non-compliant with federal motor vehicle safety standards. Defendants further knew and failed to disclose that the Theft-Prone Design and lack of standard anti-theft measures left the Vehicles at substantially lower value than the price for which they were advertised, marketed, sold, and/or leased.

4549. Alternatively, Defendants made false misrepresentations about the Theft-Prone Design with such utter disregard and recklessness that their knowledge regarding the Theft-Prone Design and its unsafe and unreliable nature may be inferred.

4550. Defendants had exclusive access to and far superior knowledge regarding the facts of the Theft-Prone Design and Defendants knew these facts were not known to or reasonably discoverable by Ohio Plaintiffs.

4551. Given the Theft-Prone Design's hidden and technical nature, Ohio Plaintiffs lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft-Prone Design on their own.

4552. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Theft-Prone Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

4553. In breach of their duties, Defendants failed to disclose the Theft-Prone Design to Ohio Plaintiffs in connection with the sale or lease of the Vehicles.

4554. The Vehicles' Theft-Prone Design and noncompliance with applicable anti-theft standards were material facts about the safety, reliability, and value of the

Vehicles. A reasonable person would find the Vehicles' lack of industry-standard anti-theft measures and noncompliance with applicable safety standards important in their decision to purchase, lease, and maintain the Vehicles because it would impact safety, availability, the Vehicles' value, and the cost to insure the Vehicles.

4555. Defendants intended for the Ohio Plaintiffs to rely on their omissions and concealment—which Ohio Plaintiffs did by purchasing and leasing the Vehicles at the prices they paid believing that their vehicles would not have a Theft-Prone Design that would affect the quality, reliability, and safety of the Vehicles.

4556. Ohio Plaintiffs' reliance on Defendants' misrepresentations and concealment was reasonable and justifiable, as Ohio Plaintiffs had no way of learning the facts that Defendants had concealed or failed to disclose. Ohio Plaintiffs did not, and could not, unravel Defendants' deception on their own.

4557. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Ohio Plaintiffs.

4558. If Defendants had fully and adequately disclosed the Theft-Prone Design to consumers, Ohio Plaintiffs would have seen such a disclosure.

4559. Through their omissions and concealment with respect to the Theft-Prone Design within the Vehicles, Defendants intended to induce, and did in fact induce, Ohio Plaintiffs to either purchase a Vehicle that they otherwise would not have purchased or pay more for a Vehicle than they otherwise would have paid.

4560. Had Ohio Plaintiffs known of the Theft-Prone Design within the Vehicles, they would not have purchased the Vehicles or would have paid less for them.

4561. As a direct and proximate result of Defendants' omissions, Ohio Plaintiffs overpaid for the Vehicles because Ohio Plaintiffs would either have paid less for the Vehicles or would not have purchased the Vehicles at all if the Theft-Prone Design had

been disclosed to them.

4562. As a direct and proximate result of Defendants' omissions, Ohio Plaintiffs purchased Vehicles highly susceptible to theft and were forced to pay higher insurance premiums to account for the susceptibility that they did not knowingly accept, purchase, or lease.

4563. As a direct and proximate result of Defendants' omissions, the Ohio Plaintiffs paid higher insurance premiums and are now left with Vehicles with significantly diminished values.

4564. Accordingly, Defendants are liable to Ohio Plaintiffs for their damages, including but not limited to the difference in value, increased insurance premiums that Ohio Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

4565. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, in reckless disregard of the Ohio Plaintiffs' rights and well-being, and to enrich themselves.  Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

4566. Ohio Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 6.    Negligent Misrepresentation.

4567. Ohio Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

4568. Defendants, in the course of their business selling and promoting motor vehicles, supplied false information, including that the Vehicles were safe and reliable, to guide motor vehicle buyers, including Ohio Plaintiffs, in their choice of transaction.

4569. Defendants made misrepresentations of material facts concerning the safety and reliability of the Vehicles that they knew or should have known were false.

COMPLAINT

Specifically, Defendants misrepresented that the Vehicles had effective anti-theft equipment or design elements; misrepresented that the Vehicles were safe and reliable forms of transportation; misrepresented that the Vehicles complied with all federal and industry safety and theft prevention standards; and misrepresented the true value of the Vehicles. Defendants supplied this information in the course of their business to guide Ohio Plaintiffs in their Vehicle selection and induce Plaintiffs to purchase one of Defendants' Vehicles.

4570. Ohio Plaintiffs justifiably relied upon Defendants' representations because, as the entities responsible for designing and manufacturing the Vehicles, Defendants held themselves out to be knowledgeable about the Vehicles' components and honest in their promotion of the Vehicles. Ohio Plaintiffs' reliance was further reasonable given the hidden and technical nature of the Theft-Prone Design and practical inability of Ohio Plaintiffs to discover the Theft-Prone Design on their own. Because Defendants held the Vehicles out to be in line with industry standards, the representation was not unreasonable on its face and Ohio Plaintiffs had no apparent reason to doubt the veracity of Defendants' representations.

4571. Defendants had a duty to disclose all relevant information regarding the Vehicles' safety, reliability, quality, and characteristics that would affect the Ohio Plaintiffs' choice of purchase as consumers.

4572. Defendants failed to exercise reasonable care or competence in communicating the standards of safety, reliability, quality, and characteristics of the Vehicles to the consumers, including Ohio Plaintiffs, when they failed to disclose the lack of anti-theft prevention technology in the Vehicles. Rather, Defendants published materials and marketed the Vehicles for years as safe, reliable, and of a quality consistent with the industry standard.

4573. Ohio Plaintiffs would not have purchased, or would have purchased for a lower price, the Vehicles which Defendants negligently misrepresented as safe, of standard quality, and containing standard trade characteristics, such as anti-theft

prevention technology.  Additionally, as a direct and proximate result, Ohio Plaintiffs have had to pay higher insurance premiums to account for the Vehicles' high susceptibility to theft and are now left with Vehicles that have a lower value than they would have had without the defect.

4574. As a direct and proximate result of Ohio Plaintiffs' reasonable reliance on Defendants' negligent misrepresentations, Ohio Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that Ohio Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

4575. Ohio Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

**7.    Negligence.**

4576. Ohio Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

4577. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

4578. Defendants owed a duty of care to Ohio Plaintiffs.  That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves, higher insurance premiums, and accelerated depreciation.

4579. Defendants failed to exercise reasonable care in connection with their manufacture, distribution, sale, and/or leasing of the Vehicles.

4580. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards.  Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant with all applicable federal standards.  This duty precedes the offering of any vehicle for sale in the United States

COMPLAINT

and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Ohio Plaintiffs.

4581. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS No. 114.

4582. As a direct and proximate result of Defendants' failure to exercise reasonable care, Ohio Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that Ohio Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

4583. Ohio Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 8.    Unjust Enrichment.

4584. Ohio Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

4585. When they purchased and leased the Vehicles, Ohio Plaintiffs conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

4586. Ohio Plaintiffs would not have purchased or leased their Vehicles, or would have paid less for them, had they known of the Theft-Prone Design at the time of purchase or lease.  Therefore, Defendants profited from the sale and lease of the Vehicles to the detriment and expense of Ohio Plaintiffs.

4587. Defendants appreciated these economic benefits.  These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers.  They knew of these benefits because they were aware of the Theft-Prone

COMPLAINT

Design, yet they failed to disclose this knowledge and misled the Ohio Plaintiffs regarding the nature and quality of the Vehicles while profiting from this deception.

4588. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, in part because they were procured as a result of their wrongful conduct alleged above.

4589. Ohio Plaintiffs are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Ohio Plaintiffs to the position they occupied prior to dealing with these Defendants, with such amounts to be determined at trial.

4590. Ohio Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Ohio Plaintiffs' claims for damages are dismissed or judgment is entered in favor of Defendants, Ohio Plaintiffs will have no adequate legal remedy.

**II.    Oklahoma State Law Claims for Relief**

**(Alleged by Oklahoma Plaintiffs Against All Defendants)**

**1.    Breach of Implied Warranty of Merchantability Under Okla. Stat. Ann. Tit. §§ 2-314 and 2A-212.**

4591. Oklahoma Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4592. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Okla. Stat. Ann. Tit. §§ 2-314 and 2A-212.

4593. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Okla. Stat. Ann. tit. 12A, §§ 2-104(1) and 2-A-103(3), and "sellers" of motor vehicles under § 2-103(1)(c).

4594. Defendants are and were at all relevant times "lessors" of motor vehicles under Okla. Stat. Ann. tit. 12A, § 2A-103(1)(p).

4595. Oklahoma Plaintiffs who purchased Vehicles in Oklahoma are "buyers"

- 986 -
COMPLAINT

within the meaning of Okla. Stat. Ann. tit. 12A, § 2-103(1)(a).

4596. Oklahoma Plaintiffs who leased Vehicles in Oklahoma are "lessees" within the meaning of Okla. Stat. Ann. tit. 12A, § 2A-103(1)(n).

4597. The Vehicles are and were at all relevant times "goods" within the meaning of Okla. Stat. Ann. tit. 12A, §§ 2-105(1) and 2A-103(1)(h).

4598. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Oklahoma Plaintiffs with an implied warranty that the purchased and leased Vehicles were in merchantable condition and fit for the ordinary purposes for which they were sold or leased. This implied warranty included that the Vehicles (a) were manufactured, supplied, distributed, and sold by Defendants, (b) were safe and reliable for transportation, (c) complied with all federal, state, and industry motor vehicle regulations and safety standards, including FMVSS No. 114, and (d) were not at an abnormally high risk of theft.

4599. The Vehicles did not comply with the implied warranty of merchantability because the Vehicles were defective and not in merchantable condition at the time of sale and/or lease, were not fit for their ordinary purpose of providing safe and reliable transportation at the time of sale or lease, and would not pass without objection in the trade as they deviated significantly from the industry standard and can be stolen in mere minutes without a key. Defendants knew at the time of manufacture that the Vehicles contained the Theft-Prone Design and lacked any anti-theft equipment or design elements that effectively prevent theft or comply with FMVSS No. 114. Therefore, the Defendants knew at the time of manufacture that the Vehicles are at an abnormally high risk of theft and are unsafe and an unreliable form of transportation. The Theft-Prone Design renders the Vehicles highly vulnerable to theft and a prime target for thieves as they can be easily stolen in seconds. Defendants knew at the time of manufacture that because their Vehicles did not include any anti-theft measures that satisfied FMVSS No. 114, making their Vehicles more prone to theft and failing to comply with federal

COMPLAINT

regulations, the Vehicles would require larger insurance premiums and would depreciate at a more rapid rate than a comparable vehicle with anti-theft measure that satisfied FMVSS No. 114. Consequently, at the time of sale and/or lease, the Vehicles were not fit for their ordinary purpose of providing safe and reliable transportation.

4600. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable.  Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Oklahoma Plaintiffs, of the safety defect.  Any time limitations regarding the warranty period were also unconscionable and inadequate to protect Oklahoma Plaintiffs.  Oklahoma Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants.  A gross disadvantage in bargaining power existed between Oklahoma Plaintiffs and Defendants, which unreasonably favored Defendants.  Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left Oklahoma Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

4601. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that Oklahoma Plaintiffs may seek alternative remedies. Oklahoma Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

4602. Oklahoma Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure.  Oklahoma Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Oklahoma Plaintiffs' breach of warranty claims.  Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Oklahoma Plaintiffs' claims.  Defendants have long known of the Theft-

COMPLAINT

Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Oklahoma Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches. To date, Defendants failed to remedy their breaches.

4603. Alternatively, Oklahoma Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches. Oklahoma Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

4604. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Oklahoma Plaintiffs' Vehicles were and are defective, the Theft-Prone Design in the Vehicles has not been remedied, and Oklahoma Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that Oklahoma Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

**2. Breach of Express Warranty Under Okla. Stat. Ann. tit. 12A, § 2-313.**

4605. Oklahoma Plaintiffs incorporate by reference and reallege each preceding

COMPLAINT

paragraph as though fully set forth herein.

4606. During the relevant time periods, Defendants manufactured the Vehicles and Plaintiffs purchased and/or leased the Vehicles from Defendants.

4607. By affixing a VIN plate to each Vehicle at the time of manufacture, Defendants expressly warranted each Vehicles' conformance to "all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture shown." These statements are an affirmation of fact or promise made to Oklahoma Plaintiffs as to the Vehicles' condition, quality, safety, and reliability. These statements became the basis of the bargain between Oklahoma Plaintiffs and Defendants, as Oklahoma Plaintiffs relied on these statements when making their decisions to purchase and/or lease the Vehicles. As such, the statements are an express warranty under Oklahoma law pursuant to Okla. Stat. Ann. tit. 12A, § 2-313.

4608. Oklahoma Plaintiffs used the Vehicles in accordance with their normal operation and did not misuse or mishandle the Vehicles in any way material to the allegations set forth herein.

4609. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable. Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Oklahoma Plaintiffs, of the safety defect. Any time limitations regarding the warranty period were also unconscionable and inadequate to protect Oklahoma Plaintiffs. Oklahoma Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants. A gross disadvantage in bargaining power existed between Oklahoma Plaintiffs and Defendants, which unreasonably favored Defendants. Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left Oklahoma Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

COMPLAINT

4610. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that Oklahoma Plaintiffs may seek alternative remedies. Oklahoma Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

4611. Oklahoma Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure. Oklahoma Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Oklahoma Plaintiffs' breach of warranty claims. Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Oklahoma Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Oklahoma Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches. To date, Defendants failed to remedy their breaches.

4612. Alternatively, Oklahoma Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches. Oklahoma Plaintiffs therefore have no reason to believe that Defendants would have

COMPLAINT

remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

4613. The Vehicles did not perform as promised in accordance with Defendants' express warranty; instead, the Vehicles did not meet all applicable motor vehicle safety and theft prevention standards in effect on the date of manufacture. The Vehicles are capable of being stolen in a matter of seconds without a key and do not comply with the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles do not, in fact, conform to the applicable anti-theft standards.

4614. As a direct and proximate result of Defendants' breaches, Oklahoma Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that Oklahoma Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

**3.    Violation of Oklahoma Consumer Protection Act Under Okla. Stat. Ann. tit. 15, § 751, et seq.**

4615. Oklahoma Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4616. Oklahoma Plaintiffs are "persons" within the meaning of Okla. Stat. tit. 15, § 752(1).

4617. Defendants were and are engaged in "consumer transactions" within the meaning of Okla. Stat. tit. 15, § 752(2).

4618. The Vehicles are "merchandise" within the meaning of Okla. Stat. tit. 15, § 752(7).

4619. The Oklahoma Consumer Protection Act ("Oklahoma CPA") prohibits deceptive and unfair trade practices.

4620. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Oklahoma CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material

COMPLAINT

facts regarding the quality, reliability, and safety of the Vehicles and the Theft-Prone Design, as detailed above.

4621. Under the Oklahoma CPA, Defendants had an ongoing duty to Plaintiffs to refrain from unfair or deceptive practices in the course of their business. Specifically, Defendants owed Oklahoma Plaintiffs a duty to disclose all the material facts concerning the Theft-Prone Design in the Vehicles.

4622. Defendants had exclusive access to and far superior knowledge about facts regarding the Theft-Prone Design, and Defendants knew these facts were not known to or reasonably discoverable by Oklahoma Plaintiffs.

4623. Given the Theft-Prone Design's hidden and technical nature, Oklahoma Plaintiffs lack the sophisticated expertise in vehicle components necessary to discover the Theft-Prone Design on their own.

4624. Defendants knew that the Theft-Prone Design gave rise to safety concerns for the consumers who use the Vehicles, and that the Theft-Prone Design would have been a material fact in the Oklahoma Plaintiffs' decisions to buy or lease the Vehicles.

4625. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Theft-Prone Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

4626. As detailed above, the information concerning the Theft-Prone Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

4627. By misrepresenting the Vehicles as safe and reliable and by failing to disclose and actively concealing the dangers and risk posed by the Theft-Prone Design, Defendants engaged in one or more of the following unfair or deceptive business

practices prohibited by Okla. Stat. tit. 15, § 753:

4628. Representing that the Vehicles are approved and certified as safe and reliable;

4629. Representing that the Vehicles are of a particular standard, quality, and grade when they are not;

4630. Advertising the Vehicles are safe and free from defects, with the intent not to sell or lease them as advertised; and

4631. Engaging in the immoral, unethical, oppressive, unscrupulous, or substantially injurious behavior to consumers described above, which offends established public policy. Okla. Stat. tit. 15, §§ 753(5), (7), (8), and (20).

4632. Defendants intended for Oklahoma Plaintiffs to rely on them to provide adequately designed Vehicles and to honestly and accurately reveal the safety hazards described above.

4633. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Theft-Prone Design. Those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Oklahoma Plaintiffs, about the true safety and reliability of the Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

4634. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Theft-Prone Design and true characteristics of the Vehicles were material to the decisions of Oklahoma Plaintiffs to purchase or lease the Vehicles, as Defendants intended. Oklahoma Plaintiffs were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase or lease the Vehicles.

4635. Oklahoma Plaintiffs' reliance was reasonable, as they had no way of

COMPLAINT

discerning that Defendants' representations were false and misleading, and/or otherwise learning that the Vehicles contained the Theft-Prone Design, as alleged above. Oklahoma Plaintiffs did not, and could not, unravel Defendants' deception on their own.

4636. Had they known the truth about the Theft-Prone Design, Oklahoma Plaintiffs would not have purchased or leased the Vehicles or would have paid significantly less for them.

4637. Oklahoma Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

4638. Defendants' violations present a continuing risk to Oklahoma Plaintiffs and the general public because the Vehicles remain unsafe due to the Theft-Prone Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

4639. Oklahoma Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action. As such, Defendants are and have been well aware of the Theft-Prone Design and Oklahoma Plaintiffs' claims. Additionally, Defendants had ample notice provided by the numerous complaints filed against them, internet videos, and news reports. Furthermore, on September 17, 2025, Oklahoma Plaintiffs sent Defendants written notice letters of Defendants' violations, Plaintiffs' claims, and a proposed cure to the violations. To date, Defendants failed to remedy their violations. Because Defendants failed to remedy their unlawful conduct, Oklahoma Plaintiffs seek all damages and relief to which Oklahoma Plaintiffs are entitled.

4640. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile. As alleged above, Defendants have long known that the Vehicles contained the Theft-Prone Design yet did nothing to remedy the Theft-Prone Design.

4641. Pursuant to Okla. Stat. tit. 15, § 761.1, the Oklahoma Plaintiffs seek an

COMPLAINT

order (1) enjoining Defendants' unfair and/or deceptive acts, methods, or practices alleged herein, and (2) awarding damages, punitive damages, attorney's fees, costs, and/or any other just and proper relief available under the Oklahoma CPA.

### 4. Fraud by Omission and Concealment.

4642. Oklahoma Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

4643. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards. In reality, however, the Vehicles do not comply with such standards.

4644. Defendants were aware of the Theft-Prone Design when they manufactured, marketed, and sold the Vehicles to Oklahoma Plaintiffs. Defendants further knew that the Theft-Prone Design gave rise to serious safety risks for the consumers that would use the Vehicles and naturally give rise to higher insurance premiums and accelerated depreciation. At the same time, Defendants were aware of the Federal Motor Vehicle Safety Standards and of the effectiveness of engine immobilizer technology in reducing safety hazards. Defendants were also aware that noncompliance with federal and industry standards lowered the value of the Vehicles and would render the Vehicles difficult to insure..

4645. Defendants knew that the Theft-Prone Design and the safety hazards it posed would have been a material fact in the Plaintiffs' decisions to buy or lease the Vehicles.

4646. Having been aware of the Theft-Prone Design within the Vehicles and having known that Oklahoma Plaintiffs could not have reasonably been expected to know of the Theft-Prone Design, Defendants had a duty to disclose the Theft-Prone Design to Oklahoma Plaintiffs in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Theft-Prone Design.

4647. Defendants knowingly made affirmatively false or incomplete statements of material facts as to the Vehicles' safety, reliability, quality, value, and compliance

with applicable motor vehicle safety and theft prevention standards, while they intentionally withheld, concealed, omitted, suppressed, and failed to disclose material facts about the Theft-Prone Design, lack of effective anti-theft measures, significant safety risks, and the Vehicles' true value.  Defendants volunteered incomplete information about the Vehicles they offered for sale and/or lease to consumers, including false statements as to the Vehicles' safety and compliance with applicable safety and anti-theft standards, while at the same time withholding the existence of the Theft-Prone Design.

4648. Defendants intentionally concealed, omitted, and failed to disclose the Theft-Prone Design and noncompliance with applicable safety and anti-theft standards to Oklahoma Plaintiffs in connection with the sale and/or lease of the Vehicles. Defendants did not inform consumers, including Oklahoma Plaintiffs, that the Vehicles Theft-Prone Design left the Vehicles without any effective anti-theft protection which rendered the Vehicles a significant safety risk and non-compliant with federal motor vehicle safety standards.  Defendants further knew and failed to disclose that the Theft-Prone Design and lack of standard anti-theft measures left the Vehicles at substantially lower value than the price for which they were advertised, marketed, sold, and/or leased.

4649. Alternatively, Defendants made false misrepresentations about the Theft-Prone Design with such utter disregard and recklessness that their knowledge regarding the Theft-Prone Design and its unsafe and unreliable nature may be inferred.

4650. Defendants had exclusive access to and far superior knowledge regarding the facts of the Theft-Prone Design and Defendants knew these facts were not known to or reasonably discoverable by Oklahoma Plaintiffs.

4651. Given the Theft-Prone Design's hidden and technical nature, Oklahoma Plaintiffs lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft-Prone Design on their own.

4652. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known

COMPLAINT

safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Theft-Prone Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

4653. In breach of their duties, Defendants failed to disclose the Theft-Prone Design to Plaintiffs in connection with the sale or lease of the Vehicles.

4654. The Vehicles' Theft-Prone Design and noncompliance with applicable anti-theft standards were material facts about the safety, reliability, and value of the Vehicles. A reasonable person would find the Vehicles' lack of industry-standard anti-theft measures and noncompliance with applicable safety standards important in their decision to purchase, lease, and maintain the Vehicles because it would impact safety, availability, the Vehicles' value, and the cost to insure the Vehicles.

4655. Defendants intended for the Oklahoma Plaintiffs to rely on their omissions and concealment—which Oklahoma Plaintiffs did by purchasing and leasing the Vehicles at the prices they paid believing that their vehicles would not have a Theft-Prone Design that would affect the quality, reliability, and safety of the Vehicles.

4656. Oklahoma Plaintiffs' reliance on Defendants' misrepresentations and concealment was reasonable and justifiable, as Oklahoma Plaintiffs had no way of learning the facts that Defendants had concealed or failed to disclose. Oklahoma Plaintiffs did not, and could not, unravel Defendants' deception on their own.

4657. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Oklahoma Plaintiffs.

4658. If Defendants had fully and adequately disclosed the Theft-Prone Design to consumers, Oklahoma Plaintiffs would have seen such a disclosure.

COMPLAINT

4659. Through their omissions and concealment with respect to the Theft-Prone Design within the Vehicles, Oklahoma Defendants intended to induce, and did in fact induce, Oklahoma Plaintiffs to either purchase a Vehicle that they otherwise would not have purchased or pay more for a Vehicle than they otherwise would have paid.

4660. Had Oklahoma Plaintiffs known of the Theft-Prone Design within the Vehicles, they would not have purchased the Vehicles or would have paid less for them.

4661. As a direct and proximate result of Defendants' omissions, Oklahoma Plaintiffs overpaid for the Vehicles because Oklahoma Plaintiffs would either have paid less for the Vehicles or would not have purchased the Vehicles at all if the Theft-Prone Design had been disclosed to them.

4662. As a direct and proximate result of Defendants' omissions, Oklahoma Plaintiffs purchased Vehicles highly susceptible to theft and were forced to pay higher insurance premiums to account for the susceptibility that they did not knowingly accept, purchase, or lease.

4663. As a direct and proximate result of Defendants' omissions, the Oklahoma Plaintiffs paid higher insurance premiums and are now left with Vehicles with significantly diminished values.

4664. Accordingly, Defendants are liable to Oklahoma Plaintiffs for their damages, including but not limited to the difference in value, increased insurance premiums that Oklahoma Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

4665. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, in reckless disregard of the Oklahoma Plaintiffs' rights and well-being, and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

4666. Oklahoma Plaintiffs plead this claim separately, as well as in the

- 999 -

COMPLAINT

alternative to their claims for damages.

### 5.    Negligent Misrepresentation.

4667. Oklahoma Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

4668. In Oklahoma, a claim for relief based on negligent misrepresentation arises under statute, Okla. Stat. Tit. 15 § 58, as opposed to the general law of negligence. *See Farrar v. Chitwood*, 282 P. 2d 729 (Sup. Ct. Okla. 1955). However, unlike actual fraud, Okla. Stat. Tit. 15 § 58(2) states: "[t]he positive assertion in a manner not warranted by the information of the person making it, of that which is not true through he believes it to be true," which requires no knowledge or belief in falsity, but instead only requires a statement based on insufficient evidence. No intent is required.

4669. Defendants, in the course of their business selling and promoting motor vehicles, supplied false information, including that the Vehicles were safe and reliable, to guide motor vehicle buyers, including Oklahoma Plaintiffs, in their choice of transaction.

4670. Defendants made misrepresentations of material facts concerning the safety and reliability of the Vehicles that they knew or should have known were false. Specifically, Defendants misrepresented that the Vehicles had effective anti-theft equipment or design elements; misrepresented that the Vehicles were safe and reliable forms of transportation; misrepresented that the Vehicles complied with all federal and industry safety and theft prevention standards; and misrepresented the true value of the Vehicles. Defendants supplied this information in the course of their business to guide Oklahoma Plaintiffs in their Vehicle selection and induce Oklahoma Plaintiffs to purchase one of Defendants' Vehicles.

4671. Oklahoma Plaintiffs justifiably relied upon Defendants' representations because, as the entities responsible for designing and manufacturing the Vehicles, Defendants held themselves out to be knowledgeable about the Vehicles' components and honest in their promotion of the Vehicles. Oklahoma Plaintiffs' reliance was further

COMPLAINT

reasonable given the hidden and technical nature of the Theft-Prone Design and practical inability of Oklahoma Plaintiffs to discover the Theft-Prone Design on their own. Because Defendants held the Vehicles out to be in line with industry standards, the representation was not unreasonable on its face and Oklahoma Plaintiffs had no apparent reason to doubt the veracity of Defendants' representations.

4672. Defendants had a duty to disclose all relevant information regarding the Vehicles' safety, reliability, quality, and characteristics that would affect the Plaintiffs' choice of purchase as consumers.

4673. Defendants failed to exercise reasonable care or competence in communicating the standards of safety, reliability, quality, and characteristics of the Vehicles to the consumers, including Oklahoma Plaintiffs, when they failed to disclose the lack of anti-theft prevention technology in the Vehicles. Rather, Defendants published materials and marketed the Vehicles for years as safe, reliable, and of a quality consistent with the industry standard.

4674. Oklahoma Plaintiffs would not have purchased, or would have purchased for a lower price, the Vehicles which Defendants negligently misrepresented as safe, of standard quality, and containing standard trade characteristics, such as anti-theft prevention technology. Additionally, as a direct and proximate result, Oklahoma Plaintiffs have had to pay higher insurance premiums to account for the Vehicles' high susceptibility to theft and are now left with Vehicles that have a lower value than they would have had without the defect.

4675. As a direct and proximate result of Oklahoma Plaintiffs' reasonable reliance on Defendants' negligent misrepresentations, Oklahoma Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that Oklahoma Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

COMPLAINT

4676. Oklahoma Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

**6.    Negligence.**

4677. Oklahoma Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

4678. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

4679. Defendants owed a duty of care to Oklahoma Plaintiffs.  That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves, higher insurance premiums, and accelerated depreciation.

4680. Defendants failed to exercise reasonable care in connection with their manufacture, distribution, sale, and/or leasing of the Vehicles.

4681. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards.  Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant with all applicable federal standards.  This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Oklahoma Plaintiffs.

4682. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS No. 114.

4683. As a direct and proximate result of Defendants' failure to exercise reasonable care, Oklahoma Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in

value, increased insurance premiums that Oklahoma Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

4684. Oklahoma Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 7. Unjust Enrichment.

4685. Oklahoma Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

4686. When they purchased and leased the Vehicles, Oklahoma Plaintiffs conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

4687. Oklahoma Plaintiffs would not have purchased or leased their Vehicles, or would have paid less for them, had they known of the Theft-Prone Design at the time of purchase or lease. Therefore, Defendants profited from the sale and lease of the Vehicles to the detriment and expense of Oklahoma Plaintiffs.

4688. Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft-Prone Design, yet they failed to disclose this knowledge and misled the Oklahoma Plaintiffs regarding the nature and quality of the Vehicles while profiting from this deception.

4689. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

4690. Oklahoma Plaintiffs are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Oklahoma Plaintiffs to the position they occupied prior to dealing with these Defendants, with such amounts to be determined at trial.

4691. Oklahoma Plaintiffs plead this claim separately, as well as in the

COMPLAINT

alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Oklahoma Plaintiffs' claims for damages are dismissed or judgment is entered in favor of Defendants, Oklahoma Plaintiffs will have no adequate legal remedy.

**JJ.    Oregon State Law Claims for Relief**

**(Alleged by Oregon Plaintiffs Against All Defendants)**

**1.    Breach of Implied Warranty of Merchantability (ORS § 72.3140).**

4692. Oregon Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4693. Pursuant to ORS § 72.3140, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.

4694. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under ORS § 72.1040

4695. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under ORS § 72A.1030(1)(p).

4696. Oregon Plaintiffs who purchased Vehicles in Oregon are "buyers" within the meaning of ORS § 72.1030(1)(a).

4697. Oregon Plaintiffs who leased Vehicles in Oregon are "lessees" within the meaning of ORS § 72A.1030(1)(n).

4698. The Vehicles are and were at all relevant times "goods" within the meaning of ORS § 72.1050(1).

4699. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Oregon Plaintiffs with an implied warranty that the purchased and leased Vehicles were in merchantable condition and fit for the ordinary purposes for which they were sold or leased. This implied warranty included that the Vehicles (a) were manufactured, supplied, distributed, and sold by Defendants, (b) were safe and reliable for transportation,

COMPLAINT

(c) complied with all federal, state, and industry motor vehicle regulations and safety standards, including FMVSS No. 114, and (d) were not at an abnormally high risk of theft.

4700. The Vehicles did not comply with the implied warranty of merchantability because the Vehicles were defective and not in merchantable condition at the time of sale and/or lease, were not fit for their ordinary purpose of providing safe and reliable transportation at the time of sale or lease, and would not pass without objection in the trade as they deviated significantly from the industry standard and can be stolen in mere minutes without a key.  Defendants knew at the time of manufacture that the Vehicles contained the Theft-Prone Design and lacked any anti-theft equipment or design elements that effectively prevent theft or comply with FMVSS No. 114.  Therefore, the Defendants knew at the time of manufacture that the Vehicles are at an abnormally high risk of theft and are unsafe and an unreliable form of transportation.  The Theft-Prone Design renders the Vehicles highly vulnerable to theft and a prime target for thieves as they can be easily stolen in seconds.  Defendants knew at the time of manufacture that because their Vehicles did not include any anti-theft measures that satisfied FMVSS No. 114, making their Vehicles more prone to theft and failing to comply with federal regulations, the Vehicles would require larger insurance premiums and would depreciate at a more rapid rate than a comparable vehicle with anti-theft measure that satisfied FMVSS No. 114. Consequently, at the time of sale and/or lease, the Vehicles were not fit for their ordinary purpose of providing safe and reliable transportation.

4701. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable.  Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Oregon Plaintiffs, of the safety defect.  Any time limitations regarding the warranty period were also unconscionable and inadequate to protect Oregon Plaintiffs.  Oregon Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants.  A

COMPLAINT

gross disadvantage in bargaining power existed between Oregon Plaintiffs and Defendants, which unreasonably favored Defendants.   Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left Oregon Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

4702. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that Oregon Plaintiffs may seek alternative remedies.  Oregon Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

4703. Oregon Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure.  Oregon Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Oregon Plaintiffs' breach of warranty claims.  Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Oregon Plaintiffs' claims.  Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles.  Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count.  Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Oregon Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches.  To date, Defendants failed to remedy their breaches.

4704. Alternatively, Oregon Plaintiffs were not required to provide Defendants

COMPLAINT

with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches.  Oregon Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

4705. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Oregon Plaintiffs' Vehicles were and are defective, the Theft-Prone Design in the Vehicles has not been remedied, and Oregon Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that Oregon Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

### 2. Breach of Express Warranty (ORS § 72.3130).

4706. Oregon Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

4707. During the relevant time periods, Defendants manufactured the Vehicles and Plaintiffs purchased and/or leased the Vehicles from Defendants.

4708. By affixing a VIN plate to each Vehicle at the time of manufacture, Defendants expressly warranted each Vehicles' conformance to "all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture shown."  These statements are an affirmation of fact or promise made to Oregon Plaintiffs as to the Vehicles' condition, quality, safety, and reliability. These statements became the basis of the bargain between Oregon Plaintiffs and Defendants, as Oregon Plaintiffs relied on these statements when making their decisions to purchase and/or lease the Vehicles.  As such, the statements are an express warranty under Oregon law pursuant to ORS § 72.3130.

4709. After purchasing or leasing the Vehicles, Oregon Plaintiffs used the

Vehicles in accordance with their normal operation and did not misuse or mishandle the Vehicles in any way material to the allegations set forth herein.

4710. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable. Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Oregon Plaintiffs, of the safety defect. Any time limitations regarding the warranty period were also unconscionable and inadequate to protect Oregon Plaintiffs. Oregon Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants. A gross disadvantage in bargaining power existed between Oregon Plaintiffs and Defendants, which unreasonably favored Defendants. Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left Oregon Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

4711. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that Oregon Plaintiffs may seek alternative remedies. Oregon Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

4712. Oregon Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure. Oregon Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Oregon Plaintiffs' breach of warranty claims. Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Oregon Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance

COMPLAINT

with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Oregon Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches. To date, Defendants failed to remedy their breaches.

4713. Alternatively, Oregon Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches. Oregon Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

4714. The Vehicles did not perform as promised in accordance with Defendants' express warranty; instead, the Vehicles did not meet all applicable motor vehicle safety and theft prevention standards in effect on the date of manufacture. The Vehicles are capable of being stolen in a matter of seconds without a key and do not comply with the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles do not, in fact, conform to the applicable anti-theft standards.

4715. As a direct and proximate result of Defendants' breaches, Oregon Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that Oregon Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

### 3. Violation of Oregon's Unlawful Trade Practices Act (ORS § 646.607).

COMPLAINT

4716. Oregon Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

4717. Defendants and Oregon Plaintiffs are "persons" within the meaning of ORS § 646.605(4).

4718. The Oregon Unlawful Trade Practices Act ORS § 646.607 ("Oregon UTPA") states that it is unlawful trade practice to employ unconscionable tactics in connection with selling goods.

4719. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Oregon UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Theft-Prone Design, as detailed above.

4720. Under the Oregon UTPA, Defendants had an ongoing duty to Oregon Plaintiffs to refrain from unfair or deceptive practices in the course of their business. Specifically, Defendants owed Oregon Plaintiffs a duty to disclose all the material facts concerning the Theft-Prone Design in the Vehicles, because:

a. Defendants expressly warranted that the Vehicles conformed with applicable anti-theft standards when that was not true due to the Theft-Prone Design of the Vehicles;

b. Defendants had exclusive access to and far superior knowledge about facts regarding the Theft-Prone Design and Defendants knew these facts were not known to or reasonably discoverable by Oregon Plaintiffs;

c. Given the hidden and technical nature of the Theft-Prone Design, Oregon Plaintiffs lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft-Prone Design on their own;

d. Defendants knew that the Theft-Prone Design gave rise to safety concerns for the Oregon Plaintiffs who use the Vehicles, and the Theft-Prone Design would have been a material fact in the Oregon Plaintiffs' decisions to buy

or lease Vehicles, as any Oregon Plaintiff would hesitate to purchase a vehicle so easy to steal that it did not meet federal or industry standards for anti-theft protection; and

e. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally misrepresented, concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Theft-Prone Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to the consumers, Defendants had the duty to disclose the whole truth.

4721. As detailed above, the information concerning the Theft-Prone Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

4722. By misrepresenting the Vehicles as safe, reliable, and compliant with applicable anti-theft standards, and by failing to disclose and actively concealing the dangers and risk posed by the Theft-Prone Design, Defendants engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce, as prohibited by the Oregon UTPA.

4723. Defendants intended for Oregon Plaintiffs to rely on them to provide adequately designed Vehicles and to honestly and accurately reveal the safety hazards described above.

4724. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Theft-Prone Design. Those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers,

COMPLAINT

including Oregon Plaintiffs, about the true safety and reliability of the Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

4725. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Theft-Prone Design and true characteristics of the Vehicles were material to the decisions of Oregon Plaintiffs to purchase or lease the Vehicles, as Defendants intended.  Oregon Plaintiffs were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase or lease the Vehicles.

4726. Oregon Plaintiffs' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, and/or otherwise learning that the Vehicles contained the Theft-Prone Design, as alleged above.  Oregon Plaintiffs did not, and could not, unravel Defendants' deception on their own.

4727. Had they known the truth about the Theft-Prone Design, Oregon Plaintiffs would not have purchased or leased the Vehicles or would have paid significantly less for them.

4728. Oregon Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

4729. Defendants' violations present a continuing risk to Oregon Plaintiffs and the general public because the Vehicles remain unsafe due to the Theft-Prone Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

4730. Oregon Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action.  As such, Defendants are and have been well aware of the Theft-Prone Design and Oregon Plaintiffs' claims.  Additionally, Defendants had ample notice provided by the numerous complaints filed against them, internet videos, and news reports. Furthermore, on September 17, 2025, Oregon Plaintiffs sent Defendants written notice

COMPLAINT

letters of Defendants' violations, Plaintiffs' claims, and a proposed cure to the violations. To date, Defendants failed to remedy their violations. Because Defendants failed to remedy their unlawful conduct, Oregon Plaintiffs seek all damages and relief to which Oregon Plaintiffs are entitled.

4731. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile. As alleged above, Defendants have long known that the Vehicles contained the Theft-Prone Design yet did nothing to remedy the Theft-Prone Design.

4732. Oregon Plaintiffs seek an order (1) enjoining Defendants' unfair and/or deceptive acts, methods, or practices alleged herein, and (2) awarding damages, punitive damages, attorney's fees, costs, and/or any other just and proper relief available under the Oregon UTPA.

**4. Fraud by Omission and Concealment.**

4733. Oregon Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

4734. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards. In reality, however, the Vehicles do not comply with such standards.

4735. Defendants were aware of the Theft-Prone Design when they manufactured, marketed, and sold the Vehicles to Oregon Plaintiffs. Defendants further knew that the Theft-Prone Design gave rise to serious safety risks for the consumers that would use the Vehicles and naturally give rise to higher insurance premiums and accelerated depreciation. At the same time, Defendants were aware of the Federal Motor Vehicle Safety Standards and of the effectiveness of engine immobilizer technology in reducing safety hazards. Defendants were also aware that noncompliance with federal and industry standards lowered the value of the Vehicles and would render the Vehicles difficult to insure.

4736. Defendants knew that the Theft-Prone Design and the safety hazards it

COMPLAINT

posed would have been a material fact in the Oregon Plaintiffs' decisions to buy or lease the Vehicles.

4737. Having been aware of the Theft-Prone Design within the Vehicles and having known that Oregon Plaintiffs could not have reasonably been expected to know of the Theft-Prone Design, Defendants had a duty to disclose the Theft-Prone Design to Oregon Plaintiffs in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Theft-Prone Design.

4738. Defendants knowingly made affirmatively false or incomplete statements of material facts as to the Vehicles' safety, reliability, quality, value, and compliance with applicable motor vehicle safety and theft prevention standards, while they intentionally withheld, concealed, omitted, suppressed, and failed to disclose material facts about the Theft-Prone Design, lack of effective anti-theft measures, significant safety risks, and the Vehicles' true value. Defendants volunteered incomplete information about the Vehicles they offered for sale and/or lease to consumers, including false statements as to the Vehicles' safety and compliance with applicable safety and anti-theft standards, while at the same time withholding the existence of the Theft-Prone Design.

4739. Defendants intentionally concealed, omitted, and failed to disclose the Theft-Prone Design and noncompliance with applicable safety and anti-theft standards to Oregon Plaintiffs in connection with the sale and/or lease of the Vehicles. Defendants did not inform consumers, including Oregon Plaintiffs, that the Vehicles Theft-Prone Design left the Vehicles without any effective anti-theft protection which rendered the Vehicles a significant safety risk and non-compliant with federal motor vehicle safety standards. Defendants further knew and failed to disclose that the Theft-Prone Design and lack of standard anti-theft measures left the Vehicles at substantially lower value than the price for which they were advertised, marketed, sold, and/or leased.

4740. Alternatively, Defendants made false misrepresentations about the Theft-Prone Design with such utter disregard and recklessness that their knowledge regarding

the Theft-Prone Design and its unsafe and unreliable nature may be inferred.

4741. Defendants had exclusive access to and far superior knowledge regarding the facts of the Theft-Prone Design and Defendants knew these facts were not known to or reasonably discoverable by Oregon Plaintiffs.

4742. Given the Theft-Prone Design's hidden and technical nature, Oregon Plaintiffs lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft-Prone Design on their own.

4743. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect.  In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Theft-Prone Design.  Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

4744. In breach of their duties, Defendants failed to disclose the Theft-Prone Design to Oregon Plaintiffs in connection with the sale or lease of the Vehicles.

4745. The Vehicles' Theft-Prone Design and noncompliance with applicable anti-theft standards were material facts about the safety, reliability, and value of the Vehicles.  A reasonable person would find the Vehicles' lack of industry-standard anti-theft measures and noncompliance with applicable safety standards important in their decision to purchase, lease, and maintain the Vehicles because it would impact safety, availability, the Vehicles' value, and the cost to insure the Vehicles.

4746. Defendants intended for the Oregon Plaintiffs to rely on their omissions and concealment—which Plaintiffs did by purchasing and leasing the Vehicles at the prices they paid believing that their vehicles would not have a Theft-Prone Design that would affect the quality, reliability, and safety of the Vehicles.

4747. Oregon Plaintiffs' reliance on Defendants' misrepresentations and concealment was reasonable and justifiable, as Oregon Plaintiffs had no way of learning

COMPLAINT

the facts that Defendants had concealed or failed to disclose.  Oregon Plaintiffs did not, and could not, unravel Defendants' deception on their own.

4748. Defendants actively misrepresented, concealed, and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products.  They did so at the expense of Oregon Plaintiffs.

4749. If Defendants had fully and adequately disclosed the Theft-Prone Design to consumers, Oregon Plaintiffs would have seen such a disclosure.

4750. Through their misstatements, omissions, and concealment with respect to the Theft-Prone Design within the Vehicles, Defendants intended to induce, and did in fact induce, Oregon Plaintiffs to either purchase a Vehicle that they otherwise would not have purchased or pay more for a Vehicle than they otherwise would have paid.

4751. Had Oregon Plaintiffs known of the Theft-Prone Design within the Vehicles, they would not have purchased the Vehicles or would have paid less for them.

4752. As a direct and proximate result of Defendants' omissions, Oregon Plaintiffs overpaid for the Vehicles because Plaintiffs would either have paid less for the Vehicles or would not have purchased the Vehicles at all if the Theft-Prone Design had been disclosed to them.

4753. As a direct and proximate result of Defendants' omissions, Oregon Plaintiffs purchased Vehicles highly susceptible to theft and were forced to pay higher insurance premiums to account for the susceptibility that they did not knowingly accept, purchase, or lease.

4754. As a direct and proximate result of Defendants' omissions, the Oregon Plaintiffs paid higher insurance premiums and are now left with Vehicles with significantly diminished values.

4755. Accordingly, Defendants are liable to Oregon Plaintiffs for their damages, including but not limited to the difference in value, increased insurance premiums that

COMPLAINT

Oregon Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

4756. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, in reckless disregard of the Oregon Plaintiffs' rights and well-being, and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

4757. Oregon Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 5.    Negligent Misrepresentation.

4758. Oregon Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

4759. Defendants, in the course of their business selling and promoting motor vehicles, supplied false information, including that the Vehicles were safe and reliable, to guide motor vehicle buyers, including Oregon Plaintiffs, in their choice of transaction.

4760. Defendants made misrepresentations of material facts concerning the safety and reliability of the Vehicles that they knew or should have known were false. Specifically, Defendants misrepresented that the Vehicles had effective anti-theft equipment or design elements; misrepresented that the Vehicles were safe and reliable forms of transportation; misrepresented that the Vehicles complied with all federal and industry safety and theft prevention standards; and misrepresented the true value of the Vehicles. Defendants supplied this information in the course of their business to guide Oregon Plaintiffs in their Vehicle selection and induce Plaintiffs to purchase one of Defendants' Vehicles.

4761. Oregon Plaintiffs justifiably relied upon Defendants' representations because, as the entities responsible for designing and manufacturing the Vehicles,

- 1017 -
COMPLAINT

Defendants held themselves out to be knowledgeable about the Vehicles' components and honest in their promotion of the Vehicles. Oregon Plaintiffs' reliance was further reasonable given the hidden and technical nature of the Theft-Prone Design and practical inability of Oregon Plaintiffs to discover the Theft-Prone Design on their own. Because Defendants held the Vehicles out to be in line with industry standards, the representation was not unreasonable on its face and Oregon Plaintiffs had no apparent reason to doubt the veracity of Defendants' representations.

4762. Defendants had a duty to disclose all relevant information regarding the Vehicles' safety, reliability, quality, and characteristics that would affect the Oregon Plaintiffs' choice of purchase as consumers.

4763. Defendants failed to exercise reasonable care or competence in communicating the standards of safety, reliability, quality, and characteristics of the Vehicles to the consumers, including Oregon Plaintiffs, when they failed to disclose the lack of anti-theft prevention technology in the Vehicles. Rather, Defendants published materials and marketed the Vehicles for years as safe, reliable, and of a quality consistent with the industry standard.

4764. Oregon Plaintiffs would not have purchased, or would have purchased for a lower price, the Vehicles which Defendants negligently misrepresented as safe, of standard quality, and containing standard trade characteristics, such as anti-theft prevention technology. Additionally, as a direct and proximate result, Oregon Plaintiffs have had to pay higher insurance premiums to account for the Vehicles' high susceptibility to theft and are now left with Vehicles that have a lower value than they would have had without the defect.

4765. As a direct and proximate result of Oregon Plaintiffs' reasonable reliance on Defendants' negligent misrepresentations, Oregon Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that Oregon Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and

costs for which Defendants are liable, in an amount to be proven at trial.

4766. Oregon Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 6. Negligence.

4767. Oregon Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

4768. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

4769. Defendants owed a duty of care to Oregon Plaintiffs. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves, higher insurance premiums, and accelerated depreciation.

4770. Defendants failed to exercise reasonable care in connection with their manufacture, distribution, sale, and/or leasing of the Vehicles.

4771. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant with all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Oregon Plaintiffs.

4772. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS No. 114.

4773. As a direct and proximate result of Defendants' failure to exercise reasonable care, Oregon Plaintiffs have suffered and will continue to suffer actual,

incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that Oregon Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

4774. Oregon Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 7. Unjust Enrichment.

4775. Oregon Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

4776. When they purchased and leased the Vehicles, Oregon Plaintiffs conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

4777. Oregon Plaintiffs would not have purchased or leased their Vehicles, or would have paid less for them, had they known of the Theft-Prone Design at the time of purchase or lease. Therefore, Defendants profited from the sale and lease of the Vehicles to the detriment and expense of Oregon Plaintiffs.

4778. Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft-Prone Design, yet they failed to disclose this knowledge and misled the Oregon Plaintiffs regarding the nature and quality of the Vehicles while profiting from this deception.

4779. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

4780. Oregon Plaintiffs are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Oregon Plaintiffs to the position they occupied prior to dealing with these Defendants, with such amounts to be determined at trial.

COMPLAINT

4781. Oregon Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Oregon Plaintiffs' claims for damages are dismissed or judgment is entered in favor of Defendants, Oregon Plaintiffs will have no adequate legal remedy.

**KK.   Pennsylvania State Law Claims for Relief**

**(Alleged by Pennsylvania Plaintiffs Against All Defendants)**

**1.      Breach of Implied Warranty of Merchantability (13 Pa. Cons. Stat. §§ 2314 and 2A212).**

4782. Pennsylvania Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4783. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to 13 Pa. Cons. Stat. §§ 2314 and 2A212.

4784. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under 13 Pa. Cons. Stat. §§ 2104 and 2A103(c), and "sellers" of motor vehicles under § 2103(a).

4785. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under 13 Pa. Cons. Stat. § 2A103(a).

4786. Pennsylvania Plaintiffs who purchased Vehicles in Pennsylvania are "buyers" within the meaning of 13 Pa. Cons. Stat. § 2103(a).

4787. Pennsylvania Plaintiffs who leased Vehicles in Pennsylvania are "lessees" within the meaning of 13 Pa. Cons. Stat. § 2A103(a).

4788. The Vehicles are and were at all relevant times "goods" within the meaning of 13 Pa. Cons. Stat. §§ 2105(a) and 2A103(a).

4789. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased.  Defendants provided Pennsylvania Plaintiffs with an implied warranty that the purchased and leased Vehicles were in merchantable condition and fit for the ordinary purposes for which they were sold or leased.  This

implied warranty included that the Vehicles (a) were manufactured, supplied, distributed, and sold by Defendants, (b) were safe and reliable for transportation, (c) complied with all federal, state, and industry motor vehicle regulations and safety standards, including FMVSS No. 114, and (d) were not at an abnormally high risk of theft.

4790. The Vehicles did not comply with the implied warranty of merchantability because the Vehicles were defective and not in merchantable condition at the time of sale and/or lease, were not fit for their ordinary purpose of providing safe and reliable transportation at the time of sale or lease, and would not pass without objection in the trade as they deviated significantly from the industry standard and can be stolen in mere minutes without a key.  Defendants knew at the time of manufacture that the Vehicles contained the Theft-Prone Design and lacked any anti-theft equipment or design elements that effectively prevent theft or comply with FMVSS No. 114.  Therefore, the Defendants knew at the time of manufacture that the Vehicles are at an abnormally high risk of theft and are unsafe and an unreliable form of transportation.  The Theft-Prone Design renders the Vehicles highly vulnerable to theft and a prime target for thieves as they can be easily stolen in seconds.  Defendants knew at the time of manufacture that because their Vehicles did not include any anti-theft measures that satisfied FMVSS No. 114, making their Vehicles more prone to theft and failing to comply with federal regulations, the Vehicles would require larger insurance premiums and would depreciate at a more rapid rate than a comparable vehicle with anti-theft measure that satisfied FMVSS No. 114. Consequently, at the time of sale and/or lease, the Vehicles were not fit for their ordinary purpose of providing safe and reliable transportation.

4791. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable.  Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Pennsylvania Plaintiffs, of the safety defect.  Any time limitations regarding the warranty period were also unconscionable and inadequate to

protect Pennsylvania Plaintiffs. Pennsylvania Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants. A gross disadvantage in bargaining power existed between Pennsylvania Plaintiffs and Defendants, which unreasonably favored Defendants. Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left Pennsylvania Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

4792. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that Pennsylvania Plaintiffs may seek alternative remedies. Pennsylvania Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

4793. Pennsylvania Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure. Pennsylvania Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Pennsylvania Plaintiffs' breach of warranty claims. Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Pennsylvania Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Pennsylvania Plaintiffs sent Defendants written notice letters of

Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches. To date, Defendants failed to remedy their breaches.

4794. Alternatively, Pennsylvania Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches. Pennsylvania Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

4795. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Pennsylvania Plaintiffs' Vehicles were and are defective, the Theft-Prone Design in the Vehicles has not been remedied, and Pennsylvania Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that Pennsylvania Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

### 2. Breach of Express Warranty (13 Pa. Cons. Stat. §§ 2313, 2A210, et seq.).

4796. Pennsylvania Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

4797. During the relevant time periods, Defendants manufactured the Vehicles and Pennsylvania Plaintiffs purchased and/or leased the Vehicles from Defendants.

4798. By affixing a VIN plate to each Vehicle at the time of manufacture, Defendants expressly warranted each Vehicles' conformance to "all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture shown." These statements are an affirmation of fact or promise made to Pennsylvania Plaintiffs as to the Vehicles' condition, quality, safety, and

COMPLAINT

reliability. These statements became the basis of the bargain between Pennsylvania Plaintiffs and Defendants, as Pennsylvania Plaintiffs relied on these statements when making their decisions to purchase and/or lease the Vehicles. As such, the statements are an express warranty under Pennsylvania law pursuant to 13 Pa. Cons. Stat. § 2313(a)(1) and § 2A210.

4799. Pennsylvania Plaintiffs used the Vehicles in accordance with their normal operation and did not misuse or mishandle the Vehicles in any way material to the allegations set forth herein.

4800. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable. Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Pennsylvania Plaintiffs, of the safety defect. Any time limitations regarding the warranty period were also unconscionable and inadequate to protect Pennsylvania Plaintiffs. Pennsylvania Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants. A gross disadvantage in bargaining power existed between Pennsylvania Plaintiffs and Defendants, which unreasonably favored Defendants. Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left Pennsylvania Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

4801. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that Pennsylvania Plaintiffs may seek alternative remedies. Pennsylvania Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

4802. Pennsylvania Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure. Pennsylvania Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically

COMPLAINT

addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Pennsylvania Plaintiffs' breach of warranty claims. Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Pennsylvania Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Pennsylvania Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches. To date, Defendants failed to remedy their breaches.

4803. Alternatively, Pennsylvania Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches. Pennsylvania Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

4804. The Vehicles did not perform as promised in accordance with Defendants' express warranty; instead, the Vehicles did not meet all applicable motor vehicle safety and theft prevention standards in effect on the date of manufacture. The Vehicles are capable of being stolen in a matter of seconds without a key and do not comply with the terms of the express warranty described in the Vehicles' VIN plates because the

COMPLAINT

Vehicles do not, in fact, conform to the applicable anti-theft standards.

4805. As a direct and proximate result of Defendants' breaches, Pennsylvania Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that Pennsylvania Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

**3. Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (73 Pa. Cons. Stat. § 201-1, et seq.).**

4806. Pennsylvania Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4807. Defendants and Pennsylvania Plaintiffs are "persons" within the meaning of 73 Pa. Cons. Stat. § 201-2(2).

4808. Pennsylvania Plaintiffs purchased their Vehicles primarily for personal, family, or household purposes within the meaning of 73 Pa. Cons. Stat. § 201-9.2(a).

4809. Defendants were and are engaged in "trade" or "commerce" within the meaning of 73 Pa. Cons. Stat. § 201-2(3).

4810. The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Pennsylvania CPL") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" 73 Pa. Cons. Stat. § 201-3.

4811. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Pennsylvania CPL by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Theft-Prone Design, as detailed above.

4812. Under the Pennsylvania CPL, Defendants had an ongoing duty to Pennsylvania Plaintiffs to refrain from unfair or deceptive practices in the course of their business. Specifically, Defendants owed Pennsylvania Plaintiffs a duty to disclose all the material facts concerning the Theft-Prone Design in the Vehicles, because:

    a. Defendants expressly warranted that the Vehicles conformed with applicable anti-theft standards when that was not true due to the Theft-Prone Design of the Vehicles;

    b. Defendants had exclusive access to and far superior knowledge about facts regarding the Theft-Prone Design, and Defendants knew these facts were not known to or reasonably discoverable by Pennsylvania Plaintiffs.

    c. Given the Theft-Prone Design's hidden and technical nature, Pennsylvania Plaintiffs lack the sophisticated expertise in vehicle components necessary to discover the Theft-Prone Design on their own.

    d. Defendants knew that the Theft-Prone Design gave rise to safety concerns for the consumers who use the Vehicles, and that the Theft-Prone Design would have been a material fact in the Pennsylvania Plaintiffs' decisions to buy or lease the Vehicles.

    e. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Theft-Prone Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

4813. As detailed above, the information concerning the Theft-Prone Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

4814. By misrepresenting the Vehicles as safe, reliable, and compliant with applicable anti-theft standards, and by failing to disclose and actively concealing the dangers and risk posed by the Theft-Prone Design, Defendants engaged in one or more of the following unfair or deceptive business practices prohibited by 73 Pa. Cons. Stat.

§ 201-2(3) by:

    a. representing that the Vehicles have characteristics, uses, benefits, and qualities which they do not have;

    b. representing that the Vehicles are of a particular standard, quality, and grade when they are not;

    c. advertising the Vehicles with the intent not to sell or lease them as advertised; and

    d. engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding regarding the Vehicles.

73 Pa. Cons. Stat. § 201-1(4)(v), (vii), (ix) and (xxi).

4815. Defendants intended for Pennsylvania Plaintiffs to rely on them to provide adequately designed Vehicles and to honestly and accurately reveal the safety hazards described above.

4816. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Theft-Prone Design. Those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Pennsylvania Plaintiffs, about the true safety and reliability of the Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

4817. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Theft-Prone Design and true characteristics of the Vehicles were material to the decisions of Pennsylvania Plaintiffs to purchase or lease the Vehicles, as Defendants intended. Pennsylvania Plaintiffs were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase or lease the Vehicles.

4818. Pennsylvania Plaintiffs' reliance was reasonable, as they had no way of

COMPLAINT

discerning that Defendants' representations were false and misleading, and/or otherwise learning that the Vehicles contained the Theft-Prone Design, as alleged above. Pennsylvania Plaintiffs did not, and could not, unravel Defendants' deception on their own.

4819. Had they known the truth about the Theft-Prone Design, Pennsylvania Plaintiffs would not have purchased or leased the Vehicles or would have paid significantly less for them.

4820. Pennsylvania Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

4821. Defendants' violations present a continuing risk to Pennsylvania Plaintiffs and the general public because the Vehicles remain unsafe due to the Theft-Prone Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

4822. Pennsylvania Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action. As such, Defendants are and have been well aware of the Theft-Prone Design and Pennsylvania Plaintiffs' claims. Additionally, Defendants had ample notice provided by the numerous complaints filed against them, internet videos, and news reports. Furthermore, on September 17, 2025, Pennsylvania Plaintiffs sent Defendants written notice letters of Defendants' violations, Plaintiffs' claims, and a proposed cure to the violations. To date, Defendants failed to remedy their violations. Because Defendants failed to remedy their unlawful conduct, Pennsylvania Plaintiffs seek all damages and relief to which Pennsylvania Plaintiffs are entitled.

4823. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile. As alleged above, Defendants have long known that the Vehicles contained the Theft-Prone Design yet did nothing to remedy the Theft-Prone Design.

COMPLAINT

4824. Pursuant to 73 Pa. Cons. Stat. § 201-9.2(a), Pennsylvania Plaintiffs seek an order (1) enjoining Defendants' unfair and/or deceptive acts, methods, or practices alleged herein, and (2) awarding damages, punitive damages, attorney's fees, costs, and/or any other just and proper relief available under the Pennsylvania CPL.

### 4. Fraud by Omission and Concealment.

4825. Pennsylvania Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

4826. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards. In reality, however, the Vehicles do not comply with such standards.

4827. Defendants were aware of the Theft-Prone Design when they manufactured, marketed, and sold the Vehicles to Pennsylvania Plaintiffs. Defendants further knew that the Theft-Prone Design gave rise to serious safety risks for the consumers that would use the Vehicles and naturally give rise to higher insurance premiums and accelerated depreciation. At the same time, Defendants were aware of the Federal Motor Vehicle Safety Standards and of the effectiveness of engine immobilizer technology in reducing safety hazards. Defendants were also aware that noncompliance with federal and industry standards lowered the value of the Vehicles and would render the Vehicles difficult to insure.

4828. Defendants knew that the Theft-Prone Design and the safety hazards it posed would have been a material fact in the Plaintiffs' decisions to buy or lease the Vehicles.

4829. Having been aware of the Theft-Prone Design within the Vehicles and having known that Pennsylvania Plaintiffs could not have reasonably been expected to know of the Theft-Prone Design, Defendants had a duty to disclose the Theft-Prone Design to Pennsylvania Plaintiffs in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Theft-Prone Design.

4830. Defendants knowingly made affirmatively false or incomplete statements

COMPLAINT

of material facts as to the Vehicles' safety, reliability, quality, value, and compliance with applicable motor vehicle safety and theft prevention standards, while they intentionally withheld, concealed, omitted, suppressed, and failed to disclose material facts about the Theft-Prone Design, lack of effective anti-theft measures, significant safety risks, and the Vehicles' true value. Defendants volunteered incomplete information about the Vehicles they offered for sale and/or lease to consumers, including false statements as to the Vehicles' safety and compliance with applicable safety and anti-theft standards, while at the same time withholding the existence of the Theft-Prone Design.

4831. Defendants intentionally concealed, omitted, and failed to disclose the Theft-Prone Design and noncompliance with applicable safety and anti-theft standards to Pennsylvania Plaintiffs in connection with the sale and/or lease of the Vehicles. Defendants did not inform consumers, including Pennsylvania Plaintiffs, that the Vehicles Theft-Prone Design left the Vehicles without any effective anti-theft protection which rendered the Vehicles a significant safety risk and non-compliant with federal motor vehicle safety standards. Defendants further knew and failed to disclose that the Theft-Prone Design and lack of standard anti-theft measures left the Vehicles at substantially lower value than the price for which they were advertised, marketed, sold, and/or leased.

4832. Alternatively, Defendants made false misrepresentations about the Theft-Prone Design with such utter disregard and recklessness that their knowledge regarding the Theft-Prone Design and its unsafe and unreliable nature may be inferred.

4833. Defendants had exclusive access to and far superior knowledge regarding the facts of the Theft-Prone Design and Defendants knew these facts were not known to or reasonably discoverable by Pennsylvania Plaintiffs.

4834. Given the Theft-Prone Design's hidden and technical nature, Pennsylvania Plaintiffs lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft-Prone Design on their own.

4835. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Theft-Prone Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

4836. In breach of their duties, Defendants failed to disclose the Theft-Prone Design to Pennsylvania Plaintiffs in connection with the sale or lease of the Vehicles.

4837. The Vehicles' Theft-Prone Design and noncompliance with applicable anti-theft standards were material facts about the safety, reliability, and value of the Vehicles. A reasonable person would find the Vehicles' lack of industry-standard anti-theft measures and noncompliance with applicable safety standards important in their decision to purchase, lease, and maintain the Vehicles because it would impact safety, availability, the Vehicles' value, and the cost to insure the Vehicles.

4838. Defendants intended for the Pennsylvania Plaintiffs to rely on their omissions and concealment—which Pennsylvania Plaintiffs did by purchasing and leasing the Vehicles at the prices they paid believing that their vehicles would not have a Theft-Prone Design that would affect the quality, reliability, and safety of the Vehicles.

4839. Pennsylvania Plaintiffs' reliance on Defendants' misrepresentations and concealment was reasonable and justifiable, as Pennsylvania Plaintiffs had no way of learning the facts that Defendants had concealed or failed to disclose. Pennsylvania Plaintiffs did not, and could not, unravel Defendants' deception on their own.

4840. Defendants actively misrepresented, concealed, and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at

the expense of Pennsylvania Plaintiffs.

4841. If Defendants had fully and adequately disclosed the Theft-Prone Design to consumers, Pennsylvania Plaintiffs would have seen such a disclosure.

4842. Through their omissions and concealment with respect to the Theft-Prone Design within the Vehicles, Defendants intended to induce, and did in fact induce, Pennsylvania Plaintiffs to either purchase a Vehicle that they otherwise would not have purchased or pay more for a Vehicle than they otherwise would have paid.

4843. Had Pennsylvania Plaintiffs known of the Theft-Prone Design within the Vehicles, they would not have purchased the Vehicles or would have paid less for them.

4844. As a direct and proximate result of Defendants' omissions, Pennsylvania Plaintiffs overpaid for the Vehicles because Pennsylvania Plaintiffs would either have paid less for the Vehicles or would not have purchased the Vehicles at all if the Theft-Prone Design had been disclosed to them.

4845. As a direct and proximate result of Defendants' omissions, Pennsylvania Plaintiffs purchased Vehicles highly susceptible to theft and were forced to pay higher insurance premiums to account for the susceptibility that they did not knowingly accept, purchase, or lease.

4846. As a direct and proximate result of Defendants' omissions, the Pennsylvania Plaintiffs paid higher insurance premiums and are now left with Vehicles with significantly diminished values.

4847. Accordingly, Defendants are liable to Pennsylvania Plaintiffs for their damages, including but not limited to the difference in value, increased insurance premiums that Pennsylvania Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

4848. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, in reckless disregard of the Pennsylvania Plaintiffs' rights and well-being, and to enrich themselves.  Defendants' misconduct warrants an assessment of

COMPLAINT

punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

4849. Pennsylvania Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 5. Negligent Misrepresentation.

4850. Pennsylvania Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

4851. Defendants, in the course of their business selling and promoting motor vehicles, supplied false information, including that the Vehicles were safe and reliable, to guide motor vehicle buyers, including Pennsylvania Plaintiffs, in their choice of transaction.

4852. Defendants made misrepresentations of material facts concerning the safety and reliability of the Vehicles that they knew or should have known were false. Specifically, Defendants misrepresented that the Vehicles had effective anti-theft equipment or design elements; misrepresented that the Vehicles were safe and reliable forms of transportation; misrepresented that the Vehicles complied with all federal and industry safety and theft prevention standards; and misrepresented the true value of the Vehicles. Defendants supplied this information in the course of their business to guide Pennsylvania Plaintiffs in their Vehicle selection and induce Plaintiffs to purchase one of Defendants' Vehicles.

4853. Pennsylvania Plaintiffs justifiably relied upon Defendants' representations because, as the entities responsible for designing and manufacturing the Vehicles, Defendants held themselves out to be knowledgeable about the Vehicles' components and honest in their promotion of the Vehicles. Pennsylvania Plaintiffs' reliance was further reasonable given the hidden and technical nature of the Theft-Prone Design and practical inability of Pennsylvania Plaintiffs to discover the Theft-Prone Design on their own. Because Defendants held the Vehicles out to be in line with industry standards, the representation was not unreasonable on its face and Pennsylvania Plaintiffs had no

apparent reason to doubt the veracity of Defendants' representations.

4854. Defendants had a duty to disclose all relevant information regarding the Vehicles' safety, reliability, quality, and characteristics that would affect the Pennsylvania Plaintiffs' choice of purchase as consumers.

4855. Defendants failed to exercise reasonable care or competence in communicating the standards of safety, reliability, quality, and characteristics of the Vehicles to the consumers, including Pennsylvania Plaintiffs, when they failed to disclose the lack of anti-theft prevention technology in the Vehicles. Rather, Defendants published materials and marketed the Vehicles for years as safe, reliable, and of a quality consistent with the industry standard.

4856. Pennsylvania Plaintiffs would not have purchased, or would have purchased for a lower price, the Vehicles which Defendants negligently misrepresented as safe, of standard quality, and containing standard trade characteristics, such as anti-theft prevention technology. Additionally, as a direct and proximate result, Pennsylvania Plaintiffs have had to pay higher insurance premiums to account for the Vehicles' high susceptibility to theft and are now left with Vehicles that have a lower value than they would have had without the defect.

4857. As a direct and proximate result of Pennsylvania Plaintiffs' reasonable reliance on Defendants' negligent misrepresentations, Pennsylvania Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that Pennsylvania Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

4858. Pennsylvania Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

**6.    Negligence.**

4859. Pennsylvania Plaintiffs incorporate by reference each preceding and

succeeding paragraph as though fully set forth at length herein.

4860. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

4861. Defendants owed a duty of care to Pennsylvania Plaintiffs. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves, higher insurance premiums, and accelerated depreciation.

4862. Defendants failed to exercise reasonable care in connection with their manufacture, distribution, sale, and/or leasing of the Vehicles.

4863. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant with all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Pennsylvania Plaintiffs.

4864. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS No. 114.

4865. As a direct and proximate result of Defendants' failure to exercise reasonable care, Pennsylvania Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that Pennsylvania Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

4866. Pennsylvania Plaintiffs plead this claim separately, as well as in the

COMPLAINT

alternative to their claims for damages.

### 7.     Unjust Enrichment.

4867. Pennsylvania Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

4868. When they purchased and leased the Vehicles, Pennsylvania Plaintiffs conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

4869. Pennsylvania Plaintiffs would not have purchased or leased their Vehicles, or would have paid less for them, had they known of the Theft-Prone Design at the time of purchase or lease.  Therefore, Defendants profited from the sale and lease of the Vehicles to the detriment and expense of Pennsylvania Plaintiffs.

4870. Defendants appreciated these economic benefits.  These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers.  They knew of these benefits because they were aware of the Theft-Prone Design, yet they failed to disclose this knowledge and misled the Pennsylvania Plaintiffs regarding the nature and quality of the Vehicles while profiting from this deception.

4871. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

4872. Pennsylvania Plaintiffs are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Pennsylvania Plaintiffs to the position they occupied prior to dealing with these Defendants, with such amounts to be determined at trial.

4873. Pennsylvania Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Pennsylvania Plaintiffs' claims for damages are dismissed or judgment is entered in favor of Defendants, Pennsylvania Plaintiffs will have no adequate legal remedy.

4874.

**LL.   South Carolina State Law Claims for Relief**

**(Alleged by South Carolina Plaintiffs Against All Defendants)**

**1.      Breach of Implied Warranty of Merchantability Under S.C. Code Ann. §§ 36-2-314 and 36-2A-212.**

4875. South Carolina Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

4876. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to S.C. Code Ann. §§ 36- 2-314 and 36-2A-212.

4877. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under S.C. Code Ann. §§ 36-2-104(1) and 36-2A-103(3), and "sellers" of motor vehicles under § 36-2-103(1)(d).

4878. Defendants are and were at all relevant times "lessors" of motor vehicles under S.C. Code Ann. § 36-2A-103(1)(p).

4879. South Carolina Plaintiffs who purchased Vehicles in South Carolina are "buyers" within the meaning of S.C. Code Ann. § 36-2-103(1)(a).

4880. South Carolina Plaintiffs who leased Vehicles in South Carolina are "lessees" within the meaning of S.C. Code Ann. § 36-2A-103(1)(n).

4881. The Vehicles are and were at all relevant times "goods" within the meaning of S.C. Code Ann. §§ 36-2-105(1) and 36-2A-103(1)(h).

4882. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased.  Defendants provided South Carolina Plaintiffs with an implied warranty that the purchased and leased Vehicles were in merchantable condition and fit for the ordinary purposes for which they were sold or leased.  This implied warranty included that the Vehicles (a) were manufactured, supplied, distributed, and sold by Defendants, (b) were safe and reliable for transportation, (c) complied with all federal, state, and industry motor vehicle regulations and safety

standards, including FMVSS No. 114, and (d) were not at abnormally high risk of theft.

4883. The Vehicles did not comply with the implied warranty of merchantability because the Vehicles were defective and not in merchantable condition at the time of sale and/or lease, were not fit for their ordinary purpose of providing safe and reliable transportation at the time of sale or lease, and would not pass without objection in the trade as they deviated significantly from the industry standard and can be stolen in mere minutes without a key. Defendants knew at the time of manufacture that the Vehicles contained the Theft-Prone Design and lacked any anti-theft equipment or design elements that effectively prevent theft or comply with FMVSS No. 114. Therefore, the Defendants knew at the time of manufacture that the Vehicles are at an abnormally high risk of theft and are unsafe and an unreliable form of transportation. The Theft-Prone Design renders the Vehicles highly vulnerable to theft and a prime target for thieves as they can be easily stolen in seconds. Defendants knew at the time of manufacture that because their Vehicles did not include any anti-theft measures that satisfied FMVSS No. 114, making their Vehicles more prone to theft and failing to comply with federal regulations, the Vehicles would require larger insurance premiums and would depreciate at a more rapid rate than a comparable vehicle with anti-theft measure that satisfied FMVSS No. 114. Consequently, at the time of sale and/or lease, the Vehicles were not fit for their ordinary purpose of providing safe and reliable transportation.

4884. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable. Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including South Carolina Plaintiffs, of the safety defect. Any time limitations regarding the warranty period were also unconscionable and inadequate to protect South Carolina Plaintiffs. South Carolina Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants. A gross disadvantage in bargaining power existed between South Carolina Plaintiffs and Defendants, which unreasonably favored Defendants. Moreover,

Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left South Carolina Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

4885. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that South Carolina Plaintiffs may seek alternative remedies. South Carolina Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

4886. South Carolina Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure. South Carolina Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of South Carolina Plaintiffs' breach of warranty claims. Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and South Carolina Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, South Carolina Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches. To date, Defendants failed to remedy their breaches.

4887. Alternatively, South Carolina Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have

COMPLAINT

been futile.  Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design.  Defendants have not cured, remedied, or repaired their breaches.  South Carolina Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

4888. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, South Carolina Plaintiffs' Vehicles were and are defective, the Theft-Prone Design in the Vehicles has not been remedied, and South Carolina Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that South Carolina Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

**2.      Breach of Express Warranty Under S.C. Code Ann. § 36-2-313.**

4889. South Carolina Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

4890. During the relevant time periods, Defendants manufactured the Vehicles and South Carolina Plaintiffs purchased and/or leased the Vehicles from Defendants.

4891. By affixing a VIN plate to each Vehicle at the time of manufacture, Defendants expressly warranted each Vehicles' conformance to "all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture shown."  These statements are an affirmation of fact or promise made to Plaintiffs as to the Vehicles' condition, quality, safety, and reliability.  These statements became the basis of the bargain between South Carolina Plaintiffs and Defendants, as South Carolina Plaintiffs relied on these statements when making their decisions to purchase and/or lease the Vehicles.  As such, the statements are an express warranty under South Carolina law pursuant to S.C. Code Ann. § 36-2-313.

4892. Plaintiffs used the Vehicles in accordance with their normal operation and

COMPLAINT

did not misuse or mishandle the Vehicles in any way material to the allegations set forth herein.

4893. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable. Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including South Carolina Plaintiffs, of the safety defect. Any time limitations regarding the warranty period were also unconscionable and inadequate to protect South Carolina Plaintiffs. South Carolina Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants. A gross disadvantage in bargaining power existed between South Carolina Plaintiffs and Defendants, which unreasonably favored Defendants. Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left South Carolina Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

4894. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that South Carolina Plaintiffs may seek alternative remedies. South Carolina Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

4895. South Carolina Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure. South Carolina Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of South Carolina Plaintiffs' breach of warranty claims. Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and South Carolina Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone

Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, South Carolina Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches. To date, Defendants failed to remedy their breaches.

4896. Alternatively, South Carolina Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches. South Carolina Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

4897. The Vehicles did not perform as promised in accordance with Defendants' express warranty; instead, the Vehicles did not meet all applicable motor vehicle safety and theft prevention standards in effect on the date of manufacture. The Vehicles are capable of being stolen in a matter of seconds without a key and do not comply with the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles do not, in fact, conform to the applicable anti-theft standards.

4898. As a direct and proximate result of Defendants' breaches, South Carolina Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that South Carolina Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

COMPLAINT

**3.    Violation of the South Carolina Unfair Trade Practices Act (S.C. Code Ann. § 39-5-10, et seq.).**

4899. South Carolina Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4900. South Carolina Plaintiffs are "persons" within the meaning of S.C. Code. Ann. § 39-5-10(a).

4901. Defendants were and are engaged in "trade and commerce" within the meaning of S.C. Code. Ann. § 39-5-10(b).

4902. The South Carolina Unfair Trade Practices Act ("South Carolina UTPA") declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." S.C. Code. Ann. § 39-5-20(a).

4903. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the South Carolina UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Theft-Prone Design, as detailed above.

4904. Under the South Carolina UTPA, Defendants had an ongoing duty to Plaintiffs to refrain from unfair or deceptive practices in the course of their business. Specifically, Defendants owed South Carolina Plaintiffs a duty to disclose all the material facts concerning the Theft-Prone Design in the Vehicles.

4905. Defendants had exclusive access to and far superior knowledge about facts regarding the Theft-Prone Design, and Defendants knew these facts were not known to or reasonably discoverable by South Carolina Plaintiffs.

4906. Given the Theft-Prone Design's hidden and technical nature, South Carolina Plaintiffs lack the sophisticated expertise in vehicle components necessary to discover the Theft-Prone Design on their own.

4907. Defendants knew that the Theft-Prone Design gave rise to safety concerns for the consumers who use the Vehicles, and that the Theft-Prone Design would have

been a material fact in the South Carolina Plaintiffs' decisions to buy or lease the Vehicles.

4908. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Theft-Prone Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

4909. As detailed above, the information concerning the Theft-Prone Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

4910. By misrepresenting the Vehicles as safe, reliable, and compliant with all applicable standards, and by failing to disclose while actively concealing the dangers and risk posed by the Theft-Prone Design, Defendants engaged in unfair or deceptive acts or practices in the conduct of trade or commerce prohibited by S.C. Code Ann. § 39-5-20(a).

4911. Defendants intended for South Carolina Plaintiffs to rely on them to provide adequately designed Vehicles and to honestly and accurately reveal the safety hazards described above.

4912. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Theft-Prone Design. Those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including South Carolina Plaintiffs, about the true safety and reliability of the Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

4913. Defendants' misrepresentations, concealments, omissions, and

COMPLAINT

suppressions of material facts regarding the Theft-Prone Design and true characteristics of the Vehicles were material to the decisions of South Carolina Plaintiffs to purchase or lease the Vehicles, as Defendants intended. South Carolina Plaintiffs were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase or lease the Vehicles.

4914. South Carolina Plaintiffs' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, and/or otherwise learning that the Vehicles contained the Theft-Prone Design, as alleged above. South Carolina Plaintiffs did not, and could not, unravel Defendants' deception on their own.

4915. Had they known the truth about the Theft-Prone Design, South Carolina Plaintiffs would not have purchased or leased the Vehicles or would have paid significantly less for them.

4916. South Carolina Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

4917. Defendants' violations present a continuing risk to South Carolina Plaintiffs and the general public because the Vehicles remain unsafe due to the Theft-Prone Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

4918. South Carolina Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action. As such, Defendants are and have been well aware of the Theft-Prone Design and South Carolina Plaintiffs' claims. Additionally, Defendants had ample notice provided by the numerous complaints filed against them, internet videos, and news reports. Furthermore, on September 17, 2025, South Carolina Plaintiffs sent Defendants written notice letters of Defendants' violations, Plaintiffs' claims, and a proposed cure to the violations. To date, Defendants failed to remedy their violations.

COMPLAINT

Because Defendants failed to remedy their unlawful conduct, South Carolina Plaintiffs seek all damages and relief to which South Carolina Plaintiffs are entitled.

4919. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile.  As alleged above, Defendants have long known that the Vehicles contained the Theft-Prone Design yet did nothing to remedy the Theft-Prone Design.

4920. Pursuant to S.C. Code. Ann. § 39-5-140, South Carolina Plaintiffs seek an order (1) enjoining Defendants' unfair and/or deceptive acts, methods, or practices alleged herein, and (2) awarding damages, punitive damages, attorney's fees, costs, and/or any other just and proper relief available under the South Carolina UTPA.

**4.      Violation of the South Carolina Regulation of Manufacturers, Distributors, and Dealers Act (S.C. Code Ann. § 56-15-10, et seq.).**

4921. South Carolina Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

4922. Defendants are "manufacturer[s]" as set forth in S.C. Code Ann. § 56-15-10(b), as they were engaged in the business of manufacturing or assembling new and unused motor vehicles.  Defendants are also "distributors" and/or "wholesalers" as set forth in S.C. Code Ann. §§ 56-15-10(g), (p).

4923. The South Carolina Regulation of Manufacturers, Distributors, and Dealers Act ("Manufacturers Act") prohibits "unfair or deceptive acts or practices" as defined in S.C. Code Ann. § 56-15-40.  S.C. Code Ann. § 56-15-30(a).  Accordingly, the Manufacturers Act prohibits any manufacturer from engaging in bad faith and unconscionable actions that cause damage to the parties or the public; it also prohibits manufacturers from using false or misleading advertising in connection with their business.  S.C. Code Ann. §§ 56-15-40(1), (3)(d).

4924. As detailed above, the information concerning the Theft-Prone Design was known to Defendants at the time of advertising and selling the Vehicles, all of which

was intended to induce consumers to purchase the Vehicles.

4925. By misrepresenting the Vehicles as safe and reliable and free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Theft-Prone Design, Defendants engaged in unfair or deceptive business practices by committing bad faith and unconscionable actions prohibited by Manufacturers Act.

4926. Defendants intended for South Carolina Plaintiffs to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described herein.

4927. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Theft-Prone Design.  Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including South Carolina Plaintiffs, about the true safety and reliability of Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

4928. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Theft-Prone Design and true characteristics of the Vehicles were material to the decisions of South Carolina Plaintiffs to purchase and lease those vehicles, as Defendants intended.  South Carolina Plaintiffs were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase and lease Vehicles.

4929. South Carolina Plaintiffs' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Vehicles contained the Theft-Prone Design, as alleged above.  South Carolina Plaintiffs did not, and could not, unravel Defendants' deception on their own.

4930. Had they known the truth about the Theft-Prone Design, South Carolina Plaintiffs would not have purchased or leased the Vehicles, or would have paid

COMPLAINT

significantly less for them.

4931. South Carolina Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

4932. Defendants' violations present a continuing risk to South Carolina Plaintiffs, as well as to the general public, because the Vehicles remain unsafe due to the Theft-Prone Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

4933. South Carolina Plaintiffs are entitled to double their actual damages, the cost of the suit, attorney's fees pursuant to S.C. Code Ann. § 56-15-110. South Carolina Plaintiffs also seek injunctive relief under S.C. Code Ann. § 56-15-110. South Carolina Plaintiffs also seek treble damages because the Defendants acted maliciously.

**5.      Fraud by Omission and Concealment.**

4934. South Carolina Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

4935. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards. In reality, however, the Vehicles do not comply with such standards.

4936. Defendants were aware of the Theft-Prone Design when they manufactured, marketed, and sold the Vehicles to South Carolina Plaintiffs. Defendants further knew that the Theft-Prone Design gave rise to serious safety risks for the consumers that would use the Vehicles and naturally give rise to higher insurance premiums and accelerated depreciation. At the same time, Defendants were aware of the Federal Motor Vehicle Safety Standards and of the effectiveness of engine immobilizer technology in reducing safety hazards. Defendants were also aware that noncompliance with federal and industry standards lowered the value of the Vehicles and would render the Vehicles difficult to insure.

4937. Defendants knew that the Theft-Prone Design and the safety hazards it

COMPLAINT

posed would have been a material fact in the South Carolina Plaintiffs' decisions to buy or lease the Vehicles.

4938. Having been aware of the Theft-Prone Design within the Vehicles and having known that South Carolina Plaintiffs could not have reasonably been expected to know of the Theft-Prone Design, Defendants had a duty to disclose the Theft-Prone Design to South Carolina Plaintiffs in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Theft-Prone Design because:

4939. Defendants knowingly made affirmatively false or incomplete statements of material facts as to the Vehicles' safety, reliability, quality, value, and compliance with applicable motor vehicle safety and theft prevention standards, while they intentionally withheld, concealed, omitted, suppressed, and failed to disclose material facts about the Theft-Prone Design, lack of effective anti-theft measures, significant safety risks, and the Vehicles' true value.  Defendants volunteered incomplete information about the Vehicles they offered for sale and/or lease to consumers, including false statements as to the Vehicles' safety and compliance with applicable safety and anti-theft standards, while at the same time withholding the existence of the Theft-Prone Design.

4940. Defendants intentionally concealed, omitted, and failed to disclose the Theft-Prone Design and noncompliance with applicable safety and anti-theft standards to South Carolina Plaintiffs in connection with the sale and/or lease of the Vehicles. Defendants did not inform consumers, including South Carolina Plaintiffs, that the Vehicles Theft-Prone Design left the Vehicles without any effective anti-theft protection which rendered the Vehicles a significant safety risk and non-compliant with federal motor vehicle safety standards.  Defendants further knew and failed to disclose that the Theft-Prone Design and lack of standard anti-theft measures left the Vehicles at substantially lower value than the price for which they were advertised, marketed, sold, and/or leased.

4941. Alternatively, Defendants made false misrepresentations about the Theft-

Prone Design with such utter disregard and recklessness that their knowledge regarding the Theft-Prone Design and its unsafe and unreliable nature may be inferred.

4942. Defendants had exclusive access to and far superior knowledge regarding the facts of the Theft-Prone Design and Defendants knew these facts were not known to or reasonably discoverable by South Carolina Plaintiffs.

4943. Given the Theft-Prone Design's hidden and technical nature, South Carolina Plaintiffs lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft-Prone Design on their own.

4944. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect.  In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Theft-Prone Design.  Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

4945. In breach of their duties, Defendants failed to disclose the Theft-Prone Design to South Carolina Plaintiffs in connection with the sale or lease of the Vehicles.

4946. The Vehicles' Theft-Prone Design and noncompliance with applicable anti-theft standards were material facts about the safety, reliability, and value of the Vehicles.  A reasonable person would find the Vehicles' lack of industry-standard anti-theft measures and noncompliance with applicable safety standards important in their decision to purchase, lease, and maintain the Vehicles because it would impact safety, availability, the Vehicles' value, and the cost to insure the Vehicles.

4947. Defendants intended for the South Carolina Plaintiffs to rely on their omissions and concealment—which Plaintiffs did by purchasing and leasing the Vehicles at the prices they paid believing that their vehicles would not have a Theft-Prone Design that would affect the quality, reliability, and safety of the Vehicles.

4948. South Carolina Plaintiffs' reliance on Defendants' misrepresentations and

COMPLAINT

concealment was reasonable and justifiable, as South Carolina Plaintiffs had no way of learning the facts that Defendants had concealed or failed to disclose. South Carolina Plaintiffs did not, and could not, unravel Defendants' deception on their own.

4949. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of South Carolina Plaintiffs.

4950. If Defendants had fully and adequately disclosed the Theft-Prone Design to consumers, South Carolina Plaintiffs would have seen such a disclosure.

4951. Through their omissions and concealment with respect to the Theft-Prone Design within the Vehicles, Defendants intended to induce, and did in fact induce, South Carolina Plaintiffs to either purchase a Vehicle that they otherwise would not have purchased or pay more for a Vehicle than they otherwise would have paid.

4952. Had South Carolina Plaintiffs known of the Theft-Prone Design within the Vehicles, they would not have purchased the Vehicles or would have paid less for them.

4953. As a direct and proximate result of Defendants' omissions, South Carolina Plaintiffs overpaid for the Vehicles because South Carolina Plaintiffs would either have paid less for the Vehicles or would not have purchased the Vehicles at all if the Theft-Prone Design had been disclosed to them.

4954. As a direct and proximate result of Defendants' omissions, South Carolina Plaintiffs purchased Vehicles highly susceptible to theft and were forced to pay higher insurance premiums to account for the susceptibility that they did not knowingly accept, purchase, or lease.

4955. As a direct and proximate result of Defendants' omissions, the South Carolina Plaintiffs paid higher insurance premiums and are now left with Vehicles with significantly diminished values.

4956. Accordingly, Defendants are liable to South Carolina Plaintiffs for their

COMPLAINT

damages, including but not limited to the difference in value, increased insurance premiums that South Carolina Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

4957. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, in reckless disregard of the South Carolina Plaintiffs' rights and well-being, and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

4958. South Carolina Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 6. Negligent Misrepresentation.

4959. South Carolina Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

4960. Defendants, in the course of their business selling and promoting motor vehicles, supplied false information, including that the Vehicles were safe and reliable, to guide motor vehicle buyers, including South Carolina Plaintiffs, in their choice of transaction.

4961. Defendants made misrepresentations of material facts concerning the safety and reliability of the Vehicles that they knew or should have known were false. Specifically, Defendants misrepresented that the Vehicles had effective anti-theft equipment or design elements; misrepresented that the Vehicles were safe and reliable forms of transportation; misrepresented that the Vehicles complied with all federal and industry safety and theft prevention standards; and misrepresented the true value of the Vehicles. Defendants supplied this information in the course of their business to guide South Carolina Plaintiffs in their Vehicle selection and induce Plaintiffs to purchase one of Defendants' Vehicles.

4962. South Carolina Plaintiffs justifiably relied upon Defendants'

representations because, as the entities responsible for designing and manufacturing the Vehicles, Defendants held themselves out to be knowledgeable about the Vehicles' components and honest in their promotion of the Vehicles. South Carolina Plaintiffs' reliance was further reasonable given the hidden and technical nature of the Theft-Prone Design and practical inability of South Carolina Plaintiffs to discover the Theft-Prone Design on their own. Because Defendants held the Vehicles out to be in line with industry standards, the representation was not unreasonable on its face and South Carolina Plaintiffs had no apparent reason to doubt the veracity of Defendants' representations.

4963. Defendants had a duty to disclose all relevant information regarding the Vehicles' safety, reliability, quality, and characteristics that would affect the South Carolina Plaintiffs' choice of purchase as consumers.

4964. Defendants failed to exercise reasonable care or competence in communicating the standards of safety, reliability, quality, and characteristics of the Vehicles to the consumers, including South Carolina Plaintiffs, when they failed to disclose the lack of anti-theft prevention technology in the Vehicles. Rather, Defendants published materials and marketed the Vehicles for years as safe, reliable, and of a quality consistent with the industry standard.

4965. South Carolina Plaintiffs would not have purchased, or would have purchased for a lower price, the Vehicles which Defendants negligently misrepresented as safe, of standard quality, and containing standard trade characteristics, such as anti-theft prevention technology. Additionally, as a direct and proximate result, South Carolina Plaintiffs have had to pay higher insurance premiums to account for the Vehicles' high susceptibility to theft and are now left with Vehicles that have a lower value than they would have had without the defect.

4966. As a direct and proximate result of South Carolina Plaintiffs' reasonable reliance on Defendants' negligent misrepresentations, South Carolina Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages,

including but not limited to the difference in value, increased insurance premiums that South Carolina Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

4967. South Carolina Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 7. Negligence.

4968. South Carolina Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

4969. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

4970. Defendants owed a duty of care to South Carolina Plaintiffs. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves, higher insurance premiums, and accelerated depreciation.

4971. Defendants failed to exercise reasonable care in connection with their manufacture, distribution, sale, and/or leasing of the Vehicles.

4972. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant with all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with South Carolina Plaintiffs.

4973. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies

with the requirements of FMVSS No. 114.

4974. As a direct and proximate result of Defendants' failure to exercise reasonable care, South Carolina Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that South Carolina Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

4975. South Carolina Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 8. Unjust Enrichment.

4976. South Carolina Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

4977. When they purchased and leased the Vehicles, South Carolina Plaintiffs conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

4978. South Carolina Plaintiffs would not have purchased or leased their Vehicles, or would have paid less for them, had they known of the Theft-Prone Design at the time of purchase or lease. Therefore, Defendants profited from the sale and lease of the Vehicles to the detriment and expense of South Carolina Plaintiffs.

4979. Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft-Prone Design, yet they failed to disclose this knowledge and misled the South Carolina Plaintiffs regarding the nature and quality of the Vehicles while profiting from this deception.

4980. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

4981. South Carolina Plaintiffs are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return South Carolina Plaintiffs to the position they occupied prior to dealing with these Defendants, with such amounts to be determined at trial.

4982. South Carolina Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if South Carolina Plaintiffs' claims for damages are dismissed or judgment is entered in favor of Defendants, South Carolina Plaintiffs will have no adequate legal remedy.

**MM. South Dakota State Law Claims for Relief**

**(Alleged by South Dakota Plaintiffs Against All Defendants)**

**1.     Breach of Implied Warranty of Merchantability Under S.D. Codified Laws §§ 57A-2-314 and 57A-2A-212.**

4983. South Dakota Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

4984. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to S.D. Codified Laws §§ 57A-2-314 and 57A-2A-212.

4985. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under S.D. Codified Laws §§ 57A-2-104(1) and 57A-2A-103(3), and "sellers" of motor vehicles under §§ 57A-2-103(1)(d).

4986. Defendants are and were at all relevant times "lessors" of motor vehicles under S.D. Codified Laws § 57A-2A-103(1)(p).

4987. South Dakota Plaintiffs who purchased Vehicles in South Dakota are "buyers" within the meaning of S.D. Codified Laws § 57A-2-103(1)(a)

4988. South Dakota Plaintiffs who leased Vehicles in South Dakota are "lessees" within the meaning of S.D. Codified Laws § 57A-2A-103(1)(n).

4989. The Vehicles are and were at all relevant times "goods" within the meaning of S.D. Codified Laws §§ 57-2-105(1) and 57-2A-103(1)(h).

COMPLAINT

4990. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided South Dakota Plaintiffs with an implied warranty that the purchased and leased Vehicles were in merchantable condition and fit for the ordinary purposes for which they were sold or leased. This implied warranty included that the Vehicles (a) were manufactured, supplied, distributed, and sold by Defendants, (b) were safe and reliable for transportation, (c) complied with all federal, state, and industry motor vehicle regulations and safety standards, including FMVSS No. 114, and (d) were not at abnormally high risk of theft.

4991. The Vehicles did not comply with the implied warranty of merchantability because the Vehicles were defective and not in merchantable condition at the time of sale and/or lease, were not fit for their ordinary purpose of providing safe and reliable transportation at the time of sale or lease, and would not pass without objection in the trade as they deviated significantly from the industry standard and can be stolen in mere minutes without a key. Defendants knew at the time of manufacture that the Vehicles contained the Theft-Prone Design and lacked any anti-theft equipment or design elements that effectively prevent theft or comply with FMVSS No. 114. Therefore, the Defendants knew at the time of manufacture that the Vehicles are at an abnormally high risk of theft and are unsafe and an unreliable form of transportation. The Theft-Prone Design renders the Vehicles highly vulnerable to theft and a prime target for thieves as they can be easily stolen in seconds. Defendants knew at the time of manufacture that because their Vehicles did not include any anti-theft measures that satisfied FMVSS No. 114, making their Vehicles more prone to theft and failing to comply with federal regulations, the Vehicles would require larger insurance premiums and would depreciate at a more rapid rate than a comparable vehicle with anti-theft measure that satisfied FMVSS No. 114. Consequently, at the time of sale and/or lease, the Vehicles were not fit for their ordinary purpose of providing safe and reliable transportation.

4992. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable. Defendants knowingly

sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including South Dakota Plaintiffs, of the safety defect. Any time limitations regarding the warranty period were also unconscionable and inadequate to protect South Dakota Plaintiffs. South Dakota Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants. A gross disadvantage in bargaining power existed between South Dakota Plaintiffs and Defendants, which unreasonably favored Defendants. Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left South Dakota Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

4993. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that South Dakota Plaintiffs may seek alternative remedies. South Dakota Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

4994. South Dakota Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure. South Dakota Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of South Dakota Plaintiffs' breach of warranty claims. Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and South Dakota Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have

also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, South Dakota Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches. To date, Defendants failed to remedy their breaches.

4995. Alternatively, South Dakota Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches. South Dakota Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

4996. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, South Dakota Plaintiffs' Vehicles were and are defective, the Theft-Prone Design in the Vehicles has not been remedied, and South Dakota Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that South Dakota Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

**2.    Breach of Express Warranty Under S.D. Codified Laws § 57A-2-313.**

4997. South Dakota Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

4998. During the relevant time periods, Defendants manufactured the Vehicles and South Dakota Plaintiffs purchased and/or leased the Vehicles from Defendants.

4999. By affixing a VIN plate to each Vehicle at the time of manufacture, Defendants expressly warranted each Vehicles' conformance to "all applicable U.S.A.

- 1061 -
COMPLAINT

federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture shown." These statements are an affirmation of fact or promise made to South Dakota Plaintiffs as to the Vehicles' condition, quality, safety, and reliability. These statements became the basis of the bargain between South Dakota Plaintiffs and Defendants, as South Dakota Plaintiffs relied on these statements when making their decisions to purchase and/or lease the Vehicles. As such, the statements are an express warranty under South Dakota law pursuant to S.D. Codified Laws § 57A-2-313.

5000. South Dakota Plaintiffs used the Vehicles in accordance with their normal operation and did not misuse or mishandle the Vehicles in any way material to the allegations set forth herein.

5001. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable. Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including South Dakota Plaintiffs, of the safety defect. Any time limitations regarding the warranty period were also unconscionable and inadequate to protect South Dakota Plaintiffs. South Dakota Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants. A gross disadvantage in bargaining power existed between South Dakota Plaintiffs and Defendants, which unreasonably favored Defendants. Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left South Dakota Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

5002. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that South Dakota Plaintiffs may seek alternative remedies. South Dakota Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

COMPLAINT

5003. South Dakota Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure. South Dakota Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of South Dakota Plaintiffs' breach of warranty claims. Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and South Dakota Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, South Dakota Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches. To date, Defendants failed to remedy their breaches.

5004. Alternatively, South Dakota Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches. South Dakota Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

5005. The Vehicles did not perform as promised in accordance with Defendants' express warranty; instead, the Vehicles did not meet all applicable motor vehicle safety

COMPLAINT

and theft prevention standards in effect on the date of manufacture. The Vehicles are capable of being stolen in a matter of seconds without a key and do not comply with the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles do not, in fact, conform to the applicable anti-theft standards.

5006. As a direct and proximate result of Defendants' breaches, South Dakota Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that South Dakota Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

**3.     Violation of the South Dakota Deceptive Trade Practices and Consumer Protection Law (S.D. Codified Laws § 37-24-1, et seq.).**

5007. South Dakota Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

5008. South Dakota Plaintiffs are "persons" within the meaning of S.D. Codified Laws § 37-24-1.

5009. The Vehicles are "merchandise" within the meaning of S.D. Codified Laws § 37-24-1.

5010. Under the South Dakota Deceptive Trade Practices and Consumer Protection Law ("South Dakota CPL"), "[i]t is a deceptive act or practice for any person to: Knowingly act, use, or employ any deceptive act or practice, fraud, false pretense, false promises, or misrepresentation or to conceal, suppress, or omit any material fact in connection with the sale or advertisement of any merchandise, regardless of whether any person has in fact been misled, deceived, or damaged thereby . . . ." S.D. Codified Laws § 37-24-6.

5011. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the South Dakota CPL by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material

facts regarding the quality, reliability, and safety of the Vehicles and the Theft-Prone Design, as detailed above.

5012. Under the South Dakota CPL, Defendants had an ongoing duty to Plaintiffs to refrain from unfair or deceptive practices in the course of their business. Specifically, Defendants owed South Dakota Plaintiffs a duty to disclose all the material facts concerning the Theft-Prone Design in the Vehicles.

5013. Defendants had exclusive access to and far superior knowledge about facts regarding the Theft-Prone Design, and Defendants knew these facts were not known to or reasonably discoverable by South Dakota Plaintiffs.

5014. Given the Theft-Prone Design's hidden and technical nature, South Dakota Plaintiffs lack the sophisticated expertise in vehicle components necessary to discover the Theft-Prone Design on their own.

5015. Defendants knew that the Theft-Prone Design gave rise to safety concerns for the consumers who use the Vehicles, and that the Theft-Prone Design would have been a material fact in the South Dakota Plaintiffs' decisions to buy or lease the Vehicles.

5016. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Theft-Prone Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

5017. As detailed above, the information concerning the Theft-Prone Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

5018. By misrepresenting the Vehicles as safe, reliable and compliant with applicable standards, and by failing to disclose and actively concealing the real dangers

and risk posed by the Theft-Prone Design, Defendants engaged in one or more of the following unfair or deceptive business practices prohibited by S.D. Codified Laws § 37-24-6(1): use of fraud, false pretense, false promises, or misrepresentation or concealment, suppression, or omission of material facts in connection with the sale or advertisement of the Vehicles.

5019. Defendants intended for South Dakota Plaintiffs to rely on them to provide adequately designed Vehicles and to honestly and accurately reveal the safety hazards described above.

5020. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Theft-Prone Design.  Those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including South Dakota Plaintiffs, about the true safety and reliability of the Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

5021. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Theft-Prone Design and true characteristics of the Vehicles were material to the decisions of South Dakota Plaintiffs to purchase or lease the Vehicles, as Defendants intended.  South Dakota Plaintiffs were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase or lease the Vehicles.

5022. South Dakota Plaintiffs' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, and/or otherwise learning that the Vehicles contained the Theft-Prone Design, as alleged above.  South Dakota Plaintiffs did not, and could not, unravel Defendants' deception on their own.

5023. Had they known the truth about the Theft-Prone Design, South Dakota Plaintiffs would not have purchased or leased the Vehicles or would have paid

significantly less for them.

5024. South Dakota Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

5025. Defendants' violations present a continuing risk to South Dakota Plaintiffs and the general public because the Vehicles remain unsafe due to the Theft-Prone Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

5026. South Dakota Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action. As such, Defendants are and have been well aware of the Theft-Prone Design and South Dakota Plaintiffs' claims. Additionally, Defendants had ample notice provided by the numerous complaints filed against them, internet videos, and news reports. Furthermore, on September 17, 2025, South Dakota Plaintiffs sent Defendants written notice letters of Defendants' violations, Plaintiffs' claims, and a proposed cure to the violations. To date, Defendants failed to remedy their violations. Because Defendants failed to remedy their unlawful conduct, South Dakota Plaintiffs seek all damages and relief to which South Dakota Plaintiffs are entitled.

5027. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile. As alleged above, Defendants have long known that the Vehicles contained the Theft-Prone Design yet did nothing to remedy the Theft-Prone Design.

5028. Pursuant to S.D. Codified Laws § 37-24-31, South Dakota Plaintiffs seek an order (1) enjoining Defendants' unfair and/or deceptive acts, methods, or practices alleged herein, and (2) awarding damages, punitive damages, attorney's fees, costs, and/or any other just and proper relief available under the South Dakota CPL.

### 4. Fraud by Omission and Concealment.

5029. South Dakota Plaintiffs incorporate by reference and reallege each

preceding paragraph as though fully set forth herein.

5030. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards. In reality, however, the Vehicles do not comply with such standards.

5031. Defendants were aware of the Theft-Prone Design when they manufactured, marketed, and sold the Vehicles to South Dakota Plaintiffs. Defendants further knew that the Theft-Prone Design gave rise to serious safety risks for the consumers that would use the Vehicles and naturally give rise to higher insurance premiums and accelerated depreciation. At the same time, Defendants were aware of the Federal Motor Vehicle Safety Standards and of the effectiveness of engine immobilizer technology in reducing safety hazards. Defendants were also aware that noncompliance with federal and industry standards lowered the value of the Vehicles and would render the Vehicles difficult to insure.

5032. Defendants knew that the Theft-Prone Design and the safety hazards it posed would have been a material fact in the South Dakota Plaintiffs' decisions to buy or lease the Vehicles.

5033. Having been aware of the Theft-Prone Design within the Vehicles and having known that South Dakota Plaintiffs could not have reasonably been expected to know of the Theft-Prone Design, Defendants had a duty to disclose the Theft-Prone Design to South Dakota Plaintiffs in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Theft-Prone Design.

5034. Defendants knowingly made affirmatively false or incomplete statements of material facts as to the Vehicles' safety, reliability, quality, value, and compliance with applicable motor vehicle safety and theft prevention standards, while they intentionally withheld, concealed, omitted, suppressed, and failed to disclose material facts about the Theft-Prone Design, lack of effective anti-theft measures, significant safety risks, and the Vehicles' true value. Defendants volunteered incomplete information about the Vehicles they offered for sale and/or lease to consumers,

including false statements as to the Vehicles' safety and compliance with applicable safety and anti-theft standards, while at the same time withholding the existence of the Theft-Prone Design.

5035. Defendants intentionally concealed, omitted, and failed to disclose the Theft-Prone Design and noncompliance with applicable safety and anti-theft standards to South Dakota Plaintiffs in connection with the sale and/or lease of the Vehicles. Defendants did not inform consumers, including South Dakota Plaintiffs, that the Vehicles Theft-Prone Design left the Vehicles without any effective anti-theft protection which rendered the Vehicles a significant safety risk and non-compliant with federal motor vehicle safety standards. Defendants further knew and failed to disclose that the Theft-Prone Design and lack of standard anti-theft measures left the Vehicles at substantially lower value than the price for which they were advertised, marketed, sold, and/or leased.

5036. Alternatively, Defendants made false misrepresentations about the Theft-Prone Design with such utter disregard and recklessness that their knowledge regarding the Theft-Prone Design and its unsafe and unreliable nature may be inferred.

5037. Defendants had exclusive access to and far superior knowledge regarding the facts of the Theft-Prone Design and Defendants knew these facts were not known to or reasonably discoverable by South Dakota Plaintiffs.

5038. Given the Theft-Prone Design's hidden and technical nature, South Dakota Plaintiffs lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft-Prone Design on their own.

5039. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Theft-Prone Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease

- 1069 -
COMPLAINT

to consumers, Defendants had the duty to disclose the whole truth.

5040. In breach of their duties, Defendants failed to disclose the Theft-Prone Design to South Dakota Plaintiffs in connection with the sale or lease of the Vehicles.

5041. The Vehicles' Theft-Prone Design and noncompliance with applicable anti-theft standards were material facts about the safety, reliability, and value of the Vehicles.  A reasonable person would find the Vehicles' lack of industry-standard anti-theft measures and noncompliance with applicable safety standards important in their decision to purchase, lease, and maintain the Vehicles because it would impact safety, availability, the Vehicles' value, and the cost to insure the Vehicles.

5042. Defendants intended for the South Dakota Plaintiffs to rely on their omissions and concealment—which South Dakota Plaintiffs did by purchasing and leasing the Vehicles at the prices they paid believing that their vehicles would not have a Theft-Prone Design that would affect the quality, reliability, and safety of the Vehicles.

5043. South Dakota Plaintiffs' reliance on Defendants' misrepresentations and concealment was reasonable and justifiable, as South Dakota Plaintiffs had no way of learning the facts that Defendants had concealed or failed to disclose.  South Dakota Plaintiffs did not, and could not, unravel Defendants' deception on their own.

5044. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products.  They did so at the expense of South Dakota Plaintiffs.

5045. If Defendants had fully and adequately disclosed the Theft-Prone Design to consumers, South Dakota Plaintiffs would have seen such a disclosure.

5046. Through their omissions and concealment with respect to the Theft-Prone Design within the Vehicles, Defendants intended to induce, and did in fact induce, South Dakota Plaintiffs to either purchase a Vehicle that they otherwise would not have

purchased or pay more for a Vehicle than they otherwise would have paid.

5047. Had South Dakota Plaintiffs known of the Theft-Prone Design within the Vehicles, they would not have purchased the Vehicles or would have paid less for them.

5048. As a direct and proximate result of Defendants' omissions, South Dakota Plaintiffs overpaid for the Vehicles because South Dakota Plaintiffs would either have paid less for the Vehicles or would not have purchased the Vehicles at all if the Theft-Prone Design had been disclosed to them.

5049. As a direct and proximate result of Defendants' omissions, South Dakota Plaintiffs purchased Vehicles highly susceptible to theft and were forced to pay higher insurance premiums to account for the susceptibility that they did not knowingly accept, purchase, or lease.

5050. As a direct and proximate result of Defendants' omissions, the South Dakota Plaintiffs paid higher insurance premiums and are now left with Vehicles with significantly diminished values.

5051. Accordingly, Defendants are liable to South Dakota Plaintiffs for their damages, including but not limited to the difference in value, increased insurance premiums that South Dakota Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

5052. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, in reckless disregard of the South Dakota Plaintiffs' rights and well-being, and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

5053. South Dakota Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 5. Negligent Misrepresentation.

5054. South Dakota Plaintiffs incorporate by reference and reallege each

preceding paragraph as though fully set forth herein.

5055. Defendants, in the course of their business selling and promoting motor vehicles, supplied false information, including that the Vehicles were safe and reliable, to guide motor vehicle buyers, including South Dakota Plaintiffs, in their choice of transaction.

5056. Defendants made misrepresentations of material facts concerning the safety and reliability of the Vehicles that they knew or should have known were false. Specifically, Defendants misrepresented that the Vehicles had effective anti-theft equipment or design elements; misrepresented that the Vehicles were safe and reliable forms of transportation; misrepresented that the Vehicles complied with all federal and industry safety and theft prevention standards; and misrepresented the true value of the Vehicles. Defendants supplied this information in the course of their business to guide South Dakota Plaintiffs in their Vehicle selection and induce South Dakota Plaintiffs to purchase one of Defendants' Vehicles.

5057. South Dakota Plaintiffs justifiably relied upon Defendants' representations because, as the entities responsible for designing and manufacturing the Vehicles, Defendants held themselves out to be knowledgeable about the Vehicles' components and honest in their promotion of the Vehicles. South Dakota Plaintiffs' reliance was further reasonable given the hidden and technical nature of the Theft-Prone Design and practical inability of South Dakota Plaintiffs to discover the Theft-Prone Design on their own. Because Defendants held the Vehicles out to be in line with industry standards, the representation was not unreasonable on its face and South Dakota Plaintiffs had no apparent reason to doubt the veracity of Defendants' representations.

5058. Defendants had a duty to disclose all relevant information regarding the Vehicles' safety, reliability, quality, and characteristics that would affect the South Dakota Plaintiffs' choice of purchase as consumers.

5059. Defendants failed to exercise reasonable care or competence in communicating the standards of safety, reliability, quality, and characteristics of the

COMPLAINT

Vehicles to the consumers, including South Dakota Plaintiffs, when they failed to disclose the lack of anti-theft prevention technology in the Vehicles. Rather, Defendants published materials and marketed the Vehicles for years as safe, reliable, and of a quality consistent with the industry standard.

5060. South Dakota Plaintiffs would not have purchased, or would have purchased for a lower price, the Vehicles which Defendants negligently misrepresented as safe, of standard quality, and containing standard trade characteristics, such as anti-theft prevention technology. Additionally, as a direct and proximate result, South Dakota Plaintiffs have had to pay higher insurance premiums to account for the Vehicles' high susceptibility to theft and are now left with Vehicles that have a lower value than they would have had without the defect.

5061. As a direct and proximate result of South Dakota Plaintiffs' reasonable reliance on Defendants' negligent misrepresentations, South Dakota Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that South Dakota Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

5062. South Dakota Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 6. Negligence.

5063. South Dakota Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

5064. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

5065. Defendants owed a duty of care to South Dakota Plaintiffs. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by

casual car thieves, higher insurance premiums, and accelerated depreciation.

5066. Defendants failed to exercise reasonable care in connection with their manufacture, distribution, sale, and/or leasing of the Vehicles.

5067. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards.  Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant with all applicable federal standards.  This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with South Dakota Plaintiffs.

5068. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS No. 114.

5069. As a direct and proximate result of Defendants' failure to exercise reasonable care, South Dakota Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that South Dakota Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

5070. South Dakota Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 7.     Unjust Enrichment.

5071. South Dakota Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

5072. When they purchased and leased the Vehicles, South Dakota Plaintiffs conferred tangible and material economic benefits upon Defendants, who readily

COMPLAINT

accepted and retained these benefits.

5073. South Dakota Plaintiffs would not have purchased or leased their Vehicles, or would have paid less for them, had they known of the Theft-Prone Design at the time of purchase or lease. Therefore, Defendants profited from the sale and lease of the Vehicles to the detriment and expense of South Dakota Plaintiffs.

5074. Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft-Prone Design, yet they failed to disclose this knowledge and misled the South Dakota Plaintiffs regarding the nature and quality of the Vehicles while profiting from this deception.

5075. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

5076. South Dakota Plaintiffs are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return South Dakota Plaintiffs to the position they occupied prior to dealing with these Defendants, with such amounts to be determined at trial.

5077. South Dakota Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if South Dakota Plaintiffs' claims for damages are dismissed or judgment is entered in favor of Defendants, South Dakota Plaintiffs will have no adequate legal remedy.

**NN.   Tennessee State Law Claims for Relief**

**(Alleged by Tennessee Plaintiffs Against All Defendants)**

**1.      Breach of Implied Warranty of Merchantability Under Tenn. Code Ann. §§ 47-2-314 and 47-2A-212.**

5078. Tennessee Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

5079. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Tenn. Code Ann. §§ 47-2-314 and 47-2A-212.

5080. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Tenn. Code Ann. §§ 47-2-104(1) and 47-2A-103(3), and "sellers" of motor vehicles under § 47-2-103(1)(d).

5081. Defendants are and were at all relevant times "lessors" of motor vehicles under Tenn. Code Ann. § 47-2A-103(1)(p).

5082. Tennessee Plaintiffs who purchased Vehicles in Tennessee are "buyers" within the meaning of Tenn. Code Ann. § 47-2-103(1)(a).

5083. Tennessee Plaintiffs who leased Vehicles in Tennessee are "lessees" within the meaning of Tenn. Code Ann. § 47-2A-103(1)(n).

5084. The Vehicles are and were at all relevant times "goods" within the meaning of Tenn. Code Ann. §§ 47-2-105(1) and 47-2A-103(1)(h).

5085. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Tennessee Plaintiffs with an implied warranty that the purchased and leased Vehicles were in merchantable condition and fit for the ordinary purposes for which they were sold or leased. This implied warranty included that the Vehicles (a) were manufactured, supplied, distributed, and sold by Defendants, (b) were safe and reliable for transportation, (c) complied with all federal, state, and industry motor vehicle regulations and safety standards, including FMVSS No. 114, and (d) were not at abnormally high risk of theft.

5086. The Vehicles did not comply with the implied warranty of merchantability because the Vehicles were defective and not in merchantable condition at the time of sale and/or lease, were not fit for their ordinary purpose of providing safe and reliable transportation at the time of sale or lease, and would not pass without objection in the trade as they deviated significantly from the industry standard and can be stolen in mere minutes without a key. Defendants knew at the time of manufacture that the Vehicles

contained the Theft-Prone Design and lacked any anti-theft equipment or design elements that effectively prevent theft or comply with FMVSS No. 114. Therefore, the Defendants knew at the time of manufacture that the Vehicles are at an abnormally high risk of theft and are unsafe and an unreliable form of transportation. The Theft-Prone Design renders the Vehicles highly vulnerable to theft and a prime target for thieves as they can be easily stolen in seconds. Defendants knew at the time of manufacture that because their Vehicles did not include any anti-theft measures that satisfied FMVSS No. 114, making their Vehicles more prone to theft and failing to comply with federal regulations, the Vehicles would require larger insurance premiums and would depreciate at a more rapid rate than a comparable vehicle with anti-theft measure that satisfied FMVSS No. 114. Consequently, at the time of sale and/or lease, the Vehicles were not fit for their ordinary purpose of providing safe and reliable transportation.

5087. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable. Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Plaintiffs, of the safety defect. Any time limitations regarding the warranty period were also unconscionable and inadequate to protect Tennessee Plaintiffs. Tennessee Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants. A gross disadvantage in bargaining power existed between Tennessee Plaintiffs and Defendants, which unreasonably favored Defendants. Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left Tennessee Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

5088. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that Tennessee Plaintiffs may seek alternative remedies. Tennessee Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry

standards, and Vehicles that provide safe and reliable transportation.

5089. Tennessee Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure. Tennessee Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Tennessee Plaintiffs' breach of warranty claims. Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Tennessee Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Tennessee Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches. To date, Defendants failed to remedy their breaches.

5090. Alternatively, Tennessee Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches. Tennessee Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

5091. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Tennessee Plaintiffs' Vehicles were and are defective, the

- 1078 -
COMPLAINT

Theft-Prone Design in the Vehicles has not been remedied, and Tennessee Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that Tennessee Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

### 2.     Breach of Express Warranty Under Tenn. Code Ann. § 47-2-313.

5092. Tennessee Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

5093. During the relevant time periods, Defendants manufactured the Vehicles and Tennessee Plaintiffs purchased and/or leased the Vehicles from Defendants.

5094. By affixing a VIN plate to each Vehicle at the time of manufacture, Defendants expressly warranted each Vehicles' conformance to "all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture shown." These statements are an affirmation of fact or promise made to Plaintiffs as to the Vehicles' condition, quality, safety, and reliability. These statements became the basis of the bargain between Tennessee Plaintiffs and Defendants, as Tennessee Plaintiffs relied on these statements when making their decisions to purchase and/or lease the Vehicles. As such, the statements are an express warranty under Tennessee law pursuant to Tenn. Code Ann. § 47-2-313.

5095. Tennessee Plaintiffs used the Vehicles in accordance with their normal operation and did not misuse or mishandle the Vehicles in any way material to the allegations set forth herein.

5096. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable. Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Tennessee Plaintiffs, of the safety defect. Any time limitations regarding the warranty period were also unconscionable and inadequate to

protect Tennessee Plaintiffs. Tennessee Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants. A gross disadvantage in bargaining power existed between Tennessee Plaintiffs and Defendants, which unreasonably favored Defendants. Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left Tennessee Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

5097. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that Tennessee Plaintiffs may seek alternative remedies. Tennessee Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

5098. Tennessee Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure. Tennessee Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Tennessee Plaintiffs' breach of warranty claims. Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Tennessee Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Tennessee Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a

proposed cure to the breaches.  To date, Defendants failed to remedy their breaches.

5099. Alternatively, Tennessee Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile.  Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design.  Defendants have not cured, remedied, or repaired their breaches. Tennessee Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

5100. The Vehicles did not perform as promised in accordance with Defendants' express warranty; instead, the Vehicles did not meet all applicable motor vehicle safety and theft prevention standards in effect on the date of manufacture.  The Vehicles are capable of being stolen in a matter of seconds without a key and do not comply with the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles do not, in fact, conform to the applicable anti-theft standards.

5101. As a direct and proximate result of Defendants' breaches, Tennessee Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that Tennessee Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

### 3. Violation of the Tennessee Consumer Protection Act of 1977 (Tenn. Code Ann. § 47-18-101, et seq.).

5102. Tennessee Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

5103. Tennessee Plaintiffs are "persons" within the meaning of Tennessee Code Ann. § 47-18-103(18).

5104. The Vehicles are "goods" within the meaning of § 47-18-103(12).

5105. Defendants were and are engaged in "trade" or "commerce" within the

COMPLAINT

meaning of § 47-18-103(24).

5106. The Tennessee Consumer Protection Act of 1977 ("Tennessee CPA") declares that "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce constitute unlawful acts or practices . . . ."  Tennessee Code Ann. § 47-18-104(a).

5107. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Tennessee CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Theft-Prone Design, as detailed above.

5108. Under the Tennessee CPA, Defendants had an ongoing duty to Tennessee Plaintiffs to refrain from unfair or deceptive practices in the course of their business. Specifically, Defendants owed Tennessee Plaintiffs a duty to disclose all the material facts concerning the Theft-Prone Design in the Vehicles.

5109. Defendants had exclusive access to and far superior knowledge about facts regarding the Theft-Prone Design, and Defendants knew these facts were not known to or reasonably discoverable by Tennessee Plaintiffs.

5110. Given the Theft-Prone Design's hidden and technical nature, Tennessee Plaintiffs lack the sophisticated expertise in vehicle components necessary to discover the Theft-Prone Design on their own.

5111. Defendants knew that the Theft-Prone Design gave rise to safety concerns for the consumers who use the Vehicles, and that the Theft-Prone Design would have been a material fact in the Tennessee Plaintiffs' decisions to buy or lease the Vehicles.

5112. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect.  In advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Theft-Prone Design.  Because they volunteered to provide

information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

5113. As detailed above, the information concerning the Theft-Prone Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

5114. By misrepresenting the Vehicles as safe, reliable and compliant with applicable standards, and by failing to disclose and actively concealing the real dangers and risk posed by the Theft-Prone Design, Defendants engaged in one or more of the following unfair or deceptive business practices prohibited Tennessee Code Ann. § 47-18-104(b) by:

    a. causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of the Vehicles;

    b. representing that the Vehicles have approval, characteristics, uses, or benefits that they do not have, including that they complied with all applicable safety and anti-theft standards;

    c. representing that the Vehicles are of a particular standard, quality or grade, including that they complied with all applicable safety and anti-theft standards, when they are not;

    d. advertising the Vehicles with intent not to sell them as advertised; and

    e. using statements or illustrations in any advertisement which create a false impression of the grade, quality, quantity, make, value, age, size, color, usability or origin of the Vehicles, or which may otherwise misrepresent the Vehicles in such a manner that later, on disclosure of the true facts, there is a likelihood that the buyer may be switched from the advertised Vehicles to other goods or services. Tennessee Code Ann. §§ 47-18-104(b)(2), (5), (7), (9), and (21).

5115. Defendants intended for Tennessee Plaintiffs to rely on them to provide adequately designed Vehicles and to honestly and accurately reveal the safety hazards

described above.

5116. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Theft-Prone Design. Those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Tennessee Plaintiffs, about the true safety and reliability of the Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

5117. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Theft-Prone Design and true characteristics of the Vehicles were material to the decisions of Tennessee Plaintiffs to purchase or lease the Vehicles, as Defendants intended. Plaintiffs were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase or lease the Vehicles.

5118. Tennessee Plaintiffs' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, and/or otherwise learning that the Vehicles contained the Theft-Prone Design, as alleged above. Tennessee Plaintiffs did not, and could not, unravel Defendants' deception on their own.

5119. Had they known the truth about the Theft-Prone Design, Tennessee Plaintiffs would not have purchased or leased the Vehicles or would have paid significantly less for them.

5120. Tennessee Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

5121. Defendants' violations present a continuing risk to Tennessee Plaintiffs and the general public because the Vehicles remain unsafe due to the Theft-Prone Design. Defendants' unlawful acts and practices complained of herein affect the public

- 1084 -
COMPLAINT

interest.

5122. Tennessee Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action. As such, Defendants are and have been well aware of the Theft-Prone Design and Tennessee Plaintiffs' claims. Additionally, Defendants had ample notice provided by the numerous complaints filed against them, internet videos, and news reports. Furthermore, on September 17, 2025, Tennessee Plaintiffs sent Defendants written notice letters of Defendants' violations, Plaintiffs' claims, and a proposed cure to the violations. To date, Defendants failed to remedy their violations. Because Defendants failed to remedy their unlawful conduct, Tennessee Plaintiffs seek all damages and relief to which Tennessee Plaintiffs are entitled.

5123. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile. As alleged above, Defendants have long known that the Vehicles contained the Theft-Prone Design yet did nothing to remedy the Theft-Prone Design.

5124. Pursuant to Tennessee Code Ann. § 47-18-109, Tennessee Plaintiffs seek an order (1) enjoining Defendants' unfair and/or deceptive acts, methods, or practices alleged herein, and (2) awarding damages, punitive damages, attorney's fees, costs, and/or any other just and proper relief available under the Tennessee CPA.

### 4. Fraud by Omission and Concealment.

5125. Tennessee Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

5126. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards. In reality, however, the Vehicles do not comply with such standards.

5127. Defendants were aware of the Theft-Prone Design when they manufactured, marketed, and sold the Vehicles to Tennessee Plaintiffs. Defendants further knew that the Theft-Prone Design gave rise to serious safety risks for the

consumers that would use the Vehicles and naturally give rise to higher insurance premiums and accelerated depreciation. At the same time, Defendants were aware of the Federal Motor Vehicle Safety Standards and of the effectiveness of engine immobilizer technology in reducing safety hazards. Defendants were also aware that noncompliance with federal and industry standards lowered the value of the Vehicles and would render the Vehicles difficult to insure.

5128. Defendants knew that the Theft-Prone Design and the safety hazards it posed would have been a material fact in the Tennessee Plaintiffs' decisions to buy or lease the Vehicles.

5129. Having been aware of the Theft-Prone Design within the Vehicles and having known that Tennessee Plaintiffs could not have reasonably been expected to know of the Theft-Prone Design, Defendants had a duty to disclose the Theft-Prone Design to Plaintiffs in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Theft-Prone Design.

5130. Defendants knowingly made affirmatively false or incomplete statements of material facts as to the Vehicles' safety, reliability, quality, value, and compliance with applicable motor vehicle safety and theft prevention standards, while they intentionally withheld, concealed, omitted, suppressed, and failed to disclose material facts about the Theft-Prone Design, lack of effective anti-theft measures, significant safety risks, and the Vehicles' true value. Defendants volunteered incomplete information about the Vehicles they offered for sale and/or lease to consumers, including false statements as to the Vehicles' safety and compliance with applicable safety and anti-theft standards, while at the same time withholding the existence of the Theft-Prone Design.

5131. Defendants intentionally concealed, omitted, and failed to disclose the Theft-Prone Design and noncompliance with applicable safety and anti-theft standards to Tennessee Plaintiffs in connection with the sale and/or lease of the Vehicles. Defendants did not inform consumers, including Tennessee Plaintiffs, that the Vehicles

COMPLAINT

Theft-Prone Design left the Vehicles without any effective anti-theft protection which rendered the Vehicles a significant safety risk and non-compliant with federal motor vehicle safety standards.  Defendants further knew and failed to disclose that the Theft-Prone Design and lack of standard anti-theft measures left the Vehicles at substantially lower value than the price for which they were advertised, marketed, sold, and/or leased.

5132. Alternatively, Defendants made false misrepresentations about the Theft-Prone Design with such utter disregard and recklessness that their knowledge regarding the Theft-Prone Design and its unsafe and unreliable nature may be inferred.

5133. Defendants had exclusive access to and far superior knowledge regarding the facts of the Theft-Prone Design and Defendants knew these facts were not known to or reasonably discoverable by Tennessee Plaintiffs.

5134. Given the Theft-Prone Design's hidden and technical nature, Tennessee Plaintiffs lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft-Prone Design on their own.

5135. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect.  In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Theft-Prone Design.  Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

5136. In breach of their duties, Defendants failed to disclose the Theft-Prone Design to Plaintiffs in connection with the sale or lease of the Vehicles.

5137. The Vehicles' Theft-Prone Design and noncompliance with applicable anti-theft standards were material facts about the safety, reliability, and value of the Vehicles.  A reasonable person would find the Vehicles' lack of industry-standard anti-theft measures and noncompliance with applicable safety standards important in their decision to purchase, lease, and maintain the Vehicles because it would impact safety,

availability, the Vehicles' value, and the cost to insure the Vehicles.

5138. Defendants intended for the Tennessee Plaintiffs to rely on their omissions and concealment—which Tennessee Plaintiffs did by purchasing and leasing the Vehicles at the prices they paid believing that their vehicles would not have a Theft-Prone Design that would affect the quality, reliability, and safety of the Vehicles.

5139. Tennessee Plaintiffs' reliance on Defendants' misrepresentations and concealment was reasonable and justifiable, as Tennessee Plaintiffs had no way of learning the facts that Defendants had concealed or failed to disclose.  Tennessee Plaintiffs did not, and could not, unravel Defendants' deception on their own.

5140. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products.  They did so at the expense of Tennessee Plaintiffs.

5141. If Defendants had fully and adequately disclosed the Theft-Prone Design to consumers, Tennessee Plaintiffs would have seen such a disclosure.

5142. Through their omissions and concealment with respect to the Theft-Prone Design within the Vehicles, Defendants intended to induce, and did in fact induce, Tennessee Plaintiffs to either purchase a Vehicle that they otherwise would not have purchased or pay more for a Vehicle than they otherwise would have paid.

5143. Had Tennessee Plaintiffs known of the Theft-Prone Design within the Vehicles, they would not have purchased the Vehicles or would have paid less for them.

5144. As a direct and proximate result of Defendants' omissions, Tennessee Plaintiffs overpaid for the Vehicles because Tennessee Plaintiffs would either have paid less for the Vehicles or would not have purchased the Vehicles at all if the Theft-Prone Design had been disclosed to them.

5145. As a direct and proximate result of Defendants' omissions, Tennessee Plaintiffs purchased Vehicles highly susceptible to theft and were forced to pay higher

insurance premiums to account for the susceptibility that they did not knowingly accept, purchase, or lease.

5146. As a direct and proximate result of Defendants' omissions, the Tennessee Plaintiffs paid higher insurance premiums and are now left with Vehicles with significantly diminished values.

5147. Accordingly, Defendants are liable to Tennessee Plaintiffs for their damages, including but not limited to the difference in value, increased insurance premiums that Tennessee Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

5148. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, in reckless disregard of the Tennessee Plaintiffs' rights and well-being, and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

5149. Tennessee Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 5. Negligent Misrepresentation.

5150. Tennessee Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

5151. Defendants, in the course of their business selling and promoting motor vehicles, supplied false information, including that the Vehicles were safe and reliable, to guide motor vehicle buyers, including Tennessee Plaintiffs, in their choice of transaction.

5152. Defendants made misrepresentations of material facts concerning the safety and reliability of the Vehicles that they knew or should have known were false. Specifically, Defendants misrepresented that the Vehicles had effective anti-theft equipment or design elements; misrepresented that the Vehicles were safe and reliable

COMPLAINT

forms of transportation; misrepresented that the Vehicles complied with all federal and industry safety and theft prevention standards; and misrepresented the true value of the Vehicles. Defendants supplied this information in the course of their business to guide Tennessee Plaintiffs in their Vehicle selection and induce Tennessee Plaintiffs to purchase one of Defendants' Vehicles.

5153. Tennessee Plaintiffs justifiably relied upon Defendants' representations because, as the entities responsible for designing and manufacturing the Vehicles, Defendants held themselves out to be knowledgeable about the Vehicles' components and honest in their promotion of the Vehicles. Tennessee Plaintiffs' reliance was further reasonable given the hidden and technical nature of the Theft-Prone Design and practical inability of Tennessee Plaintiffs to discover the Theft-Prone Design on their own. Because Defendants held the Vehicles out to be in line with industry standards, the representation was not unreasonable on its face and Tennessee had no apparent reason to doubt the veracity of Defendants' representations.

5154. Defendants had a duty to disclose all relevant information regarding the Vehicles' safety, reliability, quality, and characteristics that would affect the Tennessee Plaintiffs' choice of purchase as consumers.

5155. Defendants failed to exercise reasonable care or competence in communicating the standards of safety, reliability, quality, and characteristics of the Vehicles to the consumers, including Tennessee Plaintiffs, when they failed to disclose the lack of anti-theft prevention technology in the Vehicles. Rather, Defendants published materials and marketed the Vehicles for years as safe, reliable, and of a quality consistent with the industry standard.

5156. Tennessee Plaintiffs would not have purchased, or would have purchased for a lower price, the Vehicles which Defendants negligently misrepresented as safe, of standard quality, and containing standard trade characteristics, such as anti-theft prevention technology. Additionally, as a direct and proximate result, Tennessee Plaintiffs have had to pay higher insurance premiums to account for the Vehicles' high

COMPLAINT

susceptibility to theft and are now left with Vehicles that have a lower value than they would have had without the defect.

5157. As a direct and proximate result of Tennessee Plaintiffs' reasonable reliance on Defendants' negligent misrepresentations, Tennessee Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that Tennessee Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

5158. Tennessee Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 6. Negligence.

5159. Tennessee Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

5160. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

5161. Defendants owed a duty of care to Tennessee Plaintiffs. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves, higher insurance premiums, and accelerated depreciation.

5162. Defendants failed to exercise reasonable care in connection with their manufacture, distribution, sale, and/or leasing of the Vehicles.

5163. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant with all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any

COMPLAINT

duties arising through individual contracts for sale or lease that Defendants entered into with Tennessee Plaintiffs.

5164. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS No. 114.

5165. As a direct and proximate result of Defendants' failure to exercise reasonable care, Tennessee Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that Tennessee Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

5166. Tennessee Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 7.    Unjust Enrichment.

5167. Tennessee Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

5168. When they purchased and leased the Vehicles, Tennessee Plaintiffs conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

5169. Tennessee Plaintiffs would not have purchased or leased their Vehicles, or would have paid less for them, had they known of the Theft-Prone Design at the time of purchase or lease.  Therefore, Defendants profited from the sale and lease of the Vehicles to the detriment and expense of Tennessee Plaintiffs.

5170. Defendants appreciated these economic benefits.  These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers.  They knew of these benefits because they were aware of the Theft-Prone Design, yet they failed to disclose this knowledge and misled the Rhode Island Plaintiffs

regarding the nature and quality of the Vehicles while profiting from this deception.

5171. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

5172. Tennessee Plaintiffs are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Tennessee Plaintiffs to the position they occupied prior to dealing with these Defendants, with such amounts to be determined at trial.

5173. Tennessee Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Tennessee Plaintiffs' claims for damages are dismissed or judgment is entered in favor of Defendants, Tennessee Plaintiffs will have no adequate legal remedy.

**OO.  Texas State Law Claims for Relief**

**(Alleged by Texas Plaintiffs Against All Defendants)**

**1.      Breach of Implied Warranty of Merchantability Under Tex. Bus. & Com. Code Ann. §§ 2.314 and 2A.212.**

5174. Texas Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

5175. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Tex. Bus. & Com. Code Ann. §§ 2.314 and 2A.212.

5176. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Tex. Bus. & Com. Code Ann. §§ 2.104(a) and 2A.103(c), and "sellers" of motor vehicles under § 2.103(a)(4).

5177. Defendants are and were at all relevant times "lessors" of motor vehicles under Tex. Bus. & Com. Code Ann. § 2A.103(a)(16).

5178. Texas Plaintiffs who purchased Vehicles in Texas are "buyers" within the meaning of Tex. Bus. & Com. Code Ann. § 2.103(a)(1).

COMPLAINT

5179. Texas Plaintiffs who leased Vehicles in Texas are "lessees" within the meaning of Tex. Bus. & Com. Code Ann. § 2A.103(a)(14).

5180. The Vehicles are and were at all relevant times "goods" within the meaning of Tex. Bus. & Com. Code Ann. §§ 2.105(a) and 2A.103(a)(8).

5181. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased.  Defendants provided Texas Plaintiffs with an implied warranty that the purchased and leased Vehicles were in merchantable condition and fit for the ordinary purposes for which they were sold or leased.  This implied warranty included that the Vehicles (a) were manufactured, supplied, distributed, and sold by Defendants, (b) were safe and reliable for transportation, (c) complied with all federal, state, and industry motor vehicle regulations and safety standards, including FMVSS No. 114, and (d) were not at abnormally high risk of theft.

5182. The Vehicles did not comply with the implied warranty of merchantability because the Vehicles were defective and not in merchantable condition at the time of sale and/or lease, were not fit for their ordinary purpose of providing safe and reliable transportation at the time of sale or lease, and would not pass without objection in the trade as they deviated significantly from the industry standard and can be stolen in mere minutes without a key.  Defendants knew at the time of manufacture that the Vehicles contained the Theft-Prone Design and lacked any anti-theft equipment or design elements that effectively prevent theft or comply with FMVSS No. 114.  Therefore, the Defendants knew at the time of manufacture that the Vehicles are at an abnormally high risk of theft and are unsafe and an unreliable form of transportation.  The Theft-Prone Design renders the Vehicles highly vulnerable to theft and a prime target for thieves as they can be easily stolen in seconds.  Defendants knew at the time of manufacture that because their Vehicles did not include any anti-theft measures that satisfied FMVSS No. 114, making their Vehicles more prone to theft and failing to comply with federal regulations, the Vehicles would require larger insurance premiums and would depreciate at a more rapid rate than a comparable vehicle with anti-theft measure that

COMPLAINT

satisfied FMVSS No. 114. Consequently, at the time of sale and/or lease, the Vehicles were not fit for their ordinary purpose of providing safe and reliable transportation.

5183. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable. Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Texas Plaintiffs, of the safety defect. Any time limitations regarding the warranty period were also unconscionable and inadequate to protect Texas Plaintiffs. Texas Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants. A gross disadvantage in bargaining power existed between Texas Plaintiffs and Defendants, which unreasonably favored Defendants. Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left Texas Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

5184. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that Texas Plaintiffs may seek alternative remedies. Texas Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

5185. Texas Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure. Texas Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Texas Plaintiffs' breach of warranty claims. Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Texas Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance

with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Texas Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches. To date, Defendants failed to remedy their breaches.

5186. Alternatively, Texas Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches. Texas Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

5187. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Texas Plaintiffs' Vehicles were and are defective, the Theft-Prone Design in the Vehicles has not been remedied, and Texas Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that Texas Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

## 2. Breach of Express Warranty Under Tex. Bus. & Com. Code Ann. § 2.313.[144]

5188. Texas Plaintiffs incorporate by reference and reallege each preceding

---

[144] For the names of the Texas Plaintiffs who do not allege a claim for Breach of Express Warranty Under Tex. Bus. & Com. Code Ann. § 2.313, see Exhibit E.

- 1096 -

COMPLAINT

paragraph as though fully set forth herein.

5189. During the relevant time periods, Defendants manufactured the Vehicles and Texas Plaintiffs purchased and/or leased the Vehicles from Defendants.

5190. By affixing a VIN plate to each Vehicle at the time of manufacture, Defendants expressly warranted each Vehicles' conformance to "all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture shown." These statements are an affirmation of fact or promise made to Texas Plaintiffs as to the Vehicles' condition, quality, safety, and reliability. These statements became the basis of the bargain between Texas Plaintiffs and Defendants, as Texas Plaintiffs relied on these statements when making their decisions to purchase and/or lease the Vehicles. As such, the statements are an express warranty under Texas law pursuant to Tex. Bus. & Com. Code Ann. § 2.313.

5191. Texas Plaintiffs used the Vehicles in accordance with their normal operation and did not misuse or mishandle the Vehicles in any way material to the allegations set forth herein.

5192. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable. Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Texas Plaintiffs, of the safety defect. Any time limitations regarding the warranty period were also unconscionable and inadequate to protect Texas Plaintiffs. Texas Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants. A gross disadvantage in bargaining power existed between Plaintiffs and Defendants, which unreasonably favored Defendants. Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left Texas Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

5193. These circumstances caused any exclusive or limited remedy to fail its

COMPLAINT

essential purpose such that Texas Plaintiffs may seek alternative remedies. Texas Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

5194. Texas Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure. Texas Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Texas Plaintiffs' breach of warranty claims. Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Texas Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Texas Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches. To date, Defendants failed to remedy their breaches.

5195. Alternatively, Texas Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches. Texas Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

COMPLAINT

5196. The Vehicles did not perform as promised in accordance with Defendants' express warranty; instead, the Vehicles did not meet all applicable motor vehicle safety and theft prevention standards in effect on the date of manufacture. The Vehicles are capable of being stolen in a matter of seconds without a key and do not comply with the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles do not, in fact, conform to the applicable anti-theft standards.

5197. As a direct and proximate result of Defendants' breaches, Texas Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that Texas Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

**3.    Violation of the Deceptive Trade Practices-Consumer Protection Act (Tex. Bus. & Com. Code Ann. § 17.41, et seq.).[145]**

5198. Texas Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

5199. Defendants and Texas Plaintiffs are "persons" within the meaning of Tex. Bus. & Com. Code Ann. § 17.45(3).

5200. Texas Plaintiffs are "consumers" within the meaning of Tex. Bus. & Com. Code Ann. § 17.45(4).

5201. The Vehicles are "goods" within the meaning of Tex. Bus. & Com. Code Ann. § 17.45(1).

5202. Defendants were and are engaged in "trade" or "commerce" within the meaning of Tex. Bus. & Com. Code Ann. § 17.45(6).

5203. The Deceptive Trade Practices-Consumer Protection Act ("Texas DTPA") prohibits "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade

---

[145] For the names of the Texas Plaintiffs who do not allege a claim for Violation of the Deceptive Trade Practices-Consumer Protection Act (Tex. Bus. & Com. Code Ann. § 17.41, et seq., see Exhibit E.

- 1099 -

COMPLAINT

or commerce[,]" Tex. Bus. & Com. Code Ann. § 17.46(a), and an "unconscionable action or course of action[,]" Tex. Bus. & Com. Code Ann. §§ 17.45(5) and 17.50(a)(3).

5204. In the course of their business, Defendants, through their agents, representatives, and subsidiaries, engaged in unfair and unconscionable deceptive acts or practices by knowingly and intentionally concealing, misrepresenting, omitting, and withholding material facts about the Vehicles' quality, reliability, value, and safety. These material facts include that (a) the Vehicles had a hidden Theft-Prone Design which left the Vehicles without standard anti-theft measures and was not reasonably discoverable to consumers, (b) the Vehicles did not comply with federal or industry motor vehicle safety and theft prevention standards, including FMVSS No. 114, (c) the Vehicles were at an abnormally high risk of theft, and (d) the Vehicles have a value which Defendants knowingly misrepresented. Defendants represented that the Vehicles were of a particular standard and quality but sold them at another standard and quality. These unfair and unconscionable deceptive acts or practices violated the Texas DTPA.

5205. Under the Texas DTPA, Defendants had an ongoing duty to Texas Plaintiffs as consumers to refrain from unfair or deceptive acts, practices, and representations in the course of their business. Specifically, Defendants owed the Texas Plaintiffs a duty to disclose all the material facts concerning the Theft-Prone Design in the Vehicles and to refrain from representing their Vehicles were of a particular standard or quality when they were of another.

5206. Defendants had exclusive and superior knowledge of the Theft-Prone Design, related facts, and the Vehicles' noncompliance with federal and industry safety and theft prevention standard. Defendants knew these facts were hidden and not reasonably discoverable by consumers, including Texas Plaintiffs. Given the Theft-Prone Design's hidden and technical nature, Plaintiffs lack the sophisticated expertise in vehicle components that would have been necessary to discover the Theft-Prone Design on their own.

5207. Defendants further knew that, because of the Theft-Prone Design, the

Vehicles posed a significant safety risk to consumers that used the Vehicles. Defendants knew that the Theft-Prone Design and lack of standard anti-theft measures left the Vehicles at substantially lower value than the price for which they were advertised, marketed, sold, and/or leased. Defendants knew these material facts would have been material to consumers', including Texas Plaintiffs', decision to purchase and/or lease the Vehicles.

5208. Defendants nevertheless made intentionally misleading and incomplete affirmative statements and representations about the Vehicles' safety, reliability, value, and conformance with all applicable safety and theft prevention standards, while also concealing, omitting, and withholding material facts from consumers, including Texas Plaintiffs, at the time the Vehicles were advertised, sold, and/or leased. Defendants marketed and sold the Vehicles as safe despite their knowledge that the Theft-Prone Design posed a significant safety risk to consumers and the general public. Through advertisements, marketing materials, and their websites, Defendants made incomplete representations and/or concealed the Vehicles' defective condition. Defendants further misrepresented that the Vehicles were compliant with all applicable motor vehicle safety and theft prevention standards, when in reality they were not. Defendants further marketed and sold/leased the Vehicles at an inflated and misleading price, given the Vehicles' Theft-Prone Design and lack of standard anti-theft equipment and design elements.

5209. Through their misrepresentations, concealment, omissions, and withholding of these material facts, Defendants engaged in unfair and deceptive acts or practices in the course of their business, as prohibited by Tex. Bus. & Com. Code Ann. § 17.46(a).

5210. Defendants knew that the Theft-Prone Design gave rise to safety concerns for the consumers who use the Vehicles, and that the Theft-Prone Design would have been a material fact in the Texas Plaintiffs' decisions to buy or lease Vehicles.

5211. Defendants made incomplete representations about the safety and

reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Theft-Prone Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

5212. As detailed above, the information concerning the Theft-Prone Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

5213. By misrepresenting the Vehicles as safe, reliable, and free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Theft-Prone Design, Defendants engaged in the following unfair or deceptive business practices in violation of the Texas DTPA: (a) causing likelihood of confusion or of misunderstanding as to the approval or certification of the Vehicles; (b) representing that the Vehicles have characteristics, uses, benefits, and qualities which they do not have; (c) representing that the Vehicles are of a particular standard, quality, and grade when they are not; and (d) advertising the Vehicles with the intent not to sell or lease them as advertised. Tex. Bus. & Com. Code Ann. §§ 17.46(5), (7), and (9).

5214. Defendants intended for Texas Plaintiffs to rely on them to provide adequately designed Vehicles and to honestly and accurately reveal the safety hazards described above.

5215. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection and that the Vehicles were not affected by the Theft-Prone Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Texas Plaintiffs, about the true safety and reliability of Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

5216. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Theft-Prone Design and true characteristics of the Vehicles were material to the decisions of Texas Plaintiffs to purchase and lease the Vehicles, as Defendants intended. Texas Plaintiffs were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase and lease the Vehicles.

5217. Texas Plaintiffs' reliance was reasonable, as they had no way of discerning if Defendants' representations were false and misleading or otherwise learning that the Vehicles contained the Theft-Prone Design, as alleged above. Texas Plaintiffs did not, and could not, unravel Defendants' deception on their own.

5218. Had they known the truth about the Theft-Prone Design, Texas Plaintiffs would not have purchased or leased the Vehicles, or Texas Plaintiffs would have paid significantly less for the Vehicles.

5219. Texas Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

5220. Defendants' violations present a continuing risk to Texas Plaintiffs, as well as to the general public, because the Vehicles remain unsafe due to the Theft-Prone Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

5221. In compliance with Tex. Bus. & Com. Code § 17.505, Texas Plaintiffs have provided written notice of their complaint and damages and expenses sought. Additionally, Defendants are and have been well aware of the Theft-Prone Design and Texas Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including

through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of.

5222. Alternatively, Texas Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches. Texas Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

5223. Pursuant to Tex. Bus. & Com. Code Ann. § 17.505, Texas Plaintiffs seek an order (1) enjoining Defendants' unfair and/or deceptive acts, methods, or practices alleged herein, and (2) awarding damages, punitive damages, attorney's fees, costs, and/or any other just and proper relief available under the Texas DTPA.

### 4. Fraud by Omission and Concealment.[146]

5224. Texas Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

5225. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards. In reality, however, the Vehicles do not comply with such standards.

5226. Defendants were aware of the Theft-Prone Design when they manufactured, marketed, and sold the Vehicles to Texas Plaintiffs. Defendants further knew that the Theft-Prone Design gave rise to serious safety risks for the consumers

---

[146] For the names of the Texas Plaintiffs who do not allege a claim for Fraud by Omission and Concealment, see Exhibit E.

COMPLAINT

that would use the Vehicles and naturally give rise to higher insurance premiums and accelerated depreciation. At the same time, Defendants were aware of the Federal Motor Vehicle Safety Standards and of the effectiveness of engine immobilizer technology in reducing safety hazards. Defendants were also aware that noncompliance with federal and industry standards lowered the value of the Vehicles and would render the Vehicles difficult to insure.

5227. Defendants knew that the Theft-Prone Design and the safety hazards it posed would have been a material fact in the Texas Plaintiffs' decisions to buy or lease the Vehicles.

5228. Having been aware of the Theft-Prone Design within the Vehicles and having known that Texas Plaintiffs could not have reasonably been expected to know of the Theft-Prone Design, Defendants had a duty to disclose the Theft-Prone Design to Texas Plaintiffs in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Theft-Prone Design.

5229. Defendants knowingly made affirmatively false or incomplete statements of material facts as to the Vehicles' safety, reliability, quality, value, and compliance with applicable motor vehicle safety and theft prevention standards, while they intentionally withheld, concealed, omitted, suppressed, and failed to disclose material facts about the Theft-Prone Design, lack of effective anti-theft measures, significant safety risks, and the Vehicles' true value. Defendants volunteered incomplete information about the Vehicles they offered for sale and/or lease to consumers, including false statements as to the Vehicles' safety and compliance with applicable safety and anti-theft standards, while at the same time withholding the existence of the Theft-Prone Design.

5230. Defendants intentionally concealed, omitted, and failed to disclose the Theft-Prone Design and noncompliance with applicable safety and anti-theft standards to Texas Plaintiffs in connection with the sale and/or lease of the Vehicles. Defendants did not inform consumers, including Texas Plaintiffs, that the Vehicles Theft-Prone

Design left the Vehicles without any effective anti-theft protection which rendered the Vehicles a significant safety risk and non-compliant with federal motor vehicle safety standards.  Defendants further knew and failed to disclose that the Theft-Prone Design and lack of standard anti-theft measures left the Vehicles at substantially lower value than the price for which they were advertised, marketed, sold, and/or leased.

5231. Alternatively, Defendants made false misrepresentations about the Theft-Prone Design with such utter disregard and recklessness that their knowledge regarding the Theft-Prone Design and its unsafe and unreliable nature may be inferred.

5232. Defendants had exclusive access to and far superior knowledge regarding the facts of the Theft-Prone Design and Defendants knew these facts were not known to or reasonably discoverable by Texas Plaintiffs.

5233. Given the Theft-Prone Design's hidden and technical nature, Texas Plaintiffs lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft-Prone Design on their own.

5234. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect.  In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Theft-Prone Design.  Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

5235. In breach of their duties, Defendants failed to disclose the Theft-Prone Design to Texas Plaintiffs in connection with the sale or lease of the Vehicles.

5236. The Vehicles' Theft-Prone Design and noncompliance with applicable anti-theft standards were material facts about the safety, reliability, and value of the Vehicles.  A reasonable person would find the Vehicles' lack of industry-standard anti-theft measures and noncompliance with applicable safety standards important in their decision to purchase, lease, and maintain the Vehicles because it would impact safety,

COMPLAINT

availability, the Vehicles' value, and the cost to insure the Vehicles.

5237. Defendants intended for the Texas Plaintiffs to rely on their omissions and concealment—which Texas Plaintiffs did by purchasing and leasing the Vehicles at the prices they paid believing that their vehicles would not have a Theft-Prone Design that would affect the quality, reliability, and safety of the Vehicles.

5238. Texas Plaintiffs' reliance on Defendants' misrepresentations and concealment was reasonable and justifiable, as Texas Plaintiffs had no way of learning the facts that Defendants had concealed or failed to disclose. Texas Plaintiffs did not, and could not, unravel Defendants' deception on their own.

5239. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Texas Plaintiffs.

5240. If Defendants had fully and adequately disclosed the Theft-Prone Design to consumers, Texas Plaintiffs would have seen such a disclosure.

5241. Through their omissions and concealment with respect to the Theft-Prone Design within the Vehicles, Defendants intended to induce, and did in fact induce, Texas Plaintiffs to either purchase a Vehicle that they otherwise would not have purchased or pay more for a Vehicle than they otherwise would have paid.

5242. Had Texas Plaintiffs known of the Theft-Prone Design within the Vehicles, they would not have purchased the Vehicles or would have paid less for them.

5243. As a direct and proximate result of Defendants' omissions, Texas Plaintiffs overpaid for the Vehicles because Texas Plaintiffs would either have paid less for the Vehicles or would not have purchased the Vehicles at all if the Theft-Prone Design had been disclosed to them.

5244. As a direct and proximate result of Defendants' omissions, Texas Plaintiffs purchased Vehicles highly susceptible to theft and were forced to pay higher insurance

premiums to account for the susceptibility that they did not knowingly accept, purchase, or lease.

5245. As a direct and proximate result of Defendants' omissions, the Texas Plaintiffs paid higher insurance premiums and are now left with Vehicles with significantly diminished values.

5246. Accordingly, Defendants are liable to Texas Plaintiffs for their damages, including but not limited to the difference in value, increased insurance premiums that Texas Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

5247. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, in reckless disregard of the Texas Plaintiffs' rights and well-being, and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

5248. Texas Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 5. Negligent Misrepresentation.[147]

5249. Texas Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

5250. Defendants, in the course of their business selling and promoting motor vehicles, supplied false information, including that the Vehicles were safe and reliable, to guide motor vehicle buyers, including Texas Plaintiffs, in their choice of transaction.

5251. Defendants made misrepresentations of material facts concerning the safety and reliability of the Vehicles that they knew or should have known were false.

---

[147] For the names of the Texas Plaintiffs who do not allege a claim for Negligent Misrepresentation, see Exhibit E.

- 1108 -

COMPLAINT

Specifically, Defendants misrepresented that the Vehicles had effective anti-theft equipment or design elements; misrepresented that the Vehicles were safe and reliable forms of transportation; misrepresented that the Vehicles complied with all federal and industry safety and theft prevention standards; and misrepresented the true value of the Vehicles. Defendants supplied this information in the course of their business to guide Texas Plaintiffs in their Vehicle selection and induce Texas Plaintiffs to purchase one of Defendants' Vehicles.

5252. Texas Plaintiffs justifiably relied upon Defendants' representations because, as the entities responsible for designing and manufacturing the Vehicles, Defendants held themselves out to be knowledgeable about the Vehicles' components and honest in their promotion of the Vehicles. Texas Plaintiffs' reliance was further reasonable given the hidden and technical nature of the Theft-Prone Design and practical inability of Texas Plaintiffs to discover the Theft-Prone Design on their own. Because Defendants held the Vehicles out to be in line with industry standards, the representation was not unreasonable on its face and Texas Plaintiffs had no apparent reason to doubt the veracity of Defendants' representations.

5253. Defendants had a duty to disclose all relevant information regarding the Vehicles' safety, reliability, quality, and characteristics that would affect the Texas Plaintiffs' choice of purchase as consumers.

5254. Defendants failed to exercise reasonable care or competence in communicating the standards of safety, reliability, quality, and characteristics of the Vehicles to the consumers, including Texas Plaintiffs, when they failed to disclose the lack of anti-theft prevention technology in the Vehicles. Rather, Defendants published materials and marketed the Vehicles for years as safe, reliable, and of a quality consistent with the industry standard.

5255. Texas Plaintiffs would not have purchased, or would have purchased for a lower price, the Vehicles which Defendants negligently misrepresented as safe, of standard quality, and containing standard trade characteristics, such as anti-theft

prevention technology.  Additionally, as a direct and proximate result, Texas Plaintiffs have had to pay higher insurance premiums to account for the Vehicles' high susceptibility to theft and are now left with Vehicles that have a lower value than they would have had without the defect.

5256. As a direct and proximate result of Texas Plaintiffs' reasonable reliance on Defendants' negligent misrepresentations, Texas Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that Texas Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

5257. Texas Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 6.    Negligence.

5258. Texas Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

5259. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

5260. Defendants owed a duty of care to Texas Plaintiffs.  That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves, higher insurance premiums, and accelerated depreciation.

5261. Defendants failed to exercise reasonable care in connection with their manufacture, distribution, sale, and/or leasing of the Vehicles.

5262. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards.  Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant with all applicable federal standards.  This duty precedes the offering of any vehicle for sale in the United States

- 1110 -
COMPLAINT

and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Texas Plaintiffs.

5263. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS No. 114.

5264. As a direct and proximate result of Defendants' failure to exercise reasonable care, Texas Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that Texas Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

5265. Texas Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 7. Unjust Enrichment.[148]

5266. Texas Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

5267. When they purchased and leased the Vehicles, Texas Plaintiffs conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

5268. Texas Plaintiffs would not have purchased or leased their Vehicles, or would have paid less for them, had they known of the Theft-Prone Design at the time of purchase or lease.  Therefore, Defendants profited from the sale and lease of the Vehicles to the detriment and expense of Texas Plaintiffs.

---

[148] For the names of the Texas Plaintiffs who do not allege a claim for Unjust Enrichment, see Exhibit E.

COMPLAINT

5269. Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft-Prone Design, yet they failed to disclose this knowledge and misled the Texas Plaintiffs regarding the nature and quality of the Vehicles while profiting from this deception.

5270. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

5271. Texas Plaintiffs are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Texas Plaintiffs to the position they occupied prior to dealing with these Defendants, with such amounts to be determined at trial.

5272. Texas Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Texas Plaintiffs' claims for damages are dismissed or judgment is entered in favor of Defendants, Texas Plaintiffs will have no adequate legal remedy.

**PP.    Utah State Law Claims for Relief**

**(Alleged by Utah Plaintiffs Against All Defendants)**

**1.    Breach of Implied Warranty of Merchantability Under Utah Code Ann. §§ 70A-2-314 and 70A-2A-212.**

5273. Utah Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

5274. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Utah Code Ann. §§ 70A-2-314 and 70A-2A-212.

5275. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Utah Code Ann. §§ 70A-2-104(1) and 70A-2A-103(3)(k), and "sellers" of motor vehicles under § 70A-2-103(1)(d).

- 1112 -

COMPLAINT

5276. Defendants are and were at all relevant times "lessors" of motor vehicles under Utah Code Ann. § 70A-2A-103(1)(p).

5277. Utah Plaintiffs who purchased Vehicles in Utah are "buyers" within the meaning of Utah Code Ann. § 70A-2-103(1)(a).

5278. Utah Plaintiffs who leased Vehicles in Utah are "lessees" within the meaning of Utah Code Ann. § 70A-2A-103(1)(n).

5279. The Vehicles are and were at all relevant times "goods" within the meaning of Utah Code Ann. §§ 70A-2-105(1) and 70A-2A-103(1)(h).

5280. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased.  Defendants provided Utah Plaintiffs with an implied warranty that the purchased and leased Vehicles were in merchantable condition and fit for the ordinary purposes for which they were sold or leased.  This implied warranty included that the Vehicles (a) were manufactured, supplied, distributed, and sold by Defendants, (b) were safe and reliable for transportation, (c) complied with all federal, state, and industry motor vehicle regulations and safety standards, including FMVSS No. 114, and (d) were not at abnormally high risk of theft.

5281. The Vehicles did not comply with the implied warranty of merchantability because the Vehicles were defective and not in merchantable condition at the time of sale and/or lease, were not fit for their ordinary purpose of providing safe and reliable transportation at the time of sale or lease, and would not pass without objection in the trade as they deviated significantly from the industry standard and can be stolen in mere minutes without a key.  Defendants knew at the time of manufacture that the Vehicles contained the Theft-Prone Design and lacked any anti-theft equipment or design elements that effectively prevent theft or comply with FMVSS No. 114.  Therefore, the Defendants knew at the time of manufacture that the Vehicles are at an abnormally high risk of theft and are unsafe and an unreliable form of transportation.  The Theft-Prone Design renders the Vehicles highly vulnerable to theft and a prime target for thieves as they can be easily stolen in seconds.  Defendants knew at the time of manufacture that

COMPLAINT

because their Vehicles did not include any anti-theft measures that satisfied FMVSS No. 114, making their Vehicles more prone to theft and failing to comply with federal regulations, the Vehicles would require larger insurance premiums and would depreciate at a more rapid rate than a comparable vehicle with anti-theft measure that satisfied FMVSS No. 114. Consequently, at the time of sale and/or lease, the Vehicles were not fit for their ordinary purpose of providing safe and reliable transportation.

5282. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable. Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Utah Plaintiffs, of the safety defect. Any time limitations regarding the warranty period were also unconscionable and inadequate to protect Utah Plaintiffs. Utah Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants. A gross disadvantage in bargaining power existed between Utah Plaintiffs and Defendants, which unreasonably favored Defendants. Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left Utah Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

5283. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that Utah Plaintiffs may seek alternative remedies. Utah Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

5284. Utah Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure. Utah Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Utah Plaintiffs' breach of warranty claims. Additionally,

COMPLAINT

Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Utah Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Utah Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches. To date, Defendants failed to remedy their breaches.

5285. Alternatively, Utah Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches. Utah Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

5286. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Utah Plaintiffs' Vehicles were and are defective, the Theft-Prone Design in the Vehicles has not been remedied, and Utah Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that Utah Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

## 2. Breach of Express Warranty Under Utah Code Ann. § 70A-2-313.

COMPLAINT

5287. Utah Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

5288. During the relevant time periods, Defendants manufactured the Vehicles and Utah Plaintiffs purchased and/or leased the Vehicles from Defendants.

5289. By affixing a VIN plate to each Vehicle at the time of manufacture, Defendants expressly warranted each Vehicles' conformance to "all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture shown." These statements are an affirmation of fact or promise made to Utah Plaintiffs as to the Vehicles' condition, quality, safety, and reliability. These statements became the basis of the bargain between Utah Plaintiffs and Defendants, as Utah Plaintiffs relied on these statements when making their decisions to purchase and/or lease the Vehicles. As such, the statements are an express warranty under Utah law pursuant to Utah Code Ann. § 70A-2-313.

5290. Utah Plaintiffs used the Vehicles in accordance with their normal operation and did not misuse or mishandle the Vehicles in any way material to the allegations set forth herein.

5291. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable. Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Utah Plaintiffs, of the safety defect. Any time limitations regarding the warranty period were also unconscionable and inadequate to protect Utah Plaintiffs. Utah Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants. A gross disadvantage in bargaining power existed between Plaintiffs and Defendants, which unreasonably favored Defendants. Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left Utah Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

COMPLAINT

5292. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that Utah Plaintiffs may seek alternative remedies. Utah Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

5293. Utah Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure. Utah Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Utah Plaintiffs' breach of warranty claims. Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Utah Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Utah Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches. To date, Defendants failed to remedy their breaches.

5294. Alternatively, Utah Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches. Utah Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches

COMPLAINT

or the Theft-Prone Design if they presented their Vehicles for repair.

5295. The Vehicles did not perform as promised in accordance with Defendants' express warranty; instead, the Vehicles did not meet all applicable motor vehicle safety and theft prevention standards in effect on the date of manufacture.  The Vehicles are capable of being stolen in a matter of seconds without a key and do not comply with the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles do not, in fact, conform to the applicable anti-theft standards.

5296. As a direct and proximate result of Defendants' breaches, Utah Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that Utah Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

**3.      Violation of the Utah Consumer Sales Practices Act (Utah Code Ann. § 13-11-1, et seq.).**

5297. Utah Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

5298. The sale and/or lease of the Vehicles from Defendants to Utah Plaintiffs are "consumer transactions" within the meaning of Utah Code Ann. § 13-11-3(2).

5299. Defendants are "suppliers" within the meaning of Utah Code Ann. § 13-11-3(6).

5300. The Utah Consumer Sales Practices Act ("Utah CPA") mandates that "[a] deceptive act or practice by a supplier in connection with a consumer transaction violates this chapter whether it occurs before, during, or after the transaction."  Utah Code Ann. § 13-11-4(1).

5301. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Utah CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Theft-Prone Design, as

COMPLAINT

detailed above.

5302. Under the Utah CPA, Defendants had an ongoing duty to Plaintiffs to refrain from unfair or deceptive practices in the course of their business. Specifically, Defendants owed Plaintiffs a duty to disclose all the material facts concerning the Theft-Prone Design in the Vehicles.

5303. Defendants had exclusive access to and far superior knowledge about facts regarding the Theft-Prone Design, and Defendants knew these facts were not known to or reasonably discoverable by Utah Plaintiffs.

5304. Given the Theft-Prone Design's hidden and technical nature, Plaintiffs lack the sophisticated expertise in vehicle components necessary to discover the Theft-Prone Design on their own.

5305. Defendants knew that the Theft-Prone Design gave rise to safety concerns for the consumers who use the Vehicles, and that the Theft-Prone Design would have been a material fact in the Utah Plaintiffs' decisions to buy or lease the Vehicles.

5306. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Theft-Prone Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

5307. As detailed above, the information concerning the Theft-Prone Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

5308. By misrepresenting the Vehicles as safe, reliable and compliant with applicable standards, and by failing to disclose and actively concealing the real dangers and risk posed by the Theft-Prone Design, Defendants engaged in one or more of the following deceptive acts or practices prohibited by Utah Code Ann. § 13-11-4(2):

COMPLAINT

(a) indicating that the Vehicles, as subjects of a consumer transaction, have sponsorship, approval, performance characteristics, accessories, uses, or benefits, they do not, including that they complied with all applicable safety and anti-theft standards; and (b) representing that the Vehicles are of a particular standard, quality, and grade, including that they complied with all applicable safety and anti-theft standards, when they are not.  Utah Code Ann. §§ 13-11-4(2)(a) and (b).

5309. Defendants intended for Utah Plaintiffs to rely on them to provide adequately designed Vehicles and to honestly and accurately reveal the safety hazards described above.

5310. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Theft-Prone Design.  Those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Utah Plaintiffs, about the true safety and reliability of the Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

5311. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Theft-Prone Design and true characteristics of the Vehicles were material to the decisions of Utah Plaintiffs to purchase or lease the Vehicles, as Defendants intended.  Utah Plaintiffs were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase or lease the Vehicles.

5312. Utah Plaintiffs' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, and/or otherwise learning that the Vehicles contained the Theft-Prone Design, as alleged above.  Utah Plaintiffs did not, and could not, unravel Defendants' deception on their own.

5313. Had they known the truth about the Theft-Prone Design, Utah Plaintiffs

COMPLAINT

would not have purchased or leased the Vehicles or would have paid significantly less for them.

5314. Utah Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

5315. Defendants' violations present a continuing risk to Utah Plaintiffs and the general public because the Vehicles remain unsafe due to the Theft-Prone Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

5316. Utah Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action. As such, Defendants are and have been well aware of the Theft-Prone Design and Utah Plaintiffs' claims. Additionally, Defendants had ample notice provided by the numerous complaints filed against them, internet videos, and news reports. Furthermore, on September 17, 2025, Utah Plaintiffs sent Defendants written notice letters of Defendants' violations, Plaintiffs' claims, and a proposed cure to the violations. To date, Defendants failed to remedy their violations. Because Defendants failed to remedy their unlawful conduct, Utah Plaintiffs seek all damages and relief to which Utah Plaintiffs are entitled.

5317. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile. As alleged above, Defendants have long known that the Vehicles contained the Theft-Prone Design yet did nothing to remedy the Theft-Prone Design.

5318. Pursuant to Utah Code Ann. § 13-11-19(4)(a), Utah Plaintiffs seek an order (1) enjoining Defendants' unfair and/or deceptive acts, methods, or practices alleged herein, and (2) awarding damages, punitive damages, attorney's fees, costs, and/or any other just and proper relief available under the Utah CPA.

**4.      Violation of the Utah Truth in Advertising Act (Utah Code Ann. § 13-11a-1, et seq.).**

COMPLAINT

5319. Utah Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

5320. Utah Plaintiffs and Defendants are "person[s]" within the meaning of Utah Code § 13-11a-1(7).

5321. Utah's Truth in Advertising Act makes unlawful any deceptive practice undertaken in the course of a person's business. Utah Code § 13-11a-3.

5322. In the course of their business, Defendants, through their agents, representatives, and subsidiaries, engaged in unfair and unconscionable deceptive acts or practices by knowingly and intentionally concealing, misrepresenting, omitting, and withholding material facts about the Vehicles' quality, reliability, value, and safety. These material facts include that (a) the Vehicles had a hidden Theft-Prone Design which left the Vehicles without standard anti-theft measures and was not reasonably discoverable to consumers, (b) the Vehicles did not comply with federal or industry motor vehicle safety and theft prevention standards, including FMVSS No. 114, (c) the Vehicles were at an abnormally high risk of theft, and (d) the Vehicles have a value which Defendants knowingly misrepresented. Defendants represented that the Vehicles were of a particular standard and quality but sold them at another standard and quality. These unfair and unconscionable deceptive acts or practices violated the Utah Truth In Advertising law.

5323. Under the Utah Truth in Advertising Act, Defendants had an ongoing duty to Utah Plaintiffs as consumers to refrain from unfair or deceptive acts, practices, and representations in the course of their business. Specifically, Defendants owed the Utah Plaintiffs a duty to disclose all the material facts concerning the Theft-Prone Design in the Vehicles and to refrain from representing their Vehicles were of a particular standard or quality when they were of another.

5324. Defendants had exclusive and superior knowledge of the Theft-Prone Design, related facts, and the Vehicles' noncompliance with federal and industry safety and theft prevention standard. Defendants knew these facts were hidden and not

COMPLAINT

reasonably discoverable by consumers, including Utah Plaintiffs. Given the Theft-Prone Design's hidden and technical nature, Plaintiffs lack the sophisticated expertise in vehicle components that would have been necessary to discover the Theft-Prone Design on their own.

5325. Defendants further knew that, because of the Theft-Prone Design, the Vehicles posed a significant safety risk to consumers that used the Vehicles. Defendants knew that the Theft-Prone Design and lack of standard anti-theft measures left the Vehicles at substantially lower value than the price for which they were advertised, marketed, sold, and/or leased. Defendants knew these material facts would have been material to consumers', including Utah Plaintiffs', decision to purchase and/or lease the Vehicles.

5326. Defendants nevertheless made intentionally misleading and incomplete affirmative statements and representations about the Vehicles' safety, reliability, value, and conformance with all applicable safety and theft prevention standards, while also concealing, omitting, and withholding material facts from consumers, including Utah Plaintiffs, at the time the Vehicles were advertised, sold, and/or leased. Defendants marketed and sold the Vehicles as safe despite their knowledge that the Theft-Prone Design posed a significant safety risk to consumers and the general public. Through advertisements, marketing materials, and their websites, Defendants made incomplete representations and/or concealed the Vehicles' defective condition. Defendants further misrepresented that the Vehicles were compliant with all applicable motor vehicle safety and theft prevention standards, when in reality they were not. Defendants further marketed and sold/leased the Vehicles at an inflated and misleading price, given the Vehicles' Theft-Prone Design and lack of standard anti-theft equipment and design elements.

5327. Through their misrepresentations, concealment, omissions, and withholding of these material facts, Defendants engaged in unfair and deceptive acts or practices in the course of their business.

COMPLAINT

5328. Defendants knew that the Theft-Prone Design gave rise to safety concerns for the consumers who use the Vehicles, and that the Theft-Prone Design would have been a material fact in the Plaintiffs' decisions to buy or lease Vehicles.

5329. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Theft-Prone Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

5330. As detailed above, the information concerning the Theft-Prone Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

5331. By misrepresenting the Vehicles as safe and/or free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Vehicles and the Theft-Prone Design, Defendants engaged in one or more of the following unfair or deceptive business practices prohibited by Utah Code § 13-11a-3 by:

    a. causing likelihood of confusion or of misunderstanding as to the approval or certification of the Vehicles;

    b. representing that the Vehicles have approval, characteristics, uses, or benefits that they do not have;

    c. representing that the Vehicles are of a particular standard, quality and grade when they are not;

    d. advertising the Vehicles with the intent not to sell or lease them as advertised; and/or

    e. engaging in other conduct which created a likelihood of confusion or of misunderstanding about the true characteristics of the Vehicles.

5332. Defendants intended for Utah Plaintiffs to rely on them to provide

COMPLAINT

adequately designed Vehicles and to honestly and accurately reveal the safety hazards described above.

5333. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection and that the Vehicles were not affected by the Theft-Prone Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Utah Plaintiffs, about the true safety and reliability of Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

5334. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Theft-Prone Design and true characteristics of the Vehicles were material to the decisions of Utah Plaintiffs to purchase and lease the Vehicles, as Defendants intended. Utah Plaintiffs were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase and lease the Vehicles.

5335. Utah Plaintiffs' reliance was reasonable, as they had no way of discerning if Defendants' representations were false and misleading or otherwise learning that the Vehicles contained the Theft-Prone Design, as alleged above. Utah Plaintiffs did not, and could not, unravel Defendants' deception on their own.

5336. Had they known the truth about the Theft-Prone Design, Utah Plaintiffs would not have purchased or leased the Vehicles, or Utah Plaintiffs would have paid significantly less for the Vehicles.

5337. Utah Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

5338. Defendants' violations present a continuing risk to Utah Plaintiffs, as well as to the general public, because the Vehicles remain unsafe due to the Theft-Prone

COMPLAINT

Design.  Defendants' unlawful acts and practices complained of herein affect the public interest.

5339. Utah Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action. As such, Defendants are and have been well aware of the Theft-Prone Design and Utah Plaintiffs' claims.  Additionally, Defendants had ample notice provided by the numerous complaints filed against them, internet videos, and news reports. Furthermore, on September 17, 2025, Utah Plaintiffs sent Defendants written notice letters of Defendants' violations, Plaintiffs' claims, and a proposed cure to the violations.  To date, Defendants failed to remedy their violations.  Because Defendants failed to remedy their unlawful conduct, Utah Plaintiffs seek all damages and relief to which Utah Plaintiffs are entitled.

5340. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile.  As alleged above, Defendants have long known that the Vehicles contained the Theft-Prone Design yet did nothing to remedy the Theft-Prone Design.

5341. Utah Plaintiffs seek an order (1) enjoining Defendants' unfair and/or deceptive acts or practices pursuant to Utah Code Ann. § 13-11a-4, and (2) awarding damages, punitive damages, and any other just and proper relief available under the Utah Truth In Advertising law.

### 5.      Fraud by Omission and Concealment.

5342. Utah Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

5343. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards.  In reality, however, the Vehicles do not comply with such standards.

5344. Defendants were aware of the Theft-Prone Design when they manufactured, marketed, and sold the Vehicles to Utah Plaintiffs.  Defendants further

COMPLAINT

knew that the Theft-Prone Design gave rise to serious safety risks for the consumers that would use the Vehicles and naturally give rise to higher insurance premiums and accelerated depreciation. At the same time, Defendants were aware of the Federal Motor Vehicle Safety Standards and of the effectiveness of engine immobilizer technology in reducing safety hazards. Defendants were also aware that noncompliance with federal and industry standards lowered the value of the Vehicles and would render the Vehicles difficult to insure.

5345. Defendants knew that the Theft-Prone Design and the safety hazards it posed would have been a material fact in the Utah Plaintiffs' decisions to buy or lease the Vehicles.

5346. Having been aware of the Theft-Prone Design within the Vehicles and having known that Utah Plaintiffs could not have reasonably been expected to know of the Theft-Prone Design, Defendants had a duty to disclose the Theft-Prone Design to Utah Plaintiffs in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Theft-Prone Design.

5347. Defendants knowingly made affirmatively false or incomplete statements of material facts as to the Vehicles' safety, reliability, quality, value, and compliance with applicable motor vehicle safety and theft prevention standards, while they intentionally withheld, concealed, omitted, suppressed, and failed to disclose material facts about the Theft-Prone Design, lack of effective anti-theft measures, significant safety risks, and the Vehicles' true value. Defendants volunteered incomplete information about the Vehicles they offered for sale and/or lease to consumers, including false statements as to the Vehicles' safety and compliance with applicable safety and anti-theft standards, while at the same time withholding the existence of the Theft-Prone Design.

5348. Defendants intentionally concealed, omitted, and failed to disclose the Theft-Prone Design and noncompliance with applicable safety and anti-theft standards to Utah Plaintiffs in connection with the sale and/or lease of the Vehicles. Defendants

did not inform consumers, including Utah Plaintiffs, that the Vehicles Theft-Prone Design left the Vehicles without any effective anti-theft protection which rendered the Vehicles a significant safety risk and non-compliant with federal motor vehicle safety standards. Defendants further knew and failed to disclose that the Theft-Prone Design and lack of standard anti-theft measures left the Vehicles at substantially lower value than the price for which they were advertised, marketed, sold, and/or leased.

5349. Alternatively, Defendants made false misrepresentations about the Theft-Prone Design with such utter disregard and recklessness that their knowledge regarding the Theft-Prone Design and its unsafe and unreliable nature may be inferred.

5350. Defendants had exclusive access to and far superior knowledge regarding the facts of the Theft-Prone Design and Defendants knew these facts were not known to or reasonably discoverable by Utah Plaintiffs.

5351. Given the Theft-Prone Design's hidden and technical nature, Utah Plaintiffs lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft-Prone Design on their own.

5352. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Theft-Prone Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

5353. In breach of their duties, Defendants failed to disclose the Theft-Prone Design to Utah Plaintiffs in connection with the sale or lease of the Vehicles.

5354. The Vehicles' Theft-Prone Design and noncompliance with applicable anti-theft standards were material facts about the safety, reliability, and value of the Vehicles. A reasonable person would find the Vehicles' lack of industry-standard anti-theft measures and noncompliance with applicable safety standards important in their

decision to purchase, lease, and maintain the Vehicles because it would impact safety, availability, the Vehicles' value, and the cost to insure the Vehicles.

5355. Defendants intended for the Utah Plaintiffs to rely on their omissions and concealment—which Utah Plaintiffs did by purchasing and leasing the Vehicles at the prices they paid believing that their vehicles would not have a Theft-Prone Design that would affect the quality, reliability, and safety of the Vehicles.

5356. Utah Plaintiffs' reliance on Defendants' misrepresentations and concealment was reasonable and justifiable, as Utah Plaintiffs had no way of learning the facts that Defendants had concealed or failed to disclose. Utah Plaintiffs did not, and could not, unravel Defendants' deception on their own.

5357. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Utah Plaintiffs.

5358. If Defendants had fully and adequately disclosed the Theft-Prone Design to consumers, Utah Plaintiffs would have seen such a disclosure.

5359. Through their omissions and concealment with respect to the Theft-Prone Design within the Vehicles, Defendants intended to induce, and did in fact induce, Utah Plaintiffs to either purchase a Vehicle that they otherwise would not have purchased or pay more for a Vehicle than they otherwise would have paid.

5360. Had Utah Plaintiffs known of the Theft-Prone Design within the Vehicles, they would not have purchased the Vehicles or would have paid less for them.

5361. As a direct and proximate result of Defendants' omissions, Utah Plaintiffs overpaid for the Vehicles because Utah Plaintiffs would either have paid less for the Vehicles or would not have purchased the Vehicles at all if the Theft-Prone Design had been disclosed to them.

5362. As a direct and proximate result of Defendants' omissions, Utah Plaintiffs

- 1129 -
COMPLAINT

purchased Vehicles highly susceptible to theft and were forced to pay higher insurance premiums to account for the susceptibility that they did not knowingly accept, purchase, or lease.

5363. As a direct and proximate result of Defendants' omissions, the Utah Plaintiffs paid higher insurance premiums and are now left with Vehicles with significantly diminished values.

5364. Accordingly, Defendants are liable to Utah Plaintiffs for their damages, including but not limited to the difference in value, increased insurance premiums that Utah Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

5365. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, in reckless disregard of the Utah Plaintiffs' rights and well-being, and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

5366. Utah Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

**6.      Negligent Misrepresentation.**

5367. Utah Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

5368. Defendants, in the course of their business selling and promoting motor vehicles, supplied false information, including that the Vehicles were safe and reliable, to guide motor vehicle buyers, including Utah Plaintiffs, in their choice of transaction.

5369. Defendants made misrepresentations of material facts concerning the safety and reliability of the Vehicles that they knew or should have known were false. Specifically, Defendants misrepresented that the Vehicles had effective anti-theft equipment or design elements; misrepresented that the Vehicles were safe and reliable

COMPLAINT

forms of transportation; misrepresented that the Vehicles complied with all federal and industry safety and theft prevention standards; and misrepresented the true value of the Vehicles. Defendants supplied this information in the course of their business to guide Utah Plaintiffs in their Vehicle selection and induce Utah Plaintiffs to purchase one of Defendants' Vehicles.

5370. Utah Plaintiffs justifiably relied upon Defendants' representations because, as the entities responsible for designing and manufacturing the Vehicles, Defendants held themselves out to be knowledgeable about the Vehicles' components and honest in their promotion of the Vehicles. Utah Plaintiffs' reliance was further reasonable given the hidden and technical nature of the Theft-Prone Design and practical inability of Utah Plaintiffs to discover the Theft-Prone Design on their own. Because Defendants held the Vehicles out to be in line with industry standards, the representation was not unreasonable on its face and Utah Plaintiffs had no apparent reason to doubt the veracity of Defendants' representations.

5371. Defendants had a duty to disclose all relevant information regarding the Vehicles' safety, reliability, quality, and characteristics that would affect the Utah Plaintiffs' choice of purchase as consumers.

5372. Defendants failed to exercise reasonable care or competence in communicating the standards of safety, reliability, quality, and characteristics of the Vehicles to the consumers, including Utah Plaintiffs, when they failed to disclose the lack of anti-theft prevention technology in the Vehicles. Rather, Defendants published materials and marketed the Vehicles for years as safe, reliable, and of a quality consistent with the industry standard.

5373. Utah Plaintiffs would not have purchased, or would have purchased for a lower price, the Vehicles which Defendants negligently misrepresented as safe, of standard quality, and containing standard trade characteristics, such as anti-theft prevention technology. Additionally, as a direct and proximate result, Utah Plaintiffs have had to pay higher insurance premiums to account for the Vehicles' high

COMPLAINT

susceptibility to theft and are now left with Vehicles that have a lower value than they would have had without the defect.

5374. As a direct and proximate result of Utah Plaintiffs' reasonable reliance on Defendants' negligent misrepresentations, Utah Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that Utah Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

5375. Utah Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

**7.    Negligence.**

5376. Utah Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

5377. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

5378. Defendants owed a duty of care to Utah Plaintiffs.  That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves, higher insurance premiums, and accelerated depreciation.

5379. Defendants failed to exercise reasonable care in connection with their manufacture, distribution, sale, and/or leasing of the Vehicles.

5380. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards.  Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant with all applicable federal standards.  This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into

COMPLAINT

with Utah Plaintiffs.

5381. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS No. 114.

5382. As a direct and proximate result of Defendants' failure to exercise reasonable care, Utah Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that Utah Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

5383. Utah Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 8.    Unjust Enrichment.

5384. Utah Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

5385. When they purchased and leased the Vehicles, Utah Plaintiffs conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

5386. Utah Plaintiffs would not have purchased or leased their Vehicles, or would have paid less for them, had they known of the Theft-Prone Design at the time of purchase or lease.  Therefore, Defendants profited from the sale and lease of the Vehicles to the detriment and expense of Utah Plaintiffs.

5387. Defendants appreciated these economic benefits.  These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers.  They knew of these benefits because they were aware of the Theft-Prone Design, yet they failed to disclose this knowledge and misled the Utah Plaintiffs regarding the nature and quality of the Vehicles while profiting from this deception.

5388. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

5389. Utah Plaintiffs are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Utah Plaintiffs to the position they occupied prior to dealing with these Defendants, with such amounts to be determined at trial.

5390. Utah Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Utah Plaintiffs' claims for damages are dismissed or judgment is entered in favor of Defendants, Utah Plaintiffs will have no adequate legal remedy.

**QQ. Vermont State Law Claims for Relief**

**(Alleged by Vermont Plaintiffs Against All Defendants)**

**1.     Breach of Implied Warranty of Merchantability Under Vt. Stat. Ann. Tit. 9A, §§ 2-314 and 2A-212.**

5391. Vermont Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

5392. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Vt. Stat. Ann. Tit. 9A, §§ 2-314 and 2A-212.

5393. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Vt. Stat. Ann. Tit. 9A, §§ 2-104(1) and 2A-103(3), and "sellers" of motor vehicles under § 2-103(1)(d).

5394. Defendants are and were at all relevant times "lessors" of motor vehicles under Vt. Stat. Ann. Tit. 9A, § 2A-103(1)(p).

5395. Vermont Plaintiffs who purchased Vehicles in Vermont are "buyers" within the meaning of Vt. Stat. Ann. Tit. 9A, § 2-103(1)(a).

5396. Vermont Plaintiffs who leased Vehicles in Vermont are "lessees" within

the meaning of Vt. Stat. Ann. Tit. 9A, § 2A-103(1)(n).

5397. The Vehicles are and were at all relevant times "goods" within the meaning of Vt. Stat. Ann. Tit. 9A, §§ 2-105(1) and 2A-103(1)(h).

5398. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Vermont Plaintiffs with an implied warranty that the purchased and leased Vehicles were in merchantable condition and fit for the ordinary purposes for which they were sold or leased. This implied warranty included that the Vehicles (a) were manufactured, supplied, distributed, and sold by Defendants, (b) were safe and reliable for transportation, (c) complied with all federal, state, and industry motor vehicle regulations and safety standards, including FMVSS No. 114, and (d) were not at abnormally high risk of theft.

5399. The Vehicles did not comply with the implied warranty of merchantability because the Vehicles were defective and not in merchantable condition at the time of sale and/or lease, were not fit for their ordinary purpose of providing safe and reliable transportation at the time of sale or lease, and would not pass without objection in the trade as they deviated significantly from the industry standard and can be stolen in mere minutes without a key. Defendants knew at the time of manufacture that the Vehicles contained the Theft-Prone Design and lacked any anti-theft equipment or design elements that effectively prevent theft or comply with FMVSS No. 114. Therefore, the Defendants knew at the time of manufacture that the Vehicles are at an abnormally high risk of theft and are unsafe and an unreliable form of transportation. The Theft-Prone Design renders the Vehicles highly vulnerable to theft and a prime target for thieves as they can be easily stolen in seconds. Defendants knew at the time of manufacture that because their Vehicles did not include any anti-theft measures that satisfied FMVSS No. 114, making their Vehicles more prone to theft and failing to comply with federal regulations, the Vehicles would require larger insurance premiums and would depreciate at a more rapid rate than a comparable vehicle with anti-theft measure that satisfied FMVSS No. 114. Consequently, at the time of sale and/or lease, the Vehicles

were not fit for their ordinary purpose of providing safe and reliable transportation.

5400. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable. Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Vermont Plaintiffs, of the safety defect. Any time limitations regarding the warranty period were also unconscionable and inadequate to protect Vermont Plaintiffs. Vermont Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants. A gross disadvantage in bargaining power existed between Vermont Plaintiffs and Defendants, which unreasonably favored Defendants. Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left Vermont Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

5401. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that Vermont Plaintiffs may seek alternative remedies. Vermont Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

5402. Vermont Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure. Vermont Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Vermont Plaintiffs' breach of warranty claims. Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Vermont Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests,

COMPLAINT

including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Vermont Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches. To date, Defendants failed to remedy their breaches.

5403. Alternatively, Vermont Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches. Vermont Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

5404. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Vermont Plaintiffs' Vehicles were and are defective, the Theft-Prone Design in the Vehicles has not been remedied, and Vermont Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that Vermont Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

### 2. Breach of Express Warranty Under Vt. Stat. Ann. Tit. 9A, § 2-313.

5405. Vermont Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

5406. During the relevant time periods, Defendants manufactured the Vehicles and Vermont Plaintiffs purchased and/or leased the Vehicles from Defendants.

5407. Defendants are and were at all relevant times "merchants" with respect to

- 1137 -
COMPLAINT

motor vehicles under Vt. Stat. Ann. Tit. 9A, §§ 2-104(1) and 2A-103(3), and "sellers" of motor vehicles under § 2-103(1)(d).

5408. Defendants are and were at all relevant times "lessors" of motor vehicles under Vt. Stat. Ann. Tit. 9A, § 2A-103(1)(p).

5409. The Vehicles are and were at all relevant times "goods" within the meaning of Vt. Stat. Ann. Tit. 9A, §§ 2-105(1) and 2A-103(1)(h).

5410. By affixing a VIN plate to each Vehicle at the time of manufacture, Defendants expressly warranted each Vehicles' conformance to "all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture shown." These statements are an affirmation of fact or promise made to Vermont Plaintiffs as to the Vehicles' condition, quality, safety, and reliability. These statements became the basis of the bargain between Vermont Plaintiffs and Defendants, as Vermont Plaintiffs relied on these statements when making their decisions to purchase and/or lease the Vehicles. As such, the statements are an express warranty under Vermont law pursuant to Vt. Stat. Ann. Tit. 9A, § 2-313.

5411. Vermont Plaintiffs used the Vehicles in accordance with their normal operation and did not misuse or mishandle the Vehicles in any way material to the allegations set forth herein.

5412. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable. Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Vermont Plaintiffs, of the safety defect. Any time limitations regarding the warranty period were also unconscionable and inadequate to protect Vermont Plaintiffs. Vermont Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants. A gross disadvantage in bargaining power existed between Vermont Plaintiffs and Defendants, which unreasonably favored Defendants. Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the

COMPLAINT

hidden and technical nature of the Theft-Prone Design left Vermont Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

5413. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that Vermont Plaintiffs may seek alternative remedies. Vermont Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

5414. Vermont Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure. Vermont Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Vermont Plaintiffs' breach of warranty claims. Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Vermont Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Vermont Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches. To date, Defendants failed to remedy their breaches.

5415. Alternatively, Vermont Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design.

COMPLAINT

Defendants have not cured, remedied, or repaired their breaches.  Vermont Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

5416. The Vehicles did not perform as promised in accordance with Defendants' express warranty; instead, the Vehicles did not meet all applicable motor vehicle safety and theft prevention standards in effect on the date of manufacture.  The Vehicles are capable of being stolen in a matter of seconds without a key and do not comply with the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles do not, in fact, conform to the applicable anti-theft standards.

5417. As a direct and proximate result of Defendants' breaches, Vermont Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that Vermont Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

**3.     Violation of the Vermont Consumer Protection Act (Vt. Stat. Ann. Tit. 9, § 2451, et seq.).**

5418. Vermont Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

5419. Vermont Plaintiffs are "consumers" within the meaning of 9 V.S.A. § 2451a(1).

5420. The Vehicles are "goods" within the meaning of 9 V.S.A. § 2451a(2).

5421. Defendants are "sellers" within the meaning of 9 V.S.A. § 2451a(3).

5422. The Vermont Consumer Protection Act ("Vermont CPA") declares unlawful "[u]nfair methods of competition in commerce and unfair or deceptive acts or practices in commerce . . . ." 9 V.S.A. § 2453(a).

5423. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Vermont CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material

COMPLAINT

facts regarding the quality, reliability, and safety of the Vehicles and the Theft-Prone Design, as detailed above.

5424. Under the Vermont CPA, Defendants had an ongoing duty to Plaintiffs to refrain from unfair or deceptive practices in the course of their business. Specifically, Defendants owed Vermont Plaintiffs a duty to disclose all the material facts concerning the Theft-Prone Design in the Vehicles.

5425. Defendants had exclusive access to and far superior knowledge about facts regarding the Theft-Prone Design, and Defendants knew these facts were not known to or reasonably discoverable by Vermont Plaintiffs.

5426. Given the Theft-Prone Design's hidden and technical nature, Vermont Plaintiffs lack the sophisticated expertise in vehicle components necessary to discover the Theft-Prone Design on their own.

5427. Defendants knew that the Theft-Prone Design gave rise to safety concerns for the consumers who use the Vehicles, and that the Theft-Prone Design would have been a material fact in the Vermont Plaintiffs' decisions to buy or lease the Vehicles.

5428. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Theft-Prone Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

5429. As detailed above, the information concerning the Theft-Prone Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

5430. By misrepresenting the Vehicles as safe and reliable and free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Theft-Prone Design, Defendants engaged in one or more of the following unfair or

deceptive business practices prohibited by Vt. Stat. Tit. 9, § 2453(a) by:

    a.  causing likelihood of confusion or of misunderstanding as to the approval or certification of the Vehicles;

    b.  representing that the Vehicles have approval, characteristics, uses, or benefits that they do not have;

    c.  representing that the Vehicles are of a particular standard, quality, and grade when they are not;

    d.  advertising the Vehicles with the intent not to sell or lease them as advertised;

    e.  engaging in other conduct which created a likelihood of confusion or of misunderstanding; and/or

    f.  using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression, or omission of a material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the advertisement and sale/lease of the Vehicles, whether or not any person has in fact been misled, deceived or damaged thereby.

Vt. Stat. Tit. 9, § 2453(a).

5431. Defendants intended for Vermont Plaintiffs to rely on them to provide adequately designed Vehicles and to honestly and accurately reveal the safety hazards described above.

5432. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Theft-Prone Design. Those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Vermont Plaintiffs, about the true safety and reliability of the Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

COMPLAINT

5433. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Theft-Prone Design and true characteristics of the Vehicles were material to the decisions of Vermont Plaintiffs to purchase or lease the Vehicles, as Defendants intended. Vermont Plaintiffs were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase or lease the Vehicles.

5434. Vermont Plaintiffs' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, and/or otherwise learning that the Vehicles contained the Theft-Prone Design, as alleged above. Vermont Plaintiffs did not, and could not, unravel Defendants' deception on their own.

5435. Had they known the truth about the Theft-Prone Design, Vermont Plaintiffs would not have purchased or leased the Vehicles or would have paid significantly less for them.

5436. Vermont Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

5437. Defendants' violations present a continuing risk to Vermont Plaintiffs and the general public because the Vehicles remain unsafe due to the Theft-Prone Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

5438. Vermont Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action. As such, Defendants are and have been well aware of the Theft-Prone Design and Vermont Plaintiffs' claims. Additionally, Defendants had ample notice provided by the numerous complaints filed against them, internet videos, and news reports. Furthermore, on September 17, 2025, Vermont Plaintiffs sent Defendants written notice letters of Defendants' violations, Plaintiffs' claims, and a proposed cure to the violations. To date, Defendants failed to remedy their violations. Because Defendants

COMPLAINT

failed to remedy their unlawful conduct, Vermont Plaintiffs seek all damages and relief to which Vermont Plaintiffs are entitled.

5439. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile.  As alleged above, Defendants have long known that the Vehicles contained the Theft-Prone Design yet did nothing to remedy the Theft-Prone Design.

5440. Pursuant to 9 V.S.A. § 2461(b), Vermont Plaintiffs seek an order (1) enjoining Defendants' unfair and/or deceptive acts, methods, or practices alleged herein, and (2) awarding damages, punitive damages, attorney's fees, costs, and/or any other just and proper relief available under the Vermont CPA.

### 4. Fraud by Omission and Concealment.

5441. Vermont Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

5442. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards and are therefore of a particular value.  In reality, however, the Vehicles do not comply with such standards.

5443. Defendants were aware of the Theft-Prone Design when they manufactured, marketed, and sold the Vehicles to Vermont Plaintiffs.  Defendants further knew that the Theft-Prone Design gave rise to serious safety risks for the consumers that would use the Vehicles and naturally give rise to higher insurance premiums and accelerated depreciation.  At the same time, Defendants were aware of the Federal Motor Vehicle Safety Standards and of the effectiveness of engine immobilizer technology in reducing safety hazards.  Defendants were also aware that noncompliance with federal and industry standards lowered the value of the Vehicles and would render the Vehicles difficult to insure.

5444. Defendants knew that the Theft-Prone Design, the safety hazards it posed, and the reduction in the Vehicles' value would have been material facts to the Vermont

Plaintiffs' decisions to buy or lease the Vehicles.

5445. A reasonable person would find the Vehicles' lack of industry-standard anti-theft measures and noncompliance with applicable safety standards material to their decision to purchase, lease, and maintain the Vehicles because these deficiencies impact safety, availability, the Vehicles' value, and the cost to insure the Vehicles.

5446. Defendants knowingly made affirmatively false or incomplete statements of material facts as to the Vehicles' safety, reliability, quality, value, and compliance with applicable motor vehicle safety and theft prevention standards, while they intentionally withheld, concealed, omitted, suppressed, and failed to disclose material facts about the Theft-Prone Design, including the lack of effective anti-theft measures, significant safety risks, noncompliance with federal motor vehicle safety standards, and the Vehicles' true value.

5447. Defendants volunteered incomplete information about the Vehicles they offered for sale and/or lease to consumers, including false statements as to the Vehicles' safety, compliance with applicable safety and anti-theft standards, and value while at the same time withholding the existence of the Theft-Prone Design. Defendants further knew and failed to disclose that the Theft-Prone Design and lack of standard anti-theft measures left the Vehicles at substantially lower value than the price for which they were advertised, marketed, sold, and/or leased.

5448. Alternatively, Defendants made false misrepresentations about the Theft-Prone Design with such utter disregard and recklessness that their knowledge regarding the Theft-Prone Design, its unsafe and unreliable nature, and its substantially lower value may be inferred.

5449. Defendants intended for the Vermont Plaintiffs to rely on their omissions and concealment—which Vermont Plaintiffs did by purchasing and leasing the Vehicles at the prices they paid believing that their vehicles would not have a Theft-Prone Design that would affect the quality, reliability, and safety of the Vehicles.

5450. Vermont Plaintiffs' reliance on Defendants' misrepresentations and

concealment was reasonable and justifiable, as Vermont Plaintiffs had no way of learning the facts that Defendants had concealed or failed to disclose. Vermont Plaintiffs did not, and could not, unravel Defendants' deception on their own.

5451. Having been aware of the Theft-Prone Design within the Vehicles and having known that Vermont Plaintiffs could not have reasonably been expected to know of the Theft-Prone Design, Defendants had a duty to disclose the Theft-Prone Design to Vermont Plaintiffs in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Theft-Prone Design and the true value of the Vehicles.

5452. Instead, Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Vermont Plaintiffs.

5453. If Defendants had fully and adequately disclosed the Theft-Prone Design to consumers, Vermont Plaintiffs would have seen such a disclosure.

5454. Had Vermont Plaintiffs known of the Theft-Prone Design within the Vehicles, they would not have purchased the Vehicles or would have paid less for them. Through their omissions and concealment with respect to the Theft-Prone Design within the Vehicles, Defendants intended to induce, and did in fact induce, Vermont Plaintiffs to either purchase a Vehicle that they otherwise would not have purchased or pay more for a Vehicle than they otherwise would have paid.

5455. As a direct and proximate result of Defendants' omissions, Vermont Plaintiffs overpaid for the Vehicles because Vermont Plaintiffs would either have paid less for the Vehicles or would not have purchased the Vehicles at all if the Theft-Prone Design had been disclosed to them.

5456. As a direct and proximate result of Defendants' omissions, Vermont Plaintiffs purchased Vehicles highly susceptible to theft and were forced to pay higher insurance premiums to account for the susceptibility that they did not knowingly accept,

COMPLAINT

purchase, or lease.

5457. As a direct and proximate result of Defendants' omissions, the Vermont Plaintiffs paid higher insurance premiums and are now left with Vehicles with significantly diminished values.

5458. Accordingly, Defendants are liable to Vermont Plaintiffs for their damages, including but not limited to the difference in value, increased insurance premiums that Vermont Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

5459. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, in reckless disregard of the Vermont Plaintiffs' rights and well-being, and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

5460. Vermont Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 5. Negligent Misrepresentation.

5461. Vermont Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

5462. Defendants, in the course of their business selling and promoting motor vehicles, supplied false information, including that the Vehicles were safe and reliable, to guide motor vehicle buyers, including Vermont Plaintiffs, in their choice of transaction.

5463. Defendants made misrepresentations of material facts concerning the safety and reliability of the Vehicles that they knew or should have known were false. Specifically, Defendants misrepresented that the Vehicles had effective anti-theft equipment or design elements; misrepresented that the Vehicles were safe and reliable forms of transportation; misrepresented that the Vehicles complied with all federal and

industry safety and theft prevention standards; and misrepresented the true value of the Vehicles. Defendants supplied this information in the course of their business to guide Vermont Plaintiffs in their Vehicle selection and induce Vermont Plaintiffs to purchase one of Defendants' Vehicles.

5464. Vermont Plaintiffs justifiably relied upon Defendants' representations because, as the entities responsible for designing and manufacturing the Vehicles, Defendants held themselves out to be knowledgeable about the Vehicles' components and honest in their promotion of the Vehicles. Vermont Plaintiffs' reliance was further reasonable given the hidden and technical nature of the Theft-Prone Design and practical inability of Vermont Plaintiffs to discover the Theft-Prone Design on their own. Because Defendants held the Vehicles out to be in line with industry standards, the representation was not unreasonable on its face and Vermont Plaintiffs had no apparent reason to doubt the veracity of Defendants' representations.

5465. Defendants had a duty to disclose all relevant information regarding the Vehicles' safety, reliability, quality, and characteristics that would affect the Vermont Plaintiffs' choice of purchase as consumers.

5466. Defendants failed to exercise reasonable care or competence in communicating the standards of safety, reliability, quality, and characteristics of the Vehicles to the consumers, including Vermont Plaintiffs, when they failed to disclose the lack of anti-theft prevention technology in the Vehicles. Rather, Defendants published materials and marketed the Vehicles for years as safe, reliable, and of a quality consistent with the industry standard.

5467. Vermont Plaintiffs would not have purchased, or would have purchased for a lower price, the Vehicles which Defendants negligently misrepresented as safe, of standard quality, and containing standard trade characteristics, such as anti-theft prevention technology. Additionally, as a direct and proximate result, Vermont Plaintiffs have had to pay higher insurance premiums to account for the Vehicles' high susceptibility to theft and are now left with Vehicles that have a lower value than they

COMPLAINT

would have had without the defect.

5468. As a direct and proximate result of Vermont Plaintiffs' reasonable reliance on Defendants' negligent misrepresentations, Vermont Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that Vermont Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

5469. Vermont Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

**6.      Negligence.**

5470. Vermont Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

5471. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

5472. Defendants owed a duty of care to Vermont Plaintiffs.  That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves, higher insurance premiums, and accelerated depreciation.

5473. Defendants failed to exercise reasonable care in connection with their manufacture, distribution, sale, and/or leasing of the Vehicles.

5474. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards.  Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant with all applicable federal standards.  This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Vermont Plaintiffs.

COMPLAINT

5475. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS No. 114.

5476. As a direct and proximate result of Defendants' failure to exercise reasonable care, Vermont Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that Vermont Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

5477. Vermont Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 7. Unjust Enrichment.

5478. Vermont Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

5479. When they purchased and leased the Vehicles, Vermont Plaintiffs conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

5480. Vermont Plaintiffs would not have purchased or leased their Vehicles, or would have paid less for them, had they known of the Theft-Prone Design at the time of purchase or lease.  Therefore, Defendants profited from the sale and lease of the Vehicles to the detriment and expense of Vermont Plaintiffs.

5481. Defendants appreciated these economic benefits.  These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers.  They knew of these benefits because they were aware of the Theft-Prone Design, yet they failed to disclose this knowledge and misled the Vermont Plaintiffs regarding the nature and quality of the Vehicles while profiting from this deception.

5482. It would be unjust, inequitable, and unconscionable for Defendants to

COMPLAINT

retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

5483. Vermont Plaintiffs are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Vermont Plaintiffs to the position they occupied prior to dealing with these Defendants, with such amounts to be determined at trial.

5484. Vermont Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Vermont Plaintiffs' claims for damages are dismissed or judgment is entered in favor of Defendants, Vermont Plaintiffs will have no adequate legal remedy.

**RR. Virginia State Law Claims for Relief**

**(Alleged by Virginia Plaintiffs Against All Defendants)**

**1. Breach of Implied Warranty of Merchantability Under Va. Code Ann. §§ 8.2-314 and 8.2A-212.**

5485. Virginia Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

5486. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Va. Code Ann. §§ 8.2-314 and 8.2A-212.

5487. Defendants are and were at all relevant times "merchants" with respect to motor vehicles Va. Code Ann. §§ 8.2-104(1) and 8.2A-103(3), "sellers" of motor vehicles under § 8.2-103(1)(d), and with respect to leases, "lessors" of motor vehicles under § 8.2A-103(1)(p).

5488. At all relevant times, Virginia Plaintiffs who purchased Vehicles in Virginia were and are "buyers" within the meaning of Va. Code Ann. § 8.2-103(1)(a).

5489. At all relevant times, Virginia Plaintiffs who leased Vehicles in Virginia were and are "lessees" within the meaning of Va. Code Ann. § 8.2A-103(1)(n).

5490. At all relevant times, Virginia Plaintiffs' Vehicles (whether purchased or

leased) were and are "goods" within the meaning of Va. Code Ann. §§ 8.2-105(1) and 8.2A-103(1)(h).

5491. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased.  Defendants provided Virginia Plaintiffs with an implied warranty that the purchased and leased Vehicles were in merchantable condition and fit for the ordinary purposes for which they were sold or leased.  This implied warranty included that the Vehicles (a) were manufactured, supplied, distributed, and sold by Defendants, (b) were safe and reliable for transportation, (c) complied with all federal, state, and industry motor vehicle regulations and safety standards, including FMVSS No. 114, and (d) were not at abnormally high risk of theft.

5492. The Vehicles did not comply with the implied warranty of merchantability because the Vehicles were defective and not in merchantable condition at the time of sale and/or lease, were not fit for their ordinary purpose of providing safe and reliable transportation at the time of sale or lease, and would not pass without objection in the trade as they deviated significantly from the industry standard and can be stolen in mere minutes without a key.  Defendants knew at the time of manufacture that the Vehicles contained the Theft-Prone Design and lacked any anti-theft equipment or design elements that effectively prevent theft or comply with FMVSS No. 114.  Therefore, the Defendants knew at the time of manufacture that the Vehicles are at an abnormally high risk of theft and are unsafe and an unreliable form of transportation.  The Theft-Prone Design renders the Vehicles highly vulnerable to theft and a prime target for thieves as they can be easily stolen in seconds.  Defendants knew at the time of manufacture that because their Vehicles did not include any anti-theft measures that satisfied FMVSS No. 114, making their Vehicles more prone to theft and failing to comply with federal regulations, the Vehicles would require larger insurance premiums and would depreciate at a more rapid rate than a comparable vehicle with anti-theft measure that satisfied FMVSS No. 114. Consequently, at the time of sale and/or lease, the Vehicles were not fit for their ordinary purpose of providing safe and reliable transportation.

COMPLAINT

5493. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable. Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Virginia Plaintiffs, of the safety defect. Any time limitations regarding the warranty period were also unconscionable and inadequate to protect Virginia Plaintiffs. Virginia Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants. A gross disadvantage in bargaining power existed between Virginia Plaintiffs and Defendants, which unreasonably favored Defendants. Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left Virginia Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

5494. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that Virginia Plaintiffs may seek alternative remedies. Virginia Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

5495. Virgina Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure. Virgina Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Virgina Plaintiffs' breach of warranty claims. Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Virgina Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news

- 1153 -

COMPLAINT

reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count.  Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Virginia Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches.  To date, Defendants failed to remedy their breaches.

5496. Alternatively, Virginia Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches.  Virginia Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

5497. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Virginia Plaintiffs' Vehicles were and are defective, the Theft-Prone Design in the Vehicles has not been remedied, and Virginia Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that Virginia Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

### 2. Breach of Express Warranty Under Va. Code Ann. § 8.2-313.

5498. Virginia Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

5499. During the relevant time periods, Defendants manufactured the Vehicles and Virginia Plaintiffs purchased and/or leased the Vehicles from Defendants.

5500. Defendants were at all relevant times "merchants" with respect to motor vehicles under Va. Code Ann. §§ 8.2-104(1) and 8.2A-103(3), "sellers" of motor vehicles under § 8.2-103(1)(d).

COMPLAINT

5501. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Va. Code Ann. § 8.2A-103(1)(p).

5502. The Vehicles are and were at all relevant times "goods" within the meaning of Va. Code Ann. §§ 8.2-105(1) and 8.2A-103(1)(h).

5503. By affixing a VIN plate to each Vehicle at the time of manufacture, Defendants expressly warranted each Vehicles' conformance to "all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture shown."  These statements are an affirmation of fact or promise made to Virginia Plaintiffs as to the Vehicles' condition, quality, safety, and reliability. These statements became the basis of the bargain between Virginia Plaintiffs and Defendants, as Virginia Plaintiffs relied on these statements when making their decisions to purchase and/or lease the Vehicles.  As such, the statements are an express warranty under Virginia law pursuant to R.C. 1302.26.

5504. Virginia Plaintiffs used the Vehicles in accordance with their normal operation and did not misuse or mishandle the Vehicles in any way material to the allegations set forth herein.

5505. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable.  Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Virginia Plaintiffs, of the safety defect.  Any time limitations regarding the warranty period were also unconscionable and inadequate to protect Virginia Plaintiffs.  Virginia Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants.  A gross disadvantage in bargaining power existed between Virginia Plaintiffs and Defendants, which unreasonably favored Defendants.   Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left Virginia Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

COMPLAINT

5506. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that Virginia Plaintiffs may seek alternative remedies. Virginia Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

5507. Virgina Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure. Virgina Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Virgina Plaintiffs' breach of warranty claims. Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Virgina Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Virginia Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches. To date, Defendants failed to remedy their breaches.

5508. Alternatively, Virginia Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches. Virginia Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches

COMPLAINT

or the Theft-Prone Design if they presented their Vehicles for repair.

5509. The Vehicles did not perform as promised in accordance with Defendants' express warranty; instead, the Vehicles did not meet all applicable motor vehicle safety and theft prevention standards in effect on the date of manufacture.  The Vehicles are capable of being stolen in a matter of seconds without a key and do not comply with the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles do not, in fact, conform to the applicable anti-theft standards.

5510. As a direct and proximate result of Defendants' breaches, Virginia Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that Virginia Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

**3.    Violation of the Virginia Consumer Protection Act (Va. Code Ann. § 59.1-196, et seq.).**

5511. Virginia Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

5512. Virginia Plaintiffs are "persons" within the meaning of Va. Code Ann. § 59.1-198.

5513. The Vehicles are "goods" within the meaning Va. Code Ann. § 59.1-198.

5514. The sale and/or lease of the Vehicles from Defendants to Plaintiffs are "consumer transactions" within the meaning of Va. Code Ann. § 59.1-198.

5515. Defendants are "suppliers" within the meaning of Va. Code Ann. § 59.1-198.

5516. The Virginia Consumer Protection Act ("Virginia CPA") declares unlawful certain "fraudulent acts or practices committed by a supplier in connection with a consumer transaction. . . ." Va. Code Ann. § 59.1-200(A).

5517. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Virginia CPA by knowingly and

intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Theft-Prone Design, as detailed above.

5518. Under the Virginia CPA, Defendants had an ongoing duty to Virginia Plaintiffs to refrain from unfair or deceptive practices in the course of their business. Specifically, Defendants owed Virginia Plaintiffs a duty to disclose all the material facts concerning the Theft-Prone Design in the Vehicles.

5519. Defendants had exclusive access to and far superior knowledge about facts regarding the Theft-Prone Design, and Defendants knew these facts were not known to or reasonably discoverable by Virginia Plaintiffs.

5520. Given the Theft-Prone Design's hidden and technical nature, Virginia Plaintiffs lack the sophisticated expertise in vehicle components necessary to discover the Theft-Prone Design on their own.

5521. Defendants knew that the Theft-Prone Design gave rise to safety concerns for the consumers who use the Vehicles, and that the Theft-Prone Design would have been a material fact in the Virginia Plaintiffs' decisions to buy or lease the Vehicles.

5522. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Theft-Prone Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

5523. As detailed above, the information concerning the Theft-Prone Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

5524. By misrepresenting the Vehicles as safe, reliable and compliant with applicable standards, and by failing to disclose and actively concealing the real dangers

and risk posed by the Theft-Prone Design, Defendants engaged in one or more of the following fraudulent acts or practices prohibited by Va. Code Ann. § 59.1-200(A):

    a. misrepresenting the approval or certification of the Vehicles, including that they complied with all applicable safety and anti-theft standards;

    b. misrepresenting the characteristics, uses, or benefits of the Vehicles;

    c. misrepresenting the standard, quality, and grade, of the Vehicles, including that they complied with all applicable safety and anti-theft standards when they did not;

    d. advertising or offering for sale the Vehicles in a defective and blemished condition without clearly and unequivocally indicating such condition in the advertisement or offer for sale;

    e. advertising the Vehicles with the intent not to sell or lease them as advertised; and

    f. using any other deception, fraud, false pretense, false promise, or misrepresentation in connection with the advertisement and sale/lease of the Vehicles.

Va. Code Ann. §§ 59.1-200(A)(2), (5), (6), (7), (8), and (14).

5525. Defendants intended for Virginia Plaintiffs to rely on them to provide adequately designed Vehicles and to honestly and accurately reveal the safety hazards described above.

5526. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Theft-Prone Design. Those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Virginia Plaintiffs, about the true safety and reliability of the Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

5527. Defendants' misrepresentations, concealments, omissions, and

COMPLAINT

suppressions of material facts regarding the Theft-Prone Design and true characteristics of the Vehicles were material to the decisions of Virginia Plaintiffs to purchase or lease the Vehicles, as Defendants intended. Virginia Plaintiffs were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase or lease the Vehicles.

5528. Virginia Plaintiffs' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, and/or otherwise learning that the Vehicles contained the Theft-Prone Design, as alleged above. Virginia Plaintiffs did not, and could not, unravel Defendants' deception on their own.

5529. Had they known the truth about the Theft-Prone Design, Plaintiffs would not have purchased or leased the Vehicles or would have paid significantly less for them.

5530. Virginia Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

5531. Defendants' violations present a continuing risk to Virginia Plaintiffs and the general public because the Vehicles remain unsafe due to the Theft-Prone Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

5532. Virginia Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action. As such, Defendants are and have been well aware of the Theft-Prone Design and Virginia Plaintiffs' claims. Additionally, Defendants had ample notice provided by the numerous complaints filed against them, internet videos, and news reports. Furthermore, on September 17, 2025, Virginia Plaintiffs sent Defendants written notice letters of Defendants' violations, Plaintiffs' claims, and a proposed cure to the violations. To date, Defendants failed to remedy their violations. Because Defendants failed to remedy their unlawful conduct, Virginia Plaintiffs seek all damages and relief

COMPLAINT

to which Virginia Plaintiffs are entitled.

5533. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile. As alleged above, Defendants have long known that the Vehicles contained the Theft-Prone Design yet did nothing to remedy the Theft-Prone Design.

5534. Pursuant to Va. Code Ann. § 59.1-204(A), Virginia Plaintiffs seek an order (1) enjoining Defendants' unfair and/or deceptive acts, methods, or practices alleged herein, and (2) awarding damages, punitive damages, attorney's fees, costs, and/or any other just and proper relief available under the Virginia CPA.

**4.      Fraud by Omission and Concealment.**

5535. Virginia Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

5536. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards and are therefore of a particular value. In reality, however, the Vehicles do not comply with such standards.

5537. Defendants were aware of the Theft-Prone Design when they manufactured, marketed, and sold the Vehicles to Virginia Plaintiffs. Defendants further knew that the Theft-Prone Design gave rise to serious safety risks for the consumers that would use the Vehicles and naturally give rise to higher insurance premiums and accelerated depreciation. At the same time, Defendants were aware of the Federal Motor Vehicle Safety Standards and of the effectiveness of engine immobilizer technology in reducing safety hazards. Defendants were also aware that noncompliance with federal and industry standards lowered the value of the Vehicles and would render the Vehicles difficult to insure.

5538. Defendants knew that the Theft-Prone Design, the safety hazards it posed, and the reduction in the Vehicles' value would have been material facts to the Virginia Plaintiffs' decisions to buy or lease the Vehicles.

5539. A reasonable person would find the Vehicles' lack of industry-standard anti-theft measures and noncompliance with applicable safety standards material to their decision to purchase, lease, and maintain the Vehicles because these deficiencies impact safety, availability, the Vehicles' value, and the cost to insure the Vehicles.

5540. Defendants knowingly made affirmatively false or incomplete statements of material facts as to the Vehicles' safety, reliability, quality, value, and compliance with applicable motor vehicle safety and theft prevention standards, while they intentionally withheld, concealed, omitted, suppressed, and failed to disclose material facts about the Theft-Prone Design, including the lack of effective anti-theft measures, significant safety risks, noncompliance with federal motor vehicle safety standards, and the Vehicles' true value.

5541. Defendants volunteered incomplete information about the Vehicles they offered for sale and/or lease to consumers, including false statements as to the Vehicles' safety, compliance with applicable safety and anti-theft standards, and value while at the same time withholding the existence of the Theft-Prone Design.  Defendants further knew and failed to disclose that the Theft-Prone Design and lack of standard anti-theft measures left the Vehicles at substantially lower value than the price for which they were advertised, marketed, sold, and/or leased.

5542. Alternatively, Defendants made false misrepresentations about the Theft-Prone Design with such utter disregard and recklessness that their knowledge regarding the Theft-Prone Design, its unsafe and unreliable nature, and its substantially lower value may be inferred.

5543. Defendants intended for the Virginia Plaintiffs to rely on their omissions and concealment—which Virginia Plaintiffs did by purchasing and leasing the Vehicles at the prices they paid believing that their vehicles would not have a Theft-Prone Design that would affect the quality, reliability, and safety of the Vehicles.

5544. Virginia Plaintiffs' reliance on Defendants' misrepresentations and concealment was reasonable and justifiable, as Virginia Plaintiffs had no way of

learning the facts that Defendants had concealed or failed to disclose. Virginia Plaintiffs did not, and could not, unravel Defendants' deception on their own.

5545. Having been aware of the Theft-Prone Design within the Vehicles and having known that Virginia Plaintiffs could not have reasonably been expected to know of the Theft-Prone Design, Defendants had a duty to disclose the Theft-Prone Design to Virginia Plaintiffs in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Theft-Prone Design and the true value of the Vehicles.

5546. Instead, Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Virginia Plaintiffs.

5547. If Defendants had fully and adequately disclosed the Theft-Prone Design to consumers, Virginia Plaintiffs would have seen such a disclosure.

5548. Had Virginia Plaintiffs known of the Theft-Prone Design within the Vehicles, they would not have purchased the Vehicles or would have paid less for them. Through their omissions and concealment with respect to the Theft-Prone Design within the Vehicles, Defendants intended to induce, and did in fact induce, Virginia Plaintiffs to either purchase a Vehicle that they otherwise would not have purchased or pay more for a Vehicle than they otherwise would have paid.

5549. As a direct and proximate result of Defendants' omissions, Virginia Plaintiffs overpaid for the Vehicles because Virginia Plaintiffs would either have paid less for the Vehicles or would not have purchased the Vehicles at all if the Theft-Prone Design had been disclosed to them.

5550. As a direct and proximate result of Defendants' omissions, Virginia Plaintiffs purchased Vehicles highly susceptible to theft and were forced to pay higher insurance premiums to account for the susceptibility that they did not knowingly accept, purchase, or lease.

5551. As a direct and proximate result of Defendants' omissions, the Virginia Plaintiffs paid higher insurance premiums and are now left with Vehicles with significantly diminished values.

5552. Accordingly, Defendants are liable to Virginia Plaintiffs for their damages, including but not limited to the difference in value, increased insurance premiums that Virginia Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

5553. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, in reckless disregard of the Virginia Plaintiffs' rights and well-being, and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

5554. Virginia Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 5. Constructive Fraud.

5555. Virginia Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

5556. Defendants, in the course of their business selling and promoting motor vehicles, supplied false information, including that the Vehicles were safe and reliable, to guide motor vehicle buyers, including Virginia Plaintiffs, in their choice of transaction.

5557. Defendants made misrepresentations of material facts concerning the safety and reliability of the Vehicles that they knew or should have known were false. Specifically, Defendants misrepresented that the Vehicles had effective anti-theft equipment or design elements; misrepresented that the Vehicles were safe and reliable forms of transportation; misrepresented that the Vehicles complied with all federal and industry safety and theft prevention standards; and misrepresented the true value of the

COMPLAINT

Vehicles. Defendants supplied this information in the course of their business to guide Virginia Plaintiffs in their Vehicle selection and induce Virginia Plaintiffs to purchase one of Defendants' Vehicles.

5558. Virginia Plaintiffs justifiably relied upon Defendants' representations because, as the entities responsible for designing and manufacturing the Vehicles, Defendants held themselves out to be knowledgeable about the Vehicles' components and honest in their promotion of the Vehicles. Virginia Plaintiffs' reliance was further reasonable given the hidden and technical nature of the Theft-Prone Design and practical inability of Virginia Plaintiffs to discover the Theft-Prone Design on their own. Because Defendants held the Vehicles out to be in line with industry standards, the representation was not unreasonable on its face and Virginia Plaintiffs had no apparent reason to doubt the veracity of Defendants' representations.

5559. Defendants had a duty to disclose all relevant information regarding the Vehicles' safety, reliability, quality, and characteristics that would affect the Virginia Plaintiffs' choice of purchase as consumers.

5560. Defendants failed to exercise reasonable care or competence in communicating the standards of safety, reliability, quality, and characteristics of the Vehicles to the consumers, including Virginia Plaintiffs, when they failed to disclose the lack of anti-theft prevention technology in the Vehicles. Rather, Defendants published materials and marketed the Vehicles for years as safe, reliable, and of a quality consistent with the industry standard.

5561. Virginia Plaintiffs would not have purchased, or would have purchased for a lower price, the Vehicles which Defendants negligently misrepresented as safe, of standard quality, and containing standard trade characteristics, such as anti-theft prevention technology. Additionally, as a direct and proximate result, Virginia Plaintiffs have had to pay higher insurance premiums to account for the Vehicles' high susceptibility to theft and are now left with Vehicles that have a lower value than they would have had without the defect.

5562. As a direct and proximate result of Virginia Plaintiffs' reasonable reliance on Defendants' negligent misrepresentations, Virginia Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including the difference in value, increased insurance premiums Virginia Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable in an amount to be proven at trial.

5563. Virginia Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 6. Negligence.

5564. Virginia Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

5565. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

5566. Defendants owed a duty of care to Virginia Plaintiffs. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves, higher insurance premiums, and accelerated depreciation.

5567. Defendants failed to exercise reasonable care in connection with their manufacture, distribution, sale, and/or leasing of the Vehicles.

5568. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant with all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Virginia Plaintiffs.

5569. Defendants' violation of their duties under applicable law and/or the

applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS No. 114.

5570. As a direct and proximate result of Defendants' failure to exercise reasonable care, Virginia Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that Virginia Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

5571. Virginia Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 7. Unjust Enrichment.

5572. Virginia Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

5573. When they purchased and leased the Vehicles, Virginia Plaintiffs conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

5574. Virginia Plaintiffs would not have purchased or leased their Vehicles, or would have paid less for them, had they known of the Theft-Prone Design at the time of purchase or lease. Therefore, Defendants profited from the sale and lease of the Vehicles to the detriment and expense of Virginia Plaintiffs.

5575. Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft-Prone Design, yet they failed to disclose this knowledge and misled the Virginia Plaintiffs regarding the nature and quality of the Vehicles while profiting from this deception.

5576. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, including because they were procured as a result of their wrongful

COMPLAINT

conduct alleged above.

5577. Virginia Plaintiffs are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Virginia Plaintiffs to the position they occupied prior to dealing with these Defendants, with such amounts to be determined at trial.

5578. Virginia Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Virginia Plaintiffs' claims for damages are dismissed or judgment is entered in favor of Defendants, Rhode Island Plaintiffs will have no adequate legal remedy.

**SS.    Washington State Law Claims for Relief**

**(Alleged by Washington Plaintiffs Against All Defendants)**

**1.    Breach of Implied Warranty of Merchantability Under Wash. Rev. Code Ann. §§ 62A.2-314 and 62A.2A-212.**

5579. Washington Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

5580. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Wash. Rev. Code Ann. §§ 62A.2-314 and 62A.2A-212.

5581. Defendants are and were at all relevant times "merchants" with respect to motor vehicles Wash. Rev. Code Ann. §§ 62A.2-104(1) and 62A.2A-103(3), "sellers" of motor vehicles under § 62A.2-103(1)(d), and with respect to leases, "lessors" of motor vehicles under Wash. Rev. Code Ann. § 62A.2A-103(1)(p).

5582. At all relevant times, Washington Plaintiffs who purchased Vehicles in Washington were and are "buyers" within the meaning of Wash. Rev. Code Ann. § 62A.2-103(1)(a).

5583. At all relevant times, Washington Plaintiffs who leased Vehicles in Washington were and are "lessees" within the meaning of Wash. Rev. Code Ann. § 62A.2A-103(1)(n).

COMPLAINT

5584. At all relevant times, Washington Plaintiffs' Vehicles (whether purchased or leased) were and are "goods" within the meaning of Wash. Rev. Code Ann. §§ 62A.2-105(1) and 62A.2A-103(1)(h).

5585. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased.  Defendants provided Washington Plaintiffs with an implied warranty that the purchased and leased Vehicles were in merchantable condition and fit for the ordinary purposes for which they were sold or leased.  This implied warranty included that the Vehicles (a) were manufactured, supplied, distributed, and sold by Defendants, (b) were safe and reliable for transportation, (c) complied with all federal, state, and industry motor vehicle regulations and safety standards, including FMVSS No. 114, and (d) were not at abnormally high risk of theft.

5586. The Vehicles did not comply with the implied warranty of merchantability because the Vehicles were defective and not in merchantable condition at the time of sale and/or lease, were not fit for their ordinary purpose of providing safe and reliable transportation at the time of sale or lease, and would not pass without objection in the trade as they deviated significantly from the industry standard and can be stolen in mere minutes without a key.  Defendants knew at the time of manufacture that the Vehicles contained the Theft-Prone Design and lacked any anti-theft equipment or design elements that effectively prevent theft or comply with FMVSS No. 114.  Therefore, the Defendants knew at the time of manufacture that the Vehicles are at an abnormally high risk of theft and are unsafe and an unreliable form of transportation.  The Theft-Prone Design renders the Vehicles highly vulnerable to theft and a prime target for thieves as they can be easily stolen in seconds.  Defendants knew at the time of manufacture that because their Vehicles did not include any anti-theft measures that satisfied FMVSS No. 114, making their Vehicles more prone to theft and failing to comply with federal regulations, the Vehicles would require larger insurance premiums and would depreciate at a more rapid rate than a comparable vehicle with anti-theft measure that satisfied FMVSS No. 114. Consequently, at the time of sale and/or lease, the Vehicles

were not fit for their ordinary purpose of providing safe and reliable transportation.

5587. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable. Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Washington Plaintiffs, of the safety defect. Any time limitations regarding the warranty period were also unconscionable and inadequate to protect Washington Plaintiffs. Washington Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants. A gross disadvantage in bargaining power existed between Washington Plaintiffs and Defendants, which unreasonably favored Defendants. Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left Washington Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

5588. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that Washington Plaintiffs may seek alternative remedies. Washington Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

5589. Washington Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure. Washington Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Washington Plaintiffs' breach of warranty claims. Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Washington Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests,

including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Washington Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches. To date, Defendants failed to remedy their breaches.

5590. Alternatively, Washington Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches. Washington Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

5591. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Washington Plaintiffs' Vehicles were and are defective, the Theft-Prone Design in the Vehicles has not been remedied, and Washington Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that Washington Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

### 2. Breach of Express Warranty Under Wash. Rev. Code Ann. § 62A.2-313.[149]

5592. Washington Plaintiffs incorporate by reference and reallege each

---

[149] For the names of the Washington Plaintiffs who do not allege a claim for Breach of Express Warranty Under Wash. Rev. Code Ann. § 62A.2-313, see Exhibit E.

COMPLAINT

preceding paragraph as though fully set forth herein.

5593. During the relevant time periods, Defendants manufactured the Vehicles and Washington Plaintiffs purchased and/or leased the Vehicles from Defendants.

5594. Defendants were at all relevant times "merchants" with respect to motor vehicles under Wash. Rev. Code Ann. §§ 62A.2-104(1) and 62A.2A-103(3), "sellers" of motor vehicles under § 62A.2-103(1)(d).

5595. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Wash. Rev. Code Ann. § 62A.2A-103(1)(p).

5596. The Vehicles are and were at all relevant times "goods" within the meaning of Wash. Rev. Code Ann. §§ 62A.2-105(1) and 62A.2A-103(1)(h).

5597. By affixing a VIN plate to each Vehicle at the time of manufacture, Defendants expressly warranted each Vehicles' conformance to "all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture shown." These statements are an affirmation of fact or promise made to Washington Plaintiffs as to the Vehicles' condition, quality, safety, and reliability. These statements became the basis of the bargain between Washington Plaintiffs and Defendants, as Washington Plaintiffs relied on these statements when making their decisions to purchase and/or lease the Vehicles. As such, the statements are an express warranty under Washington law pursuant to Wash. Rev. Code Ann. § 62A.2-313.

5598. Washington Plaintiffs used the Vehicles in accordance with their normal operation and did not misuse or mishandle the Vehicles in any way material to the allegations set forth herein.

5599. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable. Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Washington Plaintiffs, of the safety defect. Any time limitations regarding the warranty period were also unconscionable and inadequate to

protect Washington Plaintiffs. Washington Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants. A gross disadvantage in bargaining power existed between Washington Plaintiffs and Defendants, which unreasonably favored Defendants. Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left Washington Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

5600. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that Washington Plaintiffs may seek alternative remedies. Washington Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

5601. Washington Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure. Washington Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Washington Plaintiffs' breach of warranty claims. Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Washington Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Washington Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a

COMPLAINT

proposed cure to the breaches. To date, Defendants failed to remedy their breaches.

5602. Alternatively, Washington Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches. Washington Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

5603. The Vehicles did not perform as promised in accordance with Defendants' express warranty; instead, the Vehicles did not meet all applicable motor vehicle safety and theft prevention standards in effect on the date of manufacture. The Vehicles are capable of being stolen in a matter of seconds without a key and do not comply with the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles do not, in fact, conform to the applicable anti-theft standards.

5604. As a direct and proximate result of Defendants' breaches, Washington Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that Washington Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

**3. Violation of the Washington Consumer Protection Act (Wash. Rev. Code Ann. § 19.86.010, et seq.).[150]**

5605. Washington Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

5606. Washington Plaintiffs are "persons" within the meaning of Wash. Rev.

---

[150] For the names of the Washington Plaintiffs who do not allege a claim for Violation of the Washington Consumer Protection Act (Wash. Rev. Code Ann. § 19.86.010, et seq., see Exhibit E.

COMPLAINT

Code Ann. § 19.86.010(1).

5607. The Vehicles are "assets" within the meaning of Wash. Rev. Code Ann. § 19.86.010(3).

5608. Defendants were and are engaged in "trade and commerce" within the meaning of Wash. Rev. Code Ann. § 19.86.010(2).

5609. The Washington Consumer Protection Act ("Washington CPA") declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. . . ." Wash. Rev. Code Ann. § 19.86.020.

5610. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Washington CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Theft-Prone Design, as detailed above.

5611. Under the Washington CPA, Defendants had an ongoing duty to Washington Plaintiffs to refrain from unfair or deceptive practices in the course of their business. Specifically, Defendants owed Washington Plaintiffs a duty to disclose all the material facts concerning the Theft-Prone Design in the Vehicles.

5612. Defendants had exclusive access to and far superior knowledge about facts regarding the Theft-Prone Design, and Defendants knew these facts were not known to or reasonably discoverable by Washington Plaintiffs.

5613. Given the Theft-Prone Design's hidden and technical nature, Washington Plaintiffs lack the sophisticated expertise in vehicle components necessary to discover the Theft-Prone Design on their own.

5614. Defendants knew that the Theft-Prone Design gave rise to safety concerns for the consumers who use the Vehicles, and that the Theft-Prone Design would have been a material fact in the Washington Plaintiffs' decisions to buy or lease the Vehicles.

5615. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known

- 1175 -
COMPLAINT

safety defect. In advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Theft-Prone Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

5616. As detailed above, the information concerning the Theft-Prone Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

5617. By misrepresenting the Vehicles as safe, reliable and compliant with applicable standards, and by failing to disclose and actively concealing the real dangers and risk posed by the Theft-Prone Design, Defendants engaged in unfair or deceptive business practices in the conduct of trade or commerce prohibited by Wash. Rev. Code Ann. § 19.86.020.

5618. These unfair or deceptive business practices are injurious to the public interest because they have injured and continue to have the capacity to injure other persons because the Vehicles remain unsafe due to the Theft-Prone Design. Wash. Rev. Code Ann. § 19.86.093.

5619. Defendants intended for Washington Plaintiffs to rely on them to provide adequately designed Vehicles and to honestly and accurately reveal the safety hazards described above.

5620. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Theft-Prone Design. Those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Washington Plaintiffs, about the true safety and reliability of the Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

5621. Defendants' misrepresentations, concealments, omissions, and

suppressions of material facts regarding the Theft-Prone Design and true characteristics of the Vehicles were material to the decisions of Washington Plaintiffs to purchase or lease the Vehicles, as Defendants intended.    Plaintiffs were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase or lease the Vehicles.

5622. Washington Plaintiffs' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, and/or otherwise learning that the Vehicles contained the Theft-Prone Design, as alleged above. Washington Plaintiffs did not, and could not, unravel Defendants' deception on their own.

5623. Had they known the truth about the Theft-Prone Design, Washington Plaintiffs would not have purchased or leased the Vehicles or would have paid significantly less for them.

5624. Washington Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

5625. Defendants' violations present a continuing risk to Washington Plaintiffs and the general public because the Vehicles remain unsafe due to the Theft-Prone Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

5626. Washington Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action.  As such, Defendants are and have been well aware of the Theft-Prone Design and Washington Plaintiffs' claims.    Additionally, Defendants had ample notice provided by the numerous complaints filed against them, internet videos, and news reports.  Furthermore, on September 17, 2025, Washington Plaintiffs sent Defendants written notice letters of Defendants' violations, Plaintiffs' claims, and a proposed cure

to the violations. To date, Defendants failed to remedy their violations. Because Defendants failed to remedy their unlawful conduct, Washington Plaintiffs seek all damages and relief to which Washington Plaintiffs are entitled.

5627. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile. As alleged above, Defendants have long known that the Vehicles contained the Theft-Prone Design yet did nothing to remedy the Theft-Prone Design.

5628. Pursuant to Wash. Rev. Code Ann. § 19.86.090, Washington Plaintiffs seek an order (1) enjoining Defendants' unfair and/or deceptive acts, methods, or practices alleged herein, and (2) awarding damages, punitive damages, attorney's fees, costs, and/or any other just and proper relief available under the Washington CPA.

### 4.    Fraud by Omission and Concealment.[151]

5629. Washington Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

5630. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards and are therefore of a particular value. In reality, however, the Vehicles do not comply with such standards.

5631. Defendants were aware of the Theft-Prone Design when they manufactured, marketed, and sold the Vehicles to Washington Plaintiffs. Defendants further knew that the Theft-Prone Design gave rise to serious safety risks for the consumers that would use the Vehicles and naturally give rise to higher insurance premiums and accelerated depreciation. At the same time, Defendants were aware of the Federal Motor Vehicle Safety Standards and of the effectiveness of engine immobilizer technology in reducing safety hazards. Defendants were also aware that

---

[151] For the names of the Washington Plaintiffs who do not allege a claim for Fraud by Omission and Concealment, see Exhibit E.

noncompliance with federal and industry standards lowered the value of the Vehicles and would render the Vehicles difficult to insure.

5632. Defendants knew that the Theft-Prone Design, the safety hazards it posed, and the reduction in the Vehicles' value would have been material facts to the Washington Plaintiffs' decisions to buy or lease the Vehicles.

5633. A reasonable person would find the Vehicles' lack of industry-standard anti-theft measures and noncompliance with applicable safety standards material to their decision to purchase, lease, and maintain the Vehicles because these deficiencies impact safety, availability, the Vehicles' value, and the cost to insure the Vehicles.

5634. Defendants knowingly made affirmatively false or incomplete statements of material facts as to the Vehicles' safety, reliability, quality, value, and compliance with applicable motor vehicle safety and theft prevention standards, while they intentionally withheld, concealed, omitted, suppressed, and failed to disclose material facts about the Theft-Prone Design, including the lack of effective anti-theft measures, significant safety risks, noncompliance with federal motor vehicle safety standards, and the Vehicles' true value.

5635. Defendants volunteered incomplete information about the Vehicles they offered for sale and/or lease to consumers, including false statements as to the Vehicles' safety, compliance with applicable safety and anti-theft standards, and value while at the same time withholding the existence of the Theft-Prone Design. Defendants further knew and failed to disclose that the Theft-Prone Design and lack of standard anti-theft measures left the Vehicles at substantially lower value than the price for which they were advertised, marketed, sold, and/or leased.

5636. Alternatively, Defendants made false misrepresentations about the Theft-Prone Design with such utter disregard and recklessness that their knowledge regarding the Theft-Prone Design, its unsafe and unreliable nature, and its substantially lower value may be inferred.

5637. Defendants intended for the Washington Plaintiffs to rely on their

COMPLAINT

omissions and concealment—which Washington Plaintiffs did by purchasing and leasing the Vehicles at the prices they paid believing that their vehicles would not have a Theft-Prone Design that would affect the quality, reliability, and safety of the Vehicles.

5638. Washington Plaintiffs' reliance on Defendants' misrepresentations and concealment was reasonable and justifiable, as Washington Plaintiffs had no way of learning the facts that Defendants had concealed or failed to disclose. Washington Plaintiffs did not, and could not, unravel Defendants' deception on their own.

5639. Having been aware of the Theft-Prone Design within the Vehicles and having known that Washington Plaintiffs could not have reasonably been expected to know of the Theft-Prone Design, Defendants had a duty to disclose the Theft-Prone Design to Washington Plaintiffs in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Theft-Prone Design and the true value of the Vehicles.

5640. Instead, Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Washington Plaintiffs.

5641. If Defendants had fully and adequately disclosed the Theft-Prone Design to consumers, Washington Plaintiffs would have seen such a disclosure.

5642. Had Washington Plaintiffs known of the Theft-Prone Design within the Vehicles, they would not have purchased the Vehicles or would have paid less for them. Through their omissions and concealment with respect to the Theft-Prone Design within the Vehicles, Defendants intended to induce, and did in fact induce, Washington Plaintiffs to either purchase a Vehicle that they otherwise would not have purchased or pay more for a Vehicle than they otherwise would have paid.

5643. As a direct and proximate result of Defendants' omissions, Washington Plaintiffs overpaid for the Vehicles because Washington Plaintiffs would either have

paid less for the Vehicles or would not have purchased the Vehicles at all if the Theft-Prone Design had been disclosed to them.

5644. As a direct and proximate result of Defendants' omissions, Washington Plaintiffs purchased Vehicles highly susceptible to theft and were forced to pay higher insurance premiums to account for the susceptibility that they did not knowingly accept, purchase, or lease.

5645. As a direct and proximate result of Defendants' omissions, the Washington Plaintiffs paid higher insurance premiums and are now left with Vehicles with significantly diminished values.

5646. Accordingly, Defendants are liable to Washington Plaintiffs for their damages, including but not limited to the difference in value, increased insurance premiums that Washington Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

5647. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, in reckless disregard of the Washington Plaintiffs' rights and well-being, and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

5648. Washington Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 5. Negligent Misrepresentation.[152]

5649. Washington Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

5650. Defendants, in the course of their business selling and promoting motor

---

[152] For the names of the Washington Plaintiffs who do not allege a claim for Negligent Misrepresentation, see Exhibit E.

COMPLAINT

vehicles, supplied false information, including that the Vehicles were safe and reliable, to guide motor vehicle buyers, including Washington Plaintiffs, in their choice of transaction.

5651. Defendants made misrepresentations of material facts concerning the safety and reliability of the Vehicles that they knew or should have known were false. Specifically, Defendants misrepresented that the Vehicles had effective anti-theft equipment or design elements; misrepresented that the Vehicles were safe and reliable forms of transportation; misrepresented that the Vehicles complied with all federal and industry safety and theft prevention standards; and misrepresented the true value of the Vehicles. Defendants supplied this information in the course of their business to guide Washington Plaintiffs in their Vehicle selection and induce Washington Plaintiffs to purchase one of Defendants' Vehicles.

5652. Washington Plaintiffs justifiably relied upon Defendants' representations because, as the entities responsible for designing and manufacturing the Vehicles, Defendants held themselves out to be knowledgeable about the Vehicles' components and honest in their promotion of the Vehicles. Washington Plaintiffs' reliance was further reasonable given the hidden and technical nature of the Theft-Prone Design and practical inability of Washington Plaintiffs to discover the Theft-Prone Design on their own. Because Defendants held the Vehicles out to be in line with industry standards, the representation was not unreasonable on its face and Washington Plaintiffs had no apparent reason to doubt the veracity of Defendants' representations.

5653. Defendants had a duty to disclose all relevant information regarding the Vehicles' safety, reliability, quality, and characteristics that would affect the Washington Plaintiffs' choice of purchase as consumers.

5654. Defendants failed to exercise reasonable care or competence in communicating the standards of safety, reliability, quality, and characteristics of the Vehicles to the consumers, including Washington Plaintiffs, when they failed to disclose the lack of anti-theft prevention technology in the Vehicles. Rather,

COMPLAINT

Defendants published materials and marketed the Vehicles for years as safe, reliable, and of a quality consistent with the industry standard.

5655. Washington Plaintiffs would not have purchased, or would have purchased for a lower price, the Vehicles which Defendants negligently misrepresented as safe, of standard quality, and containing standard trade characteristics, such as anti-theft prevention technology. Additionally, as a direct and proximate result, Washington Plaintiffs have had to pay higher insurance premiums to account for the Vehicles' high susceptibility to theft and are now left with Vehicles that have a lower value than they would have had without the defect.

5656. As a direct and proximate result of Washington Plaintiffs' reasonable reliance on Defendants' negligent misrepresentations, Washington Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that Washington Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

5657. Washington Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 6. Negligence.

5658. Washington Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

5659. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

5660. Defendants owed a duty of care to Washington Plaintiffs. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves, higher insurance premiums, and accelerated depreciation.

5661. Defendants failed to exercise reasonable care in connection with their

COMPLAINT

manufacture, distribution, sale, and/or leasing of the Vehicles.

5662. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant with all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Washington Plaintiffs.

5663. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS No. 114.

5664. As a direct and proximate result of Defendants' failure to exercise reasonable care, Washington Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that Washington Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

5665. Washington Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 7.    Unjust Enrichment.[153]

5666. Washington Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

5667. When they purchased and leased the Vehicles, Washington Plaintiffs

---

[153] For the names of the Washington Plaintiffs who do not allege a claim for Unjust Enrichment, see Exhibit E.

COMPLAINT

conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

5668. Washington Plaintiffs would not have purchased or leased their Vehicles, or would have paid less for them, had they known of the Theft-Prone Design at the time of purchase or lease.  Therefore, Defendants profited from the sale and lease of the Vehicles to the detriment and expense of Washington Plaintiffs.

5669. Defendants appreciated these economic benefits.  These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers.  They knew of these benefits because they were aware of the Theft-Prone Design, yet they failed to disclose this knowledge and misled the Washington Plaintiffs regarding the nature and quality of the Vehicles while profiting from this deception.

5670. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

5671. Washington Plaintiffs are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Washington Plaintiffs to the position they occupied prior to dealing with these Defendants, with such amounts to be determined at trial.

5672. Washington Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Washington Plaintiffs' claims for damages are dismissed or judgment is entered in favor of Defendants, Washington Plaintiffs will have no adequate legal remedy.

**TT.   West Virginia State Law Claims for Relief**

**(Alleged by West Virginia Plaintiffs Against All Defendants)**

**1.      Breach of Implied Warranty of Merchantability Under W. Va. Code Ann. §§ 46-2-314 and 46-2A-212.**

5673. West Virginia Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

COMPLAINT

5674. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to W. Va. Code Ann. §§ 46-2-314 and 46-2A-212.

5675. Defendants are and were at all relevant times "merchants" with respect to motor vehicles W. Va. Code Ann. §§ 46-2-104(1) and 46-2A-103(3), "sellers" of motor vehicles under § 46-2-103(1)(d), and with respect to leases, "lessors" of motor vehicles under § 46-2A-103(1)(p).

5676. At all relevant times, West Virginia Plaintiffs who purchased Vehicles in West Virginia were and are "buyers" within the meaning of W. Va. Code Ann. § 46-2-103(1)(a).

5677. At all relevant times, West Virginia Plaintiffs who leased Vehicles in West Virginia were and are "lessees" within the meaning of W. Va. Code Ann. § 46-2A-103(1)(n).

5678. At all relevant times, West Virginia Plaintiffs' Vehicles (whether purchased or leased) were and are "goods" within the meaning of §§ 46-2-105(1) and 46-2A-103(1)(h).

5679. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided West Virginia Plaintiffs with an implied warranty that the purchased and leased Vehicles were in merchantable condition and fit for the ordinary purposes for which they were sold or leased. This implied warranty included that the Vehicles (a) were manufactured, supplied, distributed, and sold by Defendants, (b) were safe and reliable for transportation, (c) complied with all federal, state, and industry motor vehicle regulations and safety standards, including FMVSS No. 114, and (d) were not at abnormally high risk of theft.

5680. The Vehicles did not comply with the implied warranty of merchantability because the Vehicles were defective and not in merchantable condition at the time of sale and/or lease, were not fit for their ordinary purpose of providing safe and reliable transportation at the time of sale or lease, and would not pass without objection in the

COMPLAINT

trade as they deviated significantly from the industry standard and can be stolen in mere minutes without a key. Defendants knew at the time of manufacture that the Vehicles contained the Theft-Prone Design and lacked any anti-theft equipment or design elements that effectively prevent theft or comply with FMVSS No. 114. Therefore, the Defendants knew at the time of manufacture that the Vehicles are at an abnormally high risk of theft and are unsafe and an unreliable form of transportation. The Theft-Prone Design renders the Vehicles highly vulnerable to theft and a prime target for thieves as they can be easily stolen in seconds. Defendants knew at the time of manufacture that because their Vehicles did not include any anti-theft measures that satisfied FMVSS No. 114, making their Vehicles more prone to theft and failing to comply with federal regulations, the Vehicles would require larger insurance premiums and would depreciate at a more rapid rate than a comparable vehicle with anti-theft measure that satisfied FMVSS No. 114. Consequently, at the time of sale and/or lease, the Vehicles were not fit for their ordinary purpose of providing safe and reliable transportation.

5681. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable. Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including West Virginia Plaintiffs, of the safety defect. Any time limitations regarding the warranty period were also unconscionable and inadequate to protect West Virginia Plaintiffs. West Virginia Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants. A gross disadvantage in bargaining power existed between West Virginia Plaintiffs and Defendants, which unreasonably favored Defendants. Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left West Virginia Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

5682. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that West Virginia Plaintiffs may seek alternative remedies.

West Virginia Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

5683. West Virgina Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure. West Virgina Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of West Virgina Plaintiffs' breach of warranty claims. Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and West Virgina Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, West Virginia Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches. To date, Defendants failed to remedy their breaches.

5684. Alternatively, West Virginia Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches. West Virginia Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for

COMPLAINT

repair.

5685. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, West Virginia Plaintiffs' Vehicles were and are defective, the Theft-Prone Design in the Vehicles has not been remedied, and West Virginia Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that West Virginia Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

**2. Breach of Express Warranty Under W. Va. Code Ann. § 46-2-313.**

5686. West Virginia Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

5687. During the relevant time periods, Defendants manufactured the Vehicles and West Virginia Plaintiffs purchased and/or leased the Vehicles from Defendants.

5688. Defendants were at all relevant times '"merchants" with respect to motor vehicles W. Va. Code Ann. §§ 46-2-104(1) and 46-2A-103(3), "sellers" of motor vehicles under § 46-2-103(1)(d).

5689. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under W. Va. Code Ann. § 46-2A-103(1)(p).

5690. The Vehicles are and were at all relevant times "goods" within the meaning of §§ 46-2-105(1) and 46-2A-103(1)(h).

5691. By affixing a VIN plate to each Vehicle at the time of manufacture, Defendants expressly warranted each Vehicles' conformance to "all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture shown." These statements are an affirmation of fact or promise made to West Virginia Plaintiffs as to the Vehicles' condition, quality, safety, and reliability. These statements became the basis of the bargain between West Virginia Plaintiffs and Defendants, as West Virginia Plaintiffs relied on these statements when

COMPLAINT

making their decisions to purchase and/or lease the Vehicles.  As such, the statements are an express warranty under West Virginia law pursuant to W. Va. Code Ann. § 46-2-313.

5692. West Virginia Plaintiffs used the Vehicles in accordance with their normal operation and did not misuse or mishandle the Vehicles in any way material to the allegations set forth herein.

5693. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable.  Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including West Virginia Plaintiffs, of the safety defect.  Any time limitations regarding the warranty period were also unconscionable and inadequate to protect West Virginia Plaintiffs.  West Virginia Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants.  A gross disadvantage in bargaining power existed between West Virginia Plaintiffs and Defendants, which unreasonably favored Defendants.  Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left West Virginia Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

5694. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that West Virginia Plaintiffs may seek alternative remedies. West Virginia Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

5695. West Virgina Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure.  West Virginia Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of West Virgina Plaintiffs' breach of warranty claims.

COMPLAINT

Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and West Virgina Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, West Virginia Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches. To date, Defendants failed to remedy their breaches.

5696. Alternatively, West Virginia Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches. West Virginia Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

5697. The Vehicles did not perform as promised in accordance with Defendants' express warranty; instead, the Vehicles did not meet all applicable motor vehicle safety and theft prevention standards in effect on the date of manufacture. The Vehicles are capable of being stolen in a matter of seconds without a key and do not comply with the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles do not, in fact, conform to the applicable anti-theft standards.

5698. As a direct and proximate result of Defendants' breaches, West Virginia

COMPLAINT

Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that West Virginia Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

**3.      Violation of the West Virginia Consumer Credit and Protection Act (W. Va. Code Ann. § 46A-1-101, et seq.).**

5699. West Virgina Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

5700. West Virgina Plaintiffs are "consumers" within the meaning of W. Va. Code Ann. § 46A-6-102(2).

5701. The Vehicles are "goods" within the meaning of W. Va. Code Ann. § 46A-1-102(21).

5702. Defendants were and are engaged in "trade or commerce" within the meaning of W. Va. Code Ann. § 46A-6-102(6).

5703. The West Virginia Consumer Credit and Protection Act ("West Virginia CPA") declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. . . ." W. Va. Code Ann. § 46A-6-104.

5704. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the West Virgina CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Theft-Prone Design, as detailed above.

5705. Under the West Virgina CPA, Defendants had an ongoing duty to Plaintiffs to refrain from unfair or deceptive practices in the course of their business. Specifically, Defendants owed West Virgina Plaintiffs a duty to disclose all the material facts concerning the Theft-Prone Design in the Vehicles.

5706. Defendants had exclusive access to and far superior knowledge about facts

COMPLAINT

regarding the Theft-Prone Design, and Defendants knew these facts were not known to or reasonably discoverable by West Virgina Plaintiffs.

5707. Given the Theft-Prone Design's hidden and technical nature, West Virgina Plaintiffs lack the sophisticated expertise in vehicle components necessary to discover the Theft-Prone Design on their own.

5708. Defendants knew that the Theft-Prone Design gave rise to safety concerns for the consumers who use the Vehicles, and that the Theft-Prone Design would have been a material fact in the West Virgina Plaintiffs' decisions to buy or lease the Vehicles.

5709. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Theft-Prone Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

5710. As detailed above, the information concerning the Theft-Prone Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

5711. By misrepresenting the Vehicles as safe, reliable and compliant with applicable standards, and by failing to disclose and actively concealing the real dangers and risk posed by the Theft-Prone Design, Defendants engaged in one or more of the following unfair or deceptive business practices prohibited by W. Va. Code Ann. § 46A-6-102(7): (a) causing a likelihood of confusion or of misunderstanding as to the approval or certification of the Vehicles; (b) representing that the Vehicles have approval, characteristics, uses, or benefits that they do not have, including that they complied with all applicable safety and anti-theft standards; (c) representing that the Vehicles are of a particular standard, quality, and grade, including that they complied

COMPLAINT

with all applicable safety and anti-theft standards, when they are not; (d) advertising the Vehicles with the intent not to sell or lease them as advertised; (e) engaging in other conduct which created a likelihood of confusion or of misunderstanding; and (f) using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression, or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale/lease of the Vehicles, whether or not any person has in fact been misled, deceived or damaged thereby.  W. Va. Code Ann. § 46A-6-102(7)(B), (E), (G), (I), (L), and (M).

5712. Defendants intended for West Virgina Plaintiffs to rely on them to provide adequately designed Vehicles and to honestly and accurately reveal the safety hazards described above.

5713. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Theft-Prone Design.  Those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including West Virgina Plaintiffs, about the true safety and reliability of the Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

5714. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Theft-Prone Design and true characteristics of the Vehicles were material to the decisions of West Virgina Plaintiffs to purchase or lease the Vehicles, as Defendants intended.  West Virgina Plaintiffs were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase or lease the Vehicles.

5715. West Virgina Plaintiffs' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, and/or otherwise

learning that the Vehicles contained the Theft-Prone Design, as alleged above. West Virgina Plaintiffs did not, and could not, unravel Defendants' deception on their own.

5716. Had they known the truth about the Theft-Prone Design, West Virgina Plaintiffs would not have purchased or leased the Vehicles or would have paid significantly less for them.

5717. West Virgina Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

5718. Defendants' violations present a continuing risk to West Virgina Plaintiffs and the general public because the Vehicles remain unsafe due to the Theft-Prone Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

5719. On September 17, 2025, West Virginia Plaintiffs sent Defendants notice of the Theft-Prone Design in compliance with W. Va. Code Ann. § 46A-5-108(a). Additionally, Defendants had ample notice provided by the numerous complaints filed against them, internet videos, and news reports. Because Defendants failed to remedy their unlawful conduct, West Virgina Plaintiffs seek all damages and relief to which Plaintiffs are entitled.

5720. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile. As alleged above, Defendants have long known that the Vehicles contained the Theft-Prone Design yet did nothing to remedy the Theft-Prone Design.

5721. Pursuant to W. Va. Code Ann. § 46A-6-106(a), West Virgina Plaintiffs seek an order (1) enjoining Defendants' unfair and/or deceptive acts, methods, or practices alleged herein, and (2) awarding damages, punitive damages, attorney's fees, costs, and/or any other just and proper relief available under the West Virginia CPA.

**4.    Fraud by Omission and Concealment.**

5722. West Virginia Plaintiffs incorporate by reference and reallege each

- 1195 -
COMPLAINT

preceding paragraph as though fully set forth herein.

5723. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards and are therefore of a particular value.  In reality, however, the Vehicles do not comply with such standards.

5724. Defendants were aware of the Theft-Prone Design when they manufactured, marketed, and sold the Vehicles to West Virginia Plaintiffs.  Defendants further knew that the Theft-Prone Design gave rise to serious safety risks for the consumers that would use the Vehicles and naturally give rise to higher insurance premiums and accelerated depreciation.  At the same time, Defendants were aware of the Federal Motor Vehicle Safety Standards and of the effectiveness of engine immobilizer technology in reducing safety hazards.  Defendants were also aware that noncompliance with federal and industry standards lowered the value of the Vehicles and would render the Vehicles difficult to insure.

5725. Defendants knew that the Theft-Prone Design, the safety hazards it posed, and the reduction in the Vehicles' value would have been material facts to the West Virginia Plaintiffs' decisions to buy or lease the Vehicles.

5726. A reasonable person would find the Vehicles' lack of industry-standard anti-theft measures and noncompliance with applicable safety standards material to their decision to purchase, lease, and maintain the Vehicles because these deficiencies impact safety, availability, the Vehicles' value, and the cost to insure the Vehicles.

5727. Defendants knowingly made affirmatively false or incomplete statements of material facts as to the Vehicles' safety, reliability, quality, value, and compliance with applicable motor vehicle safety and theft prevention standards, while they intentionally withheld, concealed, omitted, suppressed, and failed to disclose material facts about the Theft-Prone Design, including the lack of effective anti-theft measures, significant safety risks, noncompliance with federal motor vehicle safety standards, and the Vehicles' true value.

COMPLAINT

5728. Defendants volunteered incomplete information about the Vehicles they offered for sale and/or lease to consumers, including false statements as to the Vehicles' safety, compliance with applicable safety and anti-theft standards, and value while at the same time withholding the existence of the Theft-Prone Design. Defendants further knew and failed to disclose that the Theft-Prone Design and lack of standard anti-theft measures left the Vehicles at substantially lower value than the price for which they were advertised, marketed, sold, and/or leased.

5729. Alternatively, Defendants made false misrepresentations about the Theft-Prone Design with such utter disregard and recklessness that their knowledge regarding the Theft-Prone Design, its unsafe and unreliable nature, and its substantially lower value may be inferred.

5730. Defendants intended for the West Virginia Plaintiffs to rely on their omissions and concealment—which West Virginia Plaintiffs did by purchasing and leasing the Vehicles at the prices they paid believing that their vehicles would not have a Theft-Prone Design that would affect the quality, reliability, and safety of the Vehicles.

5731. West Virginia Plaintiffs' reliance on Defendants' misrepresentations and concealment was reasonable and justifiable, as West Virginia Plaintiffs had no way of learning the facts that Defendants had concealed or failed to disclose. West Virginia Plaintiffs did not, and could not, unravel Defendants' deception on their own.

5732. Having been aware of the Theft-Prone Design within the Vehicles and having known that West Virginia Plaintiffs could not have reasonably been expected to know of the Theft-Prone Design, Defendants had a duty to disclose the Theft-Prone Design to West Virginia Plaintiffs in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Theft-Prone Design and the true value of the Vehicles.

5733. Instead, Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and

to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of West Virginia Plaintiffs.

5734. If Defendants had fully and adequately disclosed the Theft-Prone Design to consumers, West Virginia Plaintiffs would have seen such a disclosure.

5735. Had West Virginia Plaintiffs known of the Theft-Prone Design within the Vehicles, they would not have purchased the Vehicles or would have paid less for them. Through their omissions and concealment with respect to the Theft-Prone Design within the Vehicles, Defendants intended to induce, and did in fact induce, West Virginia Plaintiffs to either purchase a Vehicle that they otherwise would not have purchased or pay more for a Vehicle than they otherwise would have paid.

5736. As a direct and proximate result of Defendants' omissions, West Virginia Plaintiffs overpaid for the Vehicles because West Virginia Plaintiffs would either have paid less for the Vehicles or would not have purchased the Vehicles at all if the Theft-Prone Design had been disclosed to them.

5737. As a direct and proximate result of Defendants' omissions, West Virginia Plaintiffs purchased Vehicles highly susceptible to theft and were forced to pay higher insurance premiums to account for the susceptibility that they did not knowingly accept, purchase, or lease.

5738. As a direct and proximate result of Defendants' omissions, the West Virginia Plaintiffs paid higher insurance premiums and are now left with Vehicles with significantly diminished values.

5739. Accordingly, Defendants are liable to West Virginia Plaintiffs for their damages, including but not limited to the difference in value, increased insurance premiums that West Virginia Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

5740. Defendants' acts were done maliciously, oppressively, deliberately, with

COMPLAINT

intent to defraud, in reckless disregard of the West Virginia Plaintiffs' rights and well-being, and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

5741. West Virginia Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 5.    Negligent Misrepresentation.

5742. West Virginia Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

5743. Defendants, in the course of their business selling and promoting motor vehicles, supplied false information, including that the Vehicles were safe and reliable, to guide motor vehicle buyers, including West Virginia Plaintiffs, in their choice of transaction.

5744. Defendants made misrepresentations of material facts concerning the safety and reliability of the Vehicles that they knew or should have known were false. Specifically, Defendants misrepresented that the Vehicles had effective anti-theft equipment or design elements; misrepresented that the Vehicles were safe and reliable forms of transportation; misrepresented that the Vehicles complied with all federal and industry safety and theft prevention standards; and misrepresented the true value of the Vehicles. Defendants supplied this information in the course of their business to guide West Virginia Plaintiffs in their Vehicle selection and induce West Virginia Plaintiffs to purchase one of Defendants' Vehicles.

5745. West Virginia Plaintiffs justifiably relied upon Defendants' representations because, as the entities responsible for designing and manufacturing the Vehicles, Defendants held themselves out to be knowledgeable about the Vehicles' components and honest in their promotion of the Vehicles. West Virginia Plaintiffs' reliance was further reasonable given the hidden and technical nature of the Theft-Prone Design and practical inability of West Virginia Plaintiffs to discover the Theft-Prone

COMPLAINT

Design on their own. Because Defendants held the Vehicles out to be in line with industry standards, the representation was not unreasonable on its face and West Virginia Plaintiffs had no apparent reason to doubt the veracity of Defendants' representations.

5746. Defendants had a duty to disclose all relevant information regarding the Vehicles' safety, reliability, quality, and characteristics that would affect the West Virginia Plaintiffs' choice of purchase as consumers.

5747. Defendants failed to exercise reasonable care or competence in communicating the standards of safety, reliability, quality, and characteristics of the Vehicles to the consumers, including West Virginia Plaintiffs, when they failed to disclose the lack of anti-theft prevention technology in the Vehicles. Rather, Defendants published materials and marketed the Vehicles for years as safe, reliable, and of a quality consistent with the industry standard.

5748. West Virginia Plaintiffs would not have purchased, or would have purchased for a lower price, the Vehicles which Defendants negligently misrepresented as safe, of standard quality, and containing standard trade characteristics, such as anti-theft prevention technology. Additionally, as a direct and proximate result, West Virginia Plaintiffs have had to pay higher insurance premiums to account for the Vehicles' high susceptibility to theft and are now left with Vehicles that have a lower value than they would have had without the defect.

5749. As a direct and proximate result of West Virginia Plaintiffs' reasonable reliance on Defendants' negligent misrepresentations, West Virginia Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that West Virginia Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

5750. West Virginia Plaintiffs plead this claim separately, as well as in the

alternative to their claims for damages.

### 6. Negligence.

5751. West Virginia Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

5752. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

5753. Defendants owed a duty of care to West Virginia Plaintiffs. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves, higher insurance premiums, and accelerated depreciation.

5754. Defendants failed to exercise reasonable care in connection with their manufacture, distribution, sale, and/or leasing of the Vehicles.

5755. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant with all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with West Virginia Plaintiffs.

5756. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS No. 114.

5757. As a direct and proximate result of Defendants' failure to exercise reasonable care, West Virginia Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that West Virginia Plaintiffs have paid and will

COMPLAINT

continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

5758. West Virginia Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 7.    Unjust Enrichment.

5759. West Virginia Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

5760. When they purchased and leased the Vehicles, West Virginia Plaintiffs conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

5761. West Virginia Plaintiffs would not have purchased or leased their Vehicles, or would have paid less for them, had they known of the Theft-Prone Design at the time of purchase or lease.  Therefore, Defendants profited from the sale and lease of the Vehicles to the detriment and expense of West Virginia Plaintiffs.

5762. Defendants appreciated these economic benefits.  These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers.  They knew of these benefits because they were aware of the Theft-Prone Design, yet they failed to disclose this knowledge and misled the West Virginia Plaintiffs regarding the nature and quality of the Vehicles while profiting from this deception.

5763. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

5764. West Virginia Plaintiffs are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return West Virginia Plaintiffs to the position they occupied prior to dealing with these Defendants, with such amounts to be determined at trial.

5765. West Virginia Plaintiffs plead this claim separately, as well as in the

COMPLAINT

alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if West Virginia Plaintiffs' claims for damages are dismissed or judgment is entered in favor of Defendants, West Virginia Plaintiffs will have no adequate legal remedy.

**UU.** **Wisconsin State Law Claims for Relief**

**(Alleged by Wisconsin Plaintiffs Against All Defendants)**

**1.** **Breach of Implied Warranty of Merchantability Under Wis. Stat. Ann. §§ 402.314 and 411.212.**

5766. Wisconsin Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

5767. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Wis. Stat. Ann. §§ 402.314 and 411.212.

5768. Defendants are and were at all relevant times "merchants" with respect to motor vehicles Wis. Stat. Ann. §§ 402.104(3) and 411.103(3)(k), "sellers" of motor vehicles under § 402.103(1)(d), and with respect to leases, "lessors" of motor vehicles under § 411.103(1)(p).

5769. At all relevant times, Wisconsin Plaintiffs who purchased Vehicles in Wisconsin were and are "buyers" within the meaning of Wis. Stat. Ann. § 402.103(1)(a).

5770. At all relevant times, Wisconsin Plaintiffs who leased Vehicles in Wisconsin were and are "lessees" within the meaning of Wis. Stat. Ann. § 411.103(1)(n).

5771. At all relevant times, Wisconsin Plaintiffs' Vehicles (whether purchased or leased) were and are "goods" within the meaning of Wis. Stat. Ann. §§ 402.105(1)(c) and 411.103(1)(h).

5772. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Wisconsin Plaintiffs with an implied warranty that the purchased and leased Vehicles were in merchantable

condition and fit for the ordinary purposes for which they were sold or leased. This implied warranty included that the Vehicles (a) were manufactured, supplied, distributed, and sold by Defendants, (b) were safe and reliable for transportation, (c) complied with all federal, state, and industry motor vehicle regulations and safety standards, including FMVSS No. 114, and (d) were not at abnormally high risk of theft.

5773. The Vehicles did not comply with the implied warranty of merchantability because the Vehicles were defective and not in merchantable condition at the time of sale and/or lease, were not fit for their ordinary purpose of providing safe and reliable transportation at the time of sale or lease, and would not pass without objection in the trade as they deviated significantly from the industry standard and can be stolen in mere minutes without a key. Defendants knew at the time of manufacture that the Vehicles contained the Theft-Prone Design and lacked any anti-theft equipment or design elements that effectively prevent theft or comply with FMVSS No. 114. Therefore, the Defendants knew at the time of manufacture that the Vehicles are at an abnormally high risk of theft and are unsafe and an unreliable form of transportation. The Theft-Prone Design renders the Vehicles highly vulnerable to theft and a prime target for thieves as they can be easily stolen in seconds. Defendants knew at the time of manufacture that because their Vehicles did not include any anti-theft measures that satisfied FMVSS No. 114, making their Vehicles more prone to theft and failing to comply with federal regulations, the Vehicles would require larger insurance premiums and would depreciate at a more rapid rate than a comparable vehicle with anti-theft measure that satisfied FMVSS No. 114. Consequently, at the time of sale and/or lease, the Vehicles were not fit for their ordinary purpose of providing safe and reliable transportation.

5774. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable. Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Wisconsin Plaintiffs, of the safety defect. Any time limitations regarding the warranty period were also unconscionable and inadequate to

COMPLAINT

protect Wisconsin Plaintiffs. Wisconsin Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants. A gross disadvantage in bargaining power existed between Wisconsin Plaintiffs and Defendants, which unreasonably favored Defendants. Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left Wisconsin Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

5775. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that Wisconsin Plaintiffs may seek alternative remedies. Wisconsin Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry standards, and Vehicles that provide safe and reliable transportation.

5776. Wisconsin Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure. Wisconsin Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Wisconsin Plaintiffs' breach of warranty claims. Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Wisconsin Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Wisconsin Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a

COMPLAINT

proposed cure to the breaches. To date, Defendants failed to remedy their breaches.

5777. Alternatively, Wisconsin Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches. Wisconsin Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

5778. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Wisconsin Plaintiffs' Vehicles were and are defective, the Theft-Prone Design in the Vehicles has not been remedied, and Wisconsin Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that Wisconsin Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

### 2. Breach of Express Warranty Under Wis. Stat. Ann. § 402.313.

5779. Wisconsin Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

5780. During the relevant time periods, Defendants manufactured the Vehicles and Wisconsin Plaintiffs purchased and/or leased the Vehicles from Defendants.

5781. Defendants were at all relevant times "merchants" with respect to motor vehicles Wis. Stat. Ann. §§ 402.104(3) and 411.103(3)(k), "sellers" of motor vehicles under § 402.103(1)(d).

5782. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Wis. Stat. Ann. § 411.103(1)(p).

5783. The Vehicles are and were at all relevant times "goods" within the meaning of Wis. Stat. Ann. §§ 402.105(1)(c) and 411.103(1)(h).

5784. By affixing a VIN plate to each Vehicle at the time of manufacture, Defendants expressly warranted each Vehicles' conformance to "all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture shown." These statements are an affirmation of fact or promise made to Wisconsin Plaintiffs as to the Vehicles' condition, quality, safety, and reliability. These statements became the basis of the bargain between Wisconsin Plaintiffs and Defendants, as Wisconsin Plaintiffs relied on these statements when making their decisions to purchase and/or lease the Vehicles. As such, the statements are an express warranty under Wisconsin law pursuant to Wis. Stat. Ann. § 402.313.

5785. Wisconsin Plaintiffs used the Vehicles in accordance with their normal operation and did not misuse or mishandle the Vehicles in any way material to the allegations set forth herein.

5786. So far as Defendants have attempted to disclaim or limit the warranty, such disclaimer or limitation is unconscionable and unenforceable. Defendants knowingly sold or leased the defective Vehicles containing the Theft-Prone Design without informing consumers, including Wisconsin Plaintiffs, of the safety defect. Any time limitations regarding the warranty period were also unconscionable and inadequate to protect Wisconsin Plaintiffs. Wisconsin Plaintiffs had no meaningful choice in determining these time limitations and such time limitations unreasonably favored Defendants. A gross disadvantage in bargaining power existed between Wisconsin Plaintiffs and Defendants, which unreasonably favored Defendants. Moreover, Defendants' knowledge of the Theft-Prone Design at the time of sale or lease and the hidden and technical nature of the Theft-Prone Design left Wisconsin Plaintiffs unable to reasonably discover the defects and lack of anti-theft protection.

5787. These circumstances caused any exclusive or limited remedy to fail its essential purpose such that Wisconsin Plaintiffs may seek alternative remedies. Wisconsin Plaintiffs were denied the benefit of their bargains, including Vehicles with sufficient anti-theft protection, Vehicles that complied with federal and industry

COMPLAINT

standards, and Vehicles that provide safe and reliable transportation.

5788. Wisconsin Plaintiffs provided Defendants with reasonable notice of their breaches of warranties and an opportunity to cure. Wisconsin Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action where Defendants received timely and reasonable notice of Wisconsin Plaintiffs' breach of warranty claims. Additionally, Defendants have actual knowledge and are and have been well aware of the Theft-Prone Design and Wisconsin Plaintiffs' claims. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold or leased the defective Vehicles. Defendants were also on notice of the Theft-Prone Design and noncompliance with FMVSS No. 114 through various consumer complaints and service requests, including through NHTSA, as well as through customer complaints and sales data, news reports, internet videos, and previous lawsuits identifying the Theft-Prone Design and claims alleged in this Count. Defendants have also made their own statements acknowledging the issue and have entered into a class settlement with consumers which Plaintiffs here opted out of. Furthermore, on September 17, 2025, Wisconsin Plaintiffs sent Defendants written notice letters of Defendants' breaches, Plaintiffs' claims, and a proposed cure to the breaches. To date, Defendants failed to remedy their breaches.

5789. Alternatively, Wisconsin Plaintiffs were not required to provide Defendants with notice and an opportunity to cure because such attempts would have been futile. Defendants have long known of the Theft-Prone Design and knowingly manufactured, distributed, and sold and/or leased the Vehicles containing the Theft-Prone Design. Defendants have not cured, remedied, or repaired their breaches. Wisconsin Plaintiffs therefore have no reason to believe that Defendants would have remedied their breaches or the Theft-Prone Design if they presented their Vehicles for repair.

5790. The Vehicles did not perform as promised in accordance with Defendants' express warranty; instead, the Vehicles did not meet all applicable motor vehicle safety

and theft prevention standards in effect on the date of manufacture.  The Vehicles are capable of being stolen in a matter of seconds without a key and do not comply with the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles do not, in fact, conform to the applicable anti-theft standards.

5791. As a direct and proximate result of Defendants' breaches, Wisconsin Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, costs, and fees, including but not limited to the difference in value, increased insurance premiums that Wisconsin Plaintiffs have paid and will continue to pay, and accelerated depreciation, in an amount to be proven at trial.

**3. Violation of Wisconsin Deceptive Trade Practices Act (Wis. Stat. Ann. § 100.18).**

5792. Wisconsin Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

5793. Wisconsin Plaintiffs a are "persons" within the meaning intended by Wis. Stat. Ann. § 100.18(1).

5794. The Vehicles are "merchandise" within the meaning intended by Wis. Stat. Ann. § 100.18(1).

5795. Defendants are "persons" and had and have an intent to sell and distribute merchandise within the meaning intended by Wis. Stat. Ann. § 100.18(1).

5796. The Wisconsin Deceptive Trade Practices Act ("Wisconsin DTPA") states that "[n]o person . . . with intent to sell, distribute . . . merchandise, service, or anything offered by such person . . . directly or indirectly, to the public for sale . . . or with intent to induce the public in any manner to enter into a contract or obligation relating to the purchase, sale, hire, use or lease of any . . . merchandise . . . shall make . . . an advertisement, announcement, statement or representation of any kind to the public relating to such purchase, sale, hire, use or lease of such . . . merchandise . . . which advertisement, announcement, statement or representation contains any assertion, representation or statement of fact which is untrue, deceptive or misleading." Wis. Stat.

Ann. § 100.18(1).

5797. Through their misrepresentations, concealment, omissions, and withholding of these material facts, Defendants engaged in unfair and deceptive acts or practices in the course of their business, as prohibited by Wis. Stat. Ann. § 100.18(1).

5798. In the course of their business, Defendants, through their agents, representatives, and subsidiaries, engaged in unfair and unconscionable deceptive acts or practices by misrepresenting the Vehicles as safe, reliable, free from defects, designed according to federal and industry standards, insurable, and priced accurately, by failing to disclose and actively concealing the dangers and risk posed by the Theft-Prone Design, and by knowingly and intentionally concealing, misrepresenting, omitting, and withholding material facts.  These material facts include that (a) the Vehicles had a hidden Theft-Prone Design which left the Vehicles without standard anti-theft measures and was not reasonably discoverable to consumers, (b) the Vehicles did not comply with federal or industry motor vehicle safety and theft prevention standards, including FMVSS No. 114, (c) the Vehicles were at an abnormally high risk of theft and therefore would be costly to insure, and (d) the Vehicles had a lower value and were of a lower standard and quality than Defendants knowingly misrepresented.

5799. Under the Wisconsin DTPA, Defendants had an ongoing duty to Wisconsin Plaintiffs as consumers to refrain from unfair or deceptive acts, practices, and representations in the course of their business.  Specifically, Defendants owed the Wisconsin Plaintiffs a duty to disclose all the material facts concerning the Theft-Prone Design in the Vehicles and to refrain from representing their Vehicles were of a particular standard or quality when they were of another.

5800. As detailed above, the information concerning the Theft-Prone Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.  Defendants knew that, because of the Theft-Prone Design, the Vehicles posed a significant safety risk to consumers that used the Vehicles.  Defendants knew that the Theft-Prone Design and

COMPLAINT

lack of standard anti-theft measures priced the Vehicles at a substantially lower value than the price for which they were advertised, marketed, sold, and/or leased and required higher insurance rates.

5801. Defendants knew these material facts would have been material to consumers', including Wisconsin Plaintiffs', decision to purchase and/or lease the Vehicles.

5802. Defendants nevertheless made intentionally misleading and incomplete affirmative statements and representations about the Vehicles' safety, reliability, value, insurability, and conformance with all applicable safety and theft prevention standards, while also concealing, omitting, and withholding material facts from consumers, including Wisconsin Plaintiffs, at the time the Vehicles were advertised, sold, and/or leased. Defendants marketed and sold the Vehicles as safe despite their knowledge that the Theft-Prone Design posed a significant safety risk to consumers and the general public. Through advertisements, marketing materials, and their websites, Defendants made incomplete representations and/or concealed the Vehicles' defective condition. Defendants further misrepresented that the Vehicles were compliant with all applicable motor vehicle safety and theft prevention standards, when in reality they were not. Defendants further marketed and sold/leased the Vehicles at an inflated and misleading price, given the Vehicles' Theft-Prone Design and lack of standard anti-theft equipment and design elements.

5803. Wisconsin Plaintiffs were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe, reliable, free from defects, designed according to federal and industry standards, insurable, and priced accurately when deciding to purchase or lease the Vehicles.

5804. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection and that the Vehicles were not

affected by the Theft-Prone Design.

5805. Defendants intended for Wisconsin Plaintiffs to rely on them to provide adequately designed Vehicles and to honestly and accurately reveal the safety hazards described above.

5806. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Wisconsin Plaintiffs, about the true safety and reliability of Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

5807. Given the Theft-Prone Design's hidden and technical nature, Wisconsin Plaintiffs' reliance was reasonable, as they had no way of discerning if Defendants' representations were false and misleading or otherwise learning that the Vehicles contained the Theft-Prone Design, as alleged above. Wisconsin Plaintiffs did not, and could not, unravel Defendants' deception on their own.

5808. Instead, Defendants had exclusive and superior knowledge of the Theft-Prone Design, related facts, and the Vehicles' noncompliance with federal and industry safety and theft prevention standards. Defendants knew these facts were hidden and not reasonably discoverable by consumers, including Wisconsin Plaintiffs. Wisconsin Plaintiffs lack the sophisticated expertise in vehicle components that would have been necessary to discover the Theft-Prone Design on their own.

5809. Had they known the truth about the Theft-Prone Design, Wisconsin Plaintiffs would not have purchased or leased the Vehicles, or Wisconsin Plaintiffs would have paid significantly less for the Vehicles.

5810. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Theft-Prone Design and true characteristics of the Vehicles were material to the decisions of Wisconsin Plaintiffs to purchase and lease the Vehicles, as Defendants intended.

5811. Wisconsin Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or

COMPLAINT

failure to disclose material information.

5812. Defendants' violations present a continuing risk to Wisconsin Plaintiffs, as well as to the general public, because the Vehicles remain unsafe due to the Theft-Prone Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

5813. Wisconsin Plaintiffs have opted out of a consumer class action settlement against Defendants that specifically addresses the Theft-Prone Design and this cause of action. As such, Defendants are and have been well aware of the Theft-Prone Design and Wisconsin Plaintiffs' claims. Additionally, Defendants had ample notice provided by the numerous complaints filed against them, internet videos, and news reports. Furthermore, on September 17, 2025, Wisconsin Plaintiffs sent Defendants written notice letters of Defendants' violations, Plaintiffs' claims, and a proposed cure to the violations. To date, Defendants failed to remedy their violations. Because Defendants failed to remedy their unlawful conduct, Wisconsin Plaintiffs seek all damages and relief to which Wisconsin Plaintiffs are entitled.

5814. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile. As alleged above, Defendants have long known that the Vehicles contained the Theft-Prone Design yet did nothing to remedy the Theft-Prone Design.

5815. Pursuant to Wis. Stat. Ann. § 100.18(11)(b)(2), Wisconsin Plaintiffs seek an order (1) enjoining Defendants' unfair and/or deceptive acts, methods, or practices alleged herein, and (2) awarding damages, punitive damages, attorney's fees, costs, and/or any other just and proper relief available under the Wisconsin DTPA.

### 4.    Fraud by Omission and Concealment.

5816. Wisconsin Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

5817. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards and are

therefore of a particular value.  In reality, however, the Vehicles do not comply with such standards.

5818. Defendants were aware of the Theft-Prone Design when they manufactured, marketed, and sold the Vehicles to Wisconsin Plaintiffs.  Defendants further knew that the Theft-Prone Design gave rise to serious safety risks for the consumers that would use the Vehicles and naturally give rise to higher insurance premiums and accelerated depreciation.  At the same time, Defendants were aware of the Federal Motor Vehicle Safety Standards and of the effectiveness of engine immobilizer technology in reducing safety hazards.  Defendants were also aware that noncompliance with federal and industry standards lowered the value of the Vehicles and would render the Vehicles difficult to insure.

5819. Defendants knew that the Theft-Prone Design, the safety hazards it posed, and the reduction in the Vehicles' value would have been material facts to the Wisconsin Plaintiffs' decisions to buy or lease the Vehicles.

5820. A reasonable person would find the Vehicles' lack of industry-standard anti-theft measures and noncompliance with applicable safety standards material to their decision to purchase, lease, and maintain the Vehicles because these deficiencies impact safety, availability, the Vehicles' value, and the cost to insure the Vehicles.

5821. Defendants knowingly made affirmatively false or incomplete statements of material facts as to the Vehicles' safety, reliability, quality, value, and compliance with applicable motor vehicle safety and theft prevention standards, while they intentionally withheld, concealed, omitted, suppressed, and failed to disclose material facts about the Theft-Prone Design, including the lack of effective anti-theft measures, significant safety risks, noncompliance with federal motor vehicle safety standards, and the Vehicles' true value.

5822. Defendants volunteered incomplete information about the Vehicles they offered for sale and/or lease to consumers, including false statements as to the Vehicles' safety, compliance with applicable safety and anti-theft standards, and value while at

the same time withholding the existence of the Theft-Prone Design.  Defendants further knew and failed to disclose that the Theft-Prone Design and lack of standard anti-theft measures left the Vehicles at substantially lower value than the price for which they were advertised, marketed, sold, and/or leased.

5823. Alternatively, Defendants made false misrepresentations about the Theft-Prone Design with such utter disregard and recklessness that their knowledge regarding the Theft-Prone Design, its unsafe and unreliable nature, and its substantially lower value may be inferred.

5824. Defendants intended for the Wisconsin Plaintiffs to rely on their omissions and concealment—which Wisconsin Plaintiffs did by purchasing and leasing the Vehicles at the prices they paid believing that their vehicles would not have a Theft-Prone Design that would affect the quality, reliability, and safety of the Vehicles.

5825. Wisconsin Plaintiffs' reliance on Defendants' misrepresentations and concealment was reasonable and justifiable, as Wisconsin Plaintiffs had no way of learning the facts that Defendants had concealed or failed to disclose.  Wisconsin Plaintiffs did not, and could not, unravel Defendants' deception on their own.

5826. Having been aware of the Theft-Prone Design within the Vehicles and having known that Wisconsin Plaintiffs could not have reasonably been expected to know of the Theft-Prone Design, Defendants had a duty to disclose the Theft-Prone Design to Wisconsin Plaintiffs in connection with the sale of the Vehicles.  Defendants further had a duty to disclose the Theft-Prone Design and the true value of the Vehicles.

5827. Instead, Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products.  They did so at the expense of Wisconsin Plaintiffs.

5828. If Defendants had fully and adequately disclosed the Theft-Prone Design to consumers, Wisconsin Plaintiffs would have seen such a disclosure.

COMPLAINT

5829. Had Wisconsin Plaintiffs known of the Theft-Prone Design within the Vehicles, they would not have purchased the Vehicles or would have paid less for them. Through their omissions and concealment with respect to the Theft-Prone Design within the Vehicles, Defendants intended to induce, and did in fact induce, Wisconsin Plaintiffs to either purchase a Vehicle that they otherwise would not have purchased or pay more for a Vehicle than they otherwise would have paid.

5830. As a direct and proximate result of Defendants' omissions, Wisconsin Plaintiffs overpaid for the Vehicles because Wisconsin Plaintiffs would either have paid less for the Vehicles or would not have purchased the Vehicles at all if the Theft-Prone Design had been disclosed to them.

5831. As a direct and proximate result of Defendants' omissions, Wisconsin Plaintiffs purchased Vehicles highly susceptible to theft and were forced to pay higher insurance premiums to account for the susceptibility that they did not knowingly accept, purchase, or lease.

5832. As a direct and proximate result of Defendants' omissions, the Wisconsin Plaintiffs paid higher insurance premiums and are now left with Vehicles with significantly diminished values.

5833. Accordingly, Defendants are liable to Wisconsin Plaintiffs for their damages, including but not limited to the difference in value, increased insurance premiums that Wisconsin Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

5834. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, in reckless disregard of the Wisconsin Plaintiffs' rights and well-being, and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

5835. Wisconsin Plaintiffs plead this claim separately, as well as in the

COMPLAINT

alternative to their claims for damages.

### 5.   Negligent Misrepresentation.

5836. Wisconsin Plaintiffs incorporate by reference and reallege each preceding paragraph as though fully set forth herein.

5837. Defendants, in the course of their business selling and promoting motor vehicles, supplied false information, including that the Vehicles were safe and reliable, to guide motor vehicle buyers, including Wisconsin Plaintiffs, in their choice of transaction.

5838. Defendants made misrepresentations of material facts concerning the safety and reliability of the Vehicles that they knew or should have known were false. Specifically, Defendants misrepresented that the Vehicles had effective anti-theft equipment or design elements; misrepresented that the Vehicles were safe and reliable forms of transportation; misrepresented that the Vehicles complied with all federal and industry safety and theft prevention standards; and misrepresented the true value of the Vehicles. Defendants supplied this information in the course of their business to guide Wisconsin Plaintiffs in their Vehicle selection and induce Wisconsin Plaintiffs to purchase one of Defendants' Vehicles.

5839. Wisconsin Plaintiffs justifiably relied upon Defendants' representations because, as the entities responsible for designing and manufacturing the Vehicles, Defendants held themselves out to be knowledgeable about the Vehicles' components and honest in their promotion of the Vehicles. Wisconsin Plaintiffs' reliance was further reasonable given the hidden and technical nature of the Theft-Prone Design and practical inability of Wisconsin Plaintiffs to discover the Theft-Prone Design on their own. Because Defendants held the Vehicles out to be in line with industry standards, the representation was not unreasonable on its face and Wisconsin Plaintiffs had no apparent reason to doubt the veracity of Defendants' representations.

5840. Defendants had a duty to disclose all relevant information regarding the Vehicles' safety, reliability, quality, and characteristics that would affect the Wisconsin

COMPLAINT

Plaintiffs' choice of purchase as consumers.

5841. Defendants failed to exercise reasonable care or competence in communicating the standards of safety, reliability, quality, and characteristics of the Vehicles to the consumers, including Wisconsin Plaintiffs, when they failed to disclose the lack of anti-theft prevention technology in the Vehicles.  Rather, Defendants published materials and marketed the Vehicles for years as safe, reliable, and of a quality consistent with the industry standard.

5842. Wisconsin Plaintiffs would not have purchased, or would have purchased for a lower price, the Vehicles which Defendants negligently misrepresented as safe, of standard quality, and containing standard trade characteristics, such as anti-theft prevention technology.  Additionally, as a direct and proximate result, Wisconsin Plaintiffs have had to pay higher insurance premiums to account for the Vehicles' high susceptibility to theft and are now left with Vehicles that have a lower value than they would have had without the defect.

5843. As a direct and proximate result of Wisconsin Plaintiffs' reasonable reliance on Defendants' negligent misrepresentations, Wisconsin Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that Wisconsin Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

5844. Wisconsin Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 6.    Negligence.

5845. Wisconsin Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

5846. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

5847. Defendants owed a duty of care to Wisconsin Plaintiffs.  That duty of care

COMPLAINT

included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves, higher insurance premiums, and accelerated depreciation.

5848. Defendants failed to exercise reasonable care in connection with their manufacture, distribution, sale, and/or leasing of the Vehicles.

5849. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant with all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Wisconsin Plaintiffs.

5850. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS No. 114.

5851. As a direct and proximate result of Defendants' failure to exercise reasonable care, Wisconsin Plaintiffs have suffered and will continue to suffer actual, incidental, and consequential damages, including but not limited to the difference in value, increased insurance premiums that Wisconsin Plaintiffs have paid and will continue to pay, accelerated depreciation, and any other damages and costs for which Defendants are liable, in an amount to be proven at trial.

5852. Wisconsin Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages.

### 7. Unjust Enrichment.

5853. Wisconsin Plaintiffs incorporate by reference each preceding and

COMPLAINT

succeeding paragraph as though fully set forth at length herein.

5854. When they purchased and leased the Vehicles, Wisconsin Plaintiffs conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

5855. Wisconsin Plaintiffs would not have purchased or leased their Vehicles, or would have paid less for them, had they known of the Theft-Prone Design at the time of purchase or lease.  Therefore, Defendants profited from the sale and lease of the Vehicles to the detriment and expense of Wisconsin Plaintiffs.

5856. Defendants appreciated these economic benefits.  These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers.  They knew of these benefits because they were aware of the Theft-Prone Design, yet they failed to disclose this knowledge and misled the Wisconsin Plaintiffs regarding the nature and quality of the Vehicles while profiting from this deception.

5857. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

5858. Wisconsin Plaintiffs are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Wisconsin Plaintiffs to the position they occupied prior to dealing with these Defendants, with such amounts to be determined at trial.

5859. Wisconsin Plaintiffs plead this claim separately, as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Wisconsin Plaintiffs' claims for damages are dismissed or judgment is entered in favor of Defendants, Wisconsin Plaintiffs will have no adequate legal remedy.

**VI.    PRAYER FOR RELIEF**

5860. WHEREFORE, Plaintiffs pray for a judgment against Defendants as follows:

5861. Awarding payment to the Plaintiffs for all damages resulting from

COMPLAINT

Defendants' acts, including compensatory, punitive, exemplary, statutory and other recoverable damages;

5862. Awarding all attorneys' fees and expenses provided and permitted by law;

5863. Awarding all interest, including prejudgment and post-judgment interest, as provided and permitted by law; and

5864. Awarding such other further relief as this Court may deem just, equitable, or proper.

## VII.   JURY DEMAND

5865. Plaintiffs demand a trial by jury of all issues so triable.

Dated: October 22, 2025          VORYS, SATER, SEYMOUR AND PEASE LLP

By: *s/ Thomas N. McCormick*
Thomas N. McCormick

MASON LLP

By: *s/ Gary E. Mason*
Gary E. Mason (*pro hac vice* forthcoming)

*Attorneys for Plaintiffs*

COMPLAINT